1   D. ANTHONY RODRIGUEZ (CA SBN 162587)
2   EVI K. SCHUELLER (CA SBN 237886)
    MORRISON & FOERSTER LLP
3   425 Market Street
    San Francisco, California 94105-2482
4   Telephone: 415.268.7000
    Facsimile: 415.268.7522
5   Email: DRodriguez@mofo.com
    Email: ESchueller@mofo.com
6
7   MICHAEL B. FISCO (MN No. 175341)
    ABBY E. WILKINSON (MN No. 0313981)
8   (*Pro hac* applications pending)
    FAEGRE & BENSON LLP
9   90 South Seventh Street, Suite 2200
    Minneapolis, Minnesota 55402-3901
10  Telephone: 612.766.7000
11  Facsimile: 612.766.1600
    Email: mfisco@faegre.com
12  Email: awilkinson@faegre.com

13  Attorneys for Defendant U.S. BANK TRUST NATIONAL
    ASSOCIATION,
14  in its capacity as Indenture Trustee .

15

16              UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18              SAN JOSE DIVISION

19  FINISAR CORPORATION,                    Case No.    C 07 4052 1

20              Plaintiff,                   NOTICE OF REMOVAL

21      v.

22  U.S. BANK TRUST NATIONAL
    ASSOCIATION, a national banking association,
23  not in its individual capacity, but solely in its
    capacity as Indenture Trustee in behalf of all
24  Holders of Finisar Corporation's 5¼%
    Convertible Subordinated Notes due 2008, 2½%
25  Convertible Senior Subordinated Notes due 2010,
    and 2½% Convertible Subordinated Notes due
26  2010, and DOES 1 through 10, inclusive,

27              Defendants.

28

ORIGINAL
FILED

AUG – 7 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

COPY

Under 28 U.S.C. §§ 1441 and 1446, Defendant U.S. Bank Trust National Association, in its capacity as indenture trustee for holders of certain Convertible Subordinated Notes and Convertible Subordinated Senior Notes ("U.S. Bank"), hereby gives notice of the removal of the above-titled action to the United States District Court for the Northern District of California, and in support of the Notice of Removal states as follows:

## JURISDICTION

1.    On June 22, 2007, Plaintiff Finisar Corporation ("Finisar") filed a complaint against U.S. Bank ("Complaint") in the Superior Court for the County of Santa Clara, California, Case No. 107CV088503, entitled Finisar Corporation v. U.S. Bank Trust National Association ("State Action"). Copies of all process and pleadings served on U.S. Bank in the State Action, including the Summons and Complaint, are submitted with this Notice of Removal as Exhibit A hereto.

2.    On July 11, 2007, Finisar effected service of the Complaint on U.S. Bank; and accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b).

3.    This Court has original jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

      a.    As alleged in the Complaint, Finisar filed the State Action as a result of its failure to file certain reports with the Securities and Exchange Commission ("SEC") in accordance with Sections 13 or 15(d) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with its 5¼% Convertible Subordinated Notes due 2008 ("5¼% Notes"), 2½% Convertible Subordinated Notes due 2010 ("2½% Notes"), and 2½% Convertible Senior Subordinated Notes due 2010 ("2½% Senior Notes", together with the 5¼% Notes and the 2½% Notes, the "Notes") issued pursuant to those certain indentures between Finisar and U.S. Bank dated as of October 15, 2001, October 15, 2003, and October 12, 2006, respectively (together, the "Indentures"). Finisar seeks a declaratory judgment that its failure to file the reports with the SEC and to provide U.S. Bank with copies thereof is not a default under the Indentures.

b.    The relevant provisions of the Indentures expressly incorporate the Exchange Act and the Trust Indenture Act of 1939. (See, e.g., Indenture dated October 15, 2001, attached as Exhibit B hereto.) Accordingly, determining whether Finisar is in default under the Indentures requires this Court to interpret, apply, or determine the effect of these federal statutes, and the Complaint therefore presents a federal question.

4.    The United States District Court for the Northern District of California is the District Court for the district that includes the County of Santa Clara, California. 28 U.S.C. § 84(a).

5.    U.S. Bank expressly reserves its right to raise all defenses and objections to Finisar's claims after the action is removed to the above Court. By filing this Notice of Removal, U.S. Bank does not waive any defense that may be available to it.

## INTRADISTRICT ASSIGNMENT

6.    U.S. Bank requests that this case should be assigned to the San Jose Division because it is removed from the Santa Clara Superior Court and because it involves parties doing business in Santa Clara County. (Civil L.R. 3-5.)

## RELATED PROCEEDING

7.    On March 2, 2007, Finisar filed its first complaint ("First Complaint") against U.S. Bank in the Superior Court for the County of Santa Clara, California, Case No. 107CV081092, entitled Finisar Corporation v. U.S. Bank Trust National Association ("First Declaratory Judgment Action"). Finisar filed the First Complaint after it received a notice of default from U.S. Bank for its failure to file a second quarterly report with the SEC. By its First Complaint, like the present action, Finisar seeks a declaratory judgment that its failure to file the reports with the SEC and to provide U.S. Bank with copies thereof is not a default under the Indentures.

8.    U.S. Bank filed an answer to the First Complaint on April 13, 2007, in the State Court, generally denying the allegations set forth therein and asserting 5 affirmative defenses. On April 13, 2007, U.S. Bank also removed the First Declaratory Judgment Action to this Court. Thereafter, on May 14, 2007, Finisar filed its Notice of Motion and Motion to Remand Action to

1    Santa Clara County Superior Court ("Motion to Remand").  U.S. Bank filed a response to the

2    Motion to Remand on June 29, 2007.  A hearing on the Motion to Remand and the initial case

3    management conference related to the First Complaint are currently scheduled for September 7,

4    2007, at 9:00 a.m. and 10:30 a.m., respectively.

5

6    Dated:  August 6, 2007                          **MORRISON & FOERSTER LLP**

7                                                     PAUL T. FRIEDMAN
                                                      D. ANTHONY RODRIGUEZ
8                                                     EVA K. SCHUELLER

9                                                     **FAEGRE & BENSON LLP**

10                                                    MICHAEL B. FISCO
                                                      ABBY E. WILKINSON
11

12                                                    By_____

13                                                          D. Anthony Rodriguez

14                                                    Attorneys for Defendant,
                                                      U.S. BANK TRUST NATIONAL
15                                                    ASSOCIATION, in its capacity
                                                      as Indenture Trustee
16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sterling A. Brennan (CA State Bar No. 126019) | |

WORKMAN NYDEGGER
60 East South Temple, 1000 Eagle Gate Tower
Salt Lake City, UT 84111
TELEPHONE NO: 801-533-9800     FAX NO. *(Optional):* 801-328-1707
E-MAIL ADDRESS *(Optional):* sbrennan@wnlaw.com
ATTORNEY FOR *(Name):* Finisar Corporation

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown

PLAINTIFF/PETITIONER: Finisar Corporation

DEFENDANT/RESPONDENT: U.S. Bank Trust National Association

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* U.S. Bank Trust National Association

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

Sterling A. Brennan
_____
(TYPE OR PRINT NAME)                          ▶  _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1.  [✓]  A copy of the summons and of the complaint.
2.  [✓]  Other *(specify):*

Civil Case Cover Sheet
Notice of Related Case

*(To be completed by recipient):*

Date this form is signed:

Michael B. Fisco for U.S. Bank Trust National Assoc.   ▶
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,            (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                           ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

American LegalNet, Inc.
www.USCourtForms.com

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number,a nd address):*<br>Sterling A. Brennan (CA State Bar No. 126019)<br>**WORKMAN NYDEGGER**<br>60 East South Temple, 1000 Eagle Gate Tower<br>Salt Lake City, UT 84111<br>TELEPHONE NO: 801-533-9800        FAX NO. *(Optional):* **801-328-1707**<br>E-MAIL ADDRESS *(Optional):* sbrennan@wnlaw.com<br>ATTORNEY FOR *(Name):* Finisar Corporation | FOR COURT USE ONLY |

| |
|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara<br>STREET ADDRESS: 191 N. First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, CA  95113<br>BRANCH NAME: Downtown |

| | |
|---|---|
| PLAINTIFF/PETITIONER: Finisar Corporation<br><br>DEFENDANT/RESPONDENT: U.S. Bank Trust National Association | |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: |

TO *(insert name of party being served):* U.S. Bank Trust National Association

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

Sterling A. Brennan
(TYPE OR PRINT NAME)    ▶    ⟨signature⟩
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

    Civil Case Cover Sheet
    Notice of Related Case

*(To be completed by recipient):*

Date this form is signed:

Diana Jacobs for U.S. Bank Trust National Association  ▶
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.USCourtForms.com

1    Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
     L. Rex Sears (*Pro Hac Vice* Application Pending; E-mail: rsears@wnlaw.com)
2    WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
     1000 Eagle Gate Tower
3    60 East South Temple
     Salt Lake City, Utah 84111
4    Telephone: (801) 533-9800
     Facsimile: (801) 328-1707
5
     Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
6    BERGESON, LLP
     303 Almaden Boulevard
7    Suite 500
     San Jose, California 95110-2712
8    Telephone: (408) 291-6200
     Facsimile: (408) 297-6000
9
     Attorneys for Plaintiff FINISAR CORPORATION
10

11              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF SANTA CLARA

13                                        1 0 7 C V 0 8 8 5 0 3

14   FINISAR CORPORATION, a Delaware          Case No. _____
     corporation,
15
                    Plaintiff,
16                                            COMPLAINT FOR DECLARATORY
            v.                                RELIEF
17

18   U.S. BANK TRUST NATIONAL
19   ASSOCIATION, a national banking
     association, not in its individual capacity,
20   but solely in its capacity as indenture trustee
     in behalf of all holders of Finisar
21   Corporation's 5¼% Convertible
     Subordinated Notes due 2008, 2½%
22   Convertible Senior Subordinated Notes due
     2010, and 2½% Convertible Subordinated
23   Notes due 2010; and DOES 1 through 10,
24   inclusive,

25                  Defendants.

26

27

28

─────────────────────────────────────────────

          FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1    As a Complaint for declaratory relief in the above-captioned action (the "Action") against

2    (1) defendant U.S. Bank Trust National Association, a national banking association ("U.S.

3    Bank"), not in its individual capacity, but solely in its capacity as indenture trustee in behalf of all

4    holders of certain 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible

5    Subordinated Notes due 2010, and 2½% Convertible Senior Subordinated Notes due 2010

6    (collectively, the "Notes") issued by plaintiff Finisar Corporation ("Finisar"), and (2) DOES 1

7    through 10, inclusive (hereinafter, U.S. Bank and the DOE defendants are sometimes referred to

8    collectively as "Defendants"), Finisar alleges as follows:

9    <center>I.    INTRODUCTION</center>

10    1.    Finisar is a technology company based in Santa Clara County that provides fiber

11    optic subsystems and network performance test systems. Finisar's products enable high-speed

12    communications for networking and storage applications over Ethernet local area networks, fibre

13    channel storage area networks, and metropolitan area networks. Finisar has over 4,200

14    employees, and is a publicly-held company whose shares trade on NASDAQ.

15    2.    In connection with its issuance of the Notes, Finisar, as obligor, entered into a

16    series of three substantially similar indentures (the "Indentures") with U.S. Bank, as indenture

17    trustee. Section 4.02 of each Indenture requires Finisar to provide to U.S. Bank within 15 days of

18    their filing with the Securities Exchange Commission ("SEC") copies of such quarterly, annual,

19    and other reports as Finisar is required to file with the SEC pursuant to Section 13 or 15(d) of the

20    Securities Exchange Act of 1934 (the "Exchange Act").

21    3.    By this Action, Finisar seeks a judicial declaration that it is *not in default* under

22    Section 4.02 of the Indentures, as alleged by U.S. Bank.

23    4.    Finisar is current in all of its payment obligations under the Notes, and Finisar has

24    provided to U.S. Bank copies of the quarterly, annual, and other reports that Finisar has filed with

25    the SEC. Furthermore, Finisar has provided to U.S. Bank, or offered to provide to U.S. Bank,

26    additional information regarding its financial circumstances and condition.

27    5.    U.S. Bank has alleged—*inter alia* in a series of three letters sent to Finisar, dated

28    April 23, 2007 and labeled "Notice of Default" (the "Q3 Letters")—that Finisar is in default

<center>1.</center>

1   under the Indentures because Finisar has not made with the SEC, and provided to U.S. Bank

2   copies of, certain filings, including a Form 10-Q for Finisar's fiscal quarter ended January 31,

3   2007 (the "Q3 Form 10-Q"). U.S. Bank does not dispute that Finisar has provided to U.S. Bank

4   copies of whatever filings Finisar has made with the SEC, within the time prescribed by the

5   Indentures.

6        6.    Finisar has been conducting a voluntary review and investigation of stock option

7   grants that Finisar made following the initial public offering of its stock shares on November 11,

8   1999 ("Finisar's IPO"). In a Form 8-K that Finisar filed with the SEC on June 12, 2007 and a

9   Form 8-K/A that Finisar filed with the SEC on June 13, 2007, copies of which Finisar has

10  provided to U.S. Bank, Finisar announced the initial findings of that review; and that based upon

11  those findings, Finisar will restate its historical financial statements to record charges for

12  compensation expense relating to past stock option grants and the tax impact related to such

13  adjustments.

14       7.    As Finisar has informed both the SEC and U.S. Bank, until the aforementioned

15  review and investigation is complete and any necessary restatements have been made, Finisar has

16  been and is prevented from filing with the SEC (and, of necessity, providing to U.S. Bank) certain

17  annual and quarterly reports, including its Q3 Form 10-Q. Nevertheless, as Finisar has also

18  informed both the SEC and U.S. Bank, Finisar fully intends to make its Q3 Form 10-Q and any

19  other requisite filings with the SEC (including, for example, filings that may come due in the

20  future, such as, for example, its Form 10-Q for its fiscal quarter ending July 31, 2007 and its 2007

21  Form 10-K), and to provide copies thereof to U.S. Bank within 15 days of their having been filed

22  with the SEC, as soon as practicable following the completion of the review and investigation and

23  any necessary restatements. Furthermore, Finisar has also provided to U.S. Bank information that

24  would allow it to access Finisar's on-line "webcasts" that detail Finisar's fiscal second and third

25  quarter 2007 financial results. Finisar also has offered to provide to U.S. Bank (and by extension,

26  holders of the Notes) copies of Finisar's preliminary unaudited and other financial statements for

27  its fiscal second and third quarters.

28

2.

8.    Section 4.02 of the Indentures only requires Finisar to file with U.S. Bank copies of those annual and quarterly reports required by Section 13 or 15(d) of the Exchange Act that Finisar *actually has filed* with the SEC. This Finisar has done. Accordingly, Finisar respectfully requests that this Court enter a judgment declaring that Finisar is not in default under Section 4.02 of the Indentures, as alleged by U.S. Bank.

9.    U.S. Bank misconstrues the Indentures in such a way that, under its construction, Finisar is deemed to be in default under the Indentures as a consequence of the necessary, temporary deferral of its filing of certain reports with the SEC. Accordingly, U.S Bank—in behalf of holders of the Notes—threatens to seek to declare all unpaid principal, and any accrued, default, or additional interest, on the Notes to be immediately due and payable. There is approximately $250,250,00 million in aggregate principal amount of the Notes outstanding, and an aggregate of approximately $1.8 million in accrued interest not yet due to be paid to holders of the Notes (as of June 20, 2007). Thus, although, on the one hand, the value of the Notes to their holders has not been appreciably impaired, if at all, by the temporary delay in Finisar's filings pending completion of Finisar's investigation and review and any necessary restatement, an acceleration of the principal and accrued interest on the Notes would, on the other hand, substantially harm and constitute an unwarranted forfeiture by Finisar. Accordingly, Finisar respectfully requests that, if the Indentures are given a construction by which Finisar is deemed to be in default, then the Court further declare that enforcement of any acceleration of the Notes for the default alleged by U.S. Bank, under the facts and circumstances presented in this Action, would be inequitable.

## II.    THE PARTIES

10.    Finisar now is, and at all times relevant to the Action has been, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Santa Clara County at 1389 Moffett Park Drive, Sunnyvale, California.

11.    U.S. Bank now is, and at all times relevant to the Action has been, a national banking association. U.S. Bank's articles of association designate a location in Wilmington, Delaware, as U.S. Bank's main office. Accordingly, for purposes of 28 U.S.C. section 1348

3.

1    (which governs the jurisdiction of federal district courts over national banking associations), as

2    interpreted by the United States Supreme Court in *Wachovia Bank, N.A. v. Schmidt* (2006) 546

3    U.S. 303, 126 S.Ct. 941, U.S. Bank is deemed to be a citizen of the State of Delaware (thereby

4    making U.S. Bank and Finisar citizens of the same state for purposes of federal court diversity

5    jurisdiction). Although, to Finisar's understanding, U.S. Bank has not designated a principal

6    place of business within the State of California, Finisar alleges on information and belief that U.S.

7    Bank nonetheless does business within the State of California and within the County of Santa

8    Clara through and out of, *inter alia,* branch offices operated by U.S. Bancorp or U.S. Bancorp

9    subsidiaries within Santa Clara County.

10        12.    The true names and capacities, whether individual, corporate, associate, or

11    otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are presently

12    unknown to Finisar, which, therefore, sues such Defendants by such fictitious names. Finisar will

13    seek leave of the Court to amend this Complaint to show the true names and capacities of the

14    DOE defendants when such information can be ascertained.

15        13.    Finisar alleges on information and belief that, in performing the acts and

16    committing the omissions alleged herein, at all times relevant hereto, each of the Defendants was

17    the successor-in-interest or affiliate of one or more of the other Defendants, and was at all times

18    acting within the course and scope of such described relationship and with the knowledge and

19    approval of each of the other Defendants.

20        **III.    JURISDICTION AND VENUE**

21        14.    This Court is authorized by California Code of Civil Procedure section 1060 to

22    exercise subject matter jurisdiction over Finisar's state law cause of action for declaratory relief.

23        15.    This Court is authorized by California Code of Civil Procedure section 410.10 to

24    exercise personal jurisdiction over U.S. Bank in this Action.

25        16.    Venue is properly laid in this Court pursuant to California Code of Civil Procedure

26    section 395.5 both because U.S. Bank has not designated a principal place of business within the

27    State of California and because Santa Clara County is the place where (a) the Indentures were

28

1    made, (b) the Indentures are to be performed, (c) U.S. Bank contends that Finisar's liability under

2    the Indentures arises, and (d) U.S. Bank contends that Finisar's purported default has occurred.

3        17.    The value of the rights sought to be declared by Finisar exceeds $25,000, placing

4    this Action within the unlimited jurisdiction of this Court.

5                            **IV.    RELATED LITIGATION**

6        18.    The same considerations and circumstances that necessitated temporary deferral of

7    Finisar's filing with the SEC of its Q3 Form 10-Q (and which may as well necessitate a

8    temporary delay in Finisar's filing of certain other reports, such as its Form 10-Q for the fiscal

9    quarter ending July 31, 2007 and its 2007 Form 10-K) have also necessitated temporary deferral

10   of Finisar's filing with the SEC of a Form 10-Q for its fiscal quarter ended October 29, 2006 (the

11   "Q2 Form 10-Q").

12       19.    By three letters sent by U.S. Bank to Finisar, dated January 4, 2007 and labeled

13   "Notice of Default" (the "Q2 Letters"), U.S. Bank alleged that a default occurred under the

14   Indentures that are at issue in this Action when Finisar failed to file with the SEC, on or before

15   December 8, 2006, its Q2 Form 10-Q, and to provide U.S. Bank with a copy of such Form

16   10-Q within 15 days of its filing with the SEC.

17       20.    On March 2, 2007, Finisar commenced *Finisar Corp. v. U.S. Bank Trust National*

18   *Association, et al.,* Case No. 2007-107CV081092 (the "Q2 Action"), by filing with this Court a

19   "Complaint for Declaratory Relief" (the "Q2 Complaint"), seeking a declaration that Finisar did

20   not default under the Indentures as alleged in the Q2 Letters or, in the alternative, that even if

21   Finisar were determined to be in default under the Indentures, enforcing acceleration of the Notes

22   for such a technical default would be inequitable under the facts presented.

23       21.    On April 16, 2007, U.S. Bank removed the Q2 Action to the United States District

24   Court for the Northern District of California, San Jose Division (the "Federal Court"), where it

25   was placed on the docket of Hon. Jeremy Fogel, United States District Judge, and assigned Case

26   No. 5:07-CV-02101. U.S. Bank predicated removal of the Q2 Action on an allegation that

27   Finisar's Q2 Complaint presented a question arising under the laws of the United States and that

28

**FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF**

1    the Q2 Action therefore falls within the original jurisdiction of the federal district courts created

2    by 28 U.S.C. § 1331.

3        22.    On May 15, 2007, Finisar filed with the Federal Court "Plaintiff Finisar

4    Corporation's Motion to Remand Action to Santa Clara County Superior Court," seeking remand

5    of the Q2 Action *to this Court* on two grounds:  first, that U.S. Bank's removal was untimely; and

6    second, that the Q2 Action is premised upon issues of state law, and does not arise under the laws

7    of the United States; thus it does not fall within the original jurisdiction that the Federal Court is

8    authorized to exercise by 28 U.S.C. § 1331.  As of the date hereof, Finisar's motion is set for

9    hearing on July 20, 2007, and has not yet been heard or decided.  In the event that the Q2 Action

10    is remanded to this Court, as Finisar expects, Finisar will ask this Court to consolidate this Action

11    with the Q2 Action for all purposes.

12                    **V.    FACTUAL BACKGROUND**

13        23.    Finisar entered into the earliest of the Indentures, covering Finisar's 5¼%

14    Convertible Notes due 2008 (the "5¼% Note Indenture"), on or about October 15, 2001.  Finisar

15    entered into the second Indenture, covering Finisar's 2½% Convertible Subordinated Notes due

16    2010 (the "2½% Note Indenture"), on or about October 15, 2003.  Finisar entered into the latest

17    of the Indentures, covering Finisar's 2½% Convertible Senior Notes due 2010 (the "2½% Senior

18    Note Indenture"), on or about October 12, 2006.  Under each of the Indentures, U.S. Bank, as

19    indenture trustee, was denominated as "Trustee"; and Finisar, as obligor, was denominated as the

20    "Company."

21        24.    As of the date of the filing of this Complaint, the aggregate principal amounts

22    outstanding of the 5¼% Convertible Subordinated Notes due 2008 (covered by the 5¼% Note

23    Indenture), 2½% Convertible Subordinated Notes due 2010 (covered by the 2½% Note

24    Indenture), and 2½% Convertible Senior Subordinated Notes due 2010 (covered by the 2½%

25    Senior Note Indenture) were $100,250,000, $50,000,000, and $100,000,000, respectively, for a

26    total aggregate principal amount outstanding under the Notes of $250,250,000.

27        25.    At all times since the making of the Indentures, Finisar has been subject to Section

28    13 or 15(d) of the Exchange Act (thus, a portion of Section 4.02 of the Indentures quoted below

1    has no application). Furthermore, the Indentures have not been, and are not, qualified under the

2    Trust Indenture Act of 1939, as amended (the "TIA"), 15 U.S.C. §§ 77aaa through 77bbbb; and

3    none of the Indentures has been or is the subject of an application for qualification under the TIA.

4        26.    Section 4.02 of each of the Indentures provides:

5            The Company *shall file with the Trustee, within 15 days after it*

6            *files such annual and quarterly reports, information, documents and other*

7            *reports with the [Securities and Exchange] Commission,* copies of its

8            annual report and of the information, documents and other reports (or

9            copies of such portions of any of the foregoing as the Commission may by

10            rules and regulations prescribe) which the Company is required to file

11            with the Commission pursuant to Section 13 or 15(d) of the [Securities]

12            Exchange Act [of 1934]. If at any time the Company is not subject to

13            Section 13 or 15(d) of the Exchange Act, such reports shall be provided at

14            the times the Company would have been required to provide reports had it

15            continued to be subject to such reporting requirements. The Company

16            shall also comply with the other provisions of TIA Section 314(a).

17            [Emphasis added.]

18        27.    As referenced above, Finisar has made public announcements and has submitted to

19    the SEC reports (copies of which it has provided to U.S. Bank) indicating that:

20            (a)    Management initiated a voluntary review of stock option grants that Finisar

21                has made since Finisar's IPO, the preliminary results of which were

22                discussed with the Audit Committee of Finisar's board of directors;

23            (b)    Based on the preliminary results of the voluntary review, Finisar's senior

24                management concluded, and the Audit Committee agreed, that a

25                restatement of Finisar's historical financial statements might be in order, to

26                record non-cash charges for compensation expenses related to some past

27                stock option grants;

28

7.

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1        (c)    To ascertain whether restatement is in order, and to ascertain the scope and

2    content of any such restatement, the Audit Committee, assisted by

3    independent legal counsel and an independent accounting firm,

4    commenced an investigation of Finisar's historical stock options granting

5    practices;

6        (d)    The initial results of the Audit Committee's investigation were announced

7    by Finisar on June 12, 2007, and reported in SEC filings that Finisar made

8    on June 12 and 13, 2007, and subsequently provided to U.S. Bank; and

9        (e)    Until the review, investigation, and restatement process is completed,

10    Finisar will be unable to file periodic Form 10-Q and 10-K reports with the

11    SEC, but Finisar intends to file such reports as soon as practicable

12    following the completion of that process.

13        28.    On or about April 23, 2007, Finisar received from U.S. Bank the three Letters,

14    which are nearly identical in wording. In the Letters, U.S. Bank asserted that Finisar's failure to

15    file with the SEC, by March 17, 2007, its Q3 Form 10-Q constituted a default under the

16    Indentures. The Letters further stated that if Finisar did not cure the purported default within 60

17    days, an "Event of Default" would occur under the Indentures.

18        29.    As set forth above, Section 4.02 of each Indenture requires Finisar to provide to

19    U.S. Bank copies of certain reports that Finisar has filed with the SEC, within 15 days of filing

20    such reports with the SEC. For the reasons explained above, Finisar's Q3 Form 10-Q has not yet

21    been filed with the SEC and the filing of other periodic reports may be delayed, although Finisar

22    intends to promptly file such reports with the SEC (and provide a copy to U.S. Bank) as soon as

23    practicable following the completion of the Audit Committee's investigation and review and any

24    necessary restatements of Finisar's historical financial statements. Because the Q3 Form 10-Q

25    and other periodic reports have not yet been filed with the SEC, Finisar is not in breach of the

26    requirement of the Indentures to provide filed reports to U.S. Bank, Finisar is not in breach of the

27    Indentures, and no "Event of Default" will occur within 60 days of the date of the Letters.

28

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1    ~30.    ~Moreover, even were, *arguendo*, Finisar in some sort of technical default under the

2    Indentures (which Finisar denies), were U.S. Bank to declare acceleration of the Notes in behalf

3    of holders, this Court should enter a judgment declaring that acceleration should not be enforced

4    in this instance because any alleged default by Finisar is technical and immaterial and

5    acceleration would be an inequitably disproportionate remedy constituting a forfeiture.

<div align="center">

## VI.   CAUSE OF ACTION

### (*For Declaratory Relief Against Defendants*)

</div>

8        31.    Finisar repeats and re-alleges the allegations set forth in paragraph nos. 1 through

9    30, inclusive, hereinabove, as if fully set forth herein.

10        32.    Section 4.02 of the Indentures requires Finisar only to provide U.S. Bank with

11    copies of certain annual reports, information, documents, and other reports that Finisar has filed

12    with the SEC pursuant to Sections 13 and 15(d) of the Exchange Act, within 15 days of their

13    filing with the SEC.

14        33.    In light of the circumstances described above Finisar has been prevented from

15    making certain filings, including its Q3 Form 10-Q, with the SEC; Finisar is not yet obligated by

16    the Indentures to provide copies of such un-filed reports with U.S. Bank; and Finisar is not in

17    default under the Indentures as alleged by U.S. Bank.

18        34.    Moreover, even if, *arguendo*, Finisar were determined to be in default under

19    Section 4.02 of the Indentures, enforcing acceleration of the Notes for such a technical default

20    would be inequitable under the facts presented in this Action and should be denied.

21        35.    An actual controversy has arisen between Finisar, on the one hand, and U.S. Bank,

22    on the other hand, respecting Finisar's rights and obligations under the Indentures.  The

23    declaratory relief sought by Finisar in this Action will clarify and settle the legal relations

24    between the parties and will afford relief from the uncertainty and controversy that presently exist

25    with respect to the parties' respective rights and obligations under the Indentures.

26        36.    By reason of the foregoing, and pursuant to California Code of Civil Procedure

27    section 1060, Finisar seeks a declaration of this Court (which shall have the force of a final

28    judgment) that it is not in breach of Section 4.02 of the Indentures either (a) by reason of any

<div align="center">9.</div>

1    delay in making its Q3 Form 10-Q or any other filing with the SEC, or (b) by reason of any

2    failure to provide to U.S. Bank copies of its Q3 Form 10-Q or any other filing not yet made with

3    the SEC.  In the alternative, Finisar seeks a declaration that enforcing any acceleration of the

4    Notes under the facts presented in this Action would be inequitable.

5    ///

6    ///

7    ///

8    ///

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

10.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Finisar prays the Court for the following relief:

1.    That the Court declare and decree that Finisar is not in breach of Section 4.02 of the Indentures by reason of its delay in making its Q3 Form 10-Q or any other filing that may come due pending the completion of Finisar's review, investigation, and restatement process referenced hereinabove;

2.    That the Court declare and decree that Finisar is not in breach of Section 4.02 of the Indentures by reason of its inability or failure to provide U.S. Bank with a copy of Finisar's Q3 Form 10-Q or any other filing not yet made by Finisar with the SEC;

3.    That the Court declare and decree that no "Event of Default" under the Indentures has occurred or will occur either (a) within 60 days of the date of the Letters, or (b) as may subsequently be declared by the Trustee on the same or similar grounds as alleged in the Letters;

4.    In the alternative, that the Court declare that enforcement of any acceleration of the Notes for the default alleged by U.S. Bank, under the facts and circumstances presented in this Action, would be inequitable;

5.    That the Court award Finisar its costs of suit and attorneys' fees and expenses incurred in prosecuting this Complaint; and

6.    That the Court award to Finisar such other and further relief as may be deemed just and proper.

DATED:  June 21, 2007                      Respectfully submitted,

Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP

By:_____
          Sterling A. Brennan
Attorneys for Plaintiff FINISAR CORPORATION

11.

**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
U.S. Bank Trust National Association, a national banking association

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Finisar Corporation, a Delaware corporation



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED

2007 JUN 22 B 1: 14

KIRI TORRE CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY:
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court For The State of California<br>191 N. First St<br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>107CV088503 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sterling A. Brennan (CA State Bar No. 126019), WORKMAN NYDEGGER, 60 East South Temple,
1000 Eagle Gate Tower, Salt Lake City, UT 84111 (801) 533-9800

| DATE: JUN 2 2 2007<br>*(Fecha)* | Kiri Torre<br>Chief Executive Officer/Clerk | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☑ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☑ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc. | www.USCourtForms.com

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):<br>Sterling A. Brennan, CA State Bar No. 126019<br>WORKMAN NYDEGGER<br>60 East South Temple, 1000 Eagle Gate Tower<br>Salt Lake City, UT 84111<br>TELEPHONE NO.: 801-533-9800   FAX NO.: 801-328-1707<br>ATTORNEY FOR (Name): Plaintiff - Finisar Corporation | **FOR COURT USE ONLY**<br><br>ENDORSED<br><br>2007 JUN 22 P 1: 14 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 N. First St
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown

CASE NAME:
Finisar Corporation v. U.S. Bank Trust National Association

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: 107CV089503 |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[✓] Breach of contract/warranty (06)
[ ] Collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
  a. [ ] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action (specify):

5. This case [ ] is [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 21, 2007

Sterling A. Brennan
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2007]

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

Cal. Rules of Court, rules 3.220, 3.400–3.403;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers**
If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Complex Cases**
In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late Claim
Other Civil Petition

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Sterling A. Brennan (CA State Bar No. 126019)<br>WORKMAN NYDEGGER<br>60 East South Temple, 1000 Eagle Gate Tower<br>Salt Lake City, UT 84111<br>TELEPHONE NO.: 801-533-9800   FAX NO. *(Optional)*: 801-328-1707<br>E-MAIL ADDRESS *(Optional)*: sbrennan@wnlaw.com<br>ATTORNEY FOR *(Name)*: Finisar Corporation | FOR COURT USE ONLY<br><br>**ENDORSED**<br><br>2007 JUN 22 P 1: 14<br><br>~~[illegible stamp] CLERK OF THE SUPERIOR COURT<br>COUNTY OF SANTA CLARA, CALIFORNIA~~<br>BY: _____ DEPUTY CLERK |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara<br>STREET ADDRESS: 191 N. First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, CA 95113<br>BRANCH NAME: Downtown | |
|---|---|

| PLAINTIFF/PETITIONER: Finisar Corporation | CASE NUMBER:<br>1 0 7 C V 0 8 8 5 0 3 |
|---|---|
| DEFENDANT/RESPONDENT: U.S. Bank Trust National Association | JUDICIAL OFFICER: |

| NOTICE OF RELATED CASE | DEPT.: |
|---|---|

**The following case or cases are related to the above-captioned case:**

1. a. Title: Finisar Corporation v. U.S. Bank Trust National Association
   b. Court: ☐ same as above ☑ other *(name and address)*:
      U.S. District Court, Northern District of CA, San Jose Division, 280 South First Street, San Jose, CA
   c. Case number: 5:07-CV-02101
   d. Filing date: March 2, 2007
   e. Relationship to this case:
      The same parties and contracts, similar claims and incidents, substantially identical questions of law.
   f. If the related case is pending in the same court as this case, explain why the assignment of the cases to a single judge is likely to result in efficiencies:

      ☑ Additional explanation is attached in Attachment 1.

2. a. Title:
   b. Court: ☐ same as above ☐ other *(name and address)*:

   c. Case number:
   d. Filing date:
   e. Relationship to this case:

   f. If the related case is pending in the same court as this case, explain why the assignment of the cases to a single judge is likely to result in efficiencies:

      ☐ Additional explanation is attached in Attachment 2.

3. ☐ Additional related cases are described in Attachment 3.

Date: June 21, 2007

Sterling A. Brennan
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)                    ▶ _____
                                                              (SIGNATURE OF PARTY OR ATTORNEY)

Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. January 1, 2007]

**NOTICE OF RELATED CASE**

Page 1 of 2<br>Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov

American LegalNet, Inc.<br>www.FormsWorkflow.com

## ATTACHMENT #1 TO NOTICE OF RELATED CASE

Plaintiff Finisar Corporation ("Finisar") commenced *Finisar Corp. v. U.S. Bank Trust National Association, et al.,* currently assigned Case No. 5:07-CV-02101 (the "Related Case") in the United States District Court for the Northern District of California (the "Federal Court"), in *this* Court, where it was assigned **CASE NO. 107CV081092** and placed on the docket of **HON. JOSEPH HUBER**. Defendant U.S. Bank Trust National Association ("U.S. Bank") then removed the Related Case to Federal Court. Finisar has filed a motion with the Federal Court, which has not yet been decided, to remand the Related Case to this Court. If the Related Case is remanded to this Court (presumably to Judge Huber's docket) then Finisar will seek to have the Related Case consolidated with the instant action (the "Action").

In this Action, Finisar seeks a declaration that it is not in default under a series of three trust indentures (the "Indentures") by and between Finisar, as obligor, and U.S. Bank, as trustee. U.S. Bank alleges that Finisar breached Section 4.02 of the Indentures when it did not file its Form 10-Q for Finisar's fiscal quarter ended January 31, 2007 (the "Q3 Form 10-Q") with the Securities Exchange Commission ("SEC") on or before March 17, 2007. Finisar, for its part, alleges *inter alia* that no such obligation was imposed by Section 4.02 of the Indentures.

In the Related Case, Finisar similarly seeks a declaration that it is not in default under Section 4.02 of the Indentures, this time by virtue of having failed to file a Form 10-Q for its fiscal quarter ended October 29, 2006 (the "Q2 Form 10-Q") on or before December 8, 2006.

Thus, in this Action Finisar seeks a declaration *inter alia* that it is not in default under Section 4.02 of the Indentures by reason of having failed to file its Q3 Form 10-Q with the SEC on or before March 17, 2007; while in the Related Case, Finisar seeks a declaration that it is not in default under the same provision of the same contracts by reason of having not filed its Q2 Form 10-Q with the SEC. Accordingly, both this Action and the Related Case are between the same parties, on the same contracts, and seek adjudications of parallel issues that are expected to turn largely on the interpretation of the same contractual provisions.

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

ATTACHMENT A

CASE NUMBER: _107CV088503_

## READ THIS ENTIRE FORM

___PLAINTIFFS___ (the person(s) suing):  Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

___DEFENDANTS___ (the person(s) being sued): **You must do each of the following to protect your rights:**

1. You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;

2. You must send a copy of your written response to the plaintiff; and

3. You must attend the first Case Management Conference.

   **Warning: If you do not do these three things, you may automatically lose this case.**

---

___RULES AND FORMS___:  You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms.  You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing, 49 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

___CASE MANAGEMENT CONFERENCE (CMC)___:  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.  You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

---

Your *Case Management Judge is:*  Kevin J Murphy          **DEPT:** 22

*The first CMC is scheduled as follows:* (Completed by Clerk of Court)
          Date: _OCT 3 0 2007_ Time: _3:00 PM_ Dept: 22

*The next CMC is scheduled as follows:* (Completed by party if the first CMC was continued or has passed)
          Date: _____ Time: _____ Dept.: _____

---

___ALTERNATIVE DISPUTE RESOLUTION (ADR)___: If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference.  Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2156) for a list of ADR providers and their qualifications, services, and fees.

___WARNING___: Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012
Rev. 1/01/04

**CIVIL LAWSUIT NOTICE**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief.

-over-

CV-5003 REV 5/06

<     **Arbitration** is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when:
< ·     The action is for personal injury, property damage, or breach of contract
<     Only monetary damages are sought
<     Witness testimony, under oath, is desired
<     An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

<     **Neutral evaluation** is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
<     The parties are far apart in their view of the law or value of the case
<     The case involves a technical issue in which the evaluator has expertise
<     Case planning assistance would be helpful and would save legal fees and costs
<     The parties are interested in an injunction, consent decree, or other form of equitable relief

<     **Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

<     **Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

    **Contact:**

| | |
|---|---|
| Santa Clara County Superior Court | Santa Clara County DRPA Coordinator |
| ADR Administrator | 408-792-2704 |
| 408-882-2530 | |

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>_ Sterling A. Brennan (CA State Bar No. 126019)<br>WORKMAN NYDEGGER<br>60 East South Temple, 1000 Eagle Gate Tower<br>Salt Lake City, UT 84111<br>TELEPHONE NO: 801-533-9800      FAX NO. *(Optional):* 801-328-1707<br>E-MAIL ADDRESS *(Optional):* sbrennan@wnlaw.com<br>ATTORNEY FOR *(Name):* Finisar Corporation | FOR COURT USE ONLY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara<br>STREET ADDRESS: 191 N. First Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Jose, CA 95113<br>BRANCH NAME: Downtown | |
| PLAINTIFF/PETITIONER: Finisar Corporation<br><br>DEFENDANT/RESPONDENT: U.S. Bank Trust National Association | |
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |

TO *(insert name of party being served):* U.S. Bank Trust National Association

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

Sterling A. Brennan
(TYPE OR PRINT NAME)                              ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
         Civil Case Cover Sheet
         Notice of Related Case

*(To be completed by recipient):*

Date this form is signed: July 11, 2007

Michael B. Fisco for U.S. Bank Trust National Assoc.          ▶
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,            (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                            ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

1   D. ANTHONY RODRIGUEZ (CA SBN 162587)
    EVI K. SCHUELLER (CA SBN 237886)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California 94105-2482
    Telephone: 415.268.7000
4   Facsimile: 415.268.7522
    Email: DRodriguez@mofo.com
5   Email: ESchueller@mofo.com

6   MICHAEL B. FISCO (MN No. 175341)
    ABBY E. WILKINSON (MN No. 0313981)
7   (Pro hac applications pending)
    FAEGRE & BENSON LLP
8   90 South Seventh Street, Suite 2200
    Minneapolis, Minnesota 55402-3901
9   Telephone: 612.766.7000
    Facsimile: 612.766.1600
10  Email: mfisco@faegre.com
    Email: awilkinson@faegre.com
11

12  Attorneys for Defendant U.S. Bank
    Trust National Association,
13  in its capacity as Indenture Trustee

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                      COUNTY OF SANTA CLARA

16  FINISAR CORPORATION,              Case No.    107CV088503

17              Plaintiff,

18      v.                            UNLIMITED JURISDICTION

19  U.S. BANK TRUST NATIONAL          **ANSWER TO COMPLAINT FOR
    ASSOCIATION,                      DECLARATORY RELIEF**
20
                Defendants.
21                                    **BY FAX**

22

23

24

25

26

27

28

ANSWER TO COMPLAINT FOR DECLARATORY RELIEF

sf-2368254



1     U.S. Bank Trust National Association, in its capacity as indenture trustee ("Trustee") for

2    holders of the (a) 5¼% Convertible Subordinated Notes due 2008 under that certain Indenture

3    dated as of October 15, 2001, (b) 2½% Convertible Subordinated Notes due 2010 under that

4    certain Indenture dated as of October 15, 2003, and (c) 2½% Convertible Senior Subordinated

5    Notes due 2010 under that certain Indenture dated as of October 12, 2006, hereby states and

6    alleges in response to the Complaint of Finisar Corporation ("Plaintiff"), filed on June 22, 2007,

7    as follows:[1]

8                    **GENERAL DENIAL**

9     Pursuant to Section 431.30(d) of the California Code of Civil Procedure, the Trustee

10   denies each and every allegation of the unverified Complaint, and the whole thereof, and denies

11   that Plaintiff is entitled to any recovery or relief sought or alleged by reason of any act, omission,

12   or conduct on the part of the Trustee.

13               **AFFIRMATIVE DEFENSES**

14     Without admitting or acknowledging that the Trustee bears any burden of proof as to any

15   of them, the Trustee asserts the affirmative defenses provided for below.  The Trustee hereby

16   reserves all rights to interpose additional affirmative defenses which may be ascertained during

17   the course of discovery in this action.

18            **FIRST AFFIRMATIVE DEFENSE**

19         **(Failure to State a Cause of Action)**

20    1.     The complaint fails to state a claim against the trustee for which relief can be

21   granted.

22            **SECOND AFFIRMATIVE DEFENSE**

23           **(Estoppel and/or Waiver)**

24    2.     The allegations of the Complaint are barred by estoppel and/or waiver.

25

26

27

28

---

[1] All capitalized terms used herein and not otherwise defined shall have the meanings given to such terms in the Complaint.

ANSWER TO COMPLAINT FOR DECLARATORY RELIEF

sf-2368254

1    **THIRD AFFIRMATIVE DEFENSE**

2    **(Unclean Hands)**

3    3.    The allegations of the Complaint are barred by unclean hands.

4    **FOURTH AFFIRMATIVE DEFENSE**

5    **(Breach of Contract)**

6    4.    Plaintiff is in breach of contract.

7    **FIFTH AFFIRMATIVE DEFENSE**

8    **(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

9    5.    Plaintiff is in breach of the Indentures' implied covenant of good faith and fair

10   dealing.

11   **SIXTH AFFIRMATIVE DEFENSE**

12   **(Another Action Pending Between the Same Parties on the Same Cause of Action)**

13   6.    There is another action pending between the same parties on the same cause of

14   action.

15   <u>**PRAYER FOR RELIEF**</u>

16   WHEREFORE, the Trustee respectfully requests that judgment be entered against

17   Plaintiff and for itself as follows:

18        (A)    Dismissing the Complaint with prejudice and on the merits;

19        (B)    Awarding the Trustee the costs and expenses incurred in this action,

20   including but not limited to reasonable attorneys' fees; and

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

2

1      (C)     Awarding such other and further relief as the Court deems fair and

2    equitable.

3

4   Dated:  August 6, 2007               **MORRISON & FOERSTER LLP**

5                                  PAUL T. FRIEDMAN

6                                  D. ANTHONY RODRIGUEZ
                                    EVA K. SCHUELLER

7                                **FAEGRE & BENSON LLP**

8                                MICHAEL B. FISCO

9                                ABBY E. WILKINSON

10

11                      By_____
                                    D. Anthony Rodriguez

12

13                      Attorneys for Defendant,
                      U.S. BANK TRUST NATIONAL

14                      ASSOCIATION, in its capacity
                      as Indenture Trustee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO COMPLAINT FOR DECLARATORY RELIEF

1      **PROOF OF SERVICE**

2          I declare that I am employed with the law firm of Morrison & Foerster LLP, whose address
       is 425 Market Street, San Francisco, California  94105-2482.  I am not a party to the within cause,
3      and I am over the age of eighteen years.

4          I further declare that on August 6, 2007, I served a copy of:

5          **ANSWER TO COMPLAINT FOR DECLARATORY RELIEF**

6      ☒    **BY OVERNIGHT DELIVERY [Code Civ. Proc sec. 1013(d)]** by placing a true
            copy thereof enclosed in a sealed envelope with delivery fees provided for,
7           addressed as follows, for collection by UPS, at 425 Market Street, San Francisco,
            California  94105-2482 in accordance with Morrison & Foerster LLP's ordinary
8           business practices.

9          I am readily familiar with Morrison & Foerster LLP's practice for collection and
       processing of correspondence for overnight delivery and know that in the ordinary
10     course of Morrison & Foerster LLP's business practice the document(s) described
       above will be deposited in a box or other facility regularly maintained by UPS or
11     delivered to an authorized courier or driver authorized by UPS to receive documents
       on the same date that it (they) is are placed at Morrison & Foerster LLP for collection.
12

13     Caroline McIntyre                      Attorney for Plaintiff
       BERGESON, LLP                          Finisar Corporation
14     303 Almaden Boulevard, Suite 500
       San Jose, California  95110-2712
15
       Sterling A. Brennan                    Attorney for Plaintiff
16     L. Rex Sears                           Finisar Corporation
       WORKMAN | NYDEGGER
17     1000 Eagle Gate Tower
       60 East South Temple
18     Salt Lake City, Utah  84111

19

20         I declare under penalty of perjury under the laws of the State of California that the
       foregoing is true and correct.
21
       Executed at San Francisco, California, this _6th_ day of _August_, 2007.
22

23

24

25     _____            _____
            Mary E. Land
26            (typed)                              (signature)

27

28
       sf-2368239

**EXHIBIT B**

EX-4.3 3 a2065665zex-4_3.htm EXHIBIT 4.3
<u>QuickLinks</u> -- Click here to rapidly navigate through this document

<div align="right">Exhibit 4.3</div>

<div align="center">

**FINISAR CORPORATION**

$5^1/4$% Convertible Subordinated Notes

due 2008

———————

**INDENTURE**

Dated as of October 15, 2001

U.S. BANK TRUST NATIONAL ASSOCIATION,

TRUSTEE

———————

**Table of Contents**

</div>

| | | Page |
|---|---|---|

**ARTICLE 1**
**DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION**

| | | |
|---|---|---|
| SECTION 1.01 | Definitions | 1 |
| SECTION 1.02 | Other Definitions | 9 |
| SECTION 1.03 | Incorporation by Reference of Trust Indenture Act | 9 |
| SECTION 1.04 | Rules of Construction | 10 |
| SECTION 1.05 | Acts of Holders | 10 |

**ARTICLE 2**
**THE NOTES**

| | | |
|---|---|---|
| SECTION 2.01 | Form and Dating | 11 |
| SECTION 2.02 | Execution and Authentication | 12 |
| SECTION 2.03 | Registrar, Paying Agent and Conversion Agent | 12 |
| SECTION 2.04 | Paying Agent to Hold Money and Notes in Trust | 13 |
| SECTION 2.05 | Noteholder Lists | 13 |
| SECTION 2.06 | Transfer and Exchange | 13 |
| SECTION 2.07 | Replacement Notes | 14 |
| SECTION 2.08 | Outstanding Notes; Determinations of Holders' Action | 15 |
| SECTION 2.09 | Temporary Notes | 15 |
| SECTION 2.10 | Cancellation | 16 |

SECTION 2.11    Persons Deemed Owners                                                    16
SECTION 2.12    Global Notes                                                            16
SECTION 2.13    CUSIP Numbers                                                           20
SECTION 2.14    Defaulted Interest                                                      20
SECTION 2.15    Registration Default                                                    20

## ARTICLE 3
### REDEMPTION AND PURCHASES

SECTION 3.01    [Reserved]                                                              21
SECTION 3.02    Optional Redemption                                                     21
SECTION 3.03    Notice of Trustee                                                       21
SECTION 3.04    Selection of Notes to be Redeemed                                       21
SECTION 3.05    Notice of Redemption                                                    21
SECTION 3.06    Effect of Notice of Redemption                                          22
SECTION 3.07    Deposit of Redemption Price                                             22
SECTION 3.08    Notes Redeemed in Part                                                  23
SECTION 3.09    Conversion Arrangement on Call for Redemption                           23
SECTION 3.10    Repurchase of Notes at Option of the Holder upon Change in Control      23
SECTION 3.11    Effect of Change in Control Repurchase Notice                           27
SECTION 3.12    Deposit of Change in Control Repurchase Price                           27
SECTION 3.13    Notes Purchased in Part                                                 27
SECTION 3.14    Covenant to Comply with Securities Laws upon Purchase of Notes          28
SECTION 3.15    Repayment to the Company                                                28

## ARTICLE 4
### COVENANTS

SECTION 4.01    Payment of Principal, Premium, Interest on the Notes                    28

i

SECTION 4.02    SEC and Other Reports                                                   28
SECTION 4.03    Compliance Certificate                                                  29
SECTION 4.04    Further Instruments and Acts                                            29
SECTION 4.05    Maintenance of Office or Agency                                         29
SECTION 4.06    Delivery of Certain Information                                         29

## ARTICLE 5
### SUCCESSOR CORPORATION

SECTION 5.01    When Company May Merge or Transfer Assets                               29

## ARTICLE 6
### DEFAULTS AND REMEDIES

SECTION 6.01    Events of Default                                                       31
SECTION 6.02    Acceleration                                                            32
SECTION 6.03    Other Remedies                                                          33
SECTION 6.04    Waiver of Past Defaults                                                 33
SECTION 6.05    Control by Majority                                                     33
SECTION 6.06    Limitation on Suits                                                     33
SECTION 6.07    Rights of Holders to Receive Payment                                    34
SECTION 6.08    Collection Suit by Trustee                                             34
SECTION 6.09    Trustee May File Proofs of Claim                                        34
SECTION 6.10    Priorities                                                              34

SECTION 6.11    Undertaking for Costs                                                                          35
SECTION 6.12    Waiver of Stay, Extension or Usury Laws                                                        35

## ARTICLE 7
## TRUSTEE

SECTION 7.01    Duties and Responsibilities of the Trustee; During Default; Prior to Default                  35
SECTION 7.02    Certain Rights of the Trustee                                                                  36
SECTION 7.03    Trustee Not Responsible for Recitals, Disposition of Notes or Application of                   37
                Proceeds Thereof
SECTION 7.04    Trustee and Agents May Hold Notes; Collections, etc                                            37
SECTION 7.05    Moneys Held by Trustee                                                                         37
SECTION 7.06    Compensation and Indemnification of Trustee and Its Prior Claim                                37
SECTION 7.07    Right of Trustee to Rely on Officers' Certificate, etc                                         38
SECTION 7.08    Conflicting Interests                                                                          38
SECTION 7.09    Persons Eligible for Appointment as Trustee                                                    38
SECTION 7.10    Resignation and Removal; Appointment of Successor Trustee                                      38
SECTION 7.11    Acceptance of Appointment by Successor Trustee                                                 39
SECTION 7.12    Merger, Conversion, Consolidation or Succession to Business of Trustee                         39
SECTION 7.13    Preferential Collection of Claims Against the Company                                          40
SECTION 7.14    Reports by the Trustee                                                                         40
SECTION 7.15    Trustee to Give Notice of Default, But May Withhold in Certain Circumstances                   40

## ARTICLE 8
## DISCHARGE OF INDENTURE

SECTION 8.01    Discharge of Liability on Notes                                                                40
SECTION 8.02    Repayment of the Company                                                                       40

ii

## ARTICLE 9
## AMENDMENTS

SECTION 9.01    Without Consent of Holders                                                                     41
SECTION 9.02    With Consent of Holders                                                                        41
SECTION 9.03    Compliance with Trust Indenture Act                                                            42
SECTION 9.04    Revocation and Effect of Consents, Waivers and Actions                                         42
SECTION 9.05    Notation on or Exchange of Notes                                                               42
SECTION 9.06    Trustee to Sign Supplemental Indentures                                                        42
SECTION 9.07    Effect of Supplemental Indentures                                                             42

## ARTICLE 10
## CONVERSION

SECTION 10.01   Conversion Right and Conversion Price                                                          43
SECTION 10.02   Exercise of Conversion Right                                                                   43
SECTION 10.03   Fractions of Shares                                                                            44
SECTION 10.04   Adjustment of Conversion Price                                                                 44
SECTION 10.05   Notice of Adjustments of Conversion Price                                                      51
SECTION 10.06   Notice Prior to Certain Actions                                                                51
SECTION 10.07   Company to Reserve Common Stock                                                                52
SECTION 10.08   Taxes on Conversions                                                                           52
SECTION 10.09   Covenant as to Common Stock                                                                    52
SECTION 10.10   Cancellation of Converted Notes                                                                52

SECTION 10.11    Effect of Reclassification, Consolidation, Merger or Sale    52
SECTION 10.12    Adjustment for Other Distributions    53
SECTION 10.13    Responsibility of Trustee for Conversion Provisions    54

ARTICLE 11
SUBORDINATION

SECTION 11.01    Agreement to Subordinate    54
SECTION 11.02    Liquidation; Dissolution; Bankruptcy    54
SECTION 11.03    Default on Designated Senior Indebtedness    55
SECTION 11.04    Acceleration of Notes    56
SECTION 11.05    When Distribution Must Be Paid Over    56
SECTION 11.06    Notice by the Company    56
SECTION 11.07    Subrogation    56
SECTION 11.08    Relative Rights    56
SECTION 11.09    Subordination May Not Be Impaired by the Company    56
SECTION 11.10    Distribution or Notice to Representative    57
SECTION 11.11    Rights of Trustee and Paying Agent    57

ARTICLE 12
SECURITY

SECTION 12.01    Security    57

ARTICLE 13
MISCELLANEOUS

SECTION 13.01    Trust Indenture Act Controls    59
SECTION 13.02    Notices    59
SECTION 13.03    Communication by Holders with Other Holders    60

iii

SECTION 13.04    Certificate and Opinion as to Conditions Precedent    60
SECTION 13.05    Statements Required in Certificate or Opinion    60
SECTION 13.06    Separability Clause    61
SECTION 13.07    Rules by Trustee, Paying Agent, Conversion Agent and Registrar    61
SECTION 13.08    Legal Holidays    61
SECTION 13.09    GOVERNING LAW    61
SECTION 13.10    No Recourse Against Others    61
SECTION 13.11    Successors    61
SECTION 13.12    Multiple Originals    61

*EXHIBITS*
Exhibit A-1    Form of Face of Global Note
Exhibit A-2    Form of Certificated Note
Exhibit B-1    Transfer Certificate

iv

**CROSS REFERENCE TABLE\***

| TIA Section | Indenture Section |
|---|---|
| 310(a)(1) | 7.09 |
| (a)(2) | 7.09 |
| (a)(3) | N.A. |
| (a)(4) | N.A. |
| (a)(5) | 7.09 |
| (b) | 7.08; 7.09; 7.10;7.11 |
| (c) | N.A. |
| 311(a) | 7.13 |
| (b) | 7.13 |
| (c) | N.A. |
| 312(a) | 2.05 |
| (b) | 13.03 |
| (c) | 13.03 |
| 313(a) | 7.14 |
| (b)(1) | 7.14 |
| (b)(2) | 7.14 |
| (c) | 13.02 |
| (d) | 7.14 |
| 314(a) | 4.02; 4.03; 13.02 |
| (b) | 12.01(e) |
| (c)(1) | 13.04 |
| (c)(2) | 13.04 |
| (c)(3) | N.A. |
| (d) | 12.01(d) |
| (e) | 13.05 |
| (f) | N.A. |
| 315(a) | 7.01 |
| (b) | 7.15; 13.02 |
| (c) | 7.01 |
| (d) | 7.01 |
| (e) | 6.11 |
| 316(a) (last sentence) | 2.08 |
| (a)(1)(A) | 6.05 |
| (a)(1)(B) | 6.04 |
| (a)(2) | N.A. |
| (b) | 6.07 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.04 |
| 318(a) | 13.01 |

N. A. means Not Applicable

Note: This Cross Reference Table shall not, for any purpose, be deemed to be part of the Indenture.

v

INDENTURE dated as of October 15, 2001 between FINISAR CORPORATION, a Delaware corporation (the "Company"), and U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, as Trustee hereunder (the "Trustee").

## RECITALS OF THE COMPANY

The Company has duly authorized the creation of an issue of its $5^1/4\%$ Convertible Subordinated Notes due 2008 (herein called the "Notes") of substantially the tenor and amount hereinafter set forth, and to provide therefor the Company has duly authorized the execution and delivery of this Indenture.

All things necessary to make the Notes, when the Notes are executed by the Company and authenticated and delivered hereunder, the valid obligations of the Company, and to make this Indenture a valid agreement of the Company, in accordance with their and its terms, have been done. Further, all things necessary to duly authorize the issuance of the Common Stock of the Company issuable upon the conversion of the Notes, and to duly reserve for issuance the number of shares of Common Stock issuable upon such conversion, have been done.

The Notes will be partially secured pursuant to the terms of the Pledge Agreement (as defined herein) by Pledged Securities (as defined herein).

This Indenture is subject to, and shall be governed by, the provisions of the Trust Indenture Act of 1939, as amended, that are required to be a part of and to govern indentures qualified under the Trust Indenture Act of 1939, as amended.

## NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Notes by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Notes, as follows:

## ARTICLE 1

## DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 1.01 *Definitions.* For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(1) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(2) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP; and

(3) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

"*Additional Pledged Securities*" has the meaning specified in the Pledge Agreement.

"*Affiliate*" of any specified person means any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person. For purposes of this definition, "control" when used with respect to any specified person means the power to direct or cause the direction of the management and

policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"*Applicable Procedures*" means, with respect to any transfer or transaction involving a Global Note or beneficial interest therein, the rules and procedures of the Depositary for such Note, in each case to the extent applicable to such transaction and as in effect from time to time.

"*Board of Directors*" means either the board of directors of the Company or any duly authorized committee of such board.

"*Board Resolution*" means a resolution duly adopted by the Board of Directors, a copy of which, certified by the Secretary or an Assistant Secretary of the Company to be in full force and effect on the date of such certification, shall have been delivered to the Trustee.

"*Business Day*" means each day of the year other than a Saturday or a Sunday on which banking institutions are not required or authorized to close in the City of New York or the city in which the principal corporate trust office of the Trustee is located.

"*Capital Stock*" of any corporation means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) stock issued by that corporation.

"*Certificated Notes*" means Notes that are in the form of the Notes attached hereto as Exhibit A-2.

"*Closing Price*" of any security on any date of determination means:

    (1) the closing sale price (or, if no closing sale price is reported, the last reported sale price) of such security on the New York Stock Exchange on such date;

    (2) if such security is not listed for trading on the New York Stock Exchange on any such date, the closing sale price as reported in the composite transactions for the principal U.S. securities exchange on which such security is so listed;

    (3) if such security is not so listed on a U.S. national or regional securities exchange, the closing sale price as reported by the NASDAQ National Market;

    (4) if such security is not so reported, the last quoted bid price for such security in the over-the-counter market as reported by the National Quotation Bureau or similar organization; or

    (5) if such bid price is not available, the average of the mid-point of the last bid and ask prices of such security on such date from at least three nationally recognized independent investment banking firms retained for this purpose by the Company.

"*Closing Time*" has the meaning specified in the Purchase Agreement.

"*Collateral Account*" means an account established with the Collateral Agent pursuant to the terms of the Pledge Agreement for the deposit of the Pledged Securities to be purchased by the Company with a portion of the proceeds from the sale of the Notes.

"*Collateral Agent*" means, initially, U.S. Bank National Association, a national banking association, as collateral agent under the Pledge Agreement.

"*Common Stock*" means the Common Stock, par value $0.001 per share, of the Company authorized at the date of this instrument as originally executed. Subject to the provisions of Section 10.11, shares issuable on conversion or repurchase of Notes shall include only shares of Common Stock or shares of any class or classes of common stock resulting from any reclassification or reclassifications thereof; provided, however, that if at any time there shall be more than one such resulting class, the shares so issuable on conversion of Notes shall include shares of all such classes, and the shares of each such class then so issuable shall be substantially in the proportion which the total number of shares of such class resulting from all such reclassifications bears to the total number of shares of all such classes resulting from all such reclassifications.

"*common stock*" means any stock of any class of capital stock which has no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the issuer.

<div align="center">2</div>

"*Company*" means the party named as the "Company" in the first paragraph of this Indenture until a successor replaces it pursuant to the applicable provisions of this Indenture, and, thereafter, "Company" shall mean such successor. The foregoing sentence shall likewise apply to any subsequent such successor or successors.

"*Company Request*" or "*Company Order*" means a written request or order signed in the name of the Company by any two Officers.

"*Conversion Agent*" means any person authorized by the Company to convert Notes in accordance with Article 10 hereof.

"*Corporate Trust Office*" means the principal office of the Trustee at which at any time its corporate trust business shall be administered, which office at the date hereof is located at 100 Wall Street, 16th Floor, New York, New York, 10005, or such other address as the Trustee may designate from time to time by notice to the Holders and the Company, or the principal corporate trust office of any successor Trustee (or such other address as a successor Trustee may designate from time to time by notice to the Holders and the Company).

"*Date of Delivery*" has the meaning specified in the Purchase Agreement.

"*Default*" means any event which is, or after notice or passage of time or both would be, an Event of Default.

"*Designated Senior Indebtedness*" means the Company's obligations under any particular Senior Indebtedness that expressly provides that such Senior Indebtedness shall be "Designated Senior Indebtedness" for purposes of this Indenture.

"*Dollar*" or "*U.S. $*" means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

"*GAAP*" means United States generally accepted accounting principles as in effect from time to time.

"*Global Notes*" means Notes that are in the form of the Notes attached hereto as Exhibit A-1.

"*Guarantee*" means a guarantee (other than by endorsement of negotiable instruments for collection in the ordinary course of business), direct or indirect, contingent or otherwise, in any manner (including, without limitation, letters of credit and reimbursement agreements in respect thereof), of all or any part of any Indebtedness.

"*Holder*" or "*Noteholder*" means a person in whose name a Note is registered on the Registrar's books.

*"Indebtedness"* means, with respect to any person, without duplication:

(1) all indebtedness, obligations and other liabilities, contingent or otherwise, of such person for borrowed money (including overdrafts) or for the deferred purchase price of property or services, excluding any trade payables and other accrued current liabilities incurred in the ordinary course of business, but including, without limitation, all obligations, contingent or otherwise, of such person in connection with any letters of credit and acceptances issued under letter of credit facilities, acceptance facilities or other similar facilities;

(2) all obligations of such person evidenced by bonds, credit or loan agreements, notes, debentures or other similar instruments;

(3) indebtedness of such person created or arising under any conditional sale or other title retention agreement with respect to property acquired by such person (even if the rights and remedies of the seller or lender under such agreement in the event of default are limited to

3

repossession or sale of such property), but excluding trade payables arising in the ordinary course of business;

(4) all obligations and liabilities, contingent or otherwise, in respect of leases of the person required, in conformity with GAAP, to be accounted for as capitalized lease obligations on the balance sheet of the person and all obligations and other liabilities, contingent or otherwise, under any lease or related document, including a purchase agreement, in connection with the lease of real property or improvements thereon which provides that the person is contractually obligated to purchase or cause a third party to purchase the leased property or pay an agreed upon residual value of the leased property to the lessor and the obligations of the person under the lease or related document to purchase or to cause a third party to purchase the leased property whether or not such lease transaction is characterized as an operating lease or a capitalized lease in accordance with GAAP, including, without limitations, synthetic lease obligations;

(5) all obligations of such person under or in respect of interest rate agreements, currency agreements or other swap, cap floor or collar agreement, hedge agreement, forward contract or similar instrument or agreement or foreign currency, hedge, exchange or purchase or similar instrument or agreement;

(6) all indebtedness referred to in (but not excluded from) the preceding clauses (1) through (5) of other persons and all dividends of other persons, the payment of which is secured by (or for which the holder of such indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien or with respect to property (including, without limitation, accounts and contract rights) owned by such person, even though such person has not assumed or become liable for the payment of such indebtedness (the amount of such obligation being deemed to be the lesser of the value of such property or asset or the amount of the obligation so secured);

(7) all guarantees by such person of indebtedness referred to in this definition or of any other person;

(8) all Redeemable Capital Stock of such person valued at the greater of its voluntary or involuntary maximum fixed repurchase price plus accrued and unpaid dividends;

(9) the present value of the obligation of such person as lessee for net rental payments (excluding all amounts required to be paid on account of maintenance and repairs, insurance, taxes, assessments, water, utilities and similar charges to the extent included in such rental payments) during the remaining term of the lease included in any such sale and leaseback transaction including any period for which such lease has been extended or may, at the option of the lessor, be extended. Such present value shall be calculated using a

discount rate equal to the rate of interest implicit in such transaction, determined in accordance with GAAP; and

(10) any and all refinancings, replacements, deferrals, renewals, extensions and refundings of or amendments, modifications or supplements to, any indebtedness, obligation or liability of the kind described in clauses (1) through (9) above.

"*Indenture*" means this Indenture, as amended or supplemented from time to time in accordance with the terms hereof, including the provisions of the TIA that are deemed to be a part hereof.

"*Initial Pledged Securities*" has the meaning specified in the Pledge Agreement.

"*Initial Purchasers*" means Merrill Lynch, Pierce, Fenner & Smith Incorporated, CIBC World Markets Corp and J.P. Morgan Securities Inc.

"*Interest Payment Date*" means the Stated Maturity of an installment of interest on the Notes.

"*Interest Rate*" means 5.25% per annum.

4

---

"*Issue Date*" of any Note means the date on which the Note was originally issued or deemed issued as set forth on the face of the Note.

"*Lien*" means, with respect to any asset, any mortgage, lien, pledge, charge, security interest or encumbrance of any kind in respect of such asset given to secure Indebtedness, whether or not filed, recorded or otherwise perfected under applicable law (including any conditional sale or other title retention agreement, any lease in the nature thereof, any option or other agreement to sell or give a security interest in and any filing of or agreement to give any financing statement under the Uniform Commercial Code (or equivalent statutes) of any jurisdiction with respect to any such lien, pledge, charge or security interest).

"*Notes*" has the meaning ascribed to it in the first paragraph under the caption "Recitals of the Company".

"*Officer*" means the Chairman of the Board, the Vice Chairman, the Chief Executive Officer, the President, any Executive Vice President, any Senior Vice President, any Vice President, the Treasurer or the Secretary or any Assistant Treasurer or Assistant Secretary of the Company.

"*Officers' Certificate*" means a written certificate containing the information specified in Sections 13.04 and 13.05, signed in the name of the Company by any two Officers, and delivered to the Trustee. An Officers' Certificate given pursuant to Section 4.03 shall be signed by one authorized financial or accounting Officer of the Company but need not contain the information specified in Sections 13.04 and 13.05.

"*144A Global Note*" means a permanent Global Note in the form of the Note attached hereto as Exhibit A-1, and that is deposited with and registered in the name of the Depositary, representing Notes sold in reliance on Rule 144A under the Securities Act.

"*Opinion of Counsel*" means a written opinion containing the information specified in Sections 13.04 and 13.05, from legal counsel who is reasonably acceptable to the Trustee. The counsel may be an employee of, or counsel to, the Company or the Trustee.

"*Over-Allotment Option*" means the over-allotment option granted by the Company to the Initial Purchasers to

purchase up to an additional $25,000,000 aggregate principal amount of Notes to cover over-allotments pursuant to the Purchase Agreement.

"*person*" or "*Person*" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof, including any subdivision or ongoing business of any such entity or substantially all of the assets of any such entity, subdivision or business.

"*Pledge Agreement*" means the Collateral Pledge and Security Agreement, dated as of October 15, 2001, among the Company, the Trustee and the Collateral Agent, as such agreement may be amended, restated, supplemented or otherwise modified from time to time.

"*Pledged Securities*" means the U.S. Government Obligations to be purchased by the Company and held in the Collateral Account in accordance with the Pledge Agreement.

"*principal*" of a Note means the principal amount due on the Stated Maturity as set forth on the face of the Note.

"*Purchase Agreement*" means the Purchase Agreement, dated as of October 9, 2001, between the Company and the Initial Purchasers.

"*Redeemable Capital Stock*" means any class of the Company's Capital Stock that, either by its terms, by the terms of any securities into which it is convertible or exchangeable or by contract or otherwise, is, or upon the happening of an event or passage of time would be, required to be redeemed

5

(whether by sinking fund or otherwise) prior to the date that is 91 days after the Stated Maturity of the Notes or is redeemable at the option of the Holder thereof at any time prior to such date, or is convertible into or exchangeable for debt securities at any time prior to such date (unless it is convertible or exchangeable solely at the Company's option).

"*Redemption Date*" or "*redemption date*" means the date specified for redemption of the Notes in accordance with the terms of the Notes and this Indenture.

"*Redemption Price*" or "*redemption price*" shall have the meaning set forth in paragraph 5 on the reverse side of the Notes.

"*Registration Rights Agreement*" means the Registration Rights Agreement of even date herewith entered into by the Company and the Initial Purchasers.

"*Regular Record Date*" means, with respect to the interest payable on any Interest Payment Date, the close of business on April 1 or October 1 (whether or not a Business Day), as the case may be, next preceding such Interest Payment Date.

"*Responsible Officer*" means, when used with respect to the Trustee, any officer within the corporate trust department of the Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Trustee who customarily performs functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject.

"*Restricted Note*" means a Note required to bear the restrictive legend set forth in the form of Note set forth in Exhibits A-1 and A-2 of this Indenture.

*"Restriction Termination Date"* means, with respect to any Note, the date that is two years after the later of:

(1) the Issue Date of the Note, or, in the case of Common Stock, the Issue Date of the Note upon the conversion of which such Common Stock was issued; and

(2) the last date on which any "affiliate," as defined in Rule 144 (or successor provision) under the Securities Act, of the Company was the owner of such Note or Common Stock.

*"Rule 144A"* means Rule 144A under the Securities Act (or any successor provision), as it may be amended from time to time.

*"SEC"* means the Securities and Exchange Commission.

*"Securities Act"* means the United States Securities Act of 1933 (or any successor statute), as amended from time to time.

*"Senior Indebtedness"* means:

(1) the principal of and premium, if any, and interest on, and fees, costs, enforcement expenses, collateral protection expenses and other reimbursement or indemnity obligations in respect of all of the Indebtedness of the Company or obligations to any person for money borrowed that is evidenced by a note, bond, debenture, loan agreement, or similar instrument or agreement including default interest and interest accruing after a bankruptcy;

(2) commitment or standby fees due and payable to lending institutions with respect to credit facilities available to the Company;

(3) all of the Company's noncontingent obligations (i) for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction, (ii) under interest rate swaps, caps, collars, options and similar arrangements and (iii) under any foreign exchange

6

contract, currency swap agreement, futures contract, currency option contract or other foreign currency hedge;

(4) all of the Company's obligations under leases for real estate, facilitates, equipment or related assets, whether or not capitalized, entered into or leased for financing purposes;

(5) any liabilities of others described in clauses (1) through (5) above that the Company has guaranteed or which are otherwise the Company's legal liability; and

(6) renewals, extensions, refundings, refinancings, restructurings, amendments and modifications of any such indebtedness or guarantee.

Notwithstanding the foregoing, "Senior Indebtedness" shall not include:

(a) Indebtedness or other obligations of the Company that by its terms ranks equal or junior in right of payment to the Notes;

(b) Indebtedness evidenced by the Notes;

(c) Indebtedness of the Company that by operation of law is subordinate to any general unsecured obligations of the Company;

(d) accounts payable or other liabilities owed or owing by the Company to trade creditors (including guarantees thereof or instruments evidencing such liabilities);

(e) amounts owed by the Company for compensation to employees or for services rendered to the Company;

(f) Indebtedness of the Company to any Subsidiary or any other Affiliate of the Company or any of such Affiliate's Subsidiaries, except if it is pledged as security for any Senior Indebtedness;

(g) Capital Stock of the Company;

(h) Indebtedness of the Company evidenced by any Guarantee of any such Indebtedness ranking equal or junior in right of payment to the Notes; and

(i) Indebtedness of the Company which, when incurred and without respect to any election under Section 1111(b) of Title 11 of the United States Code, is without recourse to the Company.

"*Significant Subsidiary*" means a Subsidiary of the Company, including its Subsidiaries that meets any of the following conditions:

(1) the Company's and its other Subsidiaries' investments in and advances to the Subsidiary exceed 10 percent of the total assets of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years; or

(2) the Company's and its other Subsidiaries' proportionate share of the total assets of the Subsidiary exceeds 10 percent of the total assets of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years; or

(3) the Company's and its other Subsidiaries' equity in the income from continuing operations before income taxes, extraordinary items and cumulative effect of a change in accounting principles of the Subsidiary exceeds 10 percent of such income of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years.

"*Stated Maturity*", when used with respect to any Note or any installment of interest thereon, means the date specified in such Note as the fixed date on which the principal of such Note or such installment of interest is due and payable.

7

---

"*Subsidiary*" means (i) a corporation, a majority of whose Capital Stock with voting power, under ordinary circumstances, to elect directors is, at the date of determination, directly or indirectly owned by the Company, by one or more Subsidiaries of the Company or by the Company and one or more Subsidiaries of the Company, (ii) a partnership in which the Company or a Subsidiary of the Company holds a majority interest in the equity capital or profits of such partnership, or (iii) any other person (other than a corporation) in which the Company, a Subsidiary of the Company or the Company and one or more Subsidiaries of the Company, directly or indirectly, at the date of determination, has (x) at least a majority ownership interest or (y) the power to elect or direct the election of a majority of the directors or other governing body of such person.

"*TIA*" means the Trust Indenture Act of 1939 as in effect on the date of this Indenture, provided, however, that in

the event the TIA is amended after such date, TIA means, to the extent required by any such amendment, the TIA as so amended.

"*Trading Day*" means a day during which trading in the Common Stock generally occurs on the New York Stock Exchange or, if the Common Stock is not listed on the New York Stock Exchange, on the principal other national or regional securities exchange on which the Common Stock is then listed or, if the Common Stock is not listed on a national or regional securities exchange, on the National Association of Notes Dealers Automated Quotation System or, if the Common Stock is not quoted on the National Association of Securities Dealers Automated Quotation System, on the principal other market on which the Common Stock is then traded.

"*Trustee*" means the party named as the "Trustee" in the first paragraph of this Indenture until a successor replaces it pursuant to the applicable provisions of this Indenture and, thereafter, shall mean such successor. The foregoing sentence shall likewise apply to any subsequent such successor or successors.

"*United States*" means the United States of America (including the States and the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction (its "possessions" including Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

"*U.S. Government Obligations*" means securities that are (i) direct obligations of the United States of America, the payment of which its full faith and credit is pledged or (ii) obligations of a Person controlled or supervised by or acting as an agency or instrumentality of the United States of America, the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case, are not callable or redeemable at the option of the issuer thereof at any time prior to the Stated Maturity of the Notes, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such U.S. Government Obligation or a specific payment of interest on or principal of any such U.S. Government Obligation held by such custodian for the account of the holder of a depository receipt; provided that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the U.S. Government Obligation for the specific payment of interest on or principal of the U.S. Government Obligation evidenced by such depository receipt.

<div align="center">8</div>

SECTION 1.02  *Other Definitions.*

| Term | Defined in Section |
| --- | --- |
| "Act" | 1.05(a) |
| "Agent Members" | 2.12 |
| "Bankruptcy Law" | 6.01 |
| "Change in Control" | 3.10(a) |
| "Change in Control Repurchase Date" | 3.10(a) |
| "Change in Control Repurchase Notice" | 3.10(d) |
| "Change in Control Repurchase Price" | 3.10(a) |
| "Conversion Price" | 10.01 |
| "Current Market Price" | 10.04(g) |
| "Custodian" | 6.01 |
| "Depositary" | 2.01(a) |
| "DTC" | 2.01(a) |
| "Event of Default" | 6.01 |
| "Exchange Act" | 3.10(a) |
| "excluded securities" | 10.04(d) |
| "Expiration Time" | 10.04(f) |

| | |
|---|---|
| "fair market value" | 10.04(g) |
| "Legal Holiday" | 13.08 |
| "Legend" | 2.06(f) |
| "Non-Electing Share" | 10.11 |
| "Non-Payment Default" | 11.03(b) |
| "Notice of Default" | 6.01 |
| "Paying Agent" | 2.03 |
| "Payment Blockage Period" | 11.03(b) |
| "Payment Default" | 11.03(a) |
| "Purchased Shares" | 10.04(f) |
| "Permitted Junior Securities" | 11.02 |
| "QIB" | 2.01(a) |
| "Record Date" | 10.04(g) |
| "Reference Period" | 10.04(d) |
| "Registrar" | 2.03 |
| "Rule 144A Information" | 4.06 |
| "Trigger Event" | 10.04(d) |

SECTION 1.03 *Incorporation by Reference of Trust Indenture Act.* Whenever this Indenture refers to a provision of the TIA, the provision is incorporated by reference in and made a part of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the SEC.

"indenture Notes" means the Notes.

"indenture Note holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Trustee.

"obligor" on the indenture Notes means the Company.

9

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by SEC rule have the meanings assigned to them by such definitions.

SECTION 1.04 *Rules of Construction.* Unless the context otherwise requires:

(a) a term has the meaning assigned to it;

(b) an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP as in effect from time to time;

(c) "or" is not exclusive;

(d) "including" means including, without limitation; and

(e) words in the singular include the plural, and words in the plural include the singular.

SECTION 1.05 *Acts of Holders.* (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by their agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section.

(b) The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to such officer the execution thereof. Where such execution is by a signer acting in a capacity other than such signer's individual capacity, such certificate or affidavit shall also constitute sufficient proof of such signer's authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner which the Trustee deems sufficient.

The ownership of Notes shall be proved by the register for the Notes or by a certificate of the Registrar.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Note shall bind every future Holder of the same Note and the holder of every Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Note.

If the Company shall solicit from the Holders any request, demand, authorization, direction, notice, consent, waiver or other Act, the Company may, at its option, by or pursuant to a resolution of the Board of Directors, fix in advance a record date for the determination of Holders entitled to give such request, demand, authorization, direction, notice, consent, waiver or other Act, but the Company shall have no obligation to do so. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other Act may be given before or after such record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for purposes of determining whether Holders of the requisite proportion of outstanding Notes have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other Act, and for that purpose the outstanding Notes shall be computed as of such record date; provided that no such authorization, agreement or consent by the Holders on such record date

10

shall be deemed effective unless it shall become effective pursuant to the provisions of this Indenture not later than six months after the record date.

## ARTICLE 2

## THE NOTES

SECTION 2.01 *Form and Dating.* The Notes and the Trustee's certificate of authentication to be borne by such Notes shall be substantially in the form annexed hereto as Exhibits A-1 and A-2, which are incorporated in and made a part of this Indenture. The terms and provisions contained in the form of Note shall constitute, and are hereby expressly made, a part of this Indenture and to the extent applicable, the Company and the Trustee, by their execution and delivery of this Indenture, expressly agree to such terms and provisions and to be bound thereby.

Any of the Notes may have such letters, numbers or other marks of identification and such notations, legends and

endorsements as the officers executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange or automated quotation system on which the notes may be listed or designated for issuance, or to conform to usage.

(a) *Global Notes.* Notes offered and sold within the United States to qualified institutional investors as defined in Rule 144A ("QIBs") in reliance on Rule 144A shall be issued, initially in the form of a 144A Global Note, which shall be deposited with the Trustee at its Corporate Trust Office, as custodian for, and registered in the name of, The Depository Trust Company ("DTC") or the nominee thereof (such depositary, or any successor thereto, and any such nominee being hereinafter referred to as the "Depositary"), duly executed by the Company and authenticated by the Trustee as hereinafter provided. The aggregate principal amount of the 144A Global Notes may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary as hereinafter provided.

(b) *Global Notes in General.* Each Global Note shall represent such of the outstanding Notes as shall be specified therein and each shall provide that it shall represent the aggregate amount of outstanding Notes from time to time endorsed thereon and that the aggregate amount of outstanding Notes represented thereby may from time to time be reduced or increased, as appropriate, to reflect exchanges, redemptions and conversions.

Any adjustment of the aggregate principal amount of a Global Note to reflect the amount of any increase or decrease in the amount of outstanding Notes represented thereby shall be made by the Trustee in accordance with instructions given by the Holder thereof as required by Section 2.12 hereof and shall be made on the records of the Trustee and the Depositary.

(c) *Book-Entry Provisions.* This Section 2.01(c) shall apply only to Global Notes deposited with or on behalf of the Depositary.

The Company shall execute and the Trustee shall, in accordance with this Section 2.01(c), authenticate and deliver initially one or more Global Notes that (a) shall be registered in the name of the Depositary, (b) shall be delivered by the Trustee to the Depositary or pursuant to the Depositary's instructions and (c) shall bear legends substantially to the following effect:

"UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY

<center>11</center>

TRUST COMPANY (AND ANY PAYMENT HEREON IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL SINCE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

TRANSFERS OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO NOMINEES OF THE DEPOSITORY TRUST COMPANY OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN ARTICLE TWO OF THE INDENTURE REFERRED TO ON THE REVERSE HEREOF."

(d) *Restrictive Legends.* Until the Restriction Termination Date, all Global Notes and all Certificated Notes shall bear the Legend, unless such Notes have been transferred pursuant to a registration statement that has been declared effective under the Securities Act. Until the Restriction Termination Date, the Company covenants that any stock certificate representing shares of Common Stock delivered by the Company upon conversion of any Notes will bear the Legend, unless such shares have been sold pursuant to a registration statement that has been declared effective under the Securities Act.

(e) *Certificated Notes.* Notes not issued as interests in the Global Notes will be issued in certificated form substantially in the form of Exhibit A-2 attached hereto.

SECTION 2.02. *Execution and Authentication.* The Notes shall be executed on behalf of the Company by any Officer, under its corporate seal reproduced thereon. The signature of the Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signatures of individuals who were at the time of the execution of the Notes the proper Officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of authentication of such Notes.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Note a certificate of authentication substantially in the form provided for herein duly executed by the Trustee by manual signature of an authorized officer, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

The Trustee shall authenticate and deliver Notes for original issue in an aggregate principal amount of up to $100,000,000, or an aggregate principal amount of up to $125,000,000 if the Over-Allotment Option is exercised fully, upon a Company Order without any further action by the Company. The aggregate principal amount of Notes outstanding at any time may not exceed the amount set forth in the foregoing sentence, except as provided in Section 2.07.

The Notes shall be issued only in registered form without coupons and only in denominations of $1,000 in principal amount and any integral multiple thereof.

SECTION 2.03. *Registrar, Paying Agent and Conversion Agent.* The Company shall maintain an office or agency where Notes may be presented for registration of transfer or for exchange ("Registrar"), an office or agency where Notes may be presented for purchase or payment ("Paying Agent") and an office or agency where Notes may be presented for conversion ("Conversion Agent"). The Registrar shall keep a register of the Notes and of their transfer and exchange. The Company may have one or more co-registrars, one or more additional paying agents and one or more additional conversion agents. The term Paying Agent includes any additional paying agent, including any named

12

---

pursuant to Section 4.05. The term Conversion Agent includes any additional conversion agent, including any named pursuant to Section 4.05.

The Company shall enter into an appropriate agency agreement with any Registrar, Paying Agent, Conversion Agent or co-registrar (other than the Trustee). The agreement shall implement the provisions of this Indenture that relate to such agent. The Company shall notify the Trustee of the name and address of any such agent. If the Company fails to maintain a Registrar, Paying Agent or Conversion Agent, the Trustee shall act as such and shall be entitled to appropriate compensation therefor pursuant to Section 7.06. The Company or any Subsidiary or an Affiliate of either of them may act as Paying Agent, Registrar, Conversion Agent or co-registrar.

The Company initially appoints the Trustee as Registrar, Conversion Agent and Paying Agent in connection with the Notes.

SECTION 2.04 *Paying Agent to Hold Money and Notes in Trust.* Except as otherwise provided herein, on or prior to each due date of payments in respect of any Note, the Company shall deposit with the Paying Agent a sum of money (in immediately available funds if deposited on the due date) sufficient to make such payments when so becoming due. The Company shall require each Paying Agent (other than the Trustee) to agree in writing that the Paying Agent shall hold in trust for the benefit of Noteholders or the Trustee all money held by the Paying Agent for the making of payments in respect of the Notes and shall notify the Trustee of any default by the Company in making any such payment. At any time during the continuance of any such default, the Paying Agent shall, upon the written request of the Trustee, forthwith pay to the Trustee all money so held in trust. If the Company, a Subsidiary or an Affiliate of either of them acts as Paying Agent, it shall segregate the money held by it as Paying Agent and hold it as a separate trust fund. The Company at any time may require a Paying Agent to pay all money held by it to the Trustee and to account for any funds disbursed by it. Upon doing so, the Paying Agent shall have no further liability for the money.

SECTION 2.05 *Noteholder Lists.* The Trustee shall preserve in as current a form as is reasonably practicable the most recent list available to it of the names and addresses of Noteholders. If the Trustee is not the Registrar, the Company shall cause to be furnished to the Trustee at least semiannually on January 1 and July 1 a listing of Noteholders dated within 13 days of the date on which the list is furnished and at such other times as the Trustee may request in writing a list in such form and as of such date as the Trustee may reasonably require of the names and addresses of Noteholders.

SECTION 2.06 *Transfer and Exchange.* Subject to Section 2.12 hereof, (a) upon surrender for registration of transfer of any Note, together with a written instrument of transfer satisfactory to the Registrar duly executed by the Noteholder or such Noteholder's attorney duly authorized in writing, at the office or agency of the company designated as Registrar or co-registrar pursuant to Section 2.03, the Company shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes of any authorized denomination or denominations, of a like aggregate principal amount. The Company shall not charge a service charge for any registration of transfer or exchange, but the Company may require payment of a sum sufficient to pay all taxes, assessments or other governmental charges that may be imposed in connection with the transfer or exchange of the Notes from the Noteholder requesting such transfer or exchange.

At the option of the Holder, Notes may be exchanged for other Notes of any authorized denomination or denominations, of a like aggregate principal amount, upon surrender of the Notes to be exchanged, together with a written instrument of transfer satisfactory to the Registrar duly executed by the Noteholder or such Noteholder's attorney duly authorized in writing, at such office or agency. Whenever any Notes are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Notes which the Holder making the exchange is entitled to receive.

13

The Company shall not be required to make, and the Registrar need not register, transfers or exchanges of Notes selected for redemption (except, in the case of Notes to be redeemed in part, the portion thereof not to be redeemed) or any Notes in respect of which a Change in Control Repurchase Notice (as defined in Section 3.10(d)) has been given and not withdrawn by the Holder thereof in accordance with the terms of this Indenture (except, in the case of Notes to be purchased in part, the portion thereof not to be purchased) or any Notes for a period of 15 days before the mailing of a notice of redemption of Notes to be redeemed.

(b) Notwithstanding any provision to the contrary herein, so long as a Global Note remains outstanding and is held by or on behalf of the Depositary, transfers of a Global Note, in whole or in part, shall be made only in accordance with Section 2.12 and this Section 2.06(b). Transfers of a Global Note shall be limited to transfers of such Global Note in whole, or in part, to nominees of the Depositary or to a successor of the Depositary or such successor's nominee.

(c) Successive registrations and registrations of transfers and exchanges as aforesaid may be made from time to time as desired, and each such registration shall be noted on the register for the Notes.

(d) Any Registrar appointed pursuant to Section 2.03 hereof shall provide to the Trustee such information as the Trustee may reasonably require in connection with the delivery by such Registrar of Notes upon transfer or exchange of Notes.

(e) No Registrar shall be required to make registrations of transfer or exchange of Notes during any periods designated in the text of the Notes or in this Indenture as periods during which such registration of transfers and exchanges need not be made.

(f) If Notes are issued upon the transfer, exchange or replacement of Notes subject to restrictions on transfer and bearing the legends set forth on the form of Note attached hereto as Exhibits A-1 and A-2 setting forth such restrictions (collectively, the "Legend"), or if a request is made to remove the Legend on a Note, the Notes so issued shall bear the Legend, or the Legend shall not be removed, as the case may be, unless there is delivered to the Company and the Registrar such satisfactory evidence, which shall include an Opinion of Counsel, as may be reasonably required by the Company and the Registrar, that neither the Legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A or Rule 144 under the Securities Act or that such Notes are not "restricted" within the meaning of Rule 144 under the Securities Act. Upon (i) provision of such satisfactory evidence, or (ii) notification by the Company to the Trustee and Registrar of the sale of such Note pursuant to a registration statement that is effective at the time of such sale, the Trustee, at the written direction of the Company, shall authenticate and deliver a Note that does not bear the Legend. If the Legend is removed from the face of a Note and the Note is subsequently held by an Affiliate of the Company, the Legend shall be reinstated.

SECTION 2.07 *Replacement Notes.* If (a) any mutilated Note is surrendered to the Trustee, or (b) the Company and the Trustee receive evidence to their satisfaction of the destruction, loss or theft of any Note, and there is delivered to the Company and the Trustee such Note or indemnity as may be required by them to save each of them harmless, then, in the absence of notice to the Company or the Trustee that such Note has been acquired by a bona fide purchaser, the Company shall execute and upon its written request the Trustee shall authenticate and deliver, in exchange for any such mutilated Note or in lieu of any such destroyed, lost or stolen Note, a new Note of like tenor and principal amount, bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Note has become or is about to become due and payable, or is about to be purchased by the Company pursuant to Article 3 hereof, the Company in its discretion may, instead of issuing a new Note, pay or purchase such Note, as the case may be.

Upon the issuance of any new Notes under this Section 2.07, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in

14

relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Note issued pursuant to this Section 2.07 in lieu of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 2.07 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

SECTION 2.08 *Outstanding Notes; Determinations of Holders' Action.* Notes outstanding at any time are all the Notes authenticated by the Trustee except for those cancelled by it or delivered to it for cancellation, those paid pursuant to Section 2.07 and those described in this Section 2.08 as not outstanding. A Note does not cease to be outstanding because the Company or an Affiliate thereof holds the Note; provided, however, that in determining whether the Holders of the requisite principal amount of the outstanding Notes have given or concurred in any request, demand, authorization, direction, notice, consent or waiver hereunder, Notes owned by the Company or any other obligor upon the Notes or any Affiliate of the Company or such other obligor shall be disregarded and deemed not to be outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes which a Responsible Officer of the Trustee knows to be so owned shall be so disregarded. Subject to the foregoing, only Notes outstanding at the time of such determination shall be considered in any such determination (including, without limitation, determinations pursuant to Articles 6 and 9).

If a Note is replaced pursuant to Section 2.07, it ceases to be outstanding unless the Trustee receives proof satisfactory to it that the replaced Note is held by a bona fide purchaser.

If the Paying Agent holds, in accordance with this Indenture, on a Redemption Date, or on the Business Day following the Change in Control Repurchase Date, or on Stated Maturity, money or securities, if permitted hereunder, sufficient to pay Notes payable on that date, then immediately after such Redemption Date, Change in Control Repurchase Date or Stated Maturity, as the case may be, such Notes shall cease to be outstanding and interest on such Notes shall cease to accrue; provided that, if such Notes are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor reasonably satisfactory to the Trustee has been made.

If a Note is converted in accordance with Article 10, then from and after the time of conversion on the conversion date, such Note shall cease to be outstanding and interest shall cease to accrue on such Note.

SECTION 2.09 *Temporary Notes.* Pending the preparation of definitive Notes, the Company may execute, and upon Company Order the Trustee shall authenticate and deliver, temporary Notes which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as conclusively evidenced by their execution of such Notes.

If temporary Notes are issued, the Company will cause definitive Notes to be prepared without unreasonable delay. After the preparation of definitive Notes, the temporary Notes shall be exchangeable for definitive Notes upon surrender of the temporary Notes at the office or agency of the Company designated for such purpose pursuant to Section 2.03, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Notes the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Notes

15

of authorized denominations. Until so exchanged the temporary Notes shall in all respects be entitled to the same benefits under this Indenture as definitive Notes.

SECTION 2.10 *Cancellation.* All Notes surrendered for payment, purchase by the Company pursuant to Article 3, conversion, redemption or registration of transfer or exchange shall, if surrendered to any person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it. The Company may at any time deliver to the Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Company may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Trustee. The Company may not issue new Notes to replace Notes it has paid or delivered to the Trustee for cancellation or that any Holder has converted pursuant to Article 10. No Notes shall be authenticated in lieu of or in

exchange for any Notes cancelled as provided in this Section 2.10, except as expressly permitted by this Indenture. All cancelled Notes held by the Trustee shall be destroyed by the Trustee and the Trustee shall, upon request, deliver a certificate of destruction to the Company.

SECTION 2.11 *Persons Deemed Owners*. Prior to due presentment of a Note for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Note is registered as the owner of such Note for the purpose of receiving payment of principal of the Note or the payment of any Redemption Price or Change in Control Repurchase Price in respect thereof, and interest thereon, for the purpose of conversion and for all other purposes whatsoever, whether or not such Note be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

SECTION 2.12 *Global Notes*. (a) Notwithstanding any other provisions of this Indenture or the Notes, (A) transfers of a Global Note, in whole or in part, shall be made only in accordance with Section 2.06 and Section 2.12(a)(i), (B) transfer of a beneficial interest in a Global Note for a Certificated Note shall comply with Section 2.06 and Section 2.12(a)(ii) below, and (C) transfers of a Certificated Note shall comply with Section 2.06 and Sections 2.12(a)(iii) and (iv) below.

(i) *Transfer of Global Note*. A Global Note may not be transferred, in whole or in part, to any Person other than the Depositary or a nominee or any successor thereof, and no such transfer to any such other Person may be registered; provided that this clause (i) shall not prohibit any transfer of a Note that is issued in exchange for a Global Note but is not itself a Global Note. No transfer of a Note to any Person shall be effective under this Indenture or the Notes unless and until such Note has been registered in the name of such Person. Nothing in this Section 2.12(a)(i) shall prohibit or render ineffective any transfer of a beneficial interest in a Global Note effected in accordance with the other provisions of this Section 2.12(a).

(ii) *Restrictions on Transfer of a Beneficial Interest in a Global Note for a Certificated Note*. A beneficial interest in a Global Note may not be exchanged for a Certificated Note except upon satisfaction of the requirements set forth below. Upon receipt by the Trustee of a transfer of a beneficial interest in a Global Note in accordance with Applicable Procedures for a Certificated Note in the form satisfactory to the Trustee, together with:

(a) so long as the Notes are Restricted Notes, certification, in the form set forth in Exhibit B-1;

(b) written instructions to the Trustee to make, or direct the Registrar to make, an adjustment on its books and records with respect to such Global Note to reflect a decrease in the aggregate principal amount of the Notes represented by the Global Note, such instructions to contain information regarding the Depositary account to be credited with such decrease; and

16

_____

(c) if the Company or Registrar so requests, an opinion of counsel or other evidence reasonably satisfactory to them as to the compliance with the restrictions set forth in the Legend,

then the Trustee shall cause, or direct the Registrar to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Registrar, the aggregate principal amount of Notes represented by the Global Note to be decreased by the aggregate principal amount of the Certificated Note to be issued, shall issue such Certificated Note and shall debit or cause to be debited to the account of the Person specified in such instructions a beneficial interest in the Global Note equal to the principal amount of the Certificated Note so issued.

(iii) *Transfer and Exchange of Certificated Notes*. When Certificated Notes are presented to the Registrar with a request:

(x) to register the transfer of such Certificated Notes; or

(y) to exchange such Certificated Notes for an equal principal amount of Certificated Notes of other authorized denominations,

the Registrar shall register the transfer or make the exchange as requested if its reasonable requirements for such transaction are met; provided, however, that the Certificated Notes surrendered for transfer or exchange:

(a) shall be duly endorsed or accompanied by a written instrument of transfer in form reasonably satisfactory to the Company and the Registrar, duly executed by the Holder thereof or his attorney duly authorized in writing; and

(b) so long as such Notes are Restricted Notes, such Notes are being transferred or exchanged pursuant to an effective registration statement under the Securities Act or pursuant to clause (A), (B) or (C) below, and are accompanied by the following additional information and documents, as applicable:

(A) if such Certificated Notes are being delivered to the Registrar by a Holder for registration in the name of such Holder, without transfer, a certification from such Holder to that effect; or

(B) if such Certificated Notes are being transferred to the Company, a certification to that effect; or

(C) if such Certificated Notes are being transferred pursuant to an exemption from registration, (i) a certification to that effect (in the form set forth in Exhibits B-1, if applicable) and (ii) if the Company or Registrar so requests, an opinion of counsel or other evidence reasonably satisfactory to them as to the compliance with the restrictions set forth in the Legend.

(iv) *Restrictions on Transfer of a Certificated Note for a Beneficial Interest in a Global Note.* A Certificated Note may not be exchanged for a beneficial interest in a Global Note except upon satisfaction of the requirements set forth below.

Upon receipt by the Trustee of a Certificated Note, duly endorsed or accompanied by appropriate instruments of transfer, in form reasonably satisfactory to the Trustee, together with:

(a) so long as the Notes are Restricted Notes, certification, in the form set forth in Exhibit B-1, that such Certificated Note is being transferred to a QIB in accordance with Rule 144A; and

(b) written instructions directing the Trustee to make, or to direct the Registrar to make, an adjustment on its books and records with respect to such Global Note to reflect an

17

increase in the aggregate principal amount of the Notes represented by the Global Note, such instructions to contain information regarding the Depositary account to be credited with such increase, then the Trustee shall cancel such Certificated Note and cause, or direct the Registrar to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Registrar, the aggregate principal amount of Notes represented by the Global Note to be increased by the aggregate principal amount of the Certificated Note to be exchanged, and shall credit