Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>          Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee in behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 5:07-CV-04052-HRL<br><br>**PLAINTIFF FINISAR CORPORATION'S NOTICE OF MOTION AND MOTION TO REMAND ACTION TO SANTA CLARA COUNTY SUPERIOR COURT**<br><br>(Points And Authorities included herein)<br><br>Date:        **Tuesday, October 16, 2007**<br>Time:       **10:00 a.m.**<br>Courtroom: **2**<br><br>Magistrate Judge:   Hon. Howard R. Lloyd<br><br>Complaint Filed:   June 22, 2007<br>Trial Date Set:       None Yet |

**FINISAR'S MOTION TO REMAND**                                               CASE NO.: 5:07-CV-04052-HRL

**TABLE OF CONTENTS**

**PAGE(S)**

I. PRELIMINARY STATEMENT .................................................................................... 1

II. INTRODUCTION ......................................................................................................... 2

III. FACTUAL BACKGROUND ........................................................................................ 4

IV. LEGAL STANDARDS ................................................................................................. 5

V. ARGUMENT ................................................................................................................. 7

    A. The Relevant Contractual Terms Are Not Derived from Federal Sources. .................. 7

        1. The Operative Language of Section 4.02 Is Not Derived from the TIA. ............. 8

        2. The Operative Language of Sections 6.02 and 6.01(4) Is Not Derived from the TIA. ................................................................................................................... 9

    B. Private Parties Cannot Create Federal Jurisdiction by Entering into Contracts Referencing Federal Statutes. ....................................................................................... 10

    C. This Action Presents No Federal Issues that Are Either Substantial or Disputed. ...... 12

VI. CONCLUSION ............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3  **Cases**

4  *Abels v. State Farm Fire & Casualty Co.*,
   770 F.2d 26 (3d Cir. 1985) ................................................................................................ 5

5  *Bell Atlantic Corp. v. MFS Communications Co.*,
6  901 F.Supp. 835 (D.Del. 1995) ......................................................................................... 6

   *Beverlin v. I.R.S.*,
7  574 F.Supp. 553 (W.D.Mo. 1983) ................................................................................... 10

8  *Cyberonics, Inc. v. Wells Fargo Bank Nat'l Ass'n*,
   2007 WL 1729977 (S.D. Tex. June 13, 2007) .................................................................. 8
9
   *Empire Healthchoice Assurance, Inc. v. McVeigh*,
10    -- U.S. --, 126 S.Ct. 2121 (2006) ........................................................................... 12, 13, 14

11 *Franchise Tax Board v. Construction Laborers Vacation Trust*,
   463 U.S. 1, 103 S.Ct. 2840 (1983) ................................................................................ 6, 7

12 *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*,
   545 U.S. 308, 125 S.Ct. 2363 (2005) ........................................................... 6, 7, 12, 13, 14
13
   *Guzman-Andrade v. Gonzales*,
14    407 F.3d 1073 (9th Cir. 2005) ........................................................................................ 10

15 *Perini Corp. v. City of New York*,
   18 F.Supp.2d 287 (S.D.N.Y. 1998) ................................................................................ 11
16
   *Skelly Oil Co. v. Phillips Petroleum Co.*,
17    339 U.S. 667, 70 S.Ct. 876 (1950) ................................................................................... 6

18 *Virgin Islands Housing Authority v. Coastal General Construction Services Corp.*,
   27 F.3d 911 (3d Cir. 1994) ............................................................................................. 11
19
   **Statutes/Rules**
20
   15 U.S.C. § 77nnn .............................................................................................................. 8
21
   15 U.S.C. § 77qqq .............................................................................................................. 9
22
   15 U.S.C. § 77rrr .............................................................................................................. 11
23 26 U.S.C. § 6335 .............................................................................................................. 13

   28 U.S.C. § 1332 ................................................................................................................ 3
24
   28 U.S.C. § 1441 ................................................................................................................ 5
25 28 U.S.C. § 1447 ................................................................................................................ 1

26 California Code of Civil Procedure section 1060 .............................................................. 6

27

28

# NOTICE OF MOTION

TO DEFENDANT U.S. BANK TRUST NATIONAL ASSOCATION AND TO ITS ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED ACTION:

PLEASE TAKE NOTICE that, on **Tuesday, October 16, 2007, at 9:00 a.m**., or as soon thereafter as matter may be heard, in Courtroom 2 of the above-entitled Court located at 280 South 1st Street, San Jose, California, plaintiff Finisar Corporation ("Finisar") shall—and hereby does—move the Court for an order remanding the above-captioned action (the "Action") to the Superior Court of the State of California for the County of Santa Clara (the "State Court"), in which the Action was commenced by Finisar and from which it was improperly removed by defendant U.S. Bank Trust National Association ("U.S. Bank" or the "Bank").

Finisar's instant motion (the "Motion") is and shall be made pursuant to 28 U.S.C. § 1447(c), and on the ground that this Action presents no federal question bringing it within the original jurisdiction of this Court.

Finisar's Motion is and shall be based upon this Notice, the Points and Authorities set forth below, the pleadings, documents, and other records on file in the Action, and such additional evidence and argument as may be presented in connection with the hearing and determination of the Motion.

# POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Finisar, as obligor, and U.S. Bank, as trustee, are parties to three contractual trust indentures (the "Indentures")[1] that govern three series of convertible notes (the "Notes") issued by Finisar. By its "Complaint for Declaratory Relief" (the "Complaint"), Finisar seeks declarations that it is not in default under the Indentures, as alleged by U.S. Bank; and that enforcement of the contractual remedy of acceleration (*i.e.*, immediate repayment of all principal and interest) would be inequitable under the circumstances obtaining. Finisar's claims manifestly arise under state—not federal—law.

---

[1] An exemplar of the Indentures is attached to the Notice of Removal as Exhibit "B."

1.

FINISAR'S MOTION TO REMAND    CASE NO.: 5:07-CV-04052-HRL

Nevertheless, U.S. Bank contends that the instant Action falls within the original federal question subject matter jurisdiction that 28 U.S.C. § 1331 authorizes this Court to exercise. According to U.S. Bank, because the contractual provisions implicated by Finisar's Complaint reference federal statutes, Finisar's claims arise under the laws of the United States.

U.S. Bank's predication of removal jurisdiction on a supposed federal question is doubly defective. First, resolution of the parties' disputes turns not on the interpretation or application of any federal laws referenced in the contractual provisions at issue, but rather on contractual language having no statutory source or counterpart. Second, just as private parties cannot create federal jurisdiction by direct agreement to its exercise, so too they cannot create federal jurisdiction indirectly by referencing federal statutes.

Whatever the desires of the parties, federal jurisdiction over this Action simply does not exist. Accordingly, the Action must be remanded.

## II.   INTRODUCTION

Finisar is a technology company based in Santa Clara County that provides fiber optic subsystems and network performance test systems. Like many other locally-based technology companies, Finisar is in the process of conducting a voluntary review and investigation of stock option grants that it made following the initial public offering of its stock shares. The pendency of that investigation has necessarily—and only temporarily—delayed Finisar's filing of certain periodic reports (certain Forms 10-Q and a Form 10-K) with the Securities and Exchange Commission ("SEC"). As soon as Finisar completes its investigation, it will make all required filings with the SEC. In full and timely satisfaction of its obligations under the Indentures, Finisar will then provide copies of those reports to U.S. Bank within fifteen days of filing them with the SEC.

As noted above, U.S. Bank serves as the designated trustee pursuant to the Indentures under which Finisar issued the Notes. By three nearly identical letters dated April 23, 2007 (the "Letters") [corresponding to each of the three Indentures], U.S. Bank asserted that Finisar's delay in making its SEC filings constituted a breach of obligations purportedly imposed by the Indentures that, if not remedied within sixty (60) days of the letters, would ripen into an "Event of

Default" under the Indentures (thereby entitling the Bank to accelerate Finisar's repayment obligations under the Notes). Finisar commenced this Action on June 22, 2007, seeking a judicial declaration that it had not breached the Indentures as alleged by U.S. Bank and that the enforcement of any acceleration would be inequitable.

U.S. Bank filed its Notice of Removal ("Removal Notice") with this Court on August 7, 2007; and subsequently effected removal of the Action to this Court by filing in the State Court, on August 8, 2007, its "Notice to Adverse Parties of Removal to Federal Court," to which a copy of the Removal Notice was attached.

Finisar is a Delaware corporation, and U.S. Bank is a national banking association with its designated main office in Wilmington, Delaware. Thus, the parties are not of diverse citizenship for purposes of 28 U.S.C. § 1332. Recognizing that diversity subject matter jurisdiction does not exist, U.S. Bank predicated its Removal Notice on the purported presentation of a federal question by Finisar's Complaint. Specifically, U.S. Bank alleged in the Removal Notice that:

> The relevant provisions of the Indentures expressly incorporate the [Securities] Exchange Act [of 1934 ("Exchange Act")] and the Trust Indenture Act of 1939 ["TIA"]. (See, e.g., Indenture dated October 15, 2001, attached as Exhibit B hereto.) Accordingly, determining whether Finisar is in default under the Indentures requires this Court to interpret, apply, or determine the effect of these federal statutes, and the Complaint therefore presents a federal question.

(Removal Notice at 2:1-6.)

U.S. Bank's contentions are factually and legally flawed. Factually, resolution of the parties' dispute turns on contractual language not deriving from either the Exchange Act or the TIA; so determining whether Finisar is in default will not require interpretation or application of the referenced statutes—nor, for that matter, of any other federal law. Legally, just as the parties cannot *directly* create federal jurisdiction by agreement, so too the parties cannot *indirectly* create federal jurisdiction by incorporating or otherwise referencing federal statutes.

There is no federal question presented by Finisar's Complaint. Thus the Action must be remanded.

3.

### III.   FACTUAL BACKGROUND

As set forth above, this Action arises out of U.S. Bank's Letters, by which the Bank asserted that Finisar has breached the Indentures by failing to provide to the Bank copies of certain SEC filings, which Finisar has not yet even filed with the SEC. Although Finisar's filings have been temporarily delayed, Finisar has not been withholding information from the Bank. To the contrary, Finisar has provided and continues to provide to the Bank information currently in its possession that the SEC filings are expected to contain when they are made, as that information becomes available. (*See* Complaint, ¶ 5.) Thus there has been no identifiable prejudice either to U.S. Bank or to its noteholding beneficiaries.

U.S. Bank alleges in its Letters that Finisar is in default under Section 4.02 of the Indentures, which in each Indenture reads (in pertinent part):

> <u>Commission and Other Reports</u>.  The Company [Finisar] shall file with the Trustee [U.S. Bank], within 15 days after it files such annual and quarterly reports . . . with the [SEC], copies of its annual report and of the . . . other reports . . . which the Company is required to file with the [SEC] pursuant to Section 13 or 15(d) of the Exchange Act.

Each of the Bank's Letters further stated: "This letter constitutes a Notice of Default, as required under Section 6.01 of the Indenture," and that "[f]ailure by the Company to remedy the Default within sixty (60) days of this Notice of Default will constitute an . . . Event of Default." Section 6.02 of each Indenture authorizes the trustee to "declare the Notes due and payable at their principal amount together with accrued interest" "[i]f an Event of Default . . . occurs and is continuing."

Accordingly, by the sole cause of action in its State Court Complaint, Finisar seeks a judicial declaration "that it is not in breach of Section 4.02 of the Indentures." (Complaint, ¶ 36.) Alternatively, "Finisar seeks a declaration that enforcing any acceleration of the Notes under the facts presented in this Action would be inequitable." *Id.* Thus, the issues presented by the pleaded allegations of Finisar's Complaint are (i) whether Finisar breached its contractual obligation to provide copies of its SEC filings to U.S. Bank by not yet providing to U.S. Bank

4.

FINISAR'S MOTION TO REMAND                                            CASE NO.: 5:07-CV-04052-HRL

copies of certain filings not yet made with the SEC, and (ii) whether it would be inequitable to enforce of any acceleration declared because Finisar has not yet provided to U.S. Bank copies of reports not yet filed with the SEC.

This is the second action by Finisar against U.S. Bank presenting essentially the same issues. The first action was occasioned by a series of letters U.S. Bank sent on January 4, 2007, alleging that Finisar was in default under the Indentures because it had not yet filed its Form 10-Q for the fiscal quarter ended October 29, 2006 (the Letters occasioning the instant Action alleged default based on delays in filing reports for other and later periods). Like the instant Action, the earlier action was commenced by Finisar in the State Court, from which it was likewise removed by U.S. Bank to this Court, where it was given Case No. 5:07-CV-02101 and assigned to United States District Judge Jeremy Fogel. Finisar has moved to remand the first action to the State Court both because U.S. Bank's removal of that action was untimely and because federal subject matter jurisdiction is lacking. As of this filing, Finisar's motion to remand the earlier action is set for hearing by Hon. Jeremy Fogel at 9 a.m. on Friday, September 7, 2007.

### IV.　LEGAL STANDARDS

Removal is available for "any civil action . . . of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a) (emphasis added). Here, U.S. Bank alleges that the instant Action falls within the jurisdictional grant of 28 U.S.C. § 1331 ("Section 1331"), which grants the district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."

"The defendant's right to remove is to be determined according to the plaintiff's pleading at the time of the petition for removal, and it is the defendant's burden to show the existence of federal jurisdiction." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Id.*

In general, "a defendant may not remove a case to federal court" based on the jurisdictional grant of Section 1331 "unless the *plaintiff*'s complaint establishes that the case

5.

'arises under' federal law." *Franchise Tax Bd. v. Const. Laborers Vac. Trust,* 463 U.S. 1, 10, 103 S.Ct. 2840, 2847 (1983) (emphasis in original). Where the nominal plaintiff seeks declaratory relief, the substantive principle embodied in the "well-pleaded complaint rule" requires that jurisdiction be measured with reference to the coercive claim anticipated by the declaratory claim:

> When a party brings an action under the Declaratory Judgment Act, the complaint will arise under federal law for purposes of § 1331 if the declaratory action's correlative coercive suit, i.e. the coercive suit that the declaratory defendant could have filed, would present a federal claim as part of its well-pleaded complaint.

*Bell Atlantic Corp. v. MFS Comm's Co.,* 901 F.Supp. 835, 840 (D.Del. 1995).[2]

"The most familiar definition of the statutory 'arising under' limitation is Justice Holmes' statement, 'A suit arises under the law that creates the cause of action.'" *Franchise Tax Bd.,* 463 U.S. at 8-9, 103 S.Ct. at 2846. The sole cause of action pleaded by Finisar in its Complaint is a creature of California law, and of California's declaratory relief statute (California Code of Civil Procedure § 1060) in particular (and not the federal Declaratory Judgment Act). The correlative coercive claim would be for enforcement of the contractual acceleration provisions, *i.e.,* a state-law claim for breach of contract or specific performance. Accordingly, the Action does not fall within the scope of this "most familiar definition of the statutory 'arising under' limitation"; and, to Finisar's understanding, U.S. Bank does not argue otherwise.

Instead, U.S. Bank asserts that the instant Action falls within the scope of "another long-standing, if less frequently encountered, variety of federal 'arising under' jurisdiction." *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2366-67 (2005). Specifically, "[e]ven though state law creates [Finisar's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its

---

[2] The application of the well-pleaded complaint rule in a declaratory relief action is controlled by *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876 (1950), which "has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Bd.,* 463 U.S. at 16, 103 S.Ct. at 2850 (citation omitted). "[W]hile *Skelly Oil* is limited to the federal Declaratory Judgment Act, fidelity to its spirit" led the Supreme Court in *Franchise Tax Board* "to extend it to state declaratory judgment actions as well." *Franchise Tax Bd.,* 463 U.S. at 18, 103 S.Ct. at 2850-51.

right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848.

"[A] somewhat generous statement of the scope of the doctrine," on which U.S. Bank apparently relies, is "that a state-law claim could give rise to federal-question jurisdiction so long as it 'appears from the [complaint] that the right to relief depends upon the construction or application of [federal law].'" *Grable*, 545 U.S. at 312-13, 125 S.Ct. at 2367 (citation omitted; brackets in original). But that statement "has been subject to some trimming." *Id.* First, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* Second, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* And even in its most "generous" formulation, the doctrine is still limited by the well-pleaded complaint rule, as the dependence on federal law must appear *from the complaint. See id.*; *see also Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848 (noting that a cause of action created by state law "might still 'arise under' the laws of the United States *if a well-pleaded complaint* established" that any "right to relief under state law requires resolution of a substantial question federal law in dispute between the parties" (emphasis added)).

## V.   ARGUMENT

There is no federal question giving this Court subject matter jurisdiction over this Action between non-diverse parties. As discussed below, the contractual terms relevant to the parties' dispute do not originate in any federal statute; parties cannot create federal jurisdiction by incorporating statutory language into their contracts, in any event; and if there is any federal issue presented by the Action, it is neither substantial nor disputed, as it would have to be to invoke the federal question jurisdiction of this Court.

### A.   The Relevant Contractual Terms Are Not Derived from Federal Sources.

The contractual language implicated by Finisar's Complaint is found in Sections 4.02, 6.01(4), and 6.02 of the Indentures. Section 4.02 requires Finisar to provide copies of its SEC

7.

filings to U.S. Bank "within 15 days after it files such annual and quarterly reports . . . with the [SEC]." Section 6.02, in turn, authorizes the Bank to declare an acceleration, rendering all principal and interest immediately due and payable, "[i]f an Event of Default . . . occurs and is continuing." Section 6.01(4) defines "Event of Default" to include "fail[ure] to perform or observe any other term, covenant or agreement contained in . . . this Indenture for a period of 60 days after receipt . . . of a Notice of Default," allegedly including the terms of Section 4.02.

None of the operative terms of the contracts derives from federal law.

### 1. The Operative Language of Section 4.02 Is Not Derived from the TIA.

There is significant overlap between the language of Section 4.02 of the Indentures and the language of TIA Section 314(a)(1), 15 U.S.C. § 77nnn(a)(1). In general terms, the statutory provision, like the contractual provision, requires copies of SEC filings to be provided to the indenture trustee. But the parties' dispute is not over the existence of that obligation, but, instead, the timing of its fulfillment.

Section 4.02 of the Indentures addresses timing, requiring Finisar to provide copies of reports to U.S. Bank "within 15 days after it files such annual and quarterly reports . . . with the Commission." That timing clause, which is central to the parties' dispute, has no counterpart in TIA Section 314(a).[3]

A recent decision by a federal district court in Texas, *Cyberonics, Inc. v. Wells Fargo Bank National Association*, 2007 WL 1729977 (S.D. Tex. June 13, 2007), *appeal filed*, No. 07-

---

[3] The following table juxtaposes the relevant sentence of the contractual provision with the closest language from the statutory provision, with the contractual language discussed above shown in italics:

| Indenture Section 4.02 | TIA Section 314(a) |
|---|---|
| The Company shall file with the Trustee, *within 15 days after it files such annual and quarterly reports, information, documents and other reports with the Commission,* copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act. | Each person who, as set forth in the registration statement or application, is or is to be an obligor upon the indenture securities covered thereby shall—(1) file with the indenture trustee copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which such obligor is required to file with the Commission pursuant to section 78m or 78o(d) of this title. |

8.

FINISAR'S MOTION TO REMAND                                   CASE NO.: 5:07-CV-04052-HRL

20539 (5th Cir. July 20, 2007) (reproduced for convenient reference as Exhibit "A" hereto), is instructive. The indenture at issue in *Cyberonics* required the note issuer to "deliver to the Trustee within 15 days after it files them with the SEC copies of the . . . reports." In addition to holding that the issuer had not breached the indenture by delaying its SEC filings and thus, perforce, its provision of copies to the trustee, *Cyberonics* recognized that "[TIA] § 314(a)(1) . . . is actually less stringent than the [indenture] agreement because it does not specify the time by which [the note issuer] must provide [the indenture trustee] with copies of information filed with the SEC." *Cyberonics*, 2007 WL 1729977 at *4. More generally, the *Cyberonics* court determined: "it appears that the parties intended to replace § 314(a)(1) with their own requirements for the purposes of their agreement (upon which any breach of the contract claim must be based)." *Id.*

So too, here, the issue presented by Finisar's Complaint is whether Finisar breached a contractual term neither appearing in nor taken from the TIA or any other federal statute, *viz.*, the requirement to "file with the Trustee, *within 15 days after it files such annual and quarterly reports, information, documents and other reports with the Commission,* copies of its . . . reports." That question is not one of federal law.

### 2. The Operative Language of Indenture Sections 6.02 and 6.01(4) Is Not Derived from the TIA.

The key terms of Indenture Sections 6.02 and 6.01(4)—those setting forth U.S. Bank's purported right to accelerate if Finisar were in default because it has not yet provided to U.S. Bank copies of reports not yet filed with the SEC—likewise have no statutory counterpart. Although there is a statutory provision authorizing acceleration (i.e., Section 317(a)(1) of the TIA, 15 U.S.C. § 77qqq(a)(1)), that provision authorizes acceleration *only* in the event of a default in the payment of interest or repayment of principal (neither of which are even alleged, here). No statutory provision authorizes or even countenances acceleration based upon failure to provide copies of SEC filings, or failure to comply with other terms of an indenture, as Sections 6.02 and 6.01(4) of the Indentures allegedly do.

There is overlap between the language of the Indentures and the language of the TIA. But the *relevant* contractual terms implicated by Finisar's Complaint have no statutory counterparts.

### B.   Private Parties Cannot Create Federal Jurisdiction by Entering into Contracts Referencing Federal Statutes.

As set forth above, the *relevant* terms of the Indentures do not originate in the TIA, the Exchange Act, or any other federal statute. Nevertheless, according to U.S. Bank, Finisar's Complaint presents a federal question because "[t]he relevant provisions of the Indentures expressly incorporate the Exchange Act and the [TIA]." (Removal Notice at 2:1-2.) Presumably, U.S. Bank has in mind the language of Indenture Section 4.02 italicized in the following excerpt: "The Company shall file with the Trustee, within 15 days after it files such . . . reports with the Commission, copies of its . . . reports . . . *which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act. The Company also shall comply with the other provisions of TIA Section 314(a).*"

It is a commonplace that parties cannot create federal jurisdiction by agreement. *See, e.g., Guzman-Andrade v. Gonzales*, 407 F.3d 1073, 1077 (9th Cir. 2005). U.S. Bank's argument presumes as a loophole in that truism, *viz.*, that private parties—while powerless to create federal jurisdiction by *direct* agreement thereto—*can* contract for federal jurisdiction *indirectly*, by referencing or incorporating federal statutory standards in their agreements. The law, however, is otherwise.

For example, in *Beverlin v. Internal Revenue Service*, 574 F.Supp. 553, 554 (W.D.Mo. 1983), "Plaintiff contend[ed] that because Article II of the collective bargaining agreement incorporate[d] federal laws that a federal question is involved." The court held to the contrary:

> No authority is cited for this proposition and none has been found by this Court. The fact that parties include the language of a federal law in their contract does not raise a breach of such contract to a "civil action arising under the Constitution, laws or treaties of the United States," even though an interpretation of the contract will involve interpretation of language that is also a federal statute.

1  *Id.* Similarly, *Perini Corp. v. City of New York,* 18 F.Supp.2d 287, 292 (S.D.N.Y. 1998) held

2  that: "The incorporation of the EPA procurement regulations at issue here into a municipal

3  construction contract does not give rise to federal question jurisdiction." And in a related vein

4  *Virgin Islands Housing Authority v. Coastal General Construction Services Corp.,* 27 F.3d 911,

5  916 (3d Cir. 1994) held that: "the interest in uniformity in construction of federal contractual

6  provisions is not enough to pose federal question issues."

7        *Zeffiro v. First Pennsylvania Banking & Trust Co.,* 623 F.2d 290, 294 (3d Cir. 1980),

8  suggests that a federal question might have been presented if the relevant language of Indenture

9  Sections 4.02, 6.01(4), and 6.02 had been prescribed by the TIA (or other federal statute). That

10  court stated: "The interpretation of the indenture provisions mandated by the [TIA] does not

11  depend on ordinary contract principles—the intent of the parties—but depends on the

12  interpretation of the legislation." However, *Zeffiro* is here inapposite for at least two reasons.

13  First, as set forth above, the *operative* contractual language—the timing clause of Indenture

14  Section 4.02, the definition of "Event of Default" in Indenture Section 6.01(4), and the

15  prescription of conditions for acceleration in Indenture Section 6.02—do not derive from the TIA

16  (or any other federal statute). Second, *none* of the terms of the Indentures at issue are "mandated"

17  by the TIA. Section 318(c) of the TIA, 15 U.S.C. § 77rrr(c), provides that "[t]he provisions of

18  sections 77jjj of this title to and including 77qqq of this title . . . are a part of and govern every

19  *qualified* indenture, whether or not physically contained therein" (emphasis added). But as

20  Finisar explained in paragraph 19 of its Complaint, the Indentures at issue *here*—apparently

21  unlike those at issue in *Zeffiro*—are *not* so qualified; and the statutory incorporation is,

22  accordingly, inapplicable.

23        Just as private parties cannot create federal jurisdiction by express agreement, so too they

24  cannot create federal jurisdiction through the voluntary incorporation of federal statutory

25  requirements in their agreements. Accordingly, the fact that Section 4.02 references the

26  Exchange Act and the TIA does not convert this state law case into a civil action arising under the

27  laws of the United States.

28

11.

### C. This Action Presents No Federal Issues that Are Either Substantial or Disputed.

The Supreme Court has characterized the jurisdictional category into which U.S. Bank seeks to fit the instant Action as "slim," "special and small." *Empire Healthchoice Assur., Inc. v. McVeigh*, —U.S.—, 126 S.Ct. 2121, 2136, 2137 (2006). Among other things, the Court has "confined federal-question jurisdiction over state-law claims to those that 'really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable*, 545 U.S. at 313, 125 S.Ct. at 2367 (citation omitted). U.S. Bank's argument that this is a federal question case because Section 4.02 references the Exchange Act and the TIA fails for the additional reason that there is no substantial or disputed issue injected into this Action thereby.

Considering first the reference to the Exchange Act, *Cyberonics* is here, again, instructive. The contractual indenture there, like Section 4.02 of the Indentures here, required the note issuer to provide to the trustee copies of reports that the issuer "is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act." As the court there noted, that phrase is merely "a modifier" specifying "the types of reports that [the note issuer] is required to deliver . . . not an additional obligation." Because there is, here, no dispute as to "the types of reports" that Finisar "is required to deliver" to U.S. Bank, the reference to Sections 13 and 15(d) of the Exchange Act do not introduce any substantial or disputed issue of federal law.

The reference to Section 314(a) of the Indentures is similarly unavailing. The issues presented by Finisar's Complaint are whether Finisar, by not yet providing to U.S. Bank copies of reports not yet filed with the SEC, has breached the contractual requirement to "file with the Trustee, within 15 days after it files . . . with the Commission, copies of its . . . reports"; and whether, under the circumstances presented, any acceleration declared by U.S. Bank should be enforced. Indenture Section 4.02's requirement that Finisar "comply with the other provisions of TIA Section 314(a)" does not bear on the resolution of either issue.

The contrast between *Grable* and *Empire* (the Supreme Court's most recent rulings in the area), controls the disposition of the jurisdictional question in this Action. As summarized by *Empire*:

12.

    *Grable* involved real property belonging to Grable & Sons Metal Products, Inc. (Grable), which the Internal Revenue Service (IRS) seized to satisfy a federal tax deficiency. Grable received notice of the seizure by certified mail before the IRS sold the property to Darue Engineering & Manufacturing (Darue). Five years later, Grable sued Darue in state court to quiet title. Grable asserted that Darue's record title was invalid because the IRS had conveyed the seizure notice improperly. The governing statute, 26 U.S.C. § 6335(a), provides that "notice in writing shall be given . . . to the owner of the property . . . or shall be left at his usual place of abode or business. . . ." Grable maintained that § 6335(a) required personal service, not service by certified mail.

    Darue removed the case to federal court. Alleging that Grable's claim of title depended on the interpretation of a federal statutory provision, *i.e.*, § 6335(a) of the Internal Revenue Code, Darue invoked federal–question jurisdiction under 28 U.S.C. § 1331. We affirmed lower court determinations that the removal was proper. . . . Whether Grable received notice adequate under § 6335(a), we observed, was "an essential element of [Grable's] quiet title claim"; indeed, "it appear[ed] to be the only . . . issue contested in the case."

*Empire*, 126 S.Ct. at 2136-37 (citations omitted).

    In *Empire*, on the other hand, payments were made for medical care received by Joseph E. McVeigh ("McVeigh"), a federal employee, by Empire Healthchoice Assurance, Inc. ("Empire"). *Empire*, 126 S.Ct. at 2129. Empire was the Blue Cross Blue Shield company administering, within New York State, the Blue Cross Blue Shield Service Benefit Plan, the largest plan by which the federal Office of Personnel Management ("OPM") contracted for coverage for federal employees pursuant to the Federal Employees Health Benefits Act of 1959 ("FEHBA"). *Id.* at 2126-27, 2129. After McVeigh died, the adminstratrix of his estate commenced a state-court tort action "against parties alleged to have caused Decedent's injuries. On learning that the parties . . . had agreed to settle the tort claims, Empire sought to recover the $157,309 it had paid out for the Decedent's medical care." *Id.* at 2129.

13.

FINISAR'S MOTION TO REMAND               CASE NO.: 5:07-CV-04052-HRL

The opening line of the *Empire* opinion characterizes the FEHBA as "establish[ing] a comprehensive program of health insurance for federal employees." *Empire*, 126 S.Ct. at 2126. The Court characterized the insurance contract pursuant to which Empire sought to recover the medical benefits it had previously paid out—pursuant to the same agreement—as an "FEHBA-authorized contract." *Id.* at 2134. But the specific provision pursuant to which Empire sought reimbursement was not itself "a prescription of federal law." *Id.* Because "the bottom-line practical issue" was precisely "the share of that settlement properly payable to Empire," which was not prescribed by federal law, the Court upheld the lower-court determinations that there was no federal question jurisdiction, describing the case before it as "poles apart from *Grable*." *Id.* at 2137.

Here, "the bottom-line practical issue" is whether U.S. Bank can declare a default and then accelerate repayment of principal because Finisar has not yet provided to U.S. Bank copies of reports not yet filed with the SEC, and the contractual provisions on which that determination will rest are not prescribed by federal law. Federal law did not require the Notes to be issued pursuant to an indenture qualified pursuant to the TIA, at all; the Indentures at issue are not qualified; and the contractual terms implicated by Finisar's Complaint would not have been creatures of federal law even if the Indentures *were* qualified.

If there are federal elements in the Action, they are neither disputed nor substantial. *Empire*'s conclusion is apropos, here: "*Grable* emphasized that it takes more than a federal element 'to open the "arising under" door.' This case cannot be squeezed into the slim category *Grable* exemplifies." *Empire*, 126 S.Ct. at 2137.

///
///
///
///
///
///
///

14.

## VI.   CONCLUSION

Whatever the desires of the parties, this Action simply does not present any real or substantial dispute or controversy respecting the validity, construction, or effect of any federal law.  Accordingly, this Action must be remanded.

DATED:  September 5, 2007            Respectfully submitted,

Sterling A. Brennan
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP


By____/s/ Sterling A. Brennan_____
        Sterling A. Brennan
        Attorneys for Plaintiff FINISAR CORPORATION

15.

FINISAR'S MOTION TO REMAND                             CASE NO.: 5:07-CV-04052-HRL

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com; Eva Krisztina Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; Paul T. Friedman, pfriedman@mofo.com.

**WORKMAN NYDEGGER**

/s/ Sterling A. Brennan
STERLING A. BRENNAN
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT 84111
Telephone: (801) 533-9800