1    Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
2    1000 Eagle Gate Tower
60 East South Temple
3    Salt Lake City, Utah 84111
Telephone: (801) 533-9800
4    Facsimile: (801) 328-1707

5    Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
6    303 Almaden Boulevard
Suite 500
7    San Jose, California 95110-2712
Telephone: (408) 291-6200
8    Facsimile: (408) 297-6000

9    Attorneys for Plaintiff FINISAR CORPORATION

10               **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                  **SAN JOSE DIVISION**

13

14    FINISAR CORPORATION, a Delaware
corporation,
15

16                  Plaintiff,

17          v.

18    U.S. BANK TRUST NATIONAL
19    ASSOCIATION, a national banking
association, not in its individual capacity,
20    but solely in its capacity as Indenture
Trustee in behalf of all Holders of Finisar
21    Corporation's 5¼% Convertible
Subordinated Notes due 2008, 2½%
22    Convertible Senior Subordinated Notes due
2010, and 2½% Convertible Subordinated
23    Notes due 2010; and DOES 1 through 10,
inclusive,
24

25               Defendants.

Case No. 5:07-CV-04052-JF-PVT

**PLAINTIFF FINISAR CORPORATION'S *AMENDED* NOTICE OF MOTION AND MOTION TO REMAND ACTION TO SANTA CLARA COUNTY SUPERIOR COURT**

(Points And Authorities included herein; Request for Judicial Notice submitted herewith)

Date:      **Friday, November 2, 2007**
Time:      **9:00 a.m.**
Courtroom: **3**

District Judge:    Hon. Jeremy Fogel
Magistrate Judge:   Hon. Patricia V. Trumbull

Complaint Filed:    June 22, 2007
Trial Date Set:      None Yet

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 3

III.    LEGAL STANDARDS ........................................................................................ 4

IV.     ARGUMENT ....................................................................................................... 6

    A.     Because the Indentures Are Not Qualified, there Is No Federal Question. ................... 7

    B.     Because the Operative Contractual Language Would Not Be Required by the TIA
        Even If the Indentures Were Qualified, there Is No Federal Question. ........................ 8

        1.     The Operative Language of Section 4.02 Is Not Derived from the TIA .............. 9

        2.     The Operative Language of Indenture Sections 6.02 and 6.01(4) Is Not
            Derived from the TIA .................................................................................. 10

    C.     Private Parties Cannot Create Federal Jurisdiction by Referencing Federal Statutes
        in their Contracts ............................................................................................ 11

    D.     There Are No Substantial or Disputed Federal Issues in this Action. ......................... 13

V.      CONCLUSION ................................................................................................... 14

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**Cases**

*Abels v. State Farm Fire & Casualty Co.,*
   770 F.2d 26 (3d Cir. 1985)................................................................................................ 4

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.,*
   No. 306-CV-1770D (N.D. Tex.) ...................................................................................... 6

*American Stock Transfer & Trust Co. v. Par Pharmaceutical Cos.,*
   No. 06 Civ. 13283 (S.D.N.Y.) ..................................................................................... 6, 7

*Bell Atlantic Corp. v. MFS Communications Co.,*
   901 F.Supp. 835 (D.Del. 1995)........................................................................................ 5

*Beverlin v. I.R.S.,*
   574 F.Supp. 553 (W.D.Mo. 1983) ................................................................................. 12

*Boatmen's First Nat. Bank v. Kansas Public Employees' Retirement System,*
   915 F.Supp. 131 (W.D. Mo. 1996) .................................................................................. 8

*Cyberonics, Inc. v. Wells Fargo Bank, National Association,*
   No. 4:07-CV-121 (S.D. Tex.) ............................................................................. 6, 7, 9, 13

*Empire Healthchoice Assur., Inc. v. McVeigh,*
   —U.S.—,126 S.Ct. 2121, 2136 (2006) ............................................................. 10, 11, 13, 14

*Fleet National Bank v. Trans World Airlines,*
   767 F.Supp. 510 (S.D.N.Y. 1991) ................................................................................... 8

*Franchise Tax Board v. Construction Laborers Vacation Trust,*
   463 U.S. 1, 103 S.Ct. 2840 (1983) ............................................................................... 5, 6

*Grable & Sons Metal Products v. Darue Engineering & Manufacturing,*
   545 U.S. 308, 125 S.Ct. 2363 (2005)....................................................................... 5, 6, 13

*Guzman-Andrade v. Gonzales,*
   407 F.3d 1073 (9th Cir. 2005)........................................................................................ 12

*Perini Corp. v. City of New York,*
   18 F.Supp.2d 287 (S.D.N.Y. 1998)................................................................................ 12

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   339 U.S. 667, 70 S.Ct. 876 (1950) .................................................................................. 5

*UnitedHealth Group Inc. v. CEDE & Co.,*
   No. 06-cv-4307 (D. Minn.) ......................................................................................... 6, 7

*Virgin Islands Housing Authority v. Coastal General Construction Services Corp.,*
   27 F.3d 911 (3d Cir. 1994)............................................................................................. 12

*Zeffiro v. First Pennsylvania Banking & Trust Co.,*
   623 F.2d 290 (3d Cir. 1980)........................................................................................ 7, 8

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii.

**Statutes/Rules**

15 U.S.C. § 77aaa.................................................................................................................... 2

15 U.S.C. § 77nnn............................................................................................................. 9, 11

15 U.S.C. § 77qqq.................................................................................................................. 10

15 U.S.C. § 77rrr..................................................................................................................... 2

15 U.S.C. § 77v....................................................................................................................... 2

15 U.S.C. § 77vvv.................................................................................................................... 2

15 U.S.C. § 77zzz.................................................................................................................... 2

28 U.S.C. § 1146..................................................................................................................... 4

28 U.S.C. § 1331........................................................................................................... 2, 4, 5, 6

28 U.S.C. § 1441..................................................................................................................... 4

28 U.S.C. § 1447..................................................................................................................... 1

California Code of Civil Procedure § 1060.............................................................................. 5

# NOTICE OF MOTION

TO DEFENDANT U.S. BANK TRUST NATIONAL ASSOCATION AND TO ITS

ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED ACTION:

   PLEASE TAKE NOTICE that, on **Friday, November 2, 2007, at 9:00 a.m**., or as soon

thereafter as matter may be heard, in Courtroom 3 of the above-entitled Court located at 280

South First Street, San Jose, California, plaintiff Finisar Corporation ("Finisar") shall—and

hereby does—move the Court for an order remanding the above-captioned action (the "Action")

to the Superior Court of the State of California for the County of Santa Clara (the "State Court"),

in which the Action was commenced by Finisar and from which it was improperly removed by

defendant U.S. Bank Trust National Association ("U.S. Bank" or the "Bank").[1]

   Finisar's instant motion (the "Motion") is and shall be made pursuant to 28 U.S.C.

§ 1447(c), and on the ground that this Action presents no federal question bringing it within the

original jurisdiction of this Court.

   Finisar's Motion is and shall be based upon this Notice, the Points and Authorities set

forth below, the pleadings, documents, and other records on file in the Action, and such additional

evidence and argument as may be presented in connection with the hearing and determination of

the Motion.

# POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

   Finisar, as obligor, and U.S. Bank, as trustee, are parties to three contractual trust

indentures (the "Indentures")[2] that govern three series of convertible notes (the "Notes") issued

by Finisar.  By its "Complaint for Declaratory Relief" (the "Complaint"), Finisar seeks

---

[1] Upon removal from the State Court, the Action was originally assigned to Magistrate Judge
Howard R. Lloyd, by whom it was referred to Judge Jeremy Fogel for a related case
determination.  By order entered September 6, 2007, Judge Fogel reassigned the Action to his
own docket and vacated the hearing before Magistrate Judge Lloyd previously set for "Plaintiff
Finisar Corporation's . . . Motion to Remand Action to Santa Clara County Superior Court," filed
on September 5, 2007.  As Judge Fogel's reassignment order instructs, by the instant submission
Finisar is renoticing its motion to remand before Judge Fogel (for hearing on a date reserved with
his clerk).

[2] An exemplar of the Indentures is attached to the Notice of Removal as Exhibit "B."

**FINISAR'S AMENDED MOTION TO REMAND**                    CASE NO.: 5:07-CV-04052-JF-PVT

1   declarations that it is not in default under the Indentures, as alleged by U.S. Bank; and,

2   alternatively, that enforcement of the contractual remedy of acceleration (*i.e.,* immediate

3   repayment of all principal and interest) would be inequitable under the circumstances obtaining.

4        Finisar commenced this Action in the State Court, thinking that federal jurisdiction was

5   lacking.  U.S. Bank removed to this Court, thinking that Finisar's Complaint presents a federal

6   question bringing the Action within the subject matter jurisdiction created by 28 U.S.C. § 1331.

7   In the ordinary course, that a contract action arises under state rather than federal law would not

8   be seriously disputed.  It is disputed here principally because certain trust indentures are regulated

9   by the federal Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. §§ 77aaa *et seq.*

10       That circumstance should not be given controlling weight, for several reasons.  First and

11  foremost, the *specific* Indentures at issue in *this* Action were *not* "qualified" (and were not

12  required to be qualified) under the TIA.  Section 318(c) of the TIA, 15 U.S.C. § 77rrr(c), provides

13  that certain terms "are a part of and govern every qualified indenture"; but because the Indentures

14  here at issue were not qualified, none of their terms are creatures of federal law.  Moreover, the

15  specific contractual terms placed at issue by Finisar's Complaint are not among those prescribed

16  by the TIA even for qualified indentures.

17       The TIA does not completely displace state regulation of trust indentures.  To the

18  contrary, the TIA explicitly directs that, "[e]xcept as otherwise expressly provided," its terms

19  shall *not* "affect the jurisdiction of . . . any State or political subdivision of any State, over any

20  person or security."  15 U.S.C. § 77zzz.  As shown below, the instant Action does not arise under

21  the TIA (or any other federal law) but rather arises within the State jurisdiction unmistakably left

22  undisturbed by the TIA.  Thus the Action must be remanded to the State Court.[3]

23

24  ───────────────
[3] The Action does not arise under the TIA; but even if it did, removal still would have been
25  improper.  Section 22(b) of the TIA, 15 U.S.C. § 77vvv(b), provides that "jurisdiction and venue
    of suits and actions brought to enforce any liability or duty created by [the TIA], or any rules or
26  regulations or orders prescribed under the authority thereof, shall be as provided in section 22(a)
    of the Securities Act of 1933 [the 'Securities Act']."  Section 22(a) of the Securities Act, 15
27  U.S.C. § 77v(a), in turn provides that "[n]o case arising under this subchapter and brought in any
    State court of competent jurisdiction shall be removed to any court of the United States."  The
28  TIA's adoption of the Securities Act's prohibition of removal also tells against any contention
    that Congress desired to federalize the judicial interpretation of all terms in all trust indentures.

2.

**FINISAR'S AMENDED MOTION TO REMAND**                    CASE NO.: 5:07-CV-04052-JF-PVT

1

## II.   FACTUAL BACKGROUND

2      Finisar is a technology company based in Santa Clara County that provides fiber optic

3    subsystems and network performance test systems.  Like many other locally-based technology

4    companies, Finisar is in the process of conducting a voluntary review and investigation of stock

5    option grants that it made following the initial public offering of its stock shares.  Although that

6    information helps to explain how and why this litigation came about, neither the options grants

7    nor the investigative review are at issue in this Action.

8      The pendency of Finisar's investigation has occasioned temporary delays in Finisar's

9    filing of certain periodic reports (Forms 10-Q and a Form 10-K) with the Securities and Exchange

10   Commission ("SEC").  As soon as Finisar completes its investigation, it will make all of those

11   filings.  But in three nearly identical letters dated April 23, 2007 (the "Letters")—one for each of

12   the three Indentures—U.S. Bank alleged that Finisar's delay in making its SEC filings constituted

13   a breach of the Indentures that would ripen into an "Event of Default" under the Indentures

14   (entitling U.S. Bank to accelerate) if not remedied within sixty (60) days of the letters.

15      The contractual provision that U.S. Bank alleges Finisar breached is Section 4.02, which

16   in each Indenture reads as follows:

17          <u>Commission and Other Reports</u>.  The Company [Finisar] shall file with the
           Trustee [U.S. Bank], within 15 days after it files such annual and quarterly
18         reports . . . with the [SEC], copies of its annual report and of the . . . other
           reports . . . which the Company is required to file with the [SEC] pursuant
19         to Section 13 or 15(d) of the Exchange Act.

20   As Finisar understands this provision, it requires Finisar to provide copies of SEC filings to U.S.

21   Bank "within 15 days after it files" them with the SEC.  Because Finisar has not yet made the

22   SEC filings targeted by the Letters, it cannot have breached the obligation (plainly articulated by

23   the language of Section 4.02) to provide them to U.S. Bank within fifteen days of filing.

24   Accordingly, Finisar commenced this Action on June 22, 2007, seeking a judicial declaration that

25   it had not breached the Indentures as alleged by U.S. Bank (and, alternatively, that the

26   enforcement of any acceleration would be inequitable).

27      U.S. Bank filed its Notice of Removal ("Removal Notice") with this Court on August 7,

28   2007; and subsequently effected removal of the Action to this Court by filing in the State Court,

3.

1  on August 8, 2007, its "Notice to Adverse Parties of Removal to Federal Court," to which a copy

2  of the Removal Notice was attached.

3       This is the second action by Finisar against U.S. Bank presenting essentially the same

4  issues.  The first action was occasioned by a series of letters U.S. Bank sent on January 4, 2007,

5  alleging that Finisar was in default under the Indentures because it had not yet filed its Form 10-Q

6  for the fiscal quarter ended October 29, 2006 (the Letters occasioning the instant Action

7  addressed reports for other and later periods).  Like the instant Action, the earlier action was

8  commenced by Finisar in the State Court, from which it was likewise removed by U.S. Bank to

9  this Court, where it was given Case No. 5:07-CV-02101.  Finisar has moved to remand the first

10  action to the State Court both because (a) U.S. Bank did not remove within thirty days of being

11  served with Finisar's initial pleading, as required by 28 U.S.C. § 1146(b), and (b) federal subject

12  matter jurisdiction is lacking in any event.  Finisar's motion to remand the earlier action was

13  heard by the Court on Friday, September 7, 2007, and taken under submission.  As of this writing,

14  so far as Finisar is aware, the Court has issued no ruling on that motion.

### III.    LEGAL STANDARDS

16       Generally (although not without exception[4]), removal is available for "any civil action . . .

17  of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a)

18  (emphasis added).  Here, U.S. Bank alleges that the instant Action falls within the original

19  jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United

20  States" created by 28 U.S.C. § 1331 ("Section 1331").

21       "The defendant's right to remove is to be determined according to the plaintiff's pleading

22  at the time of the petition for removal, and it is the defendant's burden to show the existence of

23  federal jurisdiction."  *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir. 1985).

24  "Because lack of jurisdiction would make any decree in the case void and the continuation of the

25  litigation in federal court futile, the removal statute should be strictly construed and all doubts

26  should be resolved in favor of remand."  *Id.*

27  _____

28  [4] As noted above, removal is *not* available for civil actions arising under the TIA.  *See supra,* p.2, n. 3.

4.

1    In general, "a defendant may not remove a case to federal court" based on the Section

2    1331 "unless the *plaintiff's* complaint establishes that the case 'arises under' federal law."

3    *Franchise Tax Bd. v. Const. Laborers Vac. Trust,* 463 U.S. 1, 10, 103 S.Ct. 2840, 2847 (1983)

4    (emphasis in original). Where the nominal plaintiff seeks declaratory relief, the substantive

5    principle embodied in the "well-pleaded complaint rule" requires that jurisdiction be measured

6    with reference to the coercive claim anticipated by the declaratory claim:

> When a party brings an action under the Declaratory Judgment Act, the
> complaint will arise under federal law for purposes of § 1331 if the
> declaratory action's correlative coercive suit, i.e. the coercive suit that the
> declaratory defendant could have filed, would present a federal claim as
> part of its well-pleaded complaint.

10   *Bell Atlantic Corp. v. MFS Comm's Co.,* 901 F.Supp. 835, 840 (D.Del. 1995).[5]

11   "The most familiar definition of the statutory 'arising under' limitation is Justice Holmes'

12   statement, 'A suit arises under the law that creates the cause of action.'" *Franchise Tax Bd.,* 463

13   U.S. at 8-9, 103 S.Ct. at 2846. The sole cause of action Finisar pleads in its Complaint is a

14   creature of California law, and of California's declaratory relief statute in particular (California

15   Code of Civil Procedure § 1060 rather than the federal Declaratory Judgment Act). The

16   correlative coercive claim would be for enforcement of the contractual acceleration provisions,

17   *i.e.,* a state-law claim for breach of contract or specific performance. Accordingly, the Action is

18   not encompassed within this "most familiar definition of the statutory 'arising under' limitation";

19   and, to Finisar's understanding, U.S. Bank does not argue otherwise.

20   Instead, U.S. Bank asserts that the instant Action falls within the scope of "another long-

21   standing, if less frequently encountered, variety of federal 'arising under' jurisdiction." *See*

22   *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2366-67

23   (2005). Specifically, "[e]ven though state law creates [Finisar's] causes of action, its case might

---

[5] The application of the well-pleaded complaint rule in a declaratory relief action is controlled by *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876 (1950), which "has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking.'" *Franchise Tax Bd.,* 463 U.S. at 16, 103 S.Ct. at 2850 (citation omitted). "[W]hile *Skelly Oil* is limited to the federal Declaratory Judgment Act, fidelity to its spirit" led the Supreme Court in *Franchise Tax Board* "to extend it to state declaratory judgment actions as well." *Franchise Tax Bd.,* 463 U.S. at 18, 103 S.Ct. at 2850-51.

**FINISAR'S AMENDED MOTION TO REMAND**                    CASE NO.: 5:07-CV-04052-JF-PVT

1    still 'arise under' the laws of the United States if a well-pleaded complaint established that its

2    right to relief under state law requires resolution of a substantial question of federal law in dispute

3    between the parties." *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. at 2848.

4        "[A] somewhat generous statement of the scope of the doctrine," on which U.S. Bank

5    apparently relies, is "that a state-law claim could give rise to federal-question jurisdiction so long

6    as it 'appears from the [complaint] that the right to relief depends upon the construction or

7    application of [federal law].'" *Grable,* 545 U.S. at 312-13, 125 S.Ct. at 2367 (citation omitted;

8    brackets in original).  But that statement "has been subject to some trimming." *Id.*  First, "federal

9    jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious

10   federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.*

11   Second, "the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is

12   consistent with congressional judgment about the sound division of labor between state and

13   federal courts governing the application of § 1331." *Id.*  And even in its most "generous"

14   formulation, the doctrine is still limited by the well-pleaded complaint rule, as the dependence on

15   federal law must appear *from the complaint.  See id.*; *see also Franchise Tax Bd.,* 463 U.S. at 13,

16   103 S.Ct. at 2848 (noting that a cause of action created by state law "might still 'arise under' the

17   laws of the United States *if a well-pleaded complaint* established" that any "right to relief under

18   state law requires resolution of a substantial question federal law in dispute between the parties"

19   (emphasis added)).

20                          **IV.    ARGUMENT**

21       Although of apparently recent vintage, the fact pattern and substantive issues presented by

22   this case are not unique.  Comparable claims are being litigated in at least four other actions

23   pending in federal courts, *viz., Affiliated Computer Servs., Inc. v. Wilmington Trust Co.,* No. 306-

24   CV-1770D (N.D. Tex.), *American Stock Transfer & Trust Co. v. Par Pharmaceutical Cos.,* No.

25   06 Civ. 13283 (S.D.N.Y.), *Cyberonics, Inc. v. Wells Fargo Bank, Nat'l Ass'n.,* No. 4:07-CV-121

26   (S.D. Tex.), and *UnitedHealth Group Inc. v. CEDE & Co.,* No. 06-cv-4307 (D. Minn.).  The

27   notices of removal by which the *American Stock* and *Cyberonics* cases were removed from state

28

**FINISAR'S AMENDED MOTION TO REMAND**                                  CASE NO.: 5:07-CV-04052-JF-PVT

courts allege *only* diversity and *not* federal question jurisdiction.[6]  If federal question jurisdiction were plausibly asserted, prudence would dictate supporting removal by pleading both; but when it counts most, parties in other actions have declined to rely on federal question jurisdiction, apparently recognizing its assertion to be infirm.  U.S. Bank has been reduced to the novelty of alleging federal question jurisdiction in *its* Removal Notice simply because the admitted absence of diversity left it with no other choice.

As set forth below, the removing parties in *American Stock* and *Cyberonics* were right: there is no federal question jurisdiction over this Action between non-diverse parties, and the Action must therefore be remanded.

**A.    Because the Indentures Are Not Qualified, there Is No Federal Question.**

Among the precipitating events for the enactment of the TIA was "[a] study . . . conducted by the Securities [and] Exchange Commission (SEC) in 1936 which revealed widespread abuses in the issuance of corporate bonds under indentures."  *Zeffiro v. First Pennsylvania Banking & Trust Co.,* 623 F.2d 290, 292-293 (3d Cir. 1980).  However, "[r]ather than allow the SEC direct supervision of trustee behavior and thereby provide for a more overt intrusion into capital markets," the TIA instead "established a standard of behavior by refashioning the form of the indenture."  *Id.* at 293.

"The Act is structured so that before a debt security non-exempted from the Act may be offered to the public, the indenture under which it is issues must be 'qualified' by the SEC."  *Zeffiro,* 623 F.2d at 293.  However, as Finisar pleaded in paragraph 19 of its Complaint, the Indentures at issue *here* are *not* qualified (because the Notes were not "offered to the public").

---

[6] For the Court's convenient reference, the referenced notices of removal are attached as Exhibits "A" and "B" to the accompanying "Finisar Corporation's Request for Judicial Notice in Support of its Amended Motion to Remand Action to Santa Clara County Superior Court" ("Request for Notice").  The *Affiliated* and *UnitedHealth* cases were commenced in federal courts by the filing of complaints (reproduced as Exhibits "C" and "D" to the Request for Notice) alleging both diversity and federal question jurisdiction.  Because diversity jurisdiction indisputably exists in both, the federal question allegations have never been tested.  Moreover, the indentures at issue in both of those cases, unlike the Indentures at issue here, were apparently qualified, the subject notes having been publicly offered.  *See* Request for Notice, Exh. "C," ¶ 12; ("ACS completed a public offering of . . . Notes"); Exh. "D," ¶ 27 ("UGS complete a public offering of . . . Notes").

**FINISAR'S AMENDED MOTION TO REMAND**          CASE NO.: 5:07-CV-04052-JF-PVT

1     *Zeffiro* held that a complaint alleging breach of "duties imposed . . . by indenture

2    provisions *which were required by the [TIA]*" presented a federal question. *Zeffiro,* 623 F.2d at

3    292 (emphasis added). As noted above, Section 314(a) of the TIA would be a required provision

4    of the Indentures here at issue *if* those Indentures were qualified, by operation of TIA Section

5    18(c). But because the Indentures are *not* qualified, Section 314(a) does not comprise an

6    indenture provision "required by the TIA" and *Zeffiro* is inapposite.

7     Where an indenture is not qualified, an action for declaratory judgment that it has not been

8    breached does not present a federal question. *See Boatmen's First Nat. Bank v. Kansas Pub.*

9    *Employees' Retirement System,* 915 F.Supp. 131, 135 (W.D. Mo. 1996) (finding no federal

10   question jurisdiction where "each indenture . . . was not qualified under the TIA").[7]

11      **B.**    **Because the Operative Contractual Language Would Not Be Required by the**

12               **TIA Even If the Indentures Were Qualified, there Is No Federal Question.**

13     Even if the Indentures *were* qualified, rendering TIA Section 314(a) an "indenture

14    provision . . . required by the [TIA]," federal question jurisdiction would still be lacking because

15    the *operative* contractual language, the language on which disposition of the parties' dispute

16    turns, is nowhere found in Section 314(a) (or in any other federal statute).

17     The contractual language implicated by Finisar's Complaint is found in Sections 4.02,

18    6.01(4), and 6.02 of the Indentures. Section 4.02 requires Finisar to provide copies of its SEC

19    filings to U.S. Bank "within 15 days after it files such annual and quarterly reports . . . with the

20    [SEC]." Section 6.02, in turn, authorizes the Bank to declare an acceleration, rendering all

21    principal and interest immediately due and payable, "[i]f an Event of Default . . . occurs and is

22    continuing." Section 6.01(4) defines "Event of Default" to include "fail[ure] to perform or

23

24

---

25   [7] In *Boatmen's,* it was alleged "that this Court has federal question jurisdiction . . . because [the] declaratory judgment claims arise under the [TIA]." *Boatmen's,* 915 F.Supp. at 135. The court

26   held to the contrary, *inter alia* because "each indenture . . . was not qualified under the TIA." *Id.* *Fleet National Bank v. Trans World Airlines,* 767 F.Supp. 510 (S.D.N.Y. 1991), another action

27   for breach of indenture provisions not mandated by the TIA, is also instructive. The court determined that the existence of federal jurisdiction turned on diversity considerations, *id.* at 514-

28   515, from which it may fairly be inferred that federal question jurisdiction was admittedly lacking.

**FINISAR'S AMENDED MOTION TO REMAND**          CASE NO.: 5:07-CV-04052-JF-PVT

observe any other term, covenant or agreement contained in . . . this Indenture for a period of 60

days after receipt . . . of a Notice of Default," allegedly including the terms of Section 4.02.

None of the operative terms of the contracts is prescribed by (or even appears in) the TIA

(or any other federal law).

### 1. The Operative Language of Section 4.02 Is Not Derived from the TIA.

There is significant overlap between the language of Section 4.02 of the Indentures and

the language of TIA Section 314(a)(1), 15 U.S.C. § 77nnn(a)(1).  In general terms, the statutory

provision, like the contractual provision, requires copies of SEC filings to be provided to the

indenture trustee.  But the parties' dispute is not over the existence of that obligation, but, instead,

the timing of its fulfillment.

Section 4.02 of the Indentures addresses timing, requiring Finisar to provide copies of

reports to U.S. Bank "within 15 days after it files such annual and quarterly reports . . . with the

Commission."  That timing clause, which is central to the parties' dispute, has no counterpart in

TIA Section 314(a).[8]

A recent decision by the federal court in *Cyberonics,* 2007 WL 1729977 (S.D. Tex. June

13, 2007), *appeal filed,* No. 07-20539 (5th Cir. July 20, 2007) (Request for Notice, Exh. "E"), is

instructive.  The indenture at issue in *Cyberonics* required the note issuer to "deliver to the

Trustee within 15 days after it files them with the SEC copies of the . . . reports."  In addition to

holding that the issuer had not breached the indenture by delaying its SEC filings and thus,

---

[8] The following table juxtaposes the relevant sentence of the contractual provision with the
closest language from the statutory provision, with the contractual language discussed above
shown in italics:

| Indenture Section 4.02 | TIA Section 314(a) |
|---|---|
| The Company shall file with the Trustee, *within 15 days after it files such annual and quarterly reports, information, documents and other reports with the Commission,* copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act. | Each person who, as set forth in the registration statement or application, is or is to be an obligor upon the indenture securities covered thereby shall—(1) file with the indenture trustee copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which such obligor is required to file with the Commission pursuant to section 78m or 78o(d) of this title. |

9.

**FINISAR'S AMENDED MOTION TO REMAND**                    CASE NO.: 5:07-CV-04052-JF-PVT

1  perforce, its provision of copies to the trustee, *Cyberonics* recognized that "[TIA] § 314(a)(1) . . .

2  is actually less stringent than the [indenture] agreement because it does not specify the time by

3  which [the note issuer] must provide [the indenture trustee] with copies of information filed with

4  the SEC." *Cyberonics,* 2007 WL 1729977 at *4. More generally, the *Cyberonics* court

5  determined: "it appears that the parties intended to replace § 314(a)(1) with their own

6  requirements for the purposes of their agreement (upon which any breach of the contract claim

7  must be based)." *Id.*

8      So too, here, the issue presented by Finisar's Complaint is whether Finisar breached a

9  contractual term neither appearing in nor taken from the TIA or any other federal statute, *viz.,* the

10 requirement to "file with the Trustee*, within 15 days after it files such annual and quarterly*

11 *reports, information, documents and other reports with the Commission,* copies of its . . .

12 reports." That question is not one of federal law.

13      **2.      The Operative Language of Indenture Sections 6.02 and 6.01(4) Is Not**

14           **Derived from the TIA.**

15      The key terms of Indenture Sections 6.02 and 6.01(4)—those setting forth U.S. Bank's

16 purported right to accelerate if Finisar were in default—likewise have no statutory counterpart.

17 Although TIA Section 17 authorizes acceleration, *see* 15 U.S.C. § 77qqq(a)(1), it does so *only* in

18 the event of a default in the payment of interest or repayment of principal (neither of which are

19 even alleged, here). No statutory provision authorizes or even countenances acceleration based

20 upon failure to provide copies of SEC filings, or failure to comply with other terms of an

21 indenture, as Sections 6.02 and 6.01(4) of the Indentures allegedly do.

22      There is overlap between the language of the Indentures and the language of the TIA. But

23 the *relevant* contractual terms implicated by Finisar's Complaint have no statutory counterparts.

24 Under these circumstances, *Empire Healthchoice Assur., Inc. v. McVeigh,* —U.S.—, 126 S.Ct.

25 2121, 2136, 2137 (2006) precludes the exercise of federal jurisdiction. In that case, payments

26 were made for medical care received by Joseph E. McVeigh ("McVeigh"), a federal employee, by

27 Empire Healthchoice Assurance, Inc. ("Empire"). *Id.* at 2129. Empire administered within New

28 York State the benefit plan by which the federal government contracted to insure federal

10.

1   employees pursuant to the Federal Employees Health Benefits Act of 1959 ("FEHBA").  *Id.* at

2   2126-27, 2129.  After McVeigh died, the adminstratrix of his estate commenced a state-court tort

3   action "against parties alleged to have caused Decedent's injuries.  On learning that the parties . . .

4   had agreed to settle the tort claims, Empire sought to recover the $157,309 it had paid out for the

5   Decedent's medical care."  *Id.* at 2129.

6          *Empire*'s opening line characterizes the FEHBA as "establish[ing] a comprehensive

7   program of health insurance for federal employees."  *Empire,* 126 S.Ct. at 2126.  The Court

8   characterized the insurance contract pursuant to which Empire sought to recover the medical

9   benefits it had previously paid out (pursuant to the same agreement) as an "FEHBA-authorized

10  contract."  *Id.* at 2134.  But the specific provision pursuant to which Empire sought

11  reimbursement was not itself "a prescription of federal law."  *Id.*  Because "the bottom-line

12  practical issue" was precisely "the share of that settlement properly payable to Empire," which

13  was not prescribed by federal law, the Court ruled that there was no federal question jurisdiction.

14         Here, "the bottom-line practical issue" is whether U.S. Bank can declare a default and

15  then accelerate repayment of principal because Finisar has not yet provided to U.S. Bank copies

16  of reports not yet filed with the SEC, and the contractual provisions on which that determination

17  will rest are not prescribed by federal law.  Federal law did not require the Indentures to be

18  qualified; the Indentures at issue are not qualified; and the contractual terms implicated by

19  Finisar's Complaint would not have been creatures of federal law even if the Indentures *were*

20  qualified.  Absent diversity, there is no federal jurisdiction over a contract dispute turning on

21  indenture terms not prescribed by the TIA.

22         **C.      Private Parties Cannot Create Federal Jurisdiction by Referencing Federal**

23                 **Statutes in their Contracts.**

24         Substantively, Finisar understands U.S. Bank to contend that Finisar has breached Section

25  4.02 of the Indentures because Section 314(a) of the TIA, 15 U.S.C. § 77nnn(a), allegedly

26  requires Finisar to make timely filings with the SEC and Section 4.02 of the Indentures requires

27  Finisar to "comply with . . . TIA Section 314(a)."  That is, U.S. Bank maintains that Finisar has

28  breached a statutory requirement incorporated by reference into the Indentures.

11.

1    That substantive contention is in keeping with U.S. Bank's jurisdictional allegation in the

2    Removal Notice that:

> The relevant provisions of the Indentures expressly incorporate the
> [Securities] Exchange Act [of 1934 ("Exchange Act")] and the Trust
> Indenture Act of 1939.  (See, e.g., Indenture dated October 15, 2001,
> attached as Exhibit B hereto.)  Accordingly, determining whether Finisar
> is in default under the Indentures requires this Court to interpret, apply, or
> determine the effect of these federal statutes, and the Complaint therefore
> presents a federal question.

7    (Removal Notice at 2:1-6.)  U.S. Bank's principal jurisdictional contention is that the Indentures'

8    reference to federal statutes makes this a federal question case.  That is incorrect.

9    It is a commonplace that parties cannot create federal jurisdiction by agreement.  *See, e.g.,*

10    *Guzman-Andrade v. Gonzales,* 407 F.3d 1073, 1077 (9th Cir. 2005).  A necessary corollary of

11    that truism is that the voluntary incorporation of federal statutory requirements into a contract

12    does not give rise to federal question jurisdiction.  Just as private parties cannot create federal

13    jurisdiction by *direct* agreement thereto, so too they are powerless to contract for federal

14    jurisdiction *indirectly,* by referencing or incorporating federal statutory standards in their

15    agreements.

16    For example, in *Beverlin v. Internal Revenue Service,* 574 F.Supp. 553, 554 (W.D.Mo.

17    1983), "Plaintiff contend[ed] that because Article II of the collective bargaining agreement

18    incorporate[d] federal laws that a federal question is involved."  The court held to the contrary:

> No authority is cited for this proposition and none has been found by this
> Court.  The fact that parties include the language of a federal law in their
> contract does not raise a breach of such contract to a "civil action arising
> under the Constitution, laws or treaties of the United States," even though
> an interpretation of the contract will involve interpretation of language that
> is also a federal statute.

*Id.*  Similarly, *Perini Corp. v. City of New York,* 18 F.Supp.2d 287, 292 (S.D.N.Y. 1998) held

that:  "The incorporation of the EPA procurement regulations at issue here into a municipal

construction contract does not give rise to federal question jurisdiction."  And in a related vein

*Virgin Islands Housing Authority v. Coastal General Construction Services Corp.,* 27 F.3d 911,

916 (3d Cir. 1994) held that:  "the interest in uniformity in construction of federal contractual

provisions is not enough to pose federal question issues."

12.

1    Just as private parties cannot create federal jurisdiction by express agreement, so too they

2    cannot create federal jurisdiction through the voluntary incorporation of federal statutory

3    requirements in their agreements.  Accordingly, the fact that Section 4.02 references federal

4    statutes does not convert this state law case into a civil action arising under the laws of the United

5    States.

6    **D.     There Are No Substantial or Disputed Federal Issues in this Action.**

7    The Supreme Court has characterized the jurisdictional category into which U.S. Bank

8    seeks to fit the instant Action as "slim," "special and small."  *Empire,* 126 S.Ct. at 2136, 2137.

9    Among other things, the Court has "confined federal-question jurisdiction over state-law claims

10   to those that 'really and substantially involv[e] a dispute or controversy respecting the validity,

11   construction or effect of [federal] law."  *Grable,* 545 U.S. at 313, 125 S.Ct. at 2367 (citation

12   omitted).  U.S. Bank's argument that this is a federal question case because Section 4.02 makes

13   voluntary reference to the Exchange Act and the TIA fails for the additional reason that no

14   substantial or disputed issue is introduced by those references.

15   Considering first the reference to the Exchange Act, *Cyberonics* is again instructive.  The

16   contractual indenture there, like Section 4.02 of the Indentures here, required the note issuer to

17   provide to the trustee copies of reports that the issuer "is required to file with the SEC pursuant to

18   Section 13 or 15(d) of the Exchange Act."  *Cyberonics,* 2007 WL 1729977 at *1.  As the court

19   there noted, that phrase is merely "a modifier" specifying "the types of reports that [the note

20   issuer] is required to deliver . . . not an additional obligation."  *Id.* at *4.  Because there is no

21   dispute as to "the types of reports" that Finisar "is required to deliver" to U.S. Bank under the

22   Indentures, the reference to Sections 13 and 15(d) of the Exchange Act do not introduce any

23   substantial or disputed issue of federal law.

24   The reference to Section 314(a) of the Indentures is similarly unavailing.  The issues

25   presented by Finisar's Complaint are whether Finisar, by not yet providing to U.S. Bank copies of

26   reports not yet filed with the SEC, has breached the contractual requirement to "file with the

27   Trustee, within 15 days after it files . . . with the Commission, copies of its . . . reports"; and

28   whether, under the circumstances presented, any acceleration declared by U.S. Bank should be

13.

1    enforced.  Indenture Section 4.02's requirement that Finisar "comply with the other provisions of

2    TIA Section 314(a)" does not bear on the resolution of either issue.

3          As noted above, the relevant contractual terms are not prescribed by any federal statute.

4    Moreover, if there are federal elements voluntarily introduced by the contractual references to the

5    Exchange Act and TIA, they are neither disputed nor substantial; and *Empire*'s conclusion is

6    apropos:  "it takes more than a federal element 'to open the "arising under" door.'  This case

7    cannot be squeezed into [that] slim category."  *Empire,* 126 S.Ct. at 2137.

8                              **V.    CONCLUSION**

9          Whatever the desires of the parties, this Action simply does not present any real or

10   substantial dispute or controversy respecting the validity, construction, or effect of any federal

11   law.  Accordingly, this Action must be remanded.

12   DATED:  September 28 2007              Respectfully submitted,

13                                         Sterling A. Brennan
                                           WORKMAN NYDEGGER A PROFESSIONAL CORPORATION
14
                                           Caroline McIntyre
15                                         BERGESON, LLP

16
                                           By____/s/ Sterling A. Brennan_____
17                                              Sterling A. Brennan
                                           Attorneys for Plaintiff FINISAR CORPORATION
18

19

20

21

22

23

24

25

26

27

28

                                           14.

1

**<u>CERTIFICATE OF SERVICE</u>**

2

I hereby certify that on September 28, 2007, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

following: D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson,

5

awilkinson@faegre.com; Eva Krisztina Schueller,  eschueller@mofo.com; Michael B. Fisco,

6

mfisco@faegre.com;  Paul T. Friedman, pfriedman@mofo.com.

7

8

**WORKMAN NYDEGGER**

9

/s/ Sterling A. Brennan

10

STERLING A. BRENNAN
**WORKMAN NYDEGGER**

11

1000 Eagle Gate Tower
60 East South Temple

12

Salt Lake City, UT  84111
Telephone:  (801) 533-9800

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15.