D. ANTHONY RODRIGUEZ (CA SBN 162587)
EVI K. SCHUELLER (CA SBN 237886)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: TRodriguez@mofo.com
Email: ESchueller@mofo.com

MICHAEL B. FISCO (MN No. 175341)
ABBY E. WILKINSON (MN No. 0313981)
(*Pro hac applications granted*)
FAEGRE & BENSON LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota 55402-3901
Telephone: 612.766.7000
Facsimile: 612.766.1600
Email: mfisco@faegre.com
Email: awilkinson@faegre.com

Attorneys for Defendant
U.S. Bank Trust National Association,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee on behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010, and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 5:07-cv-04052 JF (PVT)<br><br>**U.S. BANK TRUST NATIONAL ASSOCIATION'S RESPONSE TO FINISAR CORPORATION'S AMENDED MOTION TO REMAND ACTION TO SANTA CLARA COUNTY SUPERIOR COURT**<br><br>Date: Friday, November 2, 2007<br>Time: 9:00 a.m.<br>Courtroom: 3 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. PROCEDURAL BACKGROUND .......................................................................................... 2

III. RELATED PROCEEDING ..................................................................................................... 3

IV. FACTUAL BACKGROUND .................................................................................................. 4

V. LEGAL STANDARDS ........................................................................................................... 5

VI. ARGUMENT ........................................................................................................................... 6

    A. Finisar's Claim Necessarily Raises A Federal Issue. ................................................ 7

    B. The Federal Issue Is Actually Disputed And Substantial. ....................................... 10

    C. Federal Jurisdiction Is Consistent With Congress' Intended Balance
       of Federal and State Responsibilities Under the TIA. ............................................ 10

VII. CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*AT&T Commc'ns of the Mountain States v. Qwest Corp.*,
  No. 206CV00783 .................................................................................................................. 11

*Bank of New York v. BearingPoint, Inc.*,
  824 N.Y.S.2d 752, 13 Misc. 3d 1209 (A) (Sup. Ct. N.Y. County 2006) ............................. 2, 10

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey*,
  85 F.3d 970 (2d Cir. 1996) ..................................................................................................... 10

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ................................................................................................... 11

*Cyberonics, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
  No. H-07-121, 2007 WL 1729977 (S.D. Tex. June 13, 2007) ................................................. 1

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  __ U.S. __, 126 S. Ct. 2121 (2006) .................................................................................... 7, 12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ............................................................................................................ 7, 11

*In re Nucorp Energy Sec. Litig.*,
  772 F.2d 1486 (9th Cir. 1985) ................................................................................................ 10

*Koresko v. Murphy*, ,
  464 F. Supp. 2d 463 (E.D. Pa. 2006) ..................................................................................... 11

*Rose v. SLM Fin. Corp.*,
  No. 3:05CV445, 2007 WL 674319 (W.D.N.C. Feb. 28, 2007) .............................................. 11

*Zeffiro v. First Pennsylvania Banking & Trust Co.*,
  623 F.2d 290 (3d Cir. 1980) ........................................................................................ 9, 10, 11

## STATUTES

15 U.S.C.
  § 77bbb(a) ............................................................................................................................... 11
  § 77nnn(a) ............................................................................................................................. 7, 8
  § 77v(a) ..................................................................................................................................... 1
  § 77vvv(b) ................................................................................................................................. 1
  § 78aa ........................................................................................................................................ 1
  § 78m(a) .................................................................................................................................... 7

17 C.F.R. 260.19a-1 ......................................................................................................................... 8

28 U.S.C.
  § 1331 ........................................................................................................................... 1, 2, 6, 7
  § 1441 ........................................................................................................................................ 5
  § 1441(a) ................................................................................................................................... 6
  § 1446 ........................................................................................................................................ 5

**MISCELLANEOUS**

14 William Meade Fletcher et al.,
   Fletcher Encyclopedia of the Law of Corporations § 6828 ...................................................... 8

Order Under Section 36 of the Securities Exchange Act of 1934 Granting Exemptions
   from Certain Provisions of the Act and Rules Thereunder, SEC Exchange Act Release
   No. 34-45589, 2002 WL 417359 (March 18, 2002) ................................................................ 9

Requirements for Arthur Anderson LLP Auditing Clients, SEC Trust Indenture Act
   Release No. 39-2395, 2002 WL 417378, (March 18, 2002) .................................................... 9

S. Rep. No. 248, at 5 (1939) ................................................................................................................ 8

## I.    PRELIMINARY STATEMENT

This is the second of two related actions filed by Finisar Corporation ("Finisar") as a result of its failure to file financial statements with the Securities and Exchange Commission ("SEC"). U.S. Bank Trust National Association ("U.S. Bank" or "Trustee"), in its capacity as indenture trustee for holders of three, separate series of debt securities issued by Finisar, has sent several notices of default to Finisar relating to its failure to file financial statements. Finisar seeks a judicial determination in these related actions that it is not required under the applicable Indentures (as defined below) to timely file financial statements with the Trustee. Instead, Finisar asserts that it is only required to provide copies of those reports to the Trustee (and make available to holders of the debt securities) if and when it chooses to file them with the SEC. As this Court recognized at the hearing on remand of the First Declaratory Judgment Action (as defined below), the determination of this issue presents a federal question under 28 U.S.C. § 1331.

In its second motion to remand, Finisar makes much of the fact that the Indentures were not required to be "qualified" under the Trust Indenture Act of 1939 ("TIA"). Qualification under the TIA is irrelevant to the question before the Court. Finisar issued the securities in this case pursuant to federal exemptions authorized under the Securities Act of 1933. As with most securities issued pursuant to a federal exemption, the Indentures nevertheless require Finisar to comply with the applicable TIA provisions and the reporting requirements mandated by the rules and regulations of the Securities Exchange Act of 1934 ("Exchange Act").[1]

Finisar also cites *Cyberonics, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. H-07-121, 2007 WL 1729977 (S.D. Tex. June 13, 2007) as instructive to the question of whether Section 4.02 of

---

[1] Finisar argues at footnote 3 that removal of this action is improper under Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), incorporated by reference under Section 322(b) of the TIA, 15 U.S.C. § 77vvv(b), because it prohibits removal. (Amended Motion to Remand n.3.) Finisar's argument ignores the jurisdictional counterpart found under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, which gives this Court exclusive jurisdiction over matters arising under the Exchange Act. Section 27 provides, in relevant part, that "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa.

1   the Indentures requires Finisar to file financial reports with the SEC. While the decision in
2   Cyberonics may be relevant to resolving the underlying merits of this case, it does not address, in
3   the first instance, whether this Court has subject matter jurisdiction under 28 U.S.C. § 1331.
4   Moreover, to the extent this Court deems it necessary to consider the underlying merits of the
5   actions, it should consider the decision in *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d
6   752, 13 Misc. 3d 1209(A) (Sup. Ct. N.Y. County 2006), which is diametrically opposed to the
7   ruling in Cyberonics. As the court in BearingPoint noted, "BearingPoint's tortured parsing of this
8   provision [which is identical to Section 4.02 of the Indentures in this case] to read the section as
9   making SEC filings optional under the terms of the Indenture, vitiates the clear purpose of the
10  Indenture to provide information to the investors so that they may protect their investment." *Id.*
11  at *7.

### II.    PROCEDURAL BACKGROUND

13  On June 22, 2007, Finisar filed its second complaint ("Complaint") against U.S. Bank in
14  the Superior Court for the County of Santa Clara, California ("State Court"), Case No.
15  107CV088503, entitled *Finisar Corporation v. U.S. Bank Trust National Association* ("Second
16  Declaratory Judgment Action").[2] By its Complaint, Finisar seeks a judicial declaration that it is
17  not in default under three, separate indentures entered into between itself, as the obligor, and U.S.
18  Bank, in its capacity as indenture trustee, as a result of Finisar's failure to file financial statements
19  with the SEC.
20  U.S. Bank filed an answer to the Complaint on August 6, 2007, in the State Court,
21  generally denying the Complaint's allegations and asserting 6 affirmative defenses.[3] On
22  August 7, 2007, U.S. Bank removed the Second Declaratory Judgment Action to this Court. This
23  Court has original jurisdiction over the Second Declaratory Judgment Action under 28 U.S.C.
24  § 1331 because the action arises under the laws of the United States, namely Sections 13 and
25  15(d) of the Exchange Act and Section 314(a) of the TIA.

---

[2] A copy of the Complaint is attached as Exhibit A to the Notice of Removal filed by U.S. Bank with this Court on August 7, 2007 ("Notice of Removal").

[3] A copy of the Answer is attached as Exhibit A to the Notice of Removal.

On September 5, 2007, Finisar filed a motion to remand the Second Declaratory Judgment Action to the State Court. Several weeks later, on September 28, 2007, Finisar filed an amended motion to remand the action ("Amended Motion to Remand"). By its Amended Motion to Remand, Finisar generally asserts that the Second Declaratory Judgment Action presents no federal question bringing it within the original jurisdiction of this Court. U.S. Bank files this pleading in response to the Amended Motion to Remand.

### III. RELATED PROCEEDING

Previously, on March 2, 2007, Finisar filed a separate complaint ("First Complaint") in the State Court against U.S. Bank, Case No. 107CV081092, entitled *Finisar Corporation v. U.S. Bank Trust National Association* ("First Declaratory Judgment Action"). The relief sought by Finisar in its First Complaint is identical to the relief sought by it in this Second Declaratory Judgment Action. U.S. Bank filed its answer to the First Complaint on April 13, 2007, and subsequently removed the action to this Court.

On May 14, 2007, Finisar filed a motion to remand the First Declaratory Judgment Action to the State Court, also arguing, among other things, that this Court does not have original jurisdiction over the action. U.S. Bank filed its response to the motion on June 29, 2007. Oral argument was held on September 7, 2007. The Court entered an order on October 12, 2007, remanding the First Declaratory Judgment Action because the removal was untimely. The Court did not address the issue of federal question.

Prior to the hearing, Magistrate Judge Howard R. Lloyd entered an order dated August 10, 2007, referring the Second Declaratory Judgment Action to the judge presiding over the First Declaratory Judgment Action for related case determination pursuant to Civil Local Rule 3-12(c). On August 16, 2007, U.S. Bank filed its Administrative Motion to Consider Whether Cases Should Be Related in the First Declaratory Judgment Action, along with a stipulation between the parties regarding the administrative motion. On September 6, 2007, this Court entered its Related Case Order, finding that the actions were related.

## IV. FACTUAL BACKGROUND

Beginning in October 2001, through October 2006, Finisar issued the following three, separate series of debt securities: (a) 5¼% Convertible Subordinated Notes due 2008 under that certain Indenture dated as of October 15, 2001 ("2001 Indenture"); (b) 2½% Convertible Subordinated Notes due 2010 under that certain Indenture dated as of October 15, 2003 ("2003 Indenture"); and (c) 2½% Convertible Senior Subordinated Notes due 2010 under that certain Indenture dated as of October 12, 2006 ("2006 Indenture," together with the 2001 Indenture and 2003 Indenture, the "Indentures").[4]  U.S. Bank acts as indenture trustee under the Indentures for holders of each of the three series of subordinated notes (collectively, the "Subordinated Notes").

Under Section 4.02 of the Indentures, Finisar is required to file with the SEC, and to provide copies of such reports to the Trustee within 15 days of filing, certain annual and quarterly reports and other information set forth in Sections 13 and 15(d) of the Exchange Act.  Section 4.02 of the Indentures also requires Finisar to comply with the provisions of Section 314(a) of the TIA, which incorporates Sections 13 and 15(d) of the Exchange Act and the rules and regulations promulgated thereunder.  Finisar does not appear to dispute that it is required to file quarterly and annual reports.

In December 2006, Finisar filed its first of several "Notifications of Late Filing" with the SEC, informing both the SEC and Trustee that it would be unable to file or provide quarterly and annual reports until Finisar completes an investigation of stock option grants made by it following its initial public offering on November 11, 1999.  Based on its initial findings, Finisar determined to restate its historical financial statements to record charges for compensation expense relating to past stock option grants and the tax impact related to such adjustments. (Complaint at ¶¶ 6, 7.) The restatement process is apparently ongoing.

Finisar has not filed annual or quarterly reports with the SEC since September 8, 2006. To date, Finisar has failed to file, and to provide to the Trustee, (1) a quarterly report for its second fiscal quarter ended October 29, 2006, (2) a quarterly report for its third fiscal quarter

---

[4] An exemplar of the Indentures is attached to the Notice of Removal as Exhibit B.

ended January 28, 2007, (3) an annual report for its fiscal year ended April 30, 2007, and (4) a quarterly report for its first fiscal quarter ended July 29, 2007. Finisar's failure to file reports with the SEC, and to provide copies of those reports to the Trustee, constitutes a default under Section 4.02 of the Indentures.

The Trustee sent its first three "Notices of Default" to Finisar, one under each Indenture, on January 4, 2007, as a result of the company's failure to file its second quarterly report. That default ripened into an "Event of Default" under each Indenture on March 5, 2007.[5] Shortly after receiving the Notices of Default, Finisar commenced the First Declaratory Judgment Action. Finisar asserts, as it does in this Second Declaratory Judgment Action, that its failure to file quarterly and annual reports with the SEC does not result in a default under Section 4.02 of the Indentures or, alternatively, that enforcement of remedies under the Indentures as a result of its failure to file reports with the SEC would be inequitable.

After Finisar filed the First Complaint, the Trustee sent three additional Notices of Default to Finisar, each dated April 24, 2007, as a result of the company's failure to file its third quarterly report. That default ripened into an Event of Default under each Indenture on June 23, 2007. Shortly after receiving the Notices of Default, Finisar commenced the Second Declaratory Judgment Action. Since that time, the Trustee has sent Notices of Default to Finisar for its failure to file a Form 10-K for its fiscal year ended April 30, 2007, and Notices of Default for its failure to file a Form 10-Q for its first fiscal quarter ended July 29, 2007.

## V.   LEGAL STANDARDS

U.S. Bank removed the Second Declaratory Judgment Action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Section 1441(a) generally provides for removal by a defendant of "any

---

[5] Section 6.01(4) of the Indentures specifically provides that an "Event of Default" occurs if:

> (4) the Company fails to perform or observe any other term, covenant or agreement contained in the Notes or this Indenture for a period of 60 days after receipt by the Company of a Notice of Default (as defined in Section 6.01).

A Notice of Default under Section 6.01 must specify the default, demand that it be remedied and state that such notice is a "Notice of Default."

civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A district court has original jurisdiction over an action if, as is true here, the action is founded on a claim or right arising under the laws of the United States. 28 U.S.C. § 1331. In this case, the Court must interpret, apply or otherwise determine the effect of two federal statutes, the Exchange Act and the TIA.

**VI.    ARGUMENT**

Resolution of this lawsuit necessarily depends on a substantial federal question: Is Finisar, as an issuer of public debt securities, required to file reports with the SEC under the Exchange Act and provide copies of such reports to the Trustee? If so, an Event of Default exists under the Indentures. If not, there is no Event of Default. Either way, the question is one of federal law.

As alleged in the Complaint, Finisar filed the Second Declaratory Judgment Action as a result of its failures to file certain reports with the SEC in accordance with the Exchange Act and to provide a copy of those reports to the Trustee in accordance with the TIA and the Indentures. The complete language of Section 4.02 of the Indentures, which addresses the dispute between Finisar and U.S. Bank in this matter, provides:

> The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may be rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to have been subject to such reporting requirements. The Company also shall comply with the other provisions of TIA Section 314(a).

(Emphasis added).

The filing of annual and quarterly reports under the Exchange Act is not optional. Section 13 of the Exchange Act provides that "[e]very issuer of a security registered pursuant to section 12 of this title *shall file* with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate for the proper protection of investors and to insure fair dealing in the security," among other information and documents, such

1  quarterly reports as the SEC may prescribe. 15 U.S.C. § 78m(a) (emphasis added). Section

2  314(a) of the TIA provides: "Each person who . . . is or is to be an obligor upon the indenture

3  securities . . . shall: (1) file with the indenture trustee copies of the annual reports and of the

4  information, documents, and other reports . . . *which such obligor is required to file with the*

5  *Commission pursuant to section 13 or section 15(d) of this title [the Securities Exchange Act of*

6  *1934].*" 15 U.S.C. § 77nnn(a) (emphasis added).

7      The relevant provisions of the Indentures expressly incorporate the Exchange Act and the

8  TIA. Per the rules and regulations accompanying the Exchange Act, incorporated by reference

9  under the TIA, Finisar was required to file with the SEC, and to provide copies to the Trustee, a

10  Form 10-Q for its second fiscal quarter ended October 29, 2006, a Form 10-Q for its third fiscal

11  quarter ended January 28, 2007, a Form 10-K for its fiscal year ended April 30, 2007, and a Form

12  10-Q for its first fiscal quarter ended July 29, 2007. Determining whether Events of Default exist

13  under the Indentures, therefore, necessarily requires this Court to interpret, apply, or determine

14  the effect of the Exchange Act and the TIA under the Indentures.

15      Federal question jurisdiction under 28 U.S.C. § 1331 exists when "a well-pleaded

16  complaint establishes either that federal law creates the cause of action *or* that the plaintiff's right

17  to relief necessarily depends on resolution of a substantial question of federal law." *Empire*

18  *Healthchoice Assurance, Inc. v. McVeigh*, __ U.S. __, 126 S. Ct. 2121, 2131 (2006) (emphasis

19  supplied) (quotation omitted). The latter test is satisfied when: (1) the claim necessarily raises a

20  federal issue; (2) the federal issue is actually disputed and substantial; and (3) federal jurisdiction

21  would not disturb any congressionally-approved balance of federal and state responsibilities.

22  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Because all

23  three prongs are present here, jurisdiction is proper in this Court and Finisar's Amended Motion

24  to Remand should be denied.

25      **A.**    **Finisar's Claim Necessarily Raises A Federal Issue.**

26      In its Complaint, Finisar claims that the Indentures require it only to provide the Trustee,

27  within fifteen days of filing, copies of SEC filings *actually* made, and imposes no duty to provide

28  the Trustee with documents if Finisar elects to ignore its statutory obligations under the Exchange

Act. But Finisar's duty to provide documents to the Trustee is a creature of federal statute, and Section 4.02 of the Indentures is simply a mechanism to enforce the longstanding statutory provisions of those federal statutes. Accordingly, determining the scope of Finisar's duty requires this Court to examine and interpret federal law.

The TIA obligates Finisar to provide the Trustee with documents that it is required to file with the SEC, *regardless of whether it actually files those documents*. TIA Section 314(a) provides: "Each person who . . . is or is to be an obligor upon the indenture securities . . . shall: (1) file with the indenture trustee copies of the annual reports and of the information, documents, and other reports . . . which such obligor is required to file with the Commission pursuant to section 13 or section 15(d) of this title [the Securities Exchange Act of 1934]." 15 U.S.C. § 77nnn(a); *see also* 14 William Meade Fletcher et al., FLETCHER ENCYCLOPEDIA OF THE LAW OF CORPORATIONS § 6828, Overview and Scope – Trust Indenture Act of 1939 (2006) (citing TIA § 314(a) and stating: "The obligor must file with the trustee copies of annual reports and of the information, documents or other reports which such obligor is required to file with the Securities and Exchange Commission, summaries of which must be transmitted to the security holders pursuant to rules and regulations prescribed by the Commission."); S. Rep. No. 248, at 5 (1939) ("Section 314, in language similar to that of section 15(d) of the Securities Exchange Act, writes into the indenture a requirement that the issuer file with the indenture trustee, as well as with the Commission, periodic reports similar to those which registrants under the Securities Act must now undertake to file with the Commission.").

Indeed, the SEC has recognized that the TIA mandates an issuer like Finisar to provide the indenture trustee with copies of reports required to be filed with the SEC. Rule 19a-1 under the TIA is titled "Compliance with Section 314(a)(1) of the Trust Indenture Act for certain eligible indenture obligors." 17 C.F.R. 260.19a-1. In this rule, the SEC expressly refers to the "duty under Section 314(a)(1) of the Act to 'file with the indenture trustee all reports *required to be filed* with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934.'" *Id.* In discussing its adoption of Rule 19a-1, the SEC again made clear that TIA

§ 314(a) imposes an independent statutory obligation to provide the Trustee with copies of any documents that the obligor is required to file with the SEC:

> Section 314(a) of the Trust Indenture Act requires companies that are obligors on securities issued under an indenture that is qualified under the Trust Indenture Act to file certain information with the indenture trustee. The indenture obligor must 'file with the indenture trustee all reports required to be filed with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act.' We have adopted a rule to make clear the application of Section 314(a)(1) to indenture obligors that file their Exchange Act reports with the Commission in compliance with the 34 Act Order. Trust Indenture Act Rule 19a-1 states that the indenture obligor's filing with the indenture trustee of those Exchange Act reports filed in accordance with the 34 Act Order shall satisfy the indenture obligor's responsibility to 'file with the indenture trustee all reports required to be filed with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act' for purposes of Section 314(a)(1).

Requirements for Arthur Anderson LLP Auditing Clients, SEC Trust Indenture Act Release No. 39-2395, 2002 WL 417378, at *9 (March 18, 2002) (footnotes omitted).[6]

Here, Section 4.02 of the Indentures is a vehicle for implementing the mandates of TIA Section 314(a) and the Exchange Act and thus cannot be understood without interpreting and applying that federal statute. Indeed, Section 4.02 of the Indentures specifically incorporates all of TIA Section 314(a). In addition to requiring that Finisar provide the Trustee with copies of all documents actually filed with the SEC within fifteen days of filing, Section 4.02 provides: "The Company also shall comply with the other provisions of TIA Section 314(a)." These provisions include TIA's requirement that Finisar provide copies of all documents that are to be required to be filed with the SEC, regardless of whether or not such documents are actually filed.

The Third Circuit's decision in *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 623 F.2d 290 (3d Cir. 1980), is instructive. In it, the Court of Appeals made clear that the interpretation of indentures subject to and mandated by TIA is governed by federal, not state law. The Third Circuit wrote:

---

[6] In its "34 Act Order," the SEC exempted certain issuers from certain provisions of the Exchange Act following the indictment of Arthur Anderson LLP. *See* Order Under Section 36 of the Securities Exchange Act of 1934 Granting Exemptions from Certain Provisions of the Act and Rules Thereunder, SEC Exchange Act Release No. 34-45589, 2002 WL 417359 (March 18, 2002).

> It is hard to believe that Congress would have established uniform standards to govern indentures and then paradoxically have allowed the application of those standards to depend on the law of the state of the suit. *The interpretation of the indenture provisions mandated by the [TIA] does not depend on ordinary contract principles – the intent of the parties – but depends on the interpretation of the legislation.*

*Id.* at 299 (footnote omitted) (emphasis supplied). Because Finisar's obligations under Section 4.02 of the Indentures are rooted in federal statute, Finisar's claim necessarily raises a federal issue.

### B. The Federal Issue Is Actually Disputed And Substantial.

The federal issue — whether Finisar, as an issuer of public debt securities, is required to file reports with the SEC under the Exchange Act and provide copies of such reports to the Trustee — is at the core of the parties' dispute. Plaintiff alleges that it need *only* provide copies of documents actually filed within fifteen days of filing, and that nothing requires it to provide copies of documents that were never filed despite the Exchange Act's provisions. To the contrary, the Trustee asserts that Section 4.02 requires Finisar to timely file its reports and provide copies to the Trustee. Federal law holds the key to resolving the parties' dispute. As the Court noted in *BearingPoint*, an issuer of debt securities "cannot take advantage of its failure to fulfill its obligation to file timely reports with the SEC by arguing that it has consequently not breached its obligation to provide the Trustee with copies of such reports." *BearingPoint*, 824 N.Y.S.2d 752 at *8.

### C. Federal Jurisdiction Is Consistent With Congress' Intended Balance of Federal and State Responsibilities Under the TIA.

Federal jurisdiction would not disturb any congressionally-approved balance of federal and state responsibilities. The Ninth Circuit has long-recognized that the TIA was "designed 'to vindicate a *federal* policy of protecting investors.'" *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985) (citation omitted) (emphasis supplied). The TIA "was enacted because previous abuses by indenture trustees had adversely affected 'the *national* public interest and the interest of investors in notes, bonds, [and] debentures,' and *Congress sought to address this national problem in a uniform way.*" *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*

*New Jersey*, 85 F.3d 970, 974 (2d Cir. 1996) (quoting statute and citing legislative history) (emphases supplied).  In establishing "uniform standards to govern indentures," *Zeffiro*, 623 F.2d at 299, Congress made clear its intent that federal law, and not state, dictate the duties of obligors like Finisar.  Indeed, TIA Section 314(a) specifically implements one of TIA's paramount objectives in protecting the "national public interest," as Congress explained in TIA 302(a)(4):

> [T]he national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public, are adversely affected . . . (4) when the obligor is not obligated to furnish to the trustee under the indenture and to such investors adequate current information as to its financial condition, and as to the performance of its obligations with respect to the securities outstanding under such indenture. . . .

15 U.S.C. § 77bbb(a).  "The [arising under] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  That is precisely the case here.

In short, federal question jurisdiction is present in this case, where the contractual provision at issue is mandated by Congress, incorporates federal statute, and is part of a longstanding congressional scheme to protect the national public interest by imposing uniform standards for trust indentures.  Courts facing similar circumstances have not hesitated to find federal question jurisdiction even in the face of a breach of contract complaint that tries to dodge or obscure the underlying federal issue.  *See*, *e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-96 (2d Cir. 2005) (denying motion to remand where complaint alleged breach of contract term that incorporated federal statute by reference); *AT&T Commc'ns of the Mountain States v. Qwest Corp.*, No. 206CV00783 DS, 2007 WL 518537 (D. Utah Feb. 13, 2007) (denying motion to remand where breach of contract claim depended, in part, on proof that defendant breached its obligations under federal statute and agreements arising thereunder); *Rose v. SLM Fin. Corp.*, No. 3:05CV445, 2007 WL 674319 (W.D.N.C. Feb. 28, 2007) (denying motion to remand where plaintiff alleged that federally mandated disclosures constituted basis of written loan agreement that did not expressly refer to or incorporate federal statutes); *Koresko v. Murphy*,

464 F. Supp. 2d 463, 467-69 (E.D. Pa. 2006) (denying motion to remand where plaintiff's rescission claim rested on ground that federally-mandated disclosures were condition precedent to contract and were never made).

In support of remand, Finisar leans heavily on the Supreme Court's decision in *Empire Healthchoice Assurance*, 126 S. Ct. at 2131-32. This reliance is misplaced. In *Empire*, a federal employee's health insurance carrier sought reimbursement of benefits after the injured employee recovered damages in a state court tort action. The Supreme Court held that the reimbursement action was triggered by resolution of state court tort claim, and not any federal action. Here, in contrast, Section 4.02 of the Indentures is required by and incorporates federal statute, and is part of a federal scheme to establish uniform national standards for indentures. Federal law determines the outcome of this lawsuit, and it properly belongs in federal court.

### VII. CONCLUSION

For all of the reasons set forth above, U.S. Bank respectfully requests that this Court deny the Amended Motion to Remand and grant U.S. Bank such other and further relief as is just and equitable.

Dated: October 12, 2007

D. ANTHONY RODRIGUEZ
EVI K. SCHUELLER
MORRISON & FOERSTER LLP

MICHAEL B. FISCO
MICHAEL M. KRAUSS
ABBY E. WILKINSON
THERESA DYKOSCHAK
FAEGRE & BENSON LLP

By:   /s/ D. Anthony Rodriguez
       D. Anthony Rodriguez

Attorneys for Defendant
U.S. BANK TRUST NATIONAL ASSOCIATION