1  D. ANTHONY RODRIGUEZ (CA SBN 162587)
   EVA K. SCHUELLER (CA SBN 237886)
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone:  415.268.7000
4  Facsimile:  415.268.7522
   Email:  DRodriguez@mofo.com
5  Email:  ESchueller@mofo.com

6  MICHAEL B. FISCO (MN No. 175341)
   ABBY E. WILKINSON (MN No. 0313981)
7  (*Pro hac applications granted*)
   FAEGRE & BENSON LLP
8  90 South Seventh Street, Suite 2200
   Minneapolis, Minnesota  55402-3901
9  Telephone:  612.766.7000
   Facsimile:  612.766.1600
10 Email:  mfisco@faegre.com
   Email:  awilkinson@faegre.com

11
   Attorneys for Defendant U.S. Bank Trust National Association,
12 in its capacity as Indenture Trustee

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                         SAN JOSE DIVISION

17

18 FINISAR CORPORATION, a Delaware        Case No. C 07-4052 JF (PVT)
   corporation,
19
                        Plaintiff,
20                                         **U.S. BANK TRUST NATIONAL**
            v.                             **ASSOCIATION'S NOTICE OF**
21                                         **MOTION AND MOTION FOR**
   U.S. BANK TRUST NATIONAL                **SUMMARY JUDGMENT;**
22 ASSOCIATION, a national banking association, **MEMORANDUM OF POINTS AND**
   not in its individual capacity, but solely in its **AUTHORITIES IN SUPPORT**
23 capacity as Indenture Trustee on behalf of all **THEREOF**
   Holders of Finisar Corporation's 5¼%
24 Convertible Subordinated Notes due 2008, 2½%
   Convertible Senior Subordinated Notes due 2010,
25 and 2½% Convertible Subordinated Notes due  Date:      July 11, 2008
   2010, and DOES 1 through 10, inclusive,   Time:      9:00 a.m.
26                                         Judge:     The Hon. Jeremy Fogel
                        Defendants.        Location:  Courtroom No. 3, 5ᵗʰ Fl.
27

28

1  **NOTICE OF MOTION AND MOTION**

2  TO EACH PARTY AND EACH ATTORNEY OF RECORD IN THIS ACTION:

3      YOU ARE HEREBY NOTIFIED that on July 11, 2008, at 9:00 a.m. in Courtroom 3 of

4  the U.S. District Court for the Northern District of California, located at 280 South 1st Street

5  San Jose, California, or as soon thereafter as may be heard by the Court, Defendant U.S. Bank

6  Trust National Association ("U.S. Bank") will and hereby does move for summary judgment

7  pursuant to Federal Rules of Civil Procedure 56(b).

8      U.S. Bank moves for summary judgment on the grounds that there are no genuine issues

9  of material fact in dispute and U.S. Bank is entitled to judgment as a matter of law on Plaintiff

10 Finisar Corporation's claims and on U.S. Bank's counterclaims.  This motion will be based upon

11 this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the

12 Declaration of Diana Jacobs and its Exhibits filed concurrently herewith, the Appendix of

13 Authorities filed concurrently herewith, all pleadings and papers on file in this action, and upon

14 such other matters as may be presented to the Court at the time of this hearing.

15

16 Dated: April 24, 2008                          D. ANTHONY RODRIGUEZ
                                                 EVA K. SCHUELLER
17                                               MORRISON & FOERSTER LLP

18                                               MICHAEL B. FISCO (MN No. 175341)
                                                 ABBY E. WILKINSON (MN No. 0313981)
19                                               (*Pro hac applications granted*)
                                                 FAEGRE & BENSON LLP
20

21

22                                  By: _____
                                              // s //
23                                        D. Anthony Rodriguez

24                                        Attorneys for Defendant

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................................... i

TABLE OF AUTHORITIES.............................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

INTRODUCTION ..............................................................................................................1

STATEMENT OF THE ISSUES.........................................................................................2

FACTUAL BACKGROUND..............................................................................................2

    1.    The Indentures and Related Debt Securities. ...................................................2

    2.    The Issuer's Filing Requirements Under the Indentures.................................3

    3.    Finisar's Late-Filed Quarterly and Annual Reports........................................4

    4.    The Events of Default and Ensuing Litigation. ..............................................4

    5.    The SEC and NASDAQ Investigations, and Stock Option Derivative Litigation. ...............................................................................5

    6.    Finisar's Intermittent Reports with the SEC. .................................................6

    7.    Finisar's Restated and Late-Filed Financial Statements. ................................6

    8.    The Indenture Trustee's Fees and Expenses. .................................................7

PROCEDURAL BACKGROUND.......................................................................................8

ARGUMENT......................................................................................................................8

I.    SECTION 4.02 OF THE INDENTURES REQUIRES FINISAR TO TIMELY FILE ITS QUARTERLY AND ANNUAL REPORTS WITH THE SEC AND THE INDENTURE TRUSTEE. .........................9

    A.    Finisar Breached Section 4.02 of the Indentures When It Failed to Timely File Its Quarterly and Annual Reports....................................9

    B.    The Filing Requirements of Sections 13 and 15(d) of the Exchange Act are Not Optional. ....................................................12

    C.    The Rules and Regulations Accompanying the Exchange Act are Expressly Incorporated by Reference Under Section 314(a) of the TIA. ............................................................13

II.    FINISAR'S TIME TO CURE THE EVENTS OF DEFAULT HAS EXPIRED.................................................................................................16

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

ii

1

III.    SECTION 7.06 OF THE INDENTURES REQUIRES FINISAR
        TO PAY THE INDENTURE TRUSTEE'S FEES AND
2       EXPENSES. ........................................................................................................18

3    CONCLUSION ..............................................................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ABS P'ship v. AirTran Airways, Inc.*,
 765 N.Y.S.2d 616 (App. Div. 1st Dep't 2003) ........................................................9

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*,
 No. 3:06-CU-1770-D, 2008 WL 373162 (N.D. Tex. Feb. 12, 2008) ........................ 12 n.8

*Bank of N.Y. v. BearingPoint, Inc.*,
 824 N.Y.S.2d 752 (Sup. Ct. N.Y. County 2006) ........................................1, 9, 10, 13 & n.10

*Bayview Gen. Hosp. v. Assoc. Hosp. Serv. of N.Y.*,
 256 N.Y.S.2d 471 (Sup. Ct. N.Y. County 1964) ........................................ 19 n.15

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................8

*Creighton v. Miller*,
 594 N.Y.S.2d 185 (App. Div. 1st Dep't. 1993) ........................................ 13 n.10

*Cyberonics, Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
 No. H-07-121, 2007 WL 1729977 (S.D. Tex. June 13, 2007) ..............................11

*Elliott Assocs. v. J. Henry Schroeder Bank & Trust Co.*,
 838 F.2d 66 (2d Cir. 1988) .....................................................................11

*Isaacson v. Slote*,
 301 N.Y.S.2d 336 (Sup. Ct. N.Y. County 1969) ........................................ 17 n.12

*Kahn v. N.Y. Times Co.*,
 503 N.Y.S.2d 561 (App. Div. 1st Dep't 1986) ................................................10

*Meckel v. Cont'l Res. Co.*,
 758 F.2d 811 (2d Cir. 1985) ...................................................................11

*Mich. Nat'l Bank-Oakland v. Am. Centennial Ins. Co.*
 *(In re Liquidation of Union Indemn. Ins. Co.)*,
 674 N.E.2d 313 (N.Y. 1996)............................................................... 17 n.12

*Spanos v. Skouras Theaters Corp.*,
 364 F.2d 161 (2d Cir. 1966) ............................................................... 17 n.12

*UnitedHealth Group Inc. v. Wilmington Trust Co.*,
 No. 06-CV-4307, 2008 WL 686755 (D. Minn. Mar. 10, 2008) ..............................11 & n.6

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

iv

*U.S. Bank Nat'l Assoc. v. MOA Hospitality,*
  No. 601686/2007 ................................................................................................ 19

*U.S. Trust Co. of N.Y. v. Executive Life Ins. Co.,*
  602 F. Supp. 930 (S.D.N.Y. 1984),
  *aff'd,* 791 F.2d 10 (2d Cir. 1986) ........................................................................ 9

*U.S. Trust Co. of N. Y. v. Pardo (In re W.T. Grant Co.),*
  119 B.R. 898 (Bankr. S.D.N.Y. 1990),
  *aff'd,* 935 F.2d 1277 (2d Cir. 1991) .................................................................. 19

*Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.,*
  626 N.Y.S.2d 61 (App. Div. 1st Dep't 1995) ................................................... 9-10

### FEDERAL STATUTES, RULES, AND REGULATIONS

15 U.S.C.
  § 77bbb(a) ......................................................................................................... 15
  § 77nnn(a) ......................................................................................................... 14
  § 78m .................................................................................................................. 3
  § 78m(a) ............................................................................................................ 13
  § 78o(d) ............................................................................................................... 3

Fed. R. Civ. P. 56(c) .................................................................................................. 8

17 C. F.R. 260.19a-1 ............................................................................................... 14

### OTHER AUTHORITIES

14 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE
  CORPORATIONS § 6828, *Trust Indenture Act of 1939* (2003) (citing TIA § 314(a)); *see
  also* S. Rep. No. 248, at 5 (1939)10-Q, available at http://www.sec.gov (last visited
  Apr. 14, 2008) .................................................................................................... 14

S. Rep. No. 248 (1939) ............................................................................................ 14

In re Order Under Section 36 of the Securities Exchange Act of 1934 Granting
  Exemptions from Certain Provisions of the Act and Rules Thereunder, SEC Exchange
  Act Release No. 34-45589,
  2002 WL 417359 (Mar. 18, 2002) ........................................................... 15 n.11

Requirements for Arthur Andersen LLP Auditing Clients, SEC Trust Indenture Act
  Release No. 39-2395, 2002 WL 417378 (Mar. 18, 2002) .................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States Securities and Exchange Commission, General Instructions for Form 10-K
    Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
    and General Instructions for Form 10-Q, available at http://www.sec.gov (last visited
    Apr. 14, 2008) ................................................................................................................13

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

vi

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2      **INTRODUCTION**

3      This Action arises from Finisar Corporation's ("Finisar") failure to timely file its financial

4      reports with the Securities and Exchange Commission ("SEC").  Finisar does not dispute that it is

5      required to file the reports.  Finisar also does not dispute that it failed to timely file the reports.

6      Finisar commenced this Action against U.S. Bank Trust National Association, in its capacity as

7      indenture trustee for holders of approximately $250 million of debt securities ("U.S. Bank" or the

8      "Trustee"), seeking declaratory relief that its failure to timely file the reports with the SEC did not

9      constitute defaults under its indentures with U.S. Bank.  By this motion, U.S. Bank moves for

10     summary judgment with respect to all claims and counterclaims of the parties.

11     There is a split in opinion among courts that have addressed the principal issue presented

12     in this Action.  In *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d 752 (Sup. Ct. N.Y.

13     County 2006), the court correctly recognized that the purpose of the reporting covenant is to

14     ensure that relevant and timely financial information is provided to the holders of the issuer's debt

15     securities, not the indenture trustee.  Unlike the holders of the debt securities, the trustee has no

16     investment interest in the issuer.  The reporting covenant is, therefore, not intended, as the other

17     courts have found, to keep the trustee informed of the issuer's financial status.  The reporting

18     covenant requires the issuer to provide copies of the SEC filings to the indenture trustee only to

19     confirm that the reports have in fact been timely filed.

20     Two related issues have arisen since the commencement of this Action, which also are

21     ripe for summary judgment.  Finisar asserts that its subsequent filing of the SEC reports cured the

22     events of defaults under the indentures.  This argument is contrary to Sections 6.01 and 6.03 of

23     the indentures.  Section 6.01 provides Finisar with a 60 day cure period.  After the 60 day cure

24     period expires, the default ripens into an "Event of Default" which may only be cured through a

25     waiver of the Event of Default.  Section 6.03 further provides that a delay "in exercising any right

26     or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a

27     waiver of, or acquiescence in, the Event of Default."  The non-waiver language promotes

28     negotiation and cooperation among the issuer, the trustee, and the holders of the debt securities,

1    without prejudicing any of the parties.  To interpret the indentures as Finisar suggests, would

2    require the trustee and/or holders to immediately accelerate all obligations under the indentures

3    without discussion or negotiation to preserve their rights.

4           Finally, Finisar asserts that U.S. Bank is not entitled to payment of its fees and expenses

5    in responding to the events of default or defending the litigation commenced by Finisar.  Section

6    7.06 of the indentures, and the written fee schedules agreed to at closing, clearly and

7    unequivocally provide otherwise.  U.S. Bank is entitled to payment of all fees and expenses,

8    except those costs relating to the trustee's own negligence or bad faith. U.S. Bank's actions in

9    defending the litigation commenced by Finisar is neither negligent nor in bad faith.  To the

10   contrary, Finisar appointed U.S. Bank to represent the interests of holders, and U.S. Bank has a

11   fiduciary obligation to enforce the provisions of the indentures.

12                              **STATEMENT OF THE ISSUES**

13          U.S. Bank seeks determination of three issues in this Action: (1) whether Finisar's failure

14   to timely file its financial reports with the SEC constituted a default under Section 4.02 of the

15   subject indentures; (2) whether any default under Section 4.02, which has ripened into an event of

16   default, can be cured by Finisar's subsequent filing of its financial reports with the SEC; and

17   (3) whether Finisar is obligated to pay U.S. Bank's fees and expenses relating to this dispute.

18                              **FACTUAL BACKGROUND**

19           **1.      The Indentures and Related Debt Securities.**

20          From October 2001 through October 2006, Finisar issued the following three series of

21   debt securities:  (a) 5¼% Convertible Subordinated Notes due 2008 under that certain Indenture

22   dated as of October 15, 2001 ("2001 Indenture"), in the original principal amount of

23   $125,000,000; (b) 2½% Convertible Subordinated Notes due 2010 under that certain Indenture

24   dated as of October 15, 2003 ("2003 Indenture"), in the original principal amount of

25   $150,000,000; and (c) 2½% Convertible Senior Subordinated Notes due 2010 under that certain

26   Indenture dated as of October 12, 2006 ("2006 Indenture," together with the 2001 Indenture and

27   2003 Indenture, the "Indentures"), in the original principal amount of $100,000,000.  (Declaration

28   of Diana Jacobs in Support of Motion of U.S. Bank Trust National Association for Summary

1  Judgment filed concurrently herewith ("Jacobs Decl."), ¶ 2, Exs. 1, 2 and 3; *id.* ¶ 13, Ex. 13 at

2  ¶¶ 112-114; Finisar's Amended Complaint ("Compl.") ¶ 21-23.)

3      U.S. Bank acts as indenture trustee under the Indentures for holders of the subordinated

4  notes (collectively, the "Subordinated Notes").  (Jacobs Decl. ¶ 2, Exs. 1, 2, and 3; Compl. ¶ 2.)

5  When Finisar commenced this Action, the aggregate principal amount outstanding under the

6  5¼% Convertible Subordinated Notes was $100,250,000, the 2½% Convertible Subordinated

7  Notes was $50,000,000, and the 2½% Convertible Senior Subordinated Notes was $100,000,000.

8  (Compl. ¶ 24.)  Finisar also must pay semiannual interest on the Subordinated Notes on April 15

9  and October 15.  (Jacobs Decl. ¶ 13, Ex. 13 at 112-114.)

10      **2.      The Issuer's Filing Requirements Under the Indentures.**

11      Section 4.02 of the Indentures requires Finisar to file timely with the SEC, and to provide

12  copies of such reports to U.S. Bank within 15 days of filing, certain annual and quarterly reports

13  and other information set forth in Sections 13 and 15(d) of the Securities Exchange Act of 1934

14  ("Exchange Act").  (*Id.* ¶ 2, Exs. 1, 2 and 3 at § 4.02.)  Section 4.02 of the Indentures also

15  requires Finisar to comply with the provisions of Section 314(a) of the Trust Indenture Act of

16  1939 ("TIA"), which incorporates Sections 13 and 15(d) of the Exchange Act and the rules and

17  regulations promulgated thereunder.  (*Id.*)  Section 4.02 provides:

18          The Company shall file with the Trustee, within 15 days after it
            files such annual and quarterly reports, information, documents and
19          other reports with the [Commission/SEC], copies of its annual
            report and of the information, documents and other reports (or
20          copies of such portions of any of the foregoing as the
            [Commission/SEC] may by rules and regulations prescribe) which
21          the Company is required to file with the Commission pursuant to
            Section 13 or 15(d) of the Exchange Act.  If at any time the
22          Company is not subject to Section 13 or 15(d) of the Exchange Act,
            such reports shall be provided at the times the Company would
23          have been required to provide reports had it continued to [be/have
            been] subject to such reporting requirements.  The Company also
24          shall comply with the other provisions of TIA Section 314(a).

25  (*Id.*)

26      Finisar is a publicly-held company whose shares trade on NASDAQ (Compl. ¶ 1.)  As a

27  result, Finisar is obligated to file quarterly and annual reports with the SEC.  *See* Sections 13 and

28  15(d) of the Exchange Act, 15 U.S.C. § 78m and 15 U.S.C. § 78o(d).  Even if Finisar was not

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

3

1  subject to Section 13 or 15(d) of the Exchange Act, Section 4.02 would nevertheless require

2  Finisar to provide such reports "at the times the Company would have been required to provide

3  reports had it continued to [be/have been] subject to such reporting requirements." (Jacobs Decl.

4  ¶ 2, Exs. 1, 2 and 3 at § 4.02)

5                    **3.      Finisar's Late-Filed Quarterly and Annual Reports.**

6              On December 8, 2006, Finisar filed a Form 12b-25 (a "Notification of Late Filing") with

7  the SEC, stating that it could not timely file a quarterly report for its second fiscal quarter ended

8  October 29, 2006, until it completed an investigation of stock option grants made by it following

9  Finisar's initial public offering on November 11, 1999.  (*Id.* ¶ 5, Ex. 4.)

10             Finisar then failed to timely file (1) a quarterly report for its third fiscal quarter ended

11  January 28, 2007, (2) an annual report for its fiscal year ended April 30, 2007, and (3) a quarterly

12  report for its first fiscal quarter ended July 29, 2007.  For each failure to timely file, Finisar filed a

13  Notification of Late Filing with the SEC.  (*Id.* ¶¶ 6-8, Exs. 5, 6, and 7.)

14             Finisar's failure to timely file reports with the SEC, and to provide copies of those reports

15  to the Trustee, constitutes a "Default" under Section 4.02 of the Indentures.  (*See* Indentures at

16  pp. 3 and 4 (definition of "Default").)

17                    **4.      The Events of Default and Ensuing Litigation.**

18             U.S. Bank sent its first three "Notices of Default" to Finisar, one under each Indenture, on

19  January 4, 2007, as a result of the company's failure to file its quarterly report for its second fiscal

20  quarter ended October 29, 2006.  (Jacobs Decl. ¶ 8, Ex. 8; Compl. ¶ 26.)  Those Defaults ripened

21  into "Events of Default" on March 5, 2007.[1]  Shortly after receiving the Notices of Default,

22  Finisar commenced the First Declaratory Judgment Action (as defined below).  (Jacobs Decl.

23  ¶ 28, Ex. 35.)

24  _____

25        [1]  Section 6.01(4) of the Indentures specifically provides that an "Event of Default" occurs
    if "the Company fails to perform or observe any other term, covenant or agreement contained in
26  the Notes or this Indenture for a period of 60 days after receipt by the Company of a Notice of
    Default (as defined in Section 6.01)."  (Indentures § 6.01.)  A Notice of Default under Section
27  6.01 must specify the Default, demand that it be remedied and state that such notice is a "Notice
    of Default."  (*Id.*)

28

1    After Finisar commenced the First Declaratory Judgment Action, U.S. Bank sent three

2  additional Notices of Default to Finisar, each dated April 23, 2007, as a result of the company's

3  failure to file its quarterly report for its third fiscal quarter ended January 28, 2007.  (Jacobs Decl.

4  ¶ 10, Ex. 9; Compl. ¶ 28.)  Those Defaults ripened into Events of Default on June 23, 2007.

5  (Indentures at §6.01(4).)  Shortly after receiving the Notices of Default, Finisar commenced the

6  Second Declaratory Judgment Action (as defined below).  (Jacobs Decl. ¶ 25, Ex. 32.)  Since that

7  time, the Trustee has sent three additional Notices of Default to Finisar for its failure to file a

8  Form 10 K for its fiscal year ended April 30, 2007, resulting in an additional Event of Default

9  under each Indenture.  (*Id.* ¶ 11, Ex. 10; Compl. ¶ 30.)

10    **5.    The SEC and NASDAQ Investigations, and Stock Option Derivative**
   **Litigation.**

11

12    In November 2006, Finisar informed the SEC of its plan to investigate the company's

13  stock option grant practices, and the SEC responded with its own informal inquiry into Finisar's

14  misconduct.  (Jacobs Decl. ¶ 13, Ex. 14 at 20.)  With each failure timely to file a required

15  quarterly or annual report, Finisar also received a written Staff Determination from the NASDAQ

16  stating that Finisar was not in compliance with Marketplace Rule 4310(c)(14) and, therefore, its

17  common stock was subject to delisting.  (Jacobs Decl. ¶ 13, Ex. 14 at 20; *id.* ¶ 17, Ex. 21; Ex. 22;

18  Ex. 23.)  All told, Finisar received four Staff Determinations between December 2006 and

19  September 2007.  (*Id.*)  After a series of hearings and appeals in an effort to avoid delisting,

20  Finisar ultimately received an extension until December 4, 2007, to file its delinquent periodic

21  reports and restatement.  (*Id.* ¶ 13, Ex. 14 at 20; *id.*, Ex. 13 at 31.)

22    Separately, Finisar has been named as a nominal defendant in several shareholder

23  derivative cases that have been consolidated into two proceedings in California state and federal

24  court.  (*Id.* ¶ 13, Ex. 14 at 20.)  Shareholders allege that certain of Finisar's officers and directors

25  caused the company to grant stock options at less than fair market value, contrary to the

26  company's public statements.  (*Id.*)  The state action has been stayed in deference to the federal,

27  and the amended complaint in the federal action is due by May 6, 2008.  (*Id.* ¶ 19, Ex. 25.)

28

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

5

1

### 6.    Finisar's Intermittent Reports with the SEC.

Before December 4, 2007, Finisar had not filed quarterly and annual reports with the SEC under Sections 13 and 15(d) of the Exchange Act or provided equivalent financial information to the Trustee or the holders since September 8, 2006. (*Id*. ¶ 15; Ex. 15.)  During this more than one year period, Finisar intermittently filed Forms 8-K with the SEC and the Trustee to report certain material events and corporate changes.  (*Id*. ¶ 15, Ex. 15; Compl. ¶ 5.)  Those reports provided only vague and non-GAAP financial information to Finisar's investors and warned investors of the limited reliability of such information given the ongoing stock option grants review.  (Jacobs Decl. ¶ 16, Exs. 16, 17, 18, 19 and 20.)

### 7.    Finisar's Restated and Late-Filed Financial Statements.

On December 4, 2007, more than one year after it had filed its last Form 10-Q, Finisar filed its long-delayed quarterly and annual reports.  (*Id*. ¶ 13, Exs. 11, 12, 13, and 14.)  Finisar alerted investors that they should not rely on any filings or other earnings statements made by Finisar before November 28, 2006.  (*Id*. ¶ 13, Ex. 14 at 20; *see also id*. ¶ 13, Ex. 11 at 3, 33; Ex. 12 at 3, 34; and Ex. 13 at 1, 31.)

After investigating the historical grants of stock options, Finisar determined that it should have recognized approximately $112.1 million of pre-tax stock-based compensation expense and $1.6 million of payroll related taxes for fiscal years 2000 through 2006, and $387,000 for fiscal year 2007.  (*Id*. ¶ 13, Ex. 13 at 36.)  In all, the restatement resulted in additional losses of approximately *$113.7 million*.  The following table summarizes the net losses originally recorded by Finisar between 2000 and 2006, and the adjustments made as a result of the restatement process:

| Year[2] | | Net Gain (Loss) Originally | Net Gain (Loss) as Restated | Adjustment Resulting from Investigation |
|---|---|---|---|---|
| **2006** | $ | (24,919,000) | (33,029,000) | (8,110,000) |
| **2005** | $ | (114,107,000) | (117,728,000) | (3,621,000) |
| **2004** | $ | (113,833,000) | (126,978,000) | (13,145,000) |
| **2003** | $ | (619,753,000) | (645,073,000) | (25,320,000) |
| **2002** | $ | (218,738,000) | (262,990,000) | (44,252,000) |
| **2001** | $ | (85,449,000) | (101,615,000) | (15,866,000) |
| **2000** | $ | 2,881,000 | (299,000) | (3,180,000) |
| **Total Adjustment:** | | | | **$113,494,000** |

For its fiscal year ended April 30, 2007, the company's net losses totaled $45,399,000. (*Id.* at 83.) Finisar has informed investors that it may have "insufficient cash flow to meet [its] debt service obligations, including payments due on [the] subordinated convertible notes" issued under the Indentures. (*Id.* at 18.) Finisar also is concerned that it may be unable to obtain sufficient capital to repay the principal on the Subordinated Notes. (*Id.* at 19.) Finisar further states that "the conversion of [its] outstanding convertible subordinated notes would result in substantial dilution to [its] current stockholders" and, if all of the Subordinated Notes were converted, an aggregate of approximately 42,000,000 in shares would be issued. (*Id.* at 28.)

**8.    The Indenture Trustee's Fees and Expenses.**

Twice in 2007, U.S. Bank remitted invoices to Finisar for payment of its fees and expenses relating to the Events of Default. (Jacobs Decl. ¶ 20.) Finisar's counsel subsequently requested additional copies of U.S. Bank's invoices, which were provided on December 17 and 19, 2007. (*Id.* ¶ 20, Ex. 26.) Finisar's counsel then requested additional information from U.S. Bank regarding the invoices submitted by it, which U.S. Bank provided. (*Id.* ¶¶ 20-21, Exs. 27 and 28.) U.S. Bank subsequently provided copies of the indenture trustee's fee schedules, which were previously given by U.S. Bank to Finisar on issuance of the Subordinated Notes. (*Id.* ¶ 21, Ex. 29.)

---

[2] Information in this table is taken from Finisar's Form 10-K filed December 4, 2007. (*Id.* ¶ 13, Ex. 13 at 37-44.)

1    Despite its contractual obligation to pay the indenture trustee's fees and expenses under

2    Section 7.06 of the Indentures, Finisar refused to pay U.S. Bank. (*Id.* ¶ 22) So on January 2,

3    2008, U.S. Bank sent a Notice of Default to Finisar in accordance with Section 6.01 of the

4    Indentures. (*Id.* ¶ 23, Ex. 30.) That Default would have ripened into an additional Event of

5    Default under each Indenture on March 2, 2008. (Indentures § 6.01(4).) But to forestall another

6    Event of Default, on February 20, 2008, Finisar paid U.S. Bank's fees and expenses through

7    November 30, 2007, in the amount of $317,817.58. (*Id.* ¶ 24, Ex. 31.) Finisar paid the indenture

8    trustee's fees and expenses under "protest" and asserts that it is entitled to the return of those

9    monies. (Compl. ¶¶ 53, 55.)

10    **PROCEDURAL BACKGROUND**

11    Finisar commenced this action ("Second Declaratory Judgment Action" or "Action") in

12    the Superior Court for the County of Santa Clara, California ("State Court") on June 22, 2007,

13    and U.S. Bank removed to this Court on August 7, 2007.[3] (Compl. ¶ 14.) On December 7, 2007,

14    this Court denied Finisar's motion to remand, holding that Finisar's duty to provide documents to

15    U.S. Bank arises under federal statutes and that Section 4.02 of the Indentures is a mechanism to

16    enforce the provisions of the TIA and the Exchange Act. (Jacobs Decl. ¶ 27, Ex. 34 at 4-5.)

17    Finisar filed an amended complaint with this Court on March 19, 2008. (*Id.* ¶ 26, Ex. 33.)

18    U.S. Bank answered and counterclaimed on April 18, 2008. (*Id.* ¶ 31, Ex. 38.) By this motion,

19    U.S. Bank moves for summary judgment as to all claims and counterclaim in this Action.

20    **ARGUMENT**

21    Summary judgment is appropriate where there is no genuine issue as to any material fact

22    and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex*

23    *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The parties do not dispute the material facts relevant

24

25    [3] On March 2, 2007, Finisar commenced a related action ("First Declaratory Judgment
Action") against U.S. Bank in the State Court, in which Finisar seeks the same relief that it

26    requests here. (Jacobs Decl. ¶ 28, Ex. 35.) Given the parties' intention to file motions for
summary judgment in this Second Declaratory Judgment Action, the State Court has scheduled a

27    further case management conference for June 24, 2008.

28

1  to determining the issues in this Action.  Those facts are set forth in the Affidavit of Diana Jacobs

2  filed contemporaneously with this motion.

3      The parties dispute only the meaning of the Indentures provisions relevant to the SEC

4  filing requirements and the Trustee's right to payment of its fees and expenses. As to these issues,

5  the Indentures are clear and unambiguous.  "In the absence of ambiguity which obscures the

6  intentions of the parties to a contract, the interpretation of a contract and the obligations of the

7  parties thereto are questions of law and not of fact."  *BearingPoint, Inc.*, 824 N.Y.S.2d 752, at*8

8  (citations omitted).  This Action is, therefore, particularly suited to summary judgment.[4]  *See U.S.*

9  *Trust Co. of N.Y. v. Executive Life Ins. Co.*, 602 F. Supp. 930, 936 (S.D.N.Y. 1984)

10 ("interpretation of indentures is 'ordinarily well-suited for a motion for summary judgment'"),

11 *aff'd*, 791 F.2d 10 (2d Cir. 1986).

12 **I.    SECTION 4.02 OF THE INDENTURES REQUIRES FINISAR TO TIMELY FILE
13        ITS QUARTERLY AND ANNUAL REPORTS WITH THE SEC AND THE
        INDENTURE TRUSTEE.**

14      **A.    Finisar Breached Section 4.02 of the Indentures When It Failed to Timely File
15             Its Quarterly and Annual Reports.**

16      Finisar does not dispute that it must file quarterly and annual reports with the SEC and

17 provide copies of such reports to U.S. Bank.  Nor does Finisar dispute that it failed to timely file

18 its quarterly and annual reports during its fiscal year 2007.  Still, Finisar maintains that it did not

19 default under Section 4.02 of the Indentures when it failed to timely file its quarterly and annual

20 reports with the SEC, and that no Event of Default under the Indentures ever occurred.  (Compl.

21 ¶ 60.)  According to Finisar, Section 4.02 requires only that it file with U.S. Bank copies of the

22 reports that Finisar actually files with the SEC, within 15 days of having filed them with the SEC.

23 (Compl. ¶¶ 3, 58.)

24      Under New York law, contracts must be construed to effectuate the parties' intent, with

25 reference to the agreement as a whole.  *ABS P'ship v. AirTran Airways, Inc.*, 765 N.Y.S.2d 616,

26 619-20 (App. Div. 1st Dep't 2003); *see also Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.*, 626

27      [4]  The Indentures are governed by New York law.  (Indentures § 13.09.)

28

N.Y.S.2d 61, 64 (App. Div. 1st Dep't 1995) ("contracts should be construed to give force and effect to their provisions . . . and not in a manner so as to render them meaningless") (citations omitted). Courts should avoid any interpretation that would render a contract clause meaningless. *Kahn v. N.Y. Times Co.*, 503 N.Y.S.2d 561, 565 (App. Div. 1st Dep't 1986).

Only one New York case has considered whether a covenant like Section 4.02 requires an issuer to timely file its reports with the SEC. *See BearingPoint, Inc.*, 824 N.Y.S.2d 752. The issuer in *BearingPoint* alleged that it had no independent obligation under the indenture to make SEC filings. *Id.* at *7. The court disagreed, finding that Section 5.02 of the relevant indenture (which is nearly identical to Section 4.02 of the Finisar Indentures) unambiguously obligated the issuer to make the required SEC filings and to provide copies of them to the indenture trustee. *Id.* The court noted that the issuer's "tortured parsing of this provision to read the section as making SEC filings optional under the terms of the Indenture, vitiates the clear purpose of the Indenture to provide information to the investors so that they may protect their investment." *Id.*

The intent of Section 4.02 is clear — to keep the investors informed of company developments. *Id.* at *8 ("As a memorialization of apparent commercial realities, this section expressed that which is known to the investment community, i.e. that only by guarding against incomplete information, can investors make informed decisions about their investment and guard against the risks attendant to incomplete information.") The purpose for requiring timely filing of financial reports is abundantly clear in this case. Investors learned, more than one year after the fact, that Finisar had experienced losses far greater than that which it had previously reported. And while Finisar contends that it regularly provided "financial results and other such information that periodic reports may provide"[5] to its investors during fiscal year 2007, not one of the intermittent reports filed by Finisar during that time period included the company's net losses, audited or otherwise, let alone the many pages of information typically provided to investors in a Form 10-Q and Form 10-K.

_____

[5]  (Compl. ¶ 6.)

1    In *Cyberonics, Inc. v. Wells Fargo Bank National Ass'n*, No. H-07-121, 2007 WL

2    1729977 (S.D. Tex. June 13, 2007), the court determined that the covenant at issue, which was

3    similar to Section 4.02 of the Finisar Indentures, did not obligate the issuer to file in accordance

4    with the Exchange Act. 2007 WL 1729977, at *4. In making its determination, the Cyberonics

5    court incorrectly concluded that the parties to the indenture intended the reporting covenant to

6    "keep the trustee informed of company developments." *Id.* at *5. As set forth above, this is not

7    true. The reporting covenant is for the benefit of holders, not the indenture trustee.

8    Copies of financial reports are provided to the trustee only to confirm that they have

9    timely been filed. In fact, before the occurrence of an event of default, the trustee's duties are

10   limited to those specifically set forth in the indenture. *See Elliott Assocs. v. J. Henry Schroeder*

11   *Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (it is "well-established under state common law

12   that the duties of an indenture trustee are strictly defined and limited to the terms of the

13   indenture"); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) ("an indenture trustee is

14   more like a stakeholder whose duties and obligations are exclusively defined by the terms of the

15   indenture agreement"). Those duties do not include review of the financial statements filed with

16   the SEC. (*See* Indentures § 7.01.)

17   In the most recent case decided on this issue, *UnitedHealth Group, Inc. v. Wilmington*

18   *Trust Co.*, No. 06-CV-4307, 2008 WL 686755, at *2 (D. Minn. Mar. 10. 2008), the court, ruling

19   in favor of the issuer, found persuasive the fact that the issuer's notification of late filing with the

20   SEC included detailed financial information almost identical to that contained in a Form 10-Q,

21   and the fact that the financial information the issuer would later provide in its Form 10-Q did not

22   differ materially from that stated in its notification of late filing.[6] *Id.* at *2. Neither fact is present

23   in this case. Instead, Finisar provided only limited financial information to its investors during

24

25

26   _____

       [6] The financial information in *UnitedHealth Group's* second quarter 2006 Form 10-Q
27   apparently differed from that provided in its August 10, 2006 notification of late filing by less
     than 1%. 2008 WL 686755, at *2.

28

1   fiscal year 2007, warned its investors that they should not rely on that information, and ultimately

2   reported net losses significantly greater than that which they had previously reported.[7]

3        Factual differences aside, the New York court in BearingPoint is the only court to have

4   correctly construed the reporting covenant, which is included in most if not all indenture

5   agreements, in the context of the indenture agreement as a whole.[8]  And while U.S. Bank

6   respectfully disagrees with the rulings upon which Finisar will unquestionably rely, the indenture

7   provisions in the *Cyberonics*, *Affiliated,* and *UnitedHealth Group* did not include the following

8   language relevant to this analysis:[9]

9               If at any time the Company is not subject to Section 13 or 15(d) of
            the Exchange Act, such reports shall be provided *at the times the*
10          *Company would have been required to provide reports* had it
            continued to [be/have been] subject to such reporting requirements.
11

12  (Indentures § 4.02 (emphasis added).)  This language further evidences the parties' intent that

13  Section 4.02 requires Finisar to timely file financial reports, whether or not it was subject to the

14  reporting requirements of Exchange Act.

15      **B.    The Filing Requirements of Sections 13 and 15(d) of the Exchange Act are
              Not Optional.**
16

17       In ruling on the motion to remand, this Court concluded "that Finisar's duty to provide

18  documents to the Trustee arises under federal statutes and that Section 4.02 of the Indentures is a

19  mechanism to enforce the provisions of those statutes."  (Jacobs Decl. ¶ 27, Ex. 34 at 4.)  In so

20       [7]  Other than providing scant and broad financial information, the press releases filed by
     Finisar expressly state that they "shall not be deemed 'filed' for purposes of the Securities
21   Exchange Act of 1934, nor shall [they] be deemed incorporated by reference in any filing under
     the Securities Act of 1933, except as expressly set forth by specific reference in such filing."
22   (*See, e.g.*, Jacobs Decl. ¶ 16, Ex. 19.)  Moreover, the press releases explicitly state that "[t]hese
     results should be considered preliminary until such time as the Company files" its reports.  (*See,
23   e.g.*, *id.*)

24       [8]  In the third case to have ruled on this issue, *Affiliated Computer Services, Inc. v.
     Wilmington Trust Co.*, No. 3:06-CV-1770-D, 2008 WL 373162, at *3 (N.D. Tex. Feb. 12, 2008),
25   the Texas court simply followed *Cyberonics*.

26       [9]  The reporting covenant language in *Cyberonics, Affiliated, UnitedHealth Group* and
     *BearingPoint*, as well as the language of Section 4.02 of the Finisar Indentures, is set forth on
27   Exhibit A to the Appendix of Authorities submitted with this memorandum.

28

1  holding, the Court noted that the Indentures incorporate both the Exchange Act and the TIA. (*Id.*)

2  Section 13 of the Exchange Act provides that "[e]very issuer of a security registered pursuant to

3  section 12 of this title *shall file* with the Commission" quarterly and annual reports as the SEC

4  may prescribe "for the proper protection of investors and to insure fair dealing in the security."

5  15 U.S.C. § 78m(a) (emphasis added).

6         Finisar does not dispute that it is a large accelerated filer. (Jacobs Decl. ¶ 13, Ex. 13 at

7  Cover Page.) And as such, that it must file a Form 10-Q quarterly report with the SEC within 40

8  days after the end of its fiscal quarter and a Form 10-K annual report with the SEC within 60 days

9  after the end of its fiscal year. (United States Securities and Exchange Commission, General

10  Instructions for Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities

11  Exchange Act of 1934 and General Instructions for Form 10-Q, available at http://www.sec.gov

12  (last visited Apr. 14, 2008).) By failing to timely file its reports in accordance with the Exchange

13  Act's rules, Finisar breached its obligations under the Indentures.   Finisar should not now be

14  permitted to "take advantage of its failure to fulfill its obligation to file timely reports with the

15  SEC by arguing that it has consequently not breached its obligation to provide the Trustee with

16  copies of such reports." *BearingPoint*, 824 N.Y.S.2d 752, at *8 (citing *Semi-Tech Litig., LLC v.*

17  *Bankers Trust Co. (In re Bankers Trust)*, 450 F.3d 121 (2d Cir. 2006)).[10]

18         **C.     The Rules and Regulations Accompanying the Exchange Act are Expressly**
               **Incorporated by Reference Under Section 314(a) of the TIA.**

19

20         In addition to requiring that Finisar provide the Trustee with copies of all documents

21  actually filed with the SEC within fifteen days of filing, Section 4.02 provides: "The Company

22  also shall comply with the other provisions of TIA Section 314(a)." (Indentures § 4.02.) In its

23  prospectus to noteholders, Finisar stated that the "terms of the notes include those provided in the

24  _____

25         [10]  "A party's repudiation of its future obligations under a contract may take the form of 'a
    voluntary affirmative act which renders the obligor unable or apparently unable to perform
26  without such a breach.'" *BearingPoint*, 824 N.Y.S.2d 752, at *8 (quoting *Norcon Power*
    *Partners v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463 (1998)). Of course, "a party may
27  not frustrate the performance of an agreement by bringing about the failure of a condition
    precedent." *Creighton v. Miller*, 594 N.Y.S.2d 185, 187-88 (App. Div. 1st Dep't. 1993).

28

indenture and those made part of the indenture by reference to the Trust Indenture Act of 1939, as amended." (Jacobs Decl. ¶ 30, Ex. 37.) Through its incorporation of TIA Section 314(a), the Indentures obligate Finisar to provide the Trustee with copies of all documents *required to be filed* with the SEC — not just those *actually filed*.

Section 314(a) of the TIA provides: "Each person who . . . is or is to be an obligor upon the indenture securities . . . shall: (1) file with the indenture trustee copies of the annual reports and of the information, documents, and other reports . . . *which such obligor is required to file with the Commission pursuant to section 13 or 15(d) of this title [the Securities Exchange Act of 1934].*" 15 U.S.C. § 77nnn(a) (emphasis added). As one treatise explains: "The obligor must file with the trustee copies of annual reports and of the information, documents or other reports which such obligor is required [sic] file with the Securities and Exchange Commission, summaries of which must be transmitted to the security holders pursuant to rules and regulations prescribed by the Commission." 14 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 6828, *Trust Indenture Act of 1939* (2003) (citing TIA § 314(a)); *see also* S. Rep. No. 248, at 5 (1939) ("Section 314, in language similar to that of section 15 (d) of the Securities Exchange Act, writes into the indenture a requirement that the issuer file with the indenture trustee, as well as with the Commission, periodic reports similar to those which registrants under the Securities Act must now undertake to file with the Commission.").

Indeed, the SEC has recognized that the TIA mandates an issuer like Finisar to provide the indenture trustee with copies of reports required to be filed with the SEC. Rule 19a-1 under the TIA is titled "Compliance with Section 314(a)(1) of the Trust Indenture Act for certain eligible indenture obligors." 17 C.F.R. 260.19a-1. In this rule, the SEC expressly refers to the "duty under Section 314(a)(1) of the Act to 'file with the indenture trustee all reports *required to be filed* with the Commission pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934.'" *Id*. (emphasis added). In discussing Rule 19a-1, the SEC again made clear that TIA § 314(a) imposes an independent statutory obligation to provide the Trustee with copies of any documents that the obligor *is required to file* with the SEC:

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

14

Section 314(a) of the Trust Indenture Act requires companies that are obligors on securities issued under an indenture that is qualified under the Trust Indenture Act to file certain information with the indenture trustee. The indenture obligor must 'file with the indenture trustee all reports required to be filed with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act.' We have adopted a rule to make clear the application of Section 314(a)(1) to indenture obligors that file their Exchange Act reports with the Commission in compliance With [sic] the 34 Act Order. Trust Indenture Act Rule 19a-1 states that the indenture obligor's filing with the indenture trustee of those Exchange Act reports filed in accordance with the 34 Act Order shall satisfy the indenture obligor's responsibility to 'file with the indenture trustee all reports required to be filed with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act' for purposes of Section 314(a)(1).

Requirements for Arthur Andersen LLP Auditing Clients, SEC Trust Indenture Act Release No. 39-2395, 2002 WL 417378, at *9 (Mar. 18, 2002) (footnotes omitted).[11]

Section 314(a) specifically implements one of TIA's paramount objectives in protecting the "national public interest," as Congress explained in TIA 302(a)(4):

[T]he national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public, are adversely affected . . . (4) when the obligor is not obligated to furnish to the trustee under the indenture and to such investors adequate current information as to its financial condition, and as to the performance of its obligations with respect to the securities outstanding under such indenture. . . .

15 U.S.C. § 77bbb(a). This provision underscores, again, the real purpose of the reporting covenant – to ensure that the issuer's *investors* receive timely information so that they may protect their investment. Providing a copy to the Trustee simply confirms that Finisar has complied with the reporting requirements of Section 4.02.

---

[11]  In its "34 Act Order," the SEC exempted certain issuers from certain provisions of the Exchange Act following the indictment of Arthur Anderson LLP. *See* In re Order Under Section 36 of the Securities Exchange Act of 1934 Granting Exemptions from Certain Provisions of the Act and Rules Thereunder, SEC Exchange Act Release No. 34-45589, 2002 WL 417359 (Mar. 18, 2002).

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

15

## II.    FINISAR'S TIME TO CURE THE EVENTS OF DEFAULT HAS EXPIRED.

Section 6.01(4) of the Indentures provides that an "Event of Default" occurs if "the Company fails to perform or observe any other term, covenant or agreement contained in the Notes or this Indenture for a period of 60 days after receipt by the Company of a Notice of Default (as defined in this Section 6.01)." (Indentures § 6.01.) U.S. Bank delivered Notices of Default to Finisar, which subsequently ripened into Events of Default under the Indentures on the following dates:

| Default (Late-Filed Report) | Notice of Default (Delivery Date) | Event of Default (60 Days After Notice) |
|---|---|---|
| Form 10-Q for Quarter Ended October 29, 2006 | January 4, 2007 | March 5, 2007 |
| Form 10-Q for Quarter Ended January 28, 2007 | April 23, 2007 | June 23, 2007 |
| Form 10-K for Fiscal Year Ended April 30, 2007 | July 16, 2007 | September 14, 2007 |

Finisar ultimately filed its financial statements on December 4, 2007, well *after* the sixty day cure period provided for under the Indentures. Because the contractually agreed-upon cure period has passed, Finisar can cure the existing Events of Default only by obtaining a waiver from the holders of the Subordinated Notes.

Section 6.04 of the Indentures, titled "Waiver of Past Defaults," provides that the holders of a majority in aggregate principal amount of the Subordinated Notes outstanding, by notice to the Trustee, may waive an existing Default and its consequences. (Indentures § 6.04.) Section 6.04 further provides that when a Default is waived, it is deemed cured. (*Id.*) Finisar has not obtained or sought a waiver of the existing Events of Default from the noteholders.

Upon the occurrence of an Event of Default under the Indentures, the Trustee may pursue any available remedy to collect the payment of principal and interest on the Subordinated Notes or to enforce the performance of any provision of the Subordinated Notes or the Indentures. (Indentures § 6.03.) The Trustee may also declare the Subordinated Notes immediately due and payable. (Indentures § 6.02.)

1    When Finisar commenced this Action, it had not yet filed its financial statements.  So, in

2    its original complaint, Finisar asked this Court to determine that it had not defaulted under

3    Section 4.02 of the Indentures; or, in the alternative, to determine that any acceleration of the

4    Subordinated Notes under the facts presented would be inequitable.  Given the relief sought by

5    Finisar, U.S. Bank determined not to accelerate the Subordinated Notes pending the Court's

6    determination.

7    More than five months after this Action was commenced, Finisar filed its delayed reports.

8    Finisar then amended its complaint to ask that this Court determine, in addition to its original

9    claim for relief, that no Event of Default is continuing and, according to Finisar, no acceleration

10   may be declared or enforced.  (Compl. ¶¶ 62, 68.)

11   But even if, *arguendo*, Finisar had cured the existing Events of Default by filing its reports

12   in December 2007, U.S. Bank has not waived its right to accelerate the Subordinated Notes or to

13   exercise any other remedy available to it.  Section 6.03 of the Indentures provides:

14           A delay or omission by the Trustee or any Noteholder in exercising
             any right or remedy accruing upon an Event of Default shall not
15           impair the right or remedy or constitute a waiver of, or
             acquiescence in, the Event of Default.
16

17   (Indentures § 6.03.)  U.S. Bank delivered Notices of Default to Finisar on January 4, April 23 and

18   July 16, 2007.  Sixty days after each successive Notice of Default, an Event of Default under each

19   Indenture occurred.  Accordingly, Finisar's time to cure the Defaults under Section 4.02 has

20   expired and U.S. Bank's right to exercise available remedies under the Indentures has not been

21   impaired or waived.[12]

_____

22           [12]   It is inequitable for Finisar to even raise the argument that U.S. Bank cannot declare an
     acceleration by using the litigation it commenced as a shield to protect itself from acceleration on
23   the notes, and as a sword to use the delays caused thereby to file its reports and now claim that no
     acceleration may be declared.  "A wrong . . . cannot be utilized as a shield, and at the same time,
24   be used as a sword by him who commits the wrong."  *Isaacson v. Slote*, 301 N.Y.S.2d 336, 339
     (Sup. Ct. N.Y. County 1969).  *See also Mich. Nat'l Bank-Oakland v. Am. Centennial Ins. Co. (In
25   re Liquidation of Union Indemn. Ins. Co.)*, 674 N.E.2d 313 (N.Y. 1996) (liquidator prohibited
     from using its assertions as both a sword and a shield in establishing a fraud and failure to
26   disclose insolvency and later attempting to deny the relevance and applicability of those same
     assertions); *Spanos v. Skouras Theaters Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) ("'One who
27   unjustly prevents the performance or the happening of a condition of his own promissory duty
     thereby eliminates it as such a condition.  He will not be permitted to take advantage of his own
28                                                                     (Footnote continues on next page.)

1    **III.    SECTION 7.06 OF THE INDENTURES REQUIRES FINISAR TO PAY THE
     INDENTURE TRUSTEE'S FEES AND EXPENSES.**

2

3        Through March 31, 2008, U.S. Bank has incurred fees and expenses totaling

4    approximately $588,130.50 (including annual fees due to the indenture trustee and the fees and

5    expenses of U.S. Bank's counsel) as a result of Finisar's failure to timely file and the ensuing

6    litigation.[13]  (Jacobs Decl. ¶ 24.)  Under Section 7.06 of the Indentures, Finisar covenanted and

7    agreed to pay U.S. Bank on request for all reasonable expenses incurred by it, including the fees

8    and expenses of its professionals.  Finisar's obligation to compensate the trustee constitutes

9    additional indebtedness under the Indentures.  Section 7.06 provides in relevant part:

10           The Company covenants and agrees to pay to the Trustee from time
             to time, and the Trustee shall be entitled to, such compensation
11           (which shall not be limited by any provision of law in regard to the
             compensation of a trustee of an express trust) to be agreed to in
12           writing by the Trustee and the Company, and the Company
             covenants and agrees to pay or reimburse the Trustee and each
13           predecessor Trustee upon its request for all reasonable expenses,
             disbursements and advances incurred or made by or on behalf of it
14           in accordance with any of the provisions of this Indenture
             (including (i) the reasonable compensation and the expenses and
15           disbursements of its counsel and of all agents and other persons not
             regularly in its employ and (ii) interest at the prime rate on any
16           disbursements and advances made by the Trustee and not paid by
             the Company within 5 days after receipt of an invoice for such
17           disbursement or advance) except any such expense, disbursement or
             advance as may arise from its negligence or bad faith . . . .

18

19    (Indentures § 7.06.)

20        In addition to its contractual obligation under Section 7.06, Finisar separately received and

21    acknowledged written fee schedules from U.S. Bank on issuance of the Subordinated Notes.

22    (Jacobs Decl. ¶ 21, Ex. 29.)  Those fee schedules detail the indenture trustee's fees and expenses,

23    _____

     (Footnote continued from previous page.)

24    wrong, and to escape from liability for not rendering his promised performance by preventing the
      happening of the condition on which it was promised.'" (citing 3A Corbin, Contracts § 767, at

25    540 (1960)).

26        [13]  On February 20, 2008, Finisar paid U.S. Bank's fees and expenses through November

27    30, 2007, in the amount of $317,817.58.  (Jacobs Decl. ¶ 24; Compl. ¶ 53.)  By its amended
      complaint, Finisar seeks repayment by U.S. Bank of all or some of this amount.  (Compl. ¶ 72.)

28

1    including, without limitation, out-of-pocket expenses, administration fees, legal expenses, and

2    extraordinary service charges. (*Id*.) Two of the three fee statements received by Finisar expressly

3    state that "[p]ayment of fees constitutes acceptance of the terms and conditions set forth," which,

4    prior to commencing this Action, Finisar had paid. (*Id*.) Stephen K. Workman, Finisar's Chief

5    Financial Officer, also expressly acknowledged, in writing, Finisar's obligation to pay the

6    indenture trustee. (*Id*.)

7         Still, Finisar argues that U.S. Bank is not entitled to its fees and expenses. Finisar's

8    argument is, however, contrary to the terms of the Indentures and without merit. *U.S. Trust Co.*

9    *of N.Y. v. Pardo (In re W.T. Grant Co.)*, 119 B.R. 898, 901 (Bankr. S.D.N.Y. 1990) (indenture

10    trustee contractually entitled to payment for performance of its duties), *aff'd*, 935 F.2d 1277 (2d

11    Cir. 1991); *see also U.S. Bank Nat'l Assoc. v. MOA Hospitality*, No. 601686/2007, at 18-19 (Sup.

12    Ct. N.Y. County Dec. 18, 2007) (obligating the issuer to reimburse the indenture trustee for its

13    reasonable fees and expenses).[14]

14         Finisar, not U.S. Bank, commenced this Action. Finisar, not U.S. Bank, delayed its

15    financial statements for almost one year. Finisar, not U.S. Bank, incorrectly reported its stock

16    option grants. And Finisar, not U.S. Bank, has served discovery and taken depositions in this

17    Action (all after December 4, 2007), even though every other court addressing the issues in this

18    case has ruled on summary judgment based on the plain language in the indentures. U.S. Bank

19    was appointed by Finisar to represent and protect the interests of the noteholders, which is exactly

20    what it has set out to do. Finisar should therefore be ordered to pay all fees and expenses incurred

21    by U.S. Bank in acting as indenture trustee under the Indentures, including, but not limited to,

22    fees and expenses relating to this litigation.[15]

23        [14] A copy of the *MOA Hospitality* decision and order is attached as Exhibit B to the

24    Appendix of Authorities submitted with this memorandum.

25        [15] Finisar should be equitably estopped from even making this argument because its own
actions resulted in U.S. Bank incurring fees and costs to defend the litigation. *Bayview Gen.*

26    *Hosp. v. Assoc. Hosp. Serv. of N.Y.*, 256 N.Y.S.2d 471, 475-76 (Sup. Ct. N.Y. County 1964) ("by
[an] admitted breach, plaintiff is revealed as having committed a wrong, and a wrong, or an

27    unfavorable condition created by a party's own fault, cannot form the basis for relief . . ., for the
taking advantage of one's own wrong, is abhorrent to equity" (citations omitted)).

28

DEFENDANTS'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW ISO THEREOF
CASE NO. C07-04052 JF (PVT)
sf-2505325

19

1

**CONCLUSION**

2        U.S. Bank respectfully requests that this Court grant its motion for summary judgment

3    and enter its proposed form of Order granting the relief set forth therein.

4

5    Dated: April 24, 2008                    D. ANTHONY RODRIGUEZ
                                              EVA K. SCHUELLER
6                                             MORRISON & FOERSTER LLP

7                                             MICHAEL B. FISCO (MN No. 175341)
                                              ABBY E. WILKINSON (MN No. 0313981)
8                                             (*Pro hac applications granted*)
                                              FAEGRE & BENSON LLP
9

10

11                                            By:    _____//_s_//_____
                                                         D. Anthony Rodriguez
12
                                                     Attorneys for Defendant
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28