adjustment will be made for dividends on the Common Stock the record date for which occurred on or prior to the Change in Control Repurchase Date.

(i)     If a Holder of a Note is paid in Common Stock, the Company shall pay any documentary, stamp or similar issue or transfer tax due such issue of shares of Common Stock. However, the Holder shall pay any such t which is due because the Holder requests the shares of Common Stock to be issu in a name other than the Holder's name. The Paying Agent may refuse to deliver the certificates representing the Common Stock being issued in a name other th the Holder's name until the Paying Agent receives a sum sufficient to pay any tax which will be due because the shares of Common Stock are to be issued in a name other than the Holder's name. Nothing herein shall preclude any income ta withholding required by law or regulations.

SECTION 3.11 Effect of Put Right Repurchase Notice or Change in Control Repurchase Notice. Upon receipt by the Paying Agent of the Put Righ Repurchase Notice or the Change in Control Repurchase Notice specified in Section 3.09(c) or Section 3.10(c), as applicable, the Holder of the Note in respect of which such Put Right Repurchase Notice or Change in Control Repurchase Notice, as the case may be, was given shall (unless such Put Right Repurchase Notice or Change in Control Repurchase Notice is withdrawn as specified in the following two paragraphs) thereafter be entitled to receive solely the Put Right Repurchase Price or Change in Control Repurchase Price, a the case may be, with respect to such Note. Such Put Right Repurchase Price or Change in Control Repurchase Price, as applicable, shall be paid to such Holde subject to receipt of consideration for the Notes and/or Notes from the Holder by the Paying Agent, promptly following the later of (x) the Put Right Repurchase Date or Change in Control Repurchase Date, as the case may be, with respect to such Note (provided

42

<PAGE>

the conditions in Section 3.09(c) or Section 3.10(c), as applicable, have been satisfied) and (y) the time of delivery of such Note to the Paying Agent by th Holder thereof in the manner required by Section 3.09(c) or Section 3.10(c), a applicable. Notes in respect of which a Put Right Repurchase Notice or Change Control Repurchase Notice, as the case may be, has been given by the Holder thereof may not be converted pursuant to Article 10 hereof on or after the dat of the delivery of such Put Right Repurchase Notice or Change in Control Repurchase Notice, as the case may be, unless such Put Right Repurchase Notice or Change in Control Repurchase Notice, as the case may be, has first been validly withdrawn as specified in the following two paragraphs.

A Put Right Repurchase Notice or Change in Control Repurchas Notice, as the case may be, may be withdrawn by means of a written notice of withdrawal delivered to the office of the Paying Agent in accordance with the Put Right Repurchase Notice or Change in Control Repurchase Notice, as the cas may be, at any time prior to the close of business on the Put Right Repurchase Date or Change in Control Repurchase Date, as the case may be, specifying:

(1)     the certificate number of the Note in respect of which such notice of withdrawal is being submitted (or, if the Notes are not certificated, the withdrawal notice must contain information required to comply with appropriate DTC procedures),

(2)     the principal amount of the Note with respect to

which such notice of withdrawal is being submitted, and

(3)        the principal amount, if any, of such Note which
remains subject to the original Put Right Repurchase Notice or Change
in Control Repurchase Notice, as the case may be, and which has been
will be delivered for repurchase by the Company.

There shall be no repurchase of any Notes pursuant to Sectio
3.09 or Section 3.10, as applicable, if there has occurred (prior to, on or
after, as the case may be, the giving, by the Holders of such Notes, of the
required Put Right Repurchase Notice or Change in Control Repurchase Notice, a
the case may be) and is continuing an Event of Default (other than a default i
the payment of the Put Right Repurchase Price or Change in Control Repurchase
Price, as the case may be, with respect to such Notes). The Paying Agent will
promptly return to the respective Holders thereof any Notes (x) with respect t
which a Put Right Repurchase Notice or Change in Control Repurchase Notice, as
the case may be, has been withdrawn in compliance with this Indenture, or (y)
held by it during the continuance of an Event of Default (other than a default
in the payment of the Put Right Repurchase Price or Change in Control Repurcha
Price, as the case may be, with respect to such Notes) in which case, upon suc
return, the Put Right Repurchase Notice or Change in Control Repurchase Notice
as the case may be, with respect thereto shall be deemed to have been withdraw

SECTION 3.12 Deposit of Put Right Repurchase Price or Change
in Control Repurchase Price. Prior to 11:00 a.m. (New York City time) on the
Business Day following the Put Right Repurchase Date or Change in Control
Repurchase Date, as the case may be, the Company shall deposit with the Truste
or with the Paying Agent (or, if the Company or a Subsidiary or an Affiliate o
either of them is acting as the Paying Agent, shall segregate and

43

<PAGE>

hold in trust as provided in Section 2.04) an amount of money (in immediately
available funds if deposited on such Business Day) or Common Stock, or a
combination thereof, if permitted hereunder, sufficient to pay the aggregate P
Right Repurchase Price or Change in Control Repurchase Price, as the case may
be, of all the Notes or portions thereof which are to be repurchased as of the
Put Right Repurchase Date or Change in Control Repurchase Date, as the case ma
be. The manner in which the deposit required by this Section 3.12 is made by t
Company shall be at the option of the Company.

SECTION 3.13 Notes Repurchased in Part. Any Note which is to
be repurchased only in part shall be surrendered at the office of the Paying
Agent (with, if the Company or the Trustee so requires, due endorsement by, or
written instrument of transfer in form satisfactory to the Company and the
Trustee duly executed by, the Holder thereof or such Holder's attorney duly
authorized in writing) and the Company shall execute and the Trustee shall
authenticate and deliver to the Holder of such Note, without service charge, a
new Note or Notes, of any authorized denomination as requested by such Holder
aggregate principal amount equal to, and in exchange for, the portion of the
principal amount of the Note so surrendered which is not repurchased.

SECTION 3.14 Covenant to Comply with Securities Laws upon
Purchase or Repurchase of Notes. In connection with any offer to purchase or
repurchase of Notes under Section 3.09 or Section 3.10 hereof (provided that
such offer or purchase constitutes an "issuer tender offer" for purposes of Ru

13e-4 (which term, as used herein, includes any successor provision thereto) under the Exchange Act at the time of such offer or purchase), the Company sha (i) comply with Rule 13e-4, Rule 14e-1 and any other tender offer rules under the Exchange Act which may then be applicable, (ii) file the related Schedule (or any successor schedule, form or report) or any other schedule required und the Exchange Act, and (iii) otherwise comply with all federal and state securities laws so as to permit the rights and obligations under Section 3.09 Section 3.10, as the case may be, to be exercised in the time and in the manne specified in Section 3.09 or Section 3.10, as applicable.

         SECTION 3.15 Repayment to the Company. The Trustee and the Paying Agent shall return to the Company any cash or shares of Common Stock th remain unclaimed as provided in paragraph 13 on the reverse side of the Notes, together with interest or dividends, if any, thereon, held by them for the payment of the Put Right Repurchase Price or the Change in Control Repurchase Price; provided, however, that to the extent that the aggregate amount of cash or shares of Common Stock deposited by the Company pursuant to Section 3.12 exceeds the aggregate Put Right Repurchase Price or Change in Control Repurcha Price, as applicable, of the Notes or portions thereof which the Company is obligated to repurchase as of the Put Right Repurchase Date or the Change in Control Repurchase Date then promptly after the Business Day following the Put Right Repurchase Date or the Change in Control Repurchase Date, as applicable, the Trustee shall return any such excess to the Company together with interest or dividends, if any, thereon.

                                    44

\<PAGE\>


                              ARTICLE 4

                              COVENANTS

         SECTION 4.01 Payment of Principal and Interest on the Notes. The Company will duly and punctually pay the principal of and interest at the Interest Rate in respect of the Notes in accordance with the terms of the Note and this Indenture. The Company will deposit or cause to be deposited with the Trustee as directed by the Trustee, no later than 11:00 a.m., New York time on the day of the Stated Maturity of any Note or installment of interest, all payments so due. Principal amount, Provisional Redemption Price, Put Right Repurchase Price, Change in Control Repurchase Price, and interest shall be considered paid on the applicable date due if at 11:00 a.m., New York time on such date (or, in the case of a Put Right Repurchase Price or Change in Contro Repurchase Price, on the Business Day following the applicable Put Right Repurchase Date or Change in Control Repurchase Date, respectively). the Trust or the Paying Agent holds, in accordance with this Indenture, money or Common Stock, if permitted hereunder, sufficient to pay all such amounts then due.

         The Company shall, to the extent permitted by law, pay cash interest on overdue amounts at the rate per annum set forth in paragraph 1 on the reverse side of the Notes, compounded semiannually, which interest shall accrue from the date such overdue amount was originally due to the date paymen of such amount, including interest thereon, has been made or duly provided for All such overdue interest shall be payable on demand.

         SECTION 4.02 Commission and Other Reports. The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the Commission, copies

its annual report and of the information, documents and other reports (or copi of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commissi pursuant to Section 13 or 15(d) of the Exchange Act. If at any time the Compan is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall provided at the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements. The Company als shall comply with the other provisions of TIA Section 314(a).

SECTION 4.03 Compliance Certificate. The Company shall deliv to the Trustee within 120 days after the end of each fiscal year of the Compan (beginning with the fiscal year ending on April 30, 2004) an Officers' Certificate, stating whether or not to the best knowledge of the signers there the Company is in default in the performance and observance of any of the term provisions and conditions of this Indenture (without regard to any period of grace or requirement of notice provided hereunder) and if the Company shall be in default, specifying all such defaults and the nature and status thereof of which they may have knowledge.

SECTION 4.04 Further Instruments and Acts. Upon request of t Trustee, the Company will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purposes of this Indenture.

45

<PAGE>

SECTION 4.05 Maintenance of Office or Agency. The Company wi maintain in the Borough of Manhattan, the City of New York, an office or agenc of the Trustee, Registrar, Paying Agent and Conversion Agent where Notes may b presented or surrendered for payment, where Notes may be surrendered for registration of transfer, exchange, repurchase, redemption or conversion and where notices and demands to or upon the Company in respect of the Notes and this Indenture may be served. The office of U.S. Bank Trust National Association, located at 100 Wall Street, 16th Floor, New York, New York, 10005 attention: Corporate Trust Administration, shall initially be such office or agency for all of the aforesaid purposes. The Company shall give prompt writte notice to the Trustee of the location, and of any change in the location, of a such office or agency (other than a change in the location of the office of th Trustee). If at any time the Company shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof such presentations, surrenders, notices and demands may be made or served at t address of the Trustee set forth in Section 13.02.

The Company may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such designations; provided, however, that no such designation or rescission shall in any manner relieve the Company of its obligation to maintain an office or agency in the Borough of Manhattan, the City of New York, for such purposes.

SECTION 4.06 Delivery of Certain Information. At any time wh the Company is not subject to Section 13 or 15(d) of the Exchange Act, upon th request of a Holder or any beneficial holder of Notes or shares of Common Stoc issued upon conversion thereof, the Company will promptly furnish or cause to furnished Rule 144A Information (as defined below) to such Holder or any beneficial holder of Notes or holder of shares of Common Stock issued upon

conversion of Notes, or to a prospective purchaser of any such security
designated by any such holder, as the case may be, to the extent required to
permit compliance by such Holder or holder with Rule 144A in connection with t
resale of any such security. "Rule 144A Information" shall be such information
as is specified pursuant to Rule 144A(d)(4) under the Securities Act.

ARTICLE 5

SUCCESSOR CORPORATION

SECTION 5.01 When Company May Merge or Transfer Assets. The
Company shall not, subject to Section 9.02 hereof, consolidate with, merge int
or transfer or lease all or substantially all of its assets to any corporation
limited liability company, partnership or trust organized under the laws of th
United States or any of its political subdivisions, unless:

(a)      either (1) the Company shall be the resulting or
surviving corporation or (2) the person (if other than the Company)
formed by such consolidation or into which the Company is merged or t
person which acquires by conveyance, transfer or lease the properties
and assets of the Company substantially as an entirety (i) shall be
organized and validly existing under the laws of the United States or
any state of the United States and (ii) shall expressly assume, by an
indenture supplemental hereto, executed and

46

<PAGE>

delivered to the Trustee, in form reasonably satisfactory to the
Trustee, all of the obligations of the Company under the Notes and th
Indenture;

(b)      at the time of such transaction, no Event of Defaul
and no event which, after notice or lapse of time, would become an
Event of Default, shall have happened and be continuing; and

(c)      the Company shall have delivered to the Trustee an
Officers' Certificate and an Opinion of Counsel, each stating that su
consolidation, merger, conveyance, transfer or lease and, if a
supplemental indenture is required in connection with such transactio
such supplemental indenture, comply with this Article 5 and that all
conditions precedent herein provided for relating to such transaction
have been satisfied.

For purposes of the foregoing, the transfer (by lease,
assignment, sale or otherwise) of the properties and assets of one or more
Subsidiaries (other than to the Company or another Subsidiary), which, if such
assets were owned by the Company, would constitute all or substantially all of
the properties and assets of the Company, shall be deemed to be the transfer o
all or substantially all of the properties and assets of the Company.

The successor person formed by such consolidation or into
which the Company is merged or the successor person to which such conveyance,
transfer or lease is made shall succeed to, and be substituted for, and may
exercise every right and power of, the Company under this Indenture with the
same effect as if such successor had been named as the Company herein; and
thereafter, except in the case of a lease and obligations the Company may have

under a supplemental indenture pursuant to Section 10.11, the Company shall be discharged from all obligations and covenants under this Indenture and the Notes. Subject to Section 9.06, the Company, the Trustee and the successor person shall enter into a supplemental indenture to evidence the succession an substitution of such successor person and such discharge and release of the Company.

ARTICLE 6

DEFAULTS AND REMEDIES

SECTION 6.01 Events of Default. An "Event of Default" occurs if:

(1)    the Company fails to pay when due the principal of any of the Notes at the scheduled maturity, upon redemption or exerci of a repurchase right or otherwise, whether or not such payment is prohibited by Article 11 of this Indenture;

(2)    the Company fails to pay an installment of interest including Liquidated Damages, if any, on any of the Notes that continues for 30 days after the date when due, whether or not such payment is prohibited by Article 11 of this Indenture; provided that failure to make any of the first eight scheduled interest payments on the Notes on the applicable interest payment dates will constitute an Event of Default without regard to any period of grace or other cure period;

47

<PAGE>

(3)    the Company fails to deliver shares of Common Stock together with cash in lieu of fractional shares, when such Common Sto or cash in lieu of fractional shares is required to be delivered upon conversion of a Note and such failure continues for 10 days after suc delivery date;

(4)    the Company fails to perform or observe any other term, covenant or agreement contained in the Notes or this Indenture for a period of 60 days after receipt by the Company of a Notice of Default (as defined in this Section 6.01);

(5)    (A) one or more defaults in the payment of the Company's Indebtedness aggregating $5.0 million or more at the scheduled maturity thereof, and such default or defaults shall have continued after any applicable grace period and shall not have been cured or waived within a 30-day period after the date of a Notice of Default or (B) any of the Company's Indebtedness aggregating $5.0 million or more shall have been accelerated or otherwise declared due and payable, or required to be prepaid or repurchased (other than by regularly scheduled required prepayment) prior to the scheduled maturity thereof, due to a default of such Indebtedness and such Indebtedness is not discharged nor such acceleration is cured, waived rescinded or annulled within a 30-day period after a Notice of Defaul

(6)    the Company, or any Significant Subsidiary pursuant to or under or within the meaning of any Bankruptcy Law:

(A)    commences a voluntary case or proceeding;

(B)    consents to the entry of an order for relief against it in an involuntary case or proceeding or the commencement of any case against it;

(C)    consents to the appointment of a Custodian of it or for any substantial part of its property;

(D)    makes a general assignment for th benefit of its creditors;

(E)    files a petition in bankruptcy or answer or consent seeking reorganization or relief; or

(F)    consents to the filing of such a petition or the appointment of or taking possession by a Custodian; or

(7)    a court of competent jurisdiction enters an order o decree under any Bankruptcy Law that:

(A)    is for relief against the Company or any Significant Subsidiary in an involuntary cas or proceeding, or adjudicates the Company or any Significant Subsidiary insolvent or bankrupt;

48

<PAGE>

(B)    appoints a Custodian of the Compa or any Significant Subsidiary or for any substantia part of its or their properties; or

(C)    orders the winding up or liquidation of the Company or any Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 days.

"Bankruptcy Law" means Title 11, United States Code or any similar federal or state law for the relief of debtor

"Custodian" means any receiver, trustee, assignee, liquidator, custodian or similar official under any Bankrupt Law; or

(8)    the Pledge Agreement shall cease to be in full forc and effect or enforceable other than in accordance with its terms.

A Default under clause (4) or (5) above is not an Event of

Default until the Trustee notifies the Company, or the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding notify the Company and the Trustee, of the Default and the Company does not cure such Default (and such Default is not waived) within the time specified in clause ( or (5) above after actual receipt of such notice. Any such notice must specify the Default, demand that it be remedied and state that such notice is a "Notic of Default".

The Company will deliver to the Trustee, within five Busines Days of becoming aware of the occurrence of an Event of Default, written notic thereof. In addition, the Company shall deliver to the Trustee, within 30 days after it becomes aware of the occurrence thereof, written notice of any event which with the lapse of time would become an Event of Default under clause (4) or (5) above, its status and what action the Company is taking or proposes to take with respect thereto.

SECTION 6.02 Acceleration. If an Event of Default (other tha an Event of Default specified in Section 6.01(6) or (7)) occurs and is continuing, the Trustee by notice to the Company, or the Holders of at least 2 in aggregate principal amount of the Notes at the time outstanding by notice t the Company and the Trustee, may declare the Notes due and payable at their principal amount together with accrued interest. Upon a declaration of acceleration, such principal and accrued and unpaid interest to the date of payment shall be immediately due and payable.

If an Event of Default specified in Section 6.01(6) or (7) above occurs and is continuing, then the principal and the interest on all the Notes shall become and be immediately due and payable without any declaration other act on the part of the Trustee or any Noteholders.

The Holders of a majority in aggregate principal amount of t Notes at the time outstanding, by notice to the Trustee (and without notice to any other Noteholder) may rescind or annul an acceleration and its consequence if the rescission would not conflict with any judgment or decree and if all existing Events of Default have been cured or waived except nonpayment of

49

<PAGE>

the principal and any accrued cash interest that have become due solely as a result of acceleration and if all amounts due to the Trustee under Section 7.0 have been paid. No such rescission shall affect any subsequent Default or impa any right consequent thereto.

SECTION 6.03 Other Remedies. If an Event of Default occurs a is continuing, the Trustee may pursue any available remedy to collect the payment of the principal and any accrued cash interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if the Trustee do not possess any of the Notes or produce any of the Notes in the proceeding. A delay or omission by the Trustee or any Noteholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy constitute a waiver of, or acquiescence in, the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.

SECTION 6.04 Waiver of Past Defaults. The Holders of a

majority in aggregate principal amount of the Notes at the time outstanding, b notice to the Trustee (and without notice to any other Noteholder), may waive means of written consent an consequent Default and its consequences except (1) a Event of Default described in Section 6.01(1) or (2), (2) a Default in respect of a provision that under Section 9.02 cannot be amended without the consent o each Noteholder affected or (3) a Default which constitutes a failure to conve any Note in accordance with the terms of Article 10. When a Default is waived, it is deemed cured, but no such waiver shall extend to any subsequent or other Default or impair any consequent right. This Section 6.04 shall be in lieu of Section 316(a)1(B) of the TIA and such Section 316(a)1(B) is hereby expressly excluded from this Indenture, as permitted by the TIA.

SECTION 6.05 Control by Majority. The Holders of a majority aggregate principal amount of the Notes at the time outstanding through their written consent may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust power conferred on the Trustee. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture or that the Trustee determines in good faith is unduly prejudicial to the rights of other Noteholders or would involve the Trustee in personal liability unless the Trustee is offered indemnity reasonably satisfactory to it against loss, liability or expense. This Section 6.05 shall be in lieu of Section 316(a)1(A) of the TIA and such Section 316(a)1(A) is hereby expressly excluded from this Indenture, as permitted by the TIA.

SECTION 6.06 Limitation on Suits. A Noteholder may not pursu any remedy with respect to this Indenture or the Notes unless:

(1)     the Holder gives to the Trustee written notice stating that an Event of Default is continuing;

(2)     the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding make a written request to the Trustee to pursue the remedy;

(3)     such Holder or Holders offer to the Trustee reasonable security or indemnity satisfactory to the Trustee against any loss, liability or expense;

50

<PAGE>

(4)     the Trustee does not comply with the request within 60 days after receipt of such notice, request and offer of security o indemnity; and

(5)     the Holders of a majority in aggregate principal amount of the Notes at the time outstanding do not give the Trustee a direction inconsistent with the request during such 60-day period.

A Noteholder may not use this Indenture to prejudice the rights of any other Noteholder or to obtain a preference or priority over any other Noteholder.

SECTION 6.07 Rights of Holders to Receive Payment. Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of the principal amount plus Provisional Redemption Price,

Put Right Repurchase Price, Change in Control Repurchase Price or any accrued cash interest in respect of the Notes held by such Holder, on or after the respective due dates expressed in the Notes or any Provisional Redemption Date and to convert the Notes in accordance with Article 10, or to bring suit for t enforcement of any such payment on or after such respective dates or the right to convert, shall not be impaired or affected adversely without the consent of such Holder.

SECTION 6.08 Collection Suit by Trustee. If an Event of Default described in Section 6.01(1) or (2) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trus against the Company for the whole amount owing with respect to the Notes and t amounts provided for in Section 7.06.

SECTION 6.09 Trustee May File Proofs of Claim. In case of th pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to the Company or any other obligor upon the Notes or the property of the Company or of such other obligor or their creditors, the Trust (irrespective of whether the principal amount, Provisional Redemption Price, P Right Repurchase Price, Change in Control Repurchase Price or any accrued cash interest in respect of the Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trust shall have made any demand on the Company for the payment of any such amount) shall be entitled and empowered, by intervention in such proceeding or otherwise,

(a)      to file and prove a claim for the whole amount of t principal amount, Provisional Redemption Price, Put Right Repurchase Price, Change in Control Repurchase Price or any accrued cash interes and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel or any other amounts due the Trustee under Section 7.06) and of the Holders allowed in suc judicial proceeding, and

(b)      to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the

51

<PAGE>

Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 7.06.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting t Notes or the rights of any Holder thereof, or to authorize the Trustee to vote

in respect of the claim of any Holder in any such proceeding.

SECTION 6.10 Priorities. If the Trustee collects any money pursuant to this Article 6, it shall pay out the money in the following order:

(1)         to the Trustee for amounts due under Section 7.06;

(2)         to Noteholders for amounts due and unpaid on the Notes for the principal amount, Provisional Redemption Price, Put Right Repurchase Price, Change in Control Repurchase Price or any accrued cash interest as the case may be, ratably, without preference or priority of any kind, according to such amounts due and payable on the Notes; and

(3)         the balance, if any, to the Company.

The Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 6.10. At least 15 days before such record date, the Trustee shall mail to each Noteholder and the Company a notice that states the record date, the payment date and the amount to be paid

SECTION 6.11 Undertaking for Costs. In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant (other than the Truste in the suit of an undertaking to pay the costs of the suit, and the court in i discretion may assess reasonable costs, including reasonable attorneys' fees a expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. Th Section 6.11 does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 6.07 or a suit by Holders of more than 10% in aggregate principal amount of the Notes at the time outstanding. This Section 6.11 shall be in lieu of Section 315(e) of the TIA and such Section 315(e) is hereby expressly excluded from this Indenture, as permitted by the TIA.

SECTION 6.12 Waiver of Stay, Extension or Usury Laws. The Company covenants (to the extent that it may lawfully do so) that it will not any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury or other law wherever enacted, now or at any time hereafter in force, which would prohibit forgive the Company from paying all or any portion of the principal amount, Provisional Redemption Price, Put Right Repurchase Price, Change in Control Repurchase Price or any accrued cash interest in respect of Notes, or any interest on such amounts, as contemplated herein, or which may affect the covenants or the performance of this

52

<PAGE>

Indenture; and the Company (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law, and covenants that will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

ARTICLE 7

TRUSTEE

SECTION 7.01 Duties and Responsibilities of the Trustee; During Default; Prior to Default. The Trustee, prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all such Events Default which may have occurred, undertakes to perform such duties and only su duties as are specifically set forth in this Indenture. In case an Event of Default hereunder has occurred (which has not been cured or waived), the Trust shall exercise such of the rights and powers vested in it by this Indenture, a use the same degree of care and skill in their exercise, as a prudent man woul exercise or use under the circumstances in the conduct of his own affairs.

No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that

(a)     prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all such Events of Defau which may have occurred:

(i)     the duties and obligations of the Trustee shall be determined solely by the express provisions of this Indenture, and the Trustee shall not be liable except for th performance of such duties and obligations as are specifical set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)     in the absence of bad faith on the part of the Trustee, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any statements, certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such statements, certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the sa to determine whether or not they conform to the requirements of this Indenture;

(b)     the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer or Responsible Officers of the Trustee, unless it shall be proved that the Trustee w negligent in ascertaining the pertinent facts; and

(c)     the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders pursuant to Section 6.05 relating t the time, method and place of conducting any proceeding for any

53

<PAGE>

remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture.

None of the provisions contained in this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur persona

financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there shall be reasonable ground for believing that the repayment of such funds or adequate indemnity against such liability is not reasonably assured to it.

   The provisions of this Section 7.01 are in furtherance of an subject to Sections 315 and 316 of the TIA.

   SECTION 7.02 Certain Rights of the Trustee. In furtherance o and subject to the TIA and subject to Section 7.01:

    (a)  the Trustee may rely, and shall be protected in acting or refraining from acting upon, any resolution, Officers' Certificate or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture, note, coupo Note or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties;

    (b)  any request, direction, order or demand of the Company mentioned herein shall be sufficiently evidenced by an Officers' Certificate (unless other evidence in respect thereof be herein specifically prescribed); and any resolution of the Board of Directors may be evidenced to the Trustee by a copy thereof certified by the secretary or an assistant secretary of the Company;

    (c)  the Trustee may consult with counsel of its selecti and any advice or Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder in good faith and in accordanc with such advice or Opinion of Counsel;

    (d)  the Trustee shall be under no obligation to exercis any of the trusts or powers vested in it by this Indenture with the request, order or direction of any of the Noteholders pursuant to the provisions of this Indenture, unless such Noteholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liabilities which might be incurred therein or thereby;

    (e)  the Trustee shall not be liable for any action take or omitted by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture;

    (f)  prior to the occurrence of an Event of Default hereunder and after the curing or waiving of all such Events of Default, the Trustee shall not be bound to make any investigation int the facts or matters stated in any resolution, certificate, statement instrument, opinion, report, notice, request, consent, order, approva appraisal, bond, debenture, note, coupon, security, or other paper or document unless requested in writing to do so by the Holders of not less than a majority in aggregate principal amount of the

&lt;PAGE&gt;

  Notes then outstanding; provided that, if the payment within a

reasonable time to the Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, i the opinion of the Trustee, not reasonably assured to the Trustee by the security afforded to it by the terms of this Indenture, the Trust may require reasonable indemnity against such expenses or liabilities as a condition to proceeding; the reasonable expenses of every such investigation shall be paid by the Company or, if paid by the Trustee or any predecessor trustee, shall be repaid by the Company upon deman and

(g)      the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys not regularly in its employ and the Trust shall not be responsible for any misconduct or negligence on the part of any such agent or attorney appointed with due care by it hereunder

SECTION 7.03 Trustee Not Responsible for Recitals, Dispositi of Notes or Application of Proceeds Thereof. The recitals contained herein and in the Notes, except the Trustee's certificates of authentication, shall be taken as the statements of the Company, and the Trustee assumes no responsibility for the correctness of the same. The Trustee makes no representation as to the validity or sufficiency of this Indenture or of the Notes. The Trustee shall not be accountable for the use or application by the Company of any of the Notes or of the proceeds thereof.

SECTION 7.04 Trustee and Agents May Hold Notes; Collections, etc. The Trustee or any agent of the Company or the Trustee, in its individual or any other capacity, may become the owner or pledgee of Notes with the same rights it would have if it were not the Trustee or such agent and, subject to Sections 7.08 and 7.13, if operative, may otherwise deal with the Company and receive, collect, hold and retain collections from the Company with the same rights it would have if it were not the Trustee or such agent.

SECTION 7.05 Moneys Held by Trustee. Subject to the provisio of Section 8.02 hereof, all moneys received by the Trustee shall, until used o applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated from other funds except to the exten required by mandatory provisions of law. Neither the Trustee nor any agent of the Company or the Trustee shall be under any liability for interest on any moneys received by it hereunder.

SECTION 7.06 Compensation and Indemnification of Trustee and Its Prior Claim. The Company covenants and agrees to pay to the Trustee from time to time, and the Trustee shall be entitled to, such compensation (which shall not be limited by any provision of law in regard to the compensation of trustee of an express trust) to be agreed to in writing by the Trustee and the Company, and the Company covenants and agrees to pay or reimburse the Trustee and each predecessor Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by or on behalf of it in accordanc with any of the provisions of this Indenture (including (i) the reasonable compensation and the expenses and disbursements of its counsel and of all agen and other persons not regularly in its employ and (ii) interest at the prime rate on any disbursements and advances made by the Trustee and not paid by the Company within 5 days after receipt of an invoice for such disbursement or advance) except any

<PAGE>

such expense, disbursement or advance as may arise from its negligence or bad faith. The Company also covenants to indemnify the Trustee and each predecesso Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this Indenture or the trus hereunder and its duties hereunder, including the costs and expenses of defending itself against or investigating any claim of liability in the premises. The obligations of the Company under this Section 7.06 to compensate and indemnify the Trustee and each predecessor Trustee and to pay or reimburse the Trustee and each predecessor Trustee for expenses, disbursements and advances shall constitute additional indebtedness hereunder and shall survive the satisfaction and discharge of this Indenture. Such additional indebtedness shall be a senior claim to that of the Notes upon all property and funds held collected by the Trustee as such, except funds held in trust for the benefit o the Holders of particular Notes, and the Notes are hereby effectively subordinated to such senior claim to such extent. The provisions of this Secti 7.06 shall survive the termination of this Indenture. When the Trustee incurs expenses or renders services in connection with an Event of Default specified Section 6.01 or in connection with Article Six hereof, the expenses (including the reasonable fees and expenses of its counsel) and the compensation for services in connection therewith are to constitute expenses of administration under any bankruptcy law.

          SECTION 7.07 Right of Trustee to Rely on Officers' Certificate, etc. Subject to Sections 7.01 and 7.02, whenever in the administration of the trusts of this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may, in the absence of negligence or bad faith on the part of the Trustee, be deemed to be conclusive proved and established by an Officers' Certificate delivered to the Trustee.

          SECTION 7.08 Conflicting Interests. If the Trustee has or shall acquire a conflicting interest within the meaning of the TIA, the Truste shall either eliminate such interest or resign, to the extent and in the manne provided by, and subject to the provisions of, the TIA.

          SECTION 7.09 Persons Eligible for Appointment as Trustee. Th Trustee shall at all times be a corporation or banking association having a combined capital and surplus of at least $10,000,000. If such corporation or banking association publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then, for the purposes of this Section 7.09, the combined capital a surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 7.09, the Trustee shall resign immediately in the manner and with the effect specified in Section 7.10.

          SECTION 7.10 Resignation and Removal; Appointment of Success Trustee. (a) The Trustee, or any trustee or trustees hereafter appointed, may any time resign with respect to one or more or all series of Notes by giving written notice of resignation to the Company and by mailing notice thereof by first class mail to the Holders of Notes at their last addresses as they shall appear on the Note register. Upon receiving such notice of resignation, the

Company shall promptly appoint a successor trustee or trustees by written instrument in

56

<PAGE>

duplicate, executed by authority of the Board of Directors, one copy of which instrument shall be delivered to the resigning Trustee and one copy to the successor trustee or trustees. If no successor trustee shall have been so appointed and have accepted appointment within 30 days after the mailing of su notice of resignation, the resigning trustee may petition any court of compete jurisdiction for the appointment of a successor trustee, or any Noteholder who has been a bona fide Holder of a Note for at least six months may, subject to the provisions of Section 7.11, on behalf of himself and all others similarly situated, petition any such court for the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, appoint a successor trustee.

       (b)       In case at any time any of the following shall occu

       (i)       the Trustee shall fail to comply with the provision of Section 7.08 with respect to any Notes after written request therefor by the Company or by any Noteholder who has been a bona fide Holder of a Note for at least six months; or

       (ii)       the Trustee shall cease to be eligible in accordanc with the provisions of Section 7.09 and shall fail to resign after written request therefor by the Company or by any Noteholder; or

       (iii)       the Trustee shall become incapable of acting or sha be adjudged a bankrupt or insolvent, or a receiver or liquidator of t Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidatio or

then, in any such case, the Company may remove the Trustee and appoint a successor trustee by written instrument, in duplicate, executed by order of th Board of Directors of the Company, one copy of which instrument shall be delivered to the Trustee so removed and one copy to the successor trustee, or, subject to the provisions of Section 7.11, any Noteholder who has been a bona fide Holder of a Note for at least six months may on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for th removal of the Trustee and the appointment of a successor trustee. Such court may thereupon, after such notice, if any, as it may deem proper and prescribe, remove the Trustee and appoint a successor trustee. If no successor trustee shall have been appointed and have accepted appointment within 30 days after a notice of removal has been given, the removed trustee may petition a court of competent jurisdiction for the appointment of a successor trustee.

       (c)       The Holders of a majority in aggregate principal amount of the Notes at the time outstanding may at any time remove the Trustee and appoint a successor trustee by delivering to the Trustee so removed, to th successor trustee so appointed and to the Company the evidence of the action i that regard taken by the Noteholders.

(d)    Any resignation or removal of the Trustee and any appointment of a successor trustee pursuant to any of the provisions of this Section 7.10 shall become effective upon acceptance of appointment by the successor trustee as provided in Section 7.11.

SECTION 7.11 Acceptance of Appointment by Successor Trustee. Any successor trustee appointed as provided in Section 7.10 shall execute and deliver to the Company

57

<PAGE>

and to its predecessor trustee an instrument accepting such appointment hereunder, and thereupon the resignation or removal of the predecessor trustee shall become effective and such successor trustee, without any further act, de or conveyance, shall become vested with all rights, powers, duties and obligations of its predecessor hereunder, with like effect as if originally named as trustee hereunder; but, nevertheless, on the written request of the Company or of the successor trustee, upon payment of its charges then unpaid, the trustee ceasing to act shall pay over to the successor trustee all moneys the time held by it hereunder and shall execute and deliver an instrument transferring to such successor trustee all such rights, powers, duties and obligations. Upon request of any such successor trustee, the Company shall execute any and all instruments in writing for more fully and certainly vestin in and confirming to such successor trustee all such rights and powers. Any trustee ceasing to act shall, nevertheless, retain a prior claim upon all property or funds held or collected by such trustee to secure any amounts then due it pursuant to the provisions of Section 7.06.

No successor trustee shall accept appointment as provided in this Section 7.11 unless at the time of such acceptance such successor trustee shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09.

Upon acceptance of appointment by any successor trustee as provided in this Section 7.11, the Company shall mail notice thereof by first class mail to the Holders of Notes at their last addresses as they shall appea in the register. If the acceptance of appointment is substantially contemporaneous with the resignation, then the notice called for by the preceding sentence may be combined with the notice called for by Section 7.10. If the Company fails to mail such notice within ten days after acceptance of appointment by the successor trustee, the successor trustee shall cause such notice to be mailed at the expense of the Company.

SECTION 7.12 Merger, Conversion, Consolidation or Succession to Business of Trustee. Any corporation or banking association into which the Trustee may be merged or converted or with which it may be consolidated, or an corporation or banking association resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation or banking association succeeding to all or substantially all of the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder provided that such corporation or banking association shall be qualified under the provisions of Section 7.08 and eligible under the provisions of Section 7.09, without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding. In case at the time such successor to the Trustee shall succe to the trusts created by this Indenture any of the Notes shall have been

authenticated but not delivered, any such successor to the Trustee may adopt t
certificate of authentication of any predecessor Trustee and deliver such Note
so authenticated; and, in case at that time any of the Notes shall not have be
authenticated, any successor to the Trustee may authenticate such Notes either
in the name of any predecessor hereunder or in the name of the successor
Trustee; and in all such cases such certificate shall have the full force and
effect that this Indenture provides for the certificate of authentication of t
Trustee; provided, that the right to adopt the certificate of authentication o
any predecessor Trustee or to authenticate Notes in the name of any predecesso
Trustee shall apply only to its successor or successors by merger, conversion
consolidation.

<center>58</center>

<PAGE>

SECTION 7.13 Preferential Collection of Claims Against the
Company. The Trustee shall comply with the provisions of Section 311 of the TI

SECTION 7.14 Reports by the Trustee. (a) The Trustee shall
transmit to Holders and other persons such reports concerning the Trustee and
its actions under this Indenture as may be required pursuant to the TIA on or
before July 15 in each year that such report is required, such reports to be
dated as of the immediately preceding May 15.

(a)        A copy of each such report shall, at the time of su
transmission to Noteholders, be furnished to the Company and be filed by the
Trustee with each stock exchange upon which the Notes are listed and also with
the Commission. The Company agrees to notify the Trustee when and as the Notes
become admitted to trading on any national securities exchange.

SECTION 7.15 Trustee to Give Notice of Default, But May
Withhold in Certain Circumstances. The Trustee shall transmit to the
Noteholders, as the names and addresses of such Holders appear on the Note
register, notice by mail of all Defaults which have occurred, such notice to b
transmitted within 90 days after the occurrence thereof, unless such defaults
shall have been cured before the giving of such notice; provided that, except
the case of Default in the payment of the principal of, interest on, or other
similar obligation with respect to, any of the Notes, the Trustee shall be
protected in withholding such notice if and so long as the board of directors,
the executive committee, or a trust committee of directors or trustees and/or
Responsible Officers of the Trustee in good faith determines that the
withholding of such notice is in the best interests of the Noteholders.

<center>ARTICLE 8</center>

<center>DISCHARGE OF INDENTURE</center>

SECTION 8.01 Discharge of Liability on Notes. When (i) all
outstanding Notes will become due and payable within one year of their Stated
Maturity or (ii) all outstanding Notes are scheduled for redemption within one
year and, in either case, the Company has deposited with the Trustee cash
sufficient to pay and discharge all outstanding Notes on the date of their
Stated Maturity or the scheduled date of redemption, then the Company may
discharge its obligations under this Indenture while Notes remain outstanding;
provided that the Company shall remain obligated to issue shares upon conversi
of the Notes. The Trustee shall join in the execution of a document prepared b
the Company acknowledging satisfaction and discharge of this Indenture on dema

of the Company accompanied by an Officers' Certificate and Opinion of Counsel and at the cost and expense of the Company.

SECTION 8.02 Repayment of the Company. The Trustee and the Paying Agent shall return to the Company upon written request any money or securities held by them for the payment of any amount with respect to the Note that remains unclaimed for two years, subject to applicable unclaimed property law. After return to the Company, Holders entitled to the money or securities must look to the Company for payment as general creditors unless an applicable abandoned property law designates another person and the Trustee and the Payin

59

<PAGE>

Agent shall have no further liability to the Noteholders with respect to such money or securities for that period commencing after the return thereof.

ARTICLE 9

AMENDMENTS

SECTION 9.01 Without Consent of Holders. The Company and the Trustee may amend this Indenture or the Notes without the consent of any Noteholder for the purposes of, among other things:

(1)     adding to the Company's covenants for the benefit o the Holders;

(2)     surrendering any right or power conferred upon the Company;

(3)     providing for conversion rights of Holders if any reclassification or change of Common Stock or any consolidation, merg or sale of all or substantially all of the Company's assets occurs;

(4)     reducing the Conversion Price, provided that the reduction will not adversely affect the interests of Holders in any material respect;

(5)     complying with the requirements of the Commission i order to effect or maintain the qualification of this Indenture under the TIA;

(6)     making any changes or modifications to this Indentu necessary in connection with the registration of the Notes under the Securities Act as contemplated by the Registration Rights Agreement, provided that this action does not adversely affect the interests of the Holders in any material respect;

(7)     curing any ambiguity, omission, inconsistency or correcting or supplementing any defective provision contained in this Indenture; provided that such modification or amendment does not, in the good faith opinion of the Board of Directors and the Trustee, adversely affect the interests of the Holders in any material respect

(8)     modifying any provision herein or the Notes in orde to conform the corresponding provision to the description set forth i

the offering memorandum relating to the Notes, dated October 8, 2003;

(9)      adding or modifying any other provisions which the Company and the Trustee may deem necessary or desirable and which wil not adversely affect the interests of the Holders in any material respect;

(10)      complying with Article 5; or

(11)      providing for uncertificated Notes in addition to t Certificated Notes so long as such uncertificated Notes are in registered form for purposes of the Internal Revenue Code of 1986, as amended.

60

<PAGE>

SECTION 9.02 With Consent of Holders. With the written conse of the Holders of at least a majority in aggregate principal amount of the Not at the time outstanding or by the adoption of a resolution at a meeting of Holders at which a quorum is present by at least a majority in aggregate principal amount of the Notes represented at the meeting, the Company may modi and amend this Indenture or the Notes and waive noncompliance by the Company. However, without the written consent of each Noteholder affected, a modification, amendment or waiver to this Indenture or the Notes may not:

(1)      change the maturity of the principal of or any installment of interest on any Note (including any payment of Liquidated Damages);

(2)      reduce the principal amount of, or interest on (including any payment of Liquidated Damages), any Note;

(3)      reduce the Interest Rate or interest (including any Liquidated Damages) on any Note;

(4)      change the currency of payment of principal of or interest (including any Liquidated Damages) of any Note;

(5)      impair the right to institute suit for the enforcement of any payment on or with respect to, or conversion of, a Note;

(6)      except as otherwise permitted or contemplated by provisions of this Indenture concerning corporate reorganizations, adversely affect the repurchase option of Holders upon a Change in Control or the conversion rights of Holders;

(7)      modify the provisions of this Indenture relating to the pledge of securities as contemplated in Article 12 in a manner adverse to the Holders;

(8)      modify the subordination provisions of the Notes in manner adverse to the Holders; or

(9)      reduce the percentage in aggregate principal amount of Notes outstanding necessary to modify or amend this Indenture or t

waive any past Default.

It shall not be necessary for the Holders to approve the particular form of any proposed amendment in their written consent or resoluti pursuant to this Section 9.02, but it shall be sufficient if such consent approves the substance thereof.

After an amendment under this Section 9.02 becomes effective the Company shall mail to each Holder a notice briefly describing the amendmen

SECTION 9.03 Compliance with Trust Indenture Act. Every supplemental indenture executed pursuant to this Article shall comply with the TIA.

SECTION 9.04 Revocation and Effect of Consents, Waivers and Actions. Until an amendment, waiver or other action by Holders becomes effective, a consent thereto by a

61

<PAGE>

Holder of a Note hereunder is a continuing consent by the Holder and every subsequent Holder of that Note or portion of the Note that evidences the same obligation as the consenting Holder's Note, even if notation of the consent, waiver or action is not made on the Note. However, any such Holder or subseque Holder may revoke the consent, waiver or action as to such Holder's Note or portion of the Note if the Trustee receives the notice of revocation before th date the amendment, waiver or action becomes effective. After an amendment, waiver or action becomes effective, it shall bind every Noteholder.

SECTION 9.05 Notation on or Exchange of Notes. Notes authenticated and delivered after the execution of any supplemental indenture pursuant to this Article 9 may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Company shall so determine, new Notes so modifi as to conform, in the opinion of the Board of Directors, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for outstanding Notes.

SECTION 9.06 Trustee to Sign Supplemental Indentures. The Trustee shall sign any supplemental indenture authorized pursuant to this Article 9 if the amendment contained therein does not adversely affect the rights, duties, liabilities or immunities of the Trustee. If it does, the Trustee may, but need not, sign such supplemental indenture. In signing such supplemental indenture the Trustee shall be entitled to receive, and (subject the provisions of Section 7.01) shall be fully protected in relying upon, an Officers' Certificate and an Opinion of Counsel stating that such amendment is authorized or permitted by this Indenture.

SECTION 9.07 Effect of Supplemental Indentures. Upon the execution of any supplemental indenture under this Article 9, this Indenture shall be modified in accordance therewith, and such supplemental indenture sha form a part of this Indenture for all purposes; and every Holder of Notes theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

ARTICLE 10

CONVERSION

SECTION 10.01 Conversion Right and Conversion Price. Subject to and upon compliance with the provisions of this Article 10, at the option o the Holder thereof, any Note or any portion of the principal amount thereof which is a whole multiple of $1,000 may be converted at the principal amount thereof, or of such portion thereof, into duly authorized, fully paid and nonassessable shares of Common Stock, at the Conversion Price, determined as hereinafter provided, in effect at the time of conversion. Such conversion rig shall expire at the close of business on the date of the Stated Maturity of th Notes.

In case a Note or portion thereof is called for redemption, such conversion right in respect of the Note or the portion so called, shall expire at the close of business on the Business Day preceding the applicable Provisional Redemption Date, unless the Company defaults in making the payment due upon redemption. In the case of (i) a Put Right Repurchase Date or (ii) a Change in Control, in each case for which the Holder exercises its repurchase right with respect

62

<PAGE>

to a Note or portion thereof, such conversion right in respect of the Note or portion thereof shall expire at the close of business on the Business Day immediately preceding the Put Right Repurchase Date or Change in Control Repurchase Date, as applicable.

The price at which shares of Common Stock shall be delivered upon conversion (the "Conversion Price") shall be initially equal to $3.705 pe share of Common Stock. The Conversion Price shall be adjusted in certain instances as provided in paragraphs (a), (b), (c), (d), (e), (f), (h) and (i) Section 10.04 and Section 10.12 hereof.

In all events, upon the delivery by the Company to the Holde of the full number of the shares of Common Stock into which the Notes are convertible, together with any cash payment for the Holders' fractional shares the obligation of the Company to pay the principal amount of the Notes and any accrued and unpaid interest thereon shall be deemed satisfied. Accrued and unpaid interest shall be deemed paid in full rather than cancelled, extinguish or forfeited.

SECTION 10.02 Exercise of Conversion Right. To exercise the conversion right, the Holder of any Note to be converted shall surrender such Note duly endorsed or assigned to the Company or in blank, at the office of an Conversion Agent, accompanied by a duly signed conversion notice substantially in the form attached to the Note to the Company stating that the Holder elects to convert such Note or, if less than the entire principal amount thereof is t be converted, the portion thereof to be converted.

Notwithstanding the foregoing provision of this Section 10.0 if Notes are surrendered for conversion after the close of business on any Regular Record Date and on or prior to the next succeeding Interest Payment Date, the Holder of such Notes as of such Record Date shall receive the intere that is payable on such Notes on the applicable Interest Payment Date. However Notes that are surrendered for conversion after the close of business on any

Regular Record Date, but on or prior to the opening of business on the next succeeding Interest Payment Date shall be accompanied by payment in New York Clearing House funds or other funds acceptable to the Company of an amount equ to the interest to be received on such Interest Payment Date on the principal amount of Notes being surrendered for conversion, unless such Notes have been called for redemption on the applicable Provisional Redemption Date that occur after that Regular Record Date and on or prior to the third Business Day after that Interest Payment Date, in which case no payment shall be required.

Notes shall be deemed to have been converted immediately pri to the close of business on the day of surrender of such Notes for conversion accordance with the foregoing provisions, and at such time the rights of the Holders of such Notes as Holders shall cease, and the Person or Persons entitl to receive the Common Stock issuable upon conversion shall be treated for all purposes as the record holder or holders of such Common Stock at such time. As promptly as practicable on or after the conversion date, the Company shall cau to be issued and delivered to such Conversion Agent a certificate or certificates for the number of full shares of Common Stock issuable upon conversion, together with payment in lieu of any fraction of a share as provid in Section 10.03 hereof.

63

<PAGE>

In the case of any Note which is converted in part only, upo such conversion the Company shall execute and the Trustee shall authenticate a deliver to the Holder thereof, at the expense of the Company, a new Note or Notes of authorized denominations in aggregate principal amount equal to the unconverted portion of the principal amount of such Notes.

If shares of Common Stock to be issued upon conversion of a Restricted Note, or securities to be issued upon conversion of a Restricted No in part only, are to be registered in a name other than that of the Holder of such Restricted Note, such Holder must deliver to the Conversion Agent a certificate in substantially the form set forth in the form of Note set forth Exhibit A annexed hereto, dated the date of surrender of such Restricted Note and signed by such Holder, as to compliance with the restrictions on transfer applicable to such Restricted Note. Neither the Trustee nor any Conversion Agent, Registrar or Transfer Agent shall be required to register in a name oth than that of the Holder shares of Common Stock or Notes issued upon conversion of any such Restricted Note not so accompanied by a properly completed certificate.

The Company hereby initially appoints the Trustee as the Conversion Agent.

SECTION 10.03 Fractions of Shares. No fractional shares of Common Stock shall be issued upon conversion of any Note or Notes. If more tha one Note shall be surrendered for conversion at one time by the same Holder, t number of full shares which shall be issued upon conversion thereof shall be computed on the basis of the aggregate principal amount of the Notes (or specified portions thereof) so surrendered. Instead of any fractional share of Common Stock which would otherwise be issued upon conversion of any Note or Notes (or specified portions thereof), the Company shall pay a cash adjustment in respect of such fraction (calculated to the nearest one-100th of a share) i an amount equal to the same fraction of the quoted price of the Common Stock a of the Trading Day preceding the date of conversion.

SECTION 10.04 Adjustment of Conversion Price. The Conversion Price shall be subject to adjustments, calculated by the Company, from time to time as follows:

(a)      In case the Company shall hereafter pay a dividend or make a distribution to all holders of the outstanding Common Stock in shares of Commo Stock, the Conversion Price in effect at the opening of business on the date following the date fixed for the determination of stockholders entitled to receive such dividend or other distribution shall be reduced by multiplying su Conversion Price by a fraction:

(1)      the numerator of which shall be the number of share of Common Stock outstanding at the close of business on the Record Da (as defined in Section 10.04(g)) fixed for such determination, and

(2)      the denominator of which shall be the sum of such number of shares and the total number of shares constituting such dividend or other distribution.

Such reduction shall become effective immediately after the opening of busines on the day following the Record Date. If any dividend or distribution of the type described in this Section 10.04(a) is declared but not so paid or made, t Conversion Price shall again be adjusted to the

64

<PAGE>

Conversion Price which would then be in effect if such dividend or distributio had not been declared.

(b)      In case the outstanding shares of Common Stock shall be subdivided into a greater number of shares of Common Stock, the Conversion Pri in effect at the opening of business on the day following the day upon which such subdivision becomes effective shall be proportionately reduced, and conversely, in case outstanding shares of Common Stock shall be combined into smaller number of shares of Common Stock, the Conversion Price in effect at th opening of business on the day following the day upon which such combination becomes effective shall be proportionately increased, such reduction or increase, as the case may be, to become effective immediately after the openin of business on the day following the day upon which such subdivision or combination becomes effective.

(c)      In case the Company shall issue rights or warrants (other th any rights or warrants referred to in Section 10.04(d)) to all holders of its outstanding shares of Common Stock entitling them to subscribe for or purchase shares of Common Stock (or securities convertible into Common Stock) at a pric per share (or having a conversion price per share) less than the Current Marke Price (as defined in Section 10.04(g)) on the Record Date fixed for the determination of stockholders entitled to receive such rights or warrants, the Conversion Price shall be adjusted so that the same shall equal the price determined by multiplying the Conversion Price in effect at the opening of business on the date after such Record Date by a fraction:

(1)      the numerator of which shall be the number of share of Common Stock outstanding at the close of business on the Record Da plus the number of shares which the aggregate offering price of the

total number of shares so offered for subscription or purchase (or th
aggregate conversion price of the convertible securities so offered)
would purchase at such Current Market Price, and

       (2)     the denominator of which shall be the number of
shares of Common Stock outstanding on the close of business on the
Record Date plus the total number of additional shares of Common Stoc
so offered for subscription or purchase (or into which the convertibl
securities so offered are convertible).

Such adjustment shall become effective immediately after the opening of busine
on the day following the Record Date fixed for determination of stockholders
entitled to receive such rights or warrants. To the extent that shares of Comm
Stock (or securities convertible into Common Stock) are not delivered pursuant
to such rights or warrants, upon the expiration or termination of such rights
warrants the Conversion Price shall be readjusted to the Conversion Price whic
would then be in effect had the adjustments made upon the issuance of such
rights or warrants been made on the basis of the delivery of only the number o
shares of Common Stock (or securities convertible into Common Stock) actually
delivered. In the event that such rights or warrants are not so issued, the
Conversion Price shall again be adjusted to be the Conversion Price which woul
then be in effect if such date fixed for the determination of stockholders
entitled to receive such rights or warrants had not been fixed. In determining
whether any rights or warrants entitle the holders to subscribe for or purchas
shares of Common Stock at less than such Current Market Price, and in
determining the aggregate offering price of such shares of Common Stock, there
shall be taken into account any consideration received for such rights or

<div align="center">65</div>

&lt;PAGE&gt;

warrants, the value of such consideration if other than cash, to be determined
by the Board of Directors.

       (d)     In case the Company shall, by dividend or otherwise,
distribute to all holders of its Common Stock shares of any class of capital
stock of the Company (other than any dividends or distributions to which Secti
10.04(a) applies) or evidences of its indebtedness or other assets, including
securities, but excluding (1) any rights or warrants referred to in Section
10.04(c), (2) any dividends or distributions in connection with a
reclassification, change, merger, consolidation, statutory share exchange,
combination, sale or conveyance to which Section 10.11 hereof applies and (3)
dividends and distributions paid exclusively in cash (the securities described
in foregoing clauses (1), (2) and (3) hereinafter in this Section 10.04(d)
called the "excluded securities"), then, in each such case, subject to the
second succeeding paragraph of this Section 10.04(d), the Conversion Price sha
be adjusted so that the same shall be equal to the price determined by
multiplying the Conversion Price in effect immediately prior to the close of
business on the Record Date (as defined in Section 10.04(g)) with respect to
such distribution by a fraction:

       (1)     the numerator of which shall be the Current Market
Price (determined as provided in Section 10.04(g)) on such date less
the fair market value (as determined by the Board of Directors, whose
determination shall be conclusive and set forth in a Board Resolution
on such date of the portion of the securities so distributed (other
than excluded securities) applicable to one share of Common Stock

(determined on the basis of the number of shares of the Common Stock outstanding on the Record Date), and

(2)        the denominator of which shall be such Current Mark Price.

Such reduction shall become effective immediately prior to the opening of business on the day following the Record Date. However, in the event that the then fair market value (as so determined) of the portion of the securities so distributed (other than excluded securities) applicable to one share of Common Stock is equal to or greater than the Current Market Price on the Record Date, in lieu of the foregoing adjustment, adequate provision shall be made so that each Holder shall have the right to receive upon conversion of a Note (or any portion thereof) the amount of securities so distributed (other than excluded securities) such Holder would have received had such Holder converted such Not (or portion thereof) immediately prior to such Record Date. In the event that such dividend or distribution is not so paid or made, the Conversion Price sha again be adjusted to be the Conversion Price that would then be in effect if such dividend or distribution had not been declared.

If the Board of Directors determines the fair market value o any distribution for purposes of this Section 10.04(d) by reference to the actual or when issued trading market for any securities comprising all or part of such distribution (other than excluded securities), it must in doing so consider the prices in such market over the same period (the "Reference Period used in computing the Current Market Price pursuant to Section 10.04(g) to the extent possible, unless the Board of Directors in a Board Resolution determine in good faith that determining the fair market value during the Reference Peri would not be in the best interest of the Holder.

66

<PAGE>

Rights or warrants distributed by the Company to all holders of Common Stock entitling the holders thereof to subscribe for or purchase shares of the Company's Capital Stock (either initially or under certain circumstances), which rights or warrants, until the occurrence of a specified event or events ("Trigger Event"):

(i)        are deemed to be transferred with such shares of Common Stock;

(ii)       are not exercisable; and

(iii)      are also issued in respect of future issuances of Common Stock,

shall be deemed not to have been distributed for purposes of this Section 10.04(d) (and no adjustment to the Conversion Price under this Section 10.04(d will be required) until the occurrence of the earliest Trigger Event. If such right or warrant is subject to subsequent events, upon the occurrence of which such right or warrant shall become exercisable to purchase different securitie evidences of indebtedness or other assets or entitle the holder to purchase a different number or amount of the foregoing or to purchase any of the foregoin at a different purchase price, then the occurrence of each such event shall be deemed to be the date of issuance and record date with respect to a new right warrant (and a termination or expiration of the existing right or warrant

without exercise by the holder thereof). In addition, in the event of any distribution (or deemed distribution) of rights or warrants, or any Trigger Event or other event (of the type described in the preceding sentence) with respect thereto, that resulted in an adjustment to the Conversion Price under this Section 10.04(d):

      (3)    in the case of any such rights or warrants which shall all have been redeemed or repurchased without exercise by any holders thereof, the Conversion Price shall be readjusted upon such final redemption or repurchase to give effect to such distribution or Trigger Event, as the case may be, as though it were a cash distribution, equal to the per share redemption or repurchase price received by a holder of Common Stock with respect to such rights or warrant (assuming such holder had retained such rights or warrants), made to all holders of Common Stock as of the date of such redemption or repurchase, and

      (4)    in the case of such rights or warrants all of which shall have expired or been terminated without exercise, the Conversio Price shall be readjusted as if such rights and warrants had never be issued.

      For purposes of this Section 10.04(d) and Sections 10.04(a), 10.04(b) and 10.04(c), any dividend or distribution to which this Section 10.04(d) is applicable that also includes shares of Common Stock, a subdivisio or combination of Common Stock to which Section 10.04(b) applies, or rights or warrants to subscribe for or purchase shares of Common Stock to which Section 10.04(c) applies (or any combination thereof), shall be deemed instead to be:

      (5)    a dividend or distribution of the evidences of indebtedness, assets, shares of capital stock, rights or warrants oth than such shares of Common Stock, such subdivision or combination or such rights or warrants to which Sections 10.04(a), 10.04(b) and 10.04(c) apply, respectively (and any Conversion Price reduction required

<div align="center">67</div>

&lt;PAGE&gt;

by this Section 10.04(d) with respect to such dividend or distributio shall then be made), immediately followed by

      (6)    a dividend or distribution of such shares of Common Stock, such subdivision or combination or such rights or warrants (an any further Conversion Price reduction required by Sections 10.04(a), 10.04(b) and 10.04(c) with respect to such dividend or distribution shall then be made), except:

      (A)    the Record Date of such dividend distribution shall be substituted as (x) "the date fixed for the determination of stockholders entitle to receive such dividend or other distribution", "Record Date fixed for such determinations" and "Record Date" within the meaning of Section 10.04(a (y) "the day upon which such subdivision becomes effective" and "the day upon which such combination becomes effective" within the meaning of Section

10.04(b), and (z) as "the date fixed for the determination of stockholders entitled to receive such rights or warrants", "the Record Date fixed fo the determination of the stockholders entitled to receive such rights or warrants" and such "Record Date" within the meaning of Section 10.04(c), and

(B)        any shares of Common Stock includ in such dividend or distribution shall not be deeme "outstanding at the close of business on the date fixed for such determination" within the meaning of Section 10.04(a) and any reduction or increase in t number of shares of Common Stock resulting from suc subdivision or combination shall be disregarded in connection with such dividend or distribution.

(e)        In case the Company shall, by dividend or otherwise distribute to all holders of its Common Stock cash (excluding any cash that is distributed upon a reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance to which Section 10.11 hereof applies or as part of a distribution referred to in Section 10.04(d) hereof), then and in each such case, immediately after the close of business on such date, the Conversion Price shall be reduced so that the same shall equal the price determined by multiplying the Conversion Price in effect immediately pri to the close of business on such Record Date by a fraction:

(i)        the numerator of which shall be equal to the Curren Market Price on the Record Date less an amount equal to the quotient (x) the amount of such cash dividend or distribution and (y) the numb of shares of Common Stock outstanding on the Record Date, and

(ii)        the denominator of which shall be equal to the Current Market Price on such date.

However, in the event that the amount of such cash dividend or distribution applicable to one share of Common Stock is equal to or greater than the Curren Market Price on the Record Date, in lieu of the foregoing adjustment, adequate provision shall be made so that each Holder shall

68

<PAGE>

have the right to receive upon conversion of a Note (or any portion thereof) t amount of cash such Holder would have received had such Holder converted such Note (or portion thereof) immediately prior to such Record Date. In the event that such cash dividend or distribution is not so paid or made, the Conversion Price shall again be adjusted to be the Conversion Price that would then be in effect if such cash dividend or distribution had not been declared.

(f)        In case a tender offer or exchange offer made by th Company or any of its Subsidiaries for all or any portion of the Common Stock shall expire and such tender offer or exchange offer (as amended upon the expiration thereof) shall require the payment to stockholders (based on the acceptance (up to any maximum specified in the terms of the tender offer or exchange offer) of Purchased Shares (as defined below)) of cash and other consideration having a fair market value (as determined by the Board of Directors, whose determination shall be conclusive and set forth in a Board

Resolution) exceeding the Current Market Price (determined as provided in Section 10.04(g)) as of the last time (the "Expiration Time") tenders or exchanges could have been made pursuant to such tender offer or exchange offer (as it may be amended) times the number of shares of Common Stock outstanding (including any tendered shares or exchanged shares) on the Expiration Time, then, and in each such case, immediately prior to the opening of business on t day after the date of the Expiration Time, the Conversion Price shall be adjusted so that the same shall equal the price determined by multiplying the Conversion Price in effect immediately prior to close of business on the date the Expiration Time by a fraction:

           (i)      the numerator of which shall be the number of shares of Common Stock outstanding (including any tendere or exchanged shares) at the Expiration Time multiplied by th Current Market Price of the Common Stock on the Trading Day next succeeding the Expiration Time, and

           (ii)      the denominator shall be the sum of (x) th fair market value (determined as aforesaid) of the aggregate cash and other consideration payable to stockholders based o the acceptance (up to any maximum specified in the terms of the tender offer or exchange offer) of all shares validly tendered or exchanged and not withdrawn as of the Expiration Time (the shares deemed so accepted, up to any such maximum, being referred to as the "Purchased Shares") and (y) the product of the number of shares of Common Stock outstanding (less any Purchased Shares) on the Expiration Time and the Current Market Price of the Common Stock on the Trading Day next succeeding the Expiration Time.

Such reduction (if any) shall become effective immediately prior to the openin of business on the day following the Expiration Time. In the event that the Company is obligated to repurchase shares pursuant to any such tender offer or exchange offer, but the Company is permanently prevented by applicable law fro effecting any such repurchases or all such repurchases are rescinded, the Conversion Price shall again be adjusted to be the Conversion Price which woul then be in effect if such tender offer or exchange offer had not been made. If the application of this Section 10.04(f) to any tender offer or exchange offer would result in an increase in the Conversion Price, no adjustment shall be ma for such tender offer or exchange offer under this Section 10.04(f).

69

<PAGE>

      (g)      For purposes of this Section 10.04, the following terms shal have the meanings indicated:

        (1)      "Current Market Price" shall mean the average of th daily Closing Prices per share of Common Stock for the ten consecutiv Trading Days immediately prior to the date in question; provided, however, that if:

           (i)      the "ex" date (as hereinafter defined) for any event (other than the issuance or distribution requiring such computation) that requires an adjustment to the Conversion Price pursuant to Section 10.04(a), (b), (c), (d) (e) or (f) occurs during such ten consecutive Trading Days,

the Closing Price for each Trading Day prior to the "ex" dat
for such other event shall be adjusted by multiplying such
Closing Price by the same fraction by which the Conversion
Price is so required to be adjusted as a result of such othe
event;

(ii)    the "ex" date for any event (other than th
issuance or distribution requiring such computation) that
requires an adjustment to the Conversion Price pursuant to
Section 10.04(a), (b), (c), (d), (e) or (f) occurs on or aft
the "ex" date for the issuance or distribution requiring suc
computation and prior to the day in question, the Closing
Price for each Trading Day on and after the "ex" date for su
other event shall be adjusted by multiplying such Closing
Price by the reciprocal of the fraction by which the
Conversion Price is so required to be adjusted as a result o
such other event; and

(iii)    the "ex" date for the issuance or
distribution requiring such computation is prior to the day
question, after taking into account any adjustment required
pursuant to clause (i) or (ii) of this proviso, the Closing
Price for each Trading Day on or after such "ex" date shall
adjusted by adding thereto the amount of any cash and the fa
market value (as determined by the Board of Directors in a
manner consistent with any determination of such value for
purposes of Section 10.04(d) or (f), whose determination sha
be conclusive and set forth in a Board Resolution) of the
evidences of indebtedness, shares of capital stock or assets
being distributed applicable to one share of Common Stock as
of the close of business on the day before such "ex" date.

For purposes of any computation under Section 10.04(f), the Current Market Pri
of the Common Stock on any date shall be deemed to be the average of the daily
Closing Prices per share of Common Stock for such day and the next two
succeeding Trading Days; provided, however, that if the "ex" date for any even
(other than the tender offer requiring such computation) that requires an
adjustment to the Conversion Price pursuant to Section 10.04(a), (b), (c), (d)
(e) or (f) occurs on or after the Expiration Time for the tender or exchange
offer requiring such computation and prior to the day in question, the Closing
Price for each Trading Day on and after the "ex" date for such other event sha
be adjusted by multiplying such Closing Price by the reciprocal of the fractio
by which the Conversion Price is so required to be adjusted as a result of suc
other event. For purposes of this paragraph, the term "ex" date, when used:

70

<PAGE>

(A)    with respect to any issuance or distribution, means
the first date on which the Common Stock trades regular way on the
relevant exchange or in the relevant market from which the Closing
Price was obtained without the right to receive such issuance or
distribution;

(B)    with respect to any subdivision or combination of
shares of Common Stock, means the first date on which the Common Stoc
trades regular way on such exchange or in such market after the time

which such subdivision or combination becomes effective, and

(C)    with respect to any tender or exchange offer, means the first date on which the Common Stock trades regular way on such exchange or in such market after the Expiration Time of such offer.

Notwithstanding the foregoing, whenever successive adjustments to the Conversi Price are called for pursuant to this Section 10.04, such adjustments shall be made to the Current Market Price as may be necessary or appropriate to effectuate the intent of this Section 10.04 and to avoid unjust or inequitable results as determined in good faith by the Board of Directors.

(2)    "fair market value" shall mean the amount that a willing buyer would pay a willing seller in an arm's length transaction.

(3)    "Record Date" shall mean, with respect to any dividend, distribution or other transaction or event in which the holders of Common Stock have the right to receive any cash, securitie or other property or in which the Common Stock (or other applicable security) is exchanged for or converted into any combination of cash, securities or other property, the date fixed for determination of stockholders entitled to receive such cash, securities or other property (whether such date is fixed by the Board of Directors or by statute, contract or otherwise).

(h)    The Company may make such reductions in the Conversion Price, in addition to those required by Section 10.04(a), (b), (c), (d), (e) or (f), as the Board of Directors considers to be advisable to avoid diminish any income tax to holders of Common Stock or rights to purchase Commo Stock resulting from any dividend or distribution of stock (or rights to acqui stock) or from any event treated as such for income tax purposes.

To the extent permitted by applicable law, the Company from time to time may reduce the Conversion Price by any amount for any period of time if the period is at least 20 days and the reduction is irrevocable during the period and the Board of Directors determines in good faith that such reduction would be in the best interests of the Company, which determination shall be conclusive and set forth in a Board Resolution. Whenever the Conversi Price is reduced pursuant to the preceding sentence, the Company shall mail to the Trustee and each Holder at the address of such Holder as it appears in the Register a notice of the reduction at least 15 days prior to the date the reduced Conversion Price takes effect, and such notice shall state the reduced Conversion Price and the period during which it will be in effect.

(i)    No adjustment in the Conversion Price shall be required unless such adjustment would require an increase or decrease of at least 1% in the Conversion Price then in

71

<PAGE>

effect; provided, however, that any adjustments which by reason of this Sectio 10.04(i) are not required to be made shall be carried forward and taken into account in any subsequent adjustment. All calculations under this Article 10 shall be made by the Company and shall be made to the nearest cent or to the nearest one hundredth of a share, as the case may be. No adjustment need be ma

for a change in the par value or no par value of the Common Stock.

(j)    In any case in which this Section 10.04 provides th
an adjustment shall become effective immediately after a Record Date for an
event, the Company may defer until the occurrence of such event (i) issuing to
the Holder of any Note converted after such Record Date and before the
occurrence of such event the additional shares of Common Stock issuable upon
such conversion by reason of the adjustment required by such event over and
above the Common Stock issuable upon such conversion before giving effect to
such adjustment and (ii) paying to such holder any amount in cash in lieu of a
fraction pursuant to Section 10.03 hereof.

(k)    For purposes of this Section 10.04, the number of
shares of Common Stock at any time outstanding shall not include shares held i
the treasury of the Company but shall include shares issuable in respect of
scrip certificates issued in lieu of fractions of shares of Common Stock. The
Company will not pay any dividend or make any distribution on shares of Common
Stock held in the treasury of the Company.

SECTION 10.05 Notice of Adjustments of Conversion Price.
Whenever the Conversion Price is adjusted as herein provided (other than in th
case of an adjustment pursuant to the second paragraph of Section 10.04(h) for
which the notice required by such paragraph has been provided), the Company
shall promptly file with the Trustee and any Conversion Agent other than the
Trustee an Officers' Certificate setting forth the adjusted Conversion Price a
showing in reasonable detail the facts upon which such adjustment is based.
Promptly after delivery of such Officers' Certificate, the Company shall prepa
a notice stating that the Conversion Price has been adjusted and setting forth
the adjusted Conversion Price and the date on which each adjustment becomes
effective, and shall mail such notice to each Holder at the address of such
Holder as it appears in the Register within 20 days of the effective date of
such adjustment. Failure to deliver such notice shall not effect the legality
validity of any such adjustment.

SECTION 10.06 Notice Prior to Certain Actions. In case at an
time after the date hereof:

(1)    the Company shall declare a dividend (or any other
distribution) on its Common Stock payable otherwise than in cash out
its capital surplus or its consolidated retained earnings;

(2)    the Company shall authorize the granting to the
holders of its Common Stock of rights or warrants to subscribe for or
purchase any shares of capital stock of any class (or of securities
convertible into shares of capital stock of any class) or of any othe
rights;

(3)    there shall occur any reclassification of the Commo
Stock of the Company (other than a subdivision or combination of its
outstanding Common Stock, a

72

<PAGE>

change in par value, a change from par value to no par value or a
change from no par value to par value), or any merger, consolidation,
statutory share exchange or combination to which the Company is a par

and for which approval of any shareholders of the Company is required or the sale, transfer or conveyance of all or substantially all of th assets of the Company; or

(4)      there shall occur the voluntary or involuntary dissolution, liquidation or winding up of the Company;

the Company shall cause to be filed at each office or agency maintained for th purpose of conversion of Notes pursuant to Section 4.05 hereof, and shall caus to be provided to the Trustee and all Holders in accordance with Section 10.02 hereof, at least 20 days (or 10 days in any case specified in clause (1) or (2 above) prior to the applicable record or effective date hereinafter specified, notice stating:

(A)      the date on which a record is to taken for the purpose of such dividend, distributio rights or warrants, or, if a record is not to be taken, the date as of which the holders of Common Stock of record to be entitled to such dividend, distribution, rights or warrants are to be determined, or

(B)      the date on which such reclassification, merger, consolidation, statutory share exchange, combination, sale, transfer, conveyance, dissolution, liquidation or winding up expected to become effective, and the date as of which it is expected that holders of Common Stock o record shall be entitled to exchange their shares o Common Stock for securities, cash or other property deliverable upon such reclassification, merger, consolidation, statutory share exchange, sale, transfer, dissolution, liquidation or winding up.

Neither the failure to give such notice nor any defect there shall affect the legality or validity of the proceedings or actions described clauses (1) through (4) of this Section 10.06.

SECTION 10.07 Company to Reserve Common Stock. The Company shall at all times use its best efforts to reserve and keep available, free fr preemptive rights, out of its authorized but unissued Common Stock, for the purpose of effecting the conversion of Notes, the full number of shares of ful paid and nonassessable Common Stock then issuable upon the conversion of all Notes outstanding.

SECTION 10.08 Taxes on Conversions. Except as provided in th next sentence, the Company will pay any and all taxes (other than taxes on income) and duties that may be payable in respect of the issue or delivery of shares of Common Stock on conversion of Notes pursuant hereto. A Holder delivering a Note for conversion shall be liable for and will be required to p any tax or duty which may be payable in respect of any transfer involved in th issue and delivery of shares of Common Stock in a name other than that of the Holder of the Note or Notes to be converted, and no such issue or delivery sha be made unless the Person

73

<PAGE>

requesting such issue has paid to the Company the amount of any such tax or duty, or has established to the satisfaction of the Company that such tax or duty has been paid.

SECTION 10.09 Covenant as to Common Stock. The Company covenants that all shares of Common Stock which may be issued upon conversion Notes will upon issue be fully paid and nonassessable and, except as provided Section 10.08, the Company will pay all taxes, liens and charges with respect the issue thereof.

SECTION 10.10 Cancellation of Converted Notes. All Notes delivered for conversion shall be delivered to the Trustee to be canceled by o at the direction of the Trustee, which shall dispose of the same as provided i Section 2.10.

SECTION 10.11 Effect of Reclassification, Consolidation, Merger or Sale. If any of following events occur, namely:

(1)      any reclassification or change of the outstanding shares of Common Stock (other than a change in par value, or from par value to no par value, or from no par value to par value, or as a result of a subdivision or combination),

(2)      any merger, consolidation, statutory share exchange or combination of the Company with another corporation as a result of which holders of Common Stock shall be entitled to receive stock, securities or other property or assets (including cash) with respect or in exchange for such Common Stock or

(3)      any sale or conveyance of the properties and assets of the Company as, or substantially as, an entirety to any other corporation as a result of which holders of Common Stock shall be entitled to receive stock, securities or other property or assets (including cash) with respect to or in exchange for such Common Stock

the Company or the successor or purchasing corporation, as the case may be, shall execute with the Trustee a supplemental indenture (which shall comply wi the TIA as in force at the date of execution of such supplemental indenture if such supplemental indenture is then required to so comply) providing that the Note shall be convertible into the kind and amount of shares of stock and othe securities or property or assets (including cash) which the Holders would have been entitled to receive upon such reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance had t Notes been converted into Common Stock immediately prior to such reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance assuming such holder of Common Stock did not exercise its rights of election, if any, as to the kind or amount of securitie cash or other property receivable upon such reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance (provided that, if the kind or amount of securities, cash or other property receivable upon such reclassification, change, merger, consolidation, statutor share exchange, combination, sale or conveyance is not the same for each share of Common Stock in respect of which such rights of election shall not have bee exercised ("Non-Electing Share"), then for the purposes of this Section 10.11 the kind and amount of securities, cash or other property receivable upon such reclassification, change, merger, consolidation, statutory share exchange,

combination, sale or conveyance for each Non-Electing Share shall be deemed to be

74

<PAGE>

the kind and amount so receivable per share by a plurality of the Non-Electing Shares). Such supplemental indenture shall provide for adjustments that shall as nearly equivalent as may be practicable to the adjustments provided for in this Article 10. If, in the case of any such reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance, the stock or other securities and assets receivable thereupon by a holder of share of Common Stock includes shares of stock or other securities and assets of a corporation other than the successor or purchasing corporation, as the case ma be, in such reclassification, change, merger, consolidation, statutory share exchange, combination, sale or conveyance, then such supplemental indenture shall also be executed by such other corporation and shall contain such additional provisions to protect the interests of the Holders of the Notes as the Board of Directors shall reasonably consider necessary by reason of the foregoing, including to the extent practicable the provisions providing for th repurchase rights set forth in Section 3.09 or Section 3.10, as the case may b hereof.

The Company shall cause notice of the execution of such supplemental indenture to be mailed to each Holder, at the address of such Holder as it appears on the Register, within 20 days after execution thereof. Failure to deliver such notice shall not affect the legality or validity of su supplemental indenture.

The above provisions of this Section 10.11 shall similarly apply to successive reclassifications, mergers, consolidations, statutory shar exchanges, combinations, sales and conveyances.

If this Section 10.11 applies to any event or occurrence, Section 10.04 hereof shall not apply.

SECTION 10.12 Adjustment for Other Distributions. If, after the Issue Date of the Notes, the Company pays a dividend or makes a distributi to all holders of its Common Stock consisting of Capital Stock of any class or series, or similar equity interests, of or relating to a Subsidiary or other business unit of the Company, the Conversion Price shall be adjusted in accordance with the formula:

$$P' = P \times 1/(1 + F/M)$$

where:

P' = the adjusted Conversion Price.

P = the current Conversion Price.

M = the average of the Post-Distribution Prices of the Common Stock for the 10 trading days commencing on and including the fifth trading day afte the date on which "ex-dividend trading" commences for such dividend or distribution on the principal United States exchange or market which such securities are then listed or quoted (the "Ex-Dividend Date").

F = the fair market value of the securities distributed in respect of

each share of Common Stock shall mean the number of securities distributed in respect of each share of Common Stock multiplied by the average of the Post-Distribution Prices of those securities distributed for the 10 trading da commencing on and including the fifth trading day after the Ex-Dividend Date.

75

<PAGE>

        "Post-Distribution Price" of Capital Stock or any similar equity interest on any date means the closing per unit sale price (or, if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and the average a prices) on such date for trading of such units on a "when issued" basis withou due bills (or similar concept) as reported in the composite transactions for t principal United States securities exchange or market on which such Capital Stock or equity interest is traded or, if the Capital Stock or equity interest as the case may be, is not listed on a United States national or regional securities exchange or market, as reported by the National Association of Securities Dealers Automated Quotation System or by the National Quotation Bureau Incorporated; provided that if on any date such units have not traded o a "when issued" basis, the Post-Distribution Price shall be the closing per un sale price (or, if no closing sale price is reported, the average of the bid a ask prices or, if more than one in either case, the average of the average bid and the average ask prices) on such date for trading of such units on a "regul way" basis without due bills (or similar concept) as reported in the composite transactions for the principal United States securities exchange on which such Capital Stock or equity interest is traded or, if the Capital Stock or equity interest, as the case may be, is not listed on a United States national or regional securities exchange, as reported by the National Association of Securities Dealers Automated Quotation System or by the National Quotation Bureau Incorporated. In the absence of such quotation, the Company shall be entitled to determine the Post-Distribution Price on the basis of such quotations, which reflect the post-distribution value of the Capital Stock or equity interests as it considers appropriate.

        SECTION 10.13 Responsibility of Trustee for Conversion Provisions. The Trustee, subject to the provisions of Section 7.01 hereof, and any Conversion Agent shall not at any time be under any duty or responsibility to any Holder of Notes to determine whether any facts exist which may require any adjustment of the Conversion Price, or with respect to the nature or inten of any such adjustments when made, or with respect to the method employed, or herein or in any supplemental indenture provided to be employed, in making the same. Neither the Trustee, subject to the provisions of Section 7.01 hereof, n any Conversion Agent shall be accountable with respect to the validity or valu (of the kind or amount) of any Common Stock, or of any other securities or property, which may at any time be issued or delivered upon the conversion of any Note; and it or they do not make any representation with respect thereto. Neither the Trustee, subject to the provisions of Section 7.01 hereof, nor any Conversion Agent shall be responsible for any failure of the Company to make a cash payment or to issue, transfer or deliver any shares of stock or share certificates or other securities or property upon the surrender of any Note fo the purpose of conversion; and the Trustee, subject to the provisions of Secti 7.01 hereof, and any Conversion Agent shall not be responsible or liable for a failure of the Company to comply with any of the covenants of the Company contained in this Article 10.

ARTICLE 11

SUBORDINATION

SECTION 11.01 Agreement to Subordinate. The Company agrees, and each Holder by accepting a Note agrees, that the indebtedness, interest (including Liquidated Damages, if any) and other obligations of any kind evidenced by the Notes and this Indenture are

76

<PAGE>

(i) subordinated in right of payment, to the extent and in the manner provided in this Article 11, to the prior payment in full in cash or cash equivalents ( otherwise to the extent holders of Senior Indebtedness accept satisfaction of amounts due by settlement in other than cash or cash equivalents) of all Senio Indebtedness (whether outstanding on the date hereof or hereafter created, incurred, assumed or guaranteed), except to the extent of the U.S. Government obligations (or the proceeds thereof) pledged as security for the exclusive benefit of the Holders pursuant to the Pledge Agreement, and (ii) that the subordination is for the benefit of the holders of Senior Indebtedness. Notwithstanding the foregoing, the Notes rank pari passu in right of payment with the Company's 5 1/4% convertible subordinated notes due 2008, except to t extent of the U.S. Government Obligations (or the proceeds thereof) pledged as security for the exclusive benefit of the Holders and the holders of the 5 1/4 convertible subordinated notes, as applicable.

SECTION 11.02 Liquidation; Dissolution; Bankruptcy. In the event of any insolvency or bankruptcy case or proceeding, or any receivership, liquidation, reorganization or other similar case or proceeding in connection therewith, relating to the Company or to its assets, or any liquidation, dissolution or other winding-up of the Company, whether voluntary or involuntary, or any assignment for the benefit of creditors or other marshalin of assets or liabilities of the Company (except in connection with the consolidation or merger of the Company or its liquidation or dissolution following the conveyance, transfer or lease of its properties and assets substantially upon the terms and conditions described in Article 5), the holde of Senior Indebtedness will be entitled to receive payment in full in cash or cash equivalents of all Senior Indebtedness (or otherwise to the extent holder of Senior Indebtedness accept satisfaction of amounts due by settlement in oth than cash or cash equivalents), or provision shall be made for such payment in full, before the Noteholders will be entitled to receive any payment or distribution of any kind or character (other than any payment or distribution (a) in the form of equity securities or subordinated securities of the Company or any successor obligor that, in the case of any such subordinated securities are subordinated in right of payment to all Senior Indebtedness that may at th time be outstanding to at least the same extent as the Notes are so subordinat (such equity securities or subordinated securities hereinafter being "Permitte Junior Securities") and (b) in the form of the Pledged Securities or the proceeds thereof) on account of principal of, or additional interest in the fo of Liquidated Damages if any, or interest on the Notes; and any payment or distribution of assets of the Company of any kind or character, whether in cas property or securities (other than a payment or distribution (a) in the form o Permitted Junior Securities and (b) in the form of the Pledged Securities or t proceeds thereof), by set-off or otherwise, to which the Noteholders or the Trustee would be entitled but for the provisions of this Article 11 shall be paid by the liquidating trustee or agent or other person making such payment o distribution, whether a trustee in bankruptcy, a receiver or liquidating trust

or otherwise, directly to the holders of Senior Indebtedness or their representative or representatives ratably according to the aggregate amounts remaining unpaid on account of the Senior Indebtedness to the extent necessary to make payment in full of all Senior Indebtedness remaining unpaid, after giving effect to any concurrent payment or distribution to the holders of such Senior Indebtedness.

SECTION 11.03 Default on Designated Senior Indebtedness. (a) No payment or distribution of any assets of the Company of any kind or character, whether in cash, property or securities (other than (a) Permitted Junior Securities and (b) in the form of the

77

<PAGE>

Pledged Securities or the proceeds thereof), may be made by or on behalf of th Company on account of principal of or interest or Liquidated Damages on the Notes or on account of the repurchase, redemption or other acquisition of Note upon the occurrence of any Payment Default until such Payment Default shall ha been cured or waived in writing or shall have ceased to exist or such Designat Senior Indebtedness shall have been discharged or paid in full in cash or cash equivalents (or otherwise to the extent holders of Senior Indebtedness accept satisfaction of amounts due by settlement in other than cash or cash equivalents). "Payment Default" shall mean a default in payment, whether at scheduled maturity, upon scheduled installment, by acceleration or otherwise, principal of or premium, if any, or interest on Designated Senior Indebtedness beyond any applicable grace period.

(b)      No payment or distribution of any assets of the Company of any kind or character, whether in cash, property or securities (oth than (a) Permitted Junior Securities and (b) in the form of the Pledged Securities or the proceeds thereof), may be made by or on behalf of the Compan on account of principal of or interest or Liquidated Damages, if any, on the Notes or on account of the repurchase, redemption or other acquisition of Note during a Payment Blockage Period (as defined below), upon the occurrence of an default or event of default with respect to any Designated Senior Indebtedness other than any Payment Default pursuant to which the maturity thereof may be accelerated (a "Non-Payment Default") and receipt by the Trustee of written notice thereof from the trustee or other representative of holders of Designat Senior Indebtedness.

The Payment Blockage Period shall mean the period (each, a "Payment Blockage Period") that will commence upon the date of receipt by the Trustee of written notice from the trustee or such other representative of the holders of the Designated Senior Indebtedness in respect of which the Non-Payment Default exists and shall end on the earliest of:

(i)      179 days thereafter (provided that any Designated Senior Indebtedness as to which notice was given shall not theretofor have been accelerated);

(ii)      the date on which such Non-Payment Default is cured waived or ceases to exist;

(iii)      the date on which such Designated Senior Indebtedne is discharged or paid in full; or

(iv)    the date on which such Payment Blockage Period shal have been terminated by written notice to the Trustee or the Company from the trustee or such other representative initiating such Payment Blockage Period,

after which the Company will resume making any and all required payments in respect of the Notes, including any missed payments. In any event, not more th one Payment Blockage Period may be commenced during any period of 365 consecutive days. No Non-Payment Default that existed or was continuing on the date of the commencement of any Payment Blockage Period will be, or can be mad the basis for the commencement of a subsequent Payment Blockage Period, unless such Non-Payment Default has been cured or waived for a

78

<PAGE>

period of not less than 90 consecutive days subsequent to the commencement of such initial Payment Blockage Period.

SECTION 11.04 Acceleration of Notes. If payment of the Notes is accelerated because of an Event of Default, the Company shall promptly noti holders of Senior Indebtedness of the acceleration.

SECTION 11.05 When Distribution Must Be Paid Over. In the event that, notwithstanding the provisions of Sections 11.02 and 11.03, any payment or distribution of any kind or character, whether in cash, property or securities, shall be received by the Trustee or any Noteholder which is prohibited by such provisions, then and in such event such payment shall be he in trust for the benefit of, and shall be paid over and delivered by such Trustee or Noteholder to, the trustee or any other representative of holders o Senior Indebtedness, as their interest may appear, for application to Senior Indebtedness remaining unpaid until all such Senior Indebtedness has been paid in full in cash or cash equivalents (or otherwise to the extent holders of Senior Indebtedness accept satisfaction of amounts due by settlement in other than cash or cash equivalents) after giving effect to any concurrent distribution to or for the holders of Senior Indebtedness.

With respect to the holders of Senior Indebtedness, the Trustee undertakes to perform only such obligations on the part of the Trustee as are specifically set forth in this Article 11, and no implied covenants or obligations with respect to the holders of Senior Indebtedness shall be read into this Indenture against the Trustee. The Trustee shall not be deemed to ow any fiduciary duty to the holders of Senior Indebtedness, and shall not be liable to any such holders if the Trustee shall pay over or distribute to or o behalf of Noteholders or the Company or any other Person money or assets to which any holders of Senior Indebtedness shall be entitled by virtue of this Article 11, except if such payment is made as a result of the willful miscondu or gross negligence of the Trustee.

SECTION 11.06 Notice by the Company. The Company shall promptly notify the Trustee and the Paying Agent of any facts known to the Company that would cause a payment of any obligations with respect to the Note to violate this Article 11, but failure to give such notice shall not affect t subordination of the Notes to the Senior Indebtedness as provided in this Article 11.

SECTION 11.07 Subrogation. After all Senior Indebtedness is

paid in full and until the Notes are paid in full, Noteholders shall be subrogated (equally and ratably with all other Indebtedness that is equal in right of payment to the Notes) to the rights of holders of Senior Indebtedness to receive distributions applicable to Senior Indebtedness to the extent that distributions otherwise payable to the Noteholders have been applied to the payment of Senior Indebtedness. A distribution made under this Article 11 to holders of Senior Indebtedness that otherwise would have been made to Noteholders is not, as between the Company and Noteholders, a payment by the Company of the Notes.

SECTION 11.08 Relative Rights. This Article 11 defines the relative rights of Holders and holders of Senior Indebtedness. Nothing in this Indenture shall: (i) impair, as between the Company and Holders, the obligatio of the Company, which is absolute and

79

<PAGE>

unconditional, to pay principal of and interest (including Liquidated Damages, if any) on the Notes in accordance with their terms; (ii) affect the relative rights of Holders other than their rights in relation to holders of Senior Indebtedness; or (iii) prevent the Trustee or any Holder from exercising its available remedies upon a Default or Event of Default, subject to the rights o holders and owners of Senior Indebtedness to receive distributions and payment otherwise payable to Holders of Notes. If the Company fails because of this Article 11 to pay principal of or interest on a Note on the Stated Maturity Date, the failure is still a Default or Event of Default.

SECTION 11.09 Subordination May Not Be Impaired by the Company. No right of any holder of Senior Indebtedness to enforce the subordination of the Indebtedness evidenced by the Notes shall be impaired by any act or failure to act by the Company or any Holder or by the failure of th Company or any Holder to comply with this Indenture.

Without in any way limiting the generality of this Section 11.09, the holders of Senior Indebtedness may, at any time and from time to time, without the consent of or notice to the Trustee or the Holders, without incurring responsibility to the Trustee or the Holders and without impairing o releasing the subordination provided in this Article 11 or the obligations hereunder of the Holders to the holders of Senior Indebtedness, do any one or more of the following: (a) change the manner, place or terms of payment or extend the time of payment of, or renew or alter, Senior Indebtedness or any instrument evidencing the same or any agreement under which Senior Indebtedness is outstanding or secured; (b) sell, exchange, release, foreclose against or otherwise deal with any property pledged, mortgaged or otherwise securing Seni Indebtedness; (c) release any Person liable in any manner for the collection o Senior Indebtedness; and (d) exercise or refrain from exercising any rights against the Company, and Subsidiary thereof or any other Person.

SECTION 11.10 Distribution or Notice to Representative. Whenever a distribution is to be made or a notice given to holders of any Seni Indebtedness, the distribution may be made and the notice given to their trust or representative.

Upon any payment or distribution of assets of the Company referred to in this Article 11, the Trustee and the Holders of Notes shall be entitled to rely upon any order or decree made by any court of competent

jurisdiction or upon any certificate of such representative(s) or of the
liquidating trustee or agent or other Person making any distribution to the
Trustee or to the Holders for the purpose of ascertaining the Persons entitled
to participate in such distribution, all holders of the Senior Indebtedness an
other Indebtedness of the Company, the amount thereof or payable thereon, the
amount or amounts paid or distributed thereon and all other facts pertinent
thereto or to this Article 11.

        SECTION 11.11 Rights of Trustee and Paying Agent.
Notwithstanding the provisions of this Article 11 or any other provision of th
Indenture, the Trustee shall not be charged with knowledge of the existence of
any facts that would prohibit the making of any payment or distribution by the
Trustee, and the Trustee and the Paying Agent may continue to make payments on
the Notes, unless a Responsible Officer of the Trustee shall have received at
its Corporate Trust Office at least three Business Days prior to the date of
such payment written notice of facts that would cause the payment of any
obligations with respect to the Notes to violate this Article 11. Only the
Company or any representative of the holders of Senior

                                  80

<PAGE>

Indebtedness may give the notice. Nothing in this Article 11 shall impair the
claims of, or payments to, the Trustee under or pursuant to Section 7.06.

        The Trustee in its individual or any other capacity may hold
Senior Indebtedness with the same rights it would have if it were not Trustee.

                            ARTICLE 12
                            SECURITY

        SECTION 12.01 Security.

        (a)        At the Closing Time, the Company shall (i) enter in
the Pledge Agreement and comply with the terms and provisions thereof and (ii)
purchase the Initial Pledged Securities to be pledged to the Collateral Agent
for the benefit of the Trustee and the ratable benefit of the Holders in such
amount as will be sufficient upon receipt of scheduled interest and principal
payments of such Initial Pledged Securities, as computed by the Company and
verified for mathematical accuracy by Ernst & Young LLP, independent public
accountants, or another nationally recognized firm of independent public
accountants selected by the Company, to provide for payment in full of the fir
eight scheduled interest payments due on the Notes. The Initial Pledged
Securities shall be pledged by the Company to the Collateral Agent for the
benefit of the Trustee and the ratable benefit of the Holders and shall be hel
by the Collateral Agent in the Collateral Account pending disposition pursuant
to the Pledge Agreement.

        (b)        On each relevant Date of Delivery (if such Date of
Delivery is different from the Closing Time), the Company shall (i) enter into
supplement to the Pledge Agreement and comply with the terms and provisions
thereof and (ii) purchase the Additional Pledged Securities to be pledged to t
Collateral Agent for the benefit of the Trustee and the ratable benefit of the
Holders in such amount as will be sufficient upon receipt of scheduled interes
and principal payments of such Additional Pledged Securities, as computed by t
Company and verified for mathematical accuracy by Ernst & Young LLP, independe
public accountants, or another nationally recognized firm of independent publi

accountants selected by the Company, to provide for payment in full of the fir
eight scheduled interest payments due on the Notes issued in connection
therewith. The Additional Pledged Securities shall be pledged by the Company t
the Collateral Agent for the benefit of the Trustee and the ratable benefit of
the Holders and shall be held by the Collateral Agent in the Collateral Accoun
pending disposition pursuant to the Pledge Agreement.

(c)    Each Holder, by its acceptance of a Note, consents
and agrees to the terms of the Pledge Agreement (including, without limitation
the provisions providing for foreclosure and release of the Pledged Securities
as the same may be in effect or may be amended from time to time in writing by
the parties thereto (provided that no amendment that would materially adversel
affect the rights of the Holders may be effected without the consent of each
Holder affected thereby), and authorizes and directs the Trustee and the
Collateral Agent to enter into the Pledge Agreement and to perform its
respective obligations and exercise its respective rights thereunder in
accordance therewith. The Company will do or cause to be done all such acts an
things as may be necessary or proper, or as may be required by the provisions
the Pledge

81

<PAGE>

Agreement, to assure and confirm to the Trustee and the Collateral Agent the
security interest in the Pledged Securities contemplated hereby, by the Pledge
Agreement or any part thereof, as from time to time constituted, so as to rend
the same available for the security and benefit of this Indenture and of the
Notes secured hereby, according to the intent and purpose herein expressed. Th
Company shall take, or shall cause to be taken, upon request of the Trustee or
the Collateral Agent, any and all actions reasonably required to cause the
Pledge Agreement to create and maintain, as security for the obligations of th
Company under this Indenture and the Notes as provided in the Pledge Agreement
valid and enforceable first priority perfected liens in and on all the Pledged
Securities, in favor of the Collateral Agent for the benefit of the Trustee an
the ratable benefit of the Holders, superior to and prior to the rights of thi
Persons and subject to no other Liens.

(d)    The release of any Pledged Securities pursuant to t
Pledge Agreement will not be deemed to impair the security under this Indentur
in contravention of the provisions hereof if and to the extent the Pledged
Securities are released pursuant to this Indenture and the Pledge Agreement. T
the extent applicable, the Company shall cause Section 314(d) of the TIA
relating to the release of property or securities from the Lien and security
interest of the Pledge Agreement and relating to the substitution therefor of
any property or securities to be subjected to the Lien and security interest o
the Pledge Agreement to be complied with. Any certificate or opinion required
Section 314(d) of the TIA may be made by an Officer of the Company, except in
cases where Section 314(d) of the TIA requires that such certificate or opinio
be made by an independent Person, which Person shall be an independent enginee
appraiser or other expert selected by the Company.

(e)    The Company shall cause Section 314(b) of the TIA,
relating to Opinions of Counsel regarding the Lien under the Pledge Agreement,
to be complied with. The Trustee may, to the extent permitted by Section 7.01
and 7.02 hereof, accept as conclusive evidence of compliance of the foregoing
provisions the appropriate statements contained in such Opinions of Counsel.

(f)    The Trustee and the Collateral Agent may, in their sole discretion and without the consent of the Holders, on behalf of the Holders, take all actions they deem necessary or appropriate in order to (i) enforce any of the terms of the Pledge Agreement and (ii) collect and receive any and all amounts payable in respect of the obligations of the Company thereunder. The Trustee and the Collateral Agent shall have the authority necessary in order to institute and maintain such suits and proceedings as the Trustee and the Collateral Agent may deem expedient to preserve or protect its interests and the interests of the Holders in the Pledged Securities (includin the authority to institute and maintain suits or proceedings to restrain the enforcement of, or compliance with, any legislative or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid if the enforcement of, or compliance with, such enactment, rule or order would impair the security interest hereunder or be prejudicial to the interests of t Holders, the Collateral Agent or the Trustee).

(g)    Beyond the exercise of reasonable care in the custo and preservation thereof, the Trustee and the Collateral Agent shall have no duty as to any Pledged Securities in their possession or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto, and the Trustee and the Collateral Agent shall not be responsible

82

<PAGE>

for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecti or maintaining the perfection of any security interest in the Pledged Securities. Each of the Trustee and the Collateral Agent shall be deemed to ha exercised reasonable care in the custody and preservation of the Pledged Securities in its possession if the Pledged Securities are accorded treatment substantially equal to that which it accords its own property or property held in similar accounts and shall not be liable or responsible for any loss or diminution in the value of any of the Pledged Securities, by reason of the act or omission of the Collateral Agent, any carrier, forwarding agency or other agent or bailee selected by the Trustee in good faith.

(h)    The Trustee shall not be responsible for the existence, genuineness or value of any of the Pledged Securities or for the validity, perfection, priority or enforceability of the Liens in any of the Pledged Securities, whether impaired by operation of law or otherwise, for the validity or sufficiency of the Pledged Securities or any agreement or assignme contained therein, for the validity of the title of the Company to the Pledged Securities, for insuring the Pledged Securities or for the payment of taxes, charges, assessments or Liens upon the Pledged Securities or otherwise as to t maintenance of the Pledged Securities. The Trustee shall have no duty to ascertain or inquire as to the performance or observance of any of the terms o this Indenture or the Pledge Agreement by the Company or the Collateral Agent.

ARTICLE 13

MISCELLANEOUS

SECTION 13.01 Trust Indenture Act Controls. If any provision of this Indenture limits, qualifies, or conflicts with another provision which is required to be included in this Indenture by the TIA, the required provisio

shall control.

                    SECTION 13.02 Notices. Any request, demand, authorization,
notice, waiver, consent or communication shall be in writing and delivered in
person or mailed by first-class mail, postage prepaid, addressed as follows or
transmitted by facsimile transmission (confirmed by guaranteed overnight
courier) to the following facsimile numbers:

                                       83
<PAGE>

          if to the Company:

                    Finisar Corporation
                    1308 Moffett Park Drive
                    Sunnyvale, CA 94089
                    Attention: Chief Financial Officer
                    Telephone No.: (408) 548-1000
                    Facsimile No.: (408) 541-4154

          if to the Trustee:

                    U.S. Bank Trust National Association
                    100 Wall Street, 16th Floor
                    New York, New York 10005
                    Attention: Corporate Trust Administration
                    Telephone No.: (212) 361-2458/2517
                    Facsimile No.: (212) 809-5459

                    The Company or the Trustee by notice given to the other in t
manner provided above may designate additional or different addresses for
subsequent notices or communications.

                    Any notice or communication given to a Noteholder shall be
mailed to the Noteholder, by first-class mail, postage prepaid, at the
Noteholder's address as it appears on the registration books of the Registrar
and shall be sufficiently given if so mailed within the time prescribed.

                    Failure to mail a notice or communication to a Noteholder or
any defect in it shall not affect its sufficiency with respect to other
Noteholders. If a notice or communication is mailed in the manner provided
above, it is duly given, whether or not received by the addressee.

                    If the Company mails a notice or communication to the
Noteholders, it shall mail a copy to the Trustee and each Registrar, Paying
Agent, Conversion Agent or co-registrar.

                    SECTION 13.03 Communication by Holders with Other Holders.
Noteholders may communicate pursuant to TIA Section 312(b) with other
Noteholders with respect to their rights under this Indenture or the Notes. Th
Company, the Trustee, the Registrar, the Paying Agent, the Conversion Agent an
anyone else shall have the protection of TIA Section 312(c).

                    SECTION 13.04 Certificate and Opinion as to Conditions
Precedent. Upon any request or application by the Company to the Trustee to ta
any action under this Indenture, the Company shall furnish to the Trustee, if
the Trustee so requests:

       (1)       an Officers' Certificate stating that, in the opini
of the signers, all conditions precedent, if any, provided for in thi
Indenture relating to the proposed action have been complied with; an

<center>84</center>

&lt;PAGE&gt;

       (2)       an Opinion of Counsel stating that, in the opinion
such counsel, all such conditions precedent have been complied with.

       SECTION 13.05 Statements Required in Certificate or Opinion.
Each Officers' Certificate or Opinion of Counsel with respect to compliance wi
a covenant or condition provided for in this Indenture shall include:

       (1)       a statement that each person making such Officers'
Certificate or Opinion of Counsel has read such covenant or condition

       (2)       a brief statement as to the nature and scope of the
examination or investigation upon which the statements or opinions
contained in such Officers' Certificate or Opinion of Counsel are
based;

       (3)       a statement that, in the opinion of each such perso
he has made such examination or investigation as is necessary to enab
such person to express an informed opinion as to whether or not such
covenant or condition has been complied with; and

       (4)       a statement that, in the opinion of such person, su
covenant or condition has been complied with.

       SECTION 13.06 Separability Clause. In case any provision in
this Indenture or in the Notes shall be invalid, illegal or unenforceable, the
validity, legality and enforceability of the remaining provisions shall not in
any way be affected or impaired thereby.

       SECTION 13.07 Rules by Trustee, Paying Agent, Conversion Age
and Registrar. The Trustee may make reasonable rules for action by or a meetin
of Noteholders. The Registrar, Conversion Agent and the Paying Agent may make
reasonable rules for their functions.

       SECTION 13.08 Legal Holidays. A "Legal Holiday" is any day
other than a Business Day. If any specified date (including a date for giving
notice) is a Legal Holiday, the action shall be taken on the next succeeding d
that is not a Legal Holiday, and, if the action to be taken on such date is a
payment in respect of the Notes, no interest, if any, shall accrue for the
intervening period.

       SECTION 13.09 GOVERNING LAW. THIS INDENTURE AND THE NOTES WI
BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW
YORK, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES.

       SECTION 13.10 No Recourse Against Others. A director, office
employee or stockholder, as such, of the Company shall not have any liability
for any obligations of the Company under the Notes or this Indenture or for an
claim based on, in respect of or by reason of such obligations or their
creation. By accepting a Note, each Noteholder shall waive and release all suc

liability. The waiver and release shall be part of the consideration for the
issue of the Notes.

                                      85
<PAGE>

          SECTION 13.11 Successors. All agreements of the Company in
this Indenture and the Notes shall bind its successor. All agreements of the
Trustee in this Indenture shall bind its successor.

          SECTION 13.12 Multiple Originals. The parties may sign any
number of copies of this Indenture. Each signed copy shall be an original, but
all of them together represent the same agreement. One signed copy is enough t
prove this Indenture.

                                      86
<PAGE>

          IN WITNESS WHEREOF, the undersigned, being duly authorized,
have executed this Indenture on behalf of the respective parties hereto as of
the date first above written.

                         FINISAR CORPORATION

                         By: /s/ Jerry S. Rawls
                             ------------------------------------
                             Name: Jerry S. Rawls
                             Title: President and Chief Executive Office

                         U.S. BANK TRUST NATIONAL ASSOCIATION,
                         as Trustee

                         By: /s/ Adam Berman
                             ------------------------------------
                             Name: Adam Berman
                             Title: Assistant Vice President

<PAGE>

                              EXHIBIT A-1

                       FORM OF FACE OF GLOBAL NOTE

          UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE
THE DEPOSITORY TRUST COMPANY TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE
NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED
REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY (AND ANY PAYMENT HEREON IS MADE
TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED
REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY), ANY TRANSFER, PLEDGE OR OTHER
USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL SINCE THE
REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

          TRANSFERS OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS IN WHOLE,
BUT NOT IN PART, TO NOMINEES OF THE DEPOSITORY TRUST COMPANY, OR TO A SUCCESSO
THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL
NOTE SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SE

FORTH IN ARTICLE TWO OF THE INDENTURE REFERRED TO ON THE REVERSE HEREOF.

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 193
AS AMENDED (THE "SECURITIES ACT"). THE HOLDER HEREOF, BY PURCHASING THIS
SECURITY, AGREES FOR THE BENEFIT OF THE COMPANY THAT THIS SECURITY MAY NOT BE
RESOLD, PLEDGED OR OTHERWISE TRANSFERRED (X) PRIOR TO THE EXPIRATION OF THE
HOLDING PERIOD UNDER RULE 144(k) (OR ANY SUCCESSOR THERETO) UNDER THE SECURITI
ACT WHICH IS APPLICABLE TO THIS SECURITY OR (Y) BY ANY HOLDER THAT WAS AN
"AFFILIATE" (WITHIN THE MEANING OF RULE 144 UNDER THE SECURITIES ACT) OF THE
COMPANY AT ANY TIME DURING THE THREE MONTHS PRECEDING THE DATE OF SUCH RESALE,
PLEDGE OR OTHER TRANSFER, IN EITHER CASE, OTHER THAN (1) TO THE COMPANY, (2) S
LONG AS THIS SECURITY IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE
SECURITIES ACT ("RULE 144A"), TO A PERSON WHOM THE SELLER REASONABLY BELIEVES
A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A, PURCHASING FO
ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM
NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN
RELIANCE ON RULE 144A, (3) TO AN INSTITUTION THAT IS AN "ACCREDITED INVESTOR"
DEFINED IN RULE 501(a)(1), (2) OR (7) UNDER THE SECURITIES ACT ("INSTITUTION
ACCREDITED INVESTOR") THAT IS ACQUIRING THIS SECURITY FOR INVESTMENT PURPOSES
AND NOT FOR DISTRIBUTION AND IN A PRINCIPAL AMOUNT OF AT LEAST $250,000, AND
THAT, PRIOR TO SUCH TRANSFER, DELIVERS TO THE COMPANY AND THE TRUSTEE A SIGNED
LETTER CONTAINING CERTAIN REPRESENTATIONS AND AGREEMENTS RELATING TO THE
RESTRICTIONS ON TRANSFER OF THE SECURITY EVIDENCED

                              A-1-1
<PAGE>

HEREBY (THE FORM OF WHICH LETTER MAY BE OBTAINED FROM THE TRUSTEE), (4) PURSUA
TO ANOTHER AVAILABLE EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT
PROVIDED BY RULE 144 (IF APPLICABLE) UNDER THE SECURITIES ACT OR (5) PURSUANT
AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN
ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED
STATES. PRIOR TO A TRANSFER OF THIS SECURITY (OTHER THAN A TRANSFER PURSUANT T
CLAUSE (5) ABOVE), THE HOLDER OF THIS SECURITY MUST, PRIOR TO SUCH TRANSFER,
FURNISH TO THE COMPANY AND THE TRANSFER AGENT SUCH CERTIFICATES AND OTHER
INFORMATION AND, IN THE CASE OF A TRANSFER PURSUANT TO CLAUSE (3) ABOVE, A LEG
OPINION AS THEY MAY REASONABLY REQUIRE TO CONFIRM THAT ANY TRANSFER BY IT OF
THIS SECURITY COMPLIES WITH THE FOREGOING RESTRICTIONS. THE HOLDER HEREOF, BY
PURCHASING THIS SECURITY, REPRESENTS AND AGREES FOR THE BENEFIT OF THE COMPANY
THAT IT IS (1) A QUALIFIED INSTITUTIONAL BUYER OR (2) AN INSTITUTIONAL
ACCREDITED INVESTOR AND THAT IT IS HOLDING THIS SECURITY FOR INVESTMENT PURPOS
AND NOT FOR DISTRIBUTION.

                              A-1-2
<PAGE>


                         FINISAR CORPORATION

          2 1/2% Convertible Subordinated Notes due 2010

No.: ____      CUSIP NO.:Restricted Note-31787AAD3
                         Note held by Institutional Accredited Investors-31787AA
                         When the Note is no longer restricted-31787AAF8

Issue Date: October 15, 2003

          FINISAR CORPORATION, a Delaware corporation, promises to pay to Cede

Co. or registered assigns, the principal sum of [_____] DOLLARS ($[_____]) on October __, 2010.

      This Note shall bear interest as specified on the other side of this Note. This Note is convertible as specified on the other side of this Note.

      Additional provisions of this Note are set forth on the other side of this Note.

Dated: October 15, 2003

                             FINISAR CORPORATION

                             By_____

                               Name:
                               Title:

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

U.S. BANK TRUST NATIONAL ASSOCIATION,
as Trustee, certifies that this
is one of the Notes referred
to in the within-mentioned Indenture (as
defined on the other side of this Note).

By_____
     Authorized Signatory

Dated: _____

                         A-1-3

<PAGE>

                 FORM OF REVERSE SIDE OF NOTE

          2 1/2% Convertible Subordinated Note due 2010

      Capitalized terms used herein but not defined shall have the meanings assigned to them in the Indenture unless otherwise indicated.

1.      Cash Interest.

      The Company promises to pay interest at the Interest Rate in cash on the principal amount of this Note. The Company will pay cash interest semiannually in arrears on April 15 and October 15, of each year (each an "Interest Payment Date"), beginning on April 15, 2004, to Holders of record at the close of business on the preceding April 1 and October 1 (whether or not a business day) (each a "Regular Record Date"), as the case may be, immediately preceding such Interest Payment Date. Cash interest on the Notes will accrue from the most recent date to which interest has been paid or duly provided or, if no interest has been paid, from the Issue Date. Cash interest will be computed on the basis of a 360-day year of twelve 30-day months. The Company shall pay cash interest on overdue principal, or if shares of Common Stock (or cash in lieu of fractional shares) in respect of a conversion of this Note in accordance with the terms of Article 10 of the Indenture are not delivered whe due, at the rate borne by the Notes, and it shall pay interest in cash on overdue installments of cash interest at the same rate to the extent lawful. A

such overdue cash interest shall be payable on demand.

In accordance with the terms of the Registration Rights Agreement, if

(A)     on the 91st day after the earliest date of original issuance of any of the Notes, the Shelf Registration Statement has no been filed with the Commission;

(B)     on the 181st day following the earliest date of original issuance of any of the Notes, the Shelf Registration Stateme is not declared effective;

(C)     the Shelf Registration Statement, previously declared effective, shall cease to be effective or usable without bei succeeded within five Business Days by a post effective amendment or report filed with the Commission pursuant to th Exchange Act that cures the failure of the Shelf Registratio Statement to be effective or usable; or

(D)     the Company suspends the use of any prospectus relating to t Shelf Registration Statement for a period exceeding 30 days any three-month period or exceeding an aggregate of 90 days any 12-month period,

(each, a "Registration Default") additional interest in the form of Liquidated Damages will accrue from and including the day of the Registration Default to, but excluding, the day on which the Registration Default has been cured. To an including the 90th day following such Registration Default, additional interes in the form of Liquidated Damages will accrue on the Notes at a rate per year equal to 0.25%. From and after the 91st day following such Registration Defaul additional interest in the form of Liquidated Damages will accrue on the Notes at a rate per year equal to 0.50%. In no event shall the additional interest i the form of Liquidated

A-1-4

<PAGE>

Damages borne by the Notes be more than 0.50% per annum. Any amount of Liquidated Damages will be payable in cash semiannually, in arrears, on each Interest Payment Date and will cease to accrue on the date the Registration Default is cured. The Holder of this Note is entitled to the benefits of the Registration Rights Agreement.

2.      Method of Payment.

Subject to the terms and conditions of the Indenture, the Company wil make payments in respect of the principal of and cash interest on this Note an in respect of Provisional Redemption Prices, Put Right Repurchase Prices and Change in Control Repurchase Prices to Holders who surrender Notes to a Paying Agent to collect such payments in respect of the Notes. The Company will pay cash amounts in money of the United States that at the time of payment is lega tender for payment of public and private debts. However, the Company may make such cash payments by check payable in such money. A Holder with an aggregate principal amount in excess of $5,000,000 will be paid by wire transfer in immediately available funds at the election of such Holder. Any payment requir to be made on any day that is not a Business Day will be made on the next

succeeding Business Day.

3.        Paying Agent, Conversion Agent and Registrar.

        Initially, U.S. Bank Trust National Association (the "Trustee") will act as Paying Agent, Conversion Agent and Registrar. The Company may appoint a change any Paying Agent, Conversion Agent, Registrar or co-registrar without notice, other than notice to the Trustee. The Company or any of its Subsidiari or any of their Affiliates may act as Paying Agent, Conversion Agent, Registra or co-registrar.

4.        Indenture.

        The Company issued the Notes under an Indenture, dated as of October 15, 2003 (the "Indenture"), between the Company and the Trustee. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as in effect from time to time (the "TIA"). Capitalized terms used herein and not defined herein have the meanings ascribed thereto in the Indenture. The Notes are subject to all such terms, and Noteholders are referred to the Indenture and the TIA for statement of those terms.

        The Notes are general unsecured obligations of the Company (except as provided in Paragraph 18 hereof) limited to an aggregate principal amount of $150,000,000 (subject to Section 2.07 of the Indenture). The Indenture does no limit other indebtedness of the Company, secured or unsecured.

5.        Provisional Redemption.

        The Notes may be redeemed at the election of the Company, in whole at any time or in part from time to time, upon at least 30 but not more than 60 days' notice, at any time on or after October 15, 2007, at a redemption price equal to 100% if the principal amount of the Notes redeemed plus accrued and unpaid interest, if any, to but excluding the applicable Provisional Redemptio Date (provided however, if such Provisional Redemption Date is an Interest Payment Date, the interest due on such Interest Payment Date shall be payable the Holder of

                                        A-1-5

<PAGE>

the Notes called for redemption and the Provisional Redemption Price shall not include such interest payment), if the Closing Price of the Common Stock has exceeded 150% of the Conversion Price then in effect for at least 20 Trading Days in the consecutive 30-Trading Day period ending on the Trading Day immediately preceding the Notice Date.

6.        Notice of Redemption.

        Notice of the Provisional Redemption will be mailed at least 30 days but not more than 60 days before a Provisional Redemption Date to each Holder Notes to be redeemed at the Holder's registered address. If money sufficient t pay the Provisional Redemption Price of all Notes (or portions thereof) to be redeemed on a Provisional Redemption Date is deposited with the Paying Agent prior to or on such Provisional Redemption Date, immediately after such Provisional Redemption Date interest ceases to accrue on such Notes or portion thereof. Notes in denominations larger than $1,000 of principal amount may be