redeemed in part but only in whole multiples of $1,000 of principal amount.

7.        Sinking Fund

        No sinking fund is provided for the Notes.

8.        Repurchase by the Company at the Option of the Holder; Repurchase by
        the Company at the Option of the Holder Upon a Change in Control.

        (a)        The Holder, at the Holder's option, shall have the right, in
accordance with the provisions of the Indenture, to require the Company to
repurchase this Note (or any portion of the principal amount hereof that is at
least $1,000 or any whole multiple thereof, provided that the portion of the
principal amount of this Note to be outstanding after such repurchase is at
least equal to $1,000) at the Put Right Repurchase Price in cash or Common Sto
or a combination thereof.

        Subject to the conditions provided in the Indenture, the Company may
elect to pay the Put Right Repurchase Price (to the extent not paid in cash) b
delivering a number of shares of Common Stock equal to (i) the Put Right
Repurchase Price divided by (ii) 95% of the average of the Closing Prices per
share for the five consecutive Trading Days immediately preceding and includin
the third Trading Day prior to the Put Right Repurchase Date.

        No fractional shares of Common Stock will be issued upon repurchase o
any Notes. Instead of any fractional share of Common Stock, which would
otherwise be issued upon conversion of such Notes, the Company shall pay a cas
adjustment as provided in the Indenture.

        The Company Put Right Notice will be given by the Company to the
Holders as provided in the Indenture. To exercise a repurchase right, a Holder
must deliver to the Paying Agent a Put Right Repurchase Notice as provided in
the Indenture.

        Holders have the right to withdraw any Put Right Repurchase Notice by
delivering to the Paying Agent a written notice of withdrawal in accordance wi
the provisions of the Indenture.

                                A-1-6

<PAGE>

        (b)        If a Change in Control occurs, the Holder, at the Holder's
option, shall have the right, in accordance with the provisions of the
Indenture, to require the Company to repurchase this Note (or any portion of t
principal amount hereof that is at least $1,000 or any whole multiple thereof,
provided that the portion of the principal amount of this Note to be outstandi
after such repurchase is at least equal to $1,000) at the Change in Control
Repurchase Price in cash or Common Stock or a combination thereof.

        Subject to the conditions provided in the Indenture, the Company may
elect to pay the Change in Control Repurchase Price (to the extent not paid in
cash) by delivering a number of shares of Common Stock equal to (i) the Change
in Control Repurchase Price divided by (ii) 95% of the average of the Closing
Prices per share for the five consecutive Trading Days immediately preceding a
including the third Trading Day prior to the Change in Control Repurchase Date

        No fractional shares of Common Stock will be issued upon repurchase o

any Notes. Instead of any fractional share of Common Stock, which would otherwise be issued upon conversion of such Notes, the Company shall pay a cas adjustment as provided in the Indenture.

A Company Change in Control Notice will be given by the Company to th Holders as provided in the Indenture. To exercise a repurchase right, a Holder must deliver to the Paying Agent a Change in Control Repurchase Notice as provided in the Indenture.

Holders have the right to withdraw any Change in Control Repurchase Notice by delivering to the Paying Agent a written notice of withdrawal in accordance with the provisions of the Indenture.

9.      Conversion.

Subject to the next two succeeding sentences, a Holder of a Note may convert it into Common Stock of the Company at any time before the close of business on October 15, 2010. If the Note is called for redemption, the Holder may convert it at any time before the close of business on the Business Day preceding the applicable Provisional Redemption Date. A Note in respect of whi a Holder has delivered a Put Right Repurchase Notice or a Change in Control Repurchase Notice exercising the option of such Holder to require the Company repurchase such Note may be converted only if such notice of exercise is withdrawn in accordance with the terms of the Indenture.

The initial Conversion Price shall be equal to $3.705 per share of Common Stock, subject to adjustment in certain events described in the Indenture. The Company shall pay a cash adjustment as provided in the Indentur in lieu of any fractional share of Common Stock.

To convert a Note, a Holder must (1) complete and manually sign the conversion notice below (or complete and manually sign a facsimile of such notice) and deliver such notice to the Conversion Agent, (2) surrender the Not to the Conversion Agent, (3) furnish appropriate endorsements and transfer documents if required by the Conversion Agent, the Company or the Trustee and (4) pay any transfer or similar tax, if required.

                                        A-1-7
<PAGE>

10.     Conversion Arrangement on Call for Redemption.

Any Notes called for redemption, unless surrendered for conversion before the close of business on the Business Day preceding the applicable Provisional Redemption Date, may be purchased from the Holders of such Notes a an amount not less than the Provisional Redemption Price by one or more investment bankers or other purchasers who may agree with the Company to purchase such Notes from the Holders, to convert them into Common Stock of the Company and to make payment for such Notes to the Trustee in trust for such Holders.

11.     Denominations; Transfer; Exchange.

The Notes are in fully registered form, without coupons, in denominations of $1,000 of principal amount and whole multiples of $1,000. A Holder may transfer or exchange Notes in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate

endorsements and transfer documents and to pay any taxes and fees required by law or permitted by the Indenture. The Registrar need not transfer or exchange any Notes selected for redemption (except, in the case of a Note to be redeeme in part, the portion of the Note not to be redeemed) or any Notes in respect o which the Put Right Repurchase Notice or a Change in Control Repurchase Notice has been given and not withdrawn (except, in the case of a Note to be repurchased in part, the portion of the Note not to be repurchased) or any Not for a period of 15 days before the mailing of a notice of redemption of Notes be redeemed.

12.    Persons Deemed Owners.

The registered Holder of this Note may be treated as the owner of thi Note for all purposes.

13.    Unclaimed Money or Notes.

The Trustee and the Paying Agent shall return to the Company upon written request any money or Notes held by them for the payment of any amount with respect to the Notes that remains unclaimed for two years, subject to applicable unclaimed property law. After return to the Company, Holders entitl to the money or Notes must look to the Company for payment as general creditor unless an applicable abandoned property law designates another person.

14.    Amendment; Waiver.

Subject to certain exceptions set forth in the Indenture, (i) the Indenture or the Notes may be amended with the written consent of the Holders at least a majority in aggregate principal amount of the Notes at the time outstanding and (ii) certain Defaults may be waived with the written consent o the Holders of a majority in aggregate principal amount of the Notes at the ti outstanding. Subject to certain exceptions set forth in the Indenture, without the consent of any Noteholder, the Company and the Trustee may amend the Indenture or the Notes to cure any ambiguity, omission, defect or inconsistenc or to comply with Article 5 of the Indenture, to provide for uncertificated Notes in addition to or in place of certificated Notes, or to modify any provision in the Indenture or the Notes in order to conform the provision to t corresponding description set forth in the offering memorandum, or to make any change that does not adversely

A-1-8

<PAGE>

affect the rights of any Noteholder or to comply with any requirement of the Commission in connection with the qualification of the Indenture under the TIA

15.    Defaults and Remedies.

Under the Indenture, Events of Default include (1) the Company fails pay when due the principal of any of the Notes at maturity, upon redemption or exercise of a repurchase right or otherwise, whether or not such payment is prohibited by Article 11 of the Indenture; (2) the Company fails to pay an installment of interest (including Liquidated Damages, if any) on any of the Notes that continues for 30 days after the date when due, whether or not such payment is prohibited by Article 11 of the Indenture; provided that a failure make any of the first eight scheduled interest payments on the Notes on the applicable interest payment dates will constitute an event of default with no

grace period or cure period; (3) the Company fails to deliver shares of Common Stock, together with cash in lieu of fractional shares, when such Common Stock or cash in lieu of fractional shares is required to be delivered upon conversi of a Note and such failure continues for 10 days after such delivery date; (4) the Company fails to perform or observe any other term, covenant or agreement contained in the Notes or the Indenture for a period of 60 days after written notice of such failure, requiring the Company to remedy the same, shall have been given to the Company by the Trustee or to the Company and the Trustee by the Holders of at least 25% in aggregate principal amount of the Notes then outstanding; (5) (A) one or more defaults in the payment of any of the Company Indebtedness aggregating $5.0 million or more, when the same becomes due and payable at the scheduled maturity thereof, and such default or defaults shall have continued after any applicable grace period and shall not have been cured or waived within 30 days after written notice of such default or defaults shal have been given to the Company by the Trustee or to the Company and the Truste by the Holders of at least 25% in aggregate principal amount of the Notes then outstanding or (B) any of the Company's Indebtedness aggregating $5.0 million more shall have been accelerated or otherwise declared due and payable, or required to be prepaid or repurchased (other than by regularly scheduled required prepayment) prior to the scheduled maturity thereof and such acceleration is not cured, waived, rescinded nor annulled within 30 days after written notice of such default or defaults shall have been given to the Compan by the Trustee or to the Company and the Trustee by the Holders of at least 25 in aggregate principal amount of the Notes then outstanding; (6) certain event of bankruptcy, insolvency or reorganization with respect to the Company or any Significant Subsidiary; and (7) the Pledge Agreement shall cease to be in full force and effect or enforceable other than in accordance with its terms. If an Event of Default (other than an Event of Default specified in clause (6) or (7 of Section 6.01 of the Indenture) occurs and is continuing, the Trustee, or th Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding, may declare all the Notes to be due and payable immediately. Certain events of bankruptcy or insolvency are Events of Default that will result in the Notes becoming due and payable immediately upon the occurrence o such Events of Default.

Noteholders may not enforce the Indenture or the Notes, except as provided in the Indenture. The Trustee may refuse to enforce the Indenture or the Notes unless it receives reasonable indemnity or security. Subject to certain limitations, Holders of a majority in aggregate principal amount of th Notes at the time outstanding may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Noteholders notice of any

A-1-9

<PAGE>

continuing Default (except a Default in payment of amounts specified in clause (1) or (2) above) if it determines that withholding notice is in their interests.

16.     Subordination

The payment of principal of and interest on the Notes will be subordinated in right of payment, as set forth in the Indenture, to the prior payment in full in cash or cash equivalents (or otherwise to the extent holder of Senior Indebtedness accept satisfaction of amounts due by settlement in oth than cash or cash equivalents) of all Senior Indebtedness whether outstanding the date of the Indenture or thereafter incurred.

17.    Trustee Dealings with the Company.

Subject to certain limitations imposed by the TIA, the Trustee under the Indenture, in its individual or any other capacity, may become the owner o pledge of Notes and may otherwise deal with and collect obligations owed to i by the Company or its Affiliates and may otherwise deal with the Company or it Affiliates with the same rights it would have if it were not Trustee.

18.    Security

The Company has entered into the Pledge Agreement and purchased and pledged to the Collateral Agent for the benefit of the Trustee and the ratable benefit of the Holders Pledged Securities in an amount sufficient upon receipt of scheduled interest and principal payments on such securities to provide for the payment in full of the first eight scheduled interest payments due on the Notes. The Pledged Securities will be pledged by the Company to the Collateral Agent for the benefit of the Trustee and the ratable benefit of the Holders an will be held by the Collateral Agent in the Collateral Account pending disbursement pursuant to the Pledge Agreement.

19.    No Recourse Against Others.

A director, officer, employee or stockholder, as such, of the Company shall not have any liability for any obligations of the Company under the Note or the Indenture or for any claim based on, in respect of or by reason of such obligations or their creation. By accepting a Note, each Noteholder waives and releases all such liability. The waiver and release are part of the consideration for the issue of the Notes.

20.    Authentication.

This Note shall not be valid until an authorized signatory of the Trustee manually signs the Trustee's Certificate of Authentication on the othe side of this Note.

21.    Abbreviations.

Customary abbreviations may be used in the name of a Noteholder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entireties), JT TEN (=joint tenants with right of survivorship and not as tenants in common), CUST (=custodian), and U/G/M/A (=Uniform Gift to Minors Act).

A-1-10

<PAGE>

21.    GOVERNING LAW.

THE INDENTURE AND THIS NOTE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES.

The Company will furnish to any Noteholder upon written request and without charge a copy of the Indenture that has in it the text of this Note in larger type. Requests may be made to:

Finisar Corporation
1308 Moffett Park Drive
Sunnyvale, CA 94089
Attention: Chief Financial Officer

A-1-11

<PAGE>

| ASSIGNMENT FORM | CONVERSION NOTICE |

ASSIGNMENT FORM
To assign this Note, fill in the form below:

I or we assign and transfer this Note to

_____
_____
_____

(Insert assignee' sec. Or tax ID no.)

_____

_____

_____

(Print or type assignee's name, address and zip code)

And irrevocably appoint

_____ agent to transfer this Note on the books of the Company. The agent may substitute another to act for him.

CONVERSION NOTICE
To convert this Note into Common Stock of the Company, check the box:

[ ]

To convert only part of this Note, sta the principal amount to be converted (which must be $1,000 or a whole multiple of $1,000):

$_____

If you want the stock certificate made out in another person's name, fill in the form below:

_____

(Insert other person's social sec. or tax ID no.)

_____

_____

_____

(Print or type other person's name, address and zip code)

_____

Date: _____  Your Signature:_____

_____

(Sign exactly as your name appears on the other side of this Note)

A-1-12

<PAGE>

EXHIBIT A-2

Form of Certificated Note

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS

AMENDED (THE "SECURITIES ACT"). THE HOLDER HEREOF, BY PURCHASING THIS SECURITY
AGREES FOR THE BENEFIT OF THE COMPANY THAT THIS SECURITY MAY NOT BE RESOLD,
PLEDGED OR OTHERWISE TRANSFERRED (X) PRIOR TO THE EXPIRATION OF THE HOLDING
PERIOD UNDER RULE 144(k) (OR ANY SUCCESSOR THERETO) UNDER THE SECURITIES ACT
WHICH IS APPLICABLE TO THIS SECURITY OR (Y) BY ANY HOLDER THAT WAS AN
"AFFILIATE" (WITHIN THE MEANING OF RULE 144 UNDER THE SECURITIES ACT) OF THE
COMPANY AT ANY TIME DURING THE THREE MONTHS PRECEDING THE DATE OF SUCH RESALE,
PLEDGE OR OTHER TRANSFER, IN EITHER CASE, OTHER THAN (1) TO THE COMPANY, (2) S
LONG AS THIS SECURITY IS ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE
SECURITIES ACT ("RULE 144A"), TO A PERSON WHOM THE SELLER REASONABLY BELIEVES
A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A, PURCHASING FO
ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM
NOTICE IS GIVEN THAT THE RESALE, PLEDGE OR OTHER TRANSFER IS BEING MADE IN
RELIANCE ON RULE 144A, (3) TO AN INSTITUTION THAT IS AN "ACCREDITED INVESTOR"
DEFINED IN RULE 501 (a) (1), (2) OR (7) UNDER THE SECURITIES ACT ("INSTITUTION
ACCREDITED INVESTOR") THAT IS ACQUIRING THIS SECURITY FOR INVESTMENT PURPOSES
AND NOT FOR DISTRIBUTION AND IN A PRINCIPAL AMOUNT OF AT LEAST $250,000, AND
THAT, PRIOR TO SUCH TRANSFER, DELIVERS TO THE COMPANY AND THE TRUSTEE A SIGNED
LETTER CONTAINING CERTAIN REPRESENTATIONS AND AGREEMENTS RELATING TO THE
RESTRICTIONS ON TRANSFER OF THE SECURITY EVIDENCED HEREBY (THE FORM OF WHICH
LETTER MAY BE OBTAINED FROM THE TRUSTEE), (4) PURSUANT TO ANOTHER AVAILABLE
EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144 (IF
APPLICABLE) UNDER THE SECURITIES ACT OR (5) PURSUANT TO AN EFFECTIVE
REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WI
ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES. PRIOR TO A
TRANSFER OF THIS SECURITY (OTHER THAN A TRANSFER PURSUANT TO CLAUSE (5) ABOVE)
THE HOLDER OF THIS SECURITY MUST, PRIOR TO SUCH TRANSFER, FURNISH TO THE COMPA
AND THE TRANSFER AGENT SUCH CERTIFICATES AND OTHER INFORMATION AND, IN THE CAS
OF A TRANSFER PURSUANT TO CLAUSE (3) ABOVE, A LEGAL OPINION AS THEY MAY
REASONABLY REQUIRE TO CONFIRM THAT ANY TRANSFER BY IT OF THIS SECURITY COMPLIE
WITH THE FOREGOING RESTRICTIONS. THE HOLDER HEREOF, BY PURCHASING THIS SECURIT
REPRESENTS AND AGREES FOR THE BENEFIT OF THE COMPANY THAT IT IS (1) A QUALIFIE
INSTITUTIONAL BUYER OR (2) AN INSTITUTIONAL ACCREDITED INVESTOR AND THAT IT IS
HOLDING THIS SECURITY FOR INVESTMENT PURPOSES AND NOT FOR DISTRIBUTION.

                                    A-2-1
<PAGE>


        THE FOREGOING LEGEND MAY BE REMOVED FROM THIS NOTE ON SATISFACTION OF
THE CONDITIONS SPECIFIED IN THE INDENTURE.

                                    A-2-2
<PAGE>


                            FINISAR CORPORATION

                 2 1/2% Convertible Subordinated Notes due 2010

No.: ___        CUSIP NO.:Restricted Note-31787AAD3
                          Note held by Institutional Accredited Investors-31787AA
                          When the Note is no longer restricted-31787AAF8

Issue Date: October 15, 2003


        FINISAR CORPORATION, a Delaware corporation, promises to pay to Cede
Co. or registered assigns, the principal sum of [_____] DOLLARS
($[_____]) on October __, 2010.

This Note shall bear interest as specified on the other side of this Note. This Note is convertible as specified on the other side of this Note.

Additional provisions of this Note are set forth on the other side of this Note.

Dated: October 15, 2003                        FINISAR CORPORATION

By_____
                                                   Name:
                                                   Title:

TRUSTEE'S CERTIFICATE OF
AUTHENTICATION

U.S. BANK TRUST NATIONAL ASSOCIATION,
as Trustee, certifies that this
is one of the Notes referred
to in the within-mentioned Indenture (as
defined on the other side of this Note).

By_____
        Authorized Signatory

Dated: _____

                                A-2-3
<PAGE>

                    Text of Reverse Side of Note

                      Use Exhibit A-1 Text

                                A-2-4
<PAGE>

                           EXHIBIT B-1

                       Transfer Certificate

        In connection with any transfer of any of the Notes within the period prior to the expiration of the holding period applicable to the sales thereof under Rule 144(k) under the Securities Act of 1933, as amended (the "Securitie Act") (or any successor provision), the undersigned registered owner of this Note hereby certifies with respect to $_____ principal amount of the above-captioned Notes presented or surrendered on the date hereof (the "Surrendered Notes") for registration of transfer, or for exchange or conversi where the Notes issuable upon such exchange or conversion are to be registered in a name other than that of the undersigned registered owner (each such transaction being a "transfer"), that such transfer complies with the restrictive legend set forth on the face of the Surrendered Notes for the reas checked below:

        [ ]    A transfer of the Surrendered Notes is made to the Company o any Subsidiaries; or

[ ]    The transfer of the Surrendered Notes complies with Rule 144 under the U.S. Securities Act of 1933, as amended (the "Securities Act"); or

[ ]    The transfer of the Surrendered Notes is pursuant to an effective registration statement under the Securities Act, or

[ ]    The transfer of the Surrendered Notes is pursuant to another available exemption from the registration requirement of the Securities Act.

and unless the box below is checked, the undersigned confirms that, to the undersigned's knowledge, such Notes are not being transferred to an "affiliate of the Company as defined in Rule 144 under the Securities Act (an "Affiliate"

[ ]    The transferee is an Affiliate of the Company.

DATE:

Signature(s)

(If the registered owner is a corporation, partnership or fiduciary, the title of the Person signing on behalf of such registered owner must be stated.)

B-1-1

<PAGE>

EXHIBIT C-1

FORM OF NOTICE OF HOLDER TO ELECT REPURCHASE ON PUT RIGHT REPURCHASE DATE

OPTION OF HOLDER TO ELECT REPURCHASE ON PUT RIGHT REPURCHASE DATE

To:     U.S. Bank Trust National Association, as Paying Agent

cc:     Finisar Corporation

This notice relates to the 2 1/2% Convertible Subordinated Notes due 2010 (the "Notes") of Finisar Corporation, a Delaware Corporation (the "Company"), issued pursuant to an Indenture (the "Indenture"), dated as of October 15, 2003, between the Company and U.S. Bank Trust National Association as trustee. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Indenture.

The undersigned Holder of the Note (the "Undersigned") hereby request and instructs the Company to repurchase the entire principal amount of the Not or the portion thereof (which is $1,000 or an whole multiple thereof) below designated, on October [ ], 2007, in accordance with Section 3.09 of the Indenture and paragraph 8 on the reverse side of the Notes at the Put Right Repurchase Price.

If the Notes have been certificated, the certificate number of the No which the Undersigned hereby surrenders for repurchase is:_____

If the Notes are in book-entry form, the following is the name of the broker, dealer or other person through whom the Undersigned owns the Notes

If the Company elects, pursuant to Section 3.09(d) of the Indenture, pay the Put Right Repurchase Price, in whole or in part, in shares of Common Stock but such portion of the Put Right Purchase Price shall ultimately be payable to the Undersigned entirely in cash because any of the conditions to payment of the Put Right Purchase Price (or a portion there of) in Common Stoc as set forth in Section 3.09(f), is not satisfied prior to the close of busine on such Repurchase Date, the Undersigned hereby elects:

[ ___ ] to withdraw this notice as to some or all of the Note (The principal amount of the Notes as to which such withdrawal shall relate is $_____. If the undersigned does not indicate the principal amount of the Note to which such withdrawal relates, then such withdrawal shall relate to al of the Note); and, if certificated, the following is the certificate number of the Note as to which such withdrawal shall relate: _____, or

[ ___ ] to receive cash in respect of the entire Put Right Repurchase Price for all Notes (or portion thereof) to which this notice relates.

The Undersigned acknowledges and agrees that, if the undersigned fails to here indicate his/her choice with respect to the foregoing election, the Undersigne will be deemed to have

C-1-1

<PAGE>

elected to receive cash in respect of the entire Put Right Repurchase Price fo all Notes subject to this notice under the foregoing circumstances described i this paragraph.

Dated:_____

|  | Signature(s) must be guaranteed by a qualified guarantor institution with membership in an approved signature guarantee program pursuant to Rule 17Ad-15 under the Securities Exchange Act of 1934. |
| --- | --- |

Signature Guaranty

Principal amount to be repurchased (in an whole multiple of $1,000, if less th all):

_____

NOTICE: The signature to the foregoing election must correspond to the name as written upon the face of the Note in every particular, without alteration or a change whatsoever.

C-1-2

<PAGE>

EXHIBIT C-2

FORM OF NOTICE OF HOLDER TO ELECT REPURCHASE UPON A CHANGE IN CONTROL

OPTION OF HOLDER TO ELECT REPURCHASE UPON A CHANGE IN CONTROL

To:     U.S. Bank Trust National Association, as Paying Agent

cc:     Finisar Corporation

    This notice relates to the 2 1/2% Convertible Subordinated Notes due 2010 (the "Notes") of Finisar Corporation, a Delaware Corporation (the "Company"), issued pursuant to an Indenture (the "Indenture"), dated as of October 15, 2003, between the Company and U.S. Bank Trust National Association as trustee. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Indenture.

    The undersigned registered owner of the Note (the "Undersigned") here irrevocably acknowledges receipt of a notice from the Company as to the occurrence of a Change in Control with respect to the Company and requests and instructs the Company to repurchase the entire principal amount of the Note, o the portion thereof (which is $1,000 or an whole multiple thereof) below designated, in accordance with Section 3.10 of the Indenture and paragraph 8 o the reverse side of the Notes at the Change in Control Repurchase Price, together with accrued interest to, but excluding, such date.

    If the Notes have been certificated, the certificate number of the No which the Undersigned hereby surrenders for repurchase is: _____

    If the Notes are in book-entry form, the following is the name of the broker, dealer or other person through whom the Undersigned owns the Notes
_____

    If the Company elects, pursuant to Section 3.10(d) of the Indenture, pay the Change in Control Repurchase Price, in whole or in part, in shares of Common Stock but such portion of the Change in Control Repurchase Price shall ultimately be payable to the Undersigned entirely in cash because any of the conditions to payment of the Change in Control Price (or a portion there of) i Common Stock, as set forth in Section 3.10(f), is not satisfied prior to the close of business on such Repurchase Date, the Undersigned hereby elects:

    [ ___ ] to withdraw this notice as to some or all of the Note (The principal amount of the Note as to which such withdrawal shall relate is $_____. If the undersigned does not indicate the principal amount of the Note to which such withdrawal relates, then such withdrawal shall relate to al of the Note); and, if certificated, the following is the certificate number of the Notes as to which such withdrawal shall relate: _____, or

    [ ___ ] to receive cash in respect of the entire Change in Control Repurchase Price for all Notes (or portion thereof) to which this notice relates.

<div align="center">C-2-1</div>

&lt;PAGE&gt;

The Undersigned acknowledges and agrees that, if the undersigned fails to here indicate his/her choice with respect to the foregoing election, the Undersigne will be deemed to have elected to receive cash in respect of the entire Change in Control Repurchase Price for all Notes subject to this notice under the foregoing circumstances described in this paragraph.

Dated:_____        _____
                                      Signature(s) must be guaranteed by a

qualified guarantor institution with
membership in an approved signature
guarantee program pursuant to Rule
17Ad-15 under the Securities Exchange
Act of 1934.

_____
Signature Guaranty

Principal amount to be repurchased
(in an whole multiple of $1,000, if
less than all):

_____

NOTICE: The signature to the foregoing election must correspond to the name as
written upon the face of the Note in every particular, without alteration or a
change whatsoever.

C-2-2

<PAGE>

EXHIBIT D

Form of Accredited Investor Representation Letter

Finisar Corporation
1308 Moffett Drive
Sunnyvale, California  94089

U.S. Bank Trust National Association
100 Wall Street, 16th Floor
New York, New York 10005

Ladies and Gentlemen:

        We are delivering this letter in connection with the proposed transfe
of $_____ principal amount of the 2-1/2% Convertible Subordinated Note
due 2010 (the "Notes") of Finisar Corporation (the "Company"), which are
convertible into shares of the Company's Common Stock, no par value per share
(the "Common Stock").

        We hereby confirm that:

        1.      we are an institutional "accredited investor" withi
the meaning of Rule 501(a)(1), (2), (3) or (7) of Regulation D under
the Securities Act of 1933, as amended (the "Securities Act") (an
"Institutional Accredited Investor");

        2.      any purchase of the securities by us will be for ou
own account or for the account of one or more other institutional
accredited investors for which we exercise sole investment discretion

        3.      in the event that we purchase any of the securities
we will acquire securities having a minimum principal amount of not
less than $250,000 for our own account or for any separate account fo
which we are acting;

4.      we have such knowledge and experience in financial and business matters that we are capable of evaluating the merits and risks of purchasing the securities;

5.      we are not acquiring the securities with a view to distribution thereof or with any present intention of offering or selling any of the securities, except inside the United States in accordance with Rule 144A under the Securities Act, as provided below provided that the disposition of our property and the property of any accounts for which we are acquiring securities shall remain at all times within our control; and

6.      we have received a copy of the offering memorandum relating to the offering of the securities and acknowledge that we ha had access to such financial and other information, and have been afforded the opportunity to ask such questions of

D-1

<PAGE>

representatives of the Company and receive answers thereto, as we dee necessary in connection with our decision to purchase the securities.

We understand and agree (x) that the Notes were originally offered on in a transaction not involving any public offering within the meaning of the Securities Act; and (y) that (A) if we decide to resell, pledge or otherwise transfer any such Notes or any shares of Common Stock issuable upon conversion thereof prior to the later of (1) the expiration of the holding period under Rule 144(k) (or any successor thereto) under the Securities Act which is applicable to such Notes or shares of Common Stock, as the case may be (the da on which such holding period shall expire with respect to any Note or share of Common Stock issued on conversion of notes being hereinafter called, with respect to such Note or share of Common Stock, as the case may be, the "Resale Restriction Termination Date") or (2) three months after we cease to be an affiliate (within the meaning of Rule 144 under the Securities Act) of Finisar such Notes or share of Common Stock issuable upon conversion thereof may be resold, pledged or transferred only (i) to Finisar, (ii) so long as the Notes are eligible for resale pursuant to Rule 144A under the Securities Act to a person whom we reasonably believe is a qualified institutional buyer that is purchasing for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being mad in reliance on Rule 144A under the Securities Act (iii) to an institutional accredited investor ("Institutional Accredited Investor") as defined in Rule 501(a)(1), (2) or (7) under the Securities Act (provided that any resale, pled or other transfer of notes to an institutional accredited investor must be in minimum principal amount of $250,000 of notes), (iv) pursuant to an exemption from registration under the Securities Act provided by Rule 144 (if applicable under the Securities Act or (v) pursuant to an effective registration statemen under the Securities Act, in each case in accordance with any applicable securities laws of any state of the United States, (B) we will, and each subsequent holder is required to, notify any purchaser of Notes or the Common Stock issued upon conversion thereof of the resale restrictions referred to in (A) above, if then applicable. and (C) with respect to any transfer of certificated Notes or of certificates of Common Stock issuable upon conversion of Notes, in either case prior to the applicable Resale Restriction Terminatio Date (other than a transfer pursuant to clause (A) (v) above), we will deliver to Finisar and the trustee (or the transfer agent in the case of the common

stock issuable upon conversion) such certificates and other information and, i
the case of a transfer pursuant to clause (A) (iv) above, a legal opinion as
they may reasonably require to confirm that the transfer by u complies with th
foregoing restrictions.

We acknowledge that you and others will rely upon our confirmations,
acknowledgments and agreements set forth herein, and we agree to notify you
promptly in writing if any of our representations or warranties herein ceases
be accurate and complete.

THIS LETTER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANC
WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF
CONFLICTS OF LAWS.

Date:_____ _____        _____
                                     (Name of Purchaser)

                                     D-2

<PAGE>

                                     By: _____
                                         Name:
                                         Title:
                                     Address:

                                     D-3

</TEXT>
</DOCUMENT>