Exhibit 32

Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (*Pro Hac Vice* Application Pending; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile:  (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone:  (408) 291-6200
Facsimile:   (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

ENDORSED

2007 JUN 22 P 1:14

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as indenture trustee in behalf of all holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **107CV088503**<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

As a Complaint for declaratory relief in the above-captioned action (the "Action") against (1) defendant U.S. Bank Trust National Association, a national banking association ("U.S. Bank"), not in its individual capacity, but solely in its capacity as indenture trustee in behalf of all holders of certain 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Subordinated Notes due 2010, and 2½% Convertible Senior Subordinated Notes due 2010 (collectively, the "Notes") issued by plaintiff Finisar Corporation ("Finisar"), and (2) DOES 1 through 10, inclusive (hereinafter, U.S. Bank and the DOE defendants are sometimes referred to collectively as "Defendants"), Finisar alleges as follows:

## I.   INTRODUCTION

1. Finisar is a technology company based in Santa Clara County that provides fiber optic subsystems and network performance test systems. Finisar's products enable high-speed communications for networking and storage applications over Ethernet local area networks, fibre channel storage area networks, and metropolitan area networks. Finisar has over 4,200 employees, and is a publicly-held company whose shares trade on NASDAQ.

2. In connection with its issuance of the Notes, Finisar, as obligor, entered into a series of three substantially similar indentures (the "Indentures") with U.S. Bank, as indenture trustee. Section 4.02 of each Indenture requires Finisar to provide to U.S. Bank within 15 days of their filing with the Securities Exchange Commission ("SEC") copies of such quarterly, annual, and other reports as Finisar is required to file with the SEC pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act").

3. By this Action, Finisar seeks a judicial declaration that it is *not in default* under Section 4.02 of the Indentures, as alleged by U.S. Bank.

4. Finisar is current in all of its payment obligations under the Notes, and Finisar has provided to U.S. Bank copies of the quarterly, annual, and other reports that Finisar has filed with the SEC. Furthermore, Finisar has provided to U.S. Bank, or offered to provide to U.S. Bank, additional information regarding its financial circumstances and condition.

5. U.S. Bank has alleged—*inter alia* in a series of three letters sent to Finisar, dated April 23, 2007 and labeled "Notice of Default" (the "Q3 Letters")—that Finisar is in default

1.

1  under the Indentures because Finisar has not made with the SEC, and provided to U.S. Bank
2  copies of, certain filings, including a Form 10-Q for Finisar's fiscal quarter ended January 31,
3  2007 (the "Q3 Form 10-Q"). U.S. Bank does not dispute that Finisar has provided to U.S. Bank
4  copies of whatever filings Finisar has made with the SEC, within the time prescribed by the
5  Indentures.

6.  Finisar has been conducting a voluntary review and investigation of stock option grants that Finisar made following the initial public offering of its stock shares on November 11, 1999 ("Finisar's IPO"). In a Form 8-K that Finisar filed with the SEC on June 12, 2007 and a Form 8-K/A that Finisar filed with the SEC on June 13, 2007, copies of which Finisar has provided to U.S. Bank, Finisar announced the initial findings of that review; and that based upon those findings, Finisar will restate its historical financial statements to record charges for compensation expense relating to past stock option grants and the tax impact related to such adjustments.

7.  As Finisar has informed both the SEC and U.S. Bank, until the aforementioned review and investigation is complete and any necessary restatements have been made, Finisar has been and is prevented from filing with the SEC (and, of necessity, providing to U.S. Bank) certain annual and quarterly reports, including its Q3 Form 10-Q. Nevertheless, as Finisar has also informed both the SEC and U.S. Bank, Finisar fully intends to make its Q3 Form 10-Q and any other requisite filings with the SEC (including, for example, filings that may come due in the future, such as, for example, its Form 10-Q for its fiscal quarter ending July 31, 2007 and its 2007 Form 10-K), and to provide copies thereof to U.S. Bank within 15 days of their having been filed with the SEC, as soon as practicable following the completion of the review and investigation and any necessary restatements. Furthermore, Finisar has also provided to U.S. Bank information that would allow it to access Finisar's on-line "webcasts" that detail Finisar's fiscal second and third quarter 2007 financial results. Finisar also has offered to provide to U.S. Bank (and by extension, holders of the Notes) copies of Finisar's preliminary unaudited and other financial statements for its fiscal second and third quarters.

8. Section 4.02 of the Indentures only requires Finisar to file with U.S. Bank copies of those annual and quarterly reports required by Section 13 or 15(d) of the Exchange Act that Finisar *actually has filed* with the SEC. This Finisar has done. Accordingly, Finisar respectfully requests that this Court enter a judgment declaring that Finisar is not in default under Section 4.02 of the Indentures, as alleged by U.S. Bank.

9. U.S. Bank misconstrues the Indentures in such a way that, under its construction, Finisar is deemed to be in default under the Indentures as a consequence of the necessary, temporary deferral of its filing of certain reports with the SEC. Accordingly, U.S Bank—in behalf of holders of the Notes—threatens to seek to declare all unpaid principal, and any accrued, default, or additional interest, on the Notes to be immediately due and payable. There is approximately $250,250,00 million in aggregate principal amount of the Notes outstanding, and an aggregate of approximately $1.8 million in accrued interest not yet due to be paid to holders of the Notes (as of June 20, 2007). Thus, although, on the one hand, the value of the Notes to their holders has not been appreciably impaired, if at all, by the temporary delay in Finisar's filings pending completion of Finisar's investigation and review and any necessary restatement, an acceleration of the principal and accrued interest on the Notes would, on the other hand, substantially harm and constitute an unwarranted forfeiture by Finisar. Accordingly, Finisar respectfully requests that, if the Indentures are given a construction by which Finisar is deemed to be in default, then the Court further declare that enforcement of any acceleration of the Notes for the default alleged by U.S. Bank, under the facts and circumstances presented in this Action, would be inequitable.

## II. THE PARTIES

10. Finisar now is, and at all times relevant to the Action has been, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Santa Clara County at 1389 Moffett Park Drive, Sunnyvale, California.

11. U.S. Bank now is, and at all times relevant to the Action has been, a national banking association. U.S. Bank's articles of association designate a location in Wilmington, Delaware, as U.S. Bank's main office. Accordingly, for purposes of 28 U.S.C. section 1348

3.

1  (which governs the jurisdiction of federal district courts over national banking associations), as
2  interpreted by the United States Supreme Court in *Wachovia Bank, N.A. v. Schmidt* (2006) 546
3  U.S. 303, 126 S.Ct. 941, U.S. Bank is deemed to be a citizen of the State of Delaware (thereby
4  making U.S. Bank and Finisar citizens of the same state for purposes of federal court diversity
5  jurisdiction). Although, to Finisar's understanding, U.S. Bank has not designated a principal
6  place of business within the State of California, Finisar alleges on information and belief that U.S.
7  Bank nonetheless does business within the State of California and within the County of Santa
8  Clara through and out of, *inter alia,* branch offices operated by U.S. Bancorp or U.S. Bancorp
9  subsidiaries within Santa Clara County.

10      12. The true names and capacities, whether individual, corporate, associate, or
11  otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are presently
12  unknown to Finisar, which, therefore, sues such Defendants by such fictitious names. Finisar will
13  seek leave of the Court to amend this Complaint to show the true names and capacities of the
14  DOE defendants when such information can be ascertained.

15      13. Finisar alleges on information and belief that, in performing the acts and
16  committing the omissions alleged herein, at all times relevant hereto, each of the Defendants was
17  the successor-in-interest or affiliate of one or more of the other Defendants, and was at all times
18  acting within the course and scope of such described relationship and with the knowledge and
19  approval of each of the other Defendants.

20      **III.   JURISDICTION AND VENUE**

21      14. This Court is authorized by California Code of Civil Procedure section 1060 to
22  exercise subject matter jurisdiction over Finisar's state law cause of action for declaratory relief.
23      15. This Court is authorized by California Code of Civil Procedure section 410.10 to
24  exercise personal jurisdiction over U.S. Bank in this Action.
25      16. Venue is properly laid in this Court pursuant to California Code of Civil Procedure
26  section 395.5 both because U.S. Bank has not designated a principal place of business within the
27  State of California and because Santa Clara County is the place where (a) the Indentures were
28

made, (b) the Indentures are to be performed, (c) U.S. Bank contends that Finisar's liability under the Indentures arises, and (d) U.S. Bank contends that Finisar's purported default has occurred.

17. The value of the rights sought to be declared by Finisar exceeds $25,000, placing this Action within the unlimited jurisdiction of this Court.

## IV. RELATED LITIGATION

18. The same considerations and circumstances that necessitated temporary deferral of Finisar's filing with the SEC of its Q3 Form 10-Q (and which may as well necessitate a temporary delay in Finisar's filing of certain other reports, such as its Form 10-Q for the fiscal quarter ending July 31, 2007 and its 2007 Form 10-K) have also necessitated temporary deferral of Finisar's filing with the SEC of a Form 10-Q for its fiscal quarter ended October 29, 2006 (the "Q2 Form 10-Q").

19. By three letters sent by U.S. Bank to Finisar, dated January 4, 2007 and labeled "Notice of Default" (the "Q2 Letters"), U.S. Bank alleged that a default occurred under the Indentures that are at issue in this Action when Finisar failed to file with the SEC, on or before December 8, 2006, its Q2 Form 10-Q, and to provide U.S. Bank with a copy of such Form 10-Q within 15 days of its filing with the SEC.

20. On March 2, 2007, Finisar commenced *Finisar Corp. v. U.S. Bank Trust National Association, et al.*, Case No. 2007-107CV081092 (the "Q2 Action"), by filing with this Court a "Complaint for Declaratory Relief" (the "Q2 Complaint"), seeking a declaration that Finisar did not default under the Indentures as alleged in the Q2 Letters or, in the alternative, that even if Finisar were determined to be in default under the Indentures, enforcing acceleration of the Notes for such a technical default would be inequitable under the facts presented.

21. On April 16, 2007, U.S. Bank removed the Q2 Action to the United States District Court for the Northern District of California, San Jose Division (the "Federal Court"), where it was placed on the docket of Hon. Jeremy Fogel, United States District Judge, and assigned Case No. 5:07-CV-02101. U.S. Bank predicated removal of the Q2 Action on an allegation that Finisar's Q2 Complaint presented a question arising under the laws of the United States and that

5.

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1  the Q2 Action therefore falls within the original jurisdiction of the federal district courts created
2  by 28 U.S.C. § 1331.

3      22.    On May 15, 2007, Finisar filed with the Federal Court "Plaintiff Finisar
4  Corporation's Motion to Remand Action to Santa Clara County Superior Court," seeking remand
5  of the Q2 Action *to this Court* on two grounds: first, that U.S. Bank's removal was untimely; and
6  second, that the Q2 Action is premised upon issues of state law, and does not arise under the laws
7  of the United States; thus it does not fall within the original jurisdiction that the Federal Court is
8  authorized to exercise by 28 U.S.C. § 1331. As of the date hereof, Finisar's motion is set for
9  hearing on July 20, 2007, and has not yet been heard or decided. In the event that the Q2 Action
10  is remanded to this Court, as Finisar expects, Finisar will ask this Court to consolidate this Action
11  with the Q2 Action for all purposes.

12      **V.    FACTUAL BACKGROUND**

13      23.    Finisar entered into the earliest of the Indentures, covering Finisar's 5¼%
14  Convertible Notes due 2008 (the "5¼% Note Indenture"), on or about October 15, 2001. Finisar
15  entered into the second Indenture, covering Finisar's 2½% Convertible Subordinated Notes due
16  2010 (the "2½% Note Indenture"), on or about October 15, 2003. Finisar entered into the latest
17  of the Indentures, covering Finisar's 2½% Convertible Senior Notes due 2010 (the "2½% Senior
18  Note Indenture"), on or about October 12, 2006. Under each of the Indentures, U.S. Bank, as
19  indenture trustee, was denominated as "Trustee"; and Finisar, as obligor, was denominated as the
20  "Company."

21      24.    As of the date of the filing of this Complaint, the aggregate principal amounts
22  outstanding of the 5¼% Convertible Subordinated Notes due 2008 (covered by the 5¼% Note
23  Indenture), 2½% Convertible Subordinated Notes due 2010 (covered by the 2½% Note
24  Indenture), and 2½% Convertible Senior Subordinated Notes due 2010 (covered by the 2½%
25  Senior Note Indenture) were $100,250,000, $50,000,000, and $100,000,000, respectively, for a
26  total aggregate principal amount outstanding under the Notes of $250,250,000.

27      25.    At all times since the making of the Indentures, Finisar has been subject to Section
28  13 or 15(d) of the Exchange Act (thus, a portion of Section 4.02 of the Indentures quoted below

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1  has no application). Furthermore, the Indentures have not been, and are not, qualified under the
2  Trust Indenture Act of 1939, as amended (the "TIA"), 15 U.S.C. §§ 77aaa through 77bbbb; and
3  none of the Indentures has been or is the subject of an application for qualification under the TIA.

26. Section 4.02 of each of the Indentures provides:

> The Company *shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the [Securities and Exchange] Commission,* copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the [Securities] Exchange Act [of 1934]. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements. The Company shall also comply with the other provisions of TIA Section 314(a).

[Emphasis added.]

27. As referenced above, Finisar has made public announcements and has submitted to the SEC reports (copies of which it has provided to U.S. Bank) indicating that:

(a) Management initiated a voluntary review of stock option grants that Finisar has made since Finisar's IPO, the preliminary results of which were discussed with the Audit Committee of Finisar's board of directors;

(b) Based on the preliminary results of the voluntary review, Finisar's senior management concluded, and the Audit Committee agreed, that a restatement of Finisar's historical financial statements might be in order, to record non-cash charges for compensation expenses related to some past stock option grants;

(c) To ascertain whether restatement is in order, and to ascertain the scope and content of any such restatement, the Audit Committee, assisted by independent legal counsel and an independent accounting firm, commenced an investigation of Finisar's historical stock options granting practices;

(d) The initial results of the Audit Committee's investigation were announced by Finisar on June 12, 2007, and reported in SEC filings that Finisar made on June 12 and 13, 2007, and subsequently provided to U.S. Bank; and

(e) Until the review, investigation, and restatement process is completed, Finisar will be unable to file periodic Form 10-Q and 10-K reports with the SEC, but Finisar intends to file such reports as soon as practicable following the completion of that process.

28. On or about April 23, 2007, Finisar received from U.S. Bank the three Letters, which are nearly identical in wording. In the Letters, U.S. Bank asserted that Finisar's failure to file with the SEC, by March 17, 2007, its Q3 Form 10-Q constituted a default under the Indentures. The Letters further stated that if Finisar did not cure the purported default within 60 days, an "Event of Default" would occur under the Indentures.

29. As set forth above, Section 4.02 of each Indenture requires Finisar to provide to U.S. Bank copies of certain reports that Finisar has filed with the SEC, within 15 days of filing such reports with the SEC. For the reasons explained above, Finisar's Q3 Form 10-Q has not yet been filed with the SEC and the filing of other periodic reports may be delayed, although Finisar intends to promptly file such reports with the SEC (and provide a copy to U.S. Bank) as soon as practicable following the completion of the Audit Committee's investigation and review and any necessary restatements of Finisar's historical financial statements. Because the Q3 Form 10-Q and other periodic reports have not yet been filed with the SEC, Finisar is not in breach of the requirement of the Indentures to provide filed reports to U.S. Bank, Finisar is not in breach of the Indentures, and no "Event of Default" will occur within 60 days of the date of the Letters.

30. Moreover, even were, *arguendo*, Finisar in some sort of technical default under the Indentures (which Finisar denies), were U.S. Bank to declare acceleration of the Notes in behalf of holders, this Court should enter a judgment declaring that acceleration should not be enforced in this instance because any alleged default by Finisar is technical and immaterial and acceleration would be an inequitably disproportionate remedy constituting a forfeiture.

## VI. CAUSE OF ACTION

### (For Declaratory Relief Against Defendants)

31. Finisar repeats and re-alleges the allegations set forth in paragraph nos. 1 through 30, inclusive, hereinabove, as if fully set forth herein.

32. Section 4.02 of the Indentures requires Finisar only to provide U.S. Bank with copies of certain annual reports, information, documents, and other reports that Finisar has filed with the SEC pursuant to Sections 13 and 15(d) of the Exchange Act, within 15 days of their filing with the SEC.

33. In light of the circumstances described above Finisar has been prevented from making certain filings, including its Q3 Form 10-Q, with the SEC; Finisar is not yet obligated by the Indentures to provide copies of such un-filed reports with U.S. Bank; and Finisar is not in default under the Indentures as alleged by U.S. Bank.

34. Moreover, even if, *arguendo*, Finisar were determined to be in default under Section 4.02 of the Indentures, enforcing acceleration of the Notes for such a technical default would be inequitable under the facts presented in this Action and should be denied.

35. An actual controversy has arisen between Finisar, on the one hand, and U.S. Bank, on the other hand, respecting Finisar's rights and obligations under the Indentures. The declaratory relief sought by Finisar in this Action will clarify and settle the legal relations between the parties and will afford relief from the uncertainty and controversy that presently exist with respect to the parties' respective rights and obligations under the Indentures.

36. By reason of the foregoing, and pursuant to California Code of Civil Procedure section 1060, Finisar seeks a declaration of this Court (which shall have the force of a final judgment) that it is not in breach of Section 4.02 of the Indentures either (a) by reason of any

9.

1  delay in making its Q3 Form 10-Q or any other filing with the SEC, or (b) by reason of any
2  failure to provide to U.S. Bank copies of its Q3 Form 10-Q or any other filing not yet made with
3  the SEC. In the alternative, Finisar seeks a declaration that enforcing any acceleration of the
4  Notes under the facts presented in this Action would be inequitable.
5  ///
6  ///
7  ///
8  ///
9  ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

10.
**FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF**

## VI. PRAYER FOR RELIEF

WHEREFORE, Finisar prays the Court for the following relief:

1. That the Court declare and decree that Finisar is not in breach of Section 4.02 of the Indentures by reason of its delay in making its Q3 Form 10-Q or any other filing that may come due pending the completion of Finisar's review, investigation, and restatement process referenced hereinabove;

2. That the Court declare and decree that Finisar is not in breach of Section 4.02 of the Indentures by reason of its inability or failure to provide U.S. Bank with a copy of Finisar's Q3 Form 10-Q or any other filing not yet made by Finisar with the SEC;

3. That the Court declare and decree that no "Event of Default" under the Indentures has occurred or will occur either (a) within 60 days of the date of the Letters, or (b) as may subsequently be declared by the Trustee on the same or similar grounds as alleged in the Letters;

4. In the alternative, that the Court declare that enforcement of any acceleration of the Notes for the default alleged by U.S. Bank, under the facts and circumstances presented in this Action, would be inequitable;

5. That the Court award Finisar its costs of suit and attorneys' fees and expenses incurred in prosecuting this Complaint; and

6. That the Court award to Finisar such other and further relief as may be deemed just and proper.

DATED: June 21, 2007

Respectfully submitted,

Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP

By /s/ _____
Sterling A. Brennan
Attorneys for Plaintiff FINISAR CORPORATION