Exhibit 35

Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (*Pro Hac Vice* Application Pending; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION



SUPERIOR COURT FOR THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee in behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 1 0 7 C V 0 8 1 0 9 2<br><br>COMPLAINT FOR DECLARATORY RELIEF |

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

As a Complaint in the above-captioned action (the "Action") against (1) defendant U.S. Bank Trust National Association, a national banking association ("U.S. Bank"), not in its individual capacity, but solely in its capacity as indenture trustee in behalf of all holders of certain 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Subordinated Notes due 2010, and 2½% Convertible Senior Subordinated Notes due 2010 (collectively, the "Notes") issued by plaintiff Finisar Corporation ("Finisar"), and (2) DOES 1 through 10, inclusive (hereinafter, U.S. Bank and the DOE defendants are sometimes referred to collectively as "Defendants"), Finisar alleges as follows:

## I. INTRODUCTION

1. Finisar is a technology company based in Santa Clara County that provides fiber optic subsystems and network performance test systems. Finisar's products enable high-speed communications for networking and storage applications over Ethernet local area networks, fibre channel storage area networks, and metropolitan area networks. Finisar has over 4,200 employees, and is a publicly-held company whose shares trade on NASDAQ.

2. By this Action, Finisar seeks a judicial declaration that it is *not in default* under a provision that appears in a series of three indentures entered into between Finisar, as the obligor, and U.S. Bank, in its capacity as indenture trustee, in connection with Finisar's issuance of the Notes. Indeed, despite the fact that Finisar is current in all of its obligations to pay interest on the Notes and that the market value of each of the Notes is either at or above its par value, U.S. Bank nonetheless has alleged in three letters (collectively, the "Letters") labeled "Notice of Default" (one letter directed to each of the three indentures) that it sent to Finisar, each dated January 4, 2007, that Finisar is in default under the indentures.

3. In particular, the Letters allege that the indentures require Finisar to (a) file with the Securities and Exchange Commission (the "SEC"), and (b) provide copies to U.S. Bank within 15 days after their filing with the SEC of, Finisar's annual and quarterly reports, information, documents, and other reports that Finisar is required to file with the SEC pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act"). Further, according to the Letters, a default occurred under the indentures when Finisar failed to file with

1    the SEC, on or before December 8, 2006, a Form 10-Q for its second fiscal quarter ended
2    October 29, 2006 (the "Q2 Form 10-Q"), and to provide U.S. Bank with a copy of such Form
3    10-Q within 15 days of its filing with the SEC.
4         4.   As Finisar has informed both the SEC and U.S. Bank, Finisar is in the process of
5    conducting a voluntary review and investigation of stock option grants that it made following the
6    initial public offering of its stock shares on November 11, 1999 ("Finisar's IPO"). Until such
7    review and investigation is complete, however, Finisar is prevented from filing with the SEC its
8    Q2 Form 10-Q (and, of necessity, providing a copy of such Q2 Form 10-Q to U.S. Bank).
9    Nonetheless, as Finisar has also informed the SEC and U.S. Bank, Finisar does fully intend to file
10   its Q2 Form 10-Q with the SEC as soon as practicable following the completion of its pending
11   voluntary investigation and review—and will provide a copy of such report to U.S. Bank within
12   15 days of its filing with the SEC.
13        5.   In the meantime, Finisar is and has been cooperating with the SEC and working
14   with outside advisors in an effort to resolve any issues regarding the accounting of its stock
15   option grants and to provide its investors and other interested persons with the most accurate
16   information possible regarding the financial condition of the company. Moreover, Finisar has
17   made several public announcements and filings with the SEC (which it has provided copies of to
18   U.S. Bank) informing it of the circumstances requiring the temporary deferral of the filing of
19   Finisar's Q2 Form 10-Q. Furthermore, Finisar has also provided to U.S. Bank information that
20   would allow it to access Finisar's on-line "webcasts" that detail Finisar's fiscal second and third
21   quarter 2007 financial results. Finisar also has offered to provide to U.S. Bank (and by extension,
22   holders of the Notes) copies of Finisar's unaudited preliminary financial statements for its fiscal
23   second and third quarters.
24        6.   Contrary to U.S. Bank's position and the contentions in the Letters, the plain
25   language of Section 4.02 of the indentures only requires Finisar to file with U.S. Bank copies of
26   those annual reports and of the information, documents, and other reports that Finisar *actually has*
27   *filed* with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. This Finisar has done.
28

7.    Given that Section 4.02 of the indentures does not require Finisar to file its Q2 Form 10-Q *with the SEC* (or that it file such Form with the SEC by a particular deadline), and requires only that Finisar provide a copy of its Q2 Form 10-Q to U.S. Bank within 15 days after Finisar actually files such Form with the SEC, Finisar respectfully requests that this Court enter a judgment declaring that Finisar is not in default under Section 4.02 of the indentures, as alleged in the Letters.

8.    If the indentures were to be construed in such a way that Finisar was deemed to be in default as a consequence of the necessary temporary deferral of its filing of the Q2 Form 10-Q with the SEC, U.S Bank—in behalf of holders of the Notes—threatens to seek to declare all unpaid principal, and any accrued, default, or additional interest, on the Notes to be immediately due and payable. There is approximately $250.3 million in aggregate principal amount of the Notes outstanding, and an aggregate of approximately $2.5 million in accrued interest not yet due to be paid to holders of the Notes. Thus, although, on the one hand, the value of the Notes—which presently is above their par value—to their holders has not been appreciably impaired by the temporary delay in the filing of Finisar's Q2 Form 10-Q pending completion of Finisar's investigation and review, an immediate acceleration of the principal and accrued interest on the Notes would, on the other hand, substantially harm Finisar.

## II. THE PARTIES

9.    Finisar now is, and at all times relevant to the Action has been, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Santa Clara County at 1389 Moffett Park Drive, Sunnyvale, California.

10.    U.S. Bank now is, and at all times relevant to the Action has been, a national banking association. Finisar is informed and believes that U.S. Bank's articles of association designate a location in Wilmington, Delaware, as U.S. Bank's main office. Accordingly, for purposes of 28 U.S.C. section 1348 (which governs the jurisdiction of federal district courts over national banking associations), as interpreted by the United States Supreme Court in *Wachovia Bank, N.A. v. Schmidt* (2006) 546 U.S. 303, 126 S.Ct. 941, U.S. Bank is deemed to be a citizen of the State of Delaware (thereby making U.S. Bank and Finisar citizens of the same state for

3.

FINISAR CORPORATION'S COMPLAINT FOR DECLARATORY RELIEF

1  purposes of federal court diversity jurisdiction). Although, to Finisar's understanding, U.S. Bank
2  has not designated a principal place of business within the State of California, Finisar alleges on
3  information and belief that U.S. Bank nonetheless does business within the State of California
4  and within the County of Santa Clara through and out of, *inter alia*, branch offices operated by
5  U.S. Bancorp or U.S. Bancorp subsidiaries within Santa Clara County.

6  11.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 10, inclusive, are presently unknown to Finisar, which, therefore, sues such Defendants by such fictitious names. Finisar will seek leave of the Court to amend this Complaint to show the true names and capacities of the DOE defendants when such information can be ascertained.

11. 12.   Finisar alleges on information and belief that, in performing the acts and committing the omissions alleged herein, at all times relevant hereto, each of the Defendants was the successor-in-interest or affiliate of one or more of the other Defendants, and was at all times acting within the course and scope of such described relationship and with the knowledge and approval of each of the other Defendants.

### III. JURISDICTION AND VENUE

17. 13.   This Court is authorized by California Code of Civil Procedure section 1060 to exercise subject matter jurisdiction over Finisar's cause of action for declaratory relief.

19. 14.   This Court is authorized by California Code of Civil Procedure section 410.10 to exercise personal jurisdiction over U.S. Bank in this Action.

21. 15.   Venue is proper in the Court pursuant to Code of Civil Procedure section 395.5 both because U.S. Bank has not designated a principal place of business within the State of California and because Santa Clara County is the place where (a) the subject indentures were made, (b) the subject indentures are to be performed, (c) U.S. Bank contends that Finisar's liability under the subject indentures arises, and (d) U.S. Bank contends that Finisar's purported default has occurred.

27. 16.   The value of the rights sought to be declared by Finisar exceeds $25,000, placing this Action within the unlimited jurisdiction of this Court.

## IV.   FACTUAL BACKGROUND

17.   On or about October 15, 2001, Finisar entered into that certain "Indenture" with U.S. Bank with respect to Finisar's 5¼% Convertible Notes due 2008, in the aggregate principal amount of $125,000,000 (the "5¼% Note Indenture"). On or about October 15, 2003, Finisar entered into that certain "Indenture" with U.S. Bank with respect to Finisar's 2½% Convertible Subordinated Notes due 2010, in the aggregate principal amount of $150,000,000 (the "2½% Note Indenture"). On or about October 12, 2006, Finisar entered into that certain "Indenture" with U.S. Bank with respect to Finisar's 2½% Convertible Senior Subordinated Notes due 2010, in the aggregate principal amount of $125,000,000 (the "2½% Senior Note Indenture"). (Hereinafter, the 5¼% Note Indenture, the 2½% Note Indenture, and the 2½% Senior Note Indenture are sometimes referred to collectively as the "Indentures.") Under each of the Indentures, U.S. Bank, as indenture trustee, was denominated as "Trustee"; and Finisar, as obligor, was denominated as the "Company."

18.   As of the date of the filing of this Complaint, the aggregate principal amounts outstanding of the 5¼% Convertible Subordinated Notes due 2008 (covered by the 5¼% Note Indenture), 2½% Convertible Subordinated Notes due 2010 (covered by the 2½% Note Indenture), and 2½% Convertible Senior Subordinated Notes due 2010 (covered by the 2½% Senior Note Indenture) were $100,250,000, $50,000,000, and $100,000,000, respectively, for a total aggregate principal amount outstanding under the Notes of $250,250,000.

19.   At all times since the making of the Indentures, Finisar has been subject to Section 13 or 15(d) of the Exchange Act (thus, a portion of Section 4.02 of the Indentures quoted below has no application). Furthermore, the Indentures have not been, and are not, "qualified" under the Trust Indenture Act of 1939, as amended (the "TIA"), 15 U.S.C. §§ 77aaa through 77bbbb.

/ / /
/ / /
/ / /
/ / /
/ / /

20. Section 4.02 of each of the Indentures provides:

> The Company *shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the [Securities and Exchange] Commission,* copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the [Securities] Exchange Act [of 1934]. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements. The Company shall also comply with the other provisions of TIA Section 314(a).

[Emphasis added.]

21. As referenced above, Finisar has made public announcements and has submitted to the SEC reports (copies of which it has provided to U.S. Bank) indicating that it has initiated a voluntary review of stock option grants it has made since Finisar's IPO. The preliminary results of that review were discussed with the Audit Committee of Finisar's board of directors. Based on the preliminary results of the review, Finisar's senior management concluded, and the Audit Committee agreed, that a restatement of Finisar's historical financial statements might be in order, to record non-cash charges for compensation expenses related to some past stock option grants.

22. Finisar has also made public announcements and reported to the SEC in various filings (again, copies of which it has provided to U.S. Bank) that, until the Audit Committee's investigation and review is complete, Finisar will be unable to file its Q2 Form 10-Q, but that it intends to file its Q2 Form 10-Q as soon as practical following the completion of the Audit Committee's investigation and review.

23. On or about January 4, 2007, Finisar received from U.S. Bank the three Letters, which are nearly identical in wording. In the Letters, U.S. Bank asserted that Finisar's failure to file with the SEC, by December 8, 2006, its Q2 Form 10-Q constituted a default under the Indentures. The Letters further stated that if Finisar did not cure the purported default within 60 days, an "Event of Default" would occur under the Indentures.

24. As set forth above, Section 4.02 of each Indenture only requires Finisar to provide to U.S. Bank reports that Finisar actually has filed with the SEC. For the reasons explained above, Finisar's Q2 Form 10-Q has not yet been filed with the SEC, although Finisar intends to promptly file such report with the SEC (and provide a copy to U.S. Bank) upon the completion of its investigation and review. Because Finisar is under no obligation to submit any non-filed report to U.S. Bank, Finisar is not in breach of the Indentures and no "Event of Default" will occur within 60 days of the date of the Letters.

25. Moreover, even were, *arguendo*, Finisar in some sort of technical default under the Indentures (which Finisar denies), were U.S. Bank to declare acceleration of the Notes in behalf of holders, this Court should enter a judgment declaring that acceleration should not be enforced in this instance because any alleged default by Finisar is technical and immaterial and acceleration would be an inequitably disproportionate remedy.

## V.  CAUSE OF ACTION

*(For Declaratory Relief Against Defendants)*

26. Finisar repeats and re-alleges the allegations set forth in paragraph nos. 1 through 25, inclusive, hereinabove, as if fully set forth herein.

27. Section 4.02 of the Indentures requires Finisar only to provide U.S. Bank with copies of certain annual reports, information, documents, and other reports that Finisar has filed with the SEC pursuant to Sections 13 and 15(d) of the Exchange Act, within 15 days of their filing with the SEC.

28. In light of the circumstances described above Finisar has been prevented from filing its Q2 Form 10-Q with the SEC, Finisar is not yet obligated to provide copies of such un-

1  filed report with U.S. Bank, and Finisar is not in default under the Indentures as alleged by U.S.
2  Bank in the Letters.
3      29.    Moreover, even if, *arguendo*, Finisar were determined to be in default under
4  Section 4.02 of the Indentures, enforcing acceleration of the Notes for such a technical default
5  would be inequitable under the facts presented in this Action and should be denied.
6      30.    An actual controversy has arisen between Finisar, on the one hand, and U.S. Bank,
7  on the other hand, respecting Finisar's rights and obligations under the Indentures. The
8  declaratory relief sought by Finisar in this Action will clarify and settle the legal relations
9  between the parties and will afford relief from the uncertainty and controversy that presently exist
10 with respect to the parties' respective rights and obligations under the Indentures.
11     31.    By reason of the foregoing, and pursuant to Code of Civil Procedure section 1060,
12 Finisar seeks a declaration of this Court (which shall have the force of a final judgment) that it is
13 not in breach of Section 4.02 of the Indentures by reason of its inability or failure to date to
14 provide U.S. Bank with a copy of Finisar's Q2 Form 10-Q; and that, accordingly, no "Event of
15 Default" has or will occur within 60 days of the date of the Letters. In the alternative, Finisar
16 seeks a declaration that enforcing any acceleration of the Notes under the facts presented in this
17 Action would be inequitable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Finisar prays the Court for the following relief:

1. That the Court declare and decree that Finisar is not in breach of Section 4.02 of the Indentures by reason of its inability or failure to provide U.S. Bank with a copy of Finisar's Q2 Form 10-Q;

2. That the Court declare and decree that no "Event of Default" under the Indentures has occurred or will occur within 60 days of the date of the Letters;

3. In the alternative, that the Court declare that enforcement of any acceleration of the Notes for the default alleged by U.S. Bank in the Letters, under the facts presented in this Action, would be inequitable;

4. That the Court award Finisar its costs of suit and attorneys' fees and expenses incurred in prosecuting this Complaint; and

5. That the Court award to Finisar such other and further relief as may be deemed just and proper.

DATED: March 2, 2007

Respectfully submitted,

Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP

By _____Sterling A. Brennan_____
Sterling A. Brennan
Attorneys for Plaintiff FINISAR CORPORATION