Table of Contents

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

A summary of activity under the Company's employee stock option plans is as follows:

| Options for Common Stock | Options Available for Grant Number of Shares | Options Outstanding | | | |
|---|---|---|---|---|---|
| | | Number of Shares | Weighted-Average Exercise Price | Weighted-Average Remaining Contractual Term (In years) | Aggregate Intrinsic Value(1) $ (000) |
| **Balance at April 30, 2004** | 4,866,391 | 43,573,024 | $ 2.66 | | |
| Increase in authorized shares | 11,142,516 | | — | | |
| Options granted | (14,797,398) | 14,797,398 | $ 1.31 | | |
| Options exercised | | (1,662,577) | $ 0.87 | | |
| Options canceled | 7,911,103 | (7,911,103) | $ 2.55 | | |
| Shares repurchased | 30,000 | | $ 0.47 | | |
| Options expired | (12,940) | | $ 1.68 | | |
| **Balance at April 30, 2005** | 9,139,672 | 48,796,742 | $ 2.33 | | |
| Increase in authorized shares | 12,946,564 | | | | |
| Options granted | (11,275,720) | 11,275,720 | $ 1.74 | | |
| Options exercised | | (8,965,154) | $ 1.43 | | |
| Options canceled | 9,257,346 | (9,257,346) | $ 2.42 | | |
| **Balance at April 30, 2006** | 20,067,862 | 41,849,962 | $ 2.34 | | |
| Increase in authorized shares | 15,275,605 | | | | |
| Options granted | (8,974,558) | 8,974,558 | $ 3.44 | | |
| Options exercised | | (2,259,152) | $ 1.61 | | |
| Options canceled | 2,446,253 | (2,446,253) | $ 2.48 | | |
| **Balance at April 30, 2007** | 28,815,162 | 46,119,115 | $ 2.58 | 7.11 | $ 69,876 |

(1) Represents the difference between the exercise price and the value of Finisar common stock at April 30, 2007.

The following table summarizes significant ranges of outstanding and exercisable options as of April 30, 2007:

| Range of Exercise Prices | Options Outstanding | | | Options Exercisable | |
|---|---|---|---|---|---|
| | Number Outstanding | Weighted-Average Remaining Contractual Life (In years) | Weighted-Average Exercise Price | Number Exercisable | Weighted-Average Exercise Price |
| $ 0.05 — $ 1.15 | 7,162,137 | 7.12 | $ 1.07 | 3,334,913 | $ 1.03 |
| $ 1.18 — $ 1.50 | 6,747,585 | 6.55 | 1.40 | 4,136,967 | 1.46 |
| $ 1.58 — $ 1.76 | 6,237,765 | 7.60 | 1.75 | 3,101,825 | 1.75 |
| $ 1.77 — $ 1.80 | 8,429,162 | 6.30 | 1.79 | 6,678,420 | 1.80 |
| $ 1.84 — $ 3.10 | 8,667,414 | 8.14 | 2.67 | 2,977,992 | 2.49 |
| $ 3.14 — $ 3.84 | 5,540,606 | 7.14 | 3.46 | 2,539,839 | 3.72 |
| $ 4.01 — $21.69 | 3,027,146 | 7.01 | 8.84 | 1,214,822 | 14.98 |
| $21.71 — $22.5 | 307,300 | 3.27 | 22.10 | 307,300 | 22.10 |
| | 46,119,115 | 7.11 | $ 2.43 | 24,292,078 | $ 2.83 |

USB FIN 002129

## FINISAR CORPORATION

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The Company's vested and expected-to-vest stock options and exercisable stock options as of April 30, 2007 are summarized in the following table:

| | Number of Shares | Weighted-Average Exercise Price | Weighted-Average Remaining Contractual Term (In years) | Aggregate Intrinsic Value ($000's) |
|---|---|---|---|---|
| Vested and expected-to-vest options | 39,818,887 | $ 2.59 | 6.87 | $ 62,253 |
| Exercisable options | 24,292,078 | $ 2.83 | 6.04 | $ 39,113 |

The aggregate intrinsic value in the preceding table represents the total pretax intrinsic value, based on the Company's closing stock price of $3.62 as of April 30, 2007, which would have been received by the option holders had all option holders exercised their options as of that date. The total number of in-the-money options exercisable as of April 30, 2007 was approximately 20.8 million.

*Valuation and Expense Information under SFAS 123R and SFAS 123*

On May 1, 2006, the Company adopted SFAS 123R, which requires the measurement and recognition of compensation expense for all stock-based payment awards made to the Company's employees and directors including employee stock options and employee stock purchases under its 1999 Employee Stock Purchase Plan based on estimated fair values.

As a result of adopting SFAS 123R, the Company's net loss for the year ended April 30, 2007, was $9.0 million higher than if the Company had continued to account for stock-based compensation under APB 25. Basic and diluted loss per share for the year ended April 30, 2007 would have been lower by $0.03 had the Company continued to account for stock-based compensation under APB 25.

The total stock-based compensation capitalized as part of inventory as of April 30, 2007 was $410,000.

As of April 30, 2007, total compensation cost related to unvested stock options not yet recognized was $16.9 million which is expected to be recognized over the next 27 months on a weighted-average basis.

Upon adoption of SFAS 123R, the Company began estimating the value of employee stock options on the date of grant using the Black-Scholes option-pricing model with a straight-line attribution method to recognize stock-based compensation expense. Compensation expense for all stock-based payment awards granted prior to the adoption of SFAS 123R was recognized using the Black-Scholes option-pricing model with a multiple-option approach for the purpose of the pro forma financial information in accordance with SFAS 123.

The fair value of options granted in fiscal 2007, 2006, and 2005 was estimated at the date of grant using the Black-Scholes option-pricing model with the following weighted-average assumptions:

| | Employee Stock Option Plans Year Ended April 30, | | | Employee Stock Purchase Plan Year Ended April 30, | | |
|---|---|---|---|---|---|---|
| | 2007 | 2006 | 2005 | 2007 | 2006 | 2005 |
| Expected term (in years) | 5.25 | 3.19 | 3.28 | 0.50 | 0.50 | 0.46 |
| Volatility | 98% | 107% | 117% | 69% | 68% | 99% |
| Risk-free interest rate | 4.73% | 4.40% | 3.50% | 4.45% | 4.18% | 2.85% |
| Dividend yield | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% | 0.00% |

The expected term represents the period that the Company's stock-based awards are expected to be outstanding and was determined based on the Company's historical experience with similar awards, giving consideration to the contractual terms of the stock-based awards, vesting schedules and expectations of future employee behavior as influenced by changes to the terms of its stock-based awards.

121

USB FIN 002130

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The calculated the volatility factor is based on the Company's historical stock prices.

The Company bases the risk-free interest rate used in the Black-Scholes option-pricing model on constant maturity bonds from the Federal Reserve in which the maturity approximates the expected term.

The Black-Scholes option-pricing model calls for a single expected dividend yield as an input. The Company has not issued any dividends.

As stock-based compensation expense recognized in the consolidated statement of operations for fiscal 2007 is based on awards ultimately expected to vest, it has been reduced for estimated forfeitures. SFAS 123R requires forfeitures to be estimated at the time of grant and revised, if necessary, in subsequent periods if actual forfeitures differ from those estimates. Forfeitures were estimated based on historical experience. In the Company's pro forma information required under SFAS 123 for the periods prior to fiscal 2007, the Company accounted for forfeitures as they occurred.

The weighted-average grant-date per share fair value of options granted in fiscal 2007, 2006, and 2005 was $2.64, $1.13, and $0.92, respectively. The weighted-average estimated per share fair value of shares granted under the Purchase Plan in fiscal 2007, 2006, and 2005 was $0.90, $0.64 , and $0, respectively.

The Black-Scholes option valuation model requires the input of highly subjective assumptions, including the expected life of the stock-based award and the stock price volatility. The assumptions listed above represent management's best estimates, but these estimates involve inherent uncertainties and the application of management judgment. As a result, if other assumptions had been used, our recorded and pro forma stock-based compensation expense could have been materially different from that depicted above and below. In addition, we are required to estimate the expected forfeiture rate and only recognize expense for those shares expected to vest. If our actual forfeiture rate is materially different from our estimate, the stock-based compensation expense could be materially different.

The following table summarizes the pro forma information regarding option grants made to the Company's employees and directors and employee stock purchases related to the Purchase Plan had the Company applied the fair value recognition provisions of SFAS 123 (in thousands, except per-share amounts):

| | Fiscal Years Ended April 30, | |
| | 2006 | 2005 |
| | (As restated) | (As restated) |
|---|---|---|
| Net loss | $ (33,029) | $ (117,728) |
| Add: | | |
| APB 25 stock-based compensation expense, included in net loss, net of tax | 6,819 | 3,838 |
| Less: | | |
| Stock-based compensation expense determined under fair value based method, net of tax | (10,056) | (17,680) |
| Pro forma net loss | $ (36,266) | $ (131,570) |
| Net loss per share — basic and diluted: | | |
| As reported | $ (0.11) | $ (0.51) |
| Pro forma | $ (0.12) | $ (0.57) |
| Shares used in computing reported and pro forma net loss — basic and diluted | 290,518 | 232,210 |

122

USB FIN 002131

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

### 17.  Employee Benefit Plan

The company maintains a defined contribution retirement plan under the provisions of Section 401(k) of the Internal Revenue Code which covers all eligible employees. Employees are eligible to participate in the plan on the first day of the month immediately following twelve months of service with Finisar.

Under the plan, each participant may contribute up to 20% of his or her pre-tax gross compensation up to a statutory limit, which was $15,500 for calendar year 2007. All amounts contributed by participants and earnings on participant contributions are fully vested at all times. Finisar may contribute an amount equal to one-half of the first 6% of each participant's contribution. The Company's expenses related to this plan were $1,255,000, $949,000, and $906,000 for fiscal years ended April 30, 2007, 2006, and 2005, respectively.

### 18.  Income Taxes

The expense (benefit) for income taxes consists of the following (in thousands):

|  | Years Ended April 30, | | |
| --- | --- | --- | --- |
|  | 2007 | 2006 Restated | 2005 Restated |
| Current: | | | |
| Federal | $ 157 | $ | $ |
| State | 86 | | (64) |
| Foreign | 392 | 80 | (712) |
|  | 635 | 80 | (776) |
| Deferred: | | | |
| Federal | 2,019 | 2,123 | 1,500 |
| State | 156 | 164 | 132 |
|  | 2,175 | 2,287 | 1,632 |
| Provision for income taxes | $2,810 | $2,367 | $ 856 |

Loss before income taxes consists of the following (in thousands):

|  | 2007 | 2006 Restated | 2005 Restated |
| --- | --- | --- | --- |
| U.S | $(47,591) | $(35,033) | $(108,975) |
| Foreign | 3,789 | 4,371 | (7,897) |
| Total | $(43,802) | $(30,662) | $(116,872) |

123

USB FIN 002132

Table of Contents

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

A reconciliation of the income tax provision at the federal statutory rate and the effective rate is as follows:

| | Fiscal Years Ended April 30 | | |
| --- | --- | --- | --- |
| | 2007 | 2006 As Restated | 2005 As Restated |
| Expected income tax provision (benefit) at U.S. federal statutory rate | (35.00)% | (35.00)% | (35.00)% |
| Deferred compensation | 0.00 | 0.65 | 0.16 |
| Stock compensation expense | 3.90 | 0.00 | 0.00 |
| Loss on debt extinguishment | 23.76 | 0.00 | 0.00 |
| Non-deductible interest | 4.92 | 5.17 | 4.34 |
| Valuation allowance | 10.07 | 40.70 | 29.70 |
| Foreign loss with no tax benefit | 0.00 | 0.00 | 2.12 |
| Foreign (income) taxed at different rates | (2.84) | (4.73) | 0.00 |
| In-process R&D | 1.25 | 0.00 | 0.00 |
| Other | 0.36 | 0.93 | (0.59) |
| | 6.42% | 7.72% | 0.73% |

The components of deferred taxes consist of the following (in thousands):

| | Fiscal Years Ended April 30, | |
| --- | --- | --- |
| | 2007 | 2006 As Restated |
| Deferred tax assets: | | |
| Inventory reserve | $ 7,387 | $ 5,374 |
| Accruals and reserves | 9,272 | 8,865 |
| Tax credits | 16,633 | 16,109 |
| Net operating loss carryforwards | 146,060 | 144,074 |
| Gain/loss on investments under equity or cost method | 11,862 | 11,791 |
| Depreciation and amortization | — | 625 |
| Purchase accounting for intangible assets | 11,115 | 8,716 |
| Stock compensation | 10,741 | 9,362 |
| Total deferred tax assets | 213,070 | 204,916 |
| Valuation allowance | (201,356) | (204,916) |
| Net deferred tax assets | 11,714 | |
| Deferred tax liabilities: | | |
| Goodwill amortization for tax | (6,090) | (3,919) |
| Tax basis difference on convertible debt | (10,696) | — |
| Depreciation and amortization | (1,018) | |
| Total deferred tax liabilities | (17,804) | (3,919) |
| Total net deferred tax assets (liabilities) | (6,090) | (3,919) |

The Company's valuation allowance increased/(decreased) from the prior year by approximately ($3.6) million, $9.97 million, and $57.0 million in fiscal 2007, 2006 and 2005, respectively.

124

USB FIN 002133

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

Approximately $17.7 million of the valuation allowance at April 30, 2007 is attributable to acquired tax attributes that, when realized, will first reduce unamortized goodwill, next other non-current intangible assets of acquired subsidiaries, and then income tax expense.

A deferred tax liability has been established to reflect tax amortization of goodwill for which no financial statement amortization has occurred under generally accepted accounting principles, as promulgated by SFAS 142.

At April 30, 2007, the Company had federal, state and foreign net operating loss carryforwards of approximately $437.6 million, $155.2 million and $0.5 million, respectively, and federal and state tax credit carryforwards of approximately $9.8 million, and $10.5 million, respectively. The net operating loss and tax credit carryforwards will expire at various dates beginning in 2009, if not utilized. Utilization of the Company's net operating loss and tax credit carryforwards may be subject to a substantial annual limitation due to the ownership change limitations set forth in Internal Revenue Code Section 382 and similar state provisions. Such an annual limitation could result in the expiration of the net operating loss and tax credit carryforwards before utilization.

The Company's manufacturing operations in Malaysia operate under a tax holiday which expires in fiscal 2011. This tax holiday has had no effect on the Company's net loss and net loss per share in fiscal 2005, 2006, and 2007 due to net operating losses sustained in fiscal 2004 and 2005 and net operating loss carryforwards realized in fiscal 2007

As of April 30, 2007, federal income taxes were not provided for $870,000 of cumulative undistributed earnings of foreign subsidiaries which are considered permanently reinvested offshore. The determination of the amount of unrecognized federal deferred tax expense is not practicable as of April 30, 2007.

In June 2006, the FASB issued Interpretation, or FIN, No. 48, *Accounting for Uncertainty in Income Taxes — an Interpretation of SFAS No. 109*, or FIN 48. FIN 48 clarifies the accounting for uncertain taxes recognized in an enterprise's financial statements in accordance with SFAS No. 109, *Accounting for Income Taxes*. FIN 48 prescribes a recognition threshold and measurement of a tax position taken or expected to be taken in an enterprise's tax return. In addition, FIN 48 provides guidance on derecognition, classification, interest and penalties, accounting in interim periods and disclosure related to uncertain income tax positions. FIN 48 is effective for the fiscal years beginning after December 15, 2006 for all public companies. Accordingly, the Company was required to adopt FIN 48 as of May 1, 2007. The adoption of FIN 48 did not have a material impact on our consolidated financial statements.

**Short Cut Election**

In November 2005, the FASB issued Staff Position No. FAS 123(R)-3, "Transition Election Related to Accounting for the Tax Effects of Share-Based Payment Awards" ("FSP 123R-3"). The Company has elected to adopt the alternative transition method provided in FSP 123R-3 for calculating the tax effects of stock-based compensation under SFAS 123R. The alternative transition method includes simplified methods to establish the beginning balance of the additional paid-in-capital pool ("APIC pool") related to the tax effects of stock-based compensation, and for determining the subsequent impact on the APIC pool and consolidated statements of cash flows of the tax effects of stock-based compensation awards that are outstanding upon adoption of SFAS 123R.

**19.  Segments and Geographic Information**

The Company designs, develops, manufactures and markets optical subsystems, components and test and monitoring systems for high-speed data communications. The Company views its business as having two principal operating segments, consisting of optical subsystems and components and network test and monitoring systems.

Optical subsystems consist primarily of transceivers sold to manufacturers of storage and networking equipment for storage area networks (SANs) and local area networks (LANs), and metropolitan access networks (MAN) applications. Optical subsystems also include multiplexers, de-multiplexers and optical add/drop modules for use in MAN applications. Optical components consist primarily of packaged lasers and photo-detectors which

125

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

are incorporated in transceivers, primarily for LAN and SAN applications. Network test and monitoring systems include products designed to test the reliability and performance of equipment for a variety of protocols including Fibre Channel, Gigabit Ethernet, 10 Gigabit Ethernet, iSCSI, SAS and SATA. These test and monitoring systems are sold to both manufacturers and end-users of the equipment.

Both of the Company's operating segments and its corporate sales function report to the President and Chief Executive Officer. Where appropriate, the Company charges specific costs to these segments where they can be identified and allocates certain manufacturing costs, research and development, sales and marketing and general and administrative costs to these operating segments, primarily on the basis of manpower levels or a percentage of sales. The Company does not allocate income taxes, non-operating income, acquisition related costs, stock compensation, interest income and interest expense to its operating segments. The accounting policies of the segments are the same as those described in the summary of significant accounting policies. There are no intersegment sales.

Information about reportable segment revenues and income are as follows (in thousands):

| | Fiscal Years Ended April 30, | | |
|---|---|---|---|
| | 2007 | 2006 (Restated) | 2005 (Restated) |
| **Revenues:** | | | |
| Optical subsystems and components | $381,263 | $325,956 | $ 241,582 |
| Network test and monitoring systems | 37,285 | 38,337 | 39,241 |
| Total revenues | $418,548 | $364,293 | $ 280,823 |
| **Depreciation and amortization expense:** | | | |
| Optical subsystems and components | $ 25,757 | $ 32,929 | $ 28,157 |
| Network test and monitoring systems | 1,136 | 1,512 | 935 |
| Total depreciation and amortization expense | $ 26,893 | $ 34,441 | $ 29,092 |
| **Operating income (loss):** | | | |
| Optical subsystems and components | 17,806 | (2,901) | (36,883) |
| Network test and monitoring systems | (5,852) | (1,412) | (7,502) |
| Total operating income (loss) | 11,954 | (4,313) | (44,385) |
| **Unallocated amounts:** | | | |
| Amortization of acquired developed technology | (6,002) | (17,671) | (22,268) |
| Amortization of deferred stock compensation | — | — | (162) |
| In-process research and development | (5,770) | — | (1,558) |
| Amortization of other intangibles | (1,814) | (1,747) | (1,104) |
| Impairment of assets | — | — | (18,798) |
| Impairment of goodwill and intangible assets | — | (853) | (3,656) |
| Restructuring costs | — | (3,064) | (287) |
| Loss on debt extinguishment | (31,606) | — | — |
| Interest income (expense), net | (9,840) | (12,360) | (12,072) |
| Other non-operating income (expense), net | (724) | 9,346 | (12,582) |
| Total unallocated amounts | (55,756) | (26,349) | (72,487) |
| Loss before income tax | $ (43,802) | $ (30,662) | $(116,872) |

126

USB FIN 002135

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

The following is a summary of total assets by segment (in thousands):

| | Fiscal Years Ended April 30, | |
|---|---|---|
| | 2007 | 2006 |
| | | (Restated) |
| Optical subsystems and components | $392,260 | $350,129 |
| Network test and monitoring systems | 76,885 | 72,422 |
| Other assets | 77,527 | 83,919 |
| | $546,672 | $506,470 |

Cash, short-term, restricted and minority investments are the primary components of other assets in the above table.

The following is a summary of operations within geographic areas based on the location of the entity purchasing the Company's products (in thousands):

| | Fiscal Years Ended April 30, | | |
|---|---|---|---|
| | 2007 | 2006 | 2005 |
| Revenues from sales to unaffiliated customers: | | | |
| United States | $269,451 | $202,962 | $184,829 |
| Rest of the world | 149,097 | 161,331 | 95,994 |
| | $418,548 | $364,293 | $280,823 |

Revenues generated in the U.S. are all from sales to customers located in the United States.

The following is a summary of long-lived assets within geographic areas based on the location of the assets (in thousands):

| | April 30, 2007 | April 30, 2006 |
|---|---|---|
| Long-lived assets | | |
| United States | $237,691 | $233,498 |
| Malaysia | 26,589 | 21,649 |
| Rest of the world | 3,351 | 2,984 |
| | $267,631 | $258,131 |

The following is a summary of capital expenditure by reportable segment (in thousands):

| | Fiscal Years Ended April 30, | |
|---|---|---|
| | 2007 | 2006 |
| Optical subsystems and components | $22,057 | $22,747 |
| Network test and monitoring systems | 284 | 140 |
| Total capital expenditures | $22,341 | $22,887 |

**20. Pending Litigation**

*Matters Related to Historical Stock Option Grant Practices*

On November 30, 2006, the Company announced that it had undertaken a voluntary review of its historical stock option grant practices subsequent to its initial public offering in November 1999. The review was initiated by senior management, and preliminary results of the review were discussed with the Audit Committee of the Company's Board of Directors. Based on the preliminary results of the review, senior management concluded, and

127

USB FIN 002136

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

the Audit Committee agreed, that it was likely that the measurement dates for certain stock option grants differed from the recorded grant dates for such awards and that the Company would likely need to restate its historical financial statements to record non-cash charges for compensation expense relating to some past stock option grants. The Audit Committee thereafter conducted a further investigation and engaged independent legal counsel and financial advisors to assist in that investigation. The Audit Committee concluded that measurement dates for certain option grants differ from the recorded grant dates for such awards. The Company's management, in conjunction with the Audit Committee, conducted a further review to finalize revised measurement dates and determine the appropriate accounting adjustments to its historical financial statements, which are reflected in this report. The announcement of the investigation, and related delays in filing its quarterly reports on Form 10-Q for the quarters ended October 29, 2006 (the "October 10-Q"), January 28, 2007 (the "January 10-Q") and July 29, 2007 (the "July 10-Q") and this annual report on Form 10-K for the fiscal year ended April 30, 2007 (the "2007 10-K"), have resulted in the initiation of regulatory proceedings as well as civil litigation and claims.

*Nasdaq Determination of Non-compliance*

On December 13, 2006, the Company received a Staff Determination notice from the Nasdaq Stock Market stating that the Company was not in compliance with Marketplace Rule 4310(c)(14) because it did not timely file the October 10-Q and, therefore, that its common stock was subject to delisting from the Nasdaq Global Select Market. The Company received similar Staff Determination Notices with respect to its failure to timely file the January the July 10-Q and the 2007 10-K. In response to the original Staff Determination Notice, the Company requested a hearing before a Nasdaq Listing Qualifications Panel (the "Panel") to review the Staff Determination and to request additional time to comply with the filing requirements pending completion of the Audit Committee's investigation. The hearing was held on February 15, 2007. The Company thereafter supplemented its previous submission to Nasdaq to include the subsequent periodic reports in its request for additional time to make required filings. On April 4, 2007, the Panel granted the Company additional time to comply with the filing requirements until June 11, 2007 for the October 10-Q and until July 3, 2007 for the January 10-Q. The Company appealed the Panel's decision to the Nasdaq Listing and Hearing Review Counsel (the "Listing Council"), seeking additional time to make the filings. On May 18, 2007, the Listing Council agreed to review the Panel's April 4, 2007 decision and stayed that decision pending review of the Company's appeal. On October 5, 2007, the Listing Council granted the Company an exception until December 4, 2007 to file its delinquent periodic reports and restatement. On November 26, 2007, the Company filed an appeal with the Nasdaq Board of Directors seeking a review of the Listing Council's decision and a stay of the decision, including the Listing Council's December 4, 2007 deadline. On November 30, 2007, the Nasdaq Board of Directors agreed to review the Listing Council's decision and stayed the decision pending further consideration by the Board. The Company believes that the filing of this report, and the simultaneous filing of its delinquent reports on Form 10-Q, will satisfy the conditions of the Listing Council's decision and that its common stock will continue to be listed on the Nasdaq Global Select Market.

*Securities and Exchange Commission Inquiry*

In November 2006, the Company informed the staff of the Securities and Exchange Commission (the "SEC") of the voluntary investigation that had been undertaken by the Audit Committee of the Board of Directors. The Company was subsequently notified by the SEC that the SEC was conducting an informal inquiry regarding the Company's historical stock option grant practices. The Company is cooperating with the SEC's review.

*Stock Option Derivative Litigation*

Following the announcement by the Company on November 30, 2006 that the Audit Committee of the Board of Directors had voluntarily commenced an investigation of the Company's historical stock option grant practices, the Company was named as a nominal defendant in several shareholder derivative cases. These cases have been consolidated into two proceedings pending in federal and state courts in California. The federal court cases have been consolidated in the United States District Court for the Northern District of California. The state court cases have been consolidated in the Superior Court for the State of California for the County of Santa Clara. Plaintiffs in

128

USB FIN 002137

## FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

all cases have alleged that certain current or former officers and directors of the Company caused it to grant stock options at less than fair market value, contrary to the Company's public statements (including its financial statements), and that, as a result, those officers and directors are liable to the Company. No specific amount of damages has been alleged, and by the nature of the lawsuits no damages will be alleged, against the Company. On May 22, 2007, the state court granted the Company's motion to stay the state court action pending resolution of the consolidated federal court action. On June 12, 2007, the plaintiffs in the federal court case filed an amended complaint to reflect the results of the stock option investigation announced by the Audit Committee in June 2007. On August 28, 2007, the Company and the individual defendants filed motions to dismiss the complaint. A hearing on the motions has been set for January 11, 2008.

*Trust Indenture Litigation*

On January 4, 2007, the Company received three substantially identical purported notices of default from U.S. Bank Trust National Association, as trustee (the "Trustee") for the Company's 2 1/2% Convertible Senior Subordinated Notes due 2010, its 2 1/2% Convertible Subordinated Notes due 2010 and its 5 1/4% Convertible Subordinated Notes due 2008 (collectively, the "Notes"). The notices asserted that the Company's failure to timely file the October 10-Q with the SEC and to provide a copy to the Trustee constituted a default under each of the three indentures between the Company and the Trustee governing the respective series of Notes (the "Indentures"). The notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. As previously reported, the Company had delayed filing the October 10-Q pending the completion of the review of its historical stock option grant practices conducted by the Audit Committee of its Board of Directors.

The Company believes that it is not in default under the terms of the Indentures. The Company contends that the plain language of each Indenture requires only that the Company file with the Trustee reports that have actually been filed with the SEC, and that, since the October 10-Q had not yet been filed with the SEC, the Company was under no obligation to file it with the Trustee.

In anticipation of the expiration of the 60-day cure period under the notices on March 5, 2007, and the potential assertion by the Trustee or the noteholders that an "Event of Default" had occurred and a potential attempt to accelerate payment on one or more series of the Notes, on March 2, 2007, the Company filed a lawsuit in the Superior Court for the State of California for the County of Santa Clara against U.S. Bank Trust National Association, solely in its capacity as Trustee under the Indentures, seeking a judicial declaration that the Company is not in default under the three Indentures, based on the Company's position as described above. The Trustee filed an answer to the complaint generally denying all allegations and also filed a notice of removal of the state case to the United States District Court for the Northern District of California. On October 12, 2007, the action was remanded back to the state court in which it was commenced because the Trustee's notice of removal was not timely.

As expected, on March 16, 2007, the Company received three additional notices from the Trustee asserting that "Events of Default" under the Indentures had occurred and were continuing based on the Company's failure to cure the alleged default within the 60-day cure period.

On April 24, 2007, the Company received three substantially identical purported notices of default from the Trustee for each of the Indentures, asserting that the Company's failure to timely file the January 10-Q with the SEC and to provide a copy to the Trustee constituted a default under each of the Indentures. The notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. The Company believes that it is not in default under the terms of the Indentures for the reasons described above.

On June 21, 2007, the Company filed a second declaratory relief action against the Trustee in the Superior Court of California for the County of Santa Clara. The second action is essentially identical to the first action filed on March 2, 2007 except that it covers the notices asserting "Events of Default" received in April 2007 and any other notices of default that the Trustee may deliver in the future with respect to the Company's delay in filing, and providing copies to the Trustee, of periodic reports with the SEC. The Trustee filed an answer to the complaint

129

USB FIN 002138

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

generally denying all allegations and filed a notice of removal to the United States District Court for the Northern District of California. The Company has filed a motion to remand to state court, which was heard and taken under submission on November 2, 2007.

On July 9, 2007, the Company received three substantially identical purported notices of default from the Trustee for each of the Indentures, asserting that the Company's failure to timely file this Form 10-K report with the SEC and to provide a copy to the Trustee constituted a default under each of the Indentures. As before, the notices each indicated that, if the Company did not cure the purported default within 60 days, an "Event of Default" would occur under the respective Indenture. The Company believes that it is not in default under the terms of the Indentures for the reasons described above.

To date, neither the Trustee nor the holders of at least 25% in aggregate principal amount of one or more series of the Notes have declared all unpaid principal, and any accrued interest, on the Notes to be due and payable, although the Trustee stated in the notices that it reserved the right to exercise all available remedies. As of April 30, 2007 and October 31, 2007, there was $250.3 million in aggregate principal amount of Notes outstanding and an aggregate of approximately $558,000 in accrued interest.

*Patent Litigation*

*DirecTV Litigation*

On April 4, 2005, the Company filed an action for patent infringement in the United States District Court for the Eastern District of Texas against the DirecTV Group, Inc., DirecTV Holdings, LLC, DirecTV Enterprises, LLC, DirecTV Operations, LLC, DirecTV, Inc., and Hughes Network Systems, Inc. (collectively, "DirecTV"). The lawsuit involves the Company's U.S. Patent No. 5,404,505 (the "505 patent"), which relates to technology used in information transmission systems to provide access to a large database of information. On June 23, 2006, following a jury trial, the jury returned a verdict that the Company's patent had been willfully infringed and awarded the Company damages of $78,920,250. In a post-trial hearing held on July 6, 2006, the Court determined that, due to DirecTV's willful infringement, those damages would be enhanced by an additional $25 million. Further, the Court awarded the Company pre-judgment interest on the jury's verdict in the amount of 6% compounded annually from April 4, 1999, amounting to approximately $13.4 million. Finally, the Court awarded the Company costs of $147,282 associated with the litigation. The Court declined to award the Company its attorney's fees. The Court denied the Company's motion for injunctive relief, but ordered DirecTV to pay a compulsory ongoing license fee to the Company at the rate of $1.60 per set-top box activated by or on behalf of DirecTV for the period beginning June 16, 2006 through the duration of the patent, which expires in April 2012. The Court entered final judgment in favor of the Company and against DirecTV on July 7, 2006. On September 1, 2006, the Court denied DirecTV's post-trial motions seeking to have the jury verdict set aside or reversed and requesting a new trial on a number of grounds. In another written post-trial motion, DirecTV asked the Court to allow DirecTV to place any amounts owed the Company under the compulsory license into an escrow account pending the outcome of any appeal and for those amounts to be refundable in the event that DirecTV prevails on appeal. The Court granted DirecTV's motion and payments under the compulsory license are being made into an escrow account pending the outcome of the appeal. As of October 12, 2007, DirecTV has deposited approximately $28 million into escrow. These escrowed funds represent DirecTV's compulsory royalty payments for the period from June 17, 2006 through September 30, 2007.

DirecTV has appealed to the United States Court of Appeals for the Federal Circuit. In its appeal, DirecTV raised issues related to claim construction, infringement, invalidity, willful infringement and enhanced damages. The Company cross-appealed, raising issues related to the denial of the Company's motion for permanent injunction, the trial court's refusal to enhance future damages for willfulness and the trial court's determination that some of the asserted patent claims are invalid. The appeals have been consolidated. The parties were ordered to participate in the appellate court's mandatory mediation program, which occurred on February 13, 2007 without resolution. The parties have filed their respective briefs with the appellate court. A third party, New York Intellectual Property Law Association ("NYIPLA") filed an *amicus* brief urging the appellate court to vacate

130

USB FIN 002139

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

the portion of trial court's judgment denying the Company's motion for a permanent injunction and ordering DirecTV to pay royalties pursuant to a compulsory license. Over DirecTV's objection, the appellate court accepted NYIPLA's *amicus* brief. On November 19, 2007, the Court of Appeals denied NYIPLA's motion to file a reply brief. Oral arguments have been set for January 7, 2008. Subsequent to the oral arguments, it is anticipated that a decision from the appellate court will be issued between March 2008 and November 2008.

### Comcast Litigation

On July 7, 2006, Comcast Cable Communications Corporation, LLC ("Comcast") filed a complaint against the Company in the United States District Court, Northern District of California, San Francisco Division. Comcast seeks a declaratory judgment that the Company's '505 patent is not infringed and is invalid. The '505 patent is the same patent alleged by the Company in its lawsuit against DirecTV. The Company's motion to dismiss the declaratory judgment action was denied on November 9, 2006. As a result, on November 22, 2006, the Company filed an answer and counterclaim alleging that Comcast infringes the '505 patent and seeking damages to be proven at trial. The court held a claim construction hearing and, on April 6, 2007, issued its claim construction ruling. Discovery is now underway. The parties have been ordered to a mediation and settlement conference on December 13, 2007. A jury trial has been scheduled for March 3, 2008.

### EchoStar Litigation

On July 10, 2006, EchoStar Satellite LLC, EchoStar Technologies Corporation and NagraStar LLC (collectively "EchoStar") filed an action against the Company in the United States District Court for the District of Delaware seeking a declaration that EchoStar does not infringe, and has not infringed, any valid claim of the Company's '505 patent. The '505 patent is the same patent that is in dispute in the DirecTV and Comcast lawsuits. On October 24, 2006, the Company filed a motion to dismiss the action for lack of a justiciable controversy. The Court denied the Company's motion on September 25, 2007. The Company filed its answer and counterclaim on October 10, 2007. No scheduling order has been entered in the case, and discovery has not yet begun.

### XM/Sirius Litigation

On April 27, 2007, the Company filed an action for patent infringement in the United States District Court for the Eastern District of Texas, Lufkin Division, against XM Satellite Radio Holdings, Inc., XM Satellite Radio, Inc., and XM Radio, Inc. (collectively, "XM"), and Sirius Satellite Radio, Inc. and Satellite CD Radio, Inc. (collectively, "Sirius"). Judge Clark, the same judge who presided over the DirecTV trial, has been assigned to the case. The lawsuit alleges that XM and Sirius have infringed and continue to infringe the Company's '505 patent and seeks an injunction to prevent further infringement, actual damages to be proven at trial, enhanced damages for willful infringement and attorneys' fees. The defendants filed an answer denying infringement of the '505 patent and asserting invalidity and other defenses. The defendants also moved to stay the case pending the outcome of the DirecTV appeal and the re-examination of the '505 patent described below. The defendants' motion for a stay was denied. Discovery is now underway. The claim construction hearing has been set for February 6, 2008, and the trial has been set for September 15, 2008.

### Requests for Re-Examination of the '505 Patent

Three requests for re-examination of the Company's '505 patent have been filed with the United States Patent and Trademark Office ("PTO"). The '505 patent is the patent that is in dispute in the DirecTV, EchoStar, Comcast and XM/Sirius lawsuits. On December 11, 2006, the PTO entered an order granting the first request and, on March 21, 2007, the PTO entered an order granting the second request. The third request, filed on August 1, 2007, was partially granted on September 28, 2007. The Company expects that the PTO will take steps to consolidate these requests into one request for re-examination. Alternately, the PTO may consolidate the first two requests and keep the third separate because it is directed to different claims than the first two requests. During the re-examination, some or all of the claims in the '505 patent could be invalidated or revised to narrow their scope, either of which could have a material adverse impact on the Company's position in the DirecTV, EchoStar, Comcast and

USB FIN 002140

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

XM/Sirius lawsuits. Resolution of one or more re-examination requests of the '505 Patent is likely to take more than 15 months.

*Securities Class Action*

A securities class action lawsuit was filed on November 30, 2001 in the United States District Court for the Southern District of New York, purportedly on behalf of all persons who purchased the Company's common stock from November 17, 1999 through December 6, 2000. The complaint named as defendants Finisar, Jerry S. Rawls, the Company's President and Chief Executive Officer, Frank H. Levinson, the Company's former Chairman of the Board and Chief Technical Officer, Stephen K. Workman, the Company's Senior Vice President and Chief Financial Officer, and an investment banking firm that served as an underwriter for the Company's initial public offering in November 1999 and a secondary offering in April 2000. The complaint, as subsequently amended, alleges violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(b) of the Securities Exchange Act of 1934, on the grounds that the prospectuses incorporated in the registration statements for the offerings failed to disclose, among other things, that (i) the underwriter had solicited and received excessive and undisclosed commissions from certain investors in exchange for which the underwriter allocated to those investors material portions of the shares of the Company's stock sold in the offerings and (ii) the underwriter had entered into agreements with customers whereby the underwriter agreed to allocate shares of the Company's stock sold in the offerings to those customers in exchange for which the customers agreed to purchase additional shares of the Company's stock in the aftermarket at pre-determined prices. No specific damages are claimed. Similar allegations have been made in lawsuits relating to more than 300 other initial public offerings conducted in 1999 and 2000, which were consolidated for pretrial purposes. In October 2002, all claims against the individual defendants were dismissed without prejudice. On February 19, 2003, the Court denied defendants' motion to dismiss the complaint. In July 2004, the Company and the individual defendants accepted a settlement proposal made to all of the issuer defendants. Under the terms of the settlement, the plaintiffs would dismiss and release all claims against participating defendants in exchange for a contingent payment guaranty by the insurance companies collectively responsible for insuring the issuers in all related cases, and the assignment or surrender to the plaintiffs of certain claims the issuer defendants may have against the underwriters. Under the guaranty, the insurers would be required to pay the amount, if any, by which $1 billion exceeds the aggregate amount ultimately collected by the plaintiffs from the underwriter defendants in all the cases. If the plaintiffs fail to recover $1 billion and payment is required under the guaranty, the Company would be responsible to pay its pro rata portion of the shortfall, up to the amount of the self-insured retention under the Company's insurance policy, which may be up to $2 million. The timing and amount of payments that the Company could be required to make under the proposed settlement would depend on several factors, principally the timing and amount of any payment that the insurers may be required to make pursuant to the $1 billion guaranty. The Court gave preliminary approval to the settlement in February 2005 and held a hearing in April 2006 to consider final approval of the settlement. Before the Court issued a final decision on the settlement, on December 5, 2006, the United States Court of Appeals for the Second Circuit vacated the class certification of plaintiffs' claims against the underwriters in six cases designated as focus or test cases. Thereafter, on December 14, 2006, the Court ordered a stay of all proceedings in all of the lawsuits pending the outcome of the plaintiffs' petition to the Second Circuit Court of Appeals for a rehearing en banc and resolution of the class certification issue. On April 16, 2007, the Second Circuit Court of Appeals denied the plaintiffs' petition for a rehearing, but clarified that the plaintiffs may seek to certify a more limited class. Subsequently, and consistent with these developments, the Court entered an order, at the request of the plaintiffs and issuers, to deny approval of the settlement, and the plaintiffs filed an amended complaint in an attempt to comply with the decision of the Second Circuit Court of Appeals. If an amended or modified settlement is not reached, and thereafter approved by the Court, the Company intends to defend the lawsuit vigorously. Because of the inherent uncertainty of litigation, however, the Company cannot predict its outcome. If, as a result of this dispute, the Company is required to pay significant monetary damages, its business would be substantially harmed.

The Company cannot predict the outcome of the legal proceedings discussed above. No amount of loss, if any, is considered probable or measurable and no loss contingency has been recorded at the balance sheet date.

USB FIN 002141

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

**21.    Gain on Sale of a Minority Investment**

In November 2005, the Company received cash payments from Goodrich Corporation totaling $11.0 million related to the sale of the Company's equity interest in Sensors Unlimited, Inc. The Company had not valued this interest for accounting purposes. Accordingly, the Company recorded a gain of $11.0 million related to this transaction in the third quarter of fiscal 2006 and classified this amount as other income (expense), net on the consolidated statement of operations.

In April 2007, the Company received a final cash payment from Goodrich Corporation totaling $1.2 million for funds that had been held in escrow related to the sale of the Company's equity interest in Sensors Unlimited, Inc. The Company had not valued this interest for accounting purposes. Accordingly, the Company recorded a gain of $1.2 million related to this transaction in the fourth quarter of fiscal 2007 and classified this amount as other income (expense), net on the consolidated statement of operations.

**22.    Restructuring and Assets Impairments**

The Company recorded a restructuring charge of $287,000 in fiscal 2005 to adjust the operating lease liability for its Hayward facility that was closed in fiscal 2003. As of April 30, 2007 all payments associated with the operating lease on this facility have been paid.

During the second quarter of fiscal 2006, the Company consolidated its Sunnyvale facilities into one building and permanently exited a portion of its Scotts Valley facility. As a result of these activities, the Company recorded restructuring charges of approximately $3.1 million. These restructuring charges included $290,000 of miscellaneous costs required to effect the closures and approximately $2.8 million of non-cancelable facility lease payments. Of the $3.1 million in restructuring charges, $1.9 million related to its optical subsystems and components segment and $1.2 million related to its network test and monitoring systems segment.

As of April 30, 2007, $898,000 of committed facilities payments related to restructuring activities remains accrued and is expected to be fully utilized by the end of fiscal 2011.

The facilities consolidation charges were calculated using estimates and were based upon the remaining future lease commitments for vacated facilities from the date of facility consolidation, net of estimated future sublease income. The estimated costs of vacating these leased facilities were based on market information and trend analyses, including information obtained from third party real estate sources.

**23.    Warranty**

The Company generally offers a one year limited warranty for its products. The specific terms and conditions of these warranties vary depending upon the product sold. The Company estimates the costs that may be incurred under its basic limited warranty and records a liability in the amount of such costs based on revenue recognized. Factors that affect the Company's warranty liability include the historical and anticipated rates of warranty claims. The Company periodically assesses the adequacy of its recorded warranty liabilities and adjusts the amounts as necessary.

Changes in the Company's warranty liability during the period are as follows (in thousands):

|  | April 30, | |
|  | 2007 | 2006 |
| --- | --- | --- |
| Beginning balance | $ 1,767 | $ 2,963 |
| Additions during the period based on product sold | 2,264 | 1,753 |
| Settlements | (1,031) | (354) |
| Changes in liability for pre-existing warranties, including expirations | (1,182) | (2,595) |
| Ending balance | $ 1,818 | $ 1,767 |

USB FIN 002142

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

**24.  Related Parties**

Frank H. Levinson, the Company's former Chairman of the Board and Chief Technical Officer and a current member of the Company's board of directors, is a member of the board of directors of Fabrinet, Inc., a privately held contract manufacturer. In June 2000, the Company entered into a volume supply agreement, at rates which the Company believes to be market, with Fabrinet under which Fabrinet serves as a contract manufacturer for the Company. In addition, Fabrinet purchases certain products from the Company. During the fiscal years ended April 30, 2007, 2006 and 2005, the Company recorded purchases from Fabrinet of approximately $77.2 million, $72.1 million, and $52.3 million, respectively, and Fabrinet purchased products from the Company totaling approximately $42.8 million, $27.0 million, and $24.0 million, respectively. At April 30, 2007 and 2006, the Company owed Fabrinet approximately $1.5 million and $10.0 million, respectively, and Fabrinet owed the Company approximately $2.1 million and $7.6 million, respectively.

In connection with the acquisition by VantagePoint Venture Partners of the 34 million shares of common stock held by Infineon Technologies AG that the Company had previously issued to Infineon in connection with its acquisition of Infineon's optical transceiver product lines, the Company entered into an agreement with VantagePoint under which the Company agreed to use its reasonable best efforts to elect a nominee of VantagePoint to the Company's board of directors, provided that the nominee was reasonably acceptable to the board's Nominating and Corporate Governance Committee as well as the full board of directors. In June 2005, David C. Fries, a Managing Director of VantagePoint, was elected to the board of directors pursuant to that agreement. The Company also agreed to file a registration statement to provide for the resale of the shares held by VantagePoint and certain distributees of VantagePoint. As a result of the reduction in VantagePoint's holdings of the Company's common stock following distributions by VantagePoint to its partners, the Company's obligations regarding the election of a nominee of VantagePoint to the Company's board of directors have terminated and we are no longer obligated to maintain a registration statement for the resale of shares held by VantagePoint and certain distributees of VantagePoint.

**25.  Guarantees and Indemnifications**

In November 2002, the FASB issued Interpretation No. 45 *Guarantor's Accounting and Disclosure Requirements for Guarantees, Including Indirect Guarantees of Indebtedness of Others* ("FIN 45"). FIN 45 requires that upon issuance of a guarantee, the guarantor must recognize a liability for the fair value of the obligations it assumes under that guarantee. As permitted under Delaware law and in accordance with the Company's Bylaws, the Company indemnifies its officers and directors for certain events or occurrences, subject to certain limits, while the officer or director is or was serving at the Company's request in such capacity. The term of the indemnification period is for the officer's or director's lifetime. The Company may terminate the indemnification agreements with its officers and directors upon 90 days written notice, but termination will not affect claims for indemnification relating to events occurring prior to the effective date of termination. The maximum amount of potential future indemnification is unlimited; however, the Company has a director and officer insurance policy that may enable it to recover a portion of any future amounts paid.

The Company enters into indemnification obligations under its agreements with other companies in its ordinary course of business, including agreements with customers, business partners, and insurers. Under these provisions the Company generally indemnifies and holds harmless the indemnified party for losses suffered or incurred by the indemnified party as a result of the Company's activities or the use of the Company's products. These indemnification provisions generally survive termination of the underlying agreement. In some cases, the maximum potential amount of future payments the Company could be required to make under these indemnification provisions is unlimited.

The Company believes the fair value of these indemnification agreements is minimal. Accordingly, the Company has not recorded any liabilities for these agreements as of April 30, 2007. To date, the Company has not incurred material costs to defend lawsuits or settle claims related to these indemnification agreements.

134

USB FIN 002143

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

### 26.  Subsequent Events (Unaudited)

Because virtually all holders of options issued by the Company were neither involved in nor aware of the accounting treatment of stock options, the Company has taken and intends to take actions to address certain adverse tax consequences that may be incurred by the holders of certain incorrectly priced options. The primary adverse tax consequence is that incorrectly priced stock options vesting after December 31, 2004 may subject the option holder to a penalty tax under Internal Revenue Code Section 409A (and, as applicable, similar penalty taxes under California and other state tax laws).The Company presently estimates that it will incur a liability to option holders of approximately $7.0 million, of which approximately $5.7 million will be recognized as additional stock compensation expense in future periods, with the remainder being recorded in additional paid-in capital as a cash settlement of a portion of the related option grants.

### 27.  Quarterly Financial Data (Unaudited)

**FINISAR CORPORATION**

**FINANCIAL INFORMATION BY QUARTER (Unaudited)**

| | Three Months Ended | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | April 30, 2007 | Jan. 28, 2007 | Oct. 29, 2006 | July 30, 2006 (Restated) | April 30, 2006 (Restated) | Jan. 29, 2006 (Restated) | Oct. 30, 2005 (Restated) | July 31, 2005 (Restated) |
| | (In thousands, except per share data) | | | | | | | |
| **Statement of Operations Data** | | | | | | | | |
| Revenues: | | | | | | | | |
| Optical subsystems and components | $ 88,204 | $ 98,007 | $ 99,009 | $ 96,043 | $ 91,938 | $ 84,199 | $ 77,449 | $ 72,370 |
| Network test and monitoring systems | 8,393 | 9,512 | 9,180 | 10,200 | 10,466 | 9,336 | 9,173 | 9,362 |
| Total revenues | 96,597 | 107,519 | 108,189 | 106,243 | 102,404 | 93,535 | 86,622 | 81,732 |
| Cost of revenues | 63,922 | 66,634 | 68,995 | 70,721 | 67,021 | 62,311 | 59,895 | 60,959 |
| Impairment of acquired developed technology | — | — | — | — | — | — | 853 | — |
| Amortization of acquired developed technology | 1,466 | 1,512 | 1,505 | 1,519 | 2,593 | 4,003 | 5,421 | 5,654 |
| Gross profit (loss) | 31,209 | 39,373 | 37,689 | 34,003 | 32,790 | 27,221 | 20,453 | 15,119 |
| Operating expenses: | | | | | | | | |
| Research and development | 17,571 | 16,593 | 16,000 | 14,395 | 14,816 | 12,412 | 14,158 | 13,026 |
| Sales and marketing | 8,781 | 9,068 | 9,439 | 8,834 | 8,665 | 8,566 | 7,451 | 8,462 |
| General and administrative | 12,164 | 8,871 | 7,092 | 7,514 | 8,846 | 7,113 | 6,839 | 8,066 |
| Acquired in-process research and development | 5,770 | — | — | — | — | — | — | — |
| Amortization of purchased intangibles | 277 | 925 | 313 | 299 | 365 | 453 | 453 | 476 |
| Restructuring costs | — | — | — | — | — | — | 3,064 | — |
| Total operating expenses | 44,563 | 35,457 | 32,844 | 31,042 | 32,692 | 28,544 | 31,965 | 30,030 |
| Income (loss) from operations | $ (13,354) | $ 3,916 | $ 4,845 | $ 2,961 | $ 98 | $ (1,323) | $ (11,512) | $ (14,911) |
| Interest income | 1,882 | 1,668 | 1,399 | 1,255 | 1,076 | 858 | 765 | 783 |
| Interest expense | (4,152) | (4,071) | (3,900) | (3,921) | (4,087) | (3,838) | (3,830) | (4,087) |
| Loss on convertible debt exchange | — | — | (31,606) | — | — | — | — | — |
| Other income (expense), net | 431 | (345) | (440) | (370) | 269 | 10,498 | (821) | (600) |
| Income (loss) before income taxes and cumulative effect of change in accounting principle | (15,193) | 1,168 | (29,702) | (75) | (2,644) | 6,195 | (15,398) | (18,815) |
| Provision for income taxes | 780 | 772 | 627 | 631 | 575 | 541 | 657 | 594 |
| Loss before cumulative effect of change in accounting principle | (15,973) | 396 | (30,329) | (706) | (3,219) | 5,654 | (16,055) | (19,409) |
| Cumulative effect of change in accounting principle | — | — | — | — | (1,213) | — | — | — |
| Net income (loss) | $ (15,973) | $ 396 | $ (30,329) | $ 507 | $ (3,219) | $ 5,654 | $ (16,055) | $ (19,409) |

135

USB FIN 002144

Table of Contents

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Three Months Ended | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | April 30, 2007 | Jan. 28, 2007 | Oct. 29, 2006 | July 30, 2006 (Restated) | April 30, 2006 (Restated) | Jan. 29, 2006 (Restated) | Oct. 30, 2005 (Restated) | July 31, 2005 (Restated) |
| | | | | (In thousands, except per share data) | | | | |
| Net income (loss) per share basic: | | | | | | | | |
| Before effect of accounting change | $ (0.05) | $ 0.00 | $ (0.10) | $ (0.00) | $ (0.01) | $ 0.02 | $ (0.06) | $ (0.07) |
| Cumulative effect of change in accounting principle | $ — | $ 0.00 | $ — | $ (0.00) | $ — | $ — | $ — | $ — |
| Net income (loss) | $ (0.05) | $ 0.00 | $ (0.10) | $ 0.00 | $ (0.01) | $ 0.02 | $ (0.06) | $ (0.07) |
| Net income (loss) per share diluted: | | | | | | | | |
| Before effect of accounting change | $ (0.05) | $ 0.00 | $ (0.10) | $ (0.00) | $ (0.01) | $ 0.02 | $ (0.06) | $ (0.07) |
| Cumulative effect of change in accounting principle, net of tax | $ — | $ 0.00 | $ — | $ 0.00 | $ — | $ — | $ — | $ — |
| Net income (loss) | $ (0.05) | $ 0.00 | $ (0.10) | $ 0.00 | $ (0.01) | $ 0.02 | $ (0.06) | $ (0.07) |
| Shares used in computing net income (loss) per share: | | | | | | | | |
| Basic | 308,623 | 308,538 | 307,558 | 306,499 | 302,316 | 297,265 | 289,968 | 272,228 |
| Diluted | 308,623 | 324,350 | 307,558 | 324,474 | 302,316 | 307,681 | 289,968 | 272,228 |

The following tables reflect the adjustments related to the restatements for periods not derived from the audited consolidated financial statements herein:

| | Quarter Ended July 30, 2006 | | |
|---|---|---|---|
| | As Reported | Adjustment | As Restated |
| | (In thousands, except per share data) | | |
| **Statement of Operations Data** | | | |
| Revenues | | | |
| Optical subsystems and components | $ 96,043 | $ — | $ 96,043 |
| Network test and monitoring systems | 10,200 | — | 10,200 |
| Total revenues | 106,243 | — | 106,243 |
| Cost of revenues | 69,950 | 771 | 70,721 |
| Amortization of acquired developed technology | 1,519 | — | 1,519 |
| Gross profit | 34,774 | (771) | 34,003 |
| Operating expenses: | | | |
| Research and development | 14,059 | 336 | 14,395 |
| Sales and marketing | 8,669 | 165 | 8,834 |
| General and administrative | 7,376 | 138 | 7,514 |
| Acquired in-process research and development | — | — | — |
| Amortization of purchased intangibles | 299 | — | 299 |
| Total operating expenses | 30,403 | 639 | 31,042 |
| Income (loss) from operations | 4,371 | (1,410) | 2,961 |
| Interest income | 1,255 | — | 1,255 |
| Interest expense | (3,921) | — | (3,921) |
| Other income (expense), net | (370) | — | (370) |

136

USB FIN 002145

**FINISAR CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

| | Quarter Ended July 30, 2006 | | |
| | As Reported | Adjustment | As Restated |
| --- | --- | --- | --- |
| | (In thousands, except per share data) | | |
| Income (loss) before income taxes and cumulative effect of change in accounting principle | 1,335 | (1,410) | (75) |
| Provision for income taxes | 2,155 | (1,524) | 631 |
| Loss before cumulative effect of change in accounting principle | (820) | 114 | (706) |
| Cumulative effect of change in accounting principle, net of tax | — | (1,213) | (1,213) |
| Net income (loss) | $ (820) | $ 1,327 | $ 507 |
| Net income (loss) per share — basic: | | | |
| Before effect of accounting change | $ (0.00) | $ 0.00 | $ (0.00) |
| Cumulative effect of change in accounting principle | $ — | $ (0.00) | $ (0.00) |
| Net income (loss) | $ (0.00) | $ 0.00 | $ 0.00 |
| Net income (loss) per share — diluted: | | | |
| Before effect of accounting change | $ (0.00) | $ 0.00 | $ (0.00) |
| Cumulative effect of change in accounting principle | $ — | $ (0.00) | $ (0.00) |
| Net income (loss) | $ (0.00) | $ 0.00 | $ 0.00 |
| Shares used in computing net loss per share: | | | |
| Basic | 306,499 | 306,499 | 306,499 |
| Diluted | 306,499 | 306,499 | 324,474 |

USB FIN 002146

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Quarter Ended April 30, 2006 | | | Quarter Ended January 29, 2006 | | |
|---|---|---|---|---|---|---|
| | As Previously Reported | Adjustment | As Restated | As Previously Reported | Adjustment | As Restated |
| | (In thousands, except per share amounts) | | | | | |
| **Statement of Operations Data** | | | | | | |
| Revenues: | | | | | | |
| Optical subsystems and components | $ 91,938 | — | $ 91,938 | $ 84,199 | — | $ 84,199 |
| Network test and monitoring systems | 10,466 | — | 10,466 | 9,336 | — | 9,336 |
| Total revenues | 102,404 | — | 102,404 | 93,535 | — | 93,535 |
| Cost of revenues | 65,306 | 1,715 | 67,021 | 61,331 | 980 | 62,311 |
| Amortization of acquired developed technology | 2,593 | — | 2,593 | 4,003 | — | 4,003 |
| Gross profit (loss) | 34,505 | (1,715) | 32,790 | 28,201 | (980) | 27,221 |
| Operating expenses: | | | | | | |
| Research and development | 13,216 | 1,600 | 14,816 | 11,525 | 887 | 12,412 |
| Sales and marketing | 7,934 | 731 | 8,665 | 8,119 | 447 | 8,566 |
| General and administrative | 7,987 | 859 | 8,846 | 6,644 | 469 | 7,113 |
| Amortization of purchased intangibles | 365 | — | 365 | 453 | — | 453 |
| Total operating expenses | 29,502 | 3,190 | 32,692 | 26,741 | 1,803 | 28,544 |
| Income (loss) from operations | 5,003 | (4,905) | 98 | 1,460 | (2,783) | (1,323) |
| Interest income | 1,076 | — | 1,076 | 858 | — | 858 |
| Interest expense | (4,087) | — | (4,087) | (3,838) | — | (3,838) |
| Other income (expense), net | 269 | — | 269 | 10,498 | — | 10,498 |
| Income (loss) before income taxes | 2,261 | (4,905) | (2,644) | 8,978 | (2,783) | 6,195 |
| Provision for income taxes | 575 | — | 575 | 675 | (134) | 541 |
| Net income (loss) | $ 1,686 | $ (4,905) | $ (3,219) | $ 8,303 | $ (2,649) | $ 5,654 |
| Net income (loss) per share: | | | | | | |
| Basic | $ 0.01 | $ (0.02) | $ (0.01) | $ 0.03 | $ (0.01) | $ 0.02 |
| Diluted | $ 0.01 | $ (0.02) | $ (0.01) | $ 0.03 | $ (0.01) | $ 0.02 |
| Shares used in computing net income (loss) per share: | | | | | | |
| Basic | 302,316 | 302,316 | 302,316 | 297,265 | 297,265 | 297,265 |
| Diluted | 326,781 | 302,316 | 302,316 | 307,681 | 307,681 | 307,681 |

138

USB FIN 002147

# FINISAR CORPORATION

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Quarter Ended October 30, 2005 | | | Quarter Ended July 31, 2005 | | |
|---|---|---|---|---|---|---|
| | As Previously Reported | Adjustment | As Restated | As Previously Reported | Adjustment | As Restated |
| | (In thousands, except per share data) | | | | | |
| **Statement of Operations Data** | | | | | | |
| Revenues: | | | | | | |
| Optical subsystems and components | $ 77,449 | — | $ 77,449 | $ 72,370 | — | $ 72,370 |
| Network test and monitoring systems | 9,173 | — | 9,173 | 9,362 | — | 9,362 |
| Total revenues | 86,622 | — | 86,622 | 81,732 | — | 81,732 |
| Cost of revenues | 59,698 | 197 | 59,895 | 60,791 | 168 | 60,959 |
| Impairment of acquired developed technology | 853 | — | 853 | — | — | — |
| Amortization of acquired developed technology | 5,421 | — | 5,421 | 5,654 | — | 5,654 |
| Gross profit (loss) | 20,650 | (197) | 20,453 | 15,287 | (168) | 15,119 |
| Operating expenses: | | | | | | |
| Research and development | 14,141 | 17 | 14,158 | 13,021 | 5 | 13,026 |
| Sales and marketing | 7,501 | (50) | 7,451 | 8,371 | 91 | 8,462 |
| General and administrative | 6,768 | 71 | 6,839 | 8,009 | 57 | 8,066 |
| Amortization of purchased intangibles | 453 | — | 453 | 476 | — | 476 |
| Restructuring costs | 3,064 | — | 3,064 | — | — | — |
| Total operating expenses | 31,927 | 38 | 31,965 | 29,877 | 153 | 30,030 |
| Loss from operations | (11,277) | (235) | (11,512) | (14,590) | (321) | (14,911) |
| Interest income | 765 | — | 765 | 783 | — | 783 |
| Interest expense | (3,830) | — | (3,830) | (4,087) | — | (4,087) |
| Other income (expense), net | (821) | — | (821) | (600) | — | (600) |
| Income loss before income taxes | (15,163) | (235) | (15,398) | (18,494) | (321) | (18,815) |
| Provision for income taxes | 657 | — | 657 | 594 | — | 594 |
| Net loss | $ (15,820) | $ (235) | $ (16,055) | $ (19,088) | $ (321) | $ (19,409) |
| Net loss per share | $ (0.05) | $ (0.00) | $ (0.06) | $ (0.07) | $ (0.00) | $ (0.07) |
| Shares used in computing net loss per share — basic and diluted | 289,968 | 289,968 | 289,968 | 272,228 | 272,228 | 272,228 |

139

USB FIN 002148

Table of Contents

## FINISAR CORPORATION

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

#### CONSOLIDATED BALANCE SHEET

| | Quarter Ended July 30, 2006 | | | Quarter Ended January 29, 2006 | | |
|---|---|---|---|---|---|---|
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| | | | (In thousands) | | | |
| **ASSETS** | | | | | | |
| Current assets: | | | | | | |
| Cash and cash equivalents | $ 63,472 | $ — | $ 63,472 | $ 54,228 | $ — | $ 54,228 |
| Short-term investments | 40,394 | — | 40,394 | 62,090 | — | 62,090 |
| Restricted investments, short-term | 3,725 | — | 3,725 | 3,728 | — | 3,728 |
| Accounts receivable, net of allowances | 65,572 | — | 65,572 | 48,244 | — | 48,244 |
| Accounts receivable, other | 9,773 | — | 9,773 | 6,842 | — | 6,842 |
| Inventories | 52,440 | 149 | 52,589 | 48,039 | 442 | 48,481 |
| Prepaid expenses | 3,492 | — | 3,492 | 4,850 | — | 4,850 |
| Total current assets | 238,868 | 149 | 239,017 | 228,021 | 442 | 228,463 |
| Long-term investments | 34,024 | — | 34,024 | | | |
| Property, plant and improvements, net | 82,202 | — | 82,202 | 79,582 | — | 79,582 |
| Restricted investments, long-term | 1,827 | — | 1,827 | 3,634 | — | 3,634 |
| Purchased technology, net | 13,460 | — | 13,460 | 17,558 | — | 17,558 |
| Other purchased intangible assets, net | 3,878 | — | 3,878 | 4,556 | — | 4,556 |
| Goodwill, net | 122,960 | 1,572 | 124,532 | 132,484 | — | 132,484 |
| Minority investments | 11,250 | — | 11,250 | 15,696 | — | 15,696 |
| Other assets | 17,392 | — | 17,392 | 16,990 | — | 16,990 |
| Total assets | $ 525,861 | $ 1,721 | $ 527,582 | $ 498,521 | $ 442 | $ 498,963 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | | | |
| Current liabilities: | | | | | | |
| Accounts payable | $ 35,531 | $ — | $ 35,531 | $ 37,618 | $ — | $ 37,618 |
| Accrued compensation | 10,011 | 1,719 | 11,730 | 7,252 | 403 | 7,655 |
| Other accrued liabilities | 13,483 | 20 | 13,503 | 17,292 | — | 17,292 |
| Deferred revenue | 5,415 | — | 5,415 | 5,433 | — | 5,433 |
| Current portion of other long-term liabilities | 2,284 | — | 2,284 | 2,229 | — | 2,229 |
| Convertible notes | — | — | — | 843 | — | 843 |
| Non-cancelable purchase obligations | 1,693 | — | 1,693 | 1,390 | — | 1,390 |
| Total current liabilities | 68,417 | 1,739 | 70,156 | 72,057 | 403 | 72,460 |
| Long-term liabilities: | | | | | | |
| Convertible notes | 239,423 | — | 239,423 | 237,127 | — | 237,127 |
| Other long-term liabilities | 20,612 | — | 20,612 | 23,220 | — | 23,220 |
| Deferred income taxes | 4,518 | (60) | 4,458 | 3,483 | (134) | 3,349 |
| Total long-term liabilities | 264,553 | (60) | 264,493 | 263,830 | (134) | 263,696 |
| Stockholders' equity: | | | | | | |
| Preferred stock | | | | | | |
| Common stock | 307 | — | 307 | 299 | — | 299 |
| Additional paid-in capital | 1,376,535 | 112,209 | 1,488,744 | 1,359,953 | 112,424 | 1,472,377 |
| Deferred stock compensation | — | — | — | — | (3,662) | (3,662) |
| Accumulated other comprehensive income | 13,098 | — | 13,098 | 297 | — | 297 |
| Accumulated deficit | (1,197,049) | (112,167) | (1,309,216) | (1,197,915) | (108,589) | (1,306,504) |
| Total stockholders' equity | 192,891 | 42 | 192,933 | 162,634 | 173 | 162,807 |
| Total liabilities and stockholders' equity | $ 525,861 | $ 1,721 | $ 527,582 | $ 498,521 | $ 442 | $ 498,963 |

140

Table of Contents

### FINISAR CORPORATION

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

### CONSOLIDATED BALANCE SHEET

| | Quarter Ended October 30, 2005 | | | Quarter Ended July 31, 2005 | | |
|---|---|---|---|---|---|---|
| | As Previously Reported | Adjustments | As Restated | As Previously Reported | Adjustments | As Restated |
| | (In thousands) | | | | | |
| **ASSETS** | | | | | | |
| Current assets: | | | | | | |
| Cash and cash equivalents | $ 33,165 | $ — | $ 33,165 | $ 29,180 | $ — | $ 29,180 |
| Short-term investments | 62,493 | — | 62,493 | 72,604 | — | 72,604 |
| Restricted investments, short-term | 3,710 | — | 3,710 | 3,732 | — | 3,732 |
| Accounts receivable, net of allowances | 44,911 | — | 44,911 | 43,350 | — | 43,350 |
| Accounts receivable, other | 2,914 | — | 2,914 | 4,723 | — | 4,723 |
| Inventories | 40,890 | 98 | 40,988 | 37,486 | 35 | 37,521 |
| Prepaid expenses | 3,287 | — | 3,287 | 3,486 | — | 3,486 |
| Total current assets | 191,370 | 98 | 191,468 | 194,561 | 35 | 194,596 |
| Property, plant and improvements, net | 79,028 | — | 79,028 | 84,798 | — | 84,798 |
| Restricted investments, long-term | 3,612 | — | 3,612 | 5,425 | — | 5,425 |
| Purchased technology, net | 21,554 | — | 21,554 | 27,821 | — | 27,821 |
| Other purchased intangible assets, net | 5,016 | — | 5,016 | 5,476 | — | 5,476 |
| Goodwill, net | 132,275 | — | 132,275 | 132,217 | — | 132,217 |
| Minority investments | 16,172 | — | 16,172 | 16,689 | — | 16,689 |
| Other assets | 16,678 | — | 16,678 | 17,127 | — | 17,127 |
| Total assets | $ 465,705 | $ 98 | $ 465,803 | $ 484,114 | $ 35 | $ 484,149 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | | | | | |
| Current liabilities: | | | | | | |
| Accounts payable | $ 32,927 | $ — | $ 32,927 | $ 32,827 | $ — | $ 32,827 |
| Accrued compensation | 5,668 | 141 | 5,809 | 6,667 | 136 | 6,803 |
| Other accrued liabilities | 15,429 | — | 15,429 | 15,422 | — | 15,422 |
| Deferred revenue | 4,974 | — | 4,974 | 6,560 | — | 6,560 |
| Current portion of other long-term liabilities | 628 | — | 628 | 2,599 | — | 2,599 |
| Convertible notes | 1,000 | — | 1,000 | 1,000 | — | 1,000 |
| Non-cancelable purchase obligations | 1,390 | — | 1,390 | 2,009 | — | 2,009 |
| Total current liabilities | 62,016 | 141 | 62,157 | 67,084 | 136 | 67,220 |
| Long-term liabilities: | | | | | | |
| Convertible notes | 236,043 | — | 236,043 | 247,043 | — | 247,043 |
| Other long-term liabilities | 13,930 | — | 13,930 | 13,571 | — | 13,571 |
| Deferred income taxes | 2,868 | — | 2,868 | 2,218 | — | 2,218 |
| Total long-term liabilities | 252,841 | — | 252,841 | 262,832 | — | 262,832 |
| Stockholders' equity: | | | | | | |
| Preferred stock | | | | | | |
| Common stock | 296 | — | 296 | 285 | — | 285 |
| Additional paid-in capital | 1,356,586 | 108,145 | 1,464,731 | 1,344,031 | 109,193 | 1,453,224 |
| Deferred stock compensation | — | (2,248) | (2,248) | — | (3,589) | (3,589) |
| Accumulated other comprehensive income | 184 | — | 184 | 280 | — | 280 |
| Accumulated deficit | (1,206,218) | (105,940) | (1,312,158) | (1,190,398) | (105,705) | (1,296,103) |
| Total stockholders' equity | 150,848 | (43) | 150,805 | 154,198 | (101) | 154,097 |
| Total liabilities and stockholders' equity | $ 465,705 | $ 98 | $ 465,803 | $ 484,114 | $ 35 | $ 484,149 |

141

USB FIN 002150

Table of Contents

### Schedule II — Consolidated Valuation and Qualifying Accounts

| | Balance at Beginning of Period | Additions Charged to Costs and Expenses | Deductions Write-Offs | Balance at End of Period |
|---|---|---|---|---|
| | | (In thousands) | | |
| Allowance for doubtful accounts | | | | |
| Year ended April 30, 2007 | $ 2,198 | $ (387) | $ (204) | $ 1,607 |
| Year ended April 30, 2006 | $ 1,378 | $ 805 | $ (15) | $ 2,198 |
| Year ended April 30, 2005 | 1,669 | (234) | 57 | 1,378 |

142

USB FIN 002151

**ITEM 9.**  *Changes in and Disagreements with Accountants on Accounting and Financial Disclosures*

None.

**ITEM 9A.**  *Controls and Procedures*

**Stock Option Grant Practices and Restatement**

As discussed in Note 2 to Notes to the Consolidated Financial Statements of this report, and in "Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations," an independent investigation related to our historical stock option granting practices was carried out by the Audit Committee of the Board of Directors during fiscal 2007 and through mid fiscal 2008. As a result of the findings from this investigation, we concluded that we used incorrect measurement dates for financial accounting purposes for a majority of stock option grants made in prior periods. Therefore, we have recorded additional non-cash stock-based compensation expense and related tax effects with regard to past stock option grants, substantially all of which relate to options granted between November 11, 1999, the date of our initial public offering, and September 8, 2006, the first grant to occur following changes in the process by which options are granted. We are restating our consolidated balance sheet as of April 30, 2006 and the related consolidated statements of operations, stockholders' equity and cash flows for the fiscal years ended April 30, 2006 and April 30, 2005 as well as the quarter ended July 30, 2006 to record this additional stock-based compensation and related tax expense.

**Evaluation of Disclosure Controls and Procedures**

Attached as exhibits to this report are certifications of our Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO"), which are required in accordance with Rule 13a-14 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). This "Controls and Procedures" section includes information concerning the controls and controls evaluation referred to in the certifications, and it should be read in conjunction with the certifications for a more complete understanding of the topics presented.

We carried out an evaluation, under the supervision, and with the participation, of our management, including the CEO and CFO, of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. As described below under "Management's Annual Report on Internal Control Over Financial Reporting", we concluded that we had deficiencies in controls relating to stock option granting and that all individuals involved in the granting of stock options lacked a thorough understanding of relevant accounting rules related to the accounting for stock options. These control deficiencies were determined to be material weaknesses in our internal control over financial reporting. However, we have concluded that, with the adoption of the new policies and procedures described below, these material weaknesses were remediated as of April 30, 2007 and, therefore, our disclosure controls and procedures were effective as of that date.

**Management's Annual Report on Internal Control Over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting for our Company. Internal control over financial reporting is defined in Rule 13a-15(f) under the Exchange Act as a process designed by, and under the supervision of, a company's principal executive and principal financial officers, and effected by a company's board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles, and includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company;

- provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and

USB FIN 002152

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision and with the participation of our management, including our CEO and CFO, we conducted an assessment of the effectiveness of our internal control over financial reporting as of April 30, 2007. In making this assessment, our management used the criteria set forth in *Internal Control — Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). Based on this assessment, management determined that we maintained effective internal control over financial reporting, as of April 30, 2007.

The effectiveness of internal control over financial reporting as of April 30, 2007 has been audited by Ernst & Young LLP, an independent registered public accounting firm, as stated in their report which is included herein.

### Remediation of Past Material Weaknesses in Internal Control Over Financial Reporting

During the course of the investigation into our historical stock option granting practices and related accounting, we reviewed the effectiveness of our internal control over financial reporting, using the criteria set forth in *Internal Control — Integrated Framework* issued by COSO. Based on this assessment, as a result of the conclusions reached in the investigation, we identified certain material weaknesses in our internal control over financial reporting related to our stock option granting practices and the related accounting.

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. Management identified and reported to our Audit Committee and independent registered public accounting firm the following material weaknesses in our internal control over financial reporting.

First, prior to and during fiscal 2006, we did not maintain effective controls over the accounting for, and disclosure of, our stock-based compensation expense and did not have sufficient safeguards in place to monitor our control practices regarding stock option pricing and related financial reporting, the result of which is discussed in Note 2 of the notes to our consolidated financial statements and in "Item 7., Management's Discussion and Analysis of Financial Condition and Results of Operations". Specifically, in the case of grants which were approved pursuant to the authority delegated to the CEO as the Stock Plan Committee, the Audit Committee found process-related deficiencies. These deficiencies resulted in the Company erroneously treating the stated grant date as the measurement date for financial accounting purposes. The grants in this category included performance grants, grants to newly-hired employees and grants to employees hired in connection with acquisitions of other companies by us. The Audit Committee concluded that twelve performance grants either lacked contemporaneous evidence to verify the date selected or, in the case of two grants, were selected retrospectively to capture a more favorable price. The Audit Committee found that 86 grants to newly-hired employees lacked contemporaneous evidence of grant date selection. Additionally, the Audit Committee found that four grants to employees of acquired companies were measured on a date other than that specified in the acquisition agreements. In eight instances, a grant was properly approved on a grant date that was prior to the date the exercise price was set (at a price lower than the grant date) resulting in variable accounting. Finally, a grant to three of our officers, including a grant to our CFO, was erroneously included in a large, broad-based performance grant Granting Action by the Stock Plan Committee rather than by action of our Board or Directors or Compensation Committee. The Audit Committee found no evidence of intentional misconduct or malfeasance on the part of Company personnel involved in selecting and approving the grant dates. Additionally, the CEO did not benefit from any of these grants.

Second, the Audit Committee determined that all individuals involved in the process for granting these options lacked a thorough understanding of relevant accounting rules.

In fiscal 2007, prior to the commencement of and not in response to the internal review that led to the investigation by the Audit Committee, the Audit Committee recommended, and the Board adopted, new policies

USB FIN 002153