Table of Contents

and procedures with regard to grants of equity compensation awards to Board members, officers, and non-officer employees alike. Under these policies and procedures:

- All stock option grants and other equity awards to executive officers are to be granted by the Compensation Committee .

- All other awards are generally to be granted by the Compensation Committee, although awards to non-executive officers may be granted by the Board.

- Except in special circumstances, all awards are to be granted at regular quarterly meetings of the Compensation Committee.

- Awards are to be approved at meetings of the Compensation Committee or the Board, and not by unanimous written consent.

- The effective date of each award approved at a regular quarterly meeting will be the later of the third trading day following the public announcement of our financial results for the preceding quarter or the date of the meeting.

- The key terms of each award are to be communicated to the recipient promptly following the award.

The revised measures described above provide for training and education in those rules.

Management determined that the revised option granting procedures and controls that were implemented in August 2006 were effective in enabling the Company to appropriately determine measurement dates and properly account for stock option grants made subsequent to August 2006.

In connection with the completion of its investigation, and in light of the findings from the investigation, the Audit Committee recommended that the Board consider, and the Board of Directors unanimously adopted, certain remedial measures, including the following:

- The implementation of a cross-functional training program for certain key employees concerning (i) our equity compensation programs and related improvements in equity compensation controls, processes and procedures, (ii) the accounting implications of the Company's equity compensation programs and (iii) the legal implications of the equity compensation programs.

- The appointment of a designated finance department employee to be responsible for the accounting for stock options and other forms of equity compensation.

- The adoption of additional policies to assure that grants will be recorded promptly in our option accounting database, and that grantees will receive prompt written notification of their grants.

- The adoption of policies to assure that there will be a specific date to complete the generation of a list of recommended equity grant recipients and number of option shares prior to the submission of the recommendations to the Compensation Committee for approval.

- Implementation of a requirement that our Internal Audit Department review our compliance with the controls and procedures regarding equity compensation at least annually and report the results of its review to the Audit Committee.

We believe that these changes, together with the new policies and procedures adopted before the commencement of the investigation, remediated the past material weaknesses in our internal control over financial reporting related to our stock option granting practices and the related accounting and reduced to remote the likelihood that any incorrect measurement dates or any material error in accounting for stock option grants could have occurred during the fiscal year ended April 30, 2007 and not have been detected as part of our financial reporting close process or our stock option granting process. As a result, we concluded that we maintained effective internal control over financial reporting as of April 30, 2007.

## Changes in Internal Controls

There was no change in our internal control over financial reporting that occurred during the fourth quarter of fiscal 2007 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

USB FIN 002154

Table of Contents

## Report of Independent Registered Public Accounting Firm
### On Internal Control Over Financial Reporting

The Board of Directors and Shareholders of Finisar Corporation:

We have audited Finisar Corporation's internal control over financial reporting as of April 30, 2007, based on criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (the COSO criteria). Finisar Corporation's management is responsible for maintaining effective internal control over financial reporting, and for its assessment of the effectiveness of internal control over financial reporting included in the accompanying Management's Annual Report on Internal Control Over Financial Reporting. Our responsibility is to express an opinion on the company's internal control over financial reporting based on our audit.

We conducted our audit in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects. Our audit included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, testing and evaluating the design and operating effectiveness of internal control based on the assessed risk, and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion.

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

In our opinion, Finisar Corporation maintained, in all material respects, effective internal control over financial reporting as of April 30, 2007, based on the COSO criteria.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Finisar Corporation as of April 30, 2007 and 2006 (restated), and the related consolidated statements of operations, stockholders' equity, and cash flows for each of the three years in the period ended April 30, 2007 (2006 and 2005, restated) and our report dated December 3, 2007 expressed an unqualified opinion thereon.

Ernst & Young LLP

San Jose, CA
December 3, 2007

146

ITEM 9B.  *Other Information*

None

## PART III

### Item 10.  *Directors and Executive Officers of the Registrant*

#### *Executive Officers of the Registrant*

Information concerning Finisar's current executive officers is as follows:

| Name | Position(s) with Finisar | Age |
|---|---|---|
| Jerry S. Rawls | Chairman of the Board, President and Chief Executive Officer | 63 |
| David Buse | Senior Vice President and General Manager, Network Tools Division | 57 |
| Anders Olsson | Senior Vice President, Engineering | 55 |
| Stephen K. Workman | Senior Vice President, Finance, Chief Financial Officer and Secretary | 57 |
| Joseph A. Young | Senior Vice President and General Manager, Optics Division | 50 |

*Jerry S. Rawls* has served as a member of our board of directors since March 1989, as our Chief Executive Officer since August 1999 and as our Chairman of the Board since January 2006. Mr. Rawls has also served as our President since April 2003 and previously held that title from April 1989 to September 2002. From September 1968 to February 1989, Mr. Rawls was employed by Raychem Corporation, a materials science and engineering company, where he held various management positions including Division General Manager of the Aerospace Products Division and Interconnection Systems Division. Mr. Rawls holds a B.S. in Mechanical Engineering from Texas Tech University and an M.S. in Industrial Administration from Purdue University.

*David Buse* has served as our Senior Vice President and General Manager, Network Tools Division, since June 2005. Mr. Buse joined Finisar in December 2003 as our Senior Vice President, Sales and Marketing. From May 2002 to September 2003, Mr. Buse was employed as Vice President of Worldwide Sales and Marketing of Silicon Bandwidth, an interconnect technology company. Prior thereto, he spent over 20 years at Raychem/ Tyco in various positions, most recently serving as Americas National Sales Manager. Mr. Buse holds a B.S. in Engineering Management from the United States Air Force Academy and an M.B.A. from UCLA.

*Anders Olsson* has served as our Senior Vice President, Engineering since January 2004. From April 2003 to December 2003, Dr. Olsson was President and Chief Executive Officer of Photon-X Inc., an optical sensing company. From April 2000 to April 2003, Dr. Olsson was the Chief Operating Officer and Chief Technical Officer of CENiX Inc, a high-speed integrated subsystems company for data-com and telecom markets. Before co-founding CENiX, Dr. Olsson held a number of positions at Bell Laboratories, Lucent Network Systems, and Lucent Microelectronics; the first in basic research and the last as Optoelectronics General Manager and Vice President. Dr. Olsson holds an M.S. in Engineering from Chalmers University of Technology of Gothenburg, Sweden, and a Ph.D. in Electrical Engineering from Cornell University.

*Stephen K. Workman* has served as our Senior Vice President, Finance and Chief Financial Officer since September 2002 and as our Vice President, Finance and Chief Financial Officer from March 1999 to September 2002. Mr. Workman has also served as our Secretary since August 1999. From November 1989 to March 1999, Mr. Workman served as Chief Financial Officer at Ortel Corporation. Mr. Workman holds a B.S. in Engineering Science and an M.S. in Industrial Administration from Purdue University.

*Joseph A. Young* has served as our Senior Vice President and General Manager, Optics Division, since June 2005. Mr. Young joined Finisar in October 2004 as our Senior Vice President, Operations. Prior to joining the Company, Mr. Young served as Director of Enterprise Products, Optical Platform Division of Intel Corporation from May 2001 to October 2004. Mr. Young served as Vice President of Operations of LightLogic, Inc. from

USB FIN 002156

Table of Contents

September 2000 to May 2001, when it was acquired by Intel, and as Vice President of Operations of Lexar Media, Inc. from December 1999 to September 2000. Mr. Young was employed from March 1983 to December 1999 by Tyco/ Raychem, where he served in various positions, including his last position as Director of Worldwide Operations for the OEM Electronics Division of Raychem Corporation. Mr. Young holds a B.S. in Industrial Engineering from Rensselaer Polytechnic Institute, an M.S. in Operations Research from the University of New Haven and an M.B.A. from the Wharton School at the University of Pennsylvania.

*Directors*

Information concerning Finisar's current directors is as follows:

| Name | Position with Finisar | Age | Director Since |
|---|---|---|---|
| *Class I directors whose terms expire at the 2009 Annual Meeting of Stockholders:* | | | |
| Roger C. Ferguson | Director | 64 | 1999 |
| Larry D. Mitchell | Director | 65 | 1999 |
| *Class II directors whose terms expire at the 2007 Annual Meeting of Stockholders:* | | | |
| David C. Fries | Director | 62 | 2005 |
| Frank H. Levinson | Director | 54 | 1988 |
| Robert N. Stephens | Director | 62 | 2005 |
| *Class III directors whose terms expire at the 2008 Annual Meeting of Stockholders:* | | | |
| Jerry S. Rawls | Chairman of the Board, President and Chief Executive Officer | 63 | 1989 |
| Dominique Trempont | Director | 53 | 2005 |

*Roger C. Ferguson* has served as a member of our board of directors since August 1999. From June 1999 to December 2001, Mr. Ferguson served as Chief Executive Officer of Semio Corp., an early stage software company. Mr. Ferguson has served as a principal in VenCraft, LLC, a venture capital partnership, since July 1997. From August 1993 to July 1997, Mr. Ferguson was Chief Executive Officer of DataTools, Inc., a database software company. From 1987 to 1993, Mr. Ferguson served as Chief Operating Officer for Network General Inc., a network analysis company. Mr. Ferguson holds a B.A. in Psychology from Dartmouth College and an M.B.A. from the Amos Tuck School at Dartmouth.

*Larry D. Mitchell* has served as a member of our board of directors since October 1999. Mr. Mitchell was employed by the Hewlett-Packard Company for 29 years, retiring in October 1997 as a site General Manager in Roseville, California, a position he held for three years. During the 26 years prior to October 1994, Mr. Mitchell served in a variety of management positions with Hewlett-Packard. Currently, Mr. Mitchell is Director of Operations for SP Communications, a startup electronics company. Mr. Mitchell also served on the Board of Directors of Placer Sierra Bancshares, until its acquisition by Wells Fargo Bank in June 2007 and served as Chairman from August 2006 until June 2007. Mr. Mitchell holds a B.A. in Engineering Science from Dartmouth College and an M.B.A. from the Stanford Graduate School of Business.

*David C. Fries* has served as a member of our board of directors since June 2005. Dr. Fries has been employed by VantagePoint Venture Partners, a venture capital investment firm, since August 2001 where he currently serves as a Managing Director and Co-Head of the Semiconductor and Components Practice. Prior to joining VantagePoint, he was the Chief Executive Officer of Productivity Solutions, Inc., a Florida-based developer of automated checkout technologies for food and discount retailers, from 1995 to 1999. For seven years prior to that, he was a general partner of Canaan Partners, a venture capital firm. Dr. Fries served 17 years in numerous executive roles in engineering, manufacturing, senior management and finance at General Electric Company, including directing GE Venture Capital's California operation, which later became Canaan Partners. Dr. Fries also serves as a director of Aviza

148

USB FIN 002157

Table of Contents

Technology, Inc., a semiconductor equipment company. Dr. Fries holds a B.S. in Chemistry from Florida Atlantic University and a Ph.D. in Physical Chemistry from Case Western Reserve University.

*Frank H. Levinson* founded Finisar in April 1987 and has served as a member of our board of directors since February 1988. Dr. Levinson served as our Chairman of the Board and Chief Technical Officer from August 1999 to January 2006 and also served as our Chief Executive Officer from February 1988 to August 1999. From September 1980 to December 1983, Dr. Levinson was a member of Technical Staff at AT&T Bell Laboratories. From January 1984 to July 1984, he was a Member of Technical Staff at Bellcore, a provider of services and products to the communications industry. From April 1985 to December 1985, Dr. Levinson was the principal optical scientist at Raychem Corporation, and from January 1986 to February 1988, he was Optical Department Manager at Raynet, Inc., a fiber optic systems company. Dr. Levinson serves as a director of Fabrinet, Inc., a privately held contract manufacturing company. Dr. Levinson holds a B.S. in Mathematics/Physics from Butler University and an M.S. and Ph.D. in Astronomy from the University of Virginia.

*Robert N. Stephens* has served as a member of our board of directors since August 2005. Mr. Stephens served as the Chief Executive Officer since April 1999 and President since October 1998 of Adaptec, Inc., a storage solutions provider, until his retirement in May 2005. Mr. Stephens joined Adaptec in November 1995 as Chief Operating Officer. Before joining Adaptec, Mr. Stephens was the founder and chief executive officer of Power I/O, a company that developed serial interface solutions and silicon expertise for high-speed data networking, that was acquired by Adaptec in 1995. Prior to founding Power I/O, Mr. Stephens was President and CEO of Emulex Corporation, which designs, develops and supplies Fibre Channel host bus adapters. Before joining Emulex, Mr. Stephens was senior vice president, general manger, and founder of the Microcomputer Products Group at Western Digital Corporation. He began his career at IBM, where he served over 15 years in a variety of management positions. Mr. Stephens holds bachelor's and master's degrees from San Jose State University.

*Jerry S. Rawls* has served as a member of our board of directors since March 1989 and as our Chairman of the Board since January 2006. Mr. Rawls has served as our Chief Executive Officer since August 1999. Mr. Rawls has also served as our President since April 2003 and previously held that title from April 1989 to September 2002. From September 1968 to February 1989, Mr. Rawls was employed by Raychem Corporation, a materials science and engineering company, where he held various management positions including Division General Manager of the Aerospace Products Division and Interconnection Systems Division. Mr. Rawls holds a B.S. in Mechanical Engineering from Texas Tech University and an M.S. in Industrial Administration from Purdue University.

*Dominique Trempont* has served as a member of our board of directors since August 2005. Mr. Trempont is also a member of the board of directors of 3Com Corporation, a networking company, and chairs its Finance and Audit Committee. Prior to joining the boards of Finisar and 3Com, Mr Trempont was CEO in residence at Battery Ventures from August 2003 till June 2004. Prior to joining Battery Ventures, Mr. Trempont was Chairman, President and Chief Executive Officer of Kanisa, Inc., a software company focused on enterprise self-service applications, from November 1999 to November 2002. Mr. Trempont was President and Chief Executive Officer of Gemplus Corporation, a smart card company, from May 1997 to June 1999. Prior to Gemplus, Mr. Trempont served as Chief Financial Officer and headed Operations at NeXT Software. Mr. Trempont began his career at Raychem Corporation, a high-tech material science company focused on telecommunications, electronics, automotive and other industries. Mr. Trempont received an undergraduate degree in Economics from College Saint Louis (Belgium), a B.A. in Business Administration and Computer Sciences from the University of Louvain (Belgium) and a masters in Business Administration from INSEAD (France).

## Audit Committee and Financial Expert

The members of the Audit Committee during fiscal 2007 were Messrs. Ferguson, Mitchell and Trempont. Each of the members of the Audit Committee is independent for purposes of the Nasdaq listing standards as they apply to audit committee members. Messrs. Ferguson and Trempont are audit committee financial experts, as defined in the rules of the Securities and Exchange Commission. The functions of the Audit Committee include overseeing the quality of our financial reports and other financial information and our compliance with legal and regulatory requirements; appointing and evaluating our independent auditors, including reviewing their independence, qualifications and performance and reviewing and approving the terms of their engagement for audit services

149

USB FIN 002158

Table of Contents

and non-audit services; and establishing and observing complaint procedures regarding accounting, internal auditing controls and auditing matters.

## Code of Ethics

Our board of directors has adopted a Code of Ethics (the "Code") that outlines the principles of legal and ethical business conduct under which we do business. The Code, which is applicable to all directors, employees and officers of Finisar, is available at http://investor.finisar.com/corpgov.cfm. Any substantive amendment or waiver of the Code may be made only by the board of directors upon a recommendation of the Audit Committee, and will be disclosed on our website. In addition, disclosure of any waiver of the Code for directors and executive officers will also be made by the filing of a Form 8-K with the SEC.

## Section 16(a) Beneficial Ownership Reporting Compliance

Section 16(a) of the Securities Exchange Act of 1934, as amended, requires our executive officers, directors and persons who beneficially own more than 10% of our common stock to file initial reports of ownership and reports of changes in ownership with the SEC. Such persons are required by SEC regulations to furnish us copies of all Section 16(a) forms filed by such person.

Based solely on our review of such forms furnished to us, and written representations from executive officers and directors, we believe that all filing requirements applicable to our executive officers, directors and more than 10% stockholders during the fiscal year ended April 30, 2007 were satisfied.

## Item 11.  *Executive Compensation*

### Compensation Discussion and Analysis

#### *Overview*

The following discussion explains our compensation philosophy, objectives and procedures and describes the forms of compensation awarded to our Chief Executive Officer, our Chief Financial Officer and each of our other three most highly-compensated executives (determined as of April 30, 2007). We refer to these individuals as our "named executive officers." This discussion focuses on the information contained in the tables and related footnotes and narrative included in this Item 11, primarily for our 2007 fiscal year, but we also describe compensation actions taken before and after fiscal 2007 to the extent that information enhances the understanding of our executive compensation disclosure.

#### *Philosophy, Objectives and Procedures*

Our fundamental compensation philosophy is to align the compensation of our senior management with our annual and long-term business objectives and performance and to offer compensation that will enable us to attract, retain, and appropriately reward executive officers whose contributions are necessary for our long-term success. We seek to reward our executive officers' contributions to achieving revenue growth, increasing operating profits, and controlling overhead costs. We operate in a very competitive environment for executive talent, and it is our belief that our compensation packages should be competitive when compared to our peers but also perceived as fair, when considered both externally and internally.

The Compensation Committee of our Board of Directors oversees the design and administration of our executive compensation program. The principal elements of the program are base salary, annual cash bonuses and equity awards which, to date, have been in the form of stock options. We also provide our executive officers with other benefits and perquisites generally available to our other employees.

Generally, the Compensation Committee reviews the compensation of our executive officers in the early part of each fiscal year and takes action at that time to award bonuses for the preceding fiscal year and set base salaries and target bonuses for the current year. In setting our executive officers' total compensation, the Compensation Committee considers individual and company performance, as well as market information regarding compensation

USB FIN 002159

paid by comparable companies. The Compensation Committee takes into consideration recommendations of our Chief Executive Officer, although he does not participate in discussions regarding his own compensation.

Periodically, the Compensation Committee retains compensation consultants to assist it in its review of executive officer compensation. In connection with its annual review early in fiscal 2007, the Compensation Committee engaged Assets Unlimited, Inc., a compensation consulting firm, for this purpose. The Compensation Committee reviewed cash and equity compensation analyses prepared by Assets Unlimited, Inc. based on data for comparable companies and met with a representative of that firm. The Compensation Committee did not engage compensation consultants in connection with its fiscal 2008 review of executive officer compensation.

### Forms of Compensation

#### Base Salaries

Base salaries for our executive officers are initially set based on negotiation with the individual executive officer at the time of recruitment and with reference to salaries for comparable positions in the networking industry for individuals of similar education and background to the executive officer being recruited. We also give consideration to the individual's experience, reputation in his or her industry and expected contributions to Finisar. Salaries are reviewed annually by the Compensation Committee and adjustments are made based on (i) salary recommendations of our Chief Executive Officer, (ii) the Compensation Committee's assessment of the individual performance of the executive officers during the previous fiscal year, (iii) Finisar's financial results for the previous fiscal year, and (iv) changes in competitive pay levels.

During fiscal 2007, base salaries accounted for approximately 36% of the total compensation of our Chief Executive Officer and an average of approximately 45% of the total compensation of our other named executive officers.

#### Annual Cash Bonuses

It is our policy that a substantial component of each executive officer's potential annual compensation take the form of a performance-based bonus. Bonus awards to executive officers other than the Chief Executive Officer are determined by the Compensation Committee, in consultation with the Chief Executive Officer, based on our financial performance and the achievement of the officer's individual performance objectives. The Chief Executive Officer's bonus is determined by the Compensation Committee, without participation by the Chief Executive Officer, based on the same factors.

At the beginning of each fiscal year, the Compensation Committee awards cash bonuses to our executive officers in recognition of their contributions during the previous fiscal year. In July 2006, the Compensation Committee established target bonuses for our executive officers for fiscal 2007 and a methodology for the calculation of individual bonuses, based on the target bonuses. Under this methodology, each executive officer's bonus was to be based: 35% on our achievement of targeted operating income; 35% on our achievement of targeted revenue growth; and 30% on the achievement of individual goals. In its annual review of executive compensation in August 2007, the Compensation Committee determined that the formula approved at the beginning of the fiscal year did not produce bonuses that were fully reflective of the officers' contributions. Accordingly, the Compensation Committee awarded the following bonuses which, in each case, were less than the officer's fiscal 2007 target bonus but more than would have been payable under the original formula:

| Name | Fiscal 2007 Annual Cash Bonuses | |
|---|---|---|
| | Target | Amount Awarded |
| Jerry S. Rawls | $250,000 | $ 125,000 |
| Stephen K. Workman | $100,000 | $ 50,000 |
| David Buse | $100,000 | $ 50,000 |
| Anders Olsson | $ 90,000 | $ 60,000 |
| Joseph A. Young | $120,000 | $ 100,000 |

USB FIN 002160

Table of Contents

During fiscal 2007, annual cash bonuses accounted for approximately 11% of the total compensation of our Chief Executive Officer and an average of approximately 10% of the total compensation of our other named executive officers.

In August 2007, the Compensation Committee established target bonuses for fiscal 2008 and the methodology for the calculation of individual bonuses. Under this methodology, each executive officer's bonus was to be based: 80% on our achievement of targeted earnings per share; and 20% on the achievement of individual goals. The fiscal 2008 target bonuses for the named executive officers are as follows:

| Name | Fiscal 2008 Target Bonus |
|------|---------|
| Jerry S. Rawls | $ 425,000 |
| Stephen K. Workman | $ 260,000 |
| David Buse | $ 290,000 |
| Anders Olsson | $ 288,000 |
| Joseph A. Young | $ 340,000 |

*Long-Term Incentives.*

Longer term incentives are provided through stock options, which reward executives and other employees through the growth in value of our stock. The Compensation Committee believes that employee equity ownership is highly motivating, provides a major incentive for employees to build stockholder value and serves to align the interests of our employees with those of our stockholders. Grants of stock options to executive officers are based upon each officer's relative position, responsibilities, historical and expected contributions to Finisar, and the officer's existing stock ownership and previous option grants, with primary weight given to the executive officer's relative rank and responsibilities. Initial stock option grants designed to recruit an executive officer to join Finisar may be based on negotiations with the officer and with reference to historical option grants to existing officers. Stock options are granted at an exercise price equal to the market price of our common stock on the date of grant and will provide value to the executive officers only when the price of our common stock increases over the exercise price.

The vesting of stock options held by our named executive officers is subject to acceleration pursuant to the terms of the Finisar Executive Retention and Severance Plan described below.

Long-term equity incentives accounted for approximately 52% of total compensation of our Chief Executive Officer and an average of approximately 44% of our total compensation of our other named executive officers.

*Other Benefits and Perquisites*

We generally provide for our named executive officers and other executives to receive the same general health and welfare benefits offered to all employees. We also offer participation in our defined contribution 401(k) plan. We currently provide no other perquisites to our named executive officers and other executives.

During fiscal 2007, personal benefits and perquisites accounted for less than 1% of total compensation of our Chief Executive Officer and our other named executives officers.

**Executive Retention and Severance Plan**

We have no long-term employment agreements with any of our key personnel. However, our executive officers and certain other key executives designated by the Compensation Committee are eligible to participate in the Finisar Executive Retention and Severance Plan adopted by the Compensation Committee in February 2003. Participants in this plan who are executive officers are entitled to receive cash severance payments equal to two years base salary and health and medical benefits for two years in the event their employment is terminated in connection with a change in control of Finisar. In addition, in the event of a change in control, vesting of stock options held by participants in the plan will be accelerated by one year, if the options are assumed by the acquiring company. If the options are not assumed by the acquiror, or if the participant's employment is terminated in connection with the change in control, vesting of the options will be accelerated in full. Upon any other termination

152

Table of Contents

of employment, participants are entitled only to accrued salary and any other vested benefits through the date of termination. We believe that the severance and change in control provisions of our Executive Retention and Severance Plan are comparable to the provisions and benefit levels of other companies disclosing similar plans as reported in public filings.

### Accounting for Executive Compensation

We account for equity compensation paid to our employees under the rules of Statement of Financial Accounting Standards No. 123R, which requires us to measure and record an expense over the service period of the award. Accounting rules also require us to record cash compensation as an expense at the time the obligation is incurred.

### Tax Considerations

We intend to consider the impact of Section 162(m) of the Internal Revenue Code in determining the mix of elements of future executive compensation. This section limits the deductibility of non-performance based compensation paid to each of our named executive officers to $1 million annually. The stock options granted to our executive officers are intended to be treated under current federal tax law as performance-based compensation exempt from the limitation on deductibility.

153

USB FIN 002162

Table of Contents

## REPORT OF THE COMPENSATION COMMITTEE

We have reviewed and discussed with management the Compensation Discussion and Analysis provisions included this proxy statement. Based on the reviews and discussions referred to above, we recommended to the Board of Directors that the Compensation Discussion and Analysis referred to above be included in this annual report on Form 10-K.

COMPENSATION COMMITTEE

David C. Fries (Chair)
Roger C. Ferguson
Larry D. Mitchell
Robert N. Stephens

### Compensation Committee Interlocks and Insider Participation

The Compensation Committee during fiscal 2007 was composed of Roger C. Ferguson, David C. Fries, Larry D. Mitchell and Robert N. Stephens. No member of our Compensation Committee serves as a member of the board of directors or compensation committee of any entity that has one or more executive officers serving as a member of our board of directors or Compensation Committee.

### Summary Compensation Information

The following table presents certain summary information concerning compensation paid or accrued by the Company for services rendered in all capacities during the fiscal year ended April 30, 2007 for (i) the Chief Executive Officer and the Chief Financial Officer of the Company, and (ii) each of the three other most highly compensated executives of the Company (determined as of April 30, 2007) (collectively, the "Named Executive Officers").

### Summary Compensation Table

| Name and Principal Position | Year | Salary | Bonus | Option Awards(2) | All Other Compensation(1) | Total |
|---|---|---|---|---|---|---|
| Jerry S. Rawls President and Chief Executive Officer | 2007 | $400,000 | $125,000 | $584,737 | $    6,534 | $1,116,271 |
| Stephen K. Workman Senior Vice President, Finance, Chief Financial Officer and Secretary | 2007 | 250,000 | 50,000 | 168,428 | 6,531 | 474,779 |
| David Buse Senior Vice President and General Manager, Network Tools Division | 2007 | 280,000 | 50,000 | 274,955 | 6,912 | 611,867 |
| Anders Olsson Senior Vice President, Engineering | 2007 | 275,000 | 60,000 | 387,880 | 6,833 | 729,713 |
| Joseph A. Young Senior Vice President and General Manager, Optics Division | 2007 | 325,000 | 100,000 | 274,249 | 7,379 | 706,628 |

(1) Represents the matching contribution that Finisar made to Finisar's 401(k) plan.

(2) Valuation based on the dollar amount of cumulative option grants recognized for financial statement reporting purposes pursuant to FAS 123R with respect to the fiscal year ended April 30, 2007. The assumptions used by us

154

USB FIN 002163

with respect to the valuation of option grants are set forth in "Finisar Corporation Consolidated Financial Statements — Notes to Financial Statements — Note 16 — Stockholders' Equity."

**Grant of Plan-Based Awards**

The following table sets forth certain information with respect to the options granted during or for the year ended April 30, 2007 to each of our named executive officers.

### Grant of Plan-Based Awards Table

| Name | Grant Date | Estimated Future Payments Under Non-Equity Incentive Plan Awards(1) | | | Estimated Future Payments Under Equity Incentive Plan Awards | | | All Other Stock Awards: Number of Shares of Stock or Units | All Other Option Awards: Number of Securities Underlying Options | Exercise or Base Price of Option Awards ($/sh) | Grant Date Fair Value of Stock and Option Awards |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Threshold | Target | Maximum | Threshold | Target | Maximum | | | | |
| Jerry S. Rawls | 6/6/2006 | — | $ 250,000 | $ 250,000 | — | — | — | — | 400,000 | $ 4.63 | $1,465,880 |
| Stephen K. Workman | 6/6/2006 | — | $ 100,000 | $ 100,000 | — | — | — | — | 75,000 | $ 4.63 | $ 274,853 |
| David Buse | 6/6/2006 | — | $ 100,000 | $ 100,000 | — | — | — | — | 100,000 | $ 4.63 | $ 366,470 |
| Anders Olsson | 6/6/2006 | — | $ 90,000 | $ 90,000 | — | — | — | — | 100,000 | $ 4.63 | $ 366,470 |
| | 3/8/2007 | | | | | | | | 3,332 | $ 3.21 | $ 7,868 |
| Joseph A. Young | 6/6/2006 | — | $ 120,000 | $ 120,000 | — | — | — | — | 200,000 | $ 4.63 | $ 732,940 |
| | 3/8/2007 | | | | | | | | 5,435 | $ 3.21 | $ 12,384 |

(1) Amounts reflect potential cash bonuses payable as determined by the Compensation Committee. Actual payments approved by the Compensation Committtee for Messrs. Rawls, Workman, Buse, Olsson, and Young were $125,000, $50,000, $50,000, $60,000, and $100,000, respectively.

155

Table of Contents

**Outstanding Equity Awards at Fiscal Year-End**

The following table summarizes the number of securities underlying outstanding option plan awards for each of the named executive officers as of the end of its fiscal year-end on April 30, 2007.

**Outstanding Equity Awards at Fiscal Year-End Table**

| | Individual Option Awards | | | |
| Name | Number of Securities Underlying Options (#) Exercisable | Number of Securities Underlying Options (#) Unexercisable | Exercise Price per Share | Expiration Date |
|---|---|---|---|---|
| Jerry S. Rawls | 800,000 | 200,000(1) | $ 1.73 | 6/7/2012 |
| | 120,000 | 80,000(2) | $ 1.95 | 8/27/2013 |
| | 160,000 | 240,000(3) | $ 1.92 | 6/2/2014 |
| | 100,000 | 400,000(4) | $ 1.22 | 6/8/2015 |
| | 0 | 400,000(5) | $ 4.63 | 6/6/2016 |
| Stephen K. Workman | 100,000 | | $ 1.80 | 6/19/2013 |
| | 65,000 | | $ 1.80 | 6/19/2013 |
| | 160,000 | 40,000(6) | $ 1.80 | 6/19/2013 |
| | 45,000 | 30,000(2) | $ 1.95 | 8/27/2013 |
| | 80,000 | 120,000(3) | $ 1.92 | 6/2/2014 |
| | 0 | 75,000(5) | $ 4.63 | 6/6/2016 |
| David Buse | 240,000 | 160,000(7) | $ 2.80 | 12/18/2013 |
| | 80,000 | 120,000(3) | $ 1.92 | 6/2/2014 |
| | 40,000 | 160,000(4) | $ 1.22 | 6/8/2015 |
| | 0 | 100,000(5) | $ 4.63 | 6/6/2016 |
| Anders Olsson | 300,000 | 200,000(8) | $ 3.26 | 2/2/2014 |
| | 80,000 | 120,000(3) | $ 1.92 | 6/2/2014 |
| | 40,000 | 160,000(4) | $ 1.22 | 6/8/2015 |
| | 0 | 100,000(5) | $ 4.63 | 6/6/2016 |
| | 0 | 3,332(9) | $ 3.21 | 3/8/2017 |
| Joseph A. Young | 160,000 | 240,000(10) | $ 1.47 | 10/29/2014 |
| | 40,000 | 160,000(4) | $ 1.22 | 6/8/2015 |
| | 0 | 200,000(5) | $ 4.63 | 6/6/2016 |
| | 0 | 5,435(9) | $ 3.21 | 3/8/2017 |

---

(1) The option was granted on 6/7/2002. The shares became exercisable as to 20% of the shares on 6/7/2003 and vest annually thereafter to be fully vested on 6/7/2007 assuming continued employment with Finisar Corporation.

(2) The option was granted on 8/27/2003. The shares became exercisable as to 20% of the shares on 8/27/2004 and vest annually thereafter to be fully vested on 8/27/2008 assuming continued employment with Finisar Corporation.

(3) The option was granted on 6/2/2004. The shares became exercisable as to 20% of the shares on 6/2/2005 and vest annually thereafter to be fully vested on 6/2/2009 assuming continued employment with Finisar Corporation.

(4) The option was granted on 6/8/2005. The shares became exercisable as to 20% of the shares on 6/8/2006 and vest annually thereafter to be fully vested on 6/8/2010 assuming continued employment with Finisar Corporation.

(5) The option was granted on 6/6/2006. The shares become exercisable as to 20% of the shares on 6/6/2007 and vest annually thereafter to be fully vested on 6/6/2011 assuming continued employment with Finisar Corporation.

USB FIN 002165

Table of Contents

(6) The option was granted on 6/19/2003. The shares became exercisable as to 20% of the shares on 6/7/2003 and vest annually thereafter to be fully vested on 6/7/2007 assuming continued employment with Finisar Corporation.

(7) The option was granted on 12/18/2003. The shares became exercisable as to 20% of the shares on 12/15/2004 and vest annually thereafter to be fully vested on 12/15/2008 assuming continued employment with Finisar Corporation.

(8) The option was granted on 2/2/2004. The shares became exercisable as to 20% of the shares on 2/2/2005 and vest annually thereafter to be fully vested on 2/2/09 assuming continued employment with Finisar Corporation.

(9) The option was granted on 3/8/2007. The shares become exercisable as to 20% of the shares on 3/8/2008 and vest annually thereafter to be fully vested on 3/8/2012 assuming continued employment with Finisar Corporation.

(10) The option was granted on 10/29/2004. The shares became exercisable as to 20% of the shares on 10/29/2005 and vest annually thereafter to be fully vested on 10/29/2009 assuming continued employment with Finisar Corporation.

## Option Exercises

There were no exercises of options to purchase our Common Stock in the fiscal year ended April 30, 2007, by the persons named in the Summary Compensation Table above.

## Potential Payments Upon Termination or Change in Control

Jerry S. Rawls, David Buse, Anders Olsson, Stephen K. Workman and Joseph A. Young are eligible to participate in the Finisar Executive Retention and Severance Plan. This plan provides that in the event of a qualifying termination each of the participating executives will be entitled to receive (i) a lump sum payment equal to two years' base salary (excluding bonus) and (ii) medical, dental and insurance coverage for two years, or reimbursement of premiums for COBRA continuation coverage during such period. A qualifying termination is defined as an involuntary termination other than for cause or a voluntary termination for good reason upon or within 18 months following a change in control, as such terms are defined in the executive severance plan. In addition, the plan provides that the vesting of stock options held by eligible officers will be accelerated as follows: (i) one year of accelerated vesting upon a change of control, if the options are assumed by a successor corporation, (ii) 100% accelerated vesting if the options are not assumed by a successor corporation, and (iii) 100% accelerated vesting upon a qualifying termination. In the event the employment of any of our named executive officers were to be terminated without cause or for good reason, within 18 months following a change in control of Finisar, each as of April 30, 2007, the following individuals would be entitled to payments in the amounts set forth opposite to their name in the below table:

| Name | Cash Severance |
| --- | --- |
| Jerry S. Rawls | $33,333 per month for 24 months |
| Stephen K. Workman | $20,833 per month for 24 months |
| David Buse | $23,333 per month for 24 months |
| Anders Olsson | $22,917 per month for 24 months |
| Joseph A. Young | $27,083 per month for 24 months |

We are not obligated to make any cash payments to these executives if their employment is terminated by us for cause or by the executive not for good reason. No severance or benefits are provided for any of the executive officers in the event of death or disability. A change in control does not affect the amount or timing of these cash severance payments.

157

USB FIN 002166

Table of Contents

In the event the employment of any of our named executive officers were to be terminated without cause or for good reason within 18 months following a change in control of Finisar, each as of April 30, 2007, the following individuals would be entitled to accelerated vesting of their outstanding stock options described in the table below:

| Name | Value of Equity Awards:(1) |
|---|---|
| Jerry S. Rawls | Fully vested; 2,500,000 options with a value of $4.1 million. |
| Stephen K. Workman | Fully vested; 715,000 options with a value of $1.1 million. |
| David Buse | Fully vested; 900,000 options with a value of $1.1 million. |
| Anders Olsson | Fully vested; 1,003,332 options with a value of $1.0 million. |
| Joseph A. Young | Fully vested; 805,435 options with a value of $1.3 million. |

(1) Potential gains are net values based on the aggregate difference between the respective exercise prices and the closing sale price of our common stock on April 30, 2007, which was $3.62 per share.

## Director Compensation

Non-employee directors receive an annual retainer of $30,000, $2,000 for attendance in person at each meeting of the board of directors or committee meeting (with meetings of the board of directors and all committees held within any 24 hour period considered to be a single meeting) and $500 for attendance at such meetings via telephone. In addition, members of the Audit Committee receive an annual retainer of $5,000, and the Chairman of the Audit Committee receives $10,000 for annual service in such capacity, members of the Compensation Committee and the Nominating and Corporate Governance Committee receive an annual retainer of $2,500, and the Chairman of the Compensation Committee and the Nominating and Corporate Governance Committee each receive $5,000 for annual service in such capacity. We reimburse directors for their reasonable expenses incurred in attending meetings of the board of directors.

In addition, all non-employee directors are granted an option to purchase 50,000 shares of common stock upon their initial election to the board and an option to purchase 20,000 shares of common stock on an annual basis. The date of grant of the annual options is generally made at the first meeting of the Board of Directors in each fiscal year. The initial options vest over a period of three years from the date of grant and the annual options vest on the first anniversary of the date of grant. As with all options, the per-share exercise price of each such option will equal the fair market value of a share of Common Stock on the date of grant.

The following table presents the compensation paid to our non-employee directors in the fiscal year ended April 30, 2007:

### Director Compensation Table

| Name | Fees Earned or Paid in Cash | Option Awards (1)(2) | All other Compensation | Total Compensation |
|---|---|---|---|---|
| Roger C. Ferguson | $ 51,500 | $ 67,932 | $ 0 | $ 119,432 |
| David C. Fries | $ 43,500 | $ 73,435 | $ 0 | $ 116,935 |
| Larry D. Mitchell | $ 49,000 | $ 67,932 | $ 0 | $ 116,932 |
| Robert N. Stephens | $ 42,125 | $ 72,197 | $ 0 | $ 114,322 |
| Dominique Trempont | $ 42,875 | $ 72,197 | $ 0 | $ 115,072 |
| Frank H. Levinson | $ 32,000 | $ 65,864 | $ 86,115(3) | $ 183,979 |

(1) Valuation based on the dollar amount of option grants recognized for financial statement reporting purposes pursuant to FAS 123R with respect to the fiscal year ended April 30, 2007. The assumptions used by us with

158

USB FIN 002167

respect to the valuation of option grants are set forth in "Finisar Corporation Consolidated Financial Statements — Notes to Financial Statements — Note 16 — Stockholders' Equity."

(2) The following table sets forth certain information with respect to the options granted during or for the fiscal year ended April 30, 2007 to each non-employee member of our Board of Directors:

| Name | Grant Date | Number of Shares of Common Stock Underlying Options | Exercise Price of Option Awards ($/Share) | Grant Date Fair Value of Option Awards |
|------|-----------|-----------------------------------------------------|-------------------------------------------|----------------------------------------|
| Roger C. Ferguson | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |
| David C. Fries | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |
| Larry D. Mitchell | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |
| Robert N. Stephens | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |
| Dominique Trempont | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |
| Frank Levinson | 06/06/2006 | 20,000 | $ 4.63 | $ 73,294 |

(3) This amount represents payments made under a consulting agreement with Dr. Levinson.

### Item 12. *Security Ownership of Certain Beneficial Owners and Management*

The following table sets forth, as of October 31, 2007, certain information with respect to the beneficial ownership of Finisar's Common Stock by (i) each stockholder known by Finisar to be the beneficial owner of more than 5% of Finisar's Common Stock, (ii) each director of Finisar, (iii) the executive officers of Finisar, and (iv) all current directors and executive officers of Finisar as a group.

| Name of Beneficial Owner(1) | Shares of Common Stock Beneficially Owned(1) | |
|-----------------------------|-----------|------------|
| | Number | Percentage |
| **5% Stockholders:** | | |
| FMR Corp.(2) | 40,805,702 | 13.2% |
|   82 Devonshire Street | | |
|   Boston, MA 02109 | | |
| Oppenheimer Funds, Inc.(3) | 20,176,164 | 6.5% |
|   Two World Financial Center | | |
|   225 Liberty Street | | |
|   New York, NY 10281 | | |
| T. Rowe Price Associates, Inc.(4) | 18,548,480 | 6.0% |
|   100 E. Pratt Street | | |
|   Baltimore, MD 21202 | | |
| **Executive Officers and Directors:** | | |
| Frank H. Levinson(5) | 17,973,432 | 5.8% |
| Jerry S. Rawls(6) | 7,229,392 | 2.3% |
| Stephen K. Workman(7) | 1,062,082 | * |
| Anders Olsson(8) | 523,228 | * |
| Larry D. Mitchell(9) | 182,500 | * |
| Roger C. Ferguson(10) | 130,000 | * |
| David Buse(11) | 460,000 | * |
| Joseph A. Young(12) | 387,453 | * |
| David C. Fries(13) | 40,000 | * |
| Robert N. Stephens(14) | 40,000 | * |
| Dominique Trempont(15) | 40,000 | * |
| All executive officers and directors as a group (11 persons)(16) | 28,068,087 | 9.1% |

USB FIN 002168

   \*   Less than 1%.

(1)   Unless otherwise indicated, the address of each of the named individuals is: c/o Finisar Corporation, 1389 Moffett Park Drive, Sunnyvale, CA 94089. Beneficial ownership is determined in accordance with the rules of the SEC and generally includes voting or investment power with respect to securities. All shares of common stock subject to options exercisable within 60 days following October 31, 2007 are deemed to be outstanding and beneficially owned by the person holding those options for the purpose of computing the number of shares beneficially owned and the percentage of ownership of that person. They are not, however, deemed to be outstanding and beneficially owned for the purpose of computing the percentage ownership of any other person.

     Accordingly, percent ownership is based on 308,634,829 shares of common stock outstanding as of October 31, 2007 plus any shares issuable pursuant to options held by the person or group in question which may be exercised within 60 days following October 31, 2007. Except as indicated in the other footnotes to the table and subject to applicable community property laws, based on information provided by the persons named in the table, these persons have sole voting and investment power with respect to all shares of the common stock shown as beneficially owned by them.

(2)   Based on information contained in a Schedule 13G/A dated June 11, 2007, filed with the Securities and Exchange Commission. Includes 40,776,116 shares beneficially owned by Fidelity Management & Research Company ("Fidelity"), an investment advisor registered under Section 203 of the Investment Advisors Act of 1940, as a result of acting as investment adviser to various investment companies registered under Section 8 of the Investment Company Act of 1940. The number of shares of Finisar common stock owned by the investment companies at May 31, 2007 included 6,121,457 shares of common stock resulting from the assumed conversion of $22,680,000 principal amount of Finisar's 2.5% convertible subordinated notes due 2010. The ownership of one investment company, Fidelity Mid Cap Stock Fund, amounted to 20,000,000 shares of common stock. Fidelity is a wholly-owned subsidiary of FMR Corp. Edward C. Johnson 3rd, Chairman of FMR Corp., FMR Corp., through its control of Fidelity, and the funds each has sole power to dispose of the 40,766,166 shares owned by the funds. Members of the Edward C. Johnson 3rd family are the predominant owners, directly or through trusts, of Series B shares of common stock of FMR Corp., representing 49% of the voting power of FMR Corp. The Johnson family group and all other Series B shareholders have entered into a shareholders' voting agreement under which all Series B shares will be voted in accordance with the majority vote of Series B shares. Accordingly, through their ownership of voting common stock and the execution of the shareholders' voting agreement, members of the Johnson family may be deemed, under the Investment Company Act of 1940, to form a controlling group with respect to FMR Corp. Neither FMR Corp. nor Mr. Johnson 3rd has the sole power to vote or direct the voting of the shares owned directly by the Fidelity funds, which power resides with the funds' boards of trustees. Fidelity carries out the voting of the shares under written guidelines established by the funds' boards of trustees. The address of FMR Corp., Fidelity, Fidelity Mid Cap Stock Fund and Edward C. Johnson 3rd is 82 Devonshire Street, Boston, Massachusetts 02109.

     Fidelity Management Trust Company, 82 Devonshire Street, Boston, Massachusetts 02109, a wholly-owned subsidiary of FMR Corp. and a bank as defined in Section 3(a)(6) of the Securities Exchange Act of 1934, is the beneficial owner of 3,786 shares of the outstanding common stock of the Company as a result of its serving as investment manager of the institutional account(s). The number of shares of common stock of the Company owned by the institutional account(s) at May 31, 2007 included 1,867,746 shares of common stock resulting from the assumed conversion of $6,920,000 principal amount of Finisar's 2.5% convertible subordinated notes due 2010. Edward C. Johnson 3d and FMR Corp., through its control of Fidelity Management Trust Company, each has sole dispositive power over 3,786 shares and sole power to vote or to direct the voting of 3,786 shares of common stock owned by the institutional account(s) described above.

     Pyramis Global Advisors Trust Company ("PGATC"), 53 State Street, Boston, Massachusetts 02109, an indirect wholly-owned subsidiary of FMR Corp. and a bank as defined in Section 3(a)(6) of the Securities Exchange Act of 1934, is the beneficial owner of 35,800 shares of the outstanding common stock of the Company as a result of its serving as investment manager of institutional accounts owning such shares. Edward C. Johnson 3d and FMR Corp., through its control of PGATC, each has sole dispositive power over

USB FIN 002169

35,800 shares and sole power to vote or to direct the voting of 35,800 shares of common stock owned by the institutional accounts managed by PGATC described above.

Fidelity Ventures III "FVIII," 82 Devonshire Street, Boston, Massachusetts 02109, is the beneficial owner of 3,680 shares of the outstanding common stock of the Company. FVIII is a Delaware limited partnership. The general partner of FVIII is Fidelity Ventures Advisors III limited partnership, a Delaware limited partnership. The general partner of Fidelity Ventures Advisors III is Fidelity Investors Management Corp., a Delaware corporation. The limited partners of FVIII are Fidelity Investors III limited partnership and Fidelity International Limited.

Fidelity Ventures Partners III "FVPIII," 82 Devonshire Street, Boston, Massachusetts 02109, is the beneficial owner of 106 shares of the outstanding common stock of the Company. FVPIII is a Delaware limited partnership. The general partner of FVPIII is Fidelity Investors Management Corp., a Delaware corporation. The limited partners of FVPIII are members of the investment management team of Fidelity Ventures III.

(3) Based on a Schedule 13G dated February 5, 2007, filed with the Securities and Exchange Commission. Oppenheimer Funds, Inc. is an investment advisor in accordance with Rule 13d-1(b)(1)(ii)(E) under the Securities Exchange Act of 1934, as amended, and disclaims beneficial ownership of the shares pursuant to Rule 13d-4 of the Securities Exchange Act of 1934, as amended.

(4) Based on information contained in a Schedule 13G dated February 13, 2007, filed with the Securities and Exchange Commission.

(5) Based on information contained in a Schedule 13G/A dated February 12, 2007, and Form 4 Reports filed with the Securities and Exchange Commission. Includes 14,762,614 shares held by the Frank H. Levinson Revocable Living Trust and 3,210,818 shares held by Seti Trading Co., Inc., ("Seti"), a company owned 50% by the Frank H. Levinson Revocable Living Trust and one other shareholder. Includes 780,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007. Dr. Levinson is the sole trustee of the Frank H. Levinson Revocable Living Trust and exercises sole voting and dispositive power over the shares held by the trust. Dr. Levinson and another director affiliated with the other shareholder are the sole directors of Seti and, consequently, the affirmative vote or consent of each of Dr. Levinson and the other director is required for any sale or other disposition of the shares held by Seti. However, pursuant to a shareholders' agreement, each of Dr. Levinson and the other director maintain the right to direct Seti to vote 50% of the shares held by Seti in accordance with written instructions from Dr. Levinson or the other director, respectively. Accordingly, Dr. Levinson has shared dispositive power with respect to all 3,210,818 shares held by Seti and sole voting power with respect to 1,605,409 shares held by Seti. Dr. Levinson disclaims the existence of a group under Rule 13d-5(b)(1) of the Securities Exchange Act of 1934, as amended, with respect to the shares held by Seti.

(6) Includes 5,549,392 shares held by The Rawls Family, L.P. Mr. Rawls is the president of the Rawls Management Corporation, the general partner of The Rawls Family, L.P. Includes 1,680,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(7) Includes 560,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(8) Includes 520,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(9) Includes 150,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(10) Includes 60,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(11) Includes 460,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(12) Includes 360,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(13) Includes 40,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

USB FIN 002170

Table of Contents

(14) Includes 40,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(15) Includes 40,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

(16) Includes 4,690,000 shares issuable upon exercise of options exercisable within 60 days following October 31, 2007.

### *Equity Compensation Plan Information*

We currently maintain five compensation plans that provide for the issuance of our common stock to officers, directors, other employees or consultants. These consist of the 1989 Stock Option Plan, the 2005 Stock Incentive Plan, the Employee Stock Purchase Plan and the International Employee Stock Purchase Plan, which have been approved by our stockholders, and the 2001 Nonstatutory Stock Option Plan (the "2001 Plan"), which has not been approved by our stockholders. The following table sets forth information regarding outstanding options and shares reserved for future issuance under the foregoing plans as of April 30, 2007:

| Plan Category(1) | Number of Shares to be Issued Upon Exercise of Outstanding Options, Warrants and Rights (a) | Weighted-Average Exercise Price of Outstanding Options, Warrants and Rights (b) | Number of Shares Remaining Available for Future Issuance Under Equity Compensation Plans (Excluding Shares Reflected in Column (a)) (c) |
|---|---|---|---|
| Equity compensation plans approved by stockholders | 44,234,843 | $ 2.53 | 36,330,909(1) |
| Equity compensation plan not approved by stockholders(2)(3) | 1,884,272 | $ 3.69 | 2,544,350 |

(1) Consists of shares available for future issuance under the plans. In accordance with the terms of the Employee Stock Purchase Plan, the number of shares available for issuance under the Employee Stock Purchase Plan and the International Employee Stock Purchase Plan will increase by 1,000,000 shares on May 1 of each calendar year until and including May 1, 2010. In accordance with the terms of the 2005 Stock Incentive Plan, the number of shares of our common stock available for issuance under the 2005 Stock Incentive Plan will increase on May 1 of each calendar year until and including May 1, 2015 by an amount equal to five percent (5%) of the number of shares of our common stock outstanding as of the preceding April 30.

(2) Excludes options assumed by Finisar in connection with acquisitions of other companies. As of April 30, 2007, 26,882 shares of our common stock were issuable upon exercise of these assumed options, at a weighted average exercise price of $2.20 per share. No additional options may be granted under these assumed equity rights.

(3) A total of 5,850,000 shares of our common stock have been reserved for issuance under the 2001 Plan. As of April 30, 2007, a total of 1,448,260 shares of common stock had been issued upon the exercise of options granted under the 2001 Plan.

### Material Features of the 2001 Nonstatutory Stock Option Plan

As of April 30, 2007, 4,401,740 shares of our common stock were reserved for issuance under the 2001 Plan. The 2001 Plan was adopted by our board on February 16, 2001 and provides for the granting of nonstatutory stock options to employees and consultants with an exercise price per share not less than 85% of the fair market value of our common stock on the date of grant. However, no person is eligible to be granted an option under the 2001 Plan whose eligibility would require approval of the 2001 Plan by our stockholders. Options granted under the 2001 Plan generally have a ten-year term and vest at the rate of 20% of the shares on the first anniversary of the date of grant and 20% of the shares each additional year thereafter until fully vested. Some of the options that have been granted under the 2001 Plan are subject to full acceleration of vesting in the event of a change in control of Finisar.

USB FIN 002171

**Item 13.** *Certain Relationships and Related Transactions, and Director Independence*

Frank H. Levinson, our former Chairman of the Board and Chief Technical Officer and a current director, is a member of the board of directors of Fabrinet, Inc., a privately held contract manufacturer. In June 2000, we entered into a volume supply agreement with Fabrinet, at rates which we believe to be market, under which Fabrinet serves as a contract manufacturer for us. In addition, Fabrinet purchases certain products from us. During the fiscal years ended April 30, 2007 and 2006, we made payments of approximately $76.6 million and $66.5 million to Fabrinet and Fabrinet made payments of approximately $44.7 million and $38.7 million to us.

In connection with the acquisition by VantagePoint Venture Partners in April 2005 of the 34 million shares of our common stock held by Infineon Technologies AG that we had previously issued to Infineon in connection with our acquisition of Infineon's optical transceiver product lines, we entered into an agreement with VantagePoint under which we agreed to use our reasonable best efforts to elect a nominee of VantagePoint to our board of directors, provided that the nominee was reasonably acceptable to the board's Nominating and Corporate Governance Committee as well as our full board of directors. In June 2005, David C. Fries, a Managing Director of VantagePoint, was elected to our board of directors pursuant to that agreement. We also agreed to file a registration statement to provide for the resale of the shares held by VantagePoint and certain distributees of VantagePoint. As a result of the reduction in VantagePoint's holdings of our common stock following distributions by VantagePoint to its partners, our obligations regarding the election of a nominee of VantagePoint to our board of directors have terminated and we are no longer obligated to maintain a registration statement for the resale of shares held by VantagePoint and certain distributees of VantagePoint.

The Audit Committee is responsible for reviewing and approving any transaction between the Company and any related parties.

Our Board of Directors currently consists of Roger C. Ferguson, David C. Fries, Frank Levinson, Larry D. Mitchell, Jerry S. Rawls, Robert N. Stephens and Dominique Trempont, all of which except for Messrs. Levinson and Rawls, are independent as defined under the rules of the Nasdaq Global Select Market.

**Item 14.** *Principal Accountant Fees and Services*

Fees for professional services provided by Ernst & Young LLP, the Company's principal accounting firm, in each of the last two years are:

|  | Year Ended April 30, 2007 | Year Ended April 30, 2006 |
|---|---|---|
| Audit Fees(1) |  |  |
| Core audit fees | $ 2,192,000 | $ 2,131,000 |
| Audit fees related to stock option restatement | 3,000,000 | |
| Audit-Related Fees(2) | 56,000 | 88,000 |
| Tax Fees(3) | 34,000 | 30,000 |
|  | $ 5,282,000 | $ 2,249,000 |

(1) Audit fees consist of fees billed for professional services rendered for the audit of Finisar's consolidated annual financial statements, internal control over financial reporting and the review of the interim consolidated financial statements included in quarterly reports and services that are normally provided by Ernst & Young LLP in connection with statutory and regulatory filings or engagements, and attest services. We have incurred total audit fees for fiscal 2007 of $5.2 million, of which approximately $2.2 million was for our core audit fees and approximately $3.0 million was related to the audit of our restated financial statements and the review of the independent investigation into our historical stock option practices.

(2) Audit-related fees consist of fees billed for assurance and related services that are reasonably related to the performance of the audit or review of Finisar's consolidated financial statements and are not reported under "Audit Fees." This category includes fees related to employee benefit plan audits and consultations in connection with acquisitions, and consultations concerning financial reporting.

USB FIN 002172

(3) Tax fees consist of fees billed for professional services rendered for tax compliance, tax advice and tax planning (domestic and international). These services include assistance regarding federal, state and international tax compliance, acquisitions and international tax planning.

**Pre-Approval Policies and Procedures**

The Audit Committee has adopted a policy that requires advance approval of all audit, audit-related, tax services, and other services performed by the independent registered public accounting firm. The policy provides for pre-approval by the Audit Committee of specifically defined audit and non-audit services. Unless the specific service has been pre-approved with respect to that year, the Audit Committee must approve the permitted service before the independent registered public accounting firm is engaged to perform it. The Audit Committee has delegated to the chair of the Audit Committee the authority to approve permitted services, provided that the chair reports any decisions to the Audit Committee at its next scheduled meeting.

## PART IV

**Item 15.  *Exhibits and Financial Statement Schedules.***

(a) The following documents are filed as a part of this Annual Report:

(1) *Financial Statements*

Consolidated Financial Statements: The following consolidated financial statements are included in Part II, Item 8 of this report.

Consolidated Balance Sheets as of April 30, 2007 and 2006

Consolidated Statements of Operations for the years ended April 30, 2007, 2006 and 2005

Consolidated Statements of Stockholders' Equity for the years ended April 30, 2007, 2006 and 2005

Consolidated Statements of Cash Flows for the years ended April 30, 2007, 2006 and 2005

Notes to Consolidated Financial Statements

(2) *Financial Statement Schedules*

Consolidated Valuation and Qualifying Accounts for the years ended April 30, 2007, 2006 and 2005 (see page 142)

(3) *Exhibits*

The exhibits listed in the Exhibit Index are filed as part of this report (see page 166)

164

USB FIN 002173

Table of Contents

# SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Sunnyvale, State of California, on this 4th day of December, 2007.

FINISAR CORPORATION

By /s/  Jerry S. Rawls
—————————————————————
Jerry S. Rawls
*President, Chief Executive Officer and*
*Chairman of the Board of Directors*

Know all persons by these presents, that each person whose signature appears below constitutes and appoints Jerry S. Rawls and Stephen K. Workman, and each of them, as such person's true and lawful attorneys-in-fact and agents, with full power of substitution and resubstitution, for such person and in such person's name, place and stead, in any and all capacities, to sign any and all amendments to this report on Form 10-K, and to file same, with all exhibits thereto, and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorneys-in-fact and agents, and each of them, full power and authority to do and perform each and every act and thing requisite and necessary to be done in connection therewith, as fully to all intents and purposes as such person might or could do in person, hereby ratifying and confirming all that said attorneys-in-fact and agents, or any of them, or their or his or her substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed by the following persons in the capacities and on the dates indicated:

| Signature | Title | Date |
| --- | --- | --- |
| /s/  Jerry S. Rawls<br>—————————————<br>Jerry S. Rawls | President and Chief Executive Officer (Principal Executive Officer) and Chairman of the Board of Directors | December 4, 2007 |
| /s/  Stephen K. Workman<br>—————————————<br>Stephen K. Workman | Senior Vice President, Finance, Chief Financial Officer and Secretary (Principal Financial and Accounting Officer) | December 4, 2007 |
| /s/  Roger C. Ferguson<br>—————————————<br>Roger C. Ferguson | Director | December 4, 2007 |
| /s/  David C. Fries<br>—————————————<br>David C. Fries | Director | December 4, 2007 |
| /s/  Frank H. Levinson<br>—————————————<br>Frank H. Levinson | Director | December 4, 2007 |
| /s/  Larry D. Mitchell<br>—————————————<br>Larry D. Mitchell | Director | December 4, 2007 |
| /s/  Robert N. Stephens<br>—————————————<br>Robert N. Stephens | Director | December 4, 2007 |
| /s/  Dominique Trempont<br>—————————————<br>Dominique Trempont | Director | December 4, 2007 |

USB FIN 002174

USB FIN 002175

Table of Contents

## EXHIBIT INDEX

| Exhibit Number | Description of Document |
|---|---|
| 2.1 | Master Sale and Purchase Agreement by and between Infineon Technologies AG and Finisar Corporation, dated January 25, 2005(1) |
| 3.1 | Amended and Restated Bylaws of Registrant |
| 3.2 | Restated Certificate of Incorporation of Registrant(3) |
| 3.3 | Certificate of Amendment to Restated Certificate of Incorporation of Registrant, filed with the Delaware Secretary of State on June 19, 2001(4) |
| 3.4 | Certificate of Elimination regarding the Registrant's Series A Preferred Stock(5) |
| 3.5 | Certificate of Designation(6) |
| 3.6 | Certificate of Amendment to Restated Certificate of Incorporation of Registrant, filed with the Delaware Secretary of State on May 11, 2005(7) |
| 3.7 | Amended and Restated Certificate of Incorporation of Registrant(8) |
| 4.1 | Specimen certificate representing the common stock(9) |
| 4.2 | Form of Rights Agreement between the Company and American Stock Transfer and Trust Company, as Rights Agent (including as Exhibit A the form of Certificate of Designation, Preferences and Rights of the Terms of the Series RP Preferred Stock, as Exhibit B the form of Right Certificate, and as Exhibit C the Summary of Terms of Rights Agreement)(10) |
| 4.3 | Indenture between the Company and U.S. Bank Trust National Association, a national banking association, dated October 15, 2001(11) |
| 4.4 | Indenture between the Company and U.S. Bank Trust National Association, a national banking association, dated October 15, 2003(12) |
| 4.5 | Indenture between the Company and U.S. Bank Trust National Association, a national banking association, dated October 12, 2006(13) |
| 10.1 | Form of Indemnity Agreement between Registrant and Registrant's directors and officers(3) |
| 10.2* | 1989 Stock Option Plan(9) |
| 10.3* | 1999 Stock Option Plan(14) |
| 10.4* | 1999 Employee Stock Purchase Plan, as amended and restated effective March 2, 2005(15) |
| 10.5* | Executive Retention and Severance Plan(16) |
| 10.6 | Purchase Agreement by and between FSI International, Inc. and Finisar Corporation, dated February 4, 2005(17) |
| 10.7 | Assignment and Assumption of Purchase and Sale Agreement between Finisar Corporation and Finistar (CA-TX) Limited Partnership, dated February 4, 2005(18) |
| 10.8 | Lease Agreement by and between Finistar (CA-TX) Limited Partnership and Finisar Corporation, dated February 4, 2005(19) |
| 10.9* | Form of Stock Option Agreement for options granted under the 2005 Stock Incentive Plan(20) |
| 10.10* | International Employee Stock Purchase Plan(21) |
| 10.11* | Finisar Corporation 2005 Stock Incentive Plan(22) |
| 10.12 | Letter Agreement dated December 28, 2005 between Finisar Corporation and Dr. Frank H. Levinson(23) |
| 10.13 | Form of Exchange Agreement by and between Finisar Corporation and certain holders of 2 $^{1}/_{2}$ % Convertible Subordinated Notes due 2010, dated October 6, 2006(24) |
| 10.14 | Registration Rights Agreement among Finisar Corporation and the initial purchasers of 2 $^{1}/_{2}$ % Convertible Senior Subordinated Notes due 2010, dated October 12, 2006(25) |
| 10.15 | Purchase Agreement among Finisar Corporation, AZNA LLC, Parviz Tayebati, the common unitholders and optionholders set forth therein, and Parviz Tayebati, as the Seller's Representative, dated March 23, 2007(26) |
| 10.16 | Convertible Promissory Note issued by Finisar Corporation to Parviz Tayebati with a principal amount of $15,592,926, dated March 26, 2007(27) |

166

USB FIN 002176

| Exhibit Number | Description of Document |
|---|---|
| 10.17 | Convertible Promissory Note issued by Finisar Corporation to Parviz Tayebati with a principal amount of $1,357,000, dated March 26, 2007(28) |
| 21 | List of Subsidiaries of the Registrant |
| 23.1 | Consent of Ernst & Young LLP, Independent Registered Public Accounting Firm |
| 31.1 | Certification of Principal Executive Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2 | Certification of Principal Financial Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32.1 | Certification of Chief Executive Officer Pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 32.2 | Certification of Chief Financial Officer Pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

\*   Compensatory plan or management contract.

(1)   Incorporated by reference to Exhibit 2.8 to Registrant's Current Report on Form 8-K filed January 28, 2005.

(3)   Incorporated by reference to Exhibit 3.3 to Registrant's Registration Statement on Form S-1/A filed October 19, 1999 (File No. 333-87017).

(4)   Incorporated by reference to Exhibit 3.6 to Registrant's Annual Report on Form 10-K filed July 18, 2001.

(5)   Incorporated by reference to Exhibit 3.8 to Registrant's Registration Statement on Form S-3 filed December 18, 2001 (File No. 333-75380).

(6)   Incorporated by reference to Exhibit 99.2 to Registrant's Registration Statement on Form 8-A12G filed on September 27, 2002.

(7)   Incorporated by reference to Exhibit 3.3 to Registrant's Registration Statement on Form S-3 filed May 18, 2005 (File No. 333-125034).

(8)   Incorporated by reference to Exhibit 3.11 to Registrant's Annual Report on Form 10-K filed July 29, 2005.

(9)   Incorporated by reference to the same numbered exhibit to Registrant's Registration Statement on filed October 19, 1999 (File No. 333-87017).

(10)   Incorporated by reference to Exhibit 4.2 to Registrant's Current Report on Form 8-K filed September 27, 2002.

(11)   Incorporated by reference to Exhibit 4.3 to Registrant's Quarterly Report on Form 10-Q for the period ended October 31, 2001 filed December 12, 2001.

(12)   Incorporated by reference to the same numbered exhibit to Registrant's Quarterly Report on Form 10-Q for the period ended October 31, 2003 filed December 10, 2003.

(13)   Incorporated by reference to Exhibit 4.8 to Registrant's Current Report on Form 8-K filed October 17, 2006.

(14)   Incorporated by reference to Exhibit 10.3 to Registrant's Registration Statement on Form S-1 filed September 13, 1999 (File No. 333-87017).

(15)   Incorporated by reference to Exhibit 99.1 to Registrant's Registration Statement on Form S-8 filed May 23, 2005 (File No. 333-125147).

USB FIN 002177

USB FIN 002178