# EXHIBIT B

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY
**PRESENT:** Hon. **KARLA MOSKOWITZ**                               **PART** **03**

Justice

------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION, in its capacity
as Indenture Trustee and not in its individual capacity,

|                                                    |                            |
|----------------------------------------------------|----------------------------|
|                                          Plaintiff, | INDEX NO. **601686/2007** |
|  -against-                                         | MOTION DATE _____     |
| MOA HOSPITALITY, INC. f/k/a MOTELS OF              | MOTION SEQ. NO. **001**    |
| AMERICA, INC., MOTELS OF AMERICA, L.L.C.,          | MOTION CAL. NO. _____ |
| and iSTAR FINANCIAL INC.,                          |                            |

                                          Defendants.

------------------------------------------------------------x

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                              | PAPERS NUMBERED |
|--------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits | _____  |
| Answering Affidavits — Exhibits                              | _____  |
| Replying Affidavits                                          | _____  |

# Cross-Motion:  ☒ Yes   ☐ No

Upon the foregoing papers, it is

ORDERED that this motion is decided in accordance with the accompanying Decision and
Order.

Dated: December *18*, 2007

**KARLA MOSKOWITZ**                *J.S.C.*

Check one:        ☐ **FINAL DISPOSITION**        ☒ **NON-FINAL DISPOSITION**

Check if appropriate:        ☐ **DO NOT POST**        ☐ **REFERENCE**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    Hon.  **KARLA MOSKOWITZ**                    PART   **03**
                        Justice

-----------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION, in its capacity
as Indenture Trustee and not in its individual capacity,

                                                    INDEX NO.  **601686/2007**

                                    Plaintiff,      MOTION DATE _____

            -against-                               MOTION SEQ. NO. ___**005**___

MOA HOSPITALITY, INC. f/k/a MOTELS OF            MOTION CAL. NO. _____
AMERICA, INC., MOTELS OF AMERICA, L.L.C.,
and iSTAR FINANCIAL INC.,

                                    Defendants.

-----------------------------------------------------------------x

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits _____ | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

# Cross-Motion:    ☒ Yes    ☐ No

Upon the foregoing papers, it is

ORDERED that this motion is decided in accordance with the Decision and Order in motion
sequence 001.

Dated: December 18, 2007

                                    _____
                                    **KARLA MOSKOWITZ**        *J.S.C.*

Check one:    ☐ **FINAL DISPOSITION**    ☒ **NON-FINAL DISPOSITION**

Check if appropriate:    ☐ **DO NOT POST**        ☐ **REFERENCE**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : I.A.S.  PART 3
------------------------------------------------------------------------x
U.S. BANK NATIONAL ASSOCIATION, in its
capacity as Indenture Trustee and not in its individual                Index No. 601686/2007
capacity,

                                        Plaintiff,

                        -against-                                      **DECISION and ORDER**

MOA HOSPITALITY, INC. f/k/a MOTELS OF
AMERICA, INC., MOTELS OF AMERICA, L.L.C.,
and iSTAR FINANCIAL INC.,

                                        Defendants.
------------------------------------------------------------------------x

**KARLA MOSKOWITZ, J:**

  Motion sequence numbers 001 and 005 are consolidated for disposition.

  In an action alleging breach of an Indenture Trust Agreement ("indenture"), U.S. Bank

National Association ("U.S. Bank," "plaintiff" or the "Trustee"), the Indenture Trustee,  moves

for partial summary judgment on the first, third and fourth causes of action in the complaint.

Defendants MOA Hospitality, Inc., formerly known as Motels of America, Inc., ("MOA" or the

"Issuer") and MOA's indirect, wholly owned subsidiary, Motels of America, L.L.C. ("MOA

LLC"), cross-move to dismiss the complaint (motion sequence 005).

  By separate motion, defendant iSTAR Financial ("iSTAR") moves to dismiss the

complaint against it (motion sequence 001).

**BACKGROUND**

  U.S. Bank and MOA are parties to an indenture dated April, 1994, pursuant to which

MOA issued 12% senior subordinated notes, Series A in the aggregate amount of $80,000,000

that MOA immediately exchanged for 12% senior subordinated notes, Series B ("Series B

Notes"). Pursuant to the indenture, MOA was obligated to pay interest on the Series B notes on April 15 and October 15 of each year through April 15, 2004 when the Series B Notes matured. The indenture stated that, on the maturity date, MOA was also obligated to pay all outstanding principal on the Series B notes.

MOA does not deny that it failed to make interest payments on October 15, 2003 and that it failed to pay principal and interest on April 15, 2004, triggering "Events of Default" under the indenture that gave the note holders and U.S. Bank the right to pursue their remedies as described in Article VI of the indenture.

Shortly before the October, 2003 default, MOA LLC entered into a loan and security agreement with defendant iSTAR, an organization that provides real estate financing, whereby iSTAR loaned MOA LLC $137,250,000. Shortly before the April, 2004 payment was due, MOA entered into a $15,000,000 loan and security agreement with iSTAR (referred to collectively herein as "the iSTAR loan"). The iSTAR loan was secured by liens on properties that MOA LLC owned.

As a result of MOA's default under the indenture agreement, MOA and U.S. Bank negotiated an exchange of the Series B notes for new notes that were subject to certain modified terms and conditions, and on January 15, 2005, they entered into a "First Supplemental Indenture"(the First Supplemental Indenture together with the Indenture are referred to herein as the "indenture") that permitted certain Series B Note holders to exchange the Series B Notes for 8% senior subordinated notes due October 15, 2007 ("Series C Notes"). A small number of note holders opted out of the First Supplemental Indenture and those note holders continue to hold $1,769,000 of Series B notes.

2

Asset Sales Under the Indenture

Article IV, Section 4.14 of the Indenture prohibits asset sales by MOA or its restricted

subsidiaries[1] from making asset sales unless MOA receives fair market value for the asset and at

least 75% of the consideration is in cash. When MOA and U.S. Bank were discussing the

supplemental indenture, MOA informed the bank that it was actively marketing its properties for

sale and would use the proceeds to retire its outstanding iSTAR debt. Accordingly, MOA and U.

S. Bank agreed in a new Section 4.14(g) of the Indenture that:

> Notwithstanding any other provisions of the Section 4.14 to the
> contrary, the Participating Holders, by acceptance of the Series
> C Notes, shall be deemed (1) to consent to any Asset Sale
> permitted under the New Bank Credit Facility[2] and (ii) to waive
> compliance with Section 4.14 until such time as the New Bank
> Credit Facility has been paid down to twenty-five million dollars
> ($25,000,000). After the New Bank Credit Facility has been paid
> down to twenty-five million dollars ($25,000,000), ninety
> percent (90%) of the net proceeds of any Asset Sale shall be paid
> to the trustee for mandatory redemption of the Series C notes.

(Rivero Aff, Ex. B at Section 4.14[g]).

In October, 2006 MOA advised U.S. Bank that only $28.6 million dollars remained due

and owing on the iSTAR loan. However, U.S. Bank states, on information and belief, that as a

result of several asset sales earlier in 2006, in October, 2006, the balance on the iSTAR loan was

well below the $25 million Section 4.14(g) threshold. In January, 2007, MOA sold five hotels

that MOA LLC owned for $24,000,000 in cash ("the Supertel transaction"), and, even though the

remaining balance on the iSTAR loan was near or below the $25 million threshold, MOA did not

---

[1] MOA LLC is a restricted subsidiary of MOA.

[2] The iSTAR loan is defined in the Indenture as the "New Bank Credit Facility".

3

pay any of the net proceeds from that sale to the Trustee to redeem the Series C Notes. Instead, MOA paid the net proceeds of the Supertel transaction to iSTAR.

On February 13, 2007, when U.S. Bank learned of the January, 2007 asset sale, it sent MOA a letter asking MOA to, "[p]lease advise me immediately of the amount of net sale proceeds available to be remitted to the Trustee and when the [Issuer] will remit such funds." (Rivero Aff., Ex. D).

MOA responded, through its counsel, in a letter dated March 1, 2007, stating that, "90% of the net proceeds from the Supertel sale transaction was paid to iSTAR Financial, Inc., reducing the iSTAR loan to approximately $7,500,000." The letter further stated:

> While you are correct that the First Supplemental Indenture provided that when the iSTAR loan was reduced to $25,000,000, 90% of future net sale proceeds from Asset Sales would be paid in reduction of the Series C Notes, iSTAR required that those net proceeds be paid to them and as a result none of such net proceeds were available to redeem the Series C Notes.

(Rivero Aff., Ex. E).

The complaint alleges that MOA's failure to comply with Section 4.14 of the indenture constitutes an Event of Default under Section 6.1(3) of the Indenture. Pursuant to Section 6.2 of the indenture, if an Event of Default occurs, all principal and accrued interest on the Series C notes is immediately due and payable. By letter dated May 14, 2007, the Trustee demanded that MOA pay the outstanding principal and accrued interest on the Series C Notes.[3] (Rivero Aff., Ex. H).

The complaint also alleges that MOA is insolvent in that it cannot pay its bills when they

---

[3] By the terms of the Indenture, the principal and accrued interest on the Series C Notes became due and payable on October 15, 2007.

4

become due; that MOA has acknowledged that it cannot make the principal and interest payments on the Series C Notes and that MOA has indicated that it will not be able to remain in business if the Trustee requires MOA to meet its existing obligations to the note holders. (Complaint, Para. 34).

On May 18, 2007, the Trustee commenced this action against MOA, MOA LLC and iSTAR seeking, in the first cause of action, a declaratory judgment that MOA violated: (1) Section 4.1 of the indenture by failing to timely pay principal and interest on the Series B Notes and (2) Section 4.14 (g) of the indenture by engaging in one or more asset sales without paying at least 90% of the net proceeds from those sales to redeem the Series C Notes. Relatedly, in the third cause of action U.S. Bank seeks to enjoin MOA and MOA LLC from engaging in any further asset sales without paying at lease 90% of the net proceeds from those sales to the Trustee in accordance with Section 4.14(g) of the indenture. The second cause of action states a fraudulent conveyance claim and the fourth cause of action states a breach of contract claim against MOA and MOA LLC. The fifth and sixth causes of action are against iSTAR for tortious interference with contract and unjust enrichment, respectively. In the seventh cause of action, the Trustee seeks fees and expenses against MOA and MOA LLC.

## THE iSTAR MOTION TO DISMISS THE COMPLAINT

In support of the motion to dismiss the complaint, iSTAR argues that it is a senior secured creditor and that, under New York law, a debtor's payments of valid antecedent debts cannot form the basis of a claim by other creditors for fraudulent transfer, tortious interference or unjust enrichment and that, under Sections 12.1 and 12.8 of the indenture, U.S. Bank's right to repayment on the notes is subordinate to the right of repayment of senior secured indebtedness.

Moreover, it argues that it is not a party to the indenture and is not bound by Section 4.14(g) and

that, even if that paragraph is applicable to iSTAR, "net proceeds" as a defined term in the

Indenture, is limited to those "proceeds received by [MOA] in respect of any Asset Sale, net of . .

. amounts required to be applied to the repayment of indebtedness secured by a Lien." (Rivero

Aff, Ex. A, Section 1.1).

     In opposition, U.S. Bank contends that under New York Debtor & Creditor Law Section

276, the existence of an antecedent debt alone is not sufficient to validate an otherwise fraudulent

transfer; that "net proceeds" is not a defined contract term and thus must be given its ordinary

meaning[4] and that iSTAR benefitted from the modifications in the Indenture that permitted MOA

to sell assets without restrictions, and accordingly, iSTAR is bound by Section 4.14(g).

     A. Legal Standard

     Under CPLR 3211(a)(7), "[a] party may move for judgment dismissing one or more

causes of action asserted against him on the ground that . . . the pleading fails to state a cause of

action." (*Tal v Malekan,* 305 A.D.2d 281 [1st Dept. 2003]).  On a motion addressed to the

sufficiency of the complaint, the Court must afford the complaint liberal construction, accept as

true the facts pleaded and determine only whether the facts fit within any cognizable legal theory.

(*See, e.g. 1455 Washington Ave Assoc. v Rose & Kiernan, Inc.,* 260 A.D.2d 770 [3rd Dept

1999]).  However, if the allegations set forth in the complaint do not state a valid cause of action,

even when taken as true, the court must dismiss the complaint, as a matter of law.  (*See, Bailey v

Grey, Siefert & Co., Inc.,* 300 A.D.2d 258 [1st Dept. 2002]).

---

[4] The definition of "net proceeds" is discussed *infra* at pp. 16-17.

B. Intentional Fraudulent Conveyance

U.S. Bank alleges that MOA's $28.5 million payment to iSTAR is voidable as an intentional fraudulent conveyance pursuant to Debtor & Creditor Law ("DCL") Section 276, that states, "[e]very conveyance made . . . with actual intent, as distinguished from intent presumed by law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

To prove actual fraud under DCL Section 276, a creditor must show intent to hinder, delay or defraud and, if it proves actual intent, the court will set the transaction aside, regardless of the adequacy of the consideration. (*See, HBE Leasing Corp. v Frank,* 61 F.3d 1054, [2nd Cir. 1995]).[5]

> Due to the difficulty of proving actual intent to hinder,
> delay, or defraud creditors, the pleader is allowed to rely
> on 'badges of fraud' to support his case, i.e., circumstances
> so commonly associated with fraudulent transfers that
> their presence gives rise to an inference of intent.

(*Wall St. Assocs. v Brodsky,* 257 A.D.2d 526 [1st Dept 1999] [internal citations and quotations omitted]).

Badges of fraud may include, among other things, a close relationship between the parties to the transaction; a questionable transfer not in the usual course of business; inadequacy of consideration and retention of control of the property. (*In re Sharp Int'l Corp.,* 403 F. 3d 43, 48 [2d Cir 2005]).

Here, plaintiff has failed to plead adequately the "badges of fraud" that demonstrate

---

[5] Pursuant to CPLR Section 3016(b), where a cause of action is based on fraud, the circumstances constituting the wrong must be stated with particularity.

7

iSTAR's actual intent to hinder, delay or defraud U.S Bank. Plaintiff has not alleged that the iSTAR loans to MOA were anything other than arms length transactions between debtor and creditor. Nor has plaintiff alleged that MOA's payments to iSTAR were not made in the ordinary course of dealings between the parties. Indeed, plaintiff acknowledges that the iSTAR loans were valid antecedent debts that valid mortgages on MOA's properties secured and that MOA repaid iSTAR to obtain release of the mortgage liens when MOA sold the mortgaged properties to third parties. Moreover, the complaint fails to allege that iSTAR concealed the asset sales from plaintiff. U.S. bank acknowledges, in the complaint and in the first supplemental indenture, that MOA was actively marketing its properties in order to pay off the iSTAR loan. In addition, in the March 1, 2007 letter, MOA acknowledged that it told U.S. Bank, in a telephone conversation on or about February 20, 2007, that it had used the proceeds from the asset sales to pay down the iSTAR loan. (Rivero Aff, Ex. E).

U.S. Bank's reliance on *HBE Leasing Corp v Frank*, 48 F.3d 623 (2nd Cir. 1995) to support its claim that the complaint pleads adequate badges of fraud is without merit. In that case, the complaint contained allegations of self-dealing by corporate insiders who were the recipients of the funds at issue. Here, the complaint is devoid of allegations of iSTAR self-dealing or other close relationship between iSTAR and MOA.

Rather, *In Re Sharp Int'l, Corp.,* 403 F.3d 43, is more closely analogous to the facts in this case. There, the lender, State Street Bank, demanded that Sharp repay a loan after State Street discovered that Sharp's principals were looting the business and that Sharp had issued false financial statements. In order to comply with the demand, Sharp issued subordinated notes to third party lenders and paid State Street with the proceeds of notes. Sharp's Trustee in

8

Bankruptcy commenced a proceeding against State Street, claiming, *inter alia,* that the note

offering and the repayment of the State Street loan constituted a fraudulent transfer under DCL

Section 276.  The court granted State Street's motion to dismiss the complaint, finding:

> The intentional fraudulent conveyance claim fails for
> the independent reason that Sharp inadequately alleges
> fraud with respect to the transaction that Sharp seeks to
> void, *i.e.* Sharp's $12.25 million payment to State Street.
>
> The fraud alleged in the complaint relates to the manner
> in which Sharp obtained new funding from the Note holders,
> not Sharp's subsequent payment of part of the proceeds to
> State Street.  The $12.25 million payment was at most a
> preference between creditors and did not "hinder, delay,
> or defraud either present or future creditors."

(*Id* at 56 [quotations in the original]; *see also, Spires v Mihou,* 13 A.D.3d 1056 [4th Dept 2004]).

Here, the court dismisses U.S. Bank's fraudulent conveyance claim because U.S. Bank

has failed to plead "badges of fraud" sufficient to sustain a fraudulent transfer claim under DCL

Section 276.

C.  Tortious Interference

To state a claim for tortious interference with contract, plaintiff must allege: (1) the

existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of

the contract; (3) defendant's intentional procurement of the third party's breach of the contract

without justification; (4) actual breach of the contract and (5) resulting damages. (*Lama Holding

Co. v Smith Barney, Inc.,* 88 N.Y.2d 413, 424 [1996]).

Here, plaintiff has failed to adequately allege that iSTAR caused MOA to breach Section

4.14(g) of the indenture without justification.  iSTAR is MOA's secured creditor, and its

acceptance of MOA's payments on the iSTAR loans do not form the basis of a tortious

9

interference claim.

In *Ultramar Energy Ltd. v Chase Manhattan Bank, N.A.,* 179 A.D.2d 592 (1st Dept 1992) (*Ultramar I*), the plaintiff was an unsecured creditor that asserted, *inter alia,* a tortious interference claim against a bank holding a security interest in the debtor's assets. Plaintiff claimed that the bank knew of the debtor's poor financial condition, but nevertheless enforced its security agreement against the debtor leaving the debtor unable to meet its obligations to the plaintiff. In *Ultramar I* at 593, the court held, "[t]his alleged conduct by [the bank] in attempting to protect its security interest, cannot be construed as malicious or carried out with the intent to harm plaintiff. As such, plaintiff has not made out a prima facie case for tortious interference with contracts." (*See also, Felsen v. Sol Café Mfg. Corp.,* 24 N.Y.2d 682 [1969]).

In this case, even though MOA's payments to iSTAR interfered with MOA's ability to meet its obligations to U.S. Bank under the indenture, iSTAR was entitled to require MOA to repay it's valid antecedent debt to iSTAR. Accordingly, plaintiff has not stated a cause of action for tortious interference with contract.

D. Unjust Enrichment

The court also dismisses the unjust enrichment claim. To state a claim for unjust enrichment, plaintiff must show that the defendant was enriched at plaintiff's expense and that it is against equity and good conscience to permit the defendant to retain what plaintiff seeks to recover. However, it is well settled that, under the law of this state, a debtor may properly assign assets to a creditor as payment for an antecedent debt although the effect of the transfer will be to prefer that creditor. (*See, MacDraw, Inc. v CIT Group Equipment Financing, Inc.,* 157 F.3d 956 [2nd Cir. 1998]; *Ultramar Energy Ltd. v Chase Manhattan Bank, N.A.,* 191 A.D.2d 86, 91 [1st

10

Dept 1993]; *see also, Lange v Cooper,* 28 A.D.3d 240 [1st Dept 2006] [cause of action for unjust enrichment dismissed given the valid preexisting debt owed to defendant by the grantor]). Here, iSTAR was not unjustly enriched by MOA's payments. Rather, MOA merely repaid its valid preexisting debt to iSTAR

### U.S. Bank's Motion for Summary Judgment/ MOA & MOA LLC's Cross-Motion to Dismiss the Complaint

In support if its motion for summary judgment on its first cause of action for a declaratory judgment that MOA and MOA LLC have violated Section 4.14(g) of the indentures and its fourth cause of action for breach of contract against those entities, U.S. Bank contends that the language of the contract is clear and unequivocal. It claims that it is entitled to the principal and interest due under the Series B and C notes because the Series B Notes, by their terms, became due and payable on April 15, 2004 and that the Series C Notes became due and payable upon MOA's failure to comply with Section 4.14(g) of the indenture.[6]

U.S. Bank seeks an injunction to prohibit MOA from engaging in any asset sales without paying at least 90% of the net proceeds from such sale to the trustee for mandatory redemption of the Series C notes. U.S. Bank argues that an injunction is necessary because MOA is insolvent and there is a likelihood that it will be unable to meet its obligations to the note holders if it continues to violate it's obligations under Section 4.14(g) of the indenture.

In opposition to the motion for summary judgment and in support of the motion to dismiss the complaint and to dismiss all claims against MOA LLC, MOA claims that U.S. Bank

---

[6] As noted above, the Series C Notes, by their terms, became due and payable on October 15, 2007, after U.S. Bank filed the complaint.

11

does not have standing to pursue the claims of the Series B note holders because it waived that right when U.S. Bank informed the Series B note holders that those note holders could pursue their individual claims for principal and interest on the Series B Notes; that "net proceeds" is a defined term in the indenture, and, based on the unambiguous definition of that term, U.S. Bank's causes of action for a declaratory judgment, breach of contract and an injunction must be dismissed and, finally, the fraudulent transfer cause of action must be dismissed because the iSTAR loan was a valid antecedent debt.  MOA also argues the court should dismiss the action against MOA LLC because it is not a signatory to the indenture and U.S. Bank has not pleaded any facts that would permit this court to reverse "pierce the corporate veil" in order to find MOA LLC liable under the indenture.

    A.  <u>Standing</u>

    U.S. Bank, as trustee, has not waived its right to collect principal and interest on behalf of the Series B note holders. Section 7.1 of the indenture provides:

> If a Default or an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

    In addition, Section 6.10 of the indenture provides that "[n]o delay or omission by the Trustee or by any Holder of any Security to exercise any right or remedy arising upon any Event of Default shall impair the exercise of any such right or remedy or constitute a waiver of any such Event of Default."

    In the January 28, 2005 Notice that U.S. Bank sent to the Series B Note holders, the bank

merely advised those note holders that, "[t]hose Holders choosing not to participate in the Company's proposal may pursue their individual claims against the Company for principal and interest under the Series B Notes." By telling Series B note holders that they "may" pursue their individual claims, U.S. Bank did not expressly or impliedly waive its right to pursue the remedies provided in the indenture.

The indenture charges the Trustee with representing the interests of all note holders. Here, following MOA's default under the Series B Notes, the Trustee negotiated the First Supplemental Indenture, including the exchange for Series C Notes, that 84% of the Series B Note holders accepted. The remaining Series B Note holders possess an individual right of action. However, pursuant to the Indenture, if those note holders do not pursue their individual remedies, the Trustee retains the right to seek all rights and remedies on their behalf. (*See*, generally, Article VI of the indenture). Accordingly, the January 2005 Notice did not constitute the Trustee's express or implied waiver of the Trustee's right to seek redress on behalf of the Series B Note holders and the Trustee has standing to bring claims on behalf of those note holders.

B. MOA LLC

That branch of MOA's motion to dismiss that seeks to dismiss MOA LLC from the action is granted. MOA LLC is not a party to the indenture and it is not liable for MOA's breaches of that indenture. Indeed, the language throughout the indenture that restricts MOA's actions regarding asset sales, liens, etc. states, "[t]he Company will not, and will not permit any of its Restricted Subsidiaries to . . ." (*See*, e.g. Indenture and First Supplemental Indenture, Para. 4.10; 4.11; 4.12). Thus, the clear, unequivocal language of the indenture provides that it is

13

MOA's duty to ensure that the Restricted Subsidiaries comply with the restrictions recited in the indenture and that MOA will be in breach its duty under the indenture if it fails to ensure that those subsidiaries comply with the stated restrictions.

Moreover, the court cannot find MOA LLC liable for MOA's alleged breach of contract unless U.S. Bank can "reverse" pierce the corporate veil to show: "(1) complete domination and control of the [corporate entity], not only generally, but with respect to the transaction at issue, (2) that this control was used to commit a fraud or other wrong, in contravention of the plaintiff's rights, and (3) that the control and its misuse caused the loss." (*Eastern States Elec. Contractors, Inc. v William L. Crow Constr. Co.,* 153 A.D.2d 522, 523 [1st Dept 1989]). In this case, U.S. Bank has not alleged that MOA dominates MOA LLC or that MOA abused MOA LLC's corporate form to commit any wrongdoing. Moreover, it has not alleged any of the indicia of domination and control (i.e., shared officers and directors, commingling of bank accounts, shared office space, etc) that might permit a court to "reverse" pierce the corporate veil.

That MOA and MOA LLC are affiliated companies, or that MOA LLC is defined in the indenture as a "Restricted Subsidiary," is not enough. Accordingly, based on the clear language of the indenture, MOA LLC is not a signatory to the indenture  and, "[b]asic principles of corporate law [that] presume that absent a rather egregious disregard of corporate formalities, one corporate entity . . . is not automatically or readily responsible for the acts of another entity." (*Limited, Inc. v McCrory Corp.,* 645 F.Supp. 1038, 1044 [S.D.N.Y. 1986]), the court dismisses MOA LLC from the action.

C.  Summary Judgment

"The proponent of a summary judgment motion must make a prima facie showing of

14

entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any

material issues of fact from the case." (*Winegrad v N.Y. Univ. Med. Ctr.,* 64 N.Y.2d 851, 853

[1985]).  If the movant makes such a showing, the burden shifts to the non-movant to

demonstrate the existence of factual issues requiring trial. (*Dallas-Stephenson v Waisman,* 39

A.D.3d 303, 306 [1st Dept 2007]).

> It is well settled that, on a motion for summary judgment,
> the construction of an unambiguous contract is a question
> of law for the court to pass on, and that circumstances
> extrinsic to the agreement or varying interpretations of the
> contract provisions will not be considered, where . . . the
> intention of the parties can be gathered from the instrument
> itself.

(*Lake Constr. & Dev. Corp. v City of N.Y.,* 211 A.D.2d 514, 515 [1st Dept 1995]).

The "[m]ere assertion by one that contract language means something to him, where it is

otherwise clear, unequivocal and understandable when read in connection with the whole

contract, is not in and of itself enough to raise a triable issue of fact." (*Nat'l Union Fire Ins. Co. v*

*Robert Christopher Assocs.,* 257 A.D.2d 1, 11 [1st Dept 1999] [quoting *Bethlehem Steel Co. v*

*Turner Constr. Co.,* 2 N.Y.2d 456, 460 [1957]).  Contract language is not rendered ambiguous by

competing interpretations that strain the contract language beyond its ordinary meaning.

(*Bethlehem Steel Co.,* 2 N.Y.2d at 459).

Here, U.S. Bank has made a prima facie showing that it is entitled to judgment on its first

cause of action for a declaratory judgment that MOA breached its obligations under Section

4.14(g) of the indenture and on the fourth cause of action for breach of contract.  In paragraph

4.14(g) of the indenture, MOA agreed that, "[a]fter the [iSTAR loan] has been paid down to

twenty-five million dollars [$25,000,000], ninety percent [90%] of the net proceeds of any Asset

Sale shall be paid to the Trustee for mandatory redemption of the Series C Notes." Indeed, by letter dated March 1, 2007 (incorporated by reference into the complaint as Ex. D), MOA's counsel admitted that, "[w]hile you are correct that the First Supplemental Indenture provided that when the iSTAR loan was reduced to $25,000,000, 90% of future net sale proceeds from Asset Sales would be paid in reduction of the Series C Notes, iSTAR required that those net proceeds be paid to them and as a result none of such net proceeds were available to redeem Series C Notes."

MOA's failure to comply with Section 4.14(g) of the indenture constitutes an event of default under Section 6.1(3) of the indenture and a breach of contract. Pursuant to Section 6.2 of the indenture, if an event of default occurs, "all principal of, premium applicable to, and accrued interest on, the Series C Notes shall be immediately due and payable without any declaration or any other act on the part of the Trustee or the Holders."

MOA's argument that "Net Proceeds" is a defined term in the indenture and that, pursuant to that definition, Section 4.14(g) requires payment in full of the iSTAR loan before any sales proceeds can be used to redeem the Series C Notes, is without merit. Net Proceeds is defined in the indenture as:

> The aggregate cash proceeds received by [MOA] or any of its Restricted Subsidiaries in respect of any Asset Sale, net of the direct costs relating to such Asset Sale . . . and any relocation expenses incurred as a result thereof, taxes paid or payable as a result thereof . . ., amounts required to be applied to the repayment of Indebtedness secured by a Lien on the asset or assets that are the subject of such Asset Sale and any reserve for adjustment in respect of the sale price of such asset or assets. (Emphasis added).

Throughout the indenture, the defined terms are capitalized and when the parties wanted to use

16

"Net Proceeds" as a defined term, they capitalized it. (*See*, Paragraphs 4.14(b); 4.14( c) and

4.14(e) of the indenture). In Section 4.14(g) "net proceeds" is not capitalized, and, thus, in this

context, the parties intended the term "net proceeds" to have its plain and ordinary meaning.

(*See, Gallo v Travelers Prop. Cas.,* 21 A.D.3d 1379, 1380 [4th Dept 2005] [an undefined term in

a contract must be afforded its plain and ordinary meaning] [citations omitted]).

Moreover, MOA's interpretation would render Section 4.14(g) meaningless. The rules of

interpretation of contracts require the court to adopt an interpretation that gives meaning to every

provision of a contract. (*Muzak v Taft Hotel,* 1 N.Y.2d 42 [1956]). Here, Section 4.14(g) has

only one logical interpretation–that is, when MOA reduced iSTAR's loan to $25,000,000, MOA

would give U.S. Bank 90% of the net proceeds of all asset sales that the bank would use for the

mandatory redemption of the Series C Notes. Accordingly, MOA's strained reading of the

indenture fails to raise an issue of fact sufficient to overcome U.S. Bank's *prima facie* case.

D. Injunction

To obtain injunctive relief under Article 63 of the CPLR, the movant must show (1) a

likelihood of success on the merits, (2) the balance of the equities in its favor and (3) irreparable

injury absent the injunctive relief. Here, because the court has granted U.S. Bank's partial

summary judgment motion on the first and fourth causes of action in the complaint, the Trustee

has shown that it is likely to succeed on the merits in this action. Moreover, the equities balance

in U.S. Bank's favor because it is undisputed that principal and interest on both the Series B

Notes and the Series C Notes, by their terms, is currently due and payable and the injunction

would impose no new restrictions on MOA–it would merely require MOA to comply with its

ongoing contractual obligation.

17

As to the third element, irreparable injury, U.S. Bank argues that an injunction is necessary because MOA is unable to pay its debts as they become due and, if MOA continues to engage in asset sales without honoring its obligations under Paragraph 4.14(g) of the indenture, there is a substantial likelihood that MOA will be unable to pay off the note holders.

Here, because of MOA's precarious financial condition, an award of money damages alone is insufficient to ensure actual redress to the note holders. "The irreparable injury is the prospect that plaintiff will not be able to collect on any judgment in the case." (*State of N.Y. v Maricopa Prods. Inc.,* 1999 WL 1042313 at *5 [Sup. Ct. N.Y. County] [enjoining property sales where asset transfer would leave nothing for collection by judgment creditors]; *Brenntag Int'l Chem., Inc. v Norddeutsche Landesbank GZ,* 9 F. Supp. 2d 331, 345 [S.D.N.Y. 1998] [granting injunction where plaintiff's "ability to collect damages if the (letter of credit) is erroneously paid may be frustrated by the beneficiary['s] . . . insolvency and receivership"])

Accordingly, to ensure the integrity of both the indenture and the payment of any judgment in U.S. Bank's favor, the court grants that branch of the Bank's motion seeking summary judgment on its third cause of action for an injunction.

E.  Fraudulent Conveyance against MOA

For the reason stated, *supra,* in the court's discussion of iSTAR's motion to dismiss the fraudulent conveyance cause of action, the court grants that branch of MOA's motion that seeks to dismiss the fraudulent conveyance cause of action against it.

F.  Fees and Expenses

The court denies that branch of MOA's motion to dismiss that seeks dismissal of the seventh cause of action. In the seventh cause of action, U.S. Bank seeks to recover the fees and

18

expenses of the litigation pursuant to Section 7.7 of the indenture that obligates MOA to pay U.S.
Bank's reasonable fees and expenses in acting as Trustee, including fees and expenses of the
Trustee's agents and counsel.  Section 7.7 further provides that MOA's obligation to the Trustee
constitutes additional indebtedness under the indenture that MOA cannot subordinate to MOA's
payment of senior indebtedness.  In this case, the Trustee has stated meritorious causes of action
against MOA on behalf of the note holders, and, according to the indemnification provision in
Section 7.7 of the indenture, MOA is obligated to reimburse U.S. Bank for its reasonable fees
and expenses.

Settle Order that includes a proposed amount for a bond or undertaking.

Dated:  December 18, 2007

J.S.C.