Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (Admitted *Pro Hac Vice*; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone:  (801) 533-9800
Facsimile:   (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone:   (408) 291-6200
Facsimile:    (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee in behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive, <br><br> Defendants <br><br> AND RELATED COUNTERCLAIMS. | Case No. 5:07-CV-04052-JF (PVT) <br><br> **PLAINTIFF FINISAR CORPORATION'S MOTION TO:** <br> **(1) COMPEL PRODUCTION OF DOCUMENTS;** <br> **(2) COMPEL DEPOSITION TESTIMONY; AND** <br> **(3) FOR ADDITIONAL TIME TO COMPLETE DEPOSITION** <br><br> (Declaration of L. Rex Sears and Motion for Sanctions filed herewith) <br><br> Date:         **Tuesday, June 17, 2008** <br> Time:         **10:00 a.m.** <br> Courtroom:  **5 (Magistrate Judge Trumbull)** <br><br> District Judge:    Hon. Jeremy Fogel <br> Magistrate Judge:  Hon. Patricia V. Trumbull <br><br> Complaint Filed:  June 22, 2007 <br> Trial Date Set:    None Yet |

# TABLE OF CONTENTS

**PAGE(S)**

NOTICE OF MOTION ........................................................................................................... 1

POINTS AND AUTHORITIES ............................................................................................. 2

I.    INTRODUCTION ...................................................................................................... 2

II.   BACKGROUND ........................................................................................................ 3

III.  LEGAL PRINCIPLES ............................................................................................... 4

    A.    Principles Relating to Privilege in General ................................................... 4

    B.    Origins and Overview of "Joint Defense" Privilege ..................................... 4

    C.    Limitations on "Joint Defense" Privilege ..................................................... 5

IV.   ARGUMENT............................................................................................................... 6

    A.    U.S. Bank and the Noteholders Are Not Joint Clients of U.S. Bank's Counsel............ 6

    B.    Because the Noteholders Were Unrepresented, No Joint Defense Privilege Applies. .. 6

    C.    The "Joint Defense" Privilege Is Inapposite Because Because No Privilege Ever Attached to Communications By or To the Noteholders. ............................................. 6

    D.    Communications with the Noteholders Are Not Privileged because U.S. Bank Had No Agreement with the Noteholders to Keep them Confidential................................. 7

    E.    U.S. Bank's Authority Is Inapposite. ........................................................... 8

V.    CONCLUSION............................................................................................................ 9

SCHEDULE "A": TABLE OF QUESTIONS NOT ANSWERED BY DIANA JACOBS .......... 10

SCHEDULE "B": TABLE OF PRIVILEGE LOG ENTRIES IDENTIFYING SUBJECT DOCUMENTS ........................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3

**Cases**

4

*Allendale Mututal Insurance Co. v. Bull Data Systems., Inc.,*
  152 F.R.D. 132 (N.D. Ill. 1993) ............................................................... 6

5

*Cavallaro v. United States,*
  153 F. Supp. 2d 52 (D. Mass. 2001) ......................................................... 6

6

7

*In re Teleglobe Communications Corp.,*
  493 F.3d 345 (3d Cir. 2007) ............................................................. 4, 5, 6

8

*Metro Wastewater Reclamation Dist. v. Continental Cas. Co.,*
  142 F.R.D. 471 (D. Colo. 1992 .............................................................. 5, 6

9

*Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,*
  213 B.R. 433 (Bankr. S.D.N.Y. 1997) .................................................... 5, 6

10

11

*U.S. Bank National Association v. U.S. Timberlands Klamath Falls, L.L.C.,*
  2005 WL 2037353 (Del. Ch. Aug. 16, 2005) ............................................. 8

12

*United States v. BDO Seidman, LLP,*
  492 F.3d 806 (7th Cir. 2007) .................................................................... 7

13

*United States v. LeCroy,*
  348 F. Supp. 2d 375 (E.D. Pa. 2004) ....................................................... 7

14

15

*United States v. Martin,*
  278 F.3d 988 (9th Cir. 2002) ................................................................ 4, 7

16

*Weil v. Investment/Indicators, Research & Management, Inc.,*
  647 F.2d 18 (9th Cir. 1981) ...................................................................... 4

17

18

**Statutes/Rules**

19

Delaware Rule of Evidence 502 ............................................................... 8, 9

20

Federal Rules of Civil Procedure Rule 26 ...................................................... 1

Federal Rules of Civil Procedure Rule 30 .................................................. 1, 3

21

Federal Rules of Civil Procedure Rule 37 ...................................................... 1

22

23

24

25

26

27

28

# NOTICE  OF  MOTION

TO DEFENDANT U.S. BANK TRUST NATIONAL ASSOCATION AND TO ITS

ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED ACTION:

PLEASE TAKE NOTICE that, on **Tuesday, June 17, 2008, at 10:00 a.m**., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above-entitled Court (the Honorable Patricia V. Trumbull, United States Magistrate Judge, presiding) located at 280 South First Street, San Jose, California, plaintiff Finisar Corporation ("Finisar") shall—and hereby does—move the Court to enter an order:

(1)    Compelling defendant U.S. Bank Trust National Association ("U.S. Bank") to produce documents withheld from production based on assertion of a joint-defense privilege protecting communications between U.S. Bank and its counsel, on the one hand, and individuals and entities alleged to hold convertible notes (the "Noteholders") issued under the contractual trust indentures at issue in the above-captioned action (the "Action"), on the other;

(2)    Compelling U.S. Bank to provide additional deposition testimony by Diana L. Jacobs, its Vice President and designee pursuant to Federal Rules of Civil Procedure 30(b)(6),[1] relating to communications with Noteholders; and

(3)    Enlarging the time for Finisar to complete the deposition of Ms. Jacobs beyond the seven hours ordinarily permitted.

In the concurrently-filed "Plaintiff Finisar Corporation's Motion for Monetary Discovery Sanctions" (the Motion for Sanctions"), Finisar is also seeking monetary sanctions, consisting of compensation for the expense of preparing and prosecuting the instant motion (the "Motion to Compel") and of completing Ms. Jacobs' deposition.

Finisar's instant Motion to Compel is and shall be made pursuant to Rules 26(b)(2)(A), 30(d)(2), and 37(a)(3)(B); and on the grounds that U.S. Bank's communications with Noteholders are not privileged.  The undersigned counsel for Finisar certifies that he and his colleague have

---

[1] Subsequent "Rule" references are to the Federal Rules of Civil Procedure, unless otherwise indicated.

conferred, in person and in writing, with counsel for U.S. Bank, regarding the issues addressed by this Motion to Compel. The conference process has resulted in negotiated resolution of several other deficiencies, but the parties have reached impasse with respect to the assertion of privilege targeted by this Motion to Compel.

Finisar's Motion to Compel is and shall be based upon this Notice, the Points and Authorities set forth below, the accompanying "Declaration of L. Rex Sears in Support of Finisar Corporation's Motion to Compel and for Sanctions" ("Sears Decl."), the pleadings, documents, and other records on file in the above-captioned action (the "Action"), and such additional evidence and argument as may be presented in connection with the hearing and determination of the Motion to Compel.

# POINTS AND AUTHORITIES

Finisar respectfully offers the following points and authorities in support of its Motion to Compel.

## I.    INTRODUCTION

Finisar and U.S. Bank are parties to a series of three trust indentures ("Indentures") under which Finisar issued three series of convertible notes ("Notes"). Late in 2006, Finisar informed the Securities and Exchange Commission ("SEC") and U.S. Bank that it had commenced an internal investigation, which might necessitate deferral of Finisar's filing of certain periodic reports with the SEC and thus, perforce, with U.S. Bank. U.S. Bank alleged that Finisar thereby defaulted under the Indentures, leading Finisar to commence this Action seeking a declaration that it had not. Since the Action was commenced, three federal courts addressing similar allegations between different parties to similarly-worded contracts have issued rulings adopting Finisar's position, while none has adopted U.S. Bank's[2]; and Finisar has filed *all* of its periodic reports.

The discovery Finisar has been denied bears on at least two disputed issues, one of which is already the subject of a pending motion for summary judgment by U.S. Bank. First, U.S. Bank

---

[2] Before this Action was commenced, one state court had issued an unpublished decision to the contrary, but each of the federal courts to have subsequently addressed the issue have disagreed with that court's holdings and expressly rejected its reasoning.

1  maintains and has moved for summary judgment that Finisar is obligated to pay attorney's fees

2  incurred by U.S. Bank, regardless of who prevails on the underlying issues.  Second, U.S. Bank

3  has sued Finisar for unspecified damages allegedly suffered by the Noteholders.  In addition to

4  disputing both claims on purely legal grounds, Finisar also disputes the first because U.S. Bank

5  has incurred fees negligently or in bad faith, and the second because from the discovery Finisar

6  *has* obtained it appears that none of the Noteholders has apprised U.S. Bank of any compensable

7  injury.  (*See* Sears Decl., Ex. "B," 180:3-20.)  To further substantiate both arguments, Finisar

8  requires discovery of communications between U.S. Bank and the Noteholders, in whose behalf

9  U.S. Bank claims to have acted.

10        U.S. Bank has frustrated Finisar's efforts to conduct deposition and document discovery

11  reasonably calculated to lead to the discovery of admissible evidence relevant at least to U.S.

12  Bank's claims for fees and damages by asserting that its communications with the Noteholders

13  are subject to some sort of joint defense privilege.  Because the conditions for asserting such a

14  privilege are not here met, U.S. Bank's invocation of the joint defense privilege has been

15  improper and unjustified.  Still, U.S. Bank has refused to budge on this issue.  Thus, Finisar

16  brings this Motion to Compel.

17        By way of relief, Finisar seeks production of documents and deposition testimony hitherto

18  withheld based on the errant assertion of privilege.  Because much of its time with U.S. Bank's

19  deponent was spent trying to overcome U.S. Bank's incorrect assertion of privilege and obtain the

20  withheld testimony, Finisar also seeks enlargement of the seven-hour period ordinarily permitted

21  to conduct a deposition.  In its companion Motion for Sanctions, Finisar seeks an order requiring

22  U.S. Bank to reimburse it for the expense of preparing and prosecuting this Motion to Compel,

23  and to pay the attorney's fees and other costs that will be associated with resuming the deposition

24  to obtain the improperly denied discovery.

## II.    BACKGROUND

26        On March 26, 2008, Finisar deposed Diana L. Jacobs, Vice President of U.S. Bank

27  National Association, both as an individual and in her capacity as U.S. Bank's designee pursuant

28  to Rule 30(b)(6), in accordance with the deposition notice reproduced as Exhibit "A" to the

1   accompanying Sears Declaration.  As reflected in the Rule 30(b)(6) notice, Ms. Jacobs appeared

2   *inter alia* as U.S. Bank's designee regarding communications with Noteholders.  But during her

3   deposition, she was instructed by U.S. Bank's counsel not to answer Finisar's questions relating

4   thereto, based on U.S. Bank's invocation of a "joint defense privilege" for communications

5   between U.S. Bank and the Noteholders.  The questions and answers at issue in the instant

6   Motion to Compel are set forth in Schedule "A" hereto.[3]

7        In addition to refusing to provide certain deposition testimony, U.S. Bank has also

8   withheld from production certain documents transmitted by or to the Noteholders.  By this

9   Motion to Compel, Finisar also seeks production of the documents identified in the entries from

10  U.S. Bank's March 25, 2008 privilege log that are reproduced in Schedule "B" hereto.

### III.    LEGAL PRINCIPLES

#### A.    Principles Relating to Privilege in General

13       "The fact that a person is a lawyer does not make all communications with that person

14  privileged."  *United States v. Martin,* 278 F.3d 988, 999 (9th Cir. 2002).  To the contrary,

15  "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly

16  construed."  *Weil v. Investment/Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 24 (9th Cir.

17  1981).  "The burden is on the party asserting the privilege to establish all the elements of the

18  privilege."  *Martin,* 278 F.3d at 999-1000.

#### B.    Origins and Overview of "Joint Defense" Privilege

20       "In its original form," the joint-defense privilege "allowed the attorneys of criminal co-

21  defendants to share confidential information about defense strategies without waiving the

22  privilege as against third parties."  *In re Teleglobe Comms. Corp.,* 493 F.3d 345, 364 (3d Cir.

23  2007).

24            Later, courts replaced the joint-defense privilege, which only applied to criminal
              co-defendants, with a broader one that protects all communications shared within a
25            proper "community of interest," whether the context be criminal or civil.  Thus,
              the community-of-interest privilege allows attorneys representing different clients

---

27  [3]  The Schedule sets forth in full the questions asked, the objections made, and the response (if
     any) given, together with preceding questions and answers to the extent necessary to provide
28  context (in the column labeled "Setup").  Pertinent excerpts from the transcript are reproduced as
     Exhibit "B" to the Sears Declaration.

1

with similar legal interests to share information without having to disclose it to others. It applies in civil and criminal litigation, and even in purely transactional contexts.

2

*Id.* (citations omitted).

3

"Federal courts have used the term 'joint defense privilege' to refer to both the joint client

4

privilege and the common interest rule privilege." *Securities Investor Protection Corp. v.*

5

*Stratton Oakmont, Inc.,* 213 B.R. 433, 435 n. 1 (Bankr. S.D.N.Y. 1997). However, "[a]

6

distinction should be made between these two doctrines": "The joint client doctrine applies when

7

clients share the same lawyer; whereas the common interest or allied lawyer doctrine applies

8

when parties with separate lawyers consult together under the guise of a common interest or

9

defense." *Id.*

10

**C.   Limitations on "Joint Defense" Privilege**

11

Even under the broadened community of interest doctrine, "to be eligible for continued

12

protection, the communication must be shared with the *attorney* of the member of the community

13

of interest. Sharing the communication directly with a member of the community may destroy

14

the privilege." *Teleglobe,* 493 F.3d at 364 (citations omitted). "The attorney-sharing requirement

15

helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure

16

rule"—i.e., the rule that disclosure outside the attorney-client relationship waives privilege—

17

"when attorneys, not clients, decide to share information in order to coordinate legal strategies."

18

*Id.* at 365.

19

"[T]he joint defense privilege is merely an extension of the attorney-client privilege . . . .

20

In other words, it confers no independent privileged status to documents or information." *Metro*

21

*Wastewater Reclamation Dist. v. Continental Cas. Co.,* 142 F.R.D. 471, 478 (D. Colo. 1992).

22

The common interest doctrine is simply an exception to the rule that "[d]isclosing a

23

communication to a third party . . . waives the privilege." *Teleglobe,* 493 F.3d at 361. "Thus, to

24

be eligible for protection under the joint defense privilege, it must be established that the

25

materials fall within the ambit of . . . the attorney-client privilege," to begin with. *Metro,* 142

26

F.R.D. at 478.

27

28

1

## IV.    ARGUMENT

2

### A.    U.S. Bank and the Noteholders Are Not Joint Clients of U.S. Bank's Counsel.

3    U.S. Bank's deponent and counsel have both confirmed that U.S. Bank's counsel does not

4   represent the Noteholders.  (Sears Decl., Ex. "B," 194:12-24; 195:7-12.)  Accordingly, the issue

5   presented by U.S. Bank's invocation of privilege is whether its communications with the

6   Noteholders fall within the "common interest doctrine."

7

### B.    Because the Noteholders Were Unrepresented, No Joint Defense Privilege Applies.

8

9    As noted above, "the common interest or allied lawyer doctrine applies when parties *with*

10  *separate lawyers* consult together under the guise of a common interest or defense."  *Securities*

11  *Investor Protection Corp.*, 213 B.R. at 435 n. 1 (emphasis added).  "Under the strict confines of

12  the common-interest doctrine, the lack of representation for the remaining parties vitiates any

13  claim to privilege."  *Cavallaro v. United States,* 153 F. Supp. 2d 52, 61 (D. Mass. 2001).

14  Because the Noteholders were unrepresented, the common interest rule does not apply.  *Id.*

15  Moreover, where applicable, the common interest doctrine protects only communications

16  "with the *attorney* of the member of the community of interest."  *Teleglobe*, 493 F.3d at 364

17  (emphasis in original).  Accordingly, communications to or from either U.S. Bank or the

18  Noteholders (rather than between their respective attorneys) would not have been covered, even if

19  U.S. Bank had been represented.

20

### C.    The "Joint Defense" Privilege Is Inapposite Because Because No Privilege Ever Attached to Communications By or To the Noteholders.

21  As noted above, "the joint defense privilege is merely an extension of the attorney-client

22  privilege"; thus it "confers no independent privileged status."  *Metro,* 142 F.R.D. at 478.  The

23  common interest doctrine is simply an exception to the rule that "[d]isclosing a communication to

24  a third party . . . waives the privilege."  *Teleglobe,* 493 F.3d at 361.  "Thus, to be eligible for

25  protection under the joint defense privilege, it must be established that the materials fall within

26  the ambit of . . . the attorney-client privilege," to begin with.  *Metro,* 142 F.R.D. at 478; *see also*

27  *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 152 F.R.D. 132, 140 (N.D. Ill. 1993) ("If no

28

1    privilege shields a document from discovery, then the common interest doctrine is of no use to a

2    party.").

3         Accordingly, even if the common interest doctrine had been applicable, here, it would at

4    most have protected communications otherwise falling within the ambit of the privilege—i.e.,

5    those from U.S. Bank to its counsel—that were disclosed to or shared with the Noteholders'

6    attorneys. *See United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007)

7    ("Although occasionally termed a privilege itself, the common interest doctrine is really an

8    exception to the rule that no privilege attaches to communications between a client and an

9    attorney in the presence of a third person."); *Martin,* 278 F.3d at 999-1000 (only communications

10   "by the client" are privileged). Communications from the Noteholders to either U.S. Bank or its

11   counsel could not have been protected by the common interest doctrine, nor could

12   communications from U.S. Bank to the Noteholders, because they do not "fall within the ambit of

13   . . . the attorney-client privilege," in the first place.

14        **D.    Communications with the Noteholders Are Not Privileged because U.S. Bank
               Had No Agreement with the Noteholders to Keep them Confidential.**

15

16   "Even in the context of joint defense agreements, in order for privilege to attach to a

     communication, the party asserting the privilege bears the burden of demonstrating that 'the
17
     communication was given in confidence and that the client *reasonably understood it to be so*
18
     *given.*'" *United States v. LeCroy,* 348 F. Supp. 2d 375, 381-381 (E.D. Pa. 2004) (citation
19
     omitted). Far from meeting this burden, U.S. Bank's deponent, Ms. Jacobs, testified that U.S.
20
     Bank has not entered into any written or oral joint defense agreement with any of the
21
     Noteholders, and indeed has not even discussed with any of the Noteholders the concept of a joint
22
     defense agreement. (Sears Decl., Ex. "B," 123:11-19, 139:22-24.) When Finisar asked whether
23
     U.S. Bank had informed any of the Noteholders that it regarded communications between them as
24
     privileged, or whether any of the Noteholders had requested that U.S. Bank afford those
25
     communications such treatment, the deponent was instructed not to answer. (*Id.* at 195:13-21;
26
     197:2-12.)
27

28

1    The evidence U.S. Bank has permitted to come forward belies any claim that it reasonably

2    understood its communications with the Noteholders were given in confidence, and U.S. Bank

3    has improperly frustrated Finisar's ability to gather additional evidence. Accordingly, even if the

4    other conditions for invoking the common interest doctrine had been met, still that doctrine could

5    not justify U.S. Bank's failures of production.

6    **E.    U.S. Bank's Authority Is Inapposite.**

7    Although U.S. Bank, as the proponent of privilege, bore the burden of "establish[ing] all

8    the elements," *Martin,* 278 F.3d at 999-1000, it cited no authority to support its claim that

9    communications to and from unrepresented third parties were privileged until after Finisar

10   presented it with the contrary authorities cited above. Even then, it offered no authority other

11   than an inapposite and unsound state court disposition, *U.S. Bank National Association v. U.S.*

12   *Timberlands Klamath Falls, L.L.C.,* 2005 WL 2037353 (Del. Ch. Aug. 16, 2005).

13   According to *U.S. Timberlands,* "otherwise privileged communications between the

14   Trustee, its counsel, and the Noteholders" fall within the scope of the common interest doctrine.

15   *U.S. Timberlands,* 2005 WL 2037353, at *2. That holding is inapposite, on its face, because the

16   communications U.S. Bank seeks to protect in *this* Action are not "otherwise privileged." *See*

17   *ante,* p. 6, § IV.C.

18   Moreover, in *U.S. Timberlands,* "the noteholders were required to agree that they would

19   maintain the confidentiality of those communications, and were required to state that they did not

20   have any connections to the defendants." *U.S. Timberlands,* 2005 WL 2037353, at *1. Here, by

21   contrast, U.S. Bank's designee has testified (so far as she was permitted) that no such conditions

22   were imposed. *See ante,* p. 7, § IV.D.

23   In any event, the state court deciding *U.S. Timberlands* based its ruling on Delaware Rule

24   of Evidence 502(b), which has no federal counterpart; and because the Court bases its exercise of

25   subject matter jurisdiction over *this* Action on a finding that a federal question is presented,

26   federal rather than state law governs U.S. Bank's invocation of privilege. *See* Fed. R. Evid. 501.

27   Further, *U.S. Timberlands* misconstrued its own rule. By its express terms, that rule expressly

28   limits the common interest doctrine to communications "by [the client] or his representative or his

1  lawyer . . . to *a lawyer* . . . representing another in a matter of common interest." *U.S.*

2  *Timberlands,* 2005 WL 2037353, at *1 n. 7 (emphasis added).  On its face, the rule does not reach

3  communications made by or to the (unrepresented) Noteholders, as observed by *Teleglobe,* 493

4  F.3d at 364 (citing Del. R. Evid. 502(b) in support of the proposition that "to be eligible for

5  continued protection, the communication must be shared with the *attorney* of the member of the

6  community of interest.  Sharing the communication directly with a member of the community

7  may destroy the privilege.").

8      U.S. Bank has not discharged (and cannot discharge) its burden to establish that privilege

9  applies.

10                          **V.    CONCLUSION**

11      For all of the foregoing reasons, Finisar's Motion to Compel should be granted, U.S. Bank

12  should be compelled to produce additional documents and deposition testimony, and Finisar

13  should be given an additional seven hours to conclude the deposition of Ms. Jacobs.

14  DATED:  May 13, 2008                 Respectfully submitted,

15                                       Sterling A. Brennan
                                         L. Rex Sears
16                                       WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

17                                       Caroline McIntyre
                                         BERGESON, LLP
18

19                                       By___/s/ L. Rex Sears_____
                                                 L. REX SEARS
20                                       Attorneys for Plaintiff FINISAR CORPORATION

21

22

23

24

25

26

27

28

**SCHEDULE "A":**
**TABLE OF QUESTIONS NOT ANSWERED BY DIANA JACOBS**

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 1 | Q: Were you involved in any form of communication to the holders regarding the outcome of that [ENE]?<br>A: There was a call with holders subsequent to discuss what happened. (116:4-7.) | Q: And what was discussed during that call? (122:17.) | [U.S. Bank:] I'm going to instruct the witness not to disclose privileged information. We would assert that the communications are protected by the attorney/client privilege. She can describe them in a level of generality that allows you to know broadly what was discussed. (122:18-23.)<br><br>[U.S. Bank:] There is a joint defense privilege that would include the three holders and U.S. Bank Trust. They have an identity of interests because the bank only functions according to the directions of the holders. (123:4-8.) | Q: And are you going to follow Counsel's instruction and not provide the full information that I've sought?<br>A: Yes. (124:18-21.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 2 | Q: U.S. Bank participated in seven conference calls with various holders, right?<br>A: Yes.<br>(125:24-126:1.) | Q: And what was discussed during that call.<br>(129:20.) | [U.S. Bank]: Again let me caution the witness to describe the call in generalities without compromising the attorney/client privilege.<br>(129:21-23.) | A: Generally, we discussed the status of the litigation and strategy.<br>Q: Is that all you're going to disclose to me regarding what was discussed during that call?<br>A: Yes.[1]<br>(129:24-130:3.) |
| 3 | Q: Let's turn next to the November 13, 2007, call.<br>(130:4.) | Q: And what was discussed during that call?<br>(130:11.) | [U.S. Bank]: Again I'll caution the witness not to disclose the attorney/client privilege or disclose information that would violate the privilege, but to describe the topic in general terms.<br>(130:12-15.) | A: The topic in general terms was the status of the litigation and strategy.<br>(130:16-17.)<br><br>Q: Will you tell me any more about the status -- or excuse me -- what was discussed during those calls?<br>A: No.<br>(130:22-24.) |
| 4 | Q: Let's go to the December 11, 2007 call.<br>(130:25.) | Q: And what was discussed during that call?<br>(131:5.) | [U.S. Bank]: My instruction remains the same.<br>(131:6-7.) | A: Litigation update and strategy.<br>Q: Will you tell me any more about that call?<br>A: No.<br>(131:8-11.) |

---

[1] Prior to this exchange, counsel for Finisar had requested and received "agreement of counsel that as we move forward, if you make other instructions in the future, that I need not ask" whether the witness would "follow Counsel's instruction and not provide the full information that I've sought" "each time, but instead the witness will be deemed to be following your instructions." (124:18-125:2.)

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 5 | Q: Let's turn to the January 14th, 2008, call. (131:12.) | Q: What was discussed during that call? (131:12.) | [U.S. Bank]: I reiterate my objection and instruction. (131:16-17.) | A: Strategy and the lit -- update on the litigation. Q: Can you tell me any more about that call? A: No. (131:18-21.) |
| 6 | Q: Let's go to January 30, 2008. Who are the parties to that call? (131:22-23.) | Q: What was discussed? (131:25.) | [U.S. Bank]: My objection and reiteration -- and instruction are reiterated, rather. (132:1-2.) | A: Aside from the [ENE] that we discussed, it was strategy and status of the litigation. Q: Will you tell me any more about what was discussed during that call? A: No. (132:3-7.) |
| 7 | Q: Let's go to February 19th, 2008. Who are the parties to that call? (132:8-9.) | Q: What was discussed? (132:11.) | [U.S. Bank]: I reiterate my objection and instruction. (132:12-13.) | A: Update on the status of the litigation and strategy. Q: Will you tell me any more about what was discussed? A: No. (132:14-18.) |
| 8 | Q: That brings us to the March 11, 2008, call. (132:19.) | Q: What was discussed? (132:22.) | [U.S. Bank]: I reiterate my objection and instruction. (132:23-24.) | A: Strategy and update on the status of the litigation. Q: Will you tell me any more about what was discussed? A: No. (132:25-133:4.) |

| Ref. No. | Setup | Question | Objection | Response |
|----------|-------|----------|-----------|----------|
| 9 | | Q: If any of the holders have requested U.S. Bank to accelerate, why did U.S. Bank not accelerate in response to a request by any holders? (138:1-3.) | [U.S. Bank]: I object to the extent the question calls for attorney/client privileged information, and instruct the witness not to answer in a way that would compromise the attorney/client privilege. [¶] Can you answer? (138:4-8.) | A: No. (138:9.) |
| 10 | | Q: Has U.S. Bank informed the holders that U.S. Bank believes that the notes could be accelerated? (138:16-17.) | [U.S. Bank]: I object to the extent that the question calls for attorney/client privileged information. [¶] I instruct you not to answer to the extent that it would compromise the privilege. Answer if you can do -- answer if you may without doing so. (138:18-22.) | A: I think I can't answer. (139:8-9.). <br><br> Q: And is that because of privilege? A: Yes. (139:14-15.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 11 | Q: Have you told me everything about the calls with the holders or purported holders that you're willing to disclose to me today?<br><br>A: Yes<br>Q: And you have more information, but you're not disclosing it because of the claimed privilege; is that right?<br>A: That's right.<br>(141:11-17.) | | | |
| 12 | Q: Also, just making sure that we're clear on the subject, when I asked you earlier whether any of these holders you had identified had ever requested acceleration, did they in fact make a demand -- any of them make a demand upon U.S. Bank to accelerate under the notes?<br>(149:6-10.)<br><br>A: No.<br>(149:20.) | Q: Did any of them explain why they were not demanding that U.S. Bank accelerate?<br>(149:21-22.) | [U.S. Bank]: I'm going to instruct you not to answer to the extent that the answer would require you to divulge attorney/client privileged information. Answer if you can without doing so.<br>(149:23-150:1.) | A: I'm trying to go through all the details of the conversation. I think I can't answer.<br>(150:2-3.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 13 | | Q: Have any of the holders indicated to U.S. Bank that they've been harmed? (180:7-8.) | [U.S. Bank]: Object to the extent it calls for the conclusion of attorney/client information. [¶] Answer if you're able without compromising the privilege. (180:9-12.) | A: Yeah, I guess it's -- I'll have to say I can't answer that. (180:13-14.) |
| 14 | Q: So you're not able to provide me any information in terms of how the holders may have been harmed as a result of Finisar's not making certain SEC filings until December 4, 2007? A: Yeah. I can just say they have not been happy that they have been without financial information. Q: Have any of them told you that? A: They have expressed that, yeah. (180:15-22.) | Q: What have they said? (180:23.) | [U.S. Bank]: Let me make the same objection. Past answering that on a "yes" or "no," if you can answer without disclosing privileged information, do so. (180:24-181:1.) | A: I don't think I can say more than that. (181:2-3.) |
| 15 | | Q: And tell me as precise as you can what each [noteholder said in] that regard. (181:15-17.) | [U.S. Bank]: Let me instruct you not to answer if it would disclose privileged information. (181:18-19.) | A: Yeah, I can't answer any further than what I've just said. (181:20-21.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 16 | | Q: In any communications with the holders, have they ever raised the subject with U.S. Bank of wanting Finisar to make some financial payment to them or other financial compensation as a result of any delay of making SEC filings? (182:14-17.) | [U.S. Bank]: I'll object on the basis of the attorney/client privilege. [¶] You may answer if you can do so that without compromising the privilege. (182:18-21.) | A: I can't answer that. Q: At all? A: At all. (182:22-24.) |
| 17 | | Q: When there's three Federal District Court decisions that have been issued thus far, indicating that the position that U.S. Bank has been advocating is erroneous, is there something that U.S. Bank feels that it needs to meet its fiduciary duties to its holders relative to Finisar to discontinue the litigation? (193:6-12.) | [U.S. Bank]: I also object to the extent it calls for attorney/client privileged communication. [¶] If you can answer without compromising the privilege, you can do so. (193:13-17.) | A: I don't think I can answer without compromising the privilege. (193:18-19.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 18 | | Q: Have any of the holders asked U.S. Bank to continue with the litigation? (193:20-21.) | [U.S. Bank]: Let me -- let me object on the privilege ground. [¶] And instruct you not to answer in such a way as would compromise the privilege. You may answer if you can do so without compromising. (193:22-194:1.) | A: I guess I can't answer that. Q: At all? A: I think -- without violating the privilege, I think I can't answer that. (194:2-6.) |
| 19 | | Q: In any of the discussions with any of the holders -- reported holders, were the holders told that the discussions were going to be treated as attorney/client privileged? (195:13-15.) | [U.S. Bank]: I think that violated the attorney/client privilege to be talking about the attorney/client privilege, what the implications are. I'll object as privilege grounds and instruct her not to answer. (195:18-21.) | (None.) |
| 20 | | Q: Have any of the holders told you or any other representative of U.S. Bank that they wished to have the communications treated as privileged? (197:2-4.) | [U.S. Bank]: Same objection. (197:12.) | (None.) |

| Ref. No. | Setup | Question | Objection | Response |
|---|---|---|---|---|
| 21 | Q: Have any of the holders -- purported holders ever expressed any concern about the financial condition of Finisar? (199:9-10.) | Q: [What has a noteholder expressed] with that regard? (199:22-23.) | [U.S. Bank]: I would instruct you not to answer unless you can answer without compromising the attorney/client privilege. (199:24-200:1.) | A: Yeah, I can't -- I mean, I can just answer that there's general concern about Finisar's financial health. (200:2-4.) |
| 22 | A: Yes. (199:17.) | Q: What about [Finisar's] financial health is the concern? (200:5-6.) | [U.S. Bank]: Same objection. (200:8.) | A: -- that's all I can say. (200:9.) |
| 23 | | Q: Do you know what the basis is for the concern? (200:10-11.) | [U.S. Bank]: Same objection. (200:12.) | A: I can't answer. (200:13.)<br><br>Q: Because of client privilege?<br>A: Yes. (200:16-17.) |
| 24 | | Q: And was U.S. Bank taking the position that it need not return the collateral because Finisar was in a continuing state of default? (201:4-6.) | [U.S. Bank]: Let me instruct you not to answer if it compromises privilege. Answer if you can without doing so. (201:7-9.) | A: Yeah, I can't without compromising privilege. (201:10-11.) |
| 25 | Q: But U.S. Bank did return the collateral, right?<br>A: Yes, we did. (202:11-12.) | Q: Is that because U.S. Bank concluded that Finisar was not in a state of continuing default? (202:13.) | [U.S. Bank]: Object on the privilege. Answer if you can. (202:15-16.) | A: I can't answer that. (202:17.) |

# SCHEDULE "B":
## TABLE OF PRIVILEGE LOG ENTRIES IDENTIFYING SUBJECT DOCUMENTS

| NO. | DATE | AUTHOR | RECIPIENT | CC | DESCRIPTION | REASON WITHHELD | REDACTED BATE RANGE |
|---|---|---|---|---|---|---|---|
| 60[1] | 07/20/07 | Fisco | Noteholder | Wilkinson, Jacobs | Email re acceleration | AC, WP | |
| 64 | 08/02/07 | Beneficial Holder | | | Draft letter re 5¼% Notes | AC, WP | |
| 65 | 08/02/07 | Beneficial Holder | | | Draft letter re 5¼% Notes | AC, WP | |
| 76 | 08/14/07 | Financial Advisor | Jacobs | | Fax Cover Page – Redact Sender Info – USB FIN 444 | WP | USB FIN 000444 |
| 123 | 12/10/07 | Waltz | Noteholders | Fisco, Jacobs, Wilkinson | Email re scheduling conference call | AC, WP | |
| 148 | 01/24/08 | Noteholder | Jacobs | | Noteholder Verification Form – Redact Noteholder Identity – USB FIN 998-1000 | AC, WP | USB FIN 000998 - 1000 |
| 149 | 01/24/08 | Noteholder | Jacobs | | Noteholder Verification Form – Redact Noteholder Identity – USB FIN 1032 | AC, WP | USB FIN 001032 |
| 150 | 01/24/08 | Noteholder | Jacobs | | Noteholder Verification Form – Redact Noteholder Identity - USB FIN 1071 | AC, WP | USB FIN 001071 |
| 151 | 01/24/08 | Noteholder | Jacobs | | Noteholder Verification Form – Redact Noteholder Identity – USB FIN 2628 | AC, WP | USB FIN 002628 |
| 157 | 01/24/08 | Jacobs | Noteholders | | Email re Noteholder Verification Forms | AC, WP | |
| 173 | 03/10/08 | Grinde | Noteholders | Jacobs, Fisco, Wilkinson | Email re scheduling of conference call | AC, WP | |

---

[1] The reference numbers given are those used in U.S. Bank's privilege log, as are the column headings and the information set forth therein.

| NO. | DATE | AUTHOR | RECIPIENT | CC | DESCRIPTION | REASON WITHHELD | REDACTED BATE RANGE |
|---|---|---|---|---|---|---|---|
| 187 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1045 | | |
| 188 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1046 | | |
| 189 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1047 | | |
| 190 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1060 | | |
| 191 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1061 | | |
| 192 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1062 | | |
| 193 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1072 | | |
| 194 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1073 | | |
| 195 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1074 | | |
| 196 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1152 | | |
| 197 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 2625 | | |

| NO. | DATE | AUTHOR | RECIPIENT | CC | DESCRIPTION | REASON WITHHELD | REDACTED BATE RANGE |
|-----|------|--------|-----------|----|-------------|-----------------|---------------------|
| 198 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 2626 | | |
| 199 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 2627 | | |
| 200 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1153 | | |
| 201 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1214 | | |
| 202 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1215 | | |
| 203 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1216 | | |
| 204 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact CUSIP No. – USB FIN 1154 | | |
| 207 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact Noteholder Identity – USB FIN 445 | AC, WP | USB FIN 000445 - 445 |
| 208 | | Noteholder | Jacobs | | Noteholder Verification Form – Redact Owner Identity – USB FIN 446 | AC, WP | USB FIN 000446 - 446 |

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on May 13, 2008, I electronically filed the foregoing with the Clerk of

3   the Court using the CM/ECF system which will send notification of such filing to the following:

4   D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com;

5   Eva K. Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; Edward T.

6   Wahl, ewahl@faegre.com and Paul T. Friedman, pfriedman@mofo.com.

7

**WORKMAN NYDEGGER**

8

9

/s/ L. Rex Sears
10   L. REX SEARS
     **WORKMAN NYDEGGER**
11   1000 Eagle Gate Tower
     60 East South Temple
12   Salt Lake City, UT  84111
     Telephone:  (801) 533-9800
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28