# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

---

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) Case No. ) ) 5:07-CV-04052 |
| vs. | ) -JF (PVT) ) |
| U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee on behalf of all Holders of Finisar Corporation's 5 1/4% Convertible Subordinated Notes due 2008, 2 1/2% Convertible Senior Subordinated Notes due 2010, and 2 1/2% Convertible Subordinated Notes due 2010, and DOES 1 through 10, inclusive, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

---

30(B)(6) DEPOSITION OF DIANA JACOBS
March 26, 2008
Seattle, Washington

Reported by:
Connie Recob, CCR, RMR, CRR, CLR
CCR No. 2631
Job No. Los Angeles 927362/Seattle 79041

1          And you were in attendance at that E and E session,

2     weren't you?

3 A.  Yes.

4 Q.  Were you involved in any form of communication to the holders

5     regarding the outcome of that E and E?

6 A.  There was a call with holders subsequent to the E and E to

7     discuss what happened.

8 Q.  And when was that call?

9 A.  I don't remember the exact date.  It was probably early

10    February.

11 Q.  And who were the parties to that call?

12              MR. WAHL:  I object on the basis that we

13    have previously discussed, and would be willing to discuss

14    confidentiality arrangements with you.

15              MR. BRENNAN:  Well, let's do this:  If I

16    understand your proposal before, Ned, which is kind of

17    following up on mine, if we were to agree that we would enter

18    into a formal stipulated protective order to be presented to

19    the Court that would have as its essential elements that for

20    those matters that were appropriately deemed and designated

21    by the parties who have a production of information

22    requirement as being confidential, that the parties would

23    treat such information as confidential; i.e., the information

24    would not be used for any purpose outside the litigation and

25    the information would be limited to persons in the employ of

1

2

3

4

**REDACTED**

5                    -Pursuant to Protective Order-

6

7

8

9

10

11 A.   Yes.

12 Q.   So the question I just asked, just so we're all on the same

13      page, was who were the participants in the call that followed

14      the January 11, 2008, notices.  And so those three

15      representatives of holders and then yourself?

16 A.   Myself, Michael Fisco, and Abby Wilkinson.

17 Q.   And what was discussed during that call?

18                    MR. WAHL:  I'm going to instruct the

19      witness not to disclose privileged information.  We would

20      assert that the communications are protected by the

21      attorney/client privilege.  She can describe them in a level

22      of generality that allows you to know broadly what was

23      discussed.

24                    MR. BRENNAN:  Well, you know, as one

25      political figure once said, A half a loaf is better than

1    none.  But before we default to that position, can I

2    understand what the basis is for the assertion of the

3    attorney/client privilege?

4                    MR. WAHL:  Sure.  There is a joint

5    defense privilege that would include the three holders and

6    U.S. Bank Trust.  They have an identity of interests because

7    the bank only functions according to the directions of the

8    holders.

9                    MR. BRENNAN:  Let me ask this to the

10   witness:

11 Q.  (BY MR. BRENNAN) Has U.S. Bank Trust National Association or

12   U.S. Bank National Association or any of its affiliates,

13   parents, holding companies, et cetera, entered into a written

14   joint defense agreement with any of the holders?

15 A.  No.

16 Q.  Is there an oral joint defense agreement that's been

17   negotiated between U.S. Bank, as I broadly identified it, and

18   any of the holders?

19 A.  No.

20                   MR. BRENNAN:  I guess -- I think that's a

21   problem for you -- I'm saying this to Counsel -- to make that

22   assertion.  Without a joint defense agreement, I think the

23   Federal law is pretty clear on that one.

24                   MR. WAHL:  You would not be surprised

25   that I disagree with that.

1        MR. BRENNAN:  And I know California law
2    is directly contrary to that.
3        MR. WAHL:  We'll stick to the privilege.
4        MR. BRENNAN:  Have I convinced you?
5        MR. WAHL:  You are a persuasive man, but
6    you have not convinced me on this one this time.
7  Q.  (BY MR. BRENNAN) Your counsel has asserted an objection.  And
8    I think I need to do this.  No disrespect intended for either
9    of you, but I haven't heard an instruction not to answer.
10        MR. WAHL:  I believe I did.  I told her
11    that she could describe the content of the call in a
12    generalized way without compromising the privilege.  As we
13    would in a privilege log, she may not disclose privileged
14    information.
15        Again, I want to work with you.  I want you to be able
16    to understand what's happening there, but we have a privilege
17    to protect.
18  Q.  (BY MR. BRENNAN) And are you going to follow Counsel's
19    instruction and not provide the full information that I've
20    sought?
21  A.  Yes.
22        MR. BRENNAN:  And may I have agreement of
23    counsel that as we move forward, if you make other
24    instructions in the future, that I need not ask that question
25    each time, but instead the witness will be deemed to be

1    following your instructions?

2                    MR. WAHL:  Yes.

3                    MR. BRENNAN:  Okay.

4  Q.  (BY MR. BRENNAN) Tell me what you are willing to tell me

5    about what was discussed with the holders you identified

6    during the telephone call that you described.

7  A.  We discussed the E and E session, what had transpired there.

8    We discussed the fact that the company was willing to meet

9    with the holders after it filed its quarterly financials, and

10   discussed possible settlement.  We asked the holders whether

11   they were willing to meet with the company.  The holders --

12                    MR. WAHL:  Let me instruct you not to

13   disclose beyond the generalized description you've already

14   done.

15                    THE WITNESS:  Okay.

16                    MR. WAHL:  And by that, what is customary

17   is a description of the topic, but not the comments made by

18   any of the parties involved or the specific analysis or

19   content of the communications.

20                    THE WITNESS:  Okay.

21       That's -- I guess that's basically what the discussion

22   was about.

23  Q.  (BY MR. BRENNAN) Have any -- let me back up.

24       U.S. Bank participated in seven conference calls with

25   various holders, right?

1 A.   Yes.

2 Q.   And just so you know, I'm looking at what was handed to me a

3      bit ago, and I think we have enough copies we might as well

4      mark as our next exhibit.  It's a document entitled "U.S.

5      Bank Trust National Association Supplemental Answers to

6      Plaintiff Finisar Corporation's First Set of

7      Interrogatories."

8                      MR. WAHL:  Let me observe, for example,

9      that this is something we discussed off the record.  You have

10     a copy that has been signed by Ms. Jacobs, but has not been

11     signed by counsel with respect to the objection.  We will do

12     so and produce that to you formally in the next couple of

13     days.

14                     MR. BRENNAN:  I don't have a problem with

15     that.  Are you going to sign it and just kind of put your

16     signature and we'll understand?

17                     MR. WAHL:  I just don't know if that's

18     kosher in California for me to sign for Tony without him

19     giving me express permission.

20                     MR. BRENNAN:  I'm not asking you to sign

21     for Tony.  I'm just asking is there a reason why you're not

22     willing to sign these?

23                     MR. WAHL:  I'm perfectly willing to sign

24     them.  I just don't want to sign for Tony.

25                     MR. BRENNAN:  I guess I would suggest if

1

2

3

4

5

6

7

8

9                                    **REDACTED**
                              -Pursuant to Protective Order-

10

11

12

13

14

15

16

17

18

19 A.   Yes.

20 Q.   And what was discussed during that call?

21                      MR. WAHL:  Again let me caution the

22      witness to describe the call in generalities without

23      compromising the attorney/client privilege.

24                      THE WITNESS:  Generally, we discussed the

25      status of the litigation and strategy.

Page 130

1 Q.  (BY MR. BRENNAN) Is that all you're going to disclose to me

2      regarding what was discussed during that call?

3 A.  Yes.

4 Q.  Let's turn next to the November 13, 2007, call.  Who were the

5      parties to that call?

6 A.  I believe that call was then -- well, the parties I just

7                            **REDACTED**
                        -Pursuant to Protective Order-
8

9      you don't recall the name of?

10 A.  Right.

11 Q.  And what was discussed during that call?

12                      MR. WAHL:  Again I'll caution the witness

13      not to disclose the attorney/client privilege or disclose

14      information that would violate the privilege, but to describe

15      the topic in general terms.

16                      THE WITNESS:  The topic in general terms

17      was the status of the litigation and strategy.

18 Q.  (BY MR. BRENNAN) Can you tell me any more about what was

19      discussed during those calls?

20 A.  That's it.

21 Q.  You know, I didn't ask that very well.

22          Will you tell me any more about the status -- or excuse

23      me -- what was discussed during those calls?

24 A.  No.

25 Q.  Okay.  Let's go to the December 11, 2007, call.  Who were the

1    parties to that call?

2 A.  All the same parties.

3 Q.  As the November 13, 2007?

4 A.  Yes.

5 Q.  And what was discussed during that call?

6                    MR. WAHL:  My instruction remains the

7    same.

8                    THE WITNESS:  Litigation update and

9    strategy.

10 Q.  (BY MR. BRENNAN) Will you tell me any more about that call?

11 A.  No.

12 Q.  Let's turn to the January 14th, 2008, call.  Who are the

13   parties to that call?

14 A.  All the same parties as the previous two.

15 Q.  What was discussed during that call?

16                    MR. WAHL:  I reiterate my objection and

17   instruction.

18                    THE WITNESS:  Strategy and the lit --

19   update on the litigation.

20 Q.  (BY MR. BRENNAN) Can you tell me any more about that call?

21 A.  No.

22 Q.  Let's go to January 30, 2008.  Who are the parties to that

23   call?

24 A.  All the same parties as the previous three.

25 Q.  What was discussed?

1              MR. WAHL:  My objection and

2    reiteration -- and instruction are reiterated, rather.

3              THE WITNESS:  Aside from the E and E that

4    we discussed, it was strategy and status of the litigation.

5 Q.  (BY MR. BRENNAN) Will you tell me any more about what was

6    discussed during that call?

7 A.  No.

8 Q.  Let's go to February 19th, 2008.  Who are the parties to that

9    call?

10 A.  All the same parties.

11 Q.  What was discussed?

12             MR. WAHL:  I reiterate my objection and

13   instruction.

14             THE WITNESS:  Update on the status of the

15   litigation and strategy.

16 Q.  (BY MR. BRENNAN) Will you tell me any more about what was

17   discussed?

18 A.  No.

19 Q.  That brings us to the March 11, 2008, call.  Who were the

20   parties to that call?

21 A.  They were all the same parties.

22 Q.  What was discussed?

23             MR. WAHL:  I reiterate my objection and

24   instruction.

25             THE WITNESS:  Strategy and update on the

1    status of the litigation.

2  Q.  (BY MR. BRENNAN) Will you tell me any more about what was

3       discussed?

4  A.  No.

5  Q.  Other than these telephone conference calls, was there any

6       other form of communications with the holders other than the

7       series of notices that I've shown and had marked as exhibits

8       today?  I think those are the April 2007 and the January 11,

9       2008, notices.

10 A.  So you're asking me other than the notices and our calls, was

11      there any other communication?

12 Q.  Right.

13

14

15

16

17

18

19                         **REDACTED**
                     -Pursuant to Protective Order-

20

21

22

23

24

25

1 Q.  (BY MR. BRENNAN) If any of the holders have requested U.S.

2     Bank to accelerate, why did U.S. Bank not accelerate in

3     response to a request by any holders?

4                    MR. WAHL:  I object to the extent the

5     question calls for attorney/client privileged information,

6     and instruct the witness not to answer in a way that would

7     compromise the attorney/client privilege.

8          Can you answer?

9                    THE WITNESS:  No.

10                   MR. BRENNAN:  Okay.  I'm not going to

11    burden the record.  The same analysis I just described is

12    going to describe all the instances where the privilege is

13    asserted.

14                   MR. WAHL:  Me, too.

15                   MR. BRENNAN:  Okay.

16 Q.  (BY MR. BRENNAN) Has U.S. Bank informed the holders that U.S.

17    Bank believes that the notes could be accelerated?

18                   MR. WAHL:  I object to the extent that

19    the question calls for attorney/client privileged

20    information.

21         I instruct you not to answer to the extent that it

22    would compromise the privilege.  Answer if you can do --

23    answer if you may without doing so.  Is that clear?

24                   THE WITNESS:  Yeah.

25         Repeat the question, please.

Page 139

1          MR. BRENNAN:  I'm going to have the

2   reporter read it back.  She'll get it right.

3                          (Question on Page 138, Lines 16

4                           through 17, read by the

5                           reporter.)

6          MR. WAHL:  Do you understand the

7   objection?

8          THE WITNESS:  Yes.  I think I can't

9   answer.

10  Q.  (BY MR. BRENNAN) Okay.  What's your answer?

11  A.  No.  I said I think I can't answer.

12          MR. WAHL:  Cannot.

13          THE WITNESS:  Cannot.

14  Q.  (BY MR. BRENNAN) And is that because of privilege?

15  A.  Yes.

16  Q.  Let me ask you this:  As I understand your prior answers,

17      U.S. Bank or U.S. Bank Trust National Association had not

18      entered into either a written joint defense agreement nor has

19      an oral agreement for joint defense been agreed upon with any

20      of the holders.  Is that right?

21  A.  That's right.

22  Q.  Has U.S. Bank discussed with the holders the concept of a

23      joint defense agreement?

24  A.  I don't think so.

25          MR. WAHL:  I was going to object to that

1      identity interest?

2                          MR. WAHL:  In this setting, they are a

3      holder participating in the call.

4                          MR. BRENNAN:  I mean, anyone could have

5      called in on this thing -- right? -- because they haven't

6      verified that they're a holder.  And so I'm -- I'm even

7      searching the indicia of confidentiality for those who have

8      verified that they have a protective interest.

9                          MR. WAHL:  I understand your position.

10     We're asserting the privilege.

11  Q. (BY MR. BRENNAN) Have you told me everything about the calls

12     with the holders or purported holders that you're willing to

13     disclose to me today?

14  A. Yes.

15  Q. And you have more information, but you're not disclosing it

16     because of the claimed privilege; is that right?

17  A. That's right.

18  Q. Okay.  I'm going to circle back to something I asked you a

19     little bit about this morning.

20         As I recall, you thought that currently on your plate,

21     as it were, you had about 20 accounts that are in some form

22     of default.  Is that true?

23  A. Yes.

24  Q. And of those 20, how many of them involve a claimed failure

25     by the note-issuing company to make timely filings of SEC

1                         **REDACTED**
                    -Pursuant to Protective Order-

2

3 A.  Oh, could be.

4 Q.  Okay.  But you're not sure?

5 A.  I'm not positive.

6 Q.  Okay.  Also, just making sure that we're clear on the

7     subject, when I asked you earlier whether any of these

8     holders you had identified had ever requested acceleration,

9     did they in fact make a demand -- any of them make a demand

10    upon U.S. Bank to accelerate under the notes?

11              MR. WAHL:  I'm going to -- it's a

12    sensitive area for attorney/client privilege.  I let you ask

13    that question before.

14       What's the exact question?

15                 (Question on Page 149, Lines 6

16                 through 10, read by the

17                 reporter.)

18              MR. WAHL:  You can answer that "yes" or

19    "no."

20              THE WITNESS:  No.

21 Q. (BY MR. BRENNAN) Did any of them explain why they were not

22    demanding that U.S. Bank accelerate?

23              MR. WAHL:  I'm going to instruct you not

24    to answer to the extent that the answer would require you to

25    divulge attorney/client privileged information.  Answer if

1    you can without doing so.

2                    THE WITNESS:  I'm trying to go through

3    all the details of the conversation.  I think I can't answer.

4                    MR. WAHL:  Cannot?

5                    THE WITNESS:  Cannot.  I'm sorry.

6    Cannot.

7                    MR. BRENNAN:  I'm going to have the

8    reporter mark as our next exhibit in order a collection of

9    documents that appear to be a combination of e-mails and

10   their attachments.  They bear production identifiers USB FIN

11   000396 through 000405 inclusive.

12                    (Exhibit No. 15 marked

13                        for identification.)

14 Q.  (BY MR. BRENNAN) Ms. Jacobs, you've been handed what's been

15   marked as Exhibit 15.  I'll give you a moment to look at it.

16   My question is if you can tell me what Exhibit 15 is.

17 A.  So your question is whether I recognize this?

18 Q.  Well, the question is if you can tell me what it is.

19 A.  This looks like an e-mail trail starting with someone named

20   Jean Clarke.  I'm trying to figure out who wrote this part

21   here (indicating).

22 Q.  It's probably been redacted, right, so we can't tell?

23 A.  Well, it's just "Sincerely" and there's nothing there.

24        Yeah, it says redacted down here (indicating).  So I'm

25   not sure about who this is from, but I see that Jean Clarke

1 A.   U.S. Bank hasn't been harmed.  We're a fiduciary for the

2      bondholder, so we're concerned about the holder's interests.

3 Q.   How have the holders been harmed?

4 A.   Well, specifically I'd have to ask them.  But they've gone a

5      year without any meaningful financial information, so it's --

6      imagine they could be harmed.

7 Q.   Have any of the holders indicated to U.S. Bank that they've

8      been harmed?

9                     MR. WAHL:  Object to the extent it calls

10     for the conclusion of attorney/client privileged information.

11         Answer if you're able without compromising the

12     privilege.

13                     THE WITNESS:  Yeah, I guess it's -- I'll

14     have to say I can't answer that.

15 Q.  (BY MR. BRENNAN) So you're not able to provide me any

16     information in terms of how the holders may have been harmed

17     as a result of Finisar's not making certain SEC filings until

18     December 4, 2007?

19 A.  Yeah.  I can just say they have been not happy that they have

20     been without financial information.

21 Q.  Have any of them told you that?

22 A.  They have expressed that, yeah.

23 Q.  What have they said?

24                     MR. WAHL:  Let me make the same

25     objection.  Past answering that on a "yes" or "no," if you

1    can answer without disclosing privileged information, do so.

2                         THE WITNESS:  I don't think I can say

3    more than that.

4  Q.  (BY MR. BRENNAN) Which holders have told you that?

5  A.  All of them.

6  Q.  All holders?

7  A.  Well, the three.

8

9

                        **REDACTED**
10                  -Pursuant to Protective Order-

11

12

13

14

15  Q.  (BY MR. BRENNAN) And tell me as precise as you can what each

                        **REDACTED**
16                  -Pursuant to Protective Order-

17    that regard.

18                         MR. WAHL:  Let me instruct you not to

19    answer if it would disclose privileged information.

20                         THE WITNESS:  Yeah, I can't answer any

21    further than what I've just said.

22  Q.  (BY MR. BRENNAN) To your knowledge, have any of the holders

23    or reported holders suggested to U.S. Bank -- excuse me --

24    suggested to Finisar Corporation that if Finisar would pay

25    them certain sums of money, they would in essence look past

Page 182

1   this problem?

2                           MR. WAHL:  You're asking if they've told

3   Finisar that?

4                           MR. BRENNAN:  Yes.

5                           THE WITNESS:  And you're asking if the

6   holders told me that they told Finisar?

7  Q.  (BY MR. BRENNAN) That or if you have some other basis of

8   knowing.

9  A.  To believe that they've told Finisar?

10                          MR. WAHL:  Object to the form.

11          Answer if you can.

12 Q.  (BY MR. BRENNAN) Yes.

13 A.  I have no knowledge of that.

14 Q.  In any communications with the holders, have they ever raised

15   the subject with U.S. Bank of wanting Finisar to make some

16   financial payment to them or other financial compensation as

17   a result of any delay of making SEC filings?

18                          MR. WAHL:  I'll object on the basis of

19   the attorney/client privilege.

20          You may answer if you can do so that without

21   compromising the privilege.

22                          THE WITNESS:  I can't answer that.

23 Q.  (BY MR. BRENNAN) At all?

24 A.  At all.

25 Q.  Now, during the period of time that Finisar was conducting

1                          MR. WAHL:  Object to the form.

2          Answer if you can without compromising the

3    attorney/client privilege.

4                          THE WITNESS:  Something that we need,

5    what do you mean by that?

6  Q.  (BY MR. BRENNAN) Well, to meet your fiduciary duty to the

7    holders.  When there's three Federal District Court decisions

8    that have been issued thus far, indicating that the position

9    that U.S. Bank has been advocating is erroneous, is there

10   something that U.S. Bank feels that it needs to meet its

11   fiduciary duties to its holders relative to Finisar to

12   discontinue the litigation?

13                         MR. WAHL:  Object to the form.  I also

14   object to the extent it calls for attorney/client privileged

15   communication.

16         If you can answer without compromising the privilege,

17   you can do so.

18                         THE WITNESS:  I don't think I can answer

19   without compromising the privilege.

20  Q.  (BY MR. BRENNAN) Have any of the holders asked U.S. Bank to

21   continue with the litigation?

22                         MR. WAHL:  Let me -- let me object on the

23   privilege ground.

24         And instruct you not to answer in such a way as would

25   compromise the privilege.  You may answer if you can do so

1    without compromising.

2                          THE WITNESS:   I guess I can't answer

3    that.

4  Q.  (BY MR. BRENNAN) At all?

5  A.  I think -- without violating the privilege, I think I can't

6    answer that.

7                          MR. BRENNAN:   You know, I don't want to

8    beat a dead horse, but I also don't want to have to

9    unnecessarily come back and continue Ms. Jacobs' deposition.

10   I think Finisar's position is that communications with the

11   holders are not subject to any attorney/client privilege.

12       I'm going to ask this of Counsel:   Other than the joint

13   defense assertion, is U.S. Bank taking the position that its

14   counsel at your firm or Morrison & Foerster is actually

15   representing the holders?

16                         MR. WAHL:   I'd have to say I don't know

17   the answer to that question, but I don't think so.

18 Q.  (BY MR. BRENNAN) Ms. Jacobs, to your understanding, is either

19   Faegre & Benson or Morrison & Foerster, who I understand is

20   legal counsel for U.S. Bank in this litigation, also

21   representing any of the holders in connection with this

22   litigation?

23 A.  I guess I can answer that I don't know of any formal

24   representation arrangements with the holders and counsel.

25 Q.  As I understood, you told me earlier that U.S. Bank and none

1    of the holders had entered into a joint defense agreement --

2    an oral joint defense agreement or had even discussed the

3    subject of a joint defense.  Do you know whether a written

4    engagement agreement was provided by U.S. Bank's counsel to

5    any of the holders?

6  A.  I don't believe so.

7  Q.  Were any of the holders offered to be represented by U.S.

8    Bank's counsel?

9  A.  Were they offered -- did U.S. Bank's counsel offer to

10    represent them; is that what you're asking?

11  Q.  Yes.

12  A.  I don't believe so.

13  Q.  In any of the discussions with any of the holders -- reported

14    holders, were the holders told that the discussions were

15    going to be treated as attorney/client privileged?

16                    MR. WAHL:  I'm going to object -- let me

17    think.

18        I think that violates the attorney/client privilege to

19    be talking about the attorney/client privilege, what the

20    implications are.  I'll object as privilege grounds and

21    instruct her not to answer.

22                    MR. BRENNAN:  I understand.  I won't

23    agree, but I'll understand in making the objection.  The

24    point of it is I think I'm entitled to test the parameter of

25    the claim of privilege.  It does seem to me that a

1    permissible claim of inquiry is whether someone was told that

2    there was an expectation that the communication would be

3    privileged, and you're not even letting me ask that.

4              MR. WAHL:  Right, because I'm assuming

5    that's going to come in the context of an attorney/client

6    communication under this part of the joint defense privilege,

7    and I think the "yes" or "no" there would violate that

8    privilege.

9              MR. BRENNAN:  Well, here's, I think, part

10   of the problem.  Were Finisar to challenge the assertion of

11   the joint defense privilege, you know, one -- I think we've

12   done a lot of it -- one would go to the judge and say, Don't

13   have a written agreement.  Don't have an oral agreement.

14   Haven't even discussed the subject of a joint defense with

15   the other participants.  Tried to find out whether there was

16   an assertion or a suggestion to the other participants --

17   i.e., the holders -- that the communications might be

18   privileged.  So you're not even going to let me find that

19   out.  And I'm struggling to find out what -- you know, what

20   leg of the stool is still out there to support a joint

21   defense privilege.

22         So I'm just asking you to reconsider the instruction

23   not to answer on the other -- that was even suggested to the

24   holders that the communications might be privileged.

25              MR. WAHL:  I thank you for that

1      opportunity, but I decline to reconsider.

2  Q.  (BY MR. BRENNAN) Have any of the holders told you or any

3      other representative of U.S. Bank that they wished to have

4      the communications treated as privileged?

5  A.  Have they told me or any other --

6  Q.  U.S. Bank representative.

7  A.  -- U.S. Bank representatives that they wish to have the

8      communications privileged?

9                  MR. WAHL:  And as U.S. Bank

10     representatives, are you including outside counsel?

11                 MR. BRENNAN:  Yes.

12                 MR. WAHL:  Same objection.

13 Q.  (BY MR. BRENNAN) So if -- just so I understand this:  Is it

14     the position of U.S. Bank that if some third party were to

15     ask U.S. Bank or its counsel to treat the communications as

16     privileged, that U.S. Bank in an effort to establish the

17     privilege would not even allow that question to be answered?

18                 MR. WAHL:  Is the third party -- I guess

19     I don't have enough to answer that.  You're not putting me

20     under oath.

21                 MR. BRENNAN:  I'm not asking.  The third

22     party is the holders.

23                 MR. WAHL:  If we're talking about

24     holders, my position is they have an identity interest and it

25     gives rise to a joint defense privilege.  Whether the

1 Q.  And counsel prepared the summary?

2 A.  Yes.

3 Q.  And -- are you aware of any SEC filing by Finisar that

4      specifically suggested that Finisar would not be able to make

5      interest or principal payments under any of the notes that

6      are the subject of this litigation?

7 A.  I don't recall a specific statement as to whether they were

8      going to pay principal payments on those notes.

9 Q.  Have any of the holders -- purported holders ever expressed

10     any concern about the financial condition of Finisar?

11              MR. WAHL:  You can answer that "yes" or

12     "no," please, with respect to the attorney/client privilege.

13              THE WITNESS:  I'm sorry.  Did you ask me

14     if I can answer "yes" or "no"?

15              MR. WAHL:  That would be a "yes" or "no"

16     question.

17              THE WITNESS:  Yes.

18 Q.  (BY MR. BRENNAN) And what noteholders have made such a

19     statement or suggestion?

20 A.  I believe all three of the holders we were in discussions

21     with.

**REDACTED**
·Pursuant to Protective Order·

22

23     with that regard?

24              MR. WAHL:  I would instruct you not to

25     answer unless you can answer without compromising the

1    attorney/client privilege.

2                      THE WITNESS:  Yeah, I can't -- I mean, I

3    can just answer that there's general concern about Finisar's

4    financial health.

5  Q.  (BY MR. BRENNAN) What about its financial health is the

6    concern?

7  A.  Yeah --

8                      MR. WAHL:  Same objection.

9                      THE WITNESS:  -- that's all I can say.

10 Q.  (BY MR. BRENNAN) Do you know what the basis is for the

11   concern?

12                     MR. WAHL:  Same objection.

13                     THE WITNESS:  I can't answer.

14 Q.  (BY MR. BRENNAN) I'm sorry?

15 A.  No, I can't answer that.

16 Q.  Because of client privilege?

17 A.  Yes.

18 Q.  U.S. Bank was taking a position for a time that it need not

19   return certain collateral to Finisar, right?

20 A.  Yes.

21 Q.  And what was the basis for that position?

22 A.  I think that counsel explained the basis as that it would --

23   it legally should be handled in the motion for summary

24   judgment.

25 Q.  And when Finisar threatened to sue U.S. Bank over its

1    position regarding the collateral, U.S. Bank decided to

2    return the collateral, right?

3 A.  Yes.

4 Q.  And was U.S. Bank taking the position that it need not return

5    the collateral because Finisar was in a continuing state of

6    default?

7                    MR. WAHL:  Let me instruct you not to

8    answer if it compromises the privilege.  Answer if you can

9    without doing so.

10                   THE WITNESS:  Yeah, I can't without

11   compromising privilege.

12 Q.  (BY MR. BRENNAN) Well, are you aware of the statements of

13   U.S. Bank's counsel to Finisar's counsel exactly on that

14   point?

15                   MR. WAHL:  Well, that's why I let the

16   previous answer go and that's why I said, Answer if you're

17   able.

18                   MR. BRENNAN:  I guess what I'm saying, I

19   don't know how we can claim privilege on this when that's

20   precisely what Mike Fisco told me.

21                   MR. WAHL:  We would claim privilege

22   because whatever Mike Fisco said or wrote in a letter is what

23   he told you.  Behind that are confidential client

**REDACTED**
-Pursuant to Protective Order-
24

25   would not be public; just as when you file a Complaint, all

1   the research and analysis you've done behind it are not

2   discoverable.

3 Q.   (BY MR. BRENNAN) Are you aware, Ms. Jacobs, as to whether

4   U.S. Bank has ever articulated to Finisar that the reason it

5   wasn't going to return the collateral was because Finisar was

6   in a state of continuing default?

7 A.   I guess I'm aware now because you just said that Michael

8   Fisco conveyed that to you.

9 Q.   You weren't otherwise aware of that?

10 A.   I wasn't aware that he had conveyed that to you.

11 Q.   But U.S. Bank did return the collateral, right?

12 A.   Yes, we did.

13 Q.   Is that because U.S. Bank concluded that Finisar was not in a

14   state of continuing default?

15              MR. WAHL:  Object on the privilege.

16       Answer if you can.

17              THE WITNESS:  I can't answer that.

18 Q.   (BY MR. BRENNAN) I'm not asking for a communication.  I'm

19   asking for the reasons as to why U.S. Bank did what it did.

20              MR. WAHL:  And if the reasons are public,

21   you may answer.  If the reasons are the product or the flow

22   from the attorney/client privilege and your only knowledge of

23   that, you may not.

24              MR. BRENNAN:  Here's where we're

25   disagreeing.  It seems to me that if a party takes certain