1  D. ANTHONY RODRIGUEZ (CA SBN 162587)
   EVI K. SCHUELLER (CA SBN 237886)
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California  94105-2482
   Telephone:  415.268.7000
4  Facsimile:  415.268.7522
   Email:  DRodriguez@mofo.com
5  Email:  ESchueller@mofo.com

6  MICHAEL B. FISCO (MN No. 175341)
   ABBY E. WILKINSON (MN No. 0313981)
7  (*Pro hac applications granted*)
   FAEGRE & BENSON LLP
8  90 South Seventh Street, Suite 2200
   Minneapolis, Minnesota  55402-3901
9  Telephone:  612.766.7000
   Facsimile:  612.766.1600
10 Email:  mfisco@faegre.com
   Email:  awilkinson@faegre.com
11
   Attorneys for Defendant U.S. Bank Trust
12 National Association, in its capacity as Indenture Trustee

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16

17 FINISAR CORPORATION, a Delaware          Case No.    C 07-4052 JF (PVT)
   corporation,
18                                          **U.S. BANK TRUST NATIONAL**
                          Plaintiff,        **ASSOCIATION'S RESPONSE TO**
19                                          **PLAINTIFF FINISAR**
          v.                                **CORPORATION'S  MOTION:**
20                                          **(1) TO COMPEL PRODUCTION**
   U.S. BANK TRUST NATIONAL                 **OF DOCUMENTS; (2) TO**
21 ASSOCIATION, a national banking association,  **COMPEL DEPOSITION**
   not in its individual capacity, but solely in its  **TESTIMONY; (3) FOR**
22 capacity as Indenture Trustee on behalf of all  **ADDITIONAL TIME TO**
   Holders of Finisar Corporation's 5¼%     **COMPLETE DEPOSITION; AND**
23 Convertible Subordinated Notes due 2008, 2½%  **(4) FOR MONETARY**
   Convertible Senior Subordinated Notes due 2010,  **DISCOVERY SANCTIONS**
24 and 2½% Convertible Subordinated Notes due
   2010, and DOES 1 through 10, inclusive,  Date:       June 17, 2008w
25                                          Time:       10:00 a.m.
                          Defendants.       Location:   Courtroom 5, 4th Floor
26                                          Magistrate Patricia V. Trumbull

27

28

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF THE ISSUES ..........................................................................................2

FACTUAL BACKGROUND ................................................................................................2

ARGUMENT .........................................................................................................................5

I.    FINISAR'S MOTION TO COMPEL SHOULD BE DENIED
      BECAUSE COMMUNICATIONS AMONG THE TRUSTEE,
      ITS COUNSEL, AND THE NOTEHOLDERS ARE PROTECTED
      BY PRIVILEGE...........................................................................................................5

      A.    The Trustee and Noteholders Share a Common Legal Interest...............................7

      B.    The Communications At Issue Were Designed to Further the
            Trustee's and Noteholders' Common Interest.........................................................7

      C.    The Underlying Attorney-Client Privilege Has
            Not Been Waived. ..................................................................................................8

            1.    The Noteholders were not required to engage
                  separate counsel.........................................................................................8

            2.    The Trustee reasonably understood the
                  communications to be confidential...........................................................10

II.   FINISAR'S MOTION FOR SANCTIONS SHOULD BE DENIED. .............................11

CONCLUSION .....................................................................................................................12

US Bank's Resp to Finisar's Mot to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-0452 JF (PVT)
sf-2521931

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Baden Sports, Inc. v. Kabushiki Kaisha Molten,*
    2007 WL 1185680 (W.D. Wash. Apr. 20, 2007)................................................................5

5

*Burroughs v. DeNardi,*
    167 F.R.D. 680 (S.D. Cal. 1986) .......................................................................................6

6

*Cobell v. Norton,*
    226 F.R.D. 67 (D.D.C. 2005) ...........................................................................................12

7

8

*Continental Oil Co. v. United States,*
    330 F.2d 347 (9th Cir. 1964) .............................................................................................5

9

*Griffith v. Davis,*
    161 F.R.D. 687 (C.D. Cal. 1995)......................................................................................11

10

11

*In re Enron,*
    2008 WL 744823 (S.D. Tex. Mar. 19, 2008) .....................................................................9

12

*In re Imperial Corp. of Am.,*
    179 F.R.D. 286 (S.D. Cal. 1998) .......................................................................................6

13

14

*In re Ivan F. Boesky Sec. Litig.,*
    129 F.R.D. 89 (S.D.N.Y. 1990)........................................................................................10

15

*Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.,*
    212 F.R.D. 567 (E.D. Cal. 2002) .......................................................................................5

16

17

*Murray v. U.S. Bank Trust Nat'l Ass'n,*
    365 F.3d 1284 (11th Cir. 2004).........................................................................................9

18

*Pierce v. Underwood,*
    487 U.S. 552, 108 S.Ct. 2541 (1988) ...............................................................................12

19

20

*Teleglobe Communs. Corp.  v. BCE Inc.*
    *In re Teleglobe Commc'n Corp.,*
    493 F.3d 345 (3d Cir. 2007)..............................................................................................10

21

22

*United States v. Stepney,*
    246 F. Supp. 2d 1069 (N.D. Cal. 2003) ...........................................................................11

23

24

*United States v. Zolin,*
    809 F.2d 1411 (9th Cir. 1987), overruled on other grounds by
    *United States v. Jose,*
    131 F.3d 1325 (9th Cir. 1997) ...........................................................................................5

25

26

*Value Prop. Trust v. Zim Co. (In re Mortgage & Realty Trust),*
    212 B.R. 649 (Bankr. C.D. Cal. 1997) ...............................................................................6

27

28

US Bank's Resp to Finisar's Mot to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-0452 JF (PVT)
sf-2521931

ii

# TABLE OF AUTHORITIES (Con't)

**Page(s)**

**STATE CASES**

*Feldbaum v. McCrory Corp.,*
    1992 WL 119095 (Del. Ch. June 1, 1992) ................................................................. 9

*McMinn v. MBF Op. Acquisition Corp.,*
    164 P.3d 41 (N.M. 2007) ................................................................. 10

*U.S. Bank Nat'l Ass'n v. APP Int'l Fin. Co.,*
    33 A.D.3d 430, 823 N.Y.S.2d 361 (1st Dep't 2006) ....................................... 6, 9

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.,*
    2005 WL 2037353 (Del. Ch. June 9, 2005) ........................... 6, 7, 8, 9, 10

**RULES**

Delaware Rule of Evidence 502(b) ................................................................. 10

Fed. R. Civ. P. 37(a)(5) ................................................................. 12

**OTHER AUTHORITIES**

Restatement (Third) of the Law Governing Lawyers,
    § 126 (Tentative Draft No. 2, 1989) ................................................................. 11

US BANK'S RESP TO FINISAR'S MOT TO COMPEL DOCUMENT PROD AND DEPO TESTIMONY; ADD DEPO TIME & MONETARY SANCTIONS
CASE NO. C 07-0452 JF (PVT)
sf-2521931

iii

**PRELIMINARY STATEMENT**

Indenture trustees are required to represent the interests of noteholders that have acquired corporate debt securities.  In this case, U.S. Bank serves as indenture trustee for Finisar's Noteholders, and bears contractual duties under three Indentures to communicate with them, to consult with them, and to act on their behalf.  Moreover, under the terms of the Indentures the Noteholders must act through the Trustee for any claim or action arising under the Indentures, and cannot act individually.  When Finisar issued its corporate debt securities and contracted with U.S. Bank to act as indenture trustee for Noteholders, Finisar accepted and benefited from this special relationship in which the Trustee represents the interests of the Noteholders, which are, by definition, adverse to Finisar.

Finisar now seeks to compel the Trustee to disclose discussions with its counsel because they included the Noteholders whose interests the Trustee represents.  Finisar demands the production of four privileged documents and seeks additional deposition testimony that U.S. Bank has withheld under the common interest privilege.  Further, Finisar seeks sanctions against U.S. Bank for asserting the common interest privilege in its representative capacity.

In seeking to strip the Trustee and the Noteholders of their common attorney-client privilege,  Finisar overlooks the special nature of the Trustee's representative capacity, and ignores the contractual duties U.S. Bank bears on behalf of the Noteholders.  Finisar should not be allowed to invade the attorney-client privilege and should be denied access to communications reflecting the confidential legal analysis and consultation that the Trustee provided to the Noteholders.  If Finisar prevails, the Trustee will not be able to communicate with its Noteholders about privileged advice from counsel that goes to the heart of the Trustee's duties.  Compelling production of this information would prevent the Indenture Trustee from communicating directly with the beneficiaries of the Indenture provisions.  The attorney-client privilege should be preserved, and no sanctions should result from the Trustee's assertion of the common interest privilege as part of its representative duties.

US Bank's Resp to Finisar's Mot  to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-0452 JF (PVT)
sf-2521931

1

**STATEMENT OF THE ISSUES**

1.      Does the common interest privilege protect communications among the Trustee, its counsel, and the Noteholders, which were made pursuant to the Trustee's contractual and fiduciary obligations to act on the Noteholders' behalf and represent their interests under the Indentures?

2.      Are monetary sanctions warranted where the Trustee asserted the common interest privilege to preserve its right and fulfill its duty to communicate freely with the Noteholders about legal strategy and other attorney-client privileged matters?

**FACTUAL BACKGROUND**

From October 2001 through October 2006, Finisar issued three series of debt securities in the form of subordinated notes (the "Notes") under three Indentures, in the aggregate principal amount of $250.25 million as of the date Finisar commenced this action.[1]

U.S. Bank acts as indenture trustee under the Indentures for the holders of the subordinated notes (the "Noteholders"). As indenture trustee, U.S. Bank is required to act "for the equal and proportionate benefit of all [Noteholders]," and is contractually obligated under the Indentures to represents the Noteholders' interests. (Ex. 1, Indentures at p. 1.) Before an Event of Default under the Indentures, the Trustee's duties are ministerial in nature. After an Event of Default, which has occurred here, the Trustee has a fiduciary obligation to act in the Noteholders' best interests. (*See id.* §§ 7.01, 7.02.) Moreover, Noteholders under certain circumstances may direct the Trustee's conduct. (*Id.* § 6.05.) And perhaps most importantly, if the legal claims in question arise under the Indenture, the Noteholders must work through the Trustee, except in certain very limited circumstances not present here. (*Id.* § 6.06.)

---

[1] Finisar originally issued the following three series of Notes: (a) 5¼% Convertible Subordinated Notes due 2008 under that certain Indenture dated as of October 15, 2001, in the original principal amount of $125,000,000; (b) 2½% Convertible Subordinated Notes due 2010 under that certain Indenture dated as of October 15, 2003, in the original principal amount of $150,000,000; and (c) 2½% Convertible Senior Subordinated Notes due 2010 under that certain Indenture dated as of October 12, 2006, in the original principal amount of $100,000,000. A copy of the Indenture dated as of October 15, 2001, is attached as Exhibit 1 to the Declaration of Edward T. Wahl, dated May 27, 2008 ("Wahl Decl."). Exhibits to the Wahl Decl. are referred to as "Ex. __."

US Bank's Resp to Finisar's Mot to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-04-52 JF (PVT)
sf-2521931

2

1   Last year, Finisar twice sued U.S. Bank in its capacity as indenture trustee on behalf of the

2   Noteholders, seeking a declaratory judgment that Finisar's repeated failure to file required reports

3   with the SEC is not an Event of Default under the Indentures.  Rejecting the Trustee's proposal

4   that the parties' dispute over the terms of the Indenture be resolved efficiently on cross-motions

5   for summary judgment without unnecessary discovery, Finisar insisted on issuing document

6   requests and deposition notices to the Trustee on February 5, 2008.  In response, the Trustee has

7   produced more than 5,600 pages of documents to Finisar and made the requested witnesses

8   available for deposition.

9       Diana L. Jacobs of U.S. Bank was deposed on March 26, 2008.  During her deposition,

10  Finisar sought information regarding the substance of communications among the Trustee, its

11  counsel, and the Noteholders.  The Trustee asserted that certain of these communications are

12  subject to the common interest privilege, although counsel for the Trustee instructed Ms. Jacobs

13  to respond to the extent possible without violating privilege.  (*See* Ex. 2, Jacobs Dep. at 129:20-

14  133:16.)

15      During Ms. Jacobs's deposition, Finisar's counsel also sought confidential information

16  that identified the Noteholders known to the Trustee.  (*E.g.*, *id.* at 91:1-11.)  The parties agreed to

17  resolve disputes as to confidential materials by entering into a stipulated protective order.  (*Id.* at

18  119:10-18.)  On May 13, 2008, Finisar filed the parties' Stipulated Protective Order (the

19  "Order"), which preserves the confidentiality of certain information produced to Finisar.

20      Also on May 13, Finisar moved to compel production of documents and additional

21  deposition testimony, and for additional time to complete depositions ("Motion to Compel"), and

22  separately moved for monetary sanctions.  Schedule B to Finisar's Motion to Compel lists thirty-

23  one documents on the Trustee's privilege log, twenty-five of which were previously produced in

24  redacted form to protect what U.S. Bank believed to be confidential information, including the

25  Noteholders' identities, in the absence of a protective order.  (*See* Schedule B at Nos. 76, 148-51,

26  187-208.)[2]  With entry of the Stipulated Protective Order, non-redacted copies of these documents

27  ────────────
[2] As the Trustee informed Finisar by letter dated May 20, 2008, the remaining two
28  documents on Schedule B (Nos. 64 and 65) were draft letters prepared by the Trustee's counsel,
(Footnote continues on next page.)

with "Confidential" designations are being produced to Finisar.  Accordingly, along with the

testimony identified in the Motion to Compel, only the following four documents constitute the

communications subject to the Motion to Compel:

| No. | Date | Author | Recipient | CC | Description | Basis |
|---|---|---|---|---|---|---|
| 60 | 7.20.07 | Fisco (F&B) | Holder | Wilkinson (F&B), Jacobs | Email re acceleration | AC, WP |
| 123 | 12.10.07 | Walz (F&B) | Holders | Fisco, Jacobs, Wilkinson | Email re conference call scheduling | AC, WP |
| 157 | 1.24.08 | Jacobs (U.S. Bank) | Holders | | Email re Noteholder verification Forms | AC, WP |
| 173 | 3.10.08 | Grinde (F&B) | Holders | Jacobs, Fisco, Wilkinson | Email re conference call scheduling | AC, WP |

Finisar asserts that it requires discovery into the privileged communications to prove that:

(1) the Trustee has incurred legal fees negligently or in bad faith; and (2) the Noteholders suffered

no compensable injury as a result of Finisar's year-long failure to file any of the quarterly or

annual reports required by the Indenture.  (Mot. to Compel at 2-3.)  Finisar does not contend that

this requested discovery is relevant to whether Finisar's failures to file are Events of Default

under the Indentures, entitling the Trustee to pursue remedies on the Noteholders' behalf.  Nor

does Finisar explain how prying into communications with counsel is relevant to disproving

Noteholder damages or the reasonableness of fees.  To the contrary, Finisar's unnecessary motion

practice serves only to drive up the Trustee's fees and expenses in defending against Finisar's

lawsuits.  Meanwhile, on April 24, 2008, the Trustee moved for summary judgment, without the

need for any discovery from Finisar.  That motion, and Finisar's anticipated cross-motion, will be

heard on July 11, 2008.

---

(Footnote continued from previous page.)

even though the privilege log inadvertently listed "Beneficial Holder" as the author.  So these
documents are not communications among the Trustee, its counsel, and Noteholders, and thus
properly are not at issue in the Motion to Compel.  (*See* Ex. 3 (letter from Trustee's counsel to
Finisar's counsel).)

US Bank's Resp to Finisar's Mot  to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-04-52 JF (PVT)
sf-2521931

4

**ARGUMENT**

I.    **Finisar's Motion to Compel Should be Denied Because Communications Among the Trustee, Its Counsel, and the Noteholders Are Protected by Privilege.**

The common interest privilege prohibits discovery of communications among the Trustee, its counsel, and the Noteholders who rely on the Trustee to enforce the Indentures.  As a general rule, the voluntary disclosure of a privileged attorney-client communication to a third party waives the privilege.  "The common interest privilege is an exception to the general rule, and it protects a communication made when a non-party sharing the client's interest is a party to a confidential communication between attorney and client."  *Baden Sports, Inc. v. Kabushiki Kaisha Molten*, 2007 WL 1185680, at *1 (W.D. Wash. Apr. 20, 2007) (citing *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997)).  "The common interest extension of the privilege is available irrespective of litigation, begun or contemplated."  *Id.* (citing *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964)).

In this case, the common interest privilege protects communications among the Trustee, its counsel, and the Noteholders as part of their "ongoing and joint effort to set up a common [legal] strategy."  *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572 (E.D. Cal. 2002).  As indenture trustee for the Noteholders, U.S. Bank must communicate with its constituents about legal strategy without fear of disclosure to adverse parties.  Without free-flowing communications, the Trustee cannot fulfill its obligations to represent the Noteholders' interests.  This is particularly true where the issuer preemptively sues the Trustee claiming that there was no Event of Default under the Indentures.  "The existence of a common defense allows the parties and counsel allied in that defense to disclose privileged information to each other without destroying the privileged nature of those communications."  *Id.*[3]

---

[3] Contrary to Finisar's assertion (Mot. to Compel at 7), the common interest privilege extends not only to communications between the Trustee and its counsel that were shared with the Noteholders, but also to communications from the Noteholders jointly to the Trustee and its counsel.  Under Finisar's rigid view of the common interest privilege, the Noteholders may only listen silently, as any effort to participate in the discussion would be discoverable.  This construction undercuts the very purpose of the common interest privilege.

US Bank's Resp to Finisar's Mot to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-04-52 JF (PVT)
sf-2521931

5

1     Courts addressing the same relationship at issue here – an indenture trustee representing

2 the interests of noteholders under an indenture in the face of the issuer's default – have applied

3 the common interest privilege to safeguard communications among the trustee, its counsel, and

4 the noteholders in pursuit of their shared goal.  *See U.S. Bank Nat'l Ass'n v. APP Int'l Fin. Co.*,

5 33 A.D.3d 430, 823 N.Y.S.2d 361 (1st Dep't 2006); *U.S. Bank Nat'l Ass'n v. U.S. Timberlands*

6 *Klamath Falls, L.L.C.*, 2005 WL 2037353 (Del. Ch. June 9, 2005).  As these courts recognized,

7 the relationship between a trustee and its aligned beneficiaries presents precisely the shared

8 community of interest requiring the free flow of communication that the common interest

9 privilege promotes and protects.

10     Under Ninth Circuit law, the common interest privilege applies when: (1) a

11 communication is made by separate parties in the course of a matter of common interest; (2) the

12 communication is designed to further that effort; and (3) the underlying privilege has not been

13 waived.  *See Value Prop. Trust v. Zim Co. (In re Mortgage & Realty Trust*), 212 B.R. 649, 653

14 (Bankr. C.D. Cal. 1997).  Because each element is present here, Finisar's motion to compel

15 should be denied.

16     **A.    The Trustee and Noteholders Share a Common Legal Interest.**

17     In evaluating the common interest privilege, "[t]he critical inquiry is whether a 'sufficient

18 commonality of interests' exists between the parties such that the privilege may be invoked."  *In*

19 *re Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998) (quoting *Burroughs v. DeNardi*,

20 167 F.R.D. 680, 686 (S.D. Cal. 1986)).  But Finisar nowhere challenges the commonality of

21 interest between the Trustee and the Noteholders.  The Trustee and the Noteholders share a

22 precisely tailored common legal interest in enforcing the provisions of the Indentures that obligate

23 Finisar timely to file all reports required under the federal securities laws, and that provide the

24 Noteholders with remedies for events of default.

25     Under the Indentures, the Trustee directly represents the Noteholders' interests.  The

26 Trustee agreed to the terms of the Indentures "for the equal and proportionate benefit of all

27 [Noteholders]."  (Ex. 1, Indentures at 1.)  If an Event of Default occurs and is continuing, the

28 Indenture charges *the Trustee* with pursuing any available remedy to collect payment, if such

1  action would be reasonable.  (*Id.* §§ 6.03, 7.01.)  In this vein, each Indenture even contains a "no-

2  action" clause that prevents individual Noteholders from pursuing any remedy with respect to the

3  Indenture or the Notes without first affording the Trustee the opportunity to pursue that remedy.

4  (*Id.* § 6.06.)  And when the Trustee does so, the Noteholders may not proceed *ultra vires*.  (*Id.* §

5  6.06(4).)

6        Even the caption fashioned by Finisar demonstrates that the Trustee acts for the common

7  interest in defending the interests of the Noteholders:  Finisar sued U.S. Bank "not in its

8  individual capacity, but solely in its capacity as Indenture Trustee on behalf of all Holders."  To

9  represent the Noteholders' interests, the Trustee and its counsel must be able to communicate

10  freely with Noteholders about such matters as litigation strategy, risks, and the possibility of

11  settlement or mediation.  As Delaware's Court of Chancery held in like circumstances and with

12  nearly identical Indenture provisions, "[i]t is difficult to see how the Noteholders' and the

13  Trustee's interest in prosecuting claims of this nature could be more closely aligned."  *U.S.*

14  *Timberlands*, 2005 WL 2037353, at *2.

15      **B.      The Communications At Issue Were Designed to Further the Trustee's and
                  Noteholders' Common Interest.**

16

17        Finisar also does not contest that communications among the Trustee, its counsel, and the

    Noteholders were intended to further the Trustee and Noteholders' common interest in addressing

18  Finisar's failure to submit the filings required by the Indentures.  Finisar instead resorts to

19  mischaracterizing the Trustee's claim of privilege.  Contrary to Finisar's representations, the

20  Trustee does not make the blanket assertion "that its communications with the Noteholders are

21  subject to some sort of joint defense privilege."  (Mot. to Compel at 3.)

22        The Trustee has not sought to prevent discovery of all communications between the

23  Trustee and Noteholders – just those protected by legal privilege.  With entry of the Stipulated

24  Protective Order, the Trustee agreed to produce unredacted copies of *all but six* of the documents

25  purportedly subject to the instant motion.  These communications from Noteholders to the

26  Trustee had been produced in redacted form only to preserve confidentiality.  (*See* Schedule B at

27

28

1    Nos. 76, 148-51, 187-208.)  Now that the Stipulated Protective Order has been entered, the

2    Trustee is in the process of producing an unredacted copy of each confidential document.

3        What remains?  The common interest privilege protects communications among the

4    Trustee, Noteholders, *and the Trustee's counsel*.  (*See* Schedule B at Nos. 60, 123, 173; Ex. 2,

5    Jacobs Dep. at 129:15-133:16.)  The privilege also covers any communication between the

6    Trustee and Noteholders not involving counsel, but that discloses the advice of counsel.  (E.g.,

7    Schedule B at No. 157); *see also U.S. Timberlands*, 2005 WL 2037353, at *3 (noting that

8    "communications originating from non-attorneys can be protected by the attorney-client privilege,

9    if those communications relay legal advice from counsel to a party with a common interest").

10        There is no dispute that the purpose of these communications was to further the Trustee

11    and Noteholders' common interest in responding to Finisar's failure to timely file required reports

12    with the SEC, and Finisar's accompanying declaratory judgment actions.  The Trustee and

13    Noteholders undertook the challenged communications pursuant to the Indentures, which charged

14    the Trustee with taking reasonable action in response to Finisar's default, authorized the

15    Noteholders to give direction to the Trustee, and barred Noteholders from acting on their own.

16    (Ex. 1, Indentures §§ 6.03, 6.06, 7.01.)  No more is required for the common interest privilege to

17    apply.

18        **C.    The Underlying Attorney-Client Privilege Has Not Been Waived.**

19        Finisar argues that the underlying privilege has been waived because the Noteholders did

20    not engage separate counsel and because the Trustee has not proven that the communications at

21    issue were given in confidence.  Finisar is wrong on both counts.

22        **1.    The Noteholders were not required to engage separate counsel.**

23        Finisar argues primarily that the common interest privilege does not apply because the

24    Noteholders did not engage separate counsel.  (Mot. to Compel at 6, 8-9.)  But Finisar offers no

25    support for artificially limiting the common interest privilege to represented parties or to

26    communications between attorneys where the parties involved are an indenture trustee and its

27    noteholders.  Both Delaware's Court of Chancery and New York's appellate court have applied

28    the common interest privilege to shield from discovery communications among an indenture the

1   trustee, its counsel, and noteholders, without regard to whether the noteholders had separate legal

2   representation.  *See U.S. Timberlands*, 2005 WL 2037353, at *2; *APP Int'l Fin. Co.*, 823

3   N.Y.S.2d at 363.  These courts adhered to the plain language of the Indentures, which contain

4   "no-action" clauses that prohibit the Noteholders from acting unilaterally to pursue remedies for

5   default and instead require them to act through the Trustee.  *See U.S. Timberlands*, 2005 WL

6   2037353, at *2; *Murray v. U.S. Bank Trust Nat'l Ass'n*, 365 F.3d 1284, 1289 (11th Cir. 2004).

7         Who benefits from the Indentures' no-action clauses here?  Chiefly Finisar.  As the

8   Delaware Chancery Court explained:  "The major purpose of [no-action clauses] is to deter

9   individual debentureholders from bringing independent law suits for unworthy or unjustifiable

10  reasons, causing expense to the Company and diminishing its assets."  *Feldbaum v. McCrory*

11  *Corp.*, 1992 WL 119095, at *6 (Del. Ch. June 1, 1992) (quoting the American Bar Foundation's

12  Commentaries on Indentures, § 5.7, at 232 (1971).)  The court continued:  "The primary purpose

13  of a no-action clause is thus to protect issuers from the expense involved in defending lawsuits

14  that are either frivolous or otherwise not in the economic interest of the corporation and its

15  creditors."  *Id.*  In this vein, courts have enforced "no-action" clauses to require that noteholder

16  suits be funneled through the indenture trustee and to prevent holders from commencing suit

17  without first directing that the trustee act under the terms of the indenture.  *See*, *e.g.*, *In re Enron*,

18  2008 WL 744823, at *9 (S.D. Tex. Mar. 19, 2008).

19        Having benefited from the Indentures' no-action clauses that channel all legal action

20  through the Trustee, Finisar now insists that the Noteholders nonetheless engage separate

21  attorneys to communicate freely with the Trustee and its counsel in pursuit of their common

22  interest.  None of the cases on which Finisar relies involves a situation where, as here, one party

23  (the Noteholders) is contractually bound to yield in favor of legal action by another (the Trustee).

24  Nor do they involve a situation where, as here, the party asserting the privilege (the Trustee) is

25  contractually bound to represent the interests of another (the Noteholders) that cannot take action

26  for itself.

27        Finisar offers no reason for the Noteholders to engage separate counsel when they must

28  rely on the Trustee and its retained counsel to take legal action on their behalf.  "The attorney-

1    sharing requirement helps prevent abuse by ensuring that the common-interest privilege only

2    supplants the [general rule that disclosure to a third party waives the privilege] when attorneys,

3    not clients, decide to share information in order to coordinate legal strategies." *Teleglobe*

4    *Communs. v. BCE Inc. (In re Teleglobe Commc'n Corp.)*, 493 F.3d 345, 365 (3d Cir. 2007).

5    Requiring that communications be shared between counsel prevents improper use of the common

6    interest privilege "as a *post hoc* justification for a client's impermissible disclosures" to another

7    party. *Id.* There is no risk of that here, where the common interest privilege protects

8    communications among the Trustee, *its counsel*, and the Noteholders as part of the Trustee's legal

9    action on the Noteholders' behalf.

10          Lacking any pertinent authority of its own, Finisar attacks the Delaware Chancery Court's

11    decision in *U.S. Timberlands* as "an inapposite and unsound state court disposition." (Mot. to

12    Compel at 8.) But Finisar cannot dispute that Delaware's law of attorney-client and common

13    interest privilege, as codified in Delaware Rule of Evidence 502(b), tracks the federal common

14    law. Beyond that, Delaware "has long been recognized as the fountainhead of American

15    corporations and that its Courts of Chancery are known for their expert exposition of corporate

16    law." *In re Ivan F. Boesky Sec. Litig.*, 129 F.R.D. 89, 97 (S.D.N.Y. 1990). As a result, courts

17    nationwide routinely look to Delaware in resolving novel issues of corporate law. *See*, *e.g.*,

18    *McMinn v. MBF Op. Acquisition Corp.*, 164 P.3d 41, 53 (N.M. 2007) (citing cases from multiple

19    jurisdictions). Here, the Delaware Chancery Court has long-established and well-considered law

20    on the issuance of corporate debt securities under indentures containing no-action clauses, which

21    has informed its application of the common interest privilege in this context.

22                    **2.    The Trustee reasonably understood the communications to
23                            be confidential.**

24          Finisar last asserts that the Trustee has not proven that its communications with the

25    Noteholders were given in confidence. (Mot. to Compel at 7, 8.) Specifically, Finisar complains

26    that the Trustee and Noteholders did not enter into an express agreement labeled as "joint

27    defense" or "common interest." (*Id.*) Finisar ignores that "[j]oint defense agreements are not

28    contracts which create whatever rights the signatories chose, but are written notice of defendants'

1    invocation of privileges set forth in common law." *United States v. Stepney*, 246 F. Supp. 2d

2    1069, 1079 (N.D. Cal. 2003).

3         "[T]he presence of an individual who is not a member of the common defense effort may

4    negate the privilege where that person's presence is known to and accepted by the participants."

5    *Griffith v. Davis*, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (citing Restatement (Third) of the Law

6    Governing Lawyers, § 126 at 190 (Tentative Draft No. 2, 1989)).  But here, Ms. Jacobs testified

7    that all participants on the conference calls (other than herself and counsel) represented

8    themselves to be Noteholders.  (Ex. 2, Jacobs Dep. at 93.)  In other words, the Trustee understood

9    and believed that the only ones privy to the communications were those sharing a commonality of

10   interests.  There is no evidence that the Trustee understood that any Noteholder intended to reveal

11   the contents of the shared communication to a party with adverse interests, such as Finisar.   Nor

12   is there evidence that these communications have in fact been disclosed publicly or to any party

13   lacking a common interest with the Trustee.  In short, the Trustee reasonably understood the

14   communications to be confidential – and they have remained so.

15   **II.      Finisar's Motion for Sanctions Should Be Denied.**

16        Monetary sanctions are wholly unwarranted.  The Trustee has made every effort to

17   comply with its obligations in responding to Finisar's discovery requests.  Only four documents

18   are being withheld under the common interest privilege, the parties have cooperated on

19   production of unredacted confidential information under a Stipulated Protective Order, and Ms.

20   Jacobs testified to the extent possible on communications with counsel and Noteholders.  Beyond

21   that, Finisar cannot contend that the discovery sought at all relates to the heart of this litigation –

22   whether its failure to timely file with the SEC is an Event of Default under the Indentures, which

23   would entitle the Trustee to pursue remedies on the Noteholders' behalf.

24        Producing privileged communications would require the Trustee to breach its duties to the

25   Noteholders to represent their interests.  Although Finisar glibly dismisses the Noteholders as

26   "strangers" (Mot. for Sanctions at 3), as established above, the Trustee shares with them a special

27   relationship, and the assertion of privilege was proper on the merits and therefore substantially

28

1   justified.  *See* Fed. R. Civ. P. 37(a)(5) (monetary sanctions should not be imposed if the

2   nondisclosure or objection to disclosure was substantially justified).

3          Although Finisar attacks the Delaware Chancery Court decision in *U.S. Timberlands* that

4   the Trustee provided to Finisar before the motion to compel (Mot. for Sanctions at 3), this on-

5   point opinion at a minimum demonstrates a genuine dispute as to the appropriateness of Finisar's

6   discovery demands.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) ("substantially justified" is

7   satisfied where there is a genuine dispute or if reasonable people could differ as to

8   appropriateness of motion).  In the absence of controlling authority, and with considerable

9   support for its position as detailed in Point I – including two decisions applying the common

10  interest privilege to communications among an indenture trustee, its counsel, and noteholders –

11  the Trustee's assertion of privilege is substantially justified and the monetary discovery sanctions

12  should be denied.  *See Cobell v. Norton*, 226 F.R.D. 67, 90-91 (D.D.C. 2005).

### CONCLUSION

14         For all of the foregoing reasons, Finisar's Motions to Compel and for Monetary

15  Sanctions should be denied.

16  Dated:  May 27, 2008                    D. ANTHONY RODRIGUEZ
                                             EVI K. SCHUELLER
17                                           MORRISON & FOERSTER LLP

18                                           MICHAEL B. FISCO (MN No. 175341)
                                             ABBY E. WILKINSON (MN No. 0313981)
19                                           (*Pro hac applications granted*)
                                             FAEGRE & BENSON LLP
20

21

22                                           By:  _____// s //_____
                                                          D. Anthony Rodriguez
23
                                             Attorneys for Defendant
24

25

26

27

28

US Bank's Resp to Finisar's Mot to Compel Document Prod and Depo Testimony; add Depo Time & Monetary Sanctions
Case No. C 07-04-52 JF (PVT)
sf-2521931

12