# EXHIBIT 1

EX-4.3 3 a2065665zex-4_3.htm EXHIBIT 4.3
QuickLinks -- Click here to rapidly navigate through this document

Exhibit 4.3

## FINISAR CORPORATION

5¼% Convertible Subordinated Notes

due 2008

———

INDENTURE

Dated as of October 15, 2001

U.S. BANK TRUST NATIONAL ASSOCIATION,

TRUSTEE

———

### Table of Contents

| | | Page |
|---|---|---|

**ARTICLE 1**
**DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION**

| SECTION 1.01 | Definitions | 1 |
|---|---|---|
| SECTION 1.02 | Other Definitions | 9 |
| SECTION 1.03 | Incorporation by Reference of Trust Indenture Act | 9 |
| SECTION 1.04 | Rules of Construction | 10 |
| SECTION 1.05 | Acts of Holders | 10 |

**ARTICLE 2**
**THE NOTES**

| SECTION 2.01 | Form and Dating | 11 |
|---|---|---|
| SECTION 2.02 | Execution and Authentication | 12 |
| SECTION 2.03 | Registrar, Paying Agent and Conversion Agent | 12 |
| SECTION 2.04 | Paying Agent to Hold Money and Notes in Trust | 13 |
| SECTION 2.05 | Noteholder Lists | 13 |
| SECTION 2.06 | Transfer and Exchange | 13 |
| SECTION 2.07 | Replacement Notes | 14 |
| SECTION 2.08 | Outstanding Notes; Determinations of Holders' Action | 15 |
| SECTION 2.09 | Temporary Notes | 15 |
| SECTION 2.10 | Cancellation | 16 |

| | | |
|---|---|---|
| SECTION 2.11 | Persons Deemed Owners | 16 |
| SECTION 2.12 | Global Notes | 16 |
| SECTION 2.13 | CUSIP Numbers | 20 |
| SECTION 2.14 | Defaulted Interest | 20 |
| SECTION 2.15 | Registration Default | 20 |

ARTICLE 3
REDEMPTION AND PURCHASES

| | | |
|---|---|---|
| SECTION 3.01 | [Reserved] | 21 |
| SECTION 3.02 | Optional Redemption | 21 |
| SECTION 3.03 | Notice of Trustee | 21 |
| SECTION 3.04 | Selection of Notes to be Redeemed | 21 |
| SECTION 3.05 | Notice of Redemption | 21 |
| SECTION 3.06 | Effect of Notice of Redemption | 22 |
| SECTION 3.07 | Deposit of Redemption Price | 22 |
| SECTION 3.08 | Notes Redeemed in Part | 23 |
| SECTION 3.09 | Conversion Arrangement on Call for Redemption | 23 |
| SECTION 3.10 | Repurchase of Notes at Option of the Holder upon Change in Control | 23 |
| SECTION 3.11 | Effect of Change in Control Repurchase Notice | 27 |
| SECTION 3.12 | Deposit of Change in Control Repurchase Price | 27 |
| SECTION 3.13 | Notes Purchased in Part | 27 |
| SECTION 3.14 | Covenant to Comply with Securities Laws upon Purchase of Notes | 28 |
| SECTION 3.15 | Repayment to the Company | 28 |

ARTICLE 4
COVENANTS

| | | |
|---|---|---|
| SECTION 4.01 | Payment of Principal, Premium, Interest on the Notes | 28 |

i

| | | |
|---|---|---|
| SECTION 4.02 | SEC and Other Reports | 28 |
| SECTION 4.03 | Compliance Certificate | 29 |
| SECTION 4.04 | Further Instruments and Acts | 29 |
| SECTION 4.05 | Maintenance of Office or Agency | 29 |
| SECTION 4.06 | Delivery of Certain Information | 29 |

ARTICLE 5
SUCCESSOR CORPORATION

| | | |
|---|---|---|
| SECTION 5.01 | When Company May Merge or Transfer Assets | 29 |

ARTICLE 6
DEFAULTS AND REMEDIES

| | | |
|---|---|---|
| SECTION 6.01 | Events of Default | 31 |
| SECTION 6.02 | Acceleration | 32 |
| SECTION 6.03 | Other Remedies | 33 |
| SECTION 6.04 | Waiver of Past Defaults | 33 |
| SECTION 6.05 | Control by Majority | 33 |
| SECTION 6.06 | Limitation on Suits | 33 |
| SECTION 6.07 | Rights of Holders to Receive Payment | 34 |
| SECTION 6.08 | Collection Suit by Trustee | 34 |
| SECTION 6.09 | Trustee May File Proofs of Claim | 34 |
| SECTION 6.10 | Priorities | 34 |

SECTION 6.11    Undertaking for Costs                                                                35
SECTION 6.12    Waiver of Stay, Extension or Usury Laws                                              35

ARTICLE 7
TRUSTEE

SECTION 7.01    Duties and Responsibilities of the Trustee; During Default; Prior to Default         35
SECTION 7.02    Certain Rights of the Trustee                                                        36
SECTION 7.03    Trustee Not Responsible for Recitals, Disposition of Notes or Application of
                Proceeds Thereof                                                                     37
SECTION 7.04    Trustee and Agents May Hold Notes; Collections, etc                                  37
SECTION 7.05    Moneys Held by Trustee                                                               37
SECTION 7.06    Compensation and Indemnification of Trustee and Its Prior Claim                      37
SECTION 7.07    Right of Trustee to Rely on Officers' Certificate, etc                               38
SECTION 7.08    Conflicting Interests                                                                38
SECTION 7.09    Persons Eligible for Appointment as Trustee                                          38
SECTION 7.10    Resignation and Removal; Appointment of Successor Trustee                            38
SECTION 7.11    Acceptance of Appointment by Successor Trustee                                       39
SECTION 7.12    Merger, Conversion, Consolidation or Succession to Business of Trustee               39
SECTION 7.13    Preferential Collection of Claims Against the Company                                40
SECTION 7.14    Reports by the Trustee                                                               40
SECTION 7.15    Trustee to Give Notice of Default, But May Withhold in Certain Circumstances         40

ARTICLE 8
DISCHARGE OF INDENTURE

SECTION 8.01    Discharge of Liability on Notes                                                      40
SECTION 8.02    Repayment of the Company                                                             40

ii

ARTICLE 9
AMENDMENTS

SECTION 9.01    Without Consent of Holders                                                           41
SECTION 9.02    With Consent of Holders                                                              41
SECTION 9.03    Compliance with Trust Indenture Act                                                  42
SECTION 9.04    Revocation and Effect of Consents, Waivers and Actions                               42
SECTION 9.05    Notation on or Exchange of Notes                                                     42
SECTION 9.06    Trustee to Sign Supplemental Indentures                                              42
SECTION 9.07    Effect of Supplemental Indentures                                                    42

ARTICLE 10
CONVERSION

SECTION 10.01   Conversion Right and Conversion Price                                                43
SECTION 10.02   Exercise of Conversion Right                                                         43
SECTION 10.03   Fractions of Shares                                                                  44
SECTION 10.04   Adjustment of Conversion Price                                                       44
SECTION 10.05   Notice of Adjustments of Conversion Price                                            51
SECTION 10.06   Notice Prior to Certain Actions                                                      51
SECTION 10.07   Company to Reserve Common Stock                                                      52
SECTION 10.08   Taxes on Conversions                                                                 52
SECTION 10.09   Covenant as to Common Stock                                                          52
SECTION 10.10   Cancellation of Converted Notes                                                      52

SECTION 10.11    Effect of Reclassification, Consolidation, Merger or Sale    52
SECTION 10.12    Adjustment for Other Distributions    53
SECTION 10.13    Responsibility of Trustee for Conversion Provisions    54

ARTICLE 11
SUBORDINATION

SECTION 11.01    Agreement to Subordinate    54
SECTION 11.02    Liquidation; Dissolution; Bankruptcy    54
SECTION 11.03    Default on Designated Senior Indebtedness    55
SECTION 11.04    Acceleration of Notes    56
SECTION 11.05    When Distribution Must Be Paid Over    56
SECTION 11.06    Notice by the Company    56
SECTION 11.07    Subrogation    56
SECTION 11.08    Relative Rights    56
SECTION 11.09    Subordination May Not Be Impaired by the Company    56
SECTION 11.10    Distribution or Notice to Representative    57
SECTION 11.11    Rights of Trustee and Paying Agent    57

ARTICLE 12
SECURITY

SECTION 12.01    Security    57

ARTICLE 13
MISCELLANEOUS

SECTION 13.01    Trust Indenture Act Controls    59
SECTION 13.02    Notices    59
SECTION 13.03    Communication by Holders with Other Holders    60

iii

SECTION 13.04    Certificate and Opinion as to Conditions Precedent    60
SECTION 13.05    Statements Required in Certificate or Opinion    60
SECTION 13.06    Separability Clause    61
SECTION 13.07    Rules by Trustee, Paying Agent, Conversion Agent and Registrar    61
SECTION 13.08    Legal Holidays    61
SECTION 13.09    GOVERNING LAW    61
SECTION 13.10    No Recourse Against Others    61
SECTION 13.11    Successors    61
SECTION 13.12    Multiple Originals    61

*EXHIBITS*
Exhibit A-1    Form of Face of Global Note
Exhibit A-2    Form of Certificated Note
Exhibit B-1    Transfer Certificate

iv

**CROSS REFERENCE TABLE***

| TIA Section | Indenture Section |
|---|---|
| 310(a)(1) | 7.09 |
| (a)(2) | 7.09 |
| (a)(3) | N.A. |
| (a)(4) | N.A. |
| (a)(5) | 7.09 |
| (b) | 7.08; 7.09; 7.10;7.11 |
| (c) | N.A. |
| 311(a) | 7.13 |
| (b) | 7.13 |
| (c) | N.A. |
| 312(a) | 2.05 |
| (b) | 13.03 |
| (c) | 13.03 |
| 313(a) | 7.14 |
| (b)(1) | 7.14 |
| (b)(2) | 7.14 |
| (c) | 13.02 |
| (d) | 7.14 |
| 314(a) | 4.02; 4.03; 13.02 |
| (b) | 12.01(e) |
| (c)(1) | 13.04 |
| (c)(2) | 13.04 |
| (c)(3) | N.A. |
| (d) | 12.01(d) |
| (e) | 13.05 |
| (f) | N.A. |
| 315(a) | 7.01 |
| (b) | 7.15; 13.02 |
| (c) | 7.01 |
| (d) | 7.01 |
| (e) | 6.11 |
| 316(a) (last sentence) | 2.08 |
| (a)(1)(A) | 6.05 |
| (a)(1)(B) | 6.04 |
| (a)(2) | N.A. |
| (b) | 6.07 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.04 |
| 318(a) | 13.01 |

N. A. means Not Applicable

*

Note: This Cross Reference Table shall not, for any purpose, be deemed to be part of the Indenture.

INDENTURE dated as of October 15, 2001 between FINISAR CORPORATION, a Delaware corporation (the "Company"), and U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, as Trustee hereunder (the "Trustee").

## RECITALS OF THE COMPANY

The Company has duly authorized the creation of an issue of its $5^{1}/4\%$ Convertible Subordinated Notes due 2008 (herein called the "Notes") of substantially the tenor and amount hereinafter set forth, and to provide therefor the Company has duly authorized the execution and delivery of this Indenture.

All things necessary to make the Notes, when the Notes are executed by the Company and authenticated and delivered hereunder, the valid obligations of the Company, and to make this Indenture a valid agreement of the Company, in accordance with their and its terms, have been done. Further, all things necessary to duly authorize the issuance of the Common Stock of the Company issuable upon the conversion of the Notes, and to duly reserve for issuance the number of shares of Common Stock issuable upon such conversion, have been done.

The Notes will be partially secured pursuant to the terms of the Pledge Agreement (as defined herein) by Pledged Securities (as defined herein).

This Indenture is subject to, and shall be governed by, the provisions of the Trust Indenture Act of 1939, as amended, that are required to be a part of and to govern indentures qualified under the Trust Indenture Act of 1939, as amended.

### NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Notes by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Notes, as follows:

## ARTICLE 1

### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 1.01 *Definitions.* For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(1) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(2) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP; and

(3) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

"*Additional Pledged Securities*" has the meaning specified in the Pledge Agreement.

"*Affiliate*" of any specified person means any other person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified person. For purposes of this definition, "control" when used with respect to any specified person means the power to direct or cause the direction of the management and

policies of such person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"*Applicable Procedures*" means, with respect to any transfer or transaction involving a Global Note or beneficial interest therein, the rules and procedures of the Depositary for such Note, in each case to the extent applicable to such transaction and as in effect from time to time.

"*Board of Directors*" means either the board of directors of the Company or any duly authorized committee of such board.

"*Board Resolution*" means a resolution duly adopted by the Board of Directors, a copy of which, certified by the Secretary or an Assistant Secretary of the Company to be in full force and effect on the date of such certification, shall have been delivered to the Trustee.

"*Business Day*" means each day of the year other than a Saturday or a Sunday on which banking institutions are not required or authorized to close in the City of New York or the city in which the principal corporate trust office of the Trustee is located.

"*Capital Stock*" of any corporation means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) stock issued by that corporation.

"*Certificated Notes*" means Notes that are in the form of the Notes attached hereto as Exhibit A-2.

"*Closing Price*" of any security on any date of determination means:

> (1) the closing sale price (or, if no closing sale price is reported, the last reported sale price) of such security on the New York Stock Exchange on such date;

> (2) if such security is not listed for trading on the New York Stock Exchange on any such date, the closing sale price as reported in the composite transactions for the principal U.S. securities exchange on which such security is so listed;

> (3) if such security is not so listed on a U.S. national or regional securities exchange, the closing sale price as reported by the NASDAQ National Market;

> (4) if such security is not so reported, the last quoted bid price for such security in the over-the-counter market as reported by the National Quotation Bureau or similar organization; or

> (5) if such bid price is not available, the average of the mid-point of the last bid and ask prices of such security on such date from at least three nationally recognized independent investment banking firms retained for this purpose by the Company.

"*Closing Time*" has the meaning specified in the Purchase Agreement.

"*Collateral Account*" means an account established with the Collateral Agent pursuant to the terms of the Pledge Agreement for the deposit of the Pledged Securities to be purchased by the Company with a portion of the proceeds from the sale of the Notes.

"*Collateral Agent*" means, initially, U.S. Bank National Association, a national banking association, as collateral agent under the Pledge Agreement.

"*Common Stock*" means the Common Stock, par value $0.001 per share, of the Company authorized at the date of this instrument as originally executed. Subject to the provisions of Section 10.11, shares issuable on conversion or repurchase of Notes shall include only shares of Common Stock or shares of any class or classes of common stock resulting from any reclassification or reclassifications thereof; provided, however, that if at any time there shall be more than one such resulting class, the shares so issuable on conversion of Notes shall include shares of all such classes, and the shares of each such class then so issuable shall be substantially in the proportion which the total number of shares of such class resulting from all such reclassifications bears to the total number of shares of all such classes resulting from all such reclassifications.

"*common stock*" means any stock of any class of capital stock which has no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the issuer.

2

"*Company*" means the party named as the "Company" in the first paragraph of this Indenture until a successor replaces it pursuant to the applicable provisions of this Indenture, and, thereafter, "Company" shall mean such successor. The foregoing sentence shall likewise apply to any subsequent such successor or successors.

"*Company Request*" or "*Company Order*" means a written request or order signed in the name of the Company by any two Officers.

"*Conversion Agent*" means any person authorized by the Company to convert Notes in accordance with Article 10 hereof.

"*Corporate Trust Office*" means the principal office of the Trustee at which at any time its corporate trust business shall be administered, which office at the date hereof is located at 100 Wall Street, 16th Floor, New York, New York, 10005, or such other address as the Trustee may designate from time to time by notice to the Holders and the Company, or the principal corporate trust office of any successor Trustee (or such other address as a successor Trustee may designate from time to time by notice to the Holders and the Company).

"*Date of Delivery*" has the meaning specified in the Purchase Agreement.

"*Default*" means any event which is, or after notice or passage of time or both would be, an Event of Default.

"*Designated Senior Indebtedness*" means the Company's obligations under any particular Senior Indebtedness that expressly provides that such Senior Indebtedness shall be "Designated Senior Indebtedness" for purposes of this Indenture.

"*Dollar*" or "*U.S.$*" means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

"*GAAP*" means United States generally accepted accounting principles as in effect from time to time.

"*Global Notes*" means Notes that are in the form of the Notes attached hereto as Exhibit A-1.

"*Guarantee*" means a guarantee (other than by endorsement of negotiable instruments for collection in the ordinary course of business), direct or indirect, contingent or otherwise, in any manner (including, without limitation, letters of credit and reimbursement agreements in respect thereof), of all or any part of any Indebtedness.

"*Holder*" or "*Noteholder*" means a person in whose name a Note is registered on the Registrar's books.

"*Indebtedness*" means, with respect to any person, without duplication:

(1) all indebtedness, obligations and other liabilities, contingent or otherwise, of such person for borrowed money (including overdrafts) or for the deferred purchase price of property or services, excluding any trade payables and other accrued current liabilities incurred in the ordinary course of business, but including, without limitation, all obligations, contingent or otherwise, of such person in connection with any letters of credit and acceptances issued under letter of credit facilities, acceptance facilities or other similar facilities;

(2) all obligations of such person evidenced by bonds, credit or loan agreements, notes, debentures or other similar instruments;

(3) indebtedness of such person created or arising under any conditional sale or other title retention agreement with respect to property acquired by such person (even if the rights and remedies of the seller or lender under such agreement in the event of default are limited to

3

repossession or sale of such property), but excluding trade payables arising in the ordinary course of business;

(4) all obligations and liabilities, contingent or otherwise, in respect of leases of the person required, in conformity with GAAP, to be accounted for as capitalized lease obligations on the balance sheet of the person and all obligations and other liabilities, contingent or otherwise, under any lease or related document, including a purchase agreement, in connection with the lease of real property or improvements thereon which provides that the person is contractually obligated to purchase or cause a third party to purchase the leased property or pay an agreed upon residual value of the leased property to the lessor and the obligations of the person under the lease or related document to purchase or to cause a third party to purchase the leased property whether or not such lease transaction is characterized as an operating lease or a capitalized lease in accordance with GAAP, including, without limitations, synthetic lease obligations;

(5) all obligations of such person under or in respect of interest rate agreements, currency agreements or other swap, cap floor or collar agreement, hedge agreement, forward contract or similar instrument or agreement or foreign currency, hedge, exchange or purchase or similar instrument or agreement;

(6) all indebtedness referred to in (but not excluded from) the preceding clauses (1) through (5) of other persons and all dividends of other persons, the payment of which is secured by (or for which the holder of such indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien or with respect to property (including, without limitation, accounts and contract rights) owned by such person, even though such person has not assumed or become liable for the payment of such indebtedness (the amount of such obligation being deemed to be the lesser of the value of such property or asset or the amount of the obligation so secured);

(7) all guarantees by such person of indebtedness referred to in this definition or of any other person;

(8) all Redeemable Capital Stock of such person valued at the greater of its voluntary or involuntary maximum fixed repurchase price plus accrued and unpaid dividends;

(9) the present value of the obligation of such person as lessee for net rental payments (excluding all amounts required to be paid on account of maintenance and repairs, insurance, taxes, assessments, water, utilities and similar charges to the extent included in such rental payments) during the remaining term of the lease included in any such sale and leaseback transaction including any period for which such lease has been extended or may, at the option of the lessor, be extended. Such present value shall be calculated using a

discount rate equal to the rate of interest implicit in such transaction, determined in accordance with GAAP; and

      (10) any and all refinancings, replacements, deferrals, renewals, extensions and refundings of or amendments, modifications or supplements to, any indebtedness, obligation or liability of the kind described in clauses (1) through (9) above.

"*Indenture*" means this Indenture, as amended or supplemented from time to time in accordance with the terms hereof, including the provisions of the TIA that are deemed to be a part hereof.

"*Initial Pledged Securities*" has the meaning specified in the Pledge Agreement.

"*Initial Purchasers*" means Merrill Lynch, Pierce, Fenner & Smith Incorporated, CIBC World Markets Corp and J.P. Morgan Securities Inc.

"*Interest Payment Date*" means the Stated Maturity of an installment of interest on the Notes.

"*Interest Rate*" means 5.25% per annum.

4

"*Issue Date*" of any Note means the date on which the Note was originally issued or deemed issued as set forth on the face of the Note.

"*Lien*" means, with respect to any asset, any mortgage, lien, pledge, charge, security interest or encumbrance of any kind in respect of such asset given to secure Indebtedness, whether or not filed, recorded or otherwise perfected under applicable law (including any conditional sale or other title retention agreement, any lease in the nature thereof, any option or other agreement to sell or give a security interest in and any filing of or agreement to give any financing statement under the Uniform Commercial Code (or equivalent statutes) of any jurisdiction with respect to any such lien, pledge, charge or security interest).

"*Notes*" has the meaning ascribed to it in the first paragraph under the caption "Recitals of the Company".

"*Officer*" means the Chairman of the Board, the Vice Chairman, the Chief Executive Officer, the President, any Executive Vice President, any Senior Vice President, any Vice President, the Treasurer or the Secretary or any Assistant Treasurer or Assistant Secretary of the Company.

"*Officers' Certificate*" means a written certificate containing the information specified in Sections 13.04 and 13.05, signed in the name of the Company by any two Officers, and delivered to the Trustee. An Officers' Certificate given pursuant to Section 4.03 shall be signed by one authorized financial or accounting Officer of the Company but need not contain the information specified in Sections 13.04 and 13.05.

"*144A Global Note*" means a permanent Global Note in the form of the Note attached hereto as Exhibit A-1, and that is deposited with and registered in the name of the Depositary, representing Notes sold in reliance on Rule 144A under the Securities Act.

"*Opinion of Counsel*" means a written opinion containing the information specified in Sections 13.04 and 13.05, from legal counsel who is reasonably acceptable to the Trustee. The counsel may be an employee of, or counsel to, the Company or the Trustee.

"*Over-Allotment Option*" means the over-allotment option granted by the Company to the Initial Purchasers to

purchase up to an additional $25,000,000 aggregate principal amount of Notes to cover over-allotments pursuant to the Purchase Agreement.

"*person*" or "*Person*" means any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof, including any subdivision or ongoing business of any such entity or substantially all of the assets of any such entity, subdivision or business.

"*Pledge Agreement*" means the Collateral Pledge and Security Agreement, dated as of October 15, 2001, among the Company, the Trustee and the Collateral Agent, as such agreement may be amended, restated, supplemented or otherwise modified from time to time.

"*Pledged Securities*" means the U.S. Government Obligations to be purchased by the Company and held in the Collateral Account in accordance with the Pledge Agreement.

"*principal*" of a Note means the principal amount due on the Stated Maturity as set forth on the face of the Note.

"*Purchase Agreement*" means the Purchase Agreement, dated as of October 9, 2001, between the Company and the Initial Purchasers.

"*Redeemable Capital Stock*" means any class of the Company's Capital Stock that, either by its terms, by the terms of any securities into which it is convertible or exchangeable or by contract or otherwise, is, or upon the happening of an event or passage of time would be, required to be redeemed

5

(whether by sinking fund or otherwise) prior to the date that is 91 days after the Stated Maturity of the Notes or is redeemable at the option of the Holder thereof at any time prior to such date, or is convertible into or exchangeable for debt securities at any time prior to such date (unless it is convertible or exchangeable solely at the Company's option).

"*Redemption Date*" or "*redemption date*" means the date specified for redemption of the Notes in accordance with the terms of the Notes and this Indenture.

"*Redemption Price*" or "*redemption price*" shall have the meaning set forth in paragraph 5 on the reverse side of the Notes.

"*Registration Rights Agreement*" means the Registration Rights Agreement of even date herewith entered into by the Company and the Initial Purchasers.

"*Regular Record Date*" means, with respect to the interest payable on any Interest Payment Date, the close of business on April 1 or October 1 (whether or not a Business Day), as the case may be, next preceding such Interest Payment Date.

"*Responsible Officer*" means, when used with respect to the Trustee, any officer within the corporate trust department of the Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Trustee who customarily performs functions similar to those performed by the Persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject.

"*Restricted Note*" means a Note required to bear the restrictive legend set forth in the form of Note set forth in Exhibits A-1 and A-2 of this Indenture.

"*Restriction Termination Date*" means, with respect to any Note, the date that is two years after the later of:

(1) the Issue Date of the Note, or, in the case of Common Stock, the Issue Date of the Note upon the conversion of which such Common Stock was issued; and

(2) the last date on which any "affiliate," as defined in Rule 144 (or successor provision) under the Securities Act, of the Company was the owner of such Note or Common Stock.

"*Rule 144A*" means Rule 144A under the Securities Act (or any successor provision), as it may be amended from time to time.

"*SEC*" means the Securities and Exchange Commission.

"*Securities Act*" means the United States Securities Act of 1933 (or any successor statute), as amended from time to time.

"*Senior Indebtedness*" means:

(1) the principal of and premium, if any, and interest on, and fees, costs, enforcement expenses, collateral protection expenses and other reimbursement or indemnity obligations in respect of all of the Indebtedness of the Company or obligations to any person for money borrowed that is evidenced by a note, bond, debenture, loan agreement, or similar instrument or agreement including default interest and interest accruing after a bankruptcy;

(2) commitment or standby fees due and payable to lending institutions with respect to credit facilities available to the Company;

(3) all of the Company's noncontingent obligations (i) for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction, (ii) under interest rate swaps, caps, collars, options and similar arrangements and (iii) under any foreign exchange

6

contract, currency swap agreement, futures contract, currency option contract or other foreign currency hedge;

(4) all of the Company's obligations under leases for real estate, facilitates, equipment or related assets, whether or not capitalized, entered into or leased for financing purposes;

(5) any liabilities of others described in clauses (1) through (5) above that the Company has guaranteed or which are otherwise the Company's legal liability; and

(6) renewals, extensions, refundings, refinancings, restructurings, amendments and modifications of any such indebtedness or guarantee.

Notwithstanding the foregoing, "Senior Indebtedness" shall not include:

(a) Indebtedness or other obligations of the Company that by its terms ranks equal or junior in right of payment to the Notes;

(b) Indebtedness evidenced by the Notes;

(c) Indebtedness of the Company that by operation of law is subordinate to any general unsecured obligations of the Company;

(d) accounts payable or other liabilities owed or owing by the Company to trade creditors (including guarantees thereof or instruments evidencing such liabilities);

(e) amounts owed by the Company for compensation to employees or for services rendered to the Company;

(f) Indebtedness of the Company to any Subsidiary or any other Affiliate of the Company or any of such Affiliate's Subsidiaries, except if it is pledged as security for any Senior Indebtedness;

(g) Capital Stock of the Company;

(h) Indebtedness of the Company evidenced by any Guarantee of any such Indebtedness ranking equal or junior in right of payment to the Notes; and

(i) Indebtedness of the Company which, when incurred and without respect to any election under Section 1111(b) of Title 11 of the United States Code, is without recourse to the Company.

"*Significant Subsidiary*" means a Subsidiary of the Company, including its Subsidiaries that meets any of the following conditions:

(1) the Company's and its other Subsidiaries' investments in and advances to the Subsidiary exceed 10 percent of the total assets of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years; or

(2) the Company's and its other Subsidiaries' proportionate share of the total assets of the Subsidiary exceeds 10 percent of the total assets of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years; or

(3) the Company's and its other Subsidiaries' equity in the income from continuing operations before income taxes, extraordinary items and cumulative effect of a change in accounting principles of the Subsidiary exceeds 10 percent of such income of the Company and its Subsidiaries consolidated as of the end of any two of the three most recently completed fiscal years.

"*Stated Maturity*", when used with respect to any Note or any installment of interest thereon, means the date specified in such Note as the fixed date on which the principal of such Note or such installment of interest is due and payable.

"*Subsidiary*" means (i) a corporation, a majority of whose Capital Stock with voting power, under ordinary circumstances, to elect directors is, at the date of determination, directly or indirectly owned by the Company, by one or more Subsidiaries of the Company or by the Company and one or more Subsidiaries of the Company, (ii) a partnership in which the Company or a Subsidiary of the Company holds a majority interest in the equity capital or profits of such partnership, or (iii) any other person (other than a corporation) in which the Company, a Subsidiary of the Company or the Company and one or more Subsidiaries of the Company, directly or indirectly, at the date of determination, has (x) at least a majority ownership interest or (y) the power to elect or direct the election of a majority of the directors or other governing body of such person.

"*TIA*" means the Trust Indenture Act of 1939 as in effect on the date of this Indenture, provided, however, that in

the event the TIA is amended after such date, TIA means, to the extent required by any such amendment, the TIA as so amended.

"*Trading Day*" means a day during which trading in the Common Stock generally occurs on the New York Stock Exchange or, if the Common Stock is not listed on the New York Stock Exchange, on the principal other national or regional securities exchange on which the Common Stock is then listed or, if the Common Stock is not listed on a national or regional securities exchange, on the National Association of Notes Dealers Automated Quotation System or, if the Common Stock is not quoted on the National Association of Securities Dealers Automated Quotation System, on the principal other market on which the Common Stock is then traded.

"*Trustee*" means the party named as the "Trustee" in the first paragraph of this Indenture until a successor replaces it pursuant to the applicable provisions of this Indenture and, thereafter, shall mean such successor. The foregoing sentence shall likewise apply to any subsequent such successor or successors.

"*United States*" means the United States of America (including the States and the District of Columbia), its territories, its possessions and other areas subject to its jurisdiction (its "possessions" including Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

"*U.S. Government Obligations*" means securities that are (i) direct obligations of the United States of America, the payment of which its full faith and credit is pledged or (ii) obligations of a Person controlled or supervised by or acting as an agency or instrumentality of the United States of America, the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case, are not callable or redeemable at the option of the issuer thereof at any time prior to the Stated Maturity of the Notes, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such U.S. Government Obligation or a specific payment of interest on or principal of any such U.S. Government Obligation held by such custodian for the account of the holder of a depository receipt; provided that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the U.S. Government Obligation for the specific payment of interest on or principal of the U.S. Government Obligation evidenced by such depository receipt.

8

SECTION 1.02 *Other Definitions.*

| Term | Defined in Section |
|------|--------------------|
| "Act" | 1.05(a) |
| "Agent Members" | 2.12 |
| "Bankruptcy Law" | 6.01 |
| "Change in Control" | 3.10(a) |
| "Change in Control Repurchase Date" | 3.10(a) |
| "Change in Control Repurchase Notice" | 3.10(d) |
| "Change in Control Repurchase Price" | 3.10(a) |
| "Conversion Price" | 10.01 |
| "Current Market Price" | 10.04(g) |
| "Custodian" | 6.01 |
| "Depositary" | 2.01(a) |
| "DTC" | 2.01(a) |
| "Event of Default" | 6.01 |
| "Exchange Act" | 3.10(a) |
| "excluded securities" | 10.04(d) |
| "Expiration Time" | 10.04(f) |

| | |
|---|---|
| "fair market value" | 10.04(g) |
| "Legal Holiday" | 13.08 |
| "Legend" | 2.06(f) |
| "Non-Electing Share" | 10.11 |
| "Non-Payment Default" | 11.03(b) |
| "Notice of Default" | 6.01 |
| "Paying Agent" | 2.03 |
| "Payment Blockage Period" | 11.03(b) |
| "Payment Default" | 11.03(a) |
| "Purchased Shares" | 10.04(f) |
| "Permitted Junior Securities" | 11.02 |
| "QIB" | 2.01(a) |
| "Record Date" | 10.04(g) |
| "Reference Period" | 10.04(d) |
| "Registrar" | 2.03 |
| "Rule 144A Information" | 4.06 |
| "Trigger Event" | 10.04(d) |

SECTION 1.03 *Incorporation by Reference of Trust Indenture Act.* Whenever this Indenture refers to a provision of the TIA, the provision is incorporated by reference in and made a part of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the SEC.

"indenture Notes" means the Notes.

"indenture Note holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Trustee.

"obligor" on the indenture Notes means the Company.

9

All other TIA terms used in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by SEC rule have the meanings assigned to them by such definitions.

SECTION 1.04 *Rules of Construction.* Unless the context otherwise requires:

(a) a term has the meaning assigned to it;

(b) an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP as in effect from time to time;

(c) "or" is not exclusive;

(d) "including" means including, without limitation; and

(e) words in the singular include the plural, and words in the plural include the singular.

SECTION 1.05 *Acts of Holders.* (a) Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by their agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section.

(b) The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to such officer the execution thereof. Where such execution is by a signer acting in a capacity other than such signer's individual capacity, such certificate or affidavit shall also constitute sufficient proof of such signer's authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner which the Trustee deems sufficient.

The ownership of Notes shall be proved by the register for the Notes or by a certificate of the Registrar.

Any request. demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Note shall bind every future Holder of the same Note and the holder of every Note issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Note.

If the Company shall solicit from the Holders any request, demand, authorization, direction, notice, consent, waiver or other Act, the Company may, at its option, by or pursuant to a resolution of the Board of Directors, fix in advance a record date for the determination of Holders entitled to give such request, demand, authorization, direction, notice, consent, waiver or other Act, but the Company shall have no obligation to do so. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other Act may be given before or after such record date, but only the Holders of record at the close of business on such record date shall be deemed to be Holders for purposes of determining whether Holders of the requisite proportion of outstanding Notes have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other Act, and for that purpose the outstanding Notes shall be computed as of such record date; provided that no such authorization, agreement or consent by the Holders on such record date

10

shall be deemed effective unless it shall become effective pursuant to the provisions of this Indenture not later than six months after the record date.

## ARTICLE 2

## THE NOTES

SECTION 2.01 *Form and Dating.* The Notes and the Trustee's certificate of authentication to be borne by such Notes shall be substantially in the form annexed hereto as Exhibits A-1 and A-2, which are incorporated in and made a part of this Indenture. The terms and provisions contained in the form of Note shall constitute, and are hereby expressly made, a part of this Indenture and to the extent applicable, the Company and the Trustee, by their execution and delivery of this Indenture, expressly agree to such terms and provisions and to be bound thereby.

Any of the Notes may have such letters, numbers or other marks of identification and such notations, legends and

endorsements as the officers executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange or automated quotation system on which the notes may be listed or designated for issuance, or to conform to usage.

(a) *Global Notes.* Notes offered and sold within the United States to qualified institutional investors as defined in Rule 144A ("QIBs") in reliance on Rule 144A shall be issued, initially in the form of a 144A Global Note, which shall be deposited with the Trustee at its Corporate Trust Office, as custodian for, and registered in the name of, The Depository Trust Company ("DTC") or the nominee thereof (such depositary, or any successor thereto, and any such nominee being hereinafter referred to as the "Depositary"), duly executed by the Company and authenticated by the Trustee as hereinafter provided. The aggregate principal amount of the 144A Global Notes may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary as hereinafter provided.

(b) *Global Notes in General.* Each Global Note shall represent such of the outstanding Notes as shall be specified therein and each shall provide that it shall represent the aggregate amount of outstanding Notes from time to time endorsed thereon and that the aggregate amount of outstanding Notes represented thereby may from time to time be reduced or increased, as appropriate, to reflect exchanges, redemptions and conversions.

Any adjustment of the aggregate principal amount of a Global Note to reflect the amount of any increase or decrease in the amount of outstanding Notes represented thereby shall be made by the Trustee in accordance with instructions given by the Holder thereof as required by Section 2.12 hereof and shall be made on the records of the Trustee and the Depositary.

(c) *Book-Entry Provisions.* This Section 2.01(c) shall apply only to Global Notes deposited with or on behalf of the Depositary

The Company shall execute and the Trustee shall, in accordance with this Section 2.01(c), authenticate and deliver initially one or more Global Notes that (a) shall be registered in the name of the Depositary, (b) shall be delivered by the Trustee to the Depositary or pursuant to the Depositary's instructions and (c) shall bear legends substantially to the following effect:

"UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY

11

TRUST COMPANY (AND ANY PAYMENT HEREON IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL SINCE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

TRANSFERS OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS IN WHOLE, BUT NOT IN PART, TO NOMINEES OF THE DEPOSITORY TRUST COMPANY OR TO A SUCCESSOR THEREOF OR SUCH SUCCESSOR'S NOMINEE AND TRANSFERS OF PORTIONS OF THIS GLOBAL NOTE SHALL BE LIMITED TO TRANSFERS MADE IN ACCORDANCE WITH THE RESTRICTIONS SET FORTH IN ARTICLE TWO OF THE INDENTURE REFERRED TO ON THE REVERSE HEREOF."

(d) *Restrictive Legends.*  Until the Restriction Termination Date, all Global Notes and all Certificated Notes shall bear the Legend, unless such Notes have been transferred pursuant to a registration statement that has been declared effective under the Securities Act. Until the Restriction Termination Date, the Company covenants that any stock certificate representing shares of Common Stock delivered by the Company upon conversion of any Notes will bear the Legend, unless such shares have been sold pursuant to a registration statement that has been declared effective under the Securities Act.

(e) *Certificated Notes.*  Notes not issued as interests in the Global Notes will be issued in certificated form substantially in the form of Exhibit A-2 attached hereto.

SECTION 2.02 *Execution and Authentication.*  The Notes shall be executed on behalf of the Company by any Officer, under its corporate seal reproduced thereon. The signature of the Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signatures of individuals who were at the time of the execution of the Notes the proper Officers of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of authentication of such Notes.

No Note shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Note a certificate of authentication substantially in the form provided for herein duly executed by the Trustee by manual signature of an authorized officer, and such certificate upon any Note shall be conclusive evidence, and the only evidence, that such Note has been duly authenticated and delivered hereunder.

The Trustee shall authenticate and deliver Notes for original issue in an aggregate principal amount of up to $100,000,000, or an aggregate principal amount of up to $125,000,000 if the Over-Allotment Option is exercised fully, upon a Company Order without any further action by the Company. The aggregate principal amount of Notes outstanding at any time may not exceed the amount set forth in the foregoing sentence, except as provided in Section 2.07.

The Notes shall be issued only in registered form without coupons and only in denominations of $1,000 in principal amount and any integral multiple thereof.

SECTION 2.03 *Registrar, Paying Agent and Conversion Agent.*  The Company shall maintain an office or agency where Notes may be presented for registration of transfer or for exchange ("Registrar"), an office or agency where Notes may be presented for purchase or payment ("Paying Agent") and an office or agency where Notes may be presented for conversion ("Conversion Agent"). The Registrar shall keep a register of the Notes and of their transfer and exchange. The Company may have one or more co-registrars, one or more additional paying agents and one or more additional conversion agents. The term Paying Agent includes any additional paying agent, including any named

pursuant to Section 4.05. The term Conversion Agent includes any additional conversion agent, including any named pursuant to Section 4.05.

The Company shall enter into an appropriate agency agreement with any Registrar, Paying Agent, Conversion Agent or co-registrar (other than the Trustee). The agreement shall implement the provisions of this Indenture that relate to such agent. The Company shall notify the Trustee of the name and address of any such agent. If the Company fails to maintain a Registrar, Paying Agent or Conversion Agent, the Trustee shall act as such and shall be entitled to appropriate compensation therefor pursuant to Section 7.06. The Company or any Subsidiary or an Affiliate of either of them may act as Paying Agent, Registrar, Conversion Agent or co-registrar.

The Company initially appoints the Trustee as Registrar, Conversion Agent and Paying Agent in connection with the Notes.

SECTION 2.04 *Paying Agent to Hold Money and Notes in Trust.* Except as otherwise provided herein, on or prior to each due date of payments in respect of any Note, the Company shall deposit with the Paying Agent a sum of money (in immediately available funds if deposited on the due date) sufficient to make such payments when so becoming due. The Company shall require each Paying Agent (other than the Trustee) to agree in writing that the Paying Agent shall hold in trust for the benefit of Noteholders or the Trustee all money held by the Paying Agent for the making of payments in respect of the Notes and shall notify the Trustee of any default by the Company in making any such payment. At any time during the continuance of any such default, the Paying Agent shall, upon the written request of the Trustee, forthwith pay to the Trustee all money so held in trust. If the Company, a Subsidiary or an Affiliate of either of them acts as Paying Agent, it shall segregate the money held by it as Paying Agent and hold it as a separate trust fund. The Company at any time may require a Paying Agent to pay all money held by it to the Trustee and to account for any funds disbursed by it. Upon doing so, the Paying Agent shall have no further liability for the money.

SECTION 2.05 *Noteholder Lists.* The Trustee shall preserve in as current a form as is reasonably practicable the most recent list available to it of the names and addresses of Noteholders. If the Trustee is not the Registrar, the Company shall cause to be furnished to the Trustee at least semiannually on January 1 and July 1 a listing of Noteholders dated within 13 days of the date on which the list is furnished and at such other times as the Trustee may request in writing a list in such form and as of such date as the Trustee may reasonably require of the names and addresses of Noteholders.

SECTION 2.06 *Transfer and Exchange.* Subject to Section 2.12 hereof, (a) upon surrender for registration of transfer of any Note, together with a written instrument of transfer satisfactory to the Registrar duly executed by the Noteholder or such Noteholder's attorney duly authorized in writing, at the office or agency of the company designated as Registrar or co-registrar pursuant to Section 2.03, the Company shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes of any authorized denomination or denominations, of a like aggregate principal amount. The Company shall not charge a service charge for any registration of transfer or exchange, but the Company may require payment of a sum sufficient to pay all taxes, assessments or other governmental charges that may be imposed in connection with the transfer or exchange of the Notes from the Noteholder requesting such transfer or exchange.

At the option of the Holder, Notes may be exchanged for other Notes of any authorized denomination or denominations. of a like aggregate principal amount, upon surrender of the Notes to be exchanged, together with a written instrument of transfer satisfactory to the Registrar duly executed by the Noteholder or such Noteholder's attorney duly authorized in writing, at such office or agency. Whenever any Notes are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Notes which the Holder making the exchange is entitled to receive.

13

The Company shall not be required to make, and the Registrar need not register, transfers or exchanges of Notes selected for redemption (except, in the case of Notes to be redeemed in part, the portion thereof not to be redeemed) or any Notes in respect of which a Change in Control Repurchase Notice (as defined in Section 3.10(d)) has been given and not withdrawn by the Holder thereof in accordance with the terms of this Indenture (except, in the case of Notes to be purchased in part, the portion thereof not to be purchased) or any Notes for a period of 15 days before the mailing of a notice of redemption of Notes to be redeemed.

(b) Notwithstanding any provision to the contrary herein, so long as a Global Note remains outstanding and is held by or on behalf of the Depositary, transfers of a Global Note, in whole or in part, shall be made only in accordance with Section 2.12 and this Section 2.06(b). Transfers of a Global Note shall be limited to transfers of such Global Note in whole, or in part, to nominees of the Depositary or to a successor of the Depositary or such successor's nominee.

(c) Successive registrations and registrations of transfers and exchanges as aforesaid may be made from time to time as desired, and each such registration shall be noted on the register for the Notes.

(d) Any Registrar appointed pursuant to Section 2.03 hereof shall provide to the Trustee such information as the Trustee may reasonably require in connection with the delivery by such Registrar of Notes upon transfer or exchange of Notes.

(e) No Registrar shall be required to make registrations of transfer or exchange of Notes during any periods designated in the text of the Notes or in this Indenture as periods during which such registration of transfers and exchanges need not be made.

(f) If Notes are issued upon the transfer, exchange or replacement of Notes subject to restrictions on transfer and bearing the legends set forth on the form of Note attached hereto as Exhibits A-1 and A-2 setting forth such restrictions (collectively, the "Legend"), or if a request is made to remove the Legend on a Note, the Notes so issued shall bear the Legend, or the Legend shall not be removed, as the case may be, unless there is delivered to the Company and the Registrar such satisfactory evidence, which shall include an Opinion of Counsel, as may be reasonably required by the Company and the Registrar, that neither the Legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A or Rule 144 under the Securities Act or that such Notes are not "restricted" within the meaning of Rule 144 under the Securities Act. Upon (i) provision of such satisfactory evidence, or (ii) notification by the Company to the Trustee and Registrar of the sale of such Note pursuant to a registration statement that is effective at the time of such sale, the Trustee, at the written direction of the Company, shall authenticate and deliver a Note that does not bear the Legend. If the Legend is removed from the face of a Note and the Note is subsequently held by an Affiliate of the Company, the Legend shall be reinstated.

SECTION 2.07 *Replacement Notes.* If (a) any mutilated Note is surrendered to the Trustee, or (b) the Company and the Trustee receive evidence to their satisfaction of the destruction, loss or theft of any Note, and there is delivered to the Company and the Trustee such Note or indemnity as may be required by them to save each of them harmless, then, in the absence of notice to the Company or the Trustee that such Note has been acquired by a bona fide purchaser, the Company shall execute and upon its written request the Trustee shall authenticate and deliver, in exchange for any such mutilated Note or in lieu of any such destroyed, lost or stolen Note, a new Note of like tenor and principal amount, bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Note has become or is about to become due and payable, or is about to be purchased by the Company pursuant to Article 3 hereof, the Company in its discretion may, instead of issuing a new Note, pay or purchase such Note, as the case may be.

Upon the issuance of any new Notes under this Section 2.07, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in

14

relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Note issued pursuant to this Section 2.07 in lieu of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder.

The provisions of this Section 2.07 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

SECTION 2.08 *Outstanding Notes; Determinations of Holders' Action.* Notes outstanding at any time are all the Notes authenticated by the Trustee except for those cancelled by it or delivered to it for cancellation, those paid pursuant to Section 2.07 and those described in this Section 2.08 as not outstanding. A Note does not cease to be outstanding because the Company or an Affiliate thereof holds the Note; provided, however, that in determining whether the Holders of the requisite principal amount of the outstanding Notes have given or concurred in any request, demand, authorization, direction, notice, consent or waiver hereunder, Notes owned by the Company or any other obligor upon the Notes or any Affiliate of the Company or such other obligor shall be disregarded and deemed not to be outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes which a Responsible Officer of the Trustee knows to be so owned shall be so disregarded. Subject to the foregoing, only Notes outstanding at the time of such determination shall be considered in any such determination (including, without limitation, determinations pursuant to Articles 6 and 9).

If a Note is replaced pursuant to Section 2.07, it ceases to be outstanding unless the Trustee receives proof satisfactory to it that the replaced Note is held by a bona fide purchaser.

If the Paying Agent holds, in accordance with this Indenture, on a Redemption Date, or on the Business Day following the Change in Control Repurchase Date, or on Stated Maturity, money or securities, if permitted hereunder, sufficient to pay Notes payable on that date, then immediately after such Redemption Date, Change in Control Repurchase Date or Stated Maturity, as the case may be, such Notes shall cease to be outstanding and interest on such Notes shall cease to accrue; provided that, if such Notes are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor reasonably satisfactory to the Trustee has been made.

If a Note is converted in accordance with Article 10, then from and after the time of conversion on the conversion date, such Note shall cease to be outstanding and interest shall cease to accrue on such Note.

SECTION 2.09 *Temporary Notes.* Pending the preparation of definitive Notes, the Company may execute, and upon Company Order the Trustee shall authenticate and deliver, temporary Notes which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Notes in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Notes may determine, as conclusively evidenced by their execution of such Notes.

If temporary Notes are issued, the Company will cause definitive Notes to be prepared without unreasonable delay. After the preparation of definitive Notes, the temporary Notes shall be exchangeable for definitive Notes upon surrender of the temporary Notes at the office or agency of the Company designated for such purpose pursuant to Section 2.03, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Notes the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Notes

15

of authorized denominations. Until so exchanged the temporary Notes shall in all respects be entitled to the same benefits under this Indenture as definitive Notes.

SECTION 2.10 *Cancellation.* All Notes surrendered for payment, purchase by the Company pursuant to Article 3, conversion, redemption or registration of transfer or exchange shall, if surrendered to any person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it. The Company may at any time deliver to the Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Company may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the Trustee. The Company may not issue new Notes to replace Notes it has paid or delivered to the Trustee for cancellation or that any Holder has converted pursuant to Article 10. No Notes shall be authenticated in lieu of or in

exchange for any Notes cancelled as provided in this Section 2.10, except as expressly permitted by this Indenture. All cancelled Notes held by the Trustee shall be destroyed by the Trustee and the Trustee shall, upon request, deliver a certificate of destruction to the Company.

SECTION 2.11 *Persons Deemed Owners.* Prior to due presentment of a Note for registration of transfer, the Company, the Trustee and any agent of the Company or the Trustee may treat the Person in whose name such Note is registered as the owner of such Note for the purpose of receiving payment of principal of the Note or the payment of any Redemption Price or Change in Control Repurchase Price in respect thereof, and interest thereon, for the purpose of conversion and for all other purposes whatsoever, whether or not such Note be overdue, and neither the Company, the Trustee nor any agent of the Company or the Trustee shall be affected by notice to the contrary.

SECTION 2.12 *Global Notes.* (a) Notwithstanding any other provisions of this Indenture or the Notes, (A) transfers of a Global Note, in whole or in part, shall be made only in accordance with Section 2.06 and Section 2.12(a)(i), (B) transfer of a beneficial interest in a Global Note for a Certificated Note shall comply with Section 2.06 and Section 2.12(a)(ii) below, and (C) transfers of a Certificated Note shall comply with Section 2.06 and Sections 2.12(a)(iii) and (iv) below.

(i) *Transfer of Global Note.* A Global Note may not be transferred, in whole or in part, to any Person other than the Depositary or a nominee or any successor thereof, and no such transfer to any such other Person may be registered; provided that this clause (i) shall not prohibit any transfer of a Note that is issued in exchange for a Global Note but is not itself a Global Note. No transfer of a Note to any Person shall be effective under this Indenture or the Notes unless and until such Note has been registered in the name of such Person. Nothing in this Section 2.12(a)(i) shall prohibit or render ineffective any transfer of a beneficial interest in a Global Note effected in accordance with the other provisions of this Section 2.12(a).

(ii) *Restrictions on Transfer of a Beneficial Interest in a Global Note for a Certificated Note.* A beneficial interest in a Global Note may not be exchanged for a Certificated Note except upon satisfaction of the requirements set forth below. Upon receipt by the Trustee of a transfer of a beneficial interest in a Global Note in accordance with Applicable Procedures for a Certificated Note in the form satisfactory to the Trustee, together with:

(a) so long as the Notes are Restricted Notes, certification, in the form set forth in Exhibit B-1;

(b) written instructions to the Trustee to make, or direct the Registrar to make, an adjustment on its books and records with respect to such Global Note to reflect a decrease in the aggregate principal amount of the Notes represented by the Global Note, such instructions to contain information regarding the Depositary account to be credited with such decrease; and

16

(c) if the Company or Registrar so requests, an opinion of counsel or other evidence reasonably satisfactory to them as to the compliance with the restrictions set forth in the Legend,

then the Trustee shall cause, or direct the Registrar to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Registrar, the aggregate principal amount of Notes represented by the Global Note to be decreased by the aggregate principal amount of the Certificated Note to be issued, shall issue such Certificated Note and shall debit or cause to be debited to the account of the Person specified in such instructions a beneficial interest in the Global Note equal to the principal amount of the Certificated Note so issued.

(iii) *Transfer and Exchange of Certificated Notes.* When Certificated Notes are presented to the Registrar with a request:

(x) to register the transfer of such Certificated Notes; or

(y) to exchange such Certificated Notes for an equal principal amount of Certificated Notes of other authorized denominations,

the Registrar shall register the transfer or make the exchange as requested if its reasonable requirements for such transaction are met; provided, however, that the Certificated Notes surrendered for transfer or exchange:

(a) shall be duly endorsed or accompanied by a written instrument of transfer in form reasonably satisfactory to the Company and the Registrar, duly executed by the Holder thereof or his attorney duly authorized in writing; and

(b) so long as such Notes are Restricted Notes, such Notes are being transferred or exchanged pursuant to an effective registration statement under the Securities Act or pursuant to clause (A), (B) or (C) below, and are accompanied by the following additional information and documents, as applicable:

(A) if such Certificated Notes are being delivered to the Registrar by a Holder for registration in the name of such Holder, without transfer, a certification from such Holder to that effect; or

(B) if such Certificated Notes are being transferred to the Company, a certification to that effect; or

(C) if such Certificated Notes are being transferred pursuant to an exemption from registration, (i) a certification to that effect (in the form set forth in Exhibits B-1, if applicable) and (ii) if the Company or Registrar so requests, an opinion of counsel or other evidence reasonably satisfactory to them as to the compliance with the restrictions set forth in the Legend.

(iv) *Restrictions on Transfer of a Certificated Note for a Beneficial Interest in a Global Note.* A Certificated Note may not be exchanged for a beneficial interest in a Global Note except upon satisfaction of the requirements set forth below.

Upon receipt by the Trustee of a Certificated Note, duly endorsed or accompanied by appropriate instruments of transfer, in form reasonably satisfactory to the Trustee, together with:

(a) so long as the Notes are Restricted Notes, certification, in the form set forth in Exhibit B-1, that such Certificated Note is being transferred to a QIB in accordance with Rule 144A; and

(b) written instructions directing the Trustee to make, or to direct the Registrar to make, an adjustment on its books and records with respect to such Global Note to reflect an

17

increase in the aggregate principal amount of the Notes represented by the Global Note, such instructions to contain information regarding the Depositary account to be credited with such increase, then the Trustee shall cancel such Certificated Note and cause, or direct the Registrar to cause, in accordance with the standing instructions and procedures existing between the Depositary and the Registrar, the aggregate principal amount of Notes represented by the Global Note to be increased by the aggregate principal amount of the Certificated Note to be exchanged, and shall credit

or cause to be credited to the account of the Person specified in such instructions a beneficial interest in the Global Note equal to the principal amount of the Certificated Note so cancelled. If no Global Notes are then outstanding, the Company shall issue and the Trustee shall authenticate, upon written order of the Company in the form of an Officers' Certificate, a new Global Note in the appropriate principal amount.

(b) Subject to the succeeding paragraph, every Note shall be subject to the restrictions on transfer provided in the Legend including the delivery of an opinion of counsel, if so provided. Whenever any Restricted Note is presented or surrendered for registration of transfer or for exchange for a Note registered in a name other than that of the Holder, such Note must be accompanied by a certificate in substantially the form set forth in Exhibit B-1, dated the date of such surrender and signed by the Holder of such Note, as to compliance with such restrictions on transfer. The Registrar shall not be required to accept for such registration of transfer or exchange any Note not so accompanied by a properly completed certificate.

(c) The restrictions imposed by the Legend upon the transferability of any Note shall cease and terminate when such Note has been sold pursuant to an effective registration statement under the Securities Act or transferred in compliance with Rule 144 under the Securities Act (or any successor provision thereto) or, if earlier, upon the expiration of the holding period applicable to sales thereof under Rule 144(k) under the Securities Act (or any successor provision). Any Note as to which such restrictions on transfer shall have expired in accordance with their terms or shall have terminated may, upon a surrender of such Note for exchange to the Registrar in accordance with the provisions of this Section 2.12 (accompanied, in the event that such restrictions on transfer have terminated by reason of a transfer in compliance with Rule 144 or any successor provision, by an opinion of counsel having substantial experience in practice under the Securities Act and otherwise reasonably acceptable to the Company, addressed to the Company and in form acceptable to the Company, to the effect that the transfer of such Note has been made in compliance with Rule 144 or such successor provision), be exchanged for a new Note, of like tenor and aggregate principal amount, which shall not bear the restrictive Legend. The Company shall inform the Trustee of the effective date of any registration statement registering the Notes under the Securities Act. The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among DTC participants, members or beneficial owners in any Global Note) other than to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by, the terms of this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof. The Trustee shall not be liable for any action taken or omitted to be taken by it in good faith in accordance with the aforementioned opinion of counsel or registration statement.

(d) In the event that Rule 144(k) as promulgated under the Securities Act is amended to shorten the two-year restriction period, then restrictions on transfer on the Notes and the Common Stock will be deemed to refer to the shortened restriction period. The Company undertakes to inform the Trustee if such change to Rule 144(k) occurs and the effect (if any) to the restrictions on transfer applicable to the Notes and Common Stock and shall provide additional information (including an Opinion of Counsel and/or an Officers' Certificate) if so requested by the Trustee.

18

(e) As used in the preceding two paragraphs of this Section 2.12, the term "transfer" encompasses any sale, pledge, transfer, hypothecation or other disposition of any Note.

(f) The provisions of clauses (1), (2), (3) and (4) below shall apply only to Global Notes:

(1) Notwithstanding any other provisions of this Indenture or the Notes, except as provided in Section 2.12 (a)(i), a Global Note shall not be exchanged in whole or in part for a Note registered in the name of any Person other than the Depositary or one or more nominees thereof, provided that a Global Note may be exchanged for Notes registered in the names of any person designated by the Depositary in the event that

(i) the Depositary has notified the Company that it is unwilling or unable to continue as Depositary for such Global Note or such Depositary has ceased to be a "clearing agency" registered under the Exchange Act, and a successor Depositary is not appointed by the Company within 90 days or (ii) an Event of Default has occurred and is continuing with respect to the Notes. Any Global Note exchanged pursuant to clause (i) above shall be so exchanged in whole and not in part, and any Global Note exchanged pursuant to clause (ii) above may be exchanged in whole or from time to time in part as directed by the Depositary. Any Note issued in exchange for a Global Note or any portion thereof shall be a Global Note; provided that any such Note so issued that is registered in the name of a Person other than the Depositary or a nominee thereof shall not be a Global Note.

(2) Notes issued in exchange for a Global Note or any portion thereof shall be issued in definitive, fully registered form, without interest coupons, shall have an aggregate principal amount equal to that of such Global Note or portion thereof to be so exchanged, shall be registered in such names and be in such authorized denominations as the Depositary shall designate and shall bear the applicable legends provided for herein. Any Global Note to be exchanged in whole shall be surrendered by the Depositary to the Trustee, as Registrar. With regard to any Global Note to be exchanged in part, either such Global Note shall be so surrendered for exchange or, if the Trustee is acting as custodian for the Depositary or its nominee with respect to such Global Note, the principal amount thereof shall be reduced, by an amount equal to the portion thereof to be so exchanged, by means of an appropriate adjustment made on the records of the Trustee. Upon any such surrender or adjustment, the Trustee shall authenticate and deliver the Note issuable on such exchange to or upon the order of the Depositary or an authorized representative thereof.

(3) Subject to the provisions of clause (5) below, the registered Holder may grant proxies and otherwise authorize any Person, including Agent Members (as defined below) and persons that may hold interests through Agent Members, to take any action which a holder is entitled to take under this Indenture or the Notes.

(4) In the event of the occurrence of any of the events specified in clause (1) above, the Company will promptly make available to the Trustee a reasonable supply of Certificated Notes in definitive, fully registered form, without interest coupons.

(5) Neither any members of, or participants in, the Depositary (collectively, the "Agent Members") nor any other Persons on whose behalf Agent Members may act shall have any rights under this Indenture with respect to any Global Note registered in the name of the Depositary or any nominee thereof, or under any such Global Note, and the Depositary or such nominee, as the case may be, may be treated by the Company, the Trustee and any agent of the Company or the Trustee as the absolute owner and holder of such Global Note for all purposes whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Company, the Trustee or any agent of the Company or the Trustee from giving effect to any written certification, proxy or other authorization furnished by the Depositary or such nominee, as the case may be, or impair, as between the Depositary, its Agent Members and any other person on whose behalf an Agent Member may act, the operation of customary practices of such Persons governing the exercise of the rights of a holder of any Note.

19

SECTION 2.13 *CUSIP Numbers.* The Company in issuing the Notes may use "CUSIP" numbers and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Notes or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Notes, and any such redemption shall not be affected by any defect in or omission of such numbers. The Company will promptly notify the Trustee of any change in the CUSIP numbers.

SECTION 2.14 *Defaulted Interest.* If the Company defaults in a payment of interest on the Notes, it shall pay, or shall deposit with the Paying Agent money in immediately available funds sufficient to pay, the defaulted interest,

plus (to the extent lawful) any interest payable on the defaulted interest, to the Persons who are Holders on a subsequent special record date. A special record date, as used in this Section 2.14 with respect to the payment of any defaulted interest, shall mean the 15th day next preceding the date fixed by the Company for the payment of defaulted interest, whether or not such day is a Business Day. At least 15 days before the subsequent special record date, the Company shall mail to each Holder and to the Trustee a notice that states the subsequent special record date, the payment date and the amount of defaulted interest to be paid.

SECTION 2.15 *Registration Default.*  The interest rate borne by the Notes shall be increased upon a Registration Default (as defined in the Registration Rights Agreement) as provided in the Notes. If a Registration Default occurs, the Company shall deliver to the Trustee an Officers' Certificate stating (1) the increase in the Interest Rate, (2) when such increase is effective and (3) when such additional interest is payable. Unless and until a Responsible Officer of the Trustee receives such an Officer's Certificate, the Trustee shall assume there has been no increase in the Interest Rate.

20

---

## ARTICLE 3

### REDEMPTION AND PURCHASES

SECTION 3.01  [Reserved].

SECTION 3.02 *Optional Redemption.*  The Notes are not redeemable prior to October 15, 2004. On and after October 15, 2004, the Company may, at its option, redeem the Notes in whole at any time or in part from time to time, on any date prior to Stated Maturity, upon notice as set forth in Section 3.05, at the redemption price (expressed as percentages of the principal amount) set forth in the table below:

| Period | Redemption Price |
|---|---|
| October 15, 2004 through October 14, 2005 | 103.00% |
| October 15, 2005 through October 14, 2006 | 102.25 |
| October 15, 2006 through October 14, 2007 | 101.50 |
| Thereafter | 100.75 |

(the "Optional Redemption Price"), plus any interest accrued but not paid prior to (but not including) the Optional Redemption Date.

SECTION 3.03 *Notice of Trustee.*  If the Company elects to redeem Notes pursuant to the redemption provisions of Section 3.02 hereof, it shall notify the Trustee at least 30 days prior but not more than 60 days prior to the Redemption Date of such intended Redemption Date, the principal amount of Notes to be redeemed and the CUSIP numbers of the Notes to be redeemed.

SECTION 3.04 *Selection of Notes to be Redeemed.*  If fewer than all the Notes are to be redeemed, the Trustee shall select the particular Notes to be redeemed from the outstanding Notes by a method that complies with the requirements of any exchange on which the Notes are listed, or, if the Notes are not listed on an exchange, on a pro rata basis or by lot or in accordance with any other method the Trustee considers fair and appropriate. Notes and portions thereof that the Trustee selects shall be in principal amounts equal to $1,000 or any whole multiple thereof.

If any Note selected for partial redemption is converted in part before termination of the conversion right with respect to the portion of the Note so selected, the converted portion of such Note shall be deemed to be the portion selected for redemption (provided, however, that the Holder of such Note so converted and deemed redeemed shall

not be entitled to any additional interest payment as a result of such deemed redemption than such Holder would have otherwise been entitled to receive upon conversion of such Note). Notes which have been converted during a selection of Notes to be redeemed may be treated by the Trustee as outstanding for the purpose of such selection.

The Trustee shall promptly notify the Company and the Registrar in writing of the Notes selected for redemption and, in the case of any Notes selected for partial redemption, the principal amount thereof to be redeemed.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to the redemption of Notes shall relate, in the case of any Notes redeemed or to be redeemed only in part, to the portion of the principal amount of such Notes which has been or is to be redeemed.

SECTION 3.05 *Notice of Redemption.*  Notice of redemption shall be given in the manner provided in Section 13.02 hereof to the Holders of Notes to be redeemed. Such notice shall be given not less than 20 nor more than 60 days prior to the Redemption Date for redemption pursuant to Section 3.02.

21

All notices of redemption shall state:

(1) the Redemption Date;

(2) the Redemption Price and interest accrued and unpaid to, but not including, the Redemption Date, if any;

(3) whether the Redemption Price will be payable in cash or Common Stock or a combination thereof (if the Company elects to make such payment with a combination of cash and Common Stock, such notice shall provide the proportion of cash and Common Stock) pursuant to the formula set forth in Section 3.10(a) hereof;

(4) if fewer than all the outstanding Notes are to be redeemed, the aggregate principal amount of Notes to be redeemed and the aggregate principal amount of Notes which will be outstanding after such partial redemption;

(5) that on the Redemption Date the Redemption Price and interest accrued and unpaid to, but not including, the Redemption Date, if any, will become due and payable upon each such Note to be redeemed, and that interest thereon shall cease to accrue on and after such date;

(6) the Conversion Price, the date on which the right to convert the principal of the Notes to be redeemed will terminate and the places where such Notes may be surrendered for conversion;

(7) the place or places where such Notes are to be surrendered for payment of the Redemption Price and accrued and unpaid interest, if any; and

(8) the CUSIP number of the Notes.

The notice given shall specify the last date on which exchanges or transfers of Notes may be made pursuant to Section 2.06 hereof, and shall specify the serial numbers of Notes and the portions thereof called for redemption.

Notice of redemption of Notes to be redeemed at the election of the Company shall be given by the Company.

SECTION 3.06 *Effect of Notice of Redemption.*  Notice of redemption having been given as provided in

Section 3.05 hereof, the Notes so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price therein specified and from and after such date (unless the Company shall default in the payment of the Redemption Price and accrued and unpaid interest) such Notes shall cease to bear interest. Upon surrender of any such Note for redemption in accordance with such notice, such Note shall be paid by the Company at the Redemption Price plus accrued and unpaid interest, if any, to, but not including, the Redemption Date; provided, however, that the installments of interest on Notes whose Stated Maturity is prior to or on the Redemption Date shall be payable to the Holders of such Notes, or one or more predecessor Notes, registered as such on the relevant Record Date according to their terms and the provisions of Section 2.01 hereof.

If any Note called for redemption shall not be so paid upon surrender thereof for redemption, the principal and premium, if any, shall, until paid, bear interest from the Redemption Date at the Interest Rate.

SECTION 3.07 *Deposit of Redemption Price.* Prior to or on any Redemption Date, the Company shall deposit with the Trustee or with a Paying Agent an amount of money sufficient to pay the Redemption Price of all the Notes to be redeemed on that Redemption Date, other than any Notes called for redemption on that date which have been converted prior to the date of such deposit, and accrued and unpaid interest, if any, on such Notes.

If any Note called for redemption is converted, any money deposited with the Trustee or with a Paying Agent or so segregated and held in trust for the redemption of such Note shall (subject to any

22

right of the Holder of such Note or any predecessor Note to receive interest as provided in Section 4.01 hereof) be paid to the Company on Company Request or, if then held by the Company, shall be discharged from such trust.

SECTION 3.08 *Notes Redeemed in Part.* Any Note which is to be redeemed only in part shall be surrendered at an office or agency of the Company designated for that purpose pursuant to Section 4.05 hereof (with, if the Company or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Company and the Trustee duly executed by, the Holder thereof or the Holder's attorney duly authorized in writing), and the Company shall execute, and the Trustee shall authenticate and deliver to the Holder of such Note without service charge, a new Note or Notes of any authorized denomination as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Note so surrendered.

SECTION 3.09 *Conversion Arrangement on Call for Redemption.* In connection with any redemption of Notes, the Company may arrange for the purchase and conversion of any Notes called for redemption by an agreement with one or more investment banks or other purchasers to purchase such Notes by paying to the Trustee in trust for the Noteholders, on or prior to 11:00 a.m. New York City time on the Redemption Date, an amount that, together with any amounts deposited with the Trustee by the Company for the redemption of such Notes, is not less than the Redemption Price of such Notes. Notwithstanding anything to the contrary contained in this Article 3, the obligation of the Company to pay the Redemption Price of such Notes shall be deemed to be satisfied and discharged to the extent such amount is so paid by such purchasers. If such an agreement is entered into, any Notes not duly surrendered for conversion by the Holders thereof may, at the option of the Company, be deemed, to the fullest extent permitted by law, acquired by such purchasers from such Holders and (notwithstanding anything to the contrary contained in Article 10) surrendered by such purchasers for conversion, all as of immediately prior to the close of business on the Redemption Date, subject to payment of the above amount as aforesaid. The Trustee shall hold and pay to the Holders whose Notes are selected for redemption any such amount paid to it for purchase and conversion in the same manner as it would moneys deposited with it by the Company for the redemption of Notes. Without the Trustee's prior written consent, no arrangement between the Company and such purchasers for the purchase and conversion of any Notes shall increase or otherwise affect any of the powers, duties, responsibilities or obligations of the Trustee as set forth in this Indenture, and the Company agrees to indemnify the Trustee from, and hold it harmless against, any loss, liability or expense arising out of or in connection with any such arrangement for the purchase and conversion of any Notes between the Company and such purchasers, including the costs and expenses incurred by the Trustee in the defense of any claim or liability arising out of or in connection with the

exercise or performance of any of its powers, duties, responsibilities or obligations under this Indenture, except to the extent such loss, liability, expense or cost results from Trustee's gross negligence or willful misconduct.

SECTION 3.10 *Repurchase of Notes at Option of the Holder upon Change in Control.*

(a) If there shall have occurred a Change in Control, all or any portion of the Notes of any Holder equal to $1,000 or a whole multiple of $1,000, not previously called for redemption, shall be repurchased by the Company, at the option of such Holder, at a repurchase price equal to 100% of the principal amount of the Notes to be repurchased, together with interest accrued and unpaid to, but excluding, the repurchase date (the "Change in Control Repurchase Price"), on the date (the "Change in Control Repurchase Date") that is 45 Business Days after the Change in Control Repurchase Notice; provided, however, that installments of interest on Notes whose Stated Maturity is prior to or on the Change in Control Repurchase Date shall be payable to the Holders of such Notes, or one or more predecessor Notes, registered as such on the relevant Regular Record Date according to their terms.

23

Subject to the fulfillment by the Company of the conditions set forth in Section 3.10(b) hereof, the Company may elect to pay the Change in Control Repurchase Price (to the extent not paid in cash) by delivering the number of shares of Common Stock equal to (i) the Change in Control Repurchase Price divided by (ii) 95% of the average of the Closing Prices per share of Common Stock for the five consecutive Trading Days immediately preceding and including the third Trading Day prior to the Change in Control Repurchase Date.

Whenever in this Indenture (including Sections 2.01, 6.01(a) and 6.07 hereof) or Exhibit A-1 annexed hereto there is a reference, in any context, to the principal of any Note as of any time, such reference shall be deemed to include reference to the Change in Control Repurchase Price payable in respect to such Note to the extent that such Change in Control Repurchase Price is, was or would be so payable at such time, and express mention of the Change in Control Repurchase Price in any provision of this Indenture shall not be construed as excluding the Change in Control Repurchase Price in those provisions of this Indenture when such express mention is not made; provided, however, that, for the purposes of Article 11 hereof, such reference shall be deemed to include reference to the Change in Control Repurchase Price only to the extent the Change in Control Repurchase Price is payable in cash or Common Stock or a combination thereof.

A "Change in Control" of the Company shall be deemed to have occurred at such time after the original issuance of Notes as any of the following events shall occur:

(i) the acquisition by any person, including any syndicate or group deemed to be a "person" under Section 13(d)(3) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), of beneficial ownership, directly or indirectly, through a purchase, merger or other acquisition transaction or series of transactions, of shares of the Capital Stock of the Company entitling that person to exercise 50% or more of the total voting power of all shares of such Capital Stock entitled to vote generally in elections of directors, other than any acquisition by the Company, any of its Subsidiaries or any employee benefit plans of the Company; or

(ii) any consolidation or merger of the Company with or into any other person, any merger of another person into the Company, or any conveyance, transfer, sale, lease or other disposition of all or substantially all of the Company's properties and assets to another person, other than:

(A) any transaction (1) that does not result in any reclassification, conversion, exchange or cancellation of outstanding shares of the Capital Stock of the Company and (2) pursuant to which holders of the Capital Stock of the Company immediately prior to the transaction are entitled to exercise, directly or indirectly, 50% or more of the total voting power of all shares of the Capital Stock of the Company entitled to vote generally in the election of directors of the continuing or surviving person immediately after the transaction; or

(B) any merger solely for the purpose of changing the Company's jurisdiction of incorporation and resulting in a reclassification, conversion or exchange of outstanding shares of Common Stock solely into shares of Common Stock of the surviving entity,

(iii) during any consecutive two-year period, individuals who at the beginning of that two-year period constituted the Board of Directors (together with any new directors whose election to the Board of Directors, or whose nomination for election by the shareholders of the Company, was approved by a vote of a majority of the directors then still in office who were either directors at the beginning of such period or whose election or nomination for election were previously so approved) cease for any reason to constitute a majority of the Board of Directors then in office; or

(iv) the Company is liquidated or dissolved or a resolution is passed by the Company's stockholders approving a plan of liquidation or dissolution of the Company other than in a transaction which complies with the provisions described in Article 5 of the Indenture.

24

Beneficial ownership shall be determined in accordance with Rule 13d-3 promulgated by the SEC under the Exchange Act. The term "person" shall include any syndicate or group that would be deemed to be a "person" under Section 13(d)(3) of the Exchange Act.

(b) The following are conditions to the Company's election to pay for the Change in Control Repurchase Price in Common Stock:

(i) The shares of Common Stock to be issued upon repurchase of Notes hereunder:

(A) shall not require registration under any federal securities law before such shares may be freely transferable without being subject to any transfer restrictions under the Securities Act upon repurchase or, if such registration is required, such registration shall be completed and shall become effective prior to the Change in Control Repurchase Date; and

(B) shall not require registration with, or approval of, any governmental authority under any state law or any other federal law before shares may be validly issued or delivered upon repurchase or if such registration is required or such approval must be obtained, such registration shall be completed or such approval shall be obtained prior to the Change in Control Repurchase Date.

(ii) The shares of Common Stock to be listed upon repurchase of Notes hereunder are, or shall have been, approved for listing on the Nasdaq National Market or the New York Stock Exchange or listed on another national securities exchange, in any case, prior to the Change in Control Repurchase Date.

(iii) All shares of Common Stock which may be issued upon repurchase of Notes will be issued out of the Company's authorized but unissued Common Stock and will, upon issue, be duly and validly issued and fully paid and nonassessable and free of any preemptive or similar rights.

(iv) If any of the conditions set forth in clauses (i) through (iii) of this Section 3.08(b) are not satisfied in accordance with the terms thereof, the Change in Control Repurchase Price shall be paid by the Company only in cash.

(c) Unless the Company shall have theretofore called for redemption all of the outstanding Notes, prior to or on the 30th day after the occurrence of a Change in Control, the Company, or, at the written request and expense of the Company prior to or on the 30th day after such occurrence, the Trustee, shall give to all Noteholders, in the manner provided in Section 13.02 hereof, notice of the occurrence of the Change in Control and of the repurchase right set

forth herein arising as a result thereof. The Company shall also deliver a copy of such notice of a repurchase right to the Trustee. The notice shall include a form of Change in Control Repurchase Notice (as defined in Section 3.10(d)) to be completed by the Noteholder and shall state:

    (1) briefly, the events causing a Change in Control and the date of such Change in Control;

    (2) the date by which the Change in Control Repurchase Notice pursuant to this Section 3.10 must be given;

    (3) the Change in Control Repurchase Date;

    (4) the Change in Control Repurchase Price;

    (5) the name and address of the Paying Agent and the Conversion Agent;

    (6) the Conversion Price and any adjustments thereto;

    (7) that Notes as to which a Change in Control Repurchase Notice has been given may be converted pursuant to Article 10 hereof only if the Change in Control Repurchase Notice has been withdrawn in accordance with the terms of this Indenture;

25

    (8) that Notes must be surrendered to the Paying Agent to collect payment;

    (9) that the Change in Control Repurchase Price for any Note as to which a Change in Control Repurchase Notice has been duly given and not withdrawn will be paid promptly following the later of the Change in Control Repurchase Date and the time of surrender of such Note as described in (8) above;

    (10) briefly, the procedures the Holder must follow to exercise rights under this Section 3.08;

    (11) briefly, the conversion rights of the Notes;

    (12) the procedures for withdrawing a Change in Control Repurchase Notice;

    (13) that, unless the Company defaults in making payment of such Redemption Price, interest on Notes called for redemption will cease to accrue on and after the Redemption Date;

    (14) the CUSIP number of the Notes; and

    (15) whether the Change of Control Repurchase Price shall be paid by the Company in cash or by delivery of shares of Common Stock or a combination thereof, and if a combination thereof, such notice shall provide the proportion of cash and Common Stock.

  (d) A Holder may exercise its rights specified in Section 3.10(a) hereof upon delivery of a written notice of purchase (a "Change in Control Repurchase Notice") to the Paying Agent on or prior to the 30th day after the date of the Company's notice pursuant to 3.10(c) above, stating:

    (1) the certificate number of the Note which the Holder will deliver to be purchased;

(2) the portion of the principal amount of the Note which the Holder will deliver to be purchased, which portion must be $1,000 or any whole multiple thereof; and

(3) that such Note shall be purchased pursuant to the terms and conditions specified in paragraph 6 on the reverse side of the Notes.

The delivery of such Note to the Paying Agent prior to, on or after the Change in Control Repurchase Date (together with all necessary endorsements) at the offices of the Paying Agent shall be a condition to the receipt by the Holder of the Change in Control Repurchase Price therefor; provided, however, that such Change in Control Repurchase Price shall be so paid pursuant to this Section 3.10 only if the Note so delivered to the Paying Agent shall conform in all respects to the description thereof set forth in the related Change in Control Repurchase Notice.

The Company shall purchase from the Holder thereof, pursuant to this Section 3.10, a portion of a Note if the principal amount of such portion is $1,000 or an integral multiple of $1,000. Provisions of this Indenture that apply to the purchase of all of a Note also apply to the purchase of such portion of such Note.

Any purchase by the Company contemplated pursuant to the provisions of this Section 3.10 shall be consummated by the delivery of the consideration to be received by the Holder promptly following the later of the Change in Control Repurchase Date and the time of delivery of the Note to the Paying Agent in accordance with this Section 3.10.

Notwithstanding anything herein to the contrary, any Holder delivering to the Paying Agent the Change in Control Repurchase Notice contemplated by this Section 3.10(d) shall have the right to withdraw such Change in Control Repurchase Notice at any time prior to the close of business on the Change in Control Repurchase Date by delivery of a written notice of withdrawal to the Paying Agent in accordance with Section 3.11.

The Paying Agent shall promptly notify the Company of the receipt by it of any Change in Control Repurchase Notice or written withdrawal thereof.

26

SECTION 3.11 *Effect of Change in Control Repurchase Notice.*  Upon receipt by the Paying Agent of the Change in Control Repurchase Notice specified in Section 3.10(d), the Holder of the Note in respect of which such Change in Control Repurchase Notice was given shall (unless such Change in Control Repurchase Notice is withdrawn as specified in the following two paragraphs) thereafter be entitled to receive solely the Change in Control Repurchase Price with respect to such Note. Such Change in Control Repurchase Price shall be paid to such Holder, subject to receipt of consideration for the Notes and/or Notes from the Holders by the Paying Agent, promptly following the later of (x) the Change in Control Repurchase Date with respect to such Note (provided the conditions in Section 3.10(d) have been satisfied) and (y) the time of delivery of such Note to the Paying Agent by the Holder thereof in the manner required by Section 3.10(d). Notes in respect of which a Change in Control Repurchase Notice, has been given by the Holder thereof may not be converted pursuant to Article 10 hereof on or after the date of the delivery of such Change in Control Repurchase Notice unless such Change in Control Repurchase Notice has first been validly withdrawn as specified in the following two paragraphs.

A Change in Control Repurchase Notice may be withdrawn by means of a written notice of withdrawal delivered to the office of the Paying Agent in accordance with the Change in Control Repurchase Notice at any time prior to the close of business on the Change in Control Repurchase Date specifying:

(1) the certificate number of the Note in respect of which such notice of withdrawal is being submitted,

(2) the principal amount of the Note with respect to which such notice of withdrawal is being submitted, and

(3) the principal amount, if any, of such Note which remains subject to the original Change in Control Repurchase Notice and which has been or will be delivered for purchase by the Company.

There shall be no repurchase of any Notes pursuant to Section 3.10 if there has occurred (prior to, on or after, as the case may be, the giving, by the Holders of such Notes, of the required Change in Control Repurchase Notice) and is continuing an Event of Default (other than a default in the payment of the Change in Control Repurchase Price with respect to such Notes). The Paying Agent will promptly return to the respective Holders thereof any Notes (x) with respect to which a Change in Control Repurchase Notice has been withdrawn in compliance with this Indenture, or (y) held by it during the continuance of an Event of Default (other than a default in the payment of the Change in Control Repurchase Price with respect to such Notes) in which case, upon such return, the Change in Control Repurchase Notice with respect thereto shall be deemed to have been withdrawn.

SECTION 3.12 *Deposit of Change in Control Repurchase Price.* Prior to 11:00 a.m. (New York City time) on the Business Day following the Change in Control Repurchase Date the Company shall deposit with the Trustee or with the Paying Agent (or, if the Company or a Subsidiary or an Affiliate of either of them is acting as the Paying Agent, shall segregate and hold in trust as provided in Section 2.04) an amount of money (in immediately available funds if deposited on such Business Day) or Common Stock, or a combination thereof, if permitted hereunder, sufficient to pay the aggregate Change in Control Repurchase Price of all the Notes or portions thereof which are to be purchased as of the Change in Control Repurchase Date.

SECTION 3.13 *Notes Purchased in Part.* Any Note which is to be purchased only in part shall be surrendered at the office of the Paying Agent (with, if the Company or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Company and the Trustee duly executed by, the Holder thereof or such Holder's attorney duly authorized in writing) and the Company shall execute and the Trustee shall authenticate and deliver to the Holder of such Note,

27

without service charge, a new Note or Notes, of any authorized denomination as requested by such Holder in aggregate principal amount equal to, and in exchange for, the portion of the principal amount of the Note so surrendered which is not purchased.

SECTION 3.14 *Covenant to Comply with Securities Laws upon Purchase of Notes.* In connection with any offer to purchase or repurchase of Notes under Section 3.10 hereof (provided that such offer or purchase constitutes an "issuer tender offer" for purposes of Rule 13e-4 (which term, as used herein, includes any successor provision thereto) under the Exchange Act at the time of such offer or purchase), the Company shall (i) comply with Rule 13e-4, Rule 14e-1 and any other tender offer rules under the Exchange Act which may then be applicable, (ii) file the related Schedule TO (or any successor schedule, form or report) or any other schedule required under the Exchange Act, and (iii) otherwise comply with all federal and state securities laws so as to permit the rights and obligations under Section 3.10 to be exercised in the time and in the manner specified in Section 3.10.

SECTION 3.15 *Repayment to the Company.* The Trustee and the Paying Agent shall return to the Company any cash or shares of Common Stock that remain unclaimed as provided in paragraph 12 of the Notes, together with interest or dividends, if any, thereon, held by them for the payment of the Change in Control Repurchase Price; provided, however, that to the extent that the aggregate amount of cash or shares of Common Stock deposited by the Company pursuant to Section 3.12 exceeds the aggregate Change in Control Repurchase Price of the Notes or portions thereof which the Company is obligated to purchase as of the Change in Control Repurchase Date then promptly after the Business Day following the Change in Control Repurchase Date the Trustee shall return any such excess to the Company together with interest or dividends, if any, thereon.

**ARTICLE 4**

# COVENANTS

SECTION 4.01 *Payment of Principal, Premium, Interest on the Notes.* The Company will duly and punctually pay the principal of and premium, if any, and interest at the Interest Rate in respect of the Notes in accordance with the terms of the Notes and this Indenture. The Company will deposit or cause to be deposited with the Trustee as directed by the Trustee, no later than 11:00 a.m., New York time on the day of the Stated Maturity of any Note or installment of interest, all payments so due. Principal amount, Redemption Price, Change in Control Repurchase Price, and cash interest shall be considered paid on the applicable date due if at 11:00 a.m., New York time on such date (or, in the case of a Change in Control Repurchase Price on the Business Day following the applicable Change in Control Repurchase Date) the Trustee or the Paying Agent holds, in accordance with this Indenture, money or Notes, if permitted hereunder, sufficient to pay all such amounts then due.

The Company shall, to the extent permitted by law, pay cash interest on overdue amounts at the rate per annum set forth in paragraph 1 on the reverse side of the Notes, compounded semiannually, which interest shall accrue from the date such overdue amount was originally due to the date payment of such amount, including interest thereon, has been made or duly provided for. All such overdue interest shall be payable on demand.

SECTION 4.02 *SEC and Other Reports.* The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may by rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to have been subject to such reporting requirements. The Company also shall comply with the other provisions of TIA Section 314(a).

28

---

SECTION 4.03 *Compliance Certificate.* The Company shall deliver to the Trustee within 120 days after the end of each fiscal year of the Company (beginning with the fiscal year ending on April 30, 2002) an Officers' Certificate, stating whether or not to the best knowledge of the signers thereof the Company is in default in the performance and observance of any of the terms, provisions and conditions of this Indenture (without regard to any period of grace or requirement of notice provided hereunder) and if the Company shall be in default, specifying all such defaults and the nature and status thereof of which they may have knowledge.

SECTION 4.04 *Further Instruments and Acts.* Upon request of the Trustee, the Company will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purposes of this Indenture.

SECTION 4.05 *Maintenance of Office or Agency.* The Company will maintain in The Borough of Manhattan, the City of New York, an office or agency of the Trustee, Registrar, Paying Agent and Conversion Agent where Notes may be presented or surrendered for payment, where Notes may be surrendered for registration of transfer, exchange, purchase, redemption or conversion and where notices and demands to or upon the Company in respect of the Notes and this Indenture may be served. The office of U.S. Bank Trust National Association, located at 100 Wall Street, 16th Floor, New York, New York, 10005, attention: Corporate Trust Administration, shall initially be such office or agency for all of the aforesaid purposes. The Company shall give prompt written notice to the Trustee of the location, and of any change in the location, of any such office or agency (other than a change in the location of the office of the Trustee). If at any time the Company shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the address of the Trustee set forth in Section 13.02.

The Company may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such designations;

provided, however, that no such designation or rescission shall in any manner relieve the Company of its obligation to maintain an office or agency in the Borough of Manhattan, the City of New York, for such purposes.

SECTION 4.06 *Delivery of Certain Information.*  At any time when the Company is not subject to Section 13 or 15(d) of the Exchange Act, upon the request of a holder or any beneficial holder of Notes or shares of Common Stock issued upon conversion thereof, the Company will promptly furnish or cause to be furnished Rule 144A Information (as defined below) to such Holder or any beneficial holder of Notes or holder of shares of Common Stock issued upon conversion of Notes, or to a prospective purchaser of any such security designated by any such holder, as the case may be, to the extent required to permit compliance by such Holder or holder with Rule 144A under the Securities Act in connection with the resale of any such security. "Rule 144A Information" shall be such information as is specified pursuant to Rule 144A(d)(4) under the Securities Act.

# ARTICLE 5

## SUCCESSOR CORPORATION

SECTION 5.01 *When Company May Merge or Transfer Assets.*  The Company shall not consolidate with, merge with or into any other person or convey, transfer or lease its properties and assets substantially as an entirety to any person, unless:

(a) either (1) the Company shall be the continuing corporation or (2) the person (if other than the Company) formed by such consolidation or into which the Company is merged or the person which acquires by conveyance, transfer or lease the properties and assets of the Company substantially as an entirety (i) shall be organized and validly existing under the laws of the United

29

States and (ii) shall expressly assume, by an indenture supplemental hereto, executed and delivered to the Trustee, in form reasonably satisfactory to the Trustee, all of the obligations of the Company under the Notes and this Indenture;

(b) at the time of such transaction, no Event of Default and no event which, after notice or lapse of time, would become an Event of Default, shall have happened and be continuing; and

(c) the Company shall have delivered to the Trustee an Officers' Certificate and an Opinion of Counsel, each stating that such consolidation, merger, conveyance, transfer or lease and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture, comply with this Article 5 and that all conditions precedent herein provided for relating to such transaction have been satisfied.

For purposes of the foregoing, the transfer (by lease, assignment, sale or otherwise) of the properties and assets of one or more Subsidiaries (other than to the Company or another Subsidiary), which, if such assets were owned by the Company, would constitute all or substantially all of the properties and assets of the Company, shall be deemed to be the transfer of all or substantially all of the properties and assets of the Company.

The successor person formed by such consolidation or into which the Company is merged or the successor person to which such conveyance, transfer or lease is made shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor had been named as the Company herein; and thereafter, except in the case of a lease and obligations the Company may have under a supplemental indenture pursuant to Section 10.11, the Company shall be discharged from all obligations and covenants under this Indenture and the Notes. Subject to Section 9.06, the Company, the Trustee and the successor person shall enter into a supplemental indenture to evidence the succession and substitution of such successor person and such discharge and release of the Company.

30

## ARTICLE 6

### DEFAULTS AND REMEDIES

SECTION 6.01 *Events of Default.* An "Event of Default" occurs if:

(1) the Company fails to pay when due the principal of or premium, if any, on any of the Notes at maturity, upon redemption or exercise of a repurchase right or otherwise, whether or not such payment is prohibited by Article 11 of this Indenture;

(2) the Company fails to pay an installment of interest (including liquidated damages, if any) on any of the Notes that continues for 30 days after the date when due, whether or not such payment is prohibited by Article 11 of this Indenture; provided that a failure to make any of the first six scheduled interest payments on the Notes on the applicable interest payment dates will constitute an event of default with no grace period or cure period;

(3) the Company fails to deliver shares of Common Stock, together with cash in lieu of fractional shares, when such Common Stock or cash in lieu of fractional shares is required to be delivered upon conversion of a Note and such failure continues for 10 days after such delivery date;

(4) the Company fails to perform or observe any other term, covenant or agreement contained in the Notes or this Indenture for a period of 60 days after receipt by the Company of a Notice of Default (as defined in this Section 6.01);

(5) (A) one or more defaults in the payment of principal of or premium, if any, on any of the Company's Indebtedness aggregating $5.0 million or more, when the same becomes due and payable at the scheduled maturity thereof, and such default or defaults shall have continued after any applicable grace period and shall not have been cured or waived within a 30-day period after the date of a Notice of Default or (B) any of the Company's Indebtedness aggregating $5.0 million or more shall have been accelerated or otherwise declared due and payable, or required to be prepaid or repurchased (other than by regularly scheduled required prepayment) prior to the scheduled maturity thereof and such acceleration is not rescinded or annulled within a 30-day period after a Notice of Default;

(6) the Company, or any Significant Subsidiary, or any Subsidiaries of the Company which in the aggregate would constitute a Significant Subsidiary pursuant to or under or within the meaning of any Bankruptcy Law:

(A) commences a voluntary case or proceeding;

(B) consents to the entry of an order for relief against it in an involuntary case or proceeding or the commencement of any case against it;

(C) consents to the appointment of a Custodian of it or for any substantial part of its property;

(D) makes a general assignment for the benefit of its creditors;

(E) files a petition in bankruptcy or answer or consent seeking reorganization or relief; or

(F) consents to the filing of such a petition or the appointment of or taking possession by a

Custodian; or

_____

(7) a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(A) is for relief against the Company or any Significant Subsidiary or any Subsidiaries of the Company which in the aggregate would constitute a Significant Subsidiary in an involuntary case or proceeding, or adjudicates the Company or any Significant Subsidiary or any Subsidiaries of the Company which in the aggregate would constitute a Significant Subsidiary insolvent or bankrupt;

(B) appoints a Custodian of the Company or any Significant Subsidiary or any Subsidiaries of the Company which in the aggregate would constitute a Significant Subsidiary or for any substantial part of its or their properties; or

(C) orders the winding up or liquidation of the Company or any Significant Subsidiary or any Subsidiaries of the Company which in the aggregate would constitute a Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 days.

"Bankruptcy Law" means Title 11, United States Code, or any similar federal or state law for the relief of debtors.

"Custodian" means any receiver, trustee, assignee, liquidator, custodian or similar official under any Bankruptcy Law; or

(8) the Pledge Agreement shall cease to be in full force and effect or enforceable other than in accordance with its terms.

A Default under clause (4) or (5) above is not an Event of Default until the Trustee notifies the Company, or the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding notify the Company and the Trustee, of the Default and the Company does not cure such Default (and such Default is not waived) within the time specified in clause (4) or (5) above after actual receipt of such notice. Any such notice must specify the Default, demand that it be remedied and state that such notice is a "Notice of Default".

The Company will deliver to the Trustee, within five Business Days of becoming aware of the occurrence of an Event of Default, written notice thereof. In addition, the Company shall deliver to the Trustee, within 30 days after it becomes aware of the occurrence thereof, written notice of any event which with the lapse of time would become an Event of Default under clause (4) or (5) above, its status and what action the Company is taking or proposes to take with respect thereto.

SECTION 6.02 *Acceleration.* If an Event of Default (other than an Event of Default specified in Section 6.01(6) or (7)) occurs and is continuing, the Trustee by notice to the Company, or the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding by notice to the Company and the Trustee, may declare the Notes due and payable at their principal amount together with accrued interest. Upon a declaration of acceleration, such principal and accrued and unpaid interest to the date of payment shall be immediately due and payable.

If an Event of Default specified in Section 6.01(6) or (7) above occurs and is continuing, then the principal and the interest on all the Notes shall become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Noteholders.

The Holders of a majority in aggregate principal amount of the Notes at the time outstanding, by notice to the

Trustee (and without notice to any other Noteholder) may rescind or annul an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default have been cured or waived except nonpayment of the principal and any accrued cash interest that have become due solely as a result of acceleration and if all amounts due to

32

the Trustee under Section 7.06 have been paid. No such rescission shall affect any subsequent Default or impair any right consequent thereto.

SECTION 6.03 *Other Remedies.* If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of the principal, the premium, if any, and any accrued cash interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if the Trustee does not possess any of the Notes or produce any of the Notes in the proceeding. A delay or omission by the Trustee or any Noteholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of, or acquiescence in, the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.

SECTION 6.04 *Waiver of Past Defaults.* The Holders of a majority in aggregate principal amount of the Notes at the time outstanding, by notice to the Trustee (and without notice to any other Noteholder), may waive an existing Default and its consequences except (1) an Event of Default described in Section 6.01(1) or (2), (2) a Default in respect of a provision that under Section 9.02 cannot be amended without the consent of each Noteholder affected or (3) a Default which constitutes a failure to convert any Note in accordance with the terms of Article 10. When a Default is waived, it is deemed cured, but no such waiver shall extend to any subsequent or other Default or impair any consequent right. This Section 6.04 shall be in lieu of Section 316(a)1(B) of the TIA and such Section 316(a)1 (B) is hereby expressly excluded from this Indenture, as permitted by the TIA.

SECTION 6.05 *Control by Majority.* The Holders of a majority in aggregate principal amount of the Notes at the time outstanding may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture or that the Trustee determines in good faith is unduly prejudicial to the rights of other Noteholders or would involve the Trustee in personal liability unless the Trustee is offered indemnity reasonably satisfactory to it against loss, liability or expense. This Section 6.05 shall be in lieu of Section 316(a)1(A) of the TIA and such Section 316(a)1(A) is hereby expressly excluded from this Indenture, as permitted by the TIA.

SECTION 6.06 *Limitation on Suits.* A Noteholder may not pursue any remedy with respect to this Indenture or the Notes unless:

(1) the Holder gives to the Trustee written notice stating that an Event of Default is continuing;

(2) the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding make a written request to the Trustee to pursue the remedy;

(3) such Holder or Holders offer to the Trustee reasonable security or indemnity satisfactory to the Trustee against any loss, liability or expense;

(4) the Trustee does not comply with the request within 60 days after receipt of such notice, request and offer of security or indemnity; and

(5) the Holders of a majority in aggregate principal amount of the Notes at the time outstanding do not

give the Trustee a direction inconsistent with the request during such 60-day period.

A Noteholder may not use this Indenture to prejudice the rights of any other Noteholder or to obtain a preference or priority over any other Noteholder.

33

SECTION 6.07 *Rights of Holders to Receive Payment.* Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of the principal amount, premium, if any, plus Redemption Price, Change in Control Repurchase Price or any accrued cash interest in respect of the Notes held by such Holder, on or after the respective due dates expressed in the Notes or any Redemption Date, and to convert the Notes in accordance with Article 10, or to bring suit for the enforcement of any such payment on or after such respective dates or the right to convert, shall not be impaired or affected adversely without the consent of such Holder.

SECTION 6.08 *Collection Suit by Trustee.* If an Event of Default described in Section 6.01(1) or (2) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company for the whole amount owing with respect to the Notes and the amounts provided for in Section 7.06.

SECTION 6.09 *Trustee May File Proofs of Claim.* In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to the Company or any other obligor upon the Notes or the property of the Company or of such other obligor or their creditors, the Trustee (irrespective of whether the principal amount, Redemption Price, Change in Control Repurchase Price or any accrued cash interest in respect of the Notes shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made any demand on the Company for the payment of any such amount) shall be entitled and empowered, by intervention in such proceeding or otherwise,

(a) to file and prove a claim for the whole amount of the principal amount, Redemption Price, Change in Control Repurchase Price or any accrued cash interest and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel or any other amounts due the Trustee under Section 7.06) and of the Holders allowed in such judicial proceeding, and

(b) to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any custodian, receiver, assignee, trustee, liquidator, sequestrator or similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay the Trustee any amount due it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 7.06.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

SECTION 6.10 *Priorities.* If the Trustee collects any money pursuant to this Article 6, it shall pay out the money in the following order:

(1) to the Trustee for amounts due under Section 7.06;