# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FINISAR CORPORATION, a Delaware )
corporation,                    )
                                )
                                )
               Plaintiff,       ) Case No.
                                )
         vs.                    ) 5:07-CV-04052
                                ) -JF (PVT)
U.S. BANK TRUST NATIONAL ASSOCIATION, a )
national banking association, not in its )
individual capacity, but solely in its )
capacity as Indenture Trustee on behalf )
of all Holders of Finisar Corporation's 5 )
1/4% Convertible Subordinated Notes due )
2008, 2 1/2% Convertible Senior )
Subordinated Notes due 2010, and 2 1/2% )
Convertible Subordinated Notes due 2010, )
and DOES 1 through 10, inclusive, )
                                )
                                )
               Defendants.      )
                                )
                                )

30(B)(6) DEPOSITION OF DIANA JACOBS
March 26, 2008
Seattle, Washington

Reported by:
Connie Recob, CCR, RMR, CRR, CLR
CCR No. 2631                                                    CERTIFIED
Job No. Los Angeles 927362/Seattle 79041                        COPY

ef6a3ca5-017e-4a7d-a34c-46b550795a6f

```
                         APPEARANCES


     For the Plaintiff:

                    STERLING A. BRENNAN
                    Workman Nydegger
                    1000 Eagle Gate Tower
                    60 East South Temple
                    Salt Lake City, Utah  84111
                    (801) 533-9800
                    (801) 328-1707 Fax
                    sbrennan@wnlaw.com

                    SHAILA RUPAREL
                    Assistant General Counsel for Finisar
                    1389 Moffett Park Drive
                    Sunnyvale, California  94089
                    (408) 548-1000
                    (408) 400-1162 Fax
                    shaila.ruparel@finisar.com


     For the Defendants:

                    EDWARD T. WAHL
                    Faegre & Benson LLP
                    Suite 2200
                    90 South Seventh Street
                    Minneapolis, Minnesota  55402-3901
                    (612) 766-7000
                    (612) 766-1600 Fax
                    ewahl@faegre.com
```

1  Q.  And what holder was that?

2         MR. WAHL:  I'm going to object to the

3  form of the question.  You're calling for confidential

4  information that we're perfectly willing to provide subject

5  to the confidentiality agreement, but at this point she's not

6  going to disclose.

7         MR. BRENNAN:  What's the confidential

8  nature of the holder of the note?

9         MR. WAHL:  The identity of the holders

10 pursuant to bank policy aren't disclosed in settings like

11 this without a confidentiality agreement in place.

12        MR. BRENNAN:  What do you mean by "bank

13 policy"?

14        MR. WAHL:  It's what the bank's practice

15 is.

16        MR. BRENNAN:  Is there any law that

17 supports the refusal to disclose the identity of a holder in

18 litigation such as this?

19        MR. WAHL:  I don't know if Gremlich

20 Bliley (phonetic) would cover that or not.  Happy to talk to

21 you about -- as long as it's not privileged, about some of

22 the demographics of the holder and some of the content of the

23 conversation.  All the content would not be privileged, but

24 we need to have an understanding that that's subject to an

25 agreement.

1  Q. (BY MR. BRENNAN) Well, tell me everything that you will tell
2     me about the identity of this holder.
3              MR. WAHL: I'm going to object to the
4     form of the question.
5              MR. BRENNAN: Well, you said
6     demographics.
7              MR. WAHL: Why don't you ask some
8     questions.
9              MR. BRENNAN: Well, I have asked a
10    question, but you've apparently objected.
11             MR. WAHL: You asked who it is.
12             MR. BRENNAN: Right.
13             MR. WAHL: You can ask some specific
14    questions: How much do they hold? That kind of thing we're
15    happy to talk about.
16 Q. (BY MR. BRENNAN) Let's try that.
17    This holder that contacted you, is it an entity or an
18    individual?
19 A. It is an -- it is an individual representing an entity.
20 Q. And is the individual the holder or is it the entity that's
21    the holder?
22 A. It is the entity that is the holder.
23 Q. And this holder, does it -- is it a holder of all three of
24    the Finisar series of notes or just one series?
25 A. The holder represents that he holds -- the entity holds one

1      series.
2  Q.  Is that the 5-1/4?
3  A.  No.
4  Q.  2-1/2 senior?
5  A.  This is -- we've gotten some verification forms from two
6      noteholders. This particular noteholder we have not gotten
7      verification, so I'm hesitant to say because it's only him
8      saying.
9  Q.  And what percentage of either the 2-1/2 senior or 2-1/2 notes
10     does this purported holder hold?
11 A.  Given that he hasn't provided a noteholder verification with
12     his exact holdings, I can only tell you that he has
13     represented that he is a large holder, but I don't know the
14     dollar amount.
15              MR. WAHL: I'm sorry. You said large?
16              THE WITNESS: Yeah, holds a large
17     percentage. He's one of the three that has not -- that I
18     don't know the amount.
19              MR. BRENNAN: I'll tell you what, Ned.
20     We'll agree, subject to the subject to the entry of a formal
21     protective order, not to make any use of the identity of the
22     holder outside this litigation and that we'll not disclose
23     the identity of the holder beyond persons of my law firm and
24     persons at Finisar.
25              MR. WAHL: Let's go off the record a

MR. BRENNAN: My only concern is if we don't reach an agreement, where are we?

MR. WAHL: Then we go to the Court. But I think if we don't reach an agreement on this anyway and you move to compel, you go to the Court. I think we'll be able to work something out.

MR. BRENNAN: Okay. I'll agree to that.

MR. WAHL: Okay. So let's make sure that we have stated it formally.

For purposes of this deposition today, Ms. Jacobs will disclose the name of the three holders -- names of the three holders whose identities she knows. You and your client will agree to hold them confidential within your organizations and they will not be used for any other purpose until we have a formal protective order along the lines that we have discussed before that is customary in such litigation. And we will pledge to work on that promptly, recognizing you're traveling and I'm traveling over the next few days.

MR. BRENNAN: Yes. The addition I'd make there is if we don't have agreement on those terms within ten business days, then either party will be free to go to the Court and seek relief.

MR. WAHL: Let's look at the next ten days. I'm going to see my father-in-law Friday morning when I'm back. We're in New York Monday and Tuesday. You're in

1
2   A.
3   Q.                **REDACTED - CONFIDENTIAL**
4
5
6
7
8
9
10
11  Q.
12  A.
13  Q.
14
15  A.
16
17  Q.
18
19  A.  Yes.
20  Q.  And what was discussed during that call?
21              MR. WAHL:  Again let me caution the
22  witness to describe the call in generalities without
23  compromising the attorney/client privilege.
24              THE WITNESS:  Generally, we discussed the
25  status of the litigation and strategy.

```
 1   Q.   (BY MR. BRENNAN) Is that all you're going to disclose to me
 2        regarding what was discussed during that call?
 3   A.   Yes.
 4   Q.   Let's turn next to the November 13, 2007, call. Who were the
 5        parties to that call?
 6   A.   I believe that call was then -- well, the parties I just
 7        REDACTED - CONFIDENTIAL
 8   Q.   REDACTED - CONFIDENTIAL
 9        you don't recall the name of?
10   A.   Right.
11   Q.   And what was discussed during that call?
12              MR. WAHL:  Again I'll caution the witness
13        not to disclose the attorney/client privilege or disclose
14        information that would violate the privilege, but to describe
15        the topic in general terms.
16              THE WITNESS:  The topic in general terms
17        was the status of the litigation and strategy.
18   Q.   (BY MR. BRENNAN) Can you tell me any more about what was
19        discussed during those calls?
20   A.   That's it.
21   Q.   You know, I didn't ask that very well.
22        Will you tell me any more about the status -- or excuse
23        me -- what was discussed during those calls?
24   A.   No.
25   Q.   Okay. Let's go to the December 11, 2007, call. Who were the
```

```
 1         parties to that call?
 2    A.   All the same parties.
 3    Q.   As the November 13, 2007?
 4    A.   Yes.
 5    Q.   And what was discussed during that call?
 6              MR. WAHL:  My instruction remains the
 7         same.
 8              THE WITNESS:  Litigation update and
 9         strategy.
10    Q.   (BY MR. BRENNAN) Will you tell me any more about that call?
11    A.   No.
12    Q.   Let's turn to the January 14th, 2008, call.  Who are the
13         parties to that call?
14    A.   All the same parties as the previous two.
15    Q.   What was discussed during that call?
16              MR. WAHL:  I reiterate my objection and
17         instruction.
18              THE WITNESS:  Strategy and the lit --
19         update on the litigation.
20    Q.   (BY MR. BRENNAN) Can you tell me any more about that call?
21    A.   No.
22    Q.   Let's go to January 30, 2008.  Who are the parties to that
23         call?
24    A.   All the same parties as the previous three.
25    Q.   What was discussed?
```

Diana Jacobs  CONFIDENTIAL  Page 132
March 26, 2008

1   MR. WAHL: My objection and
2   reiteration -- and instruction are reiterated, rather.
3   THE WITNESS: Aside from the E and E that
4   we discussed, it was strategy and status of the litigation.
5  Q. (BY MR. BRENNAN) Will you tell me any more about what was
6   discussed during that call?
7  A. No.
8  Q. Let's go to February 19th, 2008. Who are the parties to that
9   call?
10 A. All the same parties.
11 Q. What was discussed?
12  MR. WAHL: I reiterate my objection and
13  instruction.
14  THE WITNESS: Update on the status of the
15  litigation and strategy.
16 Q. (BY MR. BRENNAN) Will you tell me any more about what was
17  discussed?
18 A. No.
19 Q. That brings us to the March 11, 2008, call. Who were the
20  parties to that call?
21 A. They were all the same parties.
22 Q. What was discussed?
23  MR. WAHL: I reiterate my objection and
24  instruction.
25  THE WITNESS: Strategy and update on the

1   status of the litigation.

2   Q.  (BY MR. BRENNAN) Will you tell me any more about what was

3       discussed?

4   A.  No.

5   Q.  Other than these telephone conference calls, was there any

6       other form of communications with the holders other than the

7       series of notices that I've shown and had marked as exhibits

8       today? I think those are the April 2007 and the January 11,

9       2008, notices.

10  A.  So you're asking me other than the notices and our calls, was

11      there any other communication?

12  Q.  Right.

13  A.  **CONTENT OF RESPONSE REDACTED AS**

14      **CONFIDENTIAL**

15

16

17  Q.      **REDACTED - CONFIDENTIAL**

18

19

20  A.

21

22

23  Q.

24

25  A.