# EXHIBIT 2

Diana Jacobs                    CONFIDENTIAL                    Page 1
                                                              March 26, 2008

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

---

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation, ) ) ) ) Plaintiff, ) ) vs. ) ) U.S. BANK TRUST NATIONAL ASSOCIATION, a ) national banking association, not in its ) individual capacity, but solely in its ) capacity as Indenture Trustee on behalf ) of all Holders of Finisar Corporation's 5 ) 1/4% Convertible Subordinated Notes due ) 2008, 2 1/2% Convertible Senior ) Subordinated Notes due 2010, and 2 1/2% ) Convertible Subordinated Notes due 2010, ) and DOES 1 through 10, inclusive, ) ) ) Defendants. ) ) ) | Case No. 5:07-CV-04052 -JF (PVT) |

---

30(B)(6) DEPOSITION OF DIANA JACOBS
March 26, 2008
Seattle, Washington

Reported by:
Connie Recob, CCR, RMR, CRR, CLR
CCR No. 2631
Job No. Los Angeles 927362/Seattle 79041

CERTIFIED COPY

ef6a3ca5-017e-4a7d-a34c-46b550795a6f

```
 1                          APPEARANCES

 2

 3    For the Plaintiff:

 4              STERLING A. BRENNAN
                Workman Nydegger
 5              1000 Eagle Gate Tower
                60 East South Temple
 6              Salt Lake City, Utah   84111
                (801) 533-9800
 7              (801) 328-1707 Fax
                sbrennan@wnlaw.com
 8
                SHAILA RUPAREL
 9              Assistant General Counsel for Finisar
                1389 Moffett Park Drive
10              Sunnyvale, California   94089
                (408) 548-1000
11              (408) 400-1162 Fax
                shaila.ruparel@finisar.com
12

13    For the Defendants:

14              EDWARD T. WAHL
                Faegre & Benson LLP
15              Suite 2200
                90 South Seventh Street
16              Minneapolis, Minnesota   55402-3901
                (612) 766-7000
17              (612) 766-1600 Fax
                ewahl@faegre.com
18

19

20

21

22

23

24

25
```

ef6a3ca5-017e-4a7d-a34c-46b550795a

1   Q.  And what holder was that?

2           MR. WAHL:  I'm going to object to the

3   form of the question.  You're calling for confidential

4   information that we're perfectly willing to provide subject

5   to the confidentiality agreement, but at this point she's not

6   going to disclose.

7           MR. BRENNAN:  What's the confidential

8   nature of the holder of the note?

9           MR. WAHL:  The identity of the holders

10  pursuant to bank policy aren't disclosed in settings like

11  this without a confidentiality agreement in place.

12          MR. BRENNAN:  What do you mean by "bank

13  policy"?

14          MR. WAHL:  It's what the bank's practice

15  is.

16          MR. BRENNAN:  Is there any law that

17  supports the refusal to disclose the identity of a holder in

18  litigation such as this?

19          MR. WAHL:  I don't know if Gremlich

20  Bliley (phonetic) would cover that or not.  Happy to talk to

21  you about -- as long as it's not privileged, about some of

22  the demographics of the holder and some of the content of the

23  conversation.  All the content would not be privileged, but

24  we need to have an understanding that that's subject to an

25  agreement.

1  Q.  (BY MR. BRENNAN) Well, tell me everything that you will tell
2      me about the identity of this holder.
3              MR. WAHL:  I'm going to object to the
4      form of the question.
5              MR. BRENNAN:  Well, you said
6      demographics.
7              MR. WAHL:  Why don't you ask some
8      questions.
9              MR. BRENNAN:  Well, I have asked a
10     question, but you've apparently objected.
11             MR. WAHL:  You asked who it is.
12             MR. BRENNAN:  Right.
13             MR. WAHL:  You can ask some specific
14     questions:  How much do they hold?  That kind of thing we're
15     happy to talk about.
16 Q.  (BY MR. BRENNAN) Let's try that.
17     This holder that contacted you, is it an entity or an
18     individual?
19 A.  It is an -- it is an individual representing an entity.
20 Q.  And is the individual the holder or is it the entity that's
21     the holder?
22 A.  It is the entity that is the holder.
23 Q.  And this holder, does it -- is it a holder of all three of
24     the Finisar series of notes or just one series?
25 A.  The holder represents that he holds -- the entity holds one

1       series.
2  Q.   Is that the 5-1/4?
3  A.   No.
4  Q.   2-1/2 senior?
5  A.   This is -- we've gotten some verification forms from two
6       noteholders.  This particular noteholder we have not gotten
7       verification, so I'm hesitant to say because it's only him
8       saying.
9  Q.   And what percentage of either the 2-1/2 senior or 2-1/2 notes
10      does this purported holder hold?
11 A.   Given that he hasn't provided a noteholder verification with
12      his exact holdings, I can only tell you that he has
13      represented that he is a large holder, but I don't know the
14      dollar amount.
15              MR. WAHL:  I'm sorry.  You said large?
16              THE WITNESS:  Yeah, holds a large
17      percentage.  He's one of the three that has not -- that I
18      don't know the amount.
19              MR. BRENNAN:  I'll tell you what, Ned.
20      We'll agree, subject to the subject to the entry of a formal
21      protective order, not to make any use of the identity of the
22      holder outside this litigation and that we'll not disclose
23      the identity of the holder beyond persons of my law firm and
24      persons at Finisar.
25              MR. WAHL:  Let's go off the record a

1    MR. BRENNAN:  My only concern is if we
2  don't reach an agreement, where are we?
3    MR. WAHL:  Then we go to the Court.  But
4  I think if we don't reach an agreement on this anyway and you
5  move to compel, you go to the Court.  I think we'll be able
6  to work something out.
7    MR. BRENNAN:  Okay.  I'll agree to that.
8    MR. WAHL:  Okay.  So let's make sure that
9  we have stated it formally.
10   For purposes of this deposition today, Ms. Jacobs will
11 disclose the name of the three holders -- names of the three
12 holders whose identities she knows.  You and your client will
13 agree to hold them confidential within your organizations and
14 they will not be used for any other purpose until we have a
15 formal protective order along the lines that we have
16 discussed before that is customary in such litigation.  And
17 we will pledge to work on that promptly, recognizing you're
18 traveling and I'm traveling over the next few days.
19   MR. BRENNAN:  Yes.  The addition I'd make
20 there is if we don't have agreement on those terms within ten
21 business days, then either party will be free to go to the
22 Court and seek relief.
23   MR. WAHL:  Let's look at the next ten
24 days.  I'm going to see my father-in-law Friday morning when
25 I'm back.  We're in New York Monday and Tuesday.  You're in

2   A.
3   Q.         **REDACTED - CONFIDENTIAL**
4
5
6
7
8
9
10
11  Q.
12  A.
13  Q.
14
15  A.
16
17  Q.
18
19  A.  Yes.
20  Q.  And what was discussed during that call?
21              MR. WAHL:  Again let me caution the
22  witness to describe the call in generalities without
23  compromising the attorney/client privilege.
24              THE WITNESS:  Generally, we discussed the
25  status of the litigation and strategy.

1  Q.  (BY MR. BRENNAN) Is that all you're going to disclose to me
2      regarding what was discussed during that call?
3  A.  Yes.
4  Q.  Let's turn next to the November 13, 2007, call. Who were the
5      parties to that call?
6  A.  I believe that call was then -- well, the parties I just
7      **REDACTED - CONFIDENTIAL**
8  Q.  **REDACTED - CONFIDENTIAL**
9      you don't recall the name of?
10 A.  Right.
11 Q.  And what was discussed during that call?
12         MR. WAHL: Again I'll caution the witness
13     not to disclose the attorney/client privilege or disclose
14     information that would violate the privilege, but to describe
15     the topic in general terms.
16         THE WITNESS: The topic in general terms
17     was the status of the litigation and strategy.
18 Q.  (BY MR. BRENNAN) Can you tell me any more about what was
19     discussed during those calls?
20 A.  That's it.
21 Q.  You know, I didn't ask that very well.
22         Will you tell me any more about the status -- or excuse
23     me -- what was discussed during those calls?
24 A.  No.
25 Q.  Okay. Let's go to the December 11, 2007, call. Who were the

1   parties to that call?
2   A. All the same parties.
3   Q. As the November 13, 2007?
4   A. Yes.
5   Q. And what was discussed during that call?
6              MR. WAHL: My instruction remains the
7   same.
8              THE WITNESS: Litigation update and
9   strategy.
10  Q. (BY MR. BRENNAN) Will you tell me any more about that call?
11  A. No.
12  Q. Let's turn to the January 14th, 2008, call. Who are the
13  parties to that call?
14  A. All the same parties as the previous two.
15  Q. What was discussed during that call?
16             MR. WAHL: I reiterate my objection and
17  instruction.
18             THE WITNESS: Strategy and the lit --
19  update on the litigation.
20  Q. (BY MR. BRENNAN) Can you tell me any more about that call?
21  A. No.
22  Q. Let's go to January 30, 2008. Who are the parties to that
23  call?
24  A. All the same parties as the previous three.
25  Q. What was discussed?

1   　　　　　MR. WAHL:  My objection and
2   reiteration -- and instruction are reiterated, rather.
3   　　　　　THE WITNESS:  Aside from the E and E that
4   we discussed, it was strategy and status of the litigation.
5   Q.   (BY MR. BRENNAN) Will you tell me any more about what was
6   discussed during that call?
7   A.   No.
8   Q.   Let's go to February 19th, 2008.  Who are the parties to that
9   call?
10  A.   All the same parties.
11  Q.   What was discussed?
12  　　　　　MR. WAHL:  I reiterate my objection and
13  instruction.
14  　　　　　THE WITNESS:  Update on the status of the
15  litigation and strategy.
16  Q.   (BY MR. BRENNAN) Will you tell me any more about what was
17  discussed?
18  A.   No.
19  Q.   That brings us to the March 11, 2008, call.  Who were the
20  parties to that call?
21  A.   They were all the same parties.
22  Q.   What was discussed?
23  　　　　　MR. WAHL:  I reiterate my objection and
24  instruction.
25  　　　　　THE WITNESS:  Strategy and update on the

Diana Jacobs  CONFIDENTIAL  Page 133
March 26, 2008

1  status of the litigation.

2  Q. (BY MR. BRENNAN) Will you tell me any more about what was
3  discussed?

4  A. No.

5  Q. Other than these telephone conference calls, was there any
6  other form of communications with the holders other than the
7  series of notices that I've shown and had marked as exhibits
8  today? I think those are the April 2007 and the January 11,
9  2008, notices.

10 A. So you're asking me other than the notices and our calls, was
11 there any other communication?

12 Q. Right.

13 A. **CONTENT OF RESPONSE REDACTED AS**
14 **CONFIDENTIAL**

15

16

17 Q. **REDACTED - CONFIDENTIAL**

18

19

20 A.

21

22

23 Q.

24

25 A.