Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (Admitted *Pro Hac Vice*; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone:  (801) 533-9800
Facsimile:  (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone:  (408) 291-6200
Facsimile:  (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee in behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants<br><br>AND RELATED COUNTERCLAIMS. | Case No. 5:07-CV-04052-JF (PVT)<br><br>**PLAINTIFF FINISAR CORPORATION'S REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR SANCTIONS**<br><br>Date:　　**Tuesday, June 17, 2008**<br>Time:　　**10:00 a.m.**<br>Courtroom:　**5 (Magistrate Judge Trumbull)**<br><br>District Judge:　　Hon. Jeremy Fogel<br>Magistrate Judge:　Hon. Patricia V. Trumbull<br><br>Complaint Filed:　June 22, 2007<br>Trial Date Set:　　None Yet |

**TABLE OF CONTENTS**

PAGE(S)

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT .................................................................................................................... 2

    A. U.S. Bank Has Admitted that Governing Authority Limits the Common Interest Doctrine to Communications Between Counsel. ....................................................... 2

    B. U.S. Bank's Argument Mischaracterizes the Trustee-Noteholder Relationship and the Common Interest Doctrine. ............................................................................. 3

        1. The Trustee Does Not Function as the Noteholders' Attorney. ........................... 3

        2. Protecting Communications Between the Trustee and the Noteholders Would Not Serve the Purposes of the Attorney-Client Privilege. ................................... 5

        3. The Purpose of the Common Interest Doctrine Is to Foster the Coordination of Legal Strategies by Represented Parties. ............................................................ 6

    C. U.S. Bank Has Not Met its Burden to Prove that the Communications Were Made in Confidence. .......................................................................................................... 7

    D. U.S. Bank's Authorities Are Inapposite. ................................................................. 7

    E. Finisar's Motion for Sanctions Should Be Granted. ............................................... 8

III. CONCLUSION ................................................................................................................. 9

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Cavallaro v. United States,*
  153 F. Supp. 2d 52 (D. Mass. 2001) .................................................................................. 2

*Fisher v. United States,*
  425 U.S. 391, 96 S. Ct. 1569 (1976) .................................................................................. 5

*In re Imperial Corporation of America,*
  167 F.R.D. 447 (S.D. Cal. 1995) ........................................................................................ 6

*In re Teleglobe Communications. Corp.,*
  493 F.3d 345 (3d Cir. 2007) ....................................................................................... 2, 6, 8

*Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.,*
  212 F.R.D. 567 (E.D. Cal. 2002) ........................................................................................ 6

*Murray v. U.S. Bank Trust National Association,*
  365 F.3d 1284 (11th Cir. 2004) .......................................................................................... 4

*National Cable Television Assocation, Inc. v. American Cinema Eds., Inc.,*
  937 F.2d 1572 (Fed. Cir. 1991) .......................................................................................... 8

*Pauk v. Board of Trustees of City University of New York,*
  654 F.2d 856 (2d Cir. 1981) ............................................................................................... 8

*U.S. Bank National Association v. APP International Finance Co.,*
  823 N.Y.S.2d 361 (1st Dept. 2006) .................................................................................... 7

*U.S. Bank National Association v. U.S. Timberlands Klamath Falls, L.L.C.,*
  2005 WL 2037353 (Del. Ch. Aug. 16, 2005) ..................................................................... 7

*United States v. LeCroy,*
  348 F. Supp. 2d 375 (E.D. Pa. 2004) .................................................................................. 7

*United States v. Martin,*
  278 F.3d 988 (9th Cir. 2002) .............................................................................................. 7

*United States v. Nixon,*
  418 U.S. 683, 94 S. Ct. 3090 (1974) .................................................................................. 5

*United States v. Stepney,*
  246 F. Supp. 2d 1069 (N.D. Cal. 2001) ............................................................................. 6

**Statutes/Rules**

Delaware Rule of Evidence 502 ................................................................................................. 2

**Other Authorities**

Restatement (Third) of Law Governing Lawyers § 20 ............................................................. 5

Restatement (Third) of Law Governing Lawyers § 21 ............................................................. 4

Finisar[1] respectfully offers the following points and authorities in *reply* to "U.S. Bank Trust National Association's Response to Plaintiff Finisar Corporation's Motion: (1) to Compel Production of Documents; (2) to Compel Deposition Testimony; (3) for Additional Time to Complete Deposition; and (4) for Monetary Discovery Sanctions" (the "Opposition"). U.S. Bank's Opposition responds to both Finisar's Motion to Compel and its Motion for Sanctions. In the instant memorandum, Finisar herein follows suit, presenting its reply arguments pertaining to both Motions.

## I.   PRELIMINARY STATEMENT

By its Motion to Compel, Finisar seeks production of certain documents and deposition testimony. After putting Finisar to the expense of bringing its Motion, U.S. Bank produced some of the requested documents, but continues to withhold all of the subject testimony (and several of the documents), claiming that they are privileged.

According to U.S. Bank, "communications among the Trustee, its counsel, and the Noteholders" are protected from disclosure by "the common interest privilege." (Opp. at 2:2-3.) Specifically, U.S. Bank claims privilege for all communications (1) "between the Trustee and its counsel" made in the presence of the Noteholders, (2) "from the Noteholders jointly to the Trustee and its counsel," and (3) "between the Trustee and Noteholders not involving counsel, but . . . disclos[ing] the advice of counsel." (Opp. at 7:19-21, 5:25-26, 8:5-6.) U.S. Bank also claims privilege for communications made to the Noteholders either by U.S. Bank's counsel or by U.S. Bank in the presence of its counsel. (*See, e.g.,* Mot. Compel, Sched. "A" at 13:12-23, 17:11-19.) Although U.S. Bank chastises Finisar for attributing to U.S. Bank "the blanket assertion 'that its communications with the Noteholders are subject to . . . privilege,'" (Opp. at 7:20-21,) by its own characterizations U.S. Bank *is* claiming privilege for all communications to which U.S. Bank, its counsel, and the Noteholders were party or privy, as well as all communications between U.S. Bank and the Noteholders that disclosed any advice of counsel.

---

[1] Terms with initial capitals defined in "Plaintiff Finisar Corporation's Motion to: (1) Compel Production of Documents; (2) Compel Deposition Testimony; and (3) for Additional Time to Complete Deposition" are used herein with the same signification.

As Finisar demonstrated in its opening brief, no privilege attaches to any of the communications at issue because the common interest doctrine reaches only "communication[s] . . . shared with the *attorney* of the member of the community of interest." *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 364 (3d Cir. 2007). Because the communications at issue were shared with the unrepresented Noteholders rather than counsel representing them, the community of interest doctrine simply does not apply. *See id.*; *Cavallaro v. United States*, 153 F. Supp. 2d 52, 61 (D. Mass. 2001) ("Under the strict confines of the common-interest doctrine, the lack of representation for the remaining parties vitiates any claim to privilege."). The communications also are not privileged because they were not made in confidence.

U.S. Bank's arguments to the contrary are unpersuasive. First, authority that U.S. Bank itself endorses expressly limits the common interest doctrine to communications made to counsel for represented parties. Second, U.S. Bank's arguments to the contrary rest on coordinate mischaracterizations of its relationship with the Noteholders and of the common interest doctrine, which inaccurately analogize them to the attorney-client relationship and the attorney-client privilege. Third, instead of meeting its burden to prove that the communications at issue were made in confidence, U.S. Bank improperly tries to disavow it. Finally, U.S. Bank's supposedly contrary authorities are in fact inapposite.

## II.  ARGUMENT

### A.  U.S. Bank Has Admitted that Governing Authority Limits the Common Interest Doctrine to Communications Between Counsel.

U.S. Bank insists "that Delaware's law of attorney-client and common interest privilege, as codified in Delaware Rule of Evidence 502(b), tracks the federal common law." (Opp. at 10:12-14). That Rule codifies the common interest doctrine as follows:

> A client has a privilege to refuse to disclose . . . confidential communications . . . (3) . . . to a lawyer or a representative of a lawyer representing another in a matter of common interest.[1]

---

[1] In full, Delaware Rule of Evidence 502(b) provides: "**(b) General rule of privilege.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or

Thus, under what U.S. Bank itself characterizes as governing authority, the common interest doctrine is limited to communications made "to a lawyer" or his representative, and does not reach communications among parties.

### B. U.S. Bank's Argument Mischaracterizes the Trustee-Noteholder Relationship and the Common Interest Doctrine.

Despite its embrace of contrary authority, U.S. Bank argues that the absence of Noteholder counsel should be overlooked because "[a]s indenture trustee for the Noteholders, U.S. Bank must communicate with its constituents about legal strategy without fear of disclosure to adverse parties." (Opp. at 5:18-19.) That formulation closely tracks what might accurately have been said if U.S. Bank instead served as the Noteholders' counsel: "as attorney (rather than indenture trustee) for the Noteholders, U.S. Bank must communicate with its clients (rather than constituents) about legal strategy without fear of disclosure." The parallel is revealing but not fortuitous. Essentially, U.S. Bank argues that its communications with the Noteholders should be protected because its relationship to the Noteholders is like an attorney-client relationship, and the common interest doctrine is like the attorney-client privilege. Both comparisons are incorrect.

#### 1. The Trustee Does Not Function as the Noteholders' Attorney.

According to U.S. Bank, the Indentures create a "special relationship" between it and the Noteholders. (Opp. at 11:26-27.) To this relationship, U.S. Bank attributes incidents more properly ascribed to an attorney-client relationship: "As indenture trustee . . . . the Trustee has a fiduciary obligation to act in the Noteholders' best interests" (Opp. at 2:14, 18-19); "the Noteholders . . . act through the Trustee" (Opp. at 9:4-5); "the Indentures . . . authorized the Noteholders to give direction to the Trustee" (Opp. at 8:14-15). However, the relationship actually created by the Indentures is something very different.

According to Section 7.01 of the Indentures, headed "Duties and Responsibilities of the Trustee":

> The Trustee, prior to the occurrence of an Event of Default . . . undertakes to perform . . . only such duties as are specifically set forth in this

---

a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client."

FINISAR'S REPLY IN SUPPORT OF MOTIONS TO COMPEL AND FOR SANCTIONS    3.    CASE NO.: 5:07-CV-04052-JF-PVT

> Indenture. In case an Event of Default hereunder has occurred . . . the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(Decl. Edward T. Wahl Supp. U.S. Bank Trust Nat'l Ass'n's Response to Pl. Finisar Corp.'s Mot.: (1) to Compel Prod. Docs.; (2) to Compel Dep. Test.; (3) for Add'l Time to Complete Dep.; and (4) for Monetary Discovery Sanctions ["Wahl Decl."], Ex. 1.)  Before an Event of Default, U.S. Bank's only obligations are those specifically enumerated in the Indentures; thereafter, U.S. Bank's only additional obligation is to "exercise . . . the rights and powers vested . . . by this Indenture . . . as a prudent man would."  There is no general fiduciary obligation to act in the Noteholders' best interests, the Noteholders do not "act through the Trustee," and the Indentures do not authorize the Noteholders to direct the Trustee.  Further underscoring that the Indentures authorize U.S. Bank to act independently of and even contrary to the Noteholders' directions, Section 7.02 provides:

> (c) the Trustee may consult with counsel of its selection and any advice or Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder in good faith and in accordance with such advice or Opinion of Counsel;
>
> (e) the Trustee shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion, rights or powers conferred upon it by this Indenture.

(Wahl Decl., Ex. 1.)

The Indentures fully and irrevocably divest the Noteholders of certain rights and powers, which it then vests in U.S. Bank with the charge to exercise them "as a prudent man would"— independently of and sometimes even contrary to the Noteholders' instructions. *See Murray v. U.S. Bank Trust Nat. Ass'n,* 365 F.3d 1284, 1289 n. 9 (11th Cir. 2004) ("Trust indentures commonly vest exclusive power in the indenture trustee to enforce remedial provisions in the event of a default.").  That is in contrast to an attorney-client relationship, where the client, as principal, retains the right to direct the exercise (or even revoke the delegation) of powers to the attorney, as agent. *See* RESTATEMENT (THIRD) OF LAW GOVERNING LAW. ("RESTATEMENT"), § 21, cmt. d (2008) ("A client may give instructions to a lawyer during the representation about

FINISAR'S REPLY IN SUPPORT OF
MOTIONS TO COMPEL AND FOR SANCTIONS                4.                CASE NO.: 5:07-CV-04052-JF-PVT

matters within the lawyer's reasonable power to perform, just as any other principal may instruct an agent . . . . a lawyer may not continue a representation while refusing to follow a client's continuing instruction.").

### 2. Protecting Communications Between the Trustee and the Noteholders Would Not Serve the Purposes of the Attorney-Client Privilege.

The contrast between U.S. Bank's role as indenture trustee, on the one hand, and an attorney, on the other, has direct implications for U.S. Bank's arguments. Communications between attorneys and clients are privileged because "[l]egal representation . . . . often can attain its end only if client and lawyer share their information and their views about what should be done." RESTATEMENT, § 20, cmt. b. "The need to communicate and consult is evident when a decision is entrusted to a client who cannot make it wisely without a lawyer's briefing," and "may also be present even in matters the lawyer is to decide, because the lawyer's decision must seek the objectives of the client as defined by the client." *Id.* (citations omitted); *see also Fisher v. United States,* 425 U.S. 391, 403, 96 S. Ct. 1569 (1976) ("since the privilege has the effect of withholding relevant information from the factfinder . . . . it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege").

Because U.S. Bank's duty under the Indentures is not that of an attorney to its client, the rationale supporting the attorney-client privilege does not apply to communications between them. U.S. Bank is not charged with helping the Noteholders to formulate objectives and acting under their direction to achieve such. Instead, U.S. Bank's duty is *independently* to "exercise . . . the rights and powers vested . . . by this Indenture . . . as a prudent man would." Although U.S. Bank may require uninhibited communication with its own attorneys to discharge that responsibility, it requires no privileged flow of communications with the Noteholders. *See United States v. Nixon,* 418 U.S. 683, 710, 94 S. Ct. 3090 (1974) ("exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth").

U.S. Bank's charge under the Indentures is to exercise its powers as a reasonable person would, not as the Noteholders desire. Presumably, U.S. Bank has been consulting with the Noteholders, despite the lack of any requirement imposed by the Indentures, in hopes of avoiding any future claim by the Noteholders that it did not act prudently. But however understandable U.S. Bank's desire to limit exposure may be, it gives rise to no privilege.

### 3. The Purpose of the Common Interest Doctrine Is to Foster the Coordination of Legal Strategies by Represented Parties.

In addition to incorrectly analogizing the trustee-noteholder relationship to the attorney-client relationship, U.S. Bank's argument also presumes that the common interest doctrine exists to foster the free flow of information among litigants with a common interest, just as the attorney-client privilege exists to foster the free flow of information between attorney and client. But as one of U.S. Bank's own authorities acknowledges, "[s]cholarly commentators have uniformly argued that the joint defense privilege differs sufficiently from the attorney-client privilege in both purpose and scope that the two should be viewed as entirely separate doctrines." *United States v. Stepney,* 246 F. Supp. 2d 1069, 1073 (N.D. Cal. 2001).

The purpose of the common interest doctrine is not to foster informed decision-making, by promoting the free flow of information, but "to allow *attorneys* to coordinate their clients' . . . strategies." *See Teleglobe,* 493 F.3d at 364-365; *see also Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.,* 212 F.R.D. 567, 572 (E.D. Cal. 2002) ("This 'common defense doctrine' . . . expands the application of the privileges to circumstances in which parties are represented by separate counsel but engage in a common legal enterprise. The doctrine only protects communications when they are part of an ongoing and joint effort to set up a common defense strategy." [citations omitted]); *In re Imperial Corp. of Am.,* 167 F.R.D. 447, 455 (S.D. Cal. 1995) ("The joint defense privilege protects communications between an individual and an attorney for another when the communications are part of an on-going and joint effort to set up a common defense strategy."). That is precisely why the doctrine shields only communications among counsel, and has no application here. Here, there is no issue of coordination among separate

parties to a joint effort because the Noteholders are not pursuing anything; indeed, as U.S. Bank has pointed out, the Indentures bar them from doing so. (*See, e.g.,* Opp. at 9:7-18.)

### C. U.S. Bank Has Not Met its Burden to Prove that the Communications Were Made in Confidence.

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). *Inter alia,* "in the context of joint defense agreements . . . the party asserting the privilege bears the burden of demonstrating that 'the communication was given in confidence and that the client *reasonably understood it to be so given.*'" *United States v. LeCroy*, 348 F. Supp. 2d 375, 381-381 (E.D. Pa. 2004) (citation omitted). As Finisar pointed out in its opening brief, U.S. Bank's invocation of privilege also fails because its deposition testimony, far from establishing that the communications at issue were made in confidence, established instead that privilege and confidentiality were never even addressed. (*See* Mot. Compel at 7:19-26.)

Rather than finally coming forward with evidence to meet its burden, U.S. Bank tries to disavow it, insisting that privilege attached because "[t]here is no evidence that the Trustee understood that any Noteholder intended to reveal the contents of the shared communication." (Opp. at 11:10-11.) The issue is not whether *Finisar* produced evidence that U.S. Bank knew its communications were *not* made in confidence; rather, the issue is whether *U.S. Bank* has come forward with evidence proving that the communications *were* (and were reasonably understood to have been) made in confidence. Deposition testimony that confidentiality was never discussed did not satisfy that burden, and U.S. Bank has still failed to remedy the deficiency in its evidence.

### D. U.S. Bank's Authorities Are Inapposite.

Citing *U.S. Bank National Association v. U.S. Timberlands Klamath Falls, L.L.C.*, 2005 WL 2037353 (Del. Ch. Aug. 16, 2005) and *U.S. Bank National Association v. APP International Finance Co.*, 823 N.Y.S.2d 361 (1st Dept. 2006), U.S. Bank asserts that two state courts "have applied the common interest privilege to shield from discovery communications among an indenture . . . trustee, its counsel, and noteholders, without regard to whether the noteholders had separate legal representation." (Opp. at 8:27-9:2). Assuming that to be true, it would be

1. irrelevant, as this Court's determination of federal privilege law should be guided by the federal
2. authorities Finisar has cited, rather than state court decisions applying state privilege law. *See*
3. *Pauk v. Board of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 866 n. 6 (2d Cir. 1981) ("the state
4. court decision cannot preclude a federal court's more authoritative decision on matters of federal
5. law").

6. Moreover, U.S. Bank's characterization of those decisions as having been made "without
7. regard to whether the noteholders had separate legal counsel" is telling. As U.S. Bank concedes,
8. the decisions it cites simply do not address whether the common interest doctrine applies to
9. communications involving unrepresented parties, and "[w]hen an issue is not argued or is ignored
10. in a decision, such decision is not precedent to be followed in a subsequent case in which the
11. issue arises." *National Cable Television Ass'n, Inc. v. American Cinema Eds., Inc.*, 937 F.2d
12. 1572, 1581 (Fed. Cir. 1991).

13. U.S. Bank's authorities provide no guidance, whatsoever on the issue of federal law here
14. presented, and they provide no justification for departing from the rule laid down by the on-point
15. federal authorities Finisar has cited—viz., that the common interest doctrine protects only
16. communications between counsel for represented parties. *See, e.g., Teleglobe*, 493 F.3d at 364.

17. **E.     Finisar's Motion for Sanctions Should Be Granted.**
18. Neither of U.S. Bank's state court decisions justifies its position, for reasons Finisar
19. explained to U.S. Bank before moving to compel. (*See* Sears Decl., Exs. "C" & "D.") Because
20. U.S. Bank was advised of the defects in its position and authority before Finisar moved to
21. compel, U.S. Bank's Opposition is not substantially justified and Finisar's Motion for Sanctions
22. should also be granted.
23. ///
24. ///
25. ///
26. ///
27. ///
28. ///

1
                                **III.    CONCLUSION**

2     Finisar's Motions to Compel and for Sanctions should be granted.

3   DATED: June 3, 2008                            Respectfully submitted,

4                                               Sterling A. Brennan
                                              L. Rex Sears
5                                               WORKMAN NYDEGGER A Professional Corporation

6                                               Caroline McIntyre
                                              BERGESON, LLP
7

8                                               By____/s/ L. Rex Sears_____
                                                         L. REX SEARS
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 3, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com; Eva K. Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; Edward T. Wahl, ewahl@faegre.com and Paul T. Friedman, pfriedman@mofo.com.

**WORKMAN NYDEGGER**

/s/ L. Rex Sears
L. REX SEARS
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, UT  84111
Telephone:  (801) 533-9800