1   Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
    L. Rex Sears (Admitted *Pro Hac Vice*; E-mail: rsears@wnlaw.com)
2   WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
    1000 Eagle Gate Tower
3   60 East South Temple
    Salt Lake City, Utah 84111
4   Telephone:  (801) 533-9800
    Facsimile:   (801) 328-1707
5
    Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
6   BERGESON, LLP
    303 Almaden Boulevard
7   Suite 500
    San Jose, California 95110-2712
8   Telephone:  (408) 291-6200
    Facsimile:   (408) 297-6000
9
    Attorneys for Plaintiff and Counter-defendant FINISAR CORPORATION
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14   FINISAR CORPORATION, a Delaware          Case No. 5:07-CV-04052-JF (PVT)
     corporation,
15                                            
                 Plaintiff,                   PLAINTIFF  FINISAR  CORPORATION'S
16                                            MOTION  FOR  SUMMARY  JUDGMENT
17          v.

18   U.S. BANK TRUST NATIONAL                 (Request for Judicial Notice and
     ASSOCIATION, a national banking          Declarations of Sterling Brennan and
19   association, not in its individual capacity, Stephen Workman submitted herewith)
     but solely in its capacity as Indenture
20   Trustee in behalf of all Holders of Finisar
     Corporation's 5¼% Convertible
21   Subordinated Notes due 2008, 2½%
     Convertible Senior Subordinated Notes due
22   2010, and 2½% Convertible Subordinated    Date:       **Friday, July 11, 2008**
     Notes due 2010; and DOES 1 through 10,    Time:       **9:00 a.m.**
23   inclusive,                                Courtroom:  **3**
24                                             District Judge:    Hon. Jeremy Fogel
                 Defendants.                   Magistrate Judge:  Hon. Patricia V. Trumbull
25
                                               Complaint Filed:   June 22, 2007
26   AND RELATED COUNTERCLAIMS.                Trial Date Set:    None Yet
27

28

FINISAR'S MOTION FOR                           CASE NO.: 5:07-CV-04052-JF-PVT
SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE(S)**

NOTICE OF MOTION ............................................................................................................ v

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.    INTRODUCTION ........................................................................................................ 1

II.   SUMMARY OF ARGUMENT ................................................................................... 3

    A.    Finisar Did Not Default. ...................................................................................... 3

    B.    Had Finisar Defaulted, Still U.S. Bank Could Not Accelerate Now That The Reports Have Been Filed. ................................................................................... 4

    C.    Because Finisar Did Not Default, U.S. Bank Is Not Entitled to Fees. ............. 4

III.  LEGAL STANDARDS ............................................................................................... 4

IV.   ARGUMENT ................................................................................................................ 5

    A.    Finisar Did Not Default. ...................................................................................... 5

        1.    Finisar Complied With The Indentures By Giving U.S. Bank Copies of Its Reports Within 15 Days Of Filing With The SEC. ................................ 5

            a.    The Indentures Require Finisar To File Reports With U.S. Bank Within 15 Days Of Actual Filing With The SEC, Not Within 15 Days Of The SEC Filing Deadline. .......................................... 5

            b.    The Indentures Do Not Reimpose SEC Filing Requirements. ..... 7

        2.    Finisar Complied With The TIA By Giving U.S. Bank Copies Of Its Reports. ........................................................................................................ 8

            a.    The TIA Establishes No Deadline For Finisar To Provide Reports To U.S. Bank. ....................................................................... 9

            b.    The Policy And Legislative History Of The TIA Support Finisar's Position, Not U.S. Bank's. ................................................ 10

        3.    Neither The Indentures Nor The TIA Incorporate The Exchange Act. ............. 11

        4.    Finisar Did Not Cause The Failure Of A Condition Precedent. ..................... 12

        5.    U.S. Bank's Interpretation Of The Reporting Covenant Is Untenable. ............. 12

        6.    The Weight Of Authority Decisively Favors Finisar. ...................................... 13

            a.    Because U.S. Bank Persuaded The Court That This Is A Federal Question, The Court Should Follow Federal Authority. ........................... 14

            b.    The Federal Decisions Recognized The Purpose Of The Reporting Covenant. ...................................................................... 14

            c.    *BearingPoint* Is Not Persuasive. ................................................ 15

            d.    U.S. Bank's Attempt To Distinguish *UnitedHealth* Fails. ....................... 16

B.   Even If Finisar Had Defaulted, U.S. Bank Could Not Accelerate Now That The Alleged Default Has Been Cured. ............................................................. 16

    1.   Events Of Default Can Be Cured. ................................................. 17

    2.   An Event Of Default Does Not Continue After The Default Is Cured. ............. 18

    3.   Waiver Is Not The Issue. ........................................................... 18

C.   U.S. Bank Has Articulated No Viable Claim For Damages. ......................... 19

D.   Finisar Should Not Have To Pay U.S. Bank's Fees. ................................. 20

    1.   Section 7.06 Of The Indentures Includes A Fees Clause And An Indemnity Clause. ................................................................... 20

    2.   U.S. Bank Cannot Recover Under The Fees Clause Because Its Fees Were Not Incurred In Accordance With The Indentures. ................... 21

    3.   U.S. Bank Cannot Recover Fees Under The Indemnity Clause. ....................... 21

        a.   The Indemnity Clause Does Not Authorize Recovery Of Fees Incurred Litigating With Finisar. ...................................... 22

        b.   The Indemnity Clause Does Not Authorize Recovery Of Fees Incurred Litigating Declaratory Relief Claims. ............................ 22

    4.   U.S. Bank Cannot Recover Because Its Fees Were Incurred Negligently And In Bad Faith. ............................................................ 23

        a.   U.S. Bank Is Litigating To Obtain An Unwarranted Windfall. ............... 23

        b.   U.S. Bank Is Litigating Imprudently. ....................................... 23

        c.   U.S. Bank Had Other Options. .............................................. 24

V.   CONCLUSION. .............................................................................. 25

GLOSSARY  OF  DEFINED  TERMS ................................................................. 26

TEXT  OF  GOVERNING  INDENTURE  PROVISIONS ............................................ 28

1

# TABLE OF AUTHORITIES

2

PAGE(S)

3

**CASES**

4

*Abiele Contracting, Inc. v. New York City Sch. Constr. Auth.,*
      91 N.Y.2d 1, 9, 666 N.Y.S.2d 970, 689 N.E.2d 864 (1997) .......................................... 5

5

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.,*
      2008 WL 373162, Fed. Sec. L. Rep. P 94,577
      (N.D. Tex. Feb. 12, 2008) ......................................... 1, 2, 8, 9, 10, 12, 14, 15, 20

6

7

*American Express Bank Ltd. v. Uniroyal, Inc.,*
      164 A.D.2d 275, 562 N.Y.S.2d 613 (App. Div. 1990) ...................................... 5

8

9

*Bank of New York v. BearingPoint, Inc.,*
      824 N.Y.S.2d 752, 2006 WL 2670143 (Sup. Ct. N.Y. County Sept. 18, 2006).......... 14, 15

10

*Bayview General Hospital v. Association Hospital Services of N.Y.,*
      256 N.Y.S.2d 471 (Sup. Ct. N.Y. County 1964) .......................................... 21

11

12

*Celotex Corp. v. Catrett,*
      477 U.S. 317, 106 S. Ct. 2548 (1986) ............................................... 4

13

14

*Cyberonics, Inc. v. Wells Fargo Bank National Association,*
      2007 WL 1729977 (S.D. Tex. June 13, 2007)............................... 1, 2, 4, 9, 13, 14, 15, 24

15

*Eden Music Corp. v. Times Square Music Publ'ns Co.,*
      127 A.D.2d 161, 514 N.Y.S.2d 3 (N.Y. App. Div. 1987)........................................ 22

16

17

*Genentech, Inc. v. Insmed Inc.,*
      436 F. Supp. 2d 1080 (N.D. Cal. 2006).......................................... 16

18

*Gerow v. Rohm & Haas Co.,*
      308 F.3d 721 (7th Cir. 2002) ........................................... 23

19

20

*Grochowski v. Phoenix Constr.,*
      318 F.3d 80 (2d Cir. 2003) ........................................... 8

21

22

*Hooper v. AGS Computers,*
      74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989) .......................................... 22

23

24

*In re Metromedia Fiber Network, Inc.,*
      416. F.3d 136 (2d Cir. 2005) ........................................... 6

25

*In re Penn Cent. Sec. Litig.,*
      494 F.2d 528 (3d Cir. 1974) ........................................... 8

26

27

28

FINISAR'S MOTION FOR                                  iv.
SUMMARY JUDGMENT                                            CASE NO.: 5:07-CV-04052-JF-PVT

*National Cable Television Assocation, Inc. v. American Cinema Eds., Inc.,*
    937 F.2d 1572 (Fed. Cir. 1991) ................................................................ 16

*Pauk v. Board of Trustees of City Univ. of N.Y.,*
    654 F.2d 856 (2d Cir. 1981) .................................................................... 14

*U.S. Bank Nat'l Assoc. v. MOA Hospitality,*
    No. 601686/2007, at 19 (Sup. Ct. N.Y. County Dec. 18, 2007) ...................... 21

*U.S. Trust Co. of N.Y.. v. Pardo (In re W.T. Grant Co.),*
    119 B.R. 898 (Bankr. S.D.N.Y. 1990) ........................................................ 21

*UnitedHealth Group Inc. v. Wilmington Trust Co.,*
    538 F. Supp. 2d 1108 (D. Minn. 2008) ............... 1, 2, 3, 4, 7, 9, 12, 13, 14, 15, 16, 19, 23

*W.W.W. Assocs. v. Giancontieri,*
    77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) ............................ 4

## STATUTES/RULES

15 U.S.C. § 77bbb .................................................................................... 10

15 U.S.C. § 77nnn ................................................................................... 2, 9

15 U.S.C. § 78u ...................................................................................... 8, 11

California Civil Code section 1717 ............................................................... 22

California Code of Civil Procedure section 1033.5 ............................................ 22

Federal Rule of Civil Procedure 56 ............................................................... v

## OTHER AUTHORITIES

Commentaries on Model Debenture Indenture Provisions (1971) .......................... 6

1

## NOTICE OF MOTION

2   TO DEFENDANT U.S. BANK TRUST NATIONAL ASSOCATION AND TO ITS

3   ATTORNEYS OF RECORD IN THE ABOVE-CAPTIONED ACTION:

4           NOTICE IS HEREBY GIVEN that, on **Friday, July 11, 2008, at 9:00 a.m.**, or as soon

5   thereafter as the matter may be heard, in Courtroom 3 of the above-entitled Court (the Honorable

6   Jeremy Fogel, United States District Judge, presiding) located at 280 South First Street, San Jose,

7   California, Finisar[1] shall—and hereby does—move the Court for summary judgment on all claims

8   for declaratory relief set forth in its Amended Complaint, as well as any counterclaims *properly*

9   pleaded by U.S. Bank in its Answer.[2]  This Motion is and shall be made pursuant to Federal Rule

10  of Civil Procedure 56, and on the ground that no genuine issue of material fact is presented.

11  Finisar's Motion is and shall be based upon this Notice, the Points and Authorities set forth

12  below, the accompanying Request for Judicial Notice and Workman and Brennan Declarations,

13  the other pleadings, documents, and other records on file in the Action, and such additional

14  evidence and argument as may be presented in connection with the hearing and determination of

15  the Motion.[3]

16  DATED:  June 6, 2008                  Respectfully submitted,

17                                        Sterling A. Brennan
                                          L. Rex Sears
18                                        WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

19                                        Caroline McIntyre
                                          BERGESON, LLP
20

21                                        By____/s/ Sterling A. Brennan_____
                                                  Sterling A. Brennan
22                                        Attorneys for Plaintiff and Counter-defendant
                                          FINISAR CORPORATION

23  _____

24  [1] Terms with initial capitals are specially defined in the appended Glossary of Terms.

25  [2] In its companion Motion to Dismiss, Finisar seeks dismissal of U.S. Bank's counterclaims on
    procedural grounds.

26  [3] In general, U.S. Bank's Motion should be denied for the same reasons that Finisar's should be
    granted.  However, because U.S. Bank did not accept Finisar's proposal that the parties
27  consolidate briefing on their respective Motions (reducing the number of briefs from six to four),
    argument and evidence that does not support Finisar's Motion, but is instead purely responsive to
28  U.S. Bank's Motion, will be presented in a separate opposition rather than set forth herein.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      The threshold issue in this case is whether Finisar satisfied its obligations under the

3 Indentures by providing copies its Reports to U.S. Bank within 15 days of filing them with the

4 SEC. That question has already been carefully analyzed and definitively and uniformly answered

5 in Finisar's favor by the three federal decisions to have addressed it, copies of which are attached

6 hereto for convenient reference. As held in each of those cases, the Indentures and the TIA

7 require only that Finisar provide copies of its Reports to U.S. Bank within 15 days *after it*

8 *actually filed them* with the SEC, and imposed *no* requirement regarding the timing of Finisar's

9 filing *with the SEC. See UnitedHealth Group Inc. v. Wilmington Trust Co.,* 538 F. Supp. 2d

10 1108, 1114 (D. Minn. 2008) (Ex. A); *Affiliated Computer Servs., Inc. v. Wilmington Trust Co.,*

11 2008 WL 373162, *6, Fed. Sec. L. Rep. P 94,577 (N.D. Tex. Feb. 12, 2008) (Ex. B); *Cyberonics,*

12 *Inc. v. Wells Fargo Bank Nat'l Ass'n,* 2007 WL 1729977, *4 (S.D. Tex. June 13, 2007) (Ex. C).

13 In each of those cases, the debt issuer was granted summary judgment against the indenture

14 trustee, and Finisar is entitled to the same result here.

15

**I.      INTRODUCTION**

16      Between October 15, 2001 and October 12, 2006, Finisar obtained roughly $250 million

17 in debt financing by issuing three series of Notes under three Indentures. U.S. Bank contracted to

18 act as trustee for the Holders of the Notes. This case arises out of U.S. Bank's assertion that

19 Finisar breached the Indentures by not timely filing certain periodic reports with the SEC.

20      U.S. Bank started this fight by sending to Finisar notices contending that Finisar had

21 defaulted under the Indentures, and that the alleged defaults would ripen into "Events of Default"

22 within 60 days of the notices. (Amended Complaint, Exs. D-F; Answer, ¶¶ 27, 29, 31.) Under

23 the Indentures, the latter allegation is a threat to accelerate, i.e., to declare immediately due and

24 payable all outstanding principal and interest due under the Notes. (*See* Indentures, § 6.02

25 [authorizing acceleration "[i]f an Event of Default … occurs and is continuing"].)[4]

26 _____

[4]  It is apparent that actual acceleration was not the true desired outcome for either U.S. Bank or
27 the Holders. Indeed, even at this late date, U.S. Bank has not attempted to declare any
acceleration. Instead, U.S. Bank is using the threat of acceleration as leverage in an improper
effort to gain concessions "exceedingly favorable to the noteholders," as it brags of having done
28 in other cases. (*See, e.g.,* Defs.' Sur-Reply to Pl.'s Reply in Further Supp. of Req. for Declaratory

1    Section 4.02 of each Indenture requires Finisar to (1) file its SEC Reports with U.S. Bank

2    "within 15 days after it files such … reports with the Commission"[5] and (2) comply with "the

3    other provisions" of Section 314(a) of the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C.

4    §77nnn(a).  Section 314(a) of the TIA, in turn, requires an obligor to "file with the indenture

5    trustee copies of the … reports … which such obligor is required to file with the Commission."

6    U.S. Bank concedes that Finisar filed copies of each Report with U.S. Bank within 15 days of

7    having filed it with the SEC (Am. Compl., ¶ 5; Answer, ¶ 5), thereby complying both with

8    Section 4.02 of the Indentures and TIA Section 314(a).  But, U.S. Bank maintains that Finisar

9    breached some further obligation ostensibly owed *to U.S. Bank*, nowhere stated either in the

10    contracts (i.e., the Indentures) or the statute, by not timely filing its Reports *with the SEC*.[6]

11    U.S. Bank's contention that Finisar defaulted by not timely filing its Reports with the SEC

12    has been at issue in this Action from its inception, and two others have arisen since.  First, Finisar

13    filed its Reports with both the SEC and U.S. Bank on December 4, 2007.  The Indentures,

14    however, permit acceleration (which, under Section 6.02 of the Indentures, must be preceded by a

15    formal notice that has never been given) *only* when an Event of Default "is continuing."

16    Accordingly, Finisar seeks a declaration that U.S. Bank cannot seek to accelerate at this late date

17    because there is no *continuing* Event of Default.  Second, U.S. Bank demanded that Finisar pay

18    its attorney fees.  To deprive U.S. Bank of a pretext for acceleration, Finisar made payment as

19    demanded; but under protest, and subject to reservation of rights.  Finisar now seeks recovery of

20

---

21    J. at 4-5, *Beazer Homes USA, Inc. v. U.S. Bank National Association* (N.D. Ga. Oct. 16, 2007)
22    (No. 1:07-2006) [reproduced as Req. J. Not., Ex. E].)  This time, however, U.S. Bank's strategy
      misfired when Finisar, like the issuers in *UnitedHealth, Affiliated Computer,* and *Cyberonics,*
23    sued for declaratory judgment that it had not defaulted rather than buying off the Holders, like the
      issuers referenced in *Beazer*.

24    [5]  The Indentures are reproduced as Exhibits 1-3 of the Jacobs Declaration.  For convenient
25    reference, the full text of key provisions is set forth below, following the Glossary of Terms.

26    [6]  As Finisar timely reported to the SEC, Holders, U.S. Bank, and the investing public at large, it
      voluntarily commenced an internal investigation into its historical stock option granting practices
27    late in 2006; and pending completion of that review, Finisar could not file quarterly and annual
      reports without risking violation of its fundamental obligation to ensure that its disclosures were
28    truthful.  Finisar has since concluded the investigation and filed its Reports.  Neither U.S. Bank
      nor any of the Holders has ever complained about the adequacy of the Reports.

**FINISAR'S MOTION FOR**                         2.
**SUMMARY JUDGMENT**

1    what it paid.  Both of these additional issues are properly presented by Finisar's Amended

2    Complaint.

3         U.S. Bank tried to inject a fourth issue by including a counterclaim for unspecified

4    damages in its Answer.  As explained in Finisar's Motion to Dismiss, U.S. Bank's counterclaims

5    are not properly at issue.  Nevertheless, Finisar also addresses this issue hereinbelow.

6              **II.    SUMMARY OF ARGUMENT**

7         **A.    Finisar Did Not Default.**

8         As noted above, the most basic issue in this case is whether Finisar complied with the

9    Indentures' requirement, set forth in Section 4.02, that Finisar file copies of its Reports with U.S.

10    Bank "within 15 days after it files … [them] with the Commission."  Finisar complied by

11    providing copies of its Reports to U.S. Bank on December 4, 2007, the same day it filed them

12    with the SEC.  (*See* Am. Compl., ¶ 32; Answer, ¶ 32.)  According to U.S. Bank, however, Section

13    4.02 of the Indentures not only required Finisar to file copies of its Reports with U.S. Bank

14    "within 15 days after it file[d] … with the Commission," but also to file the *original* Reports *with*

15    *the SEC* by particular deadlines.  Yet no such language appears in the Indentures, and U.S. Bank

16    does not pretend otherwise.  Instead, U.S. Bank argues that the (unstated) *intent* of Section 4.02 is

17    to require timely filing with the SEC.  Because the subjective intent now professed by U.S. Bank

18    is contrary to the objective language of the contracts it signed, that unexpressed intent can shed no

19    light on the rights and duties arising under the Indentures.

20         Alternatively, U.S. Bank argues that even if the contractual language does not require that

21    reports be filed with the SEC by particular deadlines, TIA Section 314(a) is incorporated by the

22    Indentures, and it does.  But that argument has been considered and rejected by each of the three

23    federal court opinions attached hereto, which have expressly and uniformly held that the TIA

24    "does not incorporate, either explicitly or implicitly, SEC timing requirements."  *UnitedHealth,*

25    538 F. Supp. 2d at 1114; *accord Affiliated Computer,* 2008 WL 373162, at * 5; *Cyberonics,* 2007

26    WL 1729977, at *4.

27

28

1

**B.    Had Finisar Defaulted, Still U.S. Bank Could Not Accelerate Now That The Reports Have Been Filed.**

2      Finisar did not default.  But even if, *arguendo,* it had, still U.S. Bank could not accelerate

3    now because Section 6.02 of the Indentures permits acceleration only while an Event of Default

4    "is continuing," and the supposed Event alleged by U.S. Bank has not been continuing since

5    Finisar filed its Reports with the SEC and provided them to U.S. Bank on December 4, 2007.

6    U.S. Bank's damages claim fails because, among other things, Section 6.03 similarly bars U.S.

7    Bank from suing in behalf of the Holders unless an Event of Default "occurs and is continuing."

8

**C.    Because Finisar Did Not Default, U.S. Bank Is Not Entitled to Fees.**

9      The Indentures permit U.S. Bank to recover only attorney's fees incurred in accordance

10    with the Indentures.  Because Finisar was not in default, the fees U.S. Bank seeks were not so

11    incurred, and thus they may not be recovered.

12

### III.    LEGAL  STANDARDS

13      "Summary judgment is appropriate when the evidence, viewed in the light most favorable

14    to the nonmoving party, presents no genuine issue of material fact."  *UnitedHealth,* 538 F. Supp.

15    2d at 1111.  "[A] party seeking summary judgment always bears the initial responsibility of

16    informing the district court of the basis for its motion, and identifying those portions of [the

17    record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

18    *Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Where the nonmovant bears the

19    burden of proving a particular fact, the movant can meet its burden by "pointing out to the district

20    court — that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

21      "In deciding a motion for summary judgment, a court must look to the substantive law

22    underlying the lawsuit."  *Cyberonics,* 2007 WL 1729977, at *2.  Because Section 13.09 of the

23    Indentures chooses New York law, this Court looks to New York contract law to decide Finisar's

24    motion.  "New York law is clear, and frankly, unsurprising."  *UnitedHealth,* 538 F. Supp. 2d at

25    1112.  "A familiar and eminently sensible proposition of [New York] law is that, when parties set

26    down their agreement in a clear, complete document, their writing should as a rule be enforced

27    according to its terms."  *W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440,

28    566 N.E.2d 639 (1990).  "Parties to an agreement are not obligated to perform duties beyond

those mandated by the unambiguous terms of the indenture." *UnitedHealth,* 538 F. Supp. 2d at
1112. "Where the intent of the parties can be determined from the face of the agreement,
interpretation is a matter of law and the case is ripe for summary judgment." *Am. Express Bank
Ltd. v. Uniroyal, Inc.,* 164 A.D.2d 275, 562 N.Y.S.2d 613, 614 (App. Div. 1990).

## IV.    ARGUMENT

### A.    Finisar Did Not Default.

#### 1.    Finisar Complied With The Indentures By Giving U.S. Bank Copies of Its Reports Within 15 Days Of Filing With The SEC.

U.S. Bank likes to speak broadly of contractual intent, statutory policy, and "the context
of the indenture agreement as a whole." But "the fundamental objective when interpreting a
written contract is to determine the intention of the parties *as derived from the language employed
in the contract.*" *Abiele Contracting, Inc. v. New York City Sch. Constr. Auth.,* 91 N.Y.2d 1, 9,
666 N.Y.S.2d 970, 689 N.E.2d 864 (1997) (emphasis added). This Court should decline U.S.
Bank's invitation to displace the actual language of the Indentures with conjectural abstractions.
U.S. Bank contends that Finisar breached Section 4.02 of the Indentures by not timely filing its
Reports with the SEC. Even assuming, *arguendo,* that Finisar did not file those Reports by the
deadlines ordinarily prescribed, still Finisar would not thereby have breached the Indentures
because the Indentures impose no deadlines for Finisar to file with the SEC.[7]

#### a.    The Indentures Require Finisar To File Reports With U.S. Bank Within 15 Days Of Actual Filing With The SEC, Not Within 15 Days Of The SEC Filing Deadline.

The reporting covenant of the Indentures is set forth in Section 4.02, which provides:

> The Company shall file with the Trustee, within 15 days after it files such
> … reports with the Commission, copies of … reports … which the
> Company is required to file with the Commission pursuant to Section 13
> or 15(d) of the Exchange Act.

The text unambiguously states that Finisar's obligation is to file copies of reports with U.S. Bank
"within 15 days after it files … with the [SEC]." It does *not* say, however, that Finisar is required
to file reports with U.S. Bank within 15 days after they were *due* to be filed with the SEC.

---

[7]  As further discussed below, Finisar does not deny its obligation to make SEC filings as and
when applicable regulations require. Those obligations, however, do not arise under the
Indentures and do not run either to U.S. Bank or the Holders.

1    There are *other* forms and contracts, not at issue here, that *do* say what U.S. Bank claims

2    is the intended meaning of Section 4.02.  Yet juxtaposition of those other forms and contracts

3    with the subject Indentures simply confirms that the Indentures at issue *here* say no such thing—

4    and informs that if U.S. Bank had wanted the Indentures to say what it now wishes they had, it

5    could have so drafted them.  Section 4.02 is an amalgamation of (1) section 4.02 of the Model

6    Simplified Indenture published by the American Bar Association in 1983:

7    > The company shall file with the Trustee within 15 days after it files them
> with the SEC copies of … reports … which the Company is required to
8    > file with the SEC pursuant to Section 13 or 15(d) of the Securities
> Exchange Act of 1934.

9
10   38 BUS. LAW. 741 (1983) (Brennan Decl., Ex. A); and (2) section 704 of an earlier ABA form:

11   > The Company will (1) file with the Trustee, within 15 days after the
> Company is required to file the same with the Commission, copies of …
> reports … which the Company may be required to file with the
12   > Commission pursuant to Section 13 or Section 15(d) of the Securities
> Exchange Act of 1934.

13
14   COMMENTARIES ON MODEL DEBENTURE INDENTURE PROVISIONS, 288 (1971) (excerpted in

15   Brennan Decl., Ex. B); *see In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 139 n. 2 (2d Cir.

     2005) (approving use of "the *Commentaries* to interpret indenture provisions").  While following

16   the earlier form with respect to punctuation (commas delimiting the timing clause) and

17   nomenclature ("Commission" rather than "SEC"), *substantively* the Indentures here at issue

18   follow the 1983 form, requiring Finisar to file with U.S. Bank "within 15 days after … it files

19   with the Commission" rather than "within 15 days after the Company is *required* to file … with

20   the Commission."

21       Other indentures to which U.S. Bank is party substantively follow the 1971 form.  For

22   example, U.S. Bank is the trustee under the indenture at issue in *Landry's Restaurants, Inc. v.*

23   *Post Advisory Group, LLC, et al.* (S.D. Tex.) (No. G-07-406), Section 4.02(a) of which provides:

24
25   > Whether or not required by the Commission … the company shall furnish
> to the Trustee, within the time period specified in the Commission's rules
> and regulations:  (1) all quarterly and annual financial information that
26   > would be required to be contained in a filing with the Commission on
> Forms 10-Q and 10-Q if the Company were required to file such forms …

27
28

**FINISAR'S MOTION FOR**                    6.
**SUMMARY JUDGMENT**                                  CASE NO.: 5:07-CV-04052-JF-PVT

1   (Req. J. Not., Ex. C.)  Like the 1971 form it follows, the *Landry's* indenture keys the deadline for

2   the obligor to file with the trustee to its deadline to file with the SEC.  The Indentures at issue in

3   *this* Action, by contrast, instead expressly require Finisar to provide reports to U.S. Bank within

4   15 days "after it files … with the Commission," as set forth in the 1983 form.

5                    b.       **The Indentures Do Not Reimpose SEC Filing Requirements.**

6             U.S. Bank nevertheless contends that Section 4.02 of the Indentures between Finisar and

7   U.S. Bank somehow reimposes SEC filing deadlines.  But the actual language of the Indentures

8   permits no such interpretation.  Section 4.02 of the Indentures begins:

9                    The Company shall file with the Trustee, within 15 days after it files such
                     … reports with the Commission, copies of … reports … which the
10                   Company is required to file with the Commission pursuant to Section 13
                     or 15(d) of the Exchange Act.
11
     Instructively, the Section continues:
12
13                   If at any time the Company is not subject to Section 13 or 15(d) of the
                     Exchange Act, such reports shall be provided at the times the Company
14                   would have been required to provide reports had it continued to be subject
                     to such reporting requirements.

15   The first sentence states Finisar's obligation vis-à-vis U.S. Bank if Finisar *is* subject to the

16   Exchange Act's reporting requirements, while the second articulates Finisar's obligation if it is

17   *not*.  U.S. Bank argues that by imposing *distinct* requirements depending on whether Finisar is

18   subject to the Exchange Act, these two sentences evidence some intent that the *same* requirements

19   apply, "whether or not [Finisar] was subject to the reporting requirements of Exchange Act

20   [sic.]."  (U.S. Bank's Mot. at 12:13-14.)  To state that theory is to refute it.

21             Under the first sentence of Section 4.02, for so long as Finisar is subject to the reporting

22   requirements of the Exchange Act, the Indentures defer to its mechanisms for setting and

23   enforcing primary filing deadlines; derivatively requiring only that Finisar file copies with U.S.

24   Bank "within 15 days after it files … with the Commission."  *See UnitedHealth*, 538 F. Supp. 2d

25   at 1113 ("it is the Exchange Act, not the Indenture, which compels UHG to produce a particular

26   report").  Only if the Exchange Act's mechanisms cannot be relied upon (because Finisar is no

27   longer subject thereto) does the second sentence of Section 4.02 come into play, replacing the lost

28   federal statutory requirement with a private obligation running to U.S. Bank that Finisar provide

**FINISAR'S MOTION FOR**                             7.
**SUMMARY JUDGMENT**

1   reports "at the times" the Exchange Act "would have required."  Because Finisar has been subject

2   to Sections 13 and 15(d) of the Exchange Act at all times pertinent hereto, its obligations are set

3   forth in the first rather than the second sentence.  (*See* Answer, p. 10, ¶ 11.)

4          U.S. Bank wants to make this case about whether Finisar has *any* obligation to file with

5   the SEC.  (*See, e.g,* U.S. Bank's Mot. at 12:15-16 ["The Filing Requirements of Sections 13 and

6   15(d) of the Exchange Act are Not Optional."].)  Finisar has never denied that it does.  Rather,

7   Finisar's point has always been that Congress enacted a scheme pursuant to which Finisar is

8   answerable to the SEC, not U.S. Bank, for the timeliness of its filings.  *See Affiliated Computer,*

9   2008 WL 373162, at *7 ("Although ACS's failure to file with the SEC may not subject it to

10  penalties under the Indenture, a late filing exposes ACS to other potential sanctions that are surely

11  adequate to prevent ACS from attempting to take advantage of the note holders.")  Congress

12  authorized *the SEC* to investigate violations and, in *its* discretion, bring suit to enforce its rules

13  (and exact monetary penalties from transgressors), 15 U.S.C. § 78u(a)(1), (d)(1), (d)(3); but

14  Congress created no *private* right of action under the Exchange Act's reporting provisions, *see In*

15  *re Penn Cent. Sec. Litig.,* 494 F.2d 528, 539-541 (3d Cir. 1974).[8]  In conformity with that scheme,

16  the Indentures impose a contractual requirement to file according to deadlines developed pursuant

17  to the Exchange Act only when the statute does not apply.  *See Grochowski v. Phoenix Constr.,*

18  318 F.3d 80, 85 (2d Cir. 2003) ("a federal court should not strain to find in a contract a state-law

19  right of action for violation of a federal law under which no private right of action exists").

20          **2.     Finisar Complied With The TIA By Giving U.S. Bank Copies Of Its**
                  **Reports.**
21
           Section 4.02 of the Indentures concludes:  "The Company shall also comply with the other
22
    provisions of TIA Section 314(a)."  According to U.S. Bank, "[t]hrough its incorporation of TIA
23
    Section 314(a), the Indentures obligate Finisar to provide the Trustee with copies of all
24
    documents *required to be filed* with the SEC—not just those *actually filed.*"  (U.S. Bank's Mot. at
25
    14:2-4.)  However, just as Finisar has never denied its obligations under the Exchange Act, so too
26

    ─────────────────────
27  [8]  Instructively, the SEC did not exercise its authority to bring enforcement proceedings or impose
    fines as a result of any delay in the filing of Finisar's Reports.  (Workman Decl., ¶ 3.)  Similarly,
28  although NASDAQ's rules authorize delisting as a penalty for not complying with SEC filing
    obligations, Finisar was never delisted.  (Am. Compl., ¶ 36; Answer, ¶ 36.)

1   Finisar has never denied that the Indentures require it to provide U.S. Bank with copies of

2   "documents *required to be filed* with the SEC."  Rather, Finisar's point has always been one of

3   timing:  under contractual language chosen for the Indentures, Finisar was not required to provide

4   copies of its Reports to U.S. Bank until 15 days "*after* it file[d]" them with the SEC; and the TIA

5   imposes no contrary obligation.  Still, U.S. Bank argues that Finisar breached Section 4.02 of the

6   Indentures by failing to comply with Section 314(a) of the TIA.

7              a.      **The TIA Establishes No Deadline For Finisar To Provide**
                       **Reports To U.S. Bank.**

8        Section 314(a) of the TIA provides:

9

10              Each ... obligor ... shall—(1) file with the indenture trustee copies of the
                ... reports ... which such obligor is required to file with the Commission
11              pursuant to section 78m or 78o(d) of this title ...

12  15 U.S.C. §77nnn(a).  Where applicable,[9] the TIA, like the Indentures, imposes a derivative

13  requirement to file *copies* of reports required by the Exchange Act with the trustee.  However, the

14  underlying obligation to prepare and file a report with the SEC arises under the Exchange Act.

15  *See UnitedHealth,* 538 F. Supp. 2d at 1113 ("it is the Exchange Act ... which compels UHG to

16  produce a particular report"); *Affiliated Computer,* 2008 WL 373162, at *5 ("[TIA] § 314 does

17  not require that ACS file anything with the SEC").

18       In contrast to the Indentures, the TIA "contains no timing requirement whatsoever, nor

19  does it define the time by which copies must be delivered to the trustee."  *UnitedHealth,* 538 F.

20  Supp. 2d at 1114.  "In this regard, the TIA requires even less of plaintiff than the Indenture," *id.,*

21  and "is actually less stringent than the agreement," *Cyberonics,* 2007 WL 1729977, at *4.[10]

22  _____

[9]  Because the Indentures at issue in this Action have not been qualified under the TIA, Section
23  314(a) of the TIA does not apply of its own force, but instead applies only to the extent its terms
    are incorporated by the Indentures; and the TIA's reporting requirement, in particular, is not
24  encompassed by the Indentures' contractual incorporation of statutory terms.  As noted above,
    Section 4.02 requires Finisar to "*also* comply with the *other* provisions of TIA Section 314(a)."
25  However, as this Court has recognized, "Section 4.02 of the Indentures is a mechanism to
    enforce" "Finisar's duty to provide documents to the Trustee."  (Order Denying Mot. Remand,
26  4:20-22.)  Because Finisar's duty to provide documents is already set forth in Section 4.02 of the
    Indentures, it is not one of the "*other* provisions of TIA Section 314(a)" incorporated thereby.

27  [10]  Even if Section 4.02 of the Indentures had incorporated the TIA's reporting requirement, and
    even if the TIA requirement included more stringent timing element, still the contractual
28  incorporation should not be interpreted to displace terms expressly set forth in the text of Section

**FINISAR'S MOTION FOR**                          9.
**SUMMARY JUDGMENT**                                      CASE NO.: 5:07-CV-04052-JF-PVT

1   Having satisfied the Indenture's more stringent requirement to deliver copies of its Reports *within*

2   *15 days of filing with the SEC,* Finisar necessarily met any imposed by the TIA.

3           **b.      The Policy And Legislative History Of The TIA Support**
                      **Finisar's Position, Not U.S. Bank's.**

4

5           U.S. Bank argues that a timing requirement should be implied because the TIA is prefaced

6   with a finding "that the national public interest and the interest of investors … are adversely

    affected … when the obligor is not obligated to furnish … adequate current information." (*See*

7   U.S. Bank's Mot. at 15:12-17 [quoting 15 U.S.C. § 77bbb(a)].)  However,

8

9               [t]he Indenture's requirement that [Finisar] deliver to the Trustee a copy of
                all of [Finisar's] required SEC filings within 15 days of filing them with
                the SEC meets this policy concern.  It ensures that the note holders
10              through the Trustee possess the same financial information concerning the
                issuing company that the rest of the investment public has.

11  *Affiliated Computer,* 2008 WL 373162, at *6.

12          U.S. Bank offers a legislative history soundbite to support its position, but the *full* history

13  is to the contrary (and confirms the *Affiliated Computer* court's analysis).  As originally passed by

14  the Senate, what became the TIA would have independently required an obligor "to file with the

15  trustee and the Commission … such … reports which may be required pursuant to section 13 of

16  the Securities and Exchange Act of 1934."  S. 2065, 76th Cong., § 314 (reproduced in H.R. REP.

17  NO. 76-1016, at 86 (1939) [Req. J. Not., Ex. B]).  It was in connection with *this* version of the bill

18  that the committee comment quoted by U.S. Bank was made: "Section 314 … writes into the

19  indenture a requirement that the issuer file with the indenture trustee, as well as with the

20  Commission, periodic reports similar to those which registrants under the Securities Act must

21  now undertake to file with the Commission." (*See* U.S. Bank's Mot. at 14:15-18 [quoting S. REP.

22  NO. 76-248, at 5 (1939) (Req. J. Not., Ex. A)].)  However the law as finally enacted was different,

23  as explained by the House of Representatives report on the ultimately-adopted substitute bill, in a

24  section of the report headed "[e]limination of duplication of periodic reports by obligor":

25

26              Section 314(a) of the substitute herewith reported takes into consideration
                the fact that generally the issuer will already be required to file periodic
                reports with the Commission under section 13 or section 15(d) of the
27

    _____

28  4.02, such as the timing clause permitting Finisar to provide copies of reports to U.S. Bank at any
    time up to and including 15 days "*after* it files" them with the SEC.

    **FINISAR'S MOTION FOR**                    10.
    **SUMMARY JUDGMENT**                               CASE NO.: 5:07-CV-04052-JF-PVT

> Securities Exchange Act.  In such cases the substitute bill merely requires
> that copies of such reports … be filed with the indenture trustee … .  The
> substitute requires a separate form of report only where the issuer is not
> now required to file reports under the Securities Exchange Act.

H.R. REP. NO. 76-1016, at 35; *see also id.* at 15-16 (giving text of substitute bill), 52 ("where, as

will generally be the case, the obligor must file periodic reports with the Commission pursuant to

… the Securities Exchange Act, it need only file with the trustee copies of those reports").

Rather than reinvent the reporting wheel, as proposed by the Senate, the TIA as enacted

piggybacks the previously-existing Exchange Act regime.  What must be filed with the SEC, and

when, are determined under the Exchange Act; which also vests the SEC with enforcement

authority, *see* 15 U.S.C. § 78u.  Instead of duplicating that regulatory and enforcement apparatus,

the TIA more modestly requires only that the trustee to be copied on the results.

### 3.    Neither The Indentures Nor The TIA Incorporate The Exchange Act.

According to U.S. Bank, "the rules and regulations accompanying the Exchange Act are

expressly incorporated by reference under Section 314(a) of the TIA."  (U.S. Bank's Mot. at

13:18-19.)[11]  In support, U.S. Bank offers the following presentation of statutory text:

> Section 314(a) of the TIA provides:  "Each person who … is or is to be an
> obligor upon the indenture securities … shall: (1) file with the indenture
> trustee copies of the annual reports and of the information, documents, and
> other reports … *which such obligor is required to file with the
> Commission pursuant to section 13 or 15(d) of this title [the Securities
> Exchange Act of 1934].*"  15 U.S.C. § 77nnn(a) (emphasis added).

(U.S. Bank's Mot. at 14:5-9; ellipses, emphasis, and annotations in the original.)  U.S. Bank's

placement of emphasis suggests its apparent argument:  the phrase "which such obligor is

required to file with the Commission pursuant to section 13 or 15(d) of this title" incorporates the

referenced provisions of the Exchange Act.[12]

---

[11]  Most of the argument following U.S. Bank's statement of its contention is directed to a
different proposition, viz., "the Indentures obligate Finisar to provide the Trustee with copies of
all documents *required to be* filed with the SEC—not just those *actually filed.*"  (U.S. Bank's
Mot. at 14:2-4.)  That is not a controversial proposition:  Finisar and U.S. Bank do not disagree
about what must be provided, but only when.  According to Finisar and the Indentures, Finisar
was not required to file copies of its Reports with U.S. Bank until 15 days after it filed them with
the SEC; while according to U.S. Bank, Finisar was required to file them before.

[12]  Essentially identical language appears in Section 4.02 of the Indentures.

1  As has already been held by one federal court analyzing the issue, U.S. Bank's argument

2  fails because "[f]rom a purely grammatical standpoint, the phrase, 'which the Company is …

3  required to file with the Commission pursuant to Section 13 of 15(d) of the Exchange Act'"

4  simply "modifies the Indenture's contractual obligation to send copies by specifying those

5  financial reports that the Company is obligated to file." *UnitedHealth,* 538 F. Supp. 2d at 1113.

6  "The … reference to sections 13 and 15(d) of the Exchange Act" merely "specifies the particular

7  reports the obligor must provide to the trustee; it does not incorporate, either explicitly or

8  implicitly, SEC timing requirements." *Id.* at 1114.

9  The references to the Exchange Act stand in instructive and unmistakable contrast to the

10  genuinely incorporating reference that the Indentures make to the TIA.  As noted above, Section

11  4.02 of the Indentures concludes:  "The Company shall also comply with the other provisions of

12  TIA Section 314(a)."  *This* reference "clearly manifests the parties' intent to incorporate this

13  statutory provision as part of the Indenture," by dictating compliance therewith.  *Affiliated*

14  *Computer,* 2008 WL 373162, at *7.  However, the Exchange Act reference relied upon by U.S.

15  Bank does not similarly require compliance with the referenced statutes, but instead mentions the

16  statutes only as a way to single out certain reports.  Thus that reference "unambiguously *fails* to

17  incorporate." *Id.* (emphasis added).

18  **4.    Finisar Did Not Cause The Failure Of A Condition Precedent.**

19  U.S. Bank argues that "Finisar should not now be permitted to 'take advantage of its

20  failure to fulfill its obligation to file timely reports with the SEC by arguing that it has

21  consequently not breached its obligation to provide the Trustee with copies of such reports.'"

22  (U.S. Bank's Mot. at 13:13-16 [citation omitted].)  Finisar, having filed both its Reports with the

23  SEC and copies thereof with U.S. Bank, is not taking advantage of anything.  The issue, again, is

24  one of timing (not conditions):  under the Indentures, Finisar's obligation was to provide copies

25  of the Reports to U.S. Bank within 15 days of filing them with the SEC; which Finisar did.

26  **5.    U.S. Bank's Interpretation Of The Reporting Covenant Is Untenable.**

27  According to U.S. Bank, "[t]he reporting covenant requires the issuer to provide copies of

28  the SEC filings to the indenture trustee only to confirm that the reports have in fact been timely

**FINISAR'S MOTION FOR**
**SUMMARY JUDGMENT**

12.

CASE NO.: 5:07-CV-04052-JF-PVT

1  filed," thereby "ensur[ing] that … information is provided to the holders … not the indenture

2  trustee." (U.S. Bank's Mot. at 1:13-15, 17-19.) But "[i]f … the objective … was to insure filings

3  consistent with SEC requirements and guidelines, the parties could have simply declared so."

4  *Cyberonics*, 2007 WL 1729977, at *4. Forty-four of the first 78 words in Section 4.02 should

5  have been left out, and the sentence written: "The Company shall file with the Commission its

6  annual report and the information, documents and other reports which the Company is required to

7  file pursuant to Section 13 or 15(d) of the Exchange Act."[13]

8          Moreover, the only thing U.S. Bank ever does with reports Finisar provides is to file them

9  away, without even reviewing them. (See Jacobs Depo. at 185:23-186:7.) Furthermore, U.S.

10  Bank has never provided, and no Holder has ever asked U.S. Bank to provide, either the reports

11  or any information therein to the Holders. (*Id.* at 183:24-184:7, 185:17-22, 186:11-14.)[14] The

12  mere filing of reports with the SEC (and an inert trustee, such as U.S. Bank) would not ensure

13  that "information is provided to the holders."

14          **6.      The Weight Of Authority Decisively Favors Finisar.**

15          As noted above, the arguments and contentions of the parties relative to default are not

16  new, but instead have been heard and passed upon by no fewer than three federal courts; each of

17

---

18  [13]  With the words U.S. Bank's interpretation would render surplusage italicized, the sentence

19  actually reads: "The Company shall file *with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents and other reports* with the Commission, *copies of*

20  its annual report and *of* the information, documents and other reports *(or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe)* which the

21  Company is required to file *with the Commission* pursuant to Section 13 or 15(d) of the Exchange Act."

22  [14]  The reporting covenant that U.S. Bank claims was breached is something of an anachronism,

23  dating from an era when SEC filings were not readily available over the internet to any interested equity or debt holder. *See UnitedHealth*, 538 F. Supp. 2d at 1113. Because "there was no

24  technology by which copies of SEC reports could be easily obtained, and companies did not routinely provide reports to holders of debt," *id.* at 1114, the TIA required (1) "that copies of such

25  reports … be filed with the indenture trustee" and (2) "that summaries of these periodic reports be transmitted to the bondholders" by the trustee, H.R. REP. NO. 76-1016, at 35. Now that SEC

26  reports are readily available online, U.S. Bank no longer transmits summaries to the bondholders, and so Finisar's coordinate obligation to provide reports, stemming from the 1939 statute, no

27  longer serves any purpose. It is ironic that U.S. Bank is trying to capitalize on Finisar's supposed noncompliance with an outdated reporting system to which U.S. Bank itself no longer adheres.

28  Apparently, "[d]efendant's [threat] to accelerate the Notes was not caused by a lack of information, but by its desire to realize a windfall." *UnitedHealth*, 538 F. Supp. 2d at 1115.

**FINISAR'S MOTION FOR**                    13.
**SUMMARY JUDGMENT**                              CASE NO.: 5:07-CV-04052-JF-PVT

which has ruled, on indistinguishable facts, that no default occurred. For convenient reference, the corresponding language addressed by those other courts is set forth in the table below:

| Case | Contractual Language |
|---|---|
| *UnitedHealth*, 538 F. Supp. 2d at 1110 | [T]he Company shall cause copies of … reports … which the Company is then required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act to be filed with the Trustee … within 15 days of filing with the Commission. The Company shall also comply with the provisions of TIA §314(a). |
| *Cyberonics*, 2007 WL 1729977, at *1 | The Company shall deliver to the Trustee within 15 days after it files them with the SEC copies of … reports … which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act … . The Company shall also comply with the other provisions of Section 314(a) of the TIA. |
| *Affiliated Computer*, 2008 WL 373162, at *2 | The Company shall file with the Trustee, within 15 days after it files the same with the SEC, copies of … reports … that the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act. The Company shall also comply with the provisions of the TIA 314(a). |

**a. Because U.S. Bank Persuaded The Court That This Is A Federal Question, The Court Should Follow Federal Authority.**

Asserting "[t]here is a split in opinion," (U.S. Bank's Mot. at 1:11), U.S. Bank argues that this Court should disregard the holdings of other federal tribunals and instead follow *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d 752 (table), 2006 WL 2670143 (Sup. Ct. N.Y. County Sept. 18, 2006), an (unpublished[15]) New York trial court decision. Yet, U.S. Bank defeated Finisar's motion to remand this Action back to the state court in which it originated by persuading this Court that disposition of the case turns on federal law. Accordingly, U.S. Bank should not now be heard to argue that a state court decision trumps the federal precedents. *See Pauk v. Board of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 866 n. 6 (2d Cir. 1981) ("the state court decision cannot preclude a federal court's more authoritative decision on matters of federal law").

**b. The Federal Decisions Recognized The Purpose Of The Reporting Covenant.**

U.S. Bank's only substantive argument for privileging *BearingPoint* over the presumptively more authoritative and uniform federal decisions is that *BearingPoint* was supposedly the only case to have discerned "that the purpose of the reporting covenant is to ensure that … information is provided to the holders … not the indenture trustee." (U.S. Bank's

[15] When giving pinpoint citations for *BearingPoint,* U.S. Bank cites to 824 N.Y.S.2d 752. However, the reporter only notes the *BearingPoint* decision in a table; the opinion itself is unpublished. The specific page numbers U.S. Bank cites presumably are to the Westlaw version.

1   Mot. at 1:13-15.) U.S. Bank supports its contention by noting that one of the federal opinions

2   remarked that the contractual reporting covenant was intended "to keep the trustee informed of

3   company developments." (U.S. Bank's Mot. at 11:6.) That argument presumes a false

4   dichotomy between the provision of information to the trustee as opposed to the noteholders. As

5   the federal cases explained, the reason for providing information to the trustee is precisely to

6   "ensure[] that *the note holders*" possess the information "*through* the trustee." *Affiliated*

7   *Computer*, 2008 WL 373162, at *6 (emphasis added); *see also UnitedHealth*, 538 F. Supp. 2d at

8   1115 (recognizing "the TIA's purpose of keeping *the Noteholders* fully and fairly informed"

9   [emphasis added]).

10                      **c.    *BearingPoint* Is Not Persuasive.**

11          *BearingPoint* has been considered and rejected by all of the federal authorities, each of

12   which recognized that as a trial court disposition, *BearingPoint* is no more a binding

13   determination of New York's state law than it is of federal law. *UnitedHealth,* 538 F. Supp. 2d at

14   1112; *Affiliated Computer,* 2008 WL 373162, at *7; *Cyberonics,* 2007 WL 1729977, at *5.

15   Beyond that, the court in *UnitedHealth* remarked, "[i]t seems likely … that the *BearingPoint*

16   court felt compelled to reexamine its decision when it granted a motion for rehearing"; and

17   refrained from addressing the decision further. 538 F. Supp. 2d at 1112. *Affiliated Computer,* for

18   its part, simply found *BearingPoint* "unpersuasive." *Affiliated Computer,* 2008 WL 373162, at

19   *7. Having conducted its own analysis of the contractual and statutory language, the *Affiliated*

20   *Computer* court reported that it "respectfully disagree[d]" with *BearingPoint*'s holdings "that the

21   indenture provision … incorporated the Exchange Act" and "that … the TIA and the indenture …

22   obligated the indenture issuer to timely file with the SEC." 2008 WL 373162, at *7.

23          Suggesting that *BearingPoint* may be inapposite altogether, *Cyberonics* found it "worth

24   noting … that in *BearingPoint,* the company disavowed any obligation to file information with

25   the SEC whatsoever." 2007 WL 1729977, at *5. In *BearingPoint,* the debt issuer argued from

26   the premise "that there was no obligation to file reports with the SEC under the Indenture" to "the

27   inexorable conclusion … that there was no Default Event." *BearingPoint,* 2006 WL 2670143, at

28   *8. This Court need not decide that Finisar was without obligation to file its Reports with the

1    SEC in order to grant Finisar's Motion.  Instead, all this Court has to decide is that the Indentures

2    did not require Finisar to provide copies of its Reports to U.S. Bank until 15 days after it filed the

3    originals with the SEC (and did not impose any deadlines for Finisar to file the originals with the

4    SEC).  Because that issue was not even before the *BearingPoint* court, "such decision is not

5    precedent to be followed in a subsequent case in which the issue arises." *National Cable*

6    *Television Ass'n, Inc. v. American Cinema Eds., Inc.,* 937 F.2d 1572, 1581 (Fed. Cir. 1991).

7                    **d.    U.S. Bank's Attempt To Distinguish *UnitedHealth* Fails.**

8            U.S. Bank tries to distinguish *UnitedHealth,* in particular, by arguing, "the court … found

9    persuasive the fact that the issuer's notification of late filing … included detailed financial

10   information," which "did not differ materially" from the information "later provide[d] in its Form

11   10-Q."  (U.S. Bank's Mot. at 11:17-22.)  But as stated at *UnitedHealth,* 538 F. Supp. 2d at 1112,

12   that case turned on the same issues of contractual and statutory interpretation presented in this

13   case, not the adequacy of interim financial reports:

14           The Court finds, based on the Indenture's plain meaning, that plaintiff
             fulfilled its contractual duties when it provided defendant with copies of
15           its SEC filings within 15 days of their being filed with the Commission.
             Similarly, TIA Section 314 requires only that plaintiff provide the trustee
16           with copies of SEC filings, establishing no deadline whatsoever.
             Accordingly, plaintiff's delay in filing its Form 10-Q does not violate the
17           Indenture's terms.  For these reasons, plaintiff has not defaulted …[16]

18   **B.    Even If Finisar Had Defaulted, U.S. Bank Could Not Accelerate Now That
19           The Alleged Default Has Been Cured.**

         As shown above, Finisar did not default.  But even if it had, acceleration would no longer
20
     be permitted now that Finisar has filed its Reports.
21
         The acceleration remedy is created by Section 6.02 of the Indentures, which provides:
22
23           If an Event of Default … occurs *and is continuing*, the Trustee by notice
             to the Company, or the Holders of at least 25% in aggregate principal
24           amount of the Notes at the time outstanding by notice to the Company and
             the Trustee, may declare the Notes due and payable at their principal
25           amount together with accrued acceleration.

---

26   [16]  Even if interim financial disclosures were the issue, Finisar should still prevail because U.S.
     Bank admits that Finisar made SEC filings disclosing financial information throughout the period
27   in which the filing of Finisar's Reports was delayed by the pendency of its internal investigation.
     (Jacobs Decl., ¶ 16, Exs. 16-20.)  U.S. Bank's insinuations about the adequacy of those
28   disclosures are mere attorney argument, which "cannot produce evidence of a triable issue of
     fact."  *Genentech, Inc. v. Insmed Inc.,* 436 F. Supp. 2d 1080, 1092 (N.D. Cal. 2006).

1   As U.S. Bank itself explained, in connection with a similarly worded indenture at issue in another

2   case, "[u]nder Section 6.02 of the Indenture, an acceleration notice is only valid if it is issued

3   while the Event of Default is 'continuing.'" (U.S. Bank Nat'l Ass'n's Opp. to Prelim. Inj.

4   [reproduced as Req. J. Not., Ex. 4] at 31, *Landry's Restaurants, Inc. v. Post Advisory Group, LLC*

5   (S.D. Tex. Aug. 16, 2007) (No. 3:07-406).) Because Finisar filed the Reports with both the SEC

6   and U.S. Bank on December 4, 2007, (Am. Compl., ¶ 32; Answer, ¶ 32), the supposed Events of

7   Default alleged by U.S. Bank are no longer continuing. U.S. Bank failed to issue any acceleration

8   notice while the supposed Events were continuing (Am. Compl., ¶¶ 40, 43; Answer, ¶¶ 40, 43),

9   and the contract bars it from doing so now that the alleged Events are *not* continuing.

10   According to U.S. Bank, however, the supposed Events of Default are still continuing and

11   acceleration remains an available (albeit unexercised) remedy. U.S. Bank argues that once the

12   alleged Defaults ripened into Events of Default, they could no longer be cured, but only waived;

13   and since they have not been waived, they are still continuing. Based upon the very language of

14   the Indentures, U.S. Bank's argument is without merit.

15          **1.     Events Of Default Can Be Cured.**

16   According to U.S. Bank, the supposed Defaults ripened into Events of Default pursuant to

17   Section 6.01(4) of the Indentures, which provides: "An 'Event of Default' occurs if: … (4) the

18   Company fails to perform or observe any … term … contained in … this Indenture for a period of

19   60 days after receipt by the Company of a Notice of Default." (U.S. Bank's Mot. at 16.) U.S.

20   Bank argues, "[b]ecause the contractually agreed-upon cure period has passed, Finisar can cure

21   the existing Events of Default only by obtaining a waiver from the holders." (Id. at 16:14-16.)

22   That is, according to U.S. Bank, once a Default ripens into an Event of Default it can no longer be

23   cured (but can only be waived). Yet again, the plain language of the contracts is to the contrary.

24   Recognizing that a Default can be cured, before it ripens into an Event of Default, Section

25   6.01 of the Indentures provides: "A Default under clause (4) … is not an Event of Default until

26   the Trustee notifies the Company … of the Default and the Company does not cure such Default

27   (and such Default is not waived) within the time specified in clause (4)." Other Sections of the

28   Indentures similarly recognize that a matured *Event* of Default can also be cured: Section 6.02 of

**FINISAR'S MOTION FOR**                    17.
**SUMMARY JUDGMENT**                              CASE NO.: 5:07-CV-04052-JF-PVT

1    the Indentures provides, in its third paragraph, that certain actions may be taken "if all existing

2    Events of Default have been cured or waived"; the first paragraph of Section 7.01 and Section

3    7.02(a) specify the trustee's duties "after the curing or waiving of all such Events of Default

4    which may have occurred"; and Section 7.02(f) specifies those duties "after the curing or waiving

5    of all such Events of Default." U.S. Bank's contention that a Default can only be cured within the

6    60-day period before it ripens into an Event of Default is inconsistent with the Indentures'

7    recognition that an *Event* of Default, too, can be cured.

8              **2.    An Event Of Default Does Not Continue After The Default Is Cured.**

9         U.S. Bank's theory that an Event of Default can continue even after the underlying

10   Default has been cured is also belied by the express contractual definitions. Section 1.01 of the

11   Indentures defines "Default" as "any event which is, or after notice or passage of time or both

12   would be, an Event of Default." The terms "Default" and "Event of Default" do not name

13   separate events. Rather, they are different names attached to the same event at different times.

14   Thus if the Default is not continuing (i.e., it has been cured), neither is the Event of Default.

15             **3.    Waiver Is Not The Issue.**

16        As an alternative to its argument that Events of Default cannot be cured, U.S. Bank asserts

17   that after more than a year's delay, it could still accelerate, even if the Events it alleges have been

18   cured, because it claims it never waived that supposed right. This alternative contention misses

19   the point. Section 6.02 of the Indentures permits acceleration only while an Event of Default

20   occurs *and is continuing*. Acceleration cannot be declared absent a *continuing* Event of Default

21   because the contractual conditions therefor are not satisfied, not because some supposed right to

22   do so was waived.[17]

23        In a footnote, U.S. Bank insists that "[i]t is inequitable for Finisar to even raise the

24   argument that U.S. Bank cannot declare an acceleration." (U.S. Bank's Mot. at 17:22-23.)

25   Although not clearly stated, the argument appears to be that by commencing this Action, Finisar

26   somehow prevented U.S. Bank from declaring acceleration while the alleged Events of Default

27   _____

[17]  Finisar believes U.S. Bank *has* waived any supposed right to accelerate, through prejudicial
28   delay. But that is not Finisar's point, here.

1   were continuing. Finisar's assessment of the equities is different, and tracks that of the

2   *UnitedHealth* court[18]; but those need not be weighed here because U.S. Bank's argument is

3   falsely premised: the mere pendency of this Action did not prevent U.S. Bank from attempting to

4   accelerate before Finisar filed its Reports.

5        U.S. Bank also argues, "[t]o interpret the indentures as Finisar suggests, would require the

6   trustee and/or holders to immediately accelerate all obligations under the indentures without

7   discussion or negotiation to preserve their rights." (U.S. Bank's Mot. at 2:1-3.) That contention

8   overlooks the fact that the Indentures provide what U.S. Bank characterizes as a "sixty day cure

9   period" between a notice of Default and the occurrence of an Event of Default, plenty of time for

10  "discussion or negotiation." (*See* U.S. Bank's Mot. at 16:13-14.)

11       **C.**    **U.S. Bank Has Articulated No Viable Claim For Damages.**

12       As noted above, U.S. Bank has attempted to plead a counterclaim for damages allegedly

13  suffered by the Holders. As shown in Finisar's co-pending Motion to Dismiss, that claim should

14  be dismissed on procedural grounds and because there is no general damages remedy under the

15  Indentures. (*See* Jacobs Depo. at 164:8 ["The only remedy under the indenture is acceleration."].)

16       U.S. Bank's purported claim for damages fails for other reasons, as well. First, Section

17  6.03 of the Indentures permits U.S. Bank to bring suit in the Holders' behalf—to enforce

18  acceleration, not for general damages—only while an Event of Default occurs *and is continuing*.

19  As shown above, none of the supposed Events alleged by U.S. Bank is continuing.

20       Second, U.S. Bank has identified no damages caused by any default under the Indentures.

21  Allegedly, the Holders were injured because "[i]nvestors learned, more than one year after the

22  fact, that Finisar had experienced losses far greater than that which it had previously reported."

23  (U.S. Bank's Mot. at 10:19-20.) However, as detailed in the table provided at the top of page 7 of

24  U.S. Bank's Motion, those previously unreported losses were incurred *before* the periods covered

25  by the Reports at issue in this case. If the Holders had incomplete information about *those* losses,

26  that is because the losses were not known and so were not disclosed in the (timely-filed) reports

---

27  [18] "If the principle that one who seeks equity must do equity means anything, the Noteholders'
28  suggestion that they should reap a windfall profit from UHG under these circumstances should
    turn to stone in their mouths." *UnitedHealth,* 538 F. Supp. 2d at 1115-1116.

1   for the periods in which they were incurred.  Accordingly, if the Holders were injured, it was not

2   by the conduct at issue here.[19]

3       **D.    Finisar Should Not Have To Pay U.S. Bank's Fees.**

4          Early this year, U.S. Bank invoiced Finisar for its attorney's fees, claiming that Section

5   7.06 of the Indentures obligates Finisar to pay them.  To stave off any pretense to an Event of

6   Default justifying acceleration, Finisar paid the amount demanded, under protest and subject to

7   reservation of rights.  (Jacobs Decl., ¶ 24, Ex 31.)  Because U.S. Bank is not entitled to recover its

8   fees, this Court should order U.S. Bank to return that money ($317,817.58) to Finisar.

9       **1.    Section 7.06 Of The Indentures Includes A Fees Clause And An
       Indemnity Clause.**

10

11         U.S. Bank claims fees pursuant to Section 7.06 of the Indentures, which in part provides:

12            The Company covenants and agrees to pay or reimburse the Trustee … for
        all reasonable expenses … incurred … in accordance with any of the
        provisions of this Indenture (including … the reasonable compensation …

13            of its counsel …) except any such expense … as may arise from its
        negligence or bad faith.  The Company also covenants to indemnify the

14            Trustee … against, any … expense incurred without negligence or bad
        faith on its part, arising out of or in connection with the acceptance or

15            administration of this Indenture … including the costs and expenses of
        defending itself against or investigating any claim of liability in the

16            premises.

17  Analytically, the first sentence is a fees clause obligating Finisar "to pay or reimburse the Trustee

18  … for all reasonable expenses … incurred … in accordance with any of the provisions of this

19  Indenture (including … the reasonable compensation … of its counsel …)"; while the second is

20  an indemnity clause, obligating Finisar "to indemnify the Trustee … against, any … expense …

21  _____

22  [19]   The previously unreported losses for earlier periods were brought to light by the internal
       investigation that delayed Finisar's filing of its Reports.  From the outset, Finisar kept the

23  investing public and U.S. Bank apprised of the pendency and possible implications of its
       investigation through Forms 8-K filed with the SEC, copies of which were also provided to U.S.

24  Bank.  (*See, e.g.*, Jacobs Decl., Exs. 4, 16.)  Finisar disclosed the preliminary results of its
       investigation in a Form 8-K filed on June 12, 2007, then disclosed the final results in the Reports

25  filed in December 4, 2007.  (Jacobs Decl., Ex. 19.)  "The Indenture's requirement [to] deliver to
       the Trustee a copy of … required SEC filings . . . . ensures that the note holders through the

26  Trustee possess the same financial information concerning the issuing company that the rest of
       the investment public has."  *Affiliated Computer,* 2008 WL 373162, at *6.  Throughout, the

27  Holders have had the same information as the rest of the investing public; what is more, Finisar
       offered to provide U.S. Bank and the Holders still further information, but those offers were not

28  accepted (*see* Jacobs Depo. at 95-104.)  The Holders cannot claim injury resulting from a failure
       by Finisar to share available information with them.

**FINISAR'S MOTION FOR**               20.
**SUMMARY JUDGMENT**                                   CASE NO.: 5:07-CV-04052-JF-PVT

1    arising out of or in connection with the acceptance or administration of this Indenture …

2    including the costs and expenses of defending itself against or investigating any claim of liability

3    in the premises."  Expenses incurred negligently or in bad faith are expressly excluded from both

4    the fees and indemnification clauses.

5             **2.    U.S. Bank Cannot Recover Under The Fees Clause Because Its Fees
                      Were Not Incurred In Accordance With The Indentures.**

6    The fees clause obligates Finisar to pay *only* counsel fees "incurred … in accordance with

7    … the provisions of this Indenture."  *None* of U.S. Bank's fees was incurred "in accordance with"

8    the Indentures because Finisar was never in default; Finisar not having been in default, U.S.

9    Bank's issuance and litigation of notices of default was not in accordance with the Indentures.

10   Had Finisar been in default prior to its filing of the Reports on December 4, 2007, still any fees

11   incurred by U.S. Bank thereafter would not have been incurred in accordance with the Indentures.

12   U.S. Bank's authorities are inapposite because they address a trustee's right to recover

13   fees incurred as a result of a note issuer's breach, *see U.S. Bank Nat'l Assoc. v. MOA Hospitality,*

14   No. 601686/2007, at 19 (Sup. Ct. N.Y. County Dec. 18, 2007) ("[i]n this case, the Trustee has

15   stated meritorious causes of action against MOA on behalf of the note holders"); *Bayview Gen.*

16   *Hosp. v. Assoc. Hosp. Serv. of N.Y.,* 256 N.Y.S.2d 471, 475 (Sup. Ct. N.Y. County 1964) ("… by

17   this admitted breach …"), or otherwise incurred "for performance of its duties," *U.S. Trust Co. of*

18   *N.Y. v. Pardo (In re W.T. Grant Co.),* 119 B.R. 898, 901 (Bankr. S.D.N.Y. 1990).  Because

19   Finisar never defaulted, neither applies, here.  Finisar contracted to pay fees U.S. Bank might

20   incur representing and protecting the genuine legal interests of the Holders under the Indentures

21   (*cf.* U.S. Bank's Mot. at 19:18-20), not fees incurred trying to exact unwarranted concessions.

22            **3.    U.S. Bank Cannot Recover Fees Under The Indemnity Clause.**

23   The indemnity clause, in turn, requires Finisar to "indemnify the Trustee" against

24   expenses arising "in connection with the … administration of this Indenture … including the

25   costs and expenses of defending itself against or investigating any claim of liability in the

26

27

28

1    premises." U.S. Bank apparently thinks this clause entitles it to the fees it has incurred litigating

2    Finisar's declaratory relief claims, regardless of whether it prevails; but the law is otherwise.[20]

### a.    The Indemnity Clause Does Not Authorize Recovery Of Fees Incurred Litigating With Finisar.

Under New York law,

> [a]lthough the words [in a contract] might 'seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.' This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.

*Hooper v. AGS Computers,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989)

(citations omitted). Regarding indemnification of attorney's fees, in particular,

> [i]nasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

The indemnity clause of Section 7.06 includes no language reflecting any intention to waive the

benefit of the rule that the parties would bear their own fees in litigation between them.

### b.    The Indemnity Clause Does Not Authorize Recovery Of Fees Incurred Litigating Declaratory Relief Claims.

The indemnity clause requires Finisar to indemnify U.S. Bank against "the costs and

expenses of defending itself against or investigating any claim of liability in the premises"

brought by third parties. By singling out precisely "the costs and expenses of defending itself

against or investigating any claim of liability in the premises," the indemnity clause excludes all

others from the scope of Finisar's indemnity obligation. *See Eden Music Corp. v. Times Square*

*Music Publ'ns Co.,* 127 A.D.2d 161, 164, 514 N.Y.S.2d 3 (N.Y. App. Div. 1987) (recognizing

"[t]he principle of *expressio unius est exclusio alterius,* i.e., 'the expression in the contract of one

or more things of a class implies exclusion of all not expressed'").

---

[20] By operation of California Civil Code section 1717(a) and California Code of Civil Procedure section 1033.5(a)(10), the prevailing party in this case will be entitled to recover its fees as costs of suit, pursuant to the fees clause of Section 7.06. But U.S. Bank cannot recover its fees as a remedy for a pleaded indemnity claim, without regard to whether it prevails on the other claims.

Finisar and U.S. Bank have been litigating declaratory relief claims, not liability claims. Accordingly, the fees Finisar paid were not incurred defending against or investigating any claim of liability in the premises, and so cannot be recovered pursuant to the indemnity clause of Section 7.06. Because U.S. Bank likewise cannot recover pursuant to the fees clause, it has no entitlement to fees under Section 7.06 whatsoever.

### 4. U.S. Bank Cannot Recover Because Its Fees Were Incurred Negligently And In Bad Faith.

Even if U.S. Bank were otherwise entitled to recover fees pursuant to either the fees or the indemnity clause of Section 7.06, still its claim would have to be rejected (or at least sharply limited) because both clauses expressly exclude any expense incurred negligently or in bad faith.

### a. U.S. Bank Is Litigating To Obtain An Unwarranted Windfall.

"Defendant's [threat] to accelerate the Notes was not caused by a lack of information, but by its desire to realize a windfall." *See UnitedHealth,* 538 F. Supp. 2d at 1115. The ongoing attempt to exact unwarranted concessions from Finisar for allegedly defaulting under Section 4.02 has been made, and U.S. Bank's resulting fees have been incurred, in bad faith.

### b. U.S. Bank Is Litigating Imprudently.

U.S. Bank claims it was appointed "to represent and protect the interests of the noteholders." (U.S. Bank's Mot. at 19:19.) However, its duty under the Indentures is not one of zealous advocacy but of prudence. (See Jacobs Decl., Exs. 1-3, §7.01 ["the Trustee shall exercise such of the rights and powers vested in it by this Indenture … as a prudent man would … in the conduct of his own affairs"].) U.S. Bank has violated that charge.

Instead of litigating as a reasonable person would, U.S. Bank has fallen prey to the moral hazard created by its (mistaken) belief that Finisar would have to pay its fees, regardless of the outcome. *See Gerow v. Rohm & Haas Co.,* 308 F.3d 721, 725-726 (7th Cir. 2002) ("An opportunity to litigate on the adversary's dime, without any need to prevail in order to collect, creates a moral hazard, which is mitigated by the requirement that the fees be incurred 'reasonably.'"). A *reasonable* person would not have started this fight (on January 4, 2007) by sending notices of default alleging that a contractual provision requiring reports to be delivered

1    "within 15 days *after* … fil[ing] with the Commission" really required them to be delivered

2    within 15 days after coming due, whether or not then filed.  A *reasonable* person would not then

3    have spent hundreds of thousands of *its own* dollars defending the validity of the notices.  A

4    *reasonable* person would not then have spent still more of its own money to continue litigating

5    after the contrary federal authorities began to accumulate (*Cyberonics* was decided on June 13,

6    2007).  And a *reasonable* person would not have continued litigating even after Finisar filed its

7    Reports on December 4, 2007, in the face of contractual language permitting acceleration only

8    while an Event of Default is continuing.  Only a party succumbing to moral hazard would litigate

9    as U.S. Bank has.

10                          **c.      U.S. Bank Had Other Options.**

11           U.S. Bank had options other than senselessly incurring hundreds of thousands of dollars in

12    fees.  First, pursuant to Section 7.02(d) of the Indentures, U.S. Bank could have required the

13    Holders for whom it is trying to exact "exceedingly favorable" concessions to indemnify it

14    against the costs incurred litigating the unreasonable positions.  (*See* Jacobs Decl., Exs. 1-3.)

15    U.S. Bank has done precisely that in other cases.  (*See, e.g.,* U.S. Bank Nat'l Ass'n's Opp. to

16    Prelim. Inj. [Req. J. Not., Ex. D] at 10, *Landry's Restaurants, Inc. v. Post Advisory Group, LLC*

17    (S.D. Tex. Aug. 16, 2007) (No. 3:07-406).)  That way, the parties standing to benefit would also

18    bear the risk of failure, and the moral hazard discussed above would have been displaced by

19    incentives to make efficient, *rational* litigation decisions.  The following testimony suggests the

20    result would have been a much earlier end to the litigation:

21           Q.      … [W]hat purpose did continuing the litigation serve … ?

22           A.      It's really as a fiduciary for our holders, we need a ruling from the judge so that we
                     can assess -- you know, our holders can assess what their next steps would be.

23           Q.      Have the holders been informed that there are three Federal District Courts that
                     have ruled on this issue?

24           A.      Yes.

25           Q.      And have any of the holders indicated they need more guidance than those three
                     Federal Court decisions?

26           A.      No.

27    (Jacobs Depo. at 192:8-21.)

28

1    Second, Section 7.02(c) of the Indentures authorizes U.S. Bank to "consult with counsel

2    of its selection" and shields it from liability for taking or omitting "any action … in good faith

3    and in accordance with such advice or Opinion of Counsel."  The responsible course, especially

4    once the federal opinions adopting Finisar's position began to accumulate, would have been for

5    U.S. Bank to secure and rely upon an opinion of counsel.  The existence and solidity of the

6    federal opinions would have conclusively established U.S. Bank's good faith in ending the

7    litigation, shielding it from any liability.

8    U.S. Bank recklessly pursued meritless claims, (mistakenly) secure in the conviction that

9    any upside would be realized by gratified Holders while any downside would be borne by Finisar.

10    That irresponsible behavior should not be rewarded by permitting U.S. Bank to recover the fees

11    thus incurred.

12    **V.    CONCLUSION**

13    For all of the foregoing reasons, Finisar's Motion should be granted.  This Court should

14    decree that no default occurred under the Indentures and no acceleration may now be declared;

15    and the Court should further order U.S. Bank to return to Finisar the $317,817.58 in fees it has

16    paid under protest.

17    DATED:  June 6, 2008                              Respectfully submitted,

18                                                      Sterling A. Brennan
                                                        L. Rex Sears
19                                                      WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

20                                                      Caroline McIntyre
                                                        BERGESON, LLP
21
                                                        By____/s/ Sterling A. Brennan_____
22                                                              Sterling A. Brennan
                                                        Attorneys for Plaintiff and Counter-defendant
23                                                      FINISAR CORPORATION

24

25

26

27

28

1    **GLOSSARY OF DEFINED TERMS**

2    The following terms are used in the following Notice of Motion and Points and

3    Authorities with initial capitals and the significations indicated:

4    *Parties*

5    "Finisar" means plaintiff and counter-defendant Finisar Corporation.

6    "U.S. Bank" means defendant and counterclaimant U.S. Bank Trust National Association.

7    *Pleadings*

8    "Action" means the above-captioned action.

9    "Amended Complaint" means Plaintiff Finisar Corporation's First Amended Complaint,

10   dated and filed in the Action on March 19, 2008.

11   "Answer" means Defendant and Counterclaim Plaintiff U.S. Bank Trust National

12   Association's Answer to First Amended Complaint and Counterclaims, dated and filed in the

13   Action on April 18, 2008.

14   "Brennan Declaration" means Declaration of Sterling A. Brennan in Support of Plaintiff

15   Finisar Corporation's Motion for Summary Judgment, dated and filed in the Action on June 6,

16   2008.

17   "U.S. Bank's Motion" means U.S. Bank Trust National Association's Notice of Motion

18   and Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof,

19   dated and filed in the Action on April 24, 2008.

20   "Jacobs Declaration" means Declaration of Diana Jacobs in Support of Motion of U.S.

21   Bank Trust National Association for Summary Judgment, dated and filed in the Action on April

22   24, 2008.

23   "Jacobs Deposition" means the transcript of the March 26, 2008 deposition of Diana L.

24   Jacobs, both individually and in her capacity as U.S. Bank's designee pursuant to Federal Rule of

25   Procedure 30(b)(6), cited portions of which are reproduced in Exhibit C to the Brennan

26   Declaration.

27   "Motion" means Plaintiff Finisar Corporation's Motion for Summary Judgment, dated and

28   filed in the Action on June 6, 2008.

FINISAR'S MOTION FOR                    26.
SUMMARY JUDGMENT                                        CASE NO.: 5:07-CV-04052-JF-PVT

1    "Motion to Dismiss" means Plaintiff Finisar Corporation's Motion to (1) Dismiss and (2)

2    Strike Counterclaims, dated and filed in the Action on May 8, 2008.

3    "Request for Judicial Notice" means Plaintiff Finisar Corporation's Request for Judicial

4    Notice in Support of its Motion for Summary Judgment.

5    "Workman Declaration" means Declaration of Stephen K. Workman in Support of

6    Plaintiff Finisar Corporation's Motion for Summary Judgment, dated and filed in the Action on

7    June 6, 2008.

8    *Other*

9    "Indentures" means the trust indentures by and between Finisar and U.S. Bank truly and

10    correctly reproduced as Exhibits A, B, and C to the Amended Complaint (and also attached as

11    Exhibits 1, 2, and 3 to the Jacobs Declaration).

12    "Notes" means the convertible notes issued by Finisar under the Indentures.

13    "Holders" means the holders of the Notes.

14    "Reports" means Finisar's Forms 10-Q for fiscal quarters ended October 29, 2006 and

15    January 31, 2007, and Form 10-K for the year ended April 30, 2007.

16    "SEC" or "Commission" means the United States Securities and Exchange Commission.

17

18

19

20

21

22

23

24

25

26

27

28

# TEXT OF GOVERNING INDENTURE PROVISIONS

The full text of each of the four Indenture provisions governing the parties' disputes— Sections 4.02, 6.02, 6.03, and 7.06—is given below, with key language italicized. There are some minor differences between the Indentures, none of them material. The base text below is taken from the most recent Indenture, while variations are noted in the margin.

SECTION 4.02    Commission[1] and Other Reports. *The Company shall file with the Trustee, within 15 days after it files* such annual and quarterly reports, information, documents and other reports *with the Commission, copies of its* annual report and of the information, documents and other *reports* (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) *which the Company is required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act.* If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to be[2] subject to such reporting requirements. The Company also shall comply with the other provisions of TIA Section 314(a).

SECTION 6.02    Acceleration. *If an Event of Default* (other than an Event of Default specified in Section 6.01(6) or (7)[3]) *occurs and is continuing, the Trustee by notice to the Company,* or the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding by notice to the Company and the Trustee, *may declare the Notes due and payable at their principal amount together with accrued interest.* Upon a declaration of acceleration, such principal and accrued and unpaid interest to the date of payment shall be immediately due and payable.

If an Event of Default specified in Section 6.01(6) or (7) above occurs and is continuing, then the principal and the interest on all the Notes shall become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Noteholders.

The Holders of a majority in aggregate principal amount of the Notes at the time outstanding, by notice to the Trustee (and without notice to any other Noteholder) may rescind or annul an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default have been cured or waived except nonpayment of the principal and any accrued cash interest that have become due solely as a result of acceleration and if all amounts due

---

[1]  The earliest of the three Indentures uses "SEC" rather than "Commission" throughout Section 4.02.

[2]  The earliest of the three Indentures has "have been" in place of "be," so that the phrase reads: "… had it continued to have been subject …"

[3]  Subdivisions (6) and (7) of Section 6.01, relating to insolvency, are not here implicated.

1  to the Trustee under Section 7.06 have been paid.  No such rescission shall
   affect any subsequent Default or impair any right consequent thereto.

2          SECTION 6.03      Other Remedies.  If an Event of Default
   *occurs and is continuing,* the Trustee may pursue any available remedy to
3  *collect the payment of the principal*[4] *and any accrued cash interest* on the
   Notes *or* to *enforce the performance* of any provision of the Notes or this
4  Indenture.

5          The Trustee may maintain a proceeding even if the Trustee does
   not possess any of the Notes or produce any of the Notes in the
6  proceeding.  A delay or omission by the Trustee or any Noteholder in
   exercising any right or remedy accruing upon an Event of Default shall not
7  impair the right or remedy or constitute a waiver of, or acquiescence in,
   the Event of Default.  No remedy is exclusive of any other remedy.  All
8  available remedies are cumulative.

9          SECTION 7.06      Compensation and Indemnification of
   Trustee and Its Prior Claim.  The Company covenants and agrees to pay to
10 the Trustee from time to time, and the Trustee shall be entitled to, such
   compensation (which shall not be limited by any provision of law in
11 regard to the compensation of a trustee of an express trust) to be agreed to
   in writing by the Trustee and the Company, and *the Company covenants*
12 *and agrees to pay or reimburse the Trustee* and each predecessor Trustee
   upon its request *for all reasonable expenses,* disbursements and advances
13 *incurred* or made by or on behalf of it *in accordance with any of the*
   *provisions of this Indenture (including (i) the reasonable compensation*
14 *and the expenses and disbursements of its counsel* and of all agents and
   other persons not regularly in its employ and (ii) interest at the prime rate
15 on any disbursements and advances made by the Trustee and not paid by
   the Company within 5 days after receipt of an invoice for such
16 disbursement or advance) *except any such expense, disbursement or*
   *advance as may arise from its negligence or bad faith.*  The Company also
17 covenants to indemnify the Trustee and each predecessor Trustee for, and
   to hold it harmless against, any loss, liability or expense incurred without
18 negligence or bad faith on its part, arising out of or in connection with the
   acceptance or administration of this Indenture or the trusts hereunder and
19 its duties hereunder, including the costs and expenses of defending itself
   against or investigating any claim of liability in the premises.  The
20 obligations of the Company under this Section 7.06 to compensate and
   indemnify the Trustee and each predecessor Trustee and to pay or
21 reimburse the Trustee and each predecessor Trustee for expenses,
   disbursements and advances shall constitute additional indebtedness
22 hereunder and shall survive the satisfaction and discharge of this
   Indenture.  Such additional indebtedness shall be a senior claim to that of
23 the Notes upon all property and funds held or collected by the Trustee as
   such, except funds held in trust for the benefit of the Holders of particular
24 Notes, and the Notes are hereby effectively subordinated to such senior
   claim to such extent.  The provisions of this Section 7.06 shall survive the
25 termination of this Indenture.  When the Trustee incurs expenses or
   renders services in connection with an Event of Default specified in

26 _____
27 [4] Immediately following the word "principal," the earliest of the three Indentures inserts the
   phrase "the premium, if any," set off with commas; so that the phrase reads: "… payment of the
28 principal, the premium, if any, and any accrued cash interest …"

1

2

Section 6.01 or in connection with Article 6[5] hereof, the expenses (including the reasonable fees and expenses of its counsel) and the compensation for services in connection therewith are to constitute expenses of administration under any bankruptcy law.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[5] Both of the earlier Indentures use the word "Six" in place of the numeral "6."

**FINISAR'S MOTION FOR**
**SUMMARY JUDGMENT**

30.

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on June 6, 2008, I electronically filed the foregoing with the Clerk of

3  the Court using the CM/ECF system which will send notification of such filing to the following:

4  D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com;

5  Eva K. Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; Edward T.

6  Wahl, ewahl@faegre.com and Paul T. Friedman, pfriedman@mofo.com.

7
                                   **WORKMAN NYDEGGER**
8

9                                  /s/ Sterling A. Brennan
10                                 STERLING A. BRENNAN
                                   **WORKMAN NYDEGGER**
11                                 1000 Eagle Gate Tower
                                   60 East South Temple
12                                 Salt Lake City, UT  84111
                                   Telephone:  (801) 533-9800
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28