# Exhibit A

LEXSEE 38 BUS. LAW 741

Copyright (c) 1983 American Bar Association
The Business Lawyer

February, 1983

*38 Bus. Law. 741*

**LENGTH:** 12817 words

**SECTION:** REPORT

**TITLE:** MODEL SIMPLIFIED INDENTURE *

\* *Note:* Reprints of the Model Simplified Indenture materials are available at $3 each from: Section of Corporation, Banking and Business Law, American Bar Association, 1155 E 60th St, Chicago, IL 60637

**TEXT:**

*INTRODUCTION*

The Model Simplified Indenture (text and accompanying notes), which is based on a form of indenture originally prepared by Morey W. McDaniel, chief finance counsel to Union Carbide Corporation, n1 has been prepared for the Section's Committee on Developments in Business Financing by a drafting committee chaired by Edward H. Fleischman and consisting of Morey W. McDaniel, Franklin Ciaccio, Edward Everett, J. Kirkland Grant and Leonard Sommer. This Model has been reviewed and approved by the committee, but the substantive positions taken in this Model do not necessarily represent the views of individual members of the Committee. The Securities and Exchange Commission officially called attention to the simplified form in early 1981, n2 and a number of issuers have used variants of the simplified form prior to publication of this Model. n3 Comments, criticisms and suggestions for revision of the Model and its accompanying notes are welcome and should be directed to the Committee on Developments in Business Financing, whose chairman is John j. McCann of New York City.

n1 *See* McDaniel, *A Simplified Indenture,* 13 Rev. Sec. Reg. 871 (1980).

n2 *Trust Indenture Act Release No. 39-605 (Jan. 8, 1981), 21 SEC Docket 1244.*

3 The list includes the following: Control Data Corp. (Reg. No. 2-78816); Florida Gulf Realty Trust (Reg. No. 2-73253); Hovnanian Enterprises, Inc. (Reg. No. 2-75855); Integrated resources, Inc. (Reg. No. 2-76896); Martin Marietta Corp. (Reg. No. 2-71131); Mobil Corp. (Reg. No. 2-79208); National Medical Enterprises, Inc. (Reg. No. 2-72580); Navco Corp. (Reg. No. 2-69424); Pioneer Corp. (Reg. No. 2-79650); Provident Bancorp, Inc. (Exempt); Semicon Inc. (Reg. No. 2-70364); and Union Carbide Corp. (Reg. No. 2-70531).

The materials presented here consist of this introduction, the text of the Model Simplified Indenture (cover page, cross-reference table, table of contents and indenture text, together with face, text and notices of assignment/conversion of the form of security which is integral part of the indenture), and a set of explanatory Notes keyed to the individual sections of the text. In the process of preparation of this Model, the drafting committee reviewed standard forms of indenture as well as earlier versions of the simplified form, analyzed substantive provisions against the American Bar Foundation model indentures and commentaries referred to at greater length below, and considered individually a wealth of comments and suggestions submitted by members of the Committee on Developments in Business Financing, by counsel to indenture trustees n4 through the American Bankers Association's Corporate Securities Services Committee (with the unstinting assistance of its chairman, Robert I. Landau of New York City), and by many other interested

© ABA, The Business Lawyer, February, 1983

practitioners. The Notes, which arise principally out of discussions within the drafting committee during that process, are intended as an aid to understanding, and to consideration of alternatives, by users of the Model Simplified Indenture.

       n4 Particular mention should be made of Messrs. David W. Swanson and John P. Campbell, both acknowledged authorities in this field, who offered many constructive suggestions even though they disagree with some of the substantive positions embodied in this Model.

For holders of the debt issued thereunder, the governing indenture serves the same functions as the charter and by-laws serve for corporate stockholders. While reservations continue to be expressed about a simplified or plainlanguage form of indenture, there is evidence of a desire for wider and easier comprehension of indenture provisions for the benefit of debtholders, administering personnel of the indenture trustees, directors and officers of corporate obligors, n5 and their respective counsel. It has, for example, been recommended that trustee's counsel prepare an "English translation" of the normal form of indenture. n6 The Model Simplified Indenture is addressed to that desire, and at the same time to the professional challenge of reviewing, periodically, the substance and the language of responses to past problems to be sure they remain appropriate in present circumstances.

       n5 *See* A.B.A. Sec. of Corp., Banking and Bus. L., *Corporate Director's Guidebook, 33 Bus. Law. 1591, 1602 (1978).*

       n6 Schreiber and Wood, *Caveat Indenture Trustee: Avoiding the Expanding Scope of Sutton's Law,* 121/1 Trusts & Estates 45, 54 (Jan. 1982).

It has been more than a decade since the Committee on Developments in Business Financing originated, and the American Bar Foundation developed and published, two model debenture indentures and the lengthy and scholarly commentaries on the provisions thereof which have since served as the standard against which other indenture forms are to be compared. n7 Each of the ABF Model Indentures is a two-part indenture that seeks to segregate negotiable from nonnegotiable provisions. The Model Simplified Indenture proceeds on the different assumption that (except for provisions specifically required by the Trust Indenture Act) nearly all portions of an indenture are subject to negotiation in varying degrees, but seeks to prescribe the language of frequently encountered provisions in such a way as to achieve a consensus generally acceptable to counsel accustomed to analyzing indenture terms from the points of view of debtholders, corporate borrowers, lending institutions, investment bankers and indenture trustees. In the accompanying notes, the provisions of the Model Simplified Indenture are often explained with a comparison to the ABF Model Indentures or with reference to relevant stock exchange listing requirements n8 or prevailing administrative practice, n9 and there are also included reminders of alternative approaches to the particular subject matter. Further, since users of the Model Simplified Indenture will find that behind its novel form lies quite conservative substance, it is hoped that individual draftsmen with particular biases or concerns will not be restrained from altering or adding provisions (while bearing in mind the practical problems of indenture administration n10) and will find the Model adaptable to that end.

       n7 *see* American Bar Foundation, Commentaries on Indentures (1971) [hereinafter cited as ABF Indenture Commentaries]. The Commentaries volume includes the model indentures [hereinafter cited as ABF Model Indentures] as its Appendices B and C. The ABF has also more recently published a model mortgage bond indenture, reviewed in *36 Bus. Law. 1917 (1981).* For an account of the ABF indenture project, see Rodgers, *The Corporate Trust Indenture Project, 20 Bus. Law. 551 (1965);* Garrett, *A Borrower's View of the Model Corporate Debenture Indenture Provisions, 21 Bus. Law. 675 (1966).*

       n8 The published requirements and policies of the New York Stock Exchange are found in its Company Manual [hereinafter cited as NYSE Co. Manual] and those of the American Stock Exchange are found in its Company Guide.

       n9 For SEC Staff interpretations under TIA sections 310 to 318, inclusive, see SEC, Manual -- Trust Indenture Act of 1939 (1958) (unpublished) [hereinafter cited as SEC TIA Manual].

       n10 For an excellent reference source, see Kennedy and Landau, Corporate Trust Administration and Management (2d ed. 1975).

The Model Simplified Indenture has been prepared for an issue of unsecured convertible subordinated debt. For a "straight" senior debt issue, a nonconvertible subordinated issue, or a senior convertible issue, the user must delete the

© ABA, The Business Lawyer, February, 1983

inapplicable article or articles along with cross-references elsewhere in the text and the relevant material in the form of the security. (For a secured issue, such substantial additions would be required that the prospective user would probably be well advised to start elsewhere.) Forms of financial covenants are not included; above all other provisions, financial covenants are the subject of negotiation and of tailoring to the particulars of the obligor's financial condition and the historic and projected results of its operations. In addition to the ABF Indenture Commentaries, n11 perhaps the best sources for examination of such covenants are indentures of competitors to the prospective obligor and of companies of comparable size engaged in similar activities.

n11 *But see* Simpson, *The Drafting of Loan Agreements: A Borrower's Viewpoint, 28 Bus. Law. 1161, 1162-63 (1973)* (the ABF sample covenants reflect the interests of lenders).

Peculiarly for a field of practice that appears to have changed so little in decades, there has recently been, and there promises to continue to be, a surprising number of developments affecting indentures. The introduction of the simpli-fied form of indenture, the widespread issuance of original issue discount and zero coupon obligations, the adoption by the SEC of temporary rule 415 under the Securities Act of 1933, the adaptation of provisions and techniques from Eurobond and other foreign debt markets, the enormous increase in the amount of debt securities placed in securities depositories, the rapid but short-lived spread of "economic defeasance" of nonmunicipal debt, and the growth of futures trading in debt instruments, do not constitute the whole list of factors that the are quickening the pace of change. It has not been feasible to respond to most of these factors in the Model Simplified Indenture (although the desirability, for example, of providing for serial issuances under rule 415 "shelf registration" is clear). That task is entrusted to the in-genuity of users, who (it is believed) will find this Model adaptable to their differing purposes.

INDENTURE dated as of    , between UNIVERSAL BUSINESS CORPORATION, a Delaware corporation ("Company"), and GREATER BANK AND TRUST COMPANY, a New York corporation ("Trustee").

Each party agrees as follows for the benefit of the other party and for the equal and ratable benefit of the Holders of the Company's % Convertible Subordinated Debentures Due    ("Securities"):

*ARTICLE 1*

*DEFINITIONS AND INCORPORATION BY REFERENCE*

Section 1.01. *Definitions.*

*"Affiliate"* means any person directly or indirectly controlling or controlled by or under direct or indirect common control with the Company.

*"Agent"* means any Registrar, Paying Agent, Conversion Agent or coregistrar.

*"Board of Directors"* means the Board of Directors of the Company or any authorized committee of the Board.

*"Company"* means the party named as such above until a successor replaces it and thereafter means the successor.

*"Default"* means any event which is, or after notice or passage of time would be, an Event of Default.

*"Holder"* or *"Securityholder"* means a person in whose name a Security is registered.

*"Indenture"* means this Indenture as amended from time to time.

*"Officers' Certificate"* means a certificate singned by two Officers, one of whom must be the President, the Treas-urer or a Vice-President of the Company. See Sections 12.04 and 12.05.

*"Opinion of Counsel"* means a written opinion from legal counsel who is acceptable to the Trustee. The counsel may be an employee of or counsel to the Company or the Trustee. See Sections 12.04 and 12.05.

*"principal"* of a debt security means the principal of the security plus the premium, if any, on the security.

*"SEC"* means the Securities and Exchange Commission.

*"Securities"* means the Securities described above issued under this Indenture.

*"TIA"* means the Trust Indenture Act of 1939 *(15 U.S. Code §§ 77aaa*-77bbbb) as in effect on the date shown above.

© ABA, The Business Lawyer, February, 1983

(2) the redemption price;

(3) the conversion price;

(4) the name and address of the Paying Agent and Conversion Agent;

(5) that Securities called for redemption may be converted at any time before the close of business on the redemption date;

(6) that Holders who want to convert Securities must satisfy the requirements in paragraph 9 of the Securities;

(7) that Securities called for redemption must be surrendered to the Paying Agent to collect the redemption price; and

(8) that interest on Securities called for redemption ceases to accrue on and after the redemption date.

At the Company's request, the Trustee shall give the notice of redemption in the Company's name and at its expense.

Section 3.04. *Effect of Notice of Redemption.* Once notice of redemption is mailed, Securities called for redemption become due and payable on the redemption date at the redemption price.

Section 3.05. *Deposit of Redemption Price.* On or before the redemption date, the Company shall deposit with the Paying Agent money sufficient to pay the redemption price of and accrued interest on all Securities to be redeemed on that date. The Paying Agent shall return to the Company any money not required for that purpose because of conversion of Securities.

Section 3.06. *Securities Redeemed in Part.* Upon surrender of a Security that is redeemed in part, the Trustee shall authenticate for the Holder a new Security equal in principal amount to the unredeemed portion of the Security surrendered.

*ARTICLE 4*

*COVENANTS*

Section 4.01. *Payment of Securities.* The Company shall pay the principal of and interest on the Securities on the dates and in the manner provided in the Securities. Principal and interest shall be considered paid on the date due if the Paying Agent holds on that date money sufficient to pay all principal and interest then due.

The Company shall pay interest on overdue principal at the rate borne by the Securities; it shall pay interest on overdue installments of interest at the same rate to the extent lawful.

Section 4.02. *SEC Reports.* The company shall file with the Trustee within 15 days after it files them with the SEC copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the SEC may by rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934. The Company also shall comply with the other provisions of TIA § 314(a).

Section 4.03. *Compliance Certificate.* The Company shall deliver to the Trustee within 120 days after the end of each fiscal year of the Company an Officers' Certificate stating whether or not the signers know of any Default that occurred during the fiscal year. If they do, the certificate shall describe the Default and its status. The certificate need not comply with Section 12.05. See Section 12.10.

*ARTICLE 5*

*SUCCESSORS*

Section 5.01. *When Company May Merge, etc.* The Company shall not consolidate or merge into, or transfer or lease all or substantially all of its assets to, any person unless:

(1) the person is a corporation;

(2) the person assumes by supplemental indenture all the obligations of the Company under the Securities and this Indenture, except that it need not assume the obligations of the Company as to Conversion of Securities if pursuant to