# Exhibit B

| 76TH CONGRESS<br>*1st Session* | HOUSE OF REPRESENTATIVES | REPORT<br>No. 1016 |
| --- | --- | --- |

# TRUST INDENTURE BILL OF 1939

JUNE 30, 1939.—Ordered to be printed

Mr. COLE of Maryland, from the Committee on Interstate and Foreign Commerce, submitted the following

# REPORT

### [To accompany S. 2065]

The Committee on Interstate and Foreign Commerce, to whom was referred the bill (S. 2065), introduced by Senator Barkley, to provide for the regulation of the sale of certain securities in interstate and foreign commerce and through the mails, and the regulation of the trust indentures under which the same are issued, and for other purposes, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

Your committee's subcommittee on trust indentures held extensive hearings on a substantially similar bill (H. R. 5220) introduced by Mr. Cole of Maryland, a member of this committee on March 22. Every objection of the opponents of that bill was carefully considered by the subcommittee in the course of 5 weeks of executive sessions, and the Cole bill was favorably reported by the subcommittee, with amendments. On May 2 the Senate passed the Barkley bill (S. 2065). In its consideration of the Barkley bill, this committee had before it the printed record of the testimony on the Cole bill, together with the subcommittee's amendments to that bill. The differences between the Senate bill and the Cole bill are so extensive that the committee has decided to amend the Senate bill by substitution of the Cole bill, as reported by the subcommittee, with two minor changes.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

That the Act entitled "An Act to provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to

2          TRUST INDENTURE BILL OF 1939

prevent frauds in the sale thereof, and for other purposes", approved May 27, 1933, as amended, is amended by adding at the end thereof the following:

## "TITLE III

### "SHORT TITLE

"SEC. 301. This title, divided into sections as follows, may be cited as the 'Trust Indenture Act of 1939':

## TABLE OF CONTENTS

### TITLE III

Sec. 301. Short title.
Sec. 302. Necessity for regulation.
Sec. 303. Definitions.
Sec. 304. Exempted securities and transactions.
Sec. 305. Securities required to be registered under Securities Act.
Sec. 306. Securities not registered under Securities Act.
Sec. 307. Qualification of indentures covering securities not required to be registered.
Sec. 308. Integration of procedure with Securities Act and other Acts.
Sec. 309. When qualification becomes effective; effect of qualification.
Sec. 310. Eligibility and disqualification of trustee.
    (a) Persons eligible for appointment as trustee.
    (b) Disqualification of trustee.
    (c) Applicability of section.
Sec. 311. Preferential collection of claims against obligor.
Sec. 312. Bondholders' lists.
Sec. 313. Reports by indenture trustee.
Sec. 314. Reports by obligor; evidence of compliance with indenture provisions.
    (a) Periodic reports.
    (b) Evidence of recording of indenture.
    (c) Evidence of compliance with conditions precedent.
    (d) Certificates of fair value.
    (e) Recitals as to basis of certificate or opinion.
    (f) Parties may provide for additional evidence.
Sec. 315. Duties and responsibility of the trustee.
    (a) Duties prior to default.
    (b) Notice of defaults.
    (c) Duties of the trustee in case of default.
    (d) Responsibility of the trustee.
    (e) Undertaking for costs.
Sec. 316. Directions and waivers by bondholders; prohibition of impairment of holder's right to payment.
Sec. 317. Special powers of trustee; duties of paying agents.
Sec. 318. Effect of prescribed indenture provisions.
Sec. 319. Rules, regulations, and orders.
Sec. 320. Hearings by Commission.
Sec. 321. Special powers of the Commission.
Sec. 322. Court review of orders; jurisdiction of offenses and suits.
Sec. 323. Liability for misleading statements.
Sec. 324. Unlawful representations.
Sec. 325. Penalties.
Sec. 326. Effect on existing law.
Sec. 327. Contrary stipulations void.
Sec. 328. Separability of provisions.

### "NECESSITY FOR REGULATION

"SEC. 302. (a) Upon the basis of facts disclosed by the reports of the Securities and Exchange Commission made to the Congress pursuant to section 211 of the Securities Exchange Act of 1934 and otherwise disclosed and ascertained, it is hereby declared that the national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public, are adversely affected—

"(1) when the obligor fails to provide a trustee to protect and enforce the rights and to represent the interests of such investors, notwithstanding the fact that (A) individual action by such investors for the purpose of protecting and enforcing their rights is rendered impracticable by reason of the disproportionate expense of taking such action, and (B) concerted action by such investors in their common interest through representatives of their own selection is impeded by reason of the wide dispersion of such investors through many States, and by reason of the fact that information as to the names and addresses of such investors generally is not available to such investors;

"(2) when the trustee does not have adequate rights and powers, or adequate duties and responsibilities, in connection with matters relating to the protection and enforcement of the rights of such investors; when, notwithstanding the obstacles to concerted action by such investors, and the general and reasonable assumption by such investors that the trustee is under an affirmative duty to take action for the protection and enforcement of their rights, trust indentures (A) generally provide that the trustee shall be under no duty to take any such action, even in the event of default, unless it receives notice of default, demand for action, and indemnity, from the holders of substantial percentages of the securities outstanding thereunder, and (B) generally relieve the trustee from liability even for its own negligent action or failure to act;

"(3) when the trustee does not have resources commensurate with its responsibilities, or has any relationship to or connection with the obligor or any underwriter of any securities of the obligor, or holds, beneficially or otherwise, any interest in the obligor or any such underwriter, which relationship, connection, or interest involves a material conflict with the interests of such investors;

"(4) when the obligor is not obligated to furnish to the trustee under the indenture and to such investors adequate current information as to its financial condition, and as to the performance of its obligations with respect to the securities outstanding under such indenture; or when the communication of such information to such investors is impeded by the fact that information as to the names and addresses of such investors generally is not available to the trustee and to such investors;

"(5) when the indenture contains provisions which are misleading or deceptive, or when full and fair disclosure is not made to prospective investors of the effect of important indenture provisions; or

"(6) when, by reason of the fact that trust indentures are commonly prepared by the obligor or underwriter in advance of the public offering of the securities to be issued thereunder, such investors are unable to participate in the preparation thereof, and, by reason of their lack of understanding of the situation, such investors would in any event be unable to procure the correction of the defects enumerated in this subsection.

"(b) Practices of the character above enumerated have existed to such an extent that, unless regulated, the public offering of notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, by the use of means and instruments of transportation and communication in interstate commerce and of the mails, is injurious to the capital markets, to investors, and to the general public; and it is hereby declared to be the policy of this title, in accordance with which policy all the provisions of this title shall be interpreted, to meet the problems and eliminate the practices, enumerated in this section, connected with such public offerings.

## "DEFINITIONS

"SEC. 303. When used in this title, unless the context otherwise requires—

"(1) Any term defined in section 2 of the Securities Act of 1933, as heretofore amended, and not otherwise defined in this section, shall have the meaning assigned to such term in such section 2.

"(2) The term 'sale' or 'sell' shall include all transactions included in such term as provided in paragraph (3) of section 2 of the Securities Act of 1933, as heretofore amended, except that a sale of a certificate of interest or participation shall be deemed a sale of the security or securities in which such certificate evidences an interest or participation if and only if such certificate gives the holder thereof the right to convert the same into such security or securities.

**4**                     TRUST INDENTURE BILL OF 1939

"(3) The term 'prospectus' shall have the meaning assigned to such term in paragraph (10) of section 2 of the Securities Act of 1933, as heretofore amended, except that in the case of securities which are not registered under the Securities Act of 1933, such term shall not include any communication (A) if it is proved that prior to or at the same time with such communication a written statement meeting the requirements of subsection (c) of section 305 was sent or given to the persons to whom the communication was made, by the person making such communication or his principal, or (B) if such communication states from whom such statement may be obtained and, in addition, does no more than identify the security, state the price thereof, and state by whom orders will be executed.

"(4) The term 'underwriter' means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission.

"(5) The term 'director' means any director of a corporation, or any individual performing similar functions with respect to any organization whether incorporated or unincorporated.

"(6) The term 'executive officer' means the president, every vice president, every trust officer, the secretary, and the treasurer of a corporation, and any individual customarily performing similar functions with respect to any organization whether incorporated or unincorporated, but shall not include the chairman of the board of directors.

"(7) The term 'indenture' means any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), under which securities are outstanding or are to be issued, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.

"(8) The term 'application' or 'application for qualification' means the application provided for in section 307, and includes any amendment thereto and any report, document, or memorandum accompanying such application or incorporated therein by reference.

"(9) The term 'indenture to be qualified' means (A) the indenture under which there has been or is to be issued a security in respect of which a particular registration statement has been filed, or (B) the indenture in respect of which a particular application has been filed.

"(10) The term 'indenture trustee' means each trustee under the indenture to be qualified, and each successor trustee.

"(11) The term 'indenture security' means any security issued or issuable under the indenture to be qualified.

"(12) The term 'obligor,' when used with respect to any such indenture security, means every person who is liable thereon, and if such security is a certificate of interest or participation, such term means also every person who is liable upon the security or securities in which such certificate evidences an interest or participation; but such term shall not include the trustee under an indenture under which certificates of interest or participation, equipment trust certificates, or like securities are outstanding.

"(13) The term 'paying agent,' when used with respect to any such indenture security, means any person authorized by an obligor thereon (A) to pay the principal of or interest on such security on behalf of such obligor, or (B) if such security is a certificate of interest or participation, equipment trust certificate, or like security, to make such payment on behalf of the trustee.

"(14) The term 'State' means any State of the United States.

"(15) The term 'Commission' means the Securities and Exchange Commission.

"(16) The term 'voting security' means any security presently entitling the owner or holder thereof to vote in the direction or management of the affairs of a person, or any security issued under or pursuant to any trust, agreement, or arrangement whereby a trustee or trustees or agent or agents for the owner or holder of such security are presently entitled to vote in the direction or management of the affairs of a person; and a specified percentage of the voting securities of a person means such amount of the outstanding voting securities of such person as entitles the holder or holders thereof to cast such specified percentage of the aggregate votes which the holders of all the outstanding voting securities of such person are entitled to cast in the direction or management of the affairs of such person.

"(17) The terms 'Securities Act of 1933,' 'Securities Exchange Act of 1934', and 'Public Utility Holding Company Act of 1935' shall be deemed to refer, respectively, to such Acts, as amended, whether amended prior to or after the enactment of this title.

"(18) The term 'Bankruptcy Act' means the Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, as amended, whether amended prior to or after the enactment of this title.

"EXEMPTED SECURITIES AND TRANSACTIONS

"Sec. 304. (a) The provisions of this title shall not apply to any of the following securities:

"(1) any security other than (A) a note, bond, debenture, or evidence of indebtedness, whether or not secured, or (B) a certificate of interest or participation in any such note, bond, debenture, or evidence of indebtedness, or (C) a temporary certificate for, or guarantee of, any such note, bond, debenture, evidence of indebtedness, or certificate;

"(2) any certificate of interest or participation in two or more securities having substantially different rights and privileges, or a temporary certificate for any such certificate;

"(3) any security which, prior to or within six months after the enactment of this title, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offering of any such security by an issuer subsequent to such six months;

"(4) any security exempted from the provisions of the Securities Act of 1933, as heretofore amended, by paragraph (2), (3), (4), (5), (6), (7), (8), or (11) of subsection 3 (a) thereof;

"(5) any security issued under a mortgage indenture as to which a contract of insurance under the National Housing Act is in effect; and any such security shall be deemed to be exempt from the provisions of the Securities Act of 1933 to the same extent as though such security were specifically enumerated in section 3 (a) (2) of such Act;

"(6) any note, bond, debenture, or evidence of indebtedness issued or guaranteed by a foreign government or by a subdivision, department, municipality, agency, or instrumentality thereof;

"(7) any guarantee of any security which is exempted by this subsection;

"(8) any security which has been or is to be issued otherwise than under an indenture, but this exemption shall not be applied within a period of twelve consecutive months to more than $250,000 aggregate principal amount of any securities of the same issuer; or

"(9) any security which has been or is to be issued under an indenture which limits the aggregate principal amount of securities at any time outstanding thereunder to $1,000,000 or less, but this exemption shall not be applied within a period of thirty-six consecutive months to more than $1,000,000 aggregate principal amount of securities of the same issuer.

In computing the aggregate principal amount of securities to which the exemptions provided by paragraphs (8) and (9) may be applied, securities to which the provisions of sections 305 and 306 would not have applied, irrespective of the provisions of those paragraphs, shall be disregarded.

"(b) The provisions of sections 305 and 306 shall not apply (1) to any of the transactions exempted from the provisions of section 5 of the Securities Act of 1933 by section 4 thereof, as heretofore amended, or (2) to any transaction which would be so exempted but for the last sentence of paragraph (11) of section 2 of such Act.

"(c) The Commission shall, on application by the issuer and after opportunity for hearing thereon, by order exempt from any one or more provisions of this title any security issued or proposed to be issued under any indenture under which at the time such application is filed, securities referred to in paragraph (6) of subsection (a) of this section are outstanding, if and to the extent that the Commission finds that compliance with such provision or provisions, through the execution of a supplemental indenture or otherwise—

"(1) would require, by reason of the provisions of such indenture, or the provisions of any other indenture or agreement made prior to the enactment of this title, or the provisions of any applicable law, the consent of the holders of securities outstanding under any such indenture or agreement; or

"(2) would impose an undue burden on the issuer, having due regard to the public interest and the interests of investors.

**6**                    TRUST INDENTURE BILL OF 1939

"(d) The Commission may, on application by the issuer and after opportunity for hearing thereon, by order exempt from any one or more of the provisions of this title any security issued or proposed to be issued by a person organized and existing under the laws of a foreign government or a political subdivision thereof, if and to the extent that the Commission finds that compliance with such provision or provisions is not necessary in the public interest and for the protection of investors.

"SECURITIES REQUIRED TO BE REGISTERED UNDER SECURITIES ACT

"SEC. 305. (a) Subject to the provisions of section 304, a registration statement relating to a security shall include the following information and documents, as though such inclusion were required by the provisions of section 7 of the Securities Act of 1933—

"(1) such information and documents as the Commission may by rules and regulations prescribe in order to enable the Commission to determine whether any person designated to act as trustee under the indenture under which such security has been or is to be issued is eligible to act as such under subsection (a) of section 310 or has a conflicting interest as defined in subsection (b) of section 310; and

"(2) an analysis of any provisions of such indenture with respect to (A) the definition of what shall constitute a default under such indenture, and the withholding of notice to the indenture security holders of any such default, (B) the authentication and delivery of the indenture securities and the application of the proceeds thereof, (C) the release or the release and substitution of any property subject to the lien of the indenture, (D) the satisfaction and discharge of the indenture, and (E) the evidence required to be furnished by the obligor upon the indenture securities to the trustee as to compliance with the conditions and covenants provided for in such indenture,

The information and documents required by paragraph (1) of this subsection with respect to the person designated to act as indenture trustee shall be contained in a separate part of such registration statement, which part shall be signed by such person. Such part of the registration statement shall be deemed to be a document filed pursuant to this title, and the provisions of sections 11, 12, 17, and 24 of the Securities Act of 1933 shall not apply to statements therein or omissions therefrom.

"(b) The Commission shall issue an order prior to the effective date of registration refusing to permit such a registration statement to become effective, if it finds that—

"(1) the security to which such registration statement relates has not been or is not to be issued under an indenture;

"(2) such indenture does not conform to the requirements of sections 310 to 318, inclusive; or

"(3) any person designated as trustee under such indenture is not eligible to act as such under subsection (a) of section 310 or has any conflicting interest as defined in subsection (b) of section 310;

but no such order shall be issued except after notice and opportunity for hearing within the periods and in the manner required with respect to refusal orders pursuant to section 8 (b) of the Securities Act of 1933. If and when the Commission deems that the objections on which such order was based have been met, the Commission shall enter an order rescinding such refusal order, and the registration shall become effective at the time provided in section 8 (a) of the Securities Act of 1933, or upon the date of such rescission, whichever shall be the later.

"(c) A prospectus relating to any such security shall include, as though such inclusion were required by section 10 of the Securities Act of 1933, a written statement containing the analysis, set forth in the registration statement, of any indenture provisions with respect to the matters specified in paragraph (2) of subsection (a) of this section, together with a supplementary analysis, prepared by the Commission, of such provisions and of the effect thereof, if, in the opinion of the Commission, the inclusion of such supplementary analysis is necessary or appropriate in the public interest or for the protection of investors, and the Commission so declares by order after notice and, if demanded by the issuer, opportunity for hearing thereon. Such order shall be entered prior to the effective date of registration, except that if opportunity for hearing thereon is demanded by the issuer such order shall be entered within a reasonable time after such opportunity for hearing.

"(d) The provisions of sections 11, 12, 17, and 24 of the Securities Act of 1933, and the provisions of sections 323 and 325 of this title, shall not apply to statements in or omissions from any analysis required under the provisions of this section or section 306 or 307.

## "SECURITIES NOT REGISTERED UNDER SECURITIES ACT

"SEC. 306. (a) In the case of any security which is not registered under the Securities Act of 1933 and to which this subsection is applicable notwithstanding the provisions of section 304, unless such security has been or is to be issued under an indenture and an application for qualification is effective as to such indenture, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

"(b) In the case of any security which is not registered under the Securities Act of 1933, but which has been or is to be issued under an indenture as to which an application for qualification is effective, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any such security, unless such prospectus includes or is accompanied by a written statement that meets the requirements of subsection (c) of section 305; or

"(2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a written statement that meets the requirements of subsection (c) of section 305.

## "QUALIFICATION OF INDENTURES COVERING SECURITIES NOT REQUIRED TO BE REGISTERED

"SEC. 307. (a) In the case of any security which is not required to be registered under the Securities Act of 1933 and to which subsection (a) of section 306 is applicable notwithstanding the provisions of section 304, an application for qualification of the indenture under which such security has been or is to be issued shall be filed with the Commission by the issuer of such security. Each such application shall be in such form, and shall be signed in such manner, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. Each such application shall include the information and documents required by subsection (a) of section 305. The information and documents required by paragraph (1) of such subsection with respect to the person designated to act as indenture trustee shall be contained in a separate part of such application, which part shall be signed by such person. Each such application shall also include such of the other information and documents which would be required to be filed in order to register such indenture security under the Securities Act of 1933 as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. An application may be withdrawn by the applicant at any time prior to the effective date thereof. Subject to the provisions of section 321, the information and documents contained in or filed with any application shall be made available to the public under such regulations as the Commission may prescribe, and copies thereof, photostatic or otherwise, shall be furnished to every applicant therefor at such reasonable charge as the Commission may prescribe.

"(b) The filing with the Commission of an application, or of an amendment to an application, shall be deemed to have taken place upon the receipt thereof by the Commission, but, in the case of an application, only if it is accompanied or preceded by payment to the Commission of a filing fee in the amount of $100, such payment to be made in cash or by United States postal money order or certified or bank check, or in such other medium of payment as the Commission may authorize by rule and regulation.

8                         TRUST INDENTURE BILL OF 1939

"(c) The provisions of section 8 of the Securities Act of 1933 and the provisions of subsection (b) of section 305 of this title shall apply with respect to every such application, as though such application were a registration statement filed pursuant to the provisions of such Act.

"INTEGRATION OF PROCEDURE WITH SECURITIES ACT AND OTHER ACTS

"SEC. 308. (a) The Commission, by such rules and regulations or orders as it deems necessary or appropriate in the public interest or for the protection of investors, shall authorize the filing of any information or documents required to be filed with the Commission under this title, or under the Securities Act of 1933, the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, by incorporating by reference any information or documents on file with the Commission under this title or under any such Act.

"(b) The Commission, by such rules and regulations or orders as it deems necessary or appropriate in the public interest or for the protection of investors, shall provide for the consolidation of applications, reports, and proceedings under this title with registration statements, applications, reports, and proceedings under the Securities Act of 1933, the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935.

"WHEN QUALIFICATION BECOMES EFFECTIVE; EFFECT OF QUALIFICATION

"SEC. 309. (a) The indenture under which a security has been or is to be issued shall be deemed to have been qualified under this title—

"(1) when registration becomes effective as to such security; or
"(2) when an application for the qualification of such indenture becomes effective, pursuant to section 307.

"(b) After qualification has become effective as to the indenture under which a security has been or is to be issued, no stop order shall be issued pursuant to section 8 (d) of the Securities Act of 1933, suspending the effectiveness of the registration statement relating to such security or of the application for qualification of such indenture, except on one or more of the grounds specified in section 8 of such Act.

"(c) The making, amendment, or rescission of a rule, regulation, or order under the provisions of this title (except to the extent authorized by subsection (a) of section 314 with respect to rules and regulations prescribed pursuant to such subsection) shall not affect the qualification, form, or interpretation of any indenture as to which qualification became effective prior to the making, amendment, or rescission of such rule, regulation, or order.

"(d) No trustee under an indenture which has been qualified under this title shall be subject to any liability because of any failure of such indenture to comply with any of the provisions of this title, or any rule, regulation, or order thereunder.

"(e) Nothing in this title shall be construed as empowering the Commission to conduct an investigation or other proceeding for the purpose of determining whether the provisions of an indenture which has been qualified under this title are being complied with, or to enforce such provisions.

"ELIGIBILITY AND DISQUALIFICATION OF TRUSTEE

"Persons Eligible for Appointment as Trustee

"SEC. 310. (a) (1) The indenture to be qualified shall require that there shall at all times be one or more trustees thereunder, at least one of whom shall at all times be a corporation organized and doing business under the laws of the United States or of any State or Territory or of the District of Columbia (referred to in this title as the institutional trustee), which (A) is authorized under such laws to exercise corporate trust powers, and (B) is subject to supervision or examination by Federal, State, Territorial, or District of Columbia authority.

"(2) The indenture to be qualified shall require that such institutional trustee shall have at all times a combined capital and surplus of a specified minimum amount, which shall not be less than $150,000. If such institutional trustee publishes reports of condition at least annually, pursuant to law or to the requirements of said supervising or examining authority, the indenture may provide that, for the purposes of this paragraph, the combined capital and surplus of such trustee shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

"(3) If the indenture to be qualified requires or permits the appointment of one or more co-trustees in addition to such institutional trustee, such indenture shall provide that the rights, powers, duties, and obligations conferred or imposed upon the trustees or any of them shall be conferred or imposed upon and exercised or performed by such institutional trustee, or such institutional trustee and such co-trustees jointly, except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed, such institutional trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties, and obligations shall be exercised and performed by such co-trustees.

"(4) In the case of certificates of interest or participation, the indenture to be qualified shall require that the indenture trustee or trustees have the legal power to exercise all of the rights, powers, and privileges of a holder of the security or securities in which such certificates evidence an interest or participation.

## "Disqualification of Trustee

"(b) The indenture to be qualified shall provide that if any indenture trustee has or shall acquire any conflicting interest as hereinafter defined, (i) such trustee shall, within ninety days after ascertaining that it has such conflicting interest, either eliminate such conflicting interest or resign, such resignation to become effective upon the appointment of a successor trustee and such successor's acceptance of such appointment, and the obligor upon the indenture securities shall take prompt steps to have a successor appointed in the manner provided in the indenture; and (ii) in the event that such trustee shall fail to comply with the provisions of clause (i) of this subsection, such trustee shall, within ten days after the expiration of such ninety-day period, transmit notice of such failure to the indenture security holders in the manner and to the extent provided in subsection (c) of section 313; and (iii) subject to the provisions of subsection (e) of section 315, any security holder who has been a bona fide holder of indenture securities for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of such trustee, and the appointment of a successor, if such trustee fails, after written request therefor by such holder, to comply with the provisions of clause (i) of this subsection. For the purposes of this subsection, an indenture trustee shall be deemed to have a conflicting interest if—

"(1) such trustee is trustee under another indenture under which any other securities, or certificates of interest or participation in any other securities of an obligor upon the indenture securities are outstanding unless (A) the indenture securities are collateral trust notes under which the only collateral consists of securities issued under such other indenture, or (B) such other indenture is a collateral trust indenture under which the only collateral consists of indenture securities, or (C) such obligor has no substantial unmortgaged assets and is engaged primarily in the business of owning or of owning and developing and/or operating, real estate, and the indenture to be qualified and such other indenture are secured by wholly separate and distinct parcels of real estate: *Provided,* That the indenture to be qualified may contain a provision excluding from the operation of this paragraph another indenture or indentures under which other securities, or certificates of interest or participation in other securities, of such an obligor are outstanding, if (i) the indenture to be qualified and such other indenture or indentures are wholly unsecured, and such other indenture or indentures are specifically described in the indenture to be qualified or are thereafter qualified under this title, unless the Commission shall have found and declared by order pursuant to subsection (b) of section 305 or subsection (c) of section 307 that differences exist between the provisions of the indenture to be qualified and the provisions of such other indenture or indentures which are so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify such trustee from acting as such under one of such indentures, or (ii) the issuer shall have sustained the burden of proving, on application to the Commission and after opportunity for hearing thereon, that trusteeship under the indenture to be qualified and such other indenture is not so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify such trustee from acting as such under one of such indentures;

"(2) such trustee or any of its directors or executive officers is an obligor upon the indenture securities or an underwriter for such an obligor;

"(3) such trustee directly or indirectly controls or is directly or indirectly controlled by or is under direct or indirect common control with an obligor upon the indenture securities or an underwriter for such an obligor;

"(4) such trustee or any of its directors or executive officers is a director, officer, partner, employee, appointee, or representative of an obligor upon the indenture securities, or of an underwriter (other than the trustee itself) for such an obligor who is currently engaged in the business of underwriting, except that (A) one individual may be a director and/or an executive officer of the trustee and a director and/or an executive officer of such obligor, but may not be at the same time an executive officer of both the trustee and of such obligor, and (B) if and so long as the number of directors of the trustee in office is more than nine, one additional individual may be a director and/or an executive officer of the trustee and a director of such obligor, and (C) such trustee may be designated by any such obligor or by any underwriter for any such obligor, to act in the capacity of transfer agent, registrar, custodian, paying agent, fiscal agent, escrow agent, or depositary, or in any other similar capacity, or, subject to the provisions of paragraph (1) of this subsection, to act as trustee, whether under an indenture or otherwise;

"(5) 10 per centum or more of the voting securities of such trustee is beneficially owned either by an obligor upon the indenture securities or by any director, partner, or executive officer thereof, or 20 per centum or more of such voting securities is beneficially owned, collectively, by any two or more of such persons; or 10 per centum or more of the voting securities of such trustee is beneficially owned either by an underwriter for any such obligor or by any director, partner, or executive officer thereof, or is beneficially owned, collectively, by any two or more such persons;

"(6) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, (A) 5 per centum or more of the voting securities, or 10 per centum or more of any other class of security, of an obligor upon the indenture securities, not including indenture securities and securities issued under any other indenture under which such trustee is also trustee, or (B) 10 per centum or more of any class of security of an underwriter for any such obligor;

"(7) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, 5 per centum or more of the voting securities of any person who, to the knowledge of the trustee, owns 10 per centum or more of the voting securities of, or controls directly or indirectly or is under direct or indirect common control with, an obligor upon the indenture securities;

"(8) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, 10 per centum or more of any class of security of any person who, to the knowledge of the trustee, owns 50 per centum or more of the voting securities of an obligor upon the indenture securities; or

"(9) such trustee owns, on May 15 in any calendar year, in the capacity of executor, administrator, testamentary or inter vivos trustee, guardian, committee or conservator, or in any other similar capacity, an aggregate of 25 per centum or more of the voting securities, or of any class of security, of any person, the beneficial ownership of a specified percentage of which would have constituted a conflicting interest under paragraph (6), (7), or (8) of this subsection.   The indenture to be qualified may provide, as to any such securities of which the indenture trustee acquired ownership through becoming executor, administrator, or testamentary trustee of an estate which included them, that the provisions of the preceding sentence shall not apply, for a period of not more than two years from the date of such acquisition, to the extent that such securities included in such estate do not exceed 25 per centum of such voting securities or 25 per centum of any such class of security.   The indenture to be qualified shall provide that promptly after May 15 in each calendar year, the trustee shall make a check of its holdings of such securities in any of the above-mentioned capacities as of such May 15.   Such indenture shall also provide that if the obligor upon the indenture securities fails to make payment in full of principal or interest under such indenture when and as the same becomes due and payable, and such failure continues for thirty days thereafter, the trustee shall make a prompt check of its holdings of such securities in any of the above-mentioned capacities as of the date of the expiration of such thirty-day period, and after such date, notwithstanding the foregoing provisions of this paragraph, all such

securities so held by the trustee, with sole or joint control over such securities vested in it, shall be considered as though beneficially owned by such trustee, for the purposes of paragraphs (6), (7), and (8) of this subsection.

"The indenture to be qualified shall provide that the specification of percentages in paragraphs (5) to (9), inclusive, of this subsection shall not be construed as indicating that the ownership of such percentages of the securities of a person is or is not necessary or sufficient to constitute direct or indirect control for the purposes of paragraph (3) or (7) of this subsection.

"For the purposes of paragraphs (6), (7), (8), and (9) of this subsection, (A) the terms 'security' and 'securities' shall include only such securities as are generally known as corporate securities, but shall not include any note or other evidence of indebtedness issued to evidence an obligation to repay moneys lent to a person by one or more banks, trust companies, or banking firms, or any certificate of interest or participation in any such note or evidence of indebtedness; (B) an obligation shall be deemed to be in default when a default in payment of principal shall have continued for thirty days or more, and shall not have been cured; and (C) the indenture trustee shall not be deemed the owner or holder of (i) any security which it holds as collateral security (as trustee or otherwise) for an obligation which is not in default as above defined, or (ii) any security which it holds as collateral security under the indenture to be qualified, irrespective of any default thereunder, or (iii) any security which it holds as agent for collection, or as custodian, escrow agent, or depositary, or in any similar representative capacity.

"For the purposes of this subsection, the term 'underwriter' when used with reference to an obligor upon the indenture securities means every person who, within three years prior to the time as of which the determination is made, was an underwriter of any security of such obligor outstanding at such time.

"Applicability of Section

"(c) The Public Utility Holding Company Act of 1935 shall not be held to establish or authorize the establishment of any standards regarding the eligibility and qualifications of any trustee or prospective trustee under an indenture to be qualified under this title, or regarding the provisions to be included in any such indenture with respect to the eligibility and qualifications of the trustee thereunder, other than those established by the provisions of this section.

"PREFERENTIAL COLLECTION OF CLAIMS AGAINST OBLIGOR

"Sec. 311. (a) Subject to the provisions of subsection (b) of this section, the indenture to be qualified shall provide that if the indenture trustee shall be, or shall become, a creditor, directly or indirectly, secured or unsecured, of an obligor upon the indenture securities, within four months prior to a default as defined in the last paragraph of this subsection, or subsequent to such a default, then, unless and until such default shall be cured, such trustee shall set apart and hold in a special account for the benefit of the trustee individually and the indenture security holders—

"(1) an amount equal to any and all reductions in the amount due and owing upon any claim as such creditor in respect of principal or interest, effected after the beginning of such four months' period and valid as against such obligor and its other creditors, except any such reduction resulting from the receipt or disposition of any property described in paragraph (2) of this subsection, or from the exercise of any right of set-off which the trustee could have exercised if a petition in bankruptcy had been filed by or against such obligor upon the date of such default; and

"(2) all property received in respect of any claim as such creditor, either as security therefor, or in satisfaction or composition thereof, or otherwise after the begining of such four months' period, or an amount equal to th proceeds of any such property, if disposed of, subject, however, to the rights, if any, of such obligor and its other creditors in such property or such proceeds.

"Nothing herein contained shall affect the right of the indenture trustee—

"(A) to retain for its own account (i) payments made on account of any such claim by any person (other than such obligor) who is liable thereon, and (ii) the proceeds of the bona fide sale of any such claim by the trustee to a third person, and (iii) distributions made in cash, securities, or other property in respect of claims filed against such obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law;

"(B) to realize, for its own account, upon any property held by it as security for any such claim, if such property was so held prior to the beginning of such four months' period;

"(C) to realize, for its own account, but only to the extent of the claim hereinafter mentioned, upon any property held by it as security for any such claim, if such claim was created after the beginning of such four months' period and such property was received as security therefor simultaneously with the creation thereof, and if the trustee shall sustain the burden of proving that at the time such property was so received the trustee had no reasonable cause to believe that a default as defined in the last paragraph of this subsection would occur within four months; or

"(D) to receive payment on any claim referred to in paragraph (B) or (C), against the release of any property held as security for such claim as provided in paragraph (B) or (C), as the case may be, to the extent of the fair value of such property.

For the purposes of paragraphs (B), (C), and (D), property substituted after the beginning of such four months' period for property held as security at the time of such substitution shall, to the extent of the fair value of the property released, have the same status as that property released, and, to the extent that any claim referred to in any of such paragraphs is created in renewal of or in substitution for or for the purpose of repaying or refunding any preexisting claim of the indenture trustee as such creditor, such claim shall have the same status as such preexisting claim.

"The indenture to be qualified shall provide that, if the trustee shall be required to account, the funds and property held in such special account and the proceeds thereof shall be apportioned between the trustee and the indenture security holders in such manner that the trustee and the indenture security holders realize, as a result of payments from such special account and payments of dividends on claims filed against such obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, the same percentage of their respective claims, figured before crediting to the claim of the trustee anything on account of the receipt by it from such obligor of the funds and property in such special account and before crediting to the respective claims of the trustee and the indenture security holders dividends on claims filed against such obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, but after crediting thereon receipts on account of the indebtedness represented by their respective claims from all sources other than from such dividends and from the funds and property so held in such special account. As used in this paragraph, with respect to any claim, the term 'dividends' shall include any distribution with respect to such claim, in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, whether such distribution is made in cash, securities, or other property, but shall not include any such distribution with respect to the secured portion, if any, of such claim. The court in which such bankruptcy, receivership, or proceeding for reorganization is pending shall have jurisdiction (i) to apportion between the indenture trustee and the indenture security holders, in accordance with the provisions of this paragraph, the funds and property held in such special account and the proceeds thereof, or (ii) in lieu of such apportionment, in whole or in part, to give to the provisions of this paragraph due consideration in determining the fairness of the distributions to be made to the indenture trustee and the indenture security holders with respect to their respective claims, in which event it shall not be necessary to liquidate or to appraise the value of any securities or other property held in such special account or as security for any such claim, or to make a specific allocation of such distributions as between the secured and unsecured portions of such claims, or otherwise to apply the provisions of this paragraph as a mathematical formula.

"Any indenture trustee who has resigned or been removed after the beginning of such four months' period shall be subject to the provisions of this subsection as though such resignation or removal had not occurred. Any indenture trustee who has resigned or been removed prior to the beginning of such four months' period shall be subject to the provisions of this subsection if and only if the following conditions exist—

"(i) the receipt of property or reduction of claim which would have given rise to the obligation to account, if such indenture trustee had continued as trustee, occurred after the beginning of such four months' period; and

"(ii) such receipt of property or reduction of claim occurred within four months after such resignation or removal.

"As used in this subsection, the term 'default' means any failure to make payment in full of principal or interest, when and as the same becomes due and payable, under any indenture which has been qualified under this title, and under which the indenture trustee is trustee and the person of whom the indenture trustee is directly or indirectly a creditor is an obligor; and the term 'indenture security holder' means all holders of securities outstanding under any such indenture under which any such default exists.

"(b) The indenture to be qualified may contain provisions excluding from the operation of subsection (a) of this section a creditor relationship arising from—

"(1) the ownership or acquisition of securities issued under any indenture, or any security or securities having a maturity of one year or more at the time of acquisition by the indenture trustee;

"(2) advances authorized by a receivership or bankruptcy court of competent jurisdiction, or by the indenture, for the purpose of preserving the property subject to the lien of the indenture or of discharging tax liens or other prior liens or encumbrances on the trust estate, if notice of such advance and of the circumstances surrounding the making thereof is given to the indenture security holders, at the time and in the manner provided in the indenture;

"(3) disbursements made in the ordinary course of business in the capacity of trustee under an indenture, transfer agent, registrar, custodian, paying agent, fiscal agent or depositary, or other similar capacity;

"(4) an indebtedness created as a result of services rendered or premises rented; or an indebtedness created as a result of goods or securities sold in a cash transaction as defined in the indenture;

"(5) the ownership of stock or of other securities of a corporation organized under the provisions of section 25 (a) of the Federal Reserve Act, as amended, which is directly or indirectly a creditor of an obligor upon the indenture securities; or

"(6) the acquisition, ownership, acceptance, or negotiation of any drafts, bills of exchange, acceptances, or obligations which fall within the classification of self-liquidating paper as defined in the indenture.

"(c) In the exercise by the Commission of any jurisdiction under the Public Utility Holding Company Act of 1935 regarding the issue or sale, by any registered holding company or a subsidiary company thereof, of any security of such issuer or seller or of any other company to a person which is trustee under an indenture or indentures of such issuer or seller or other company, or of a subsidiary or associate company or affiliate of such issuer or seller or other company (whether or not such indenture or indentures are qualified under or to be qualified under this title), the fact that such trustee will thereby become a creditor, directly or indirectly, of any of the foregoing shall not constitute a ground for the Commission taking adverse action with respect to any application or declaration, or limiting the scope of any rule or regulation which would otherwise permit such transaction to take effect; but in any case in which such trustee is trustee under an indenture of the company of which it will thereby become a creditor, or of any subsidiary company thereof, this subsection shall not prevent the Commission from requiring (if such requirement would be authorized under the provisions of the Public Utility Holding Company Act of 1935) that such trustee, as such, shall effectively and irrevocably agree in writing, for the benefit of the holders from time to time of the securities from time to time outstanding under such indenture, to be bound by the provisions of this section, subsection (c) of section 315, and, in case of default (as such term is defined in such indenture), subsection (d) of section 315, as fully as though such provisions were included in such indenture. For the purposes of this subsection the terms 'registered holding company', 'subsidiary company', 'associate company', and 'affiliate' shall have the respective meanings assigned to such terms in section 2 (a) of the Public Utility Holding Company Act of 1935.

"BONDHOLDERS LISTS

"SEC. 312. (a) The indenture to be qualified shall contain provisions requiring each obligor upon the indenture securities to furnish or cause to be furnished to the institutional trustee thereunder at stated intervals of not more than six months, and at such other times as such trustee may request in writing, all information in the possession or control of such obligor, or of any of its paying agents, as to the names and addresses of the indenture security holders, and requiring such trustee to preserve, in as current a form as is reasonably practicable, all such information so furnished to it or received by it in the capacity of paying agent.

**14**    TRUST INDENTURE BILL OF 1939

"(b) The indenture to be qualified shall also contain provisions requiring that within five business days after the receipt by the institutional trustee of a written application by any three or more indenture security holders stating that the applicants desire to communicate with other indenture security holders with respect to their rights under such indenture or under the indenture securities, and accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, and by reasonable proof that each such applicant has owned an indenture security for a period of at least six months preceding the date of such application, such institutional trustee shall, at its election, either—

"(1) afford to such applicants access to all information so furnished to or received by such trustee; or

"(2) inform such applicants as to the approximate number of indenture security holders according to the most recent information so furnished to or received by such trustee, and as to the approximate cost of mailing to such indenture security holders the form of proxy or other communication, if any, specified in such application.

If such trustee shall elect not to afford to such applicants access to such information, such trustee shall, upon the written request of such applicants, mail to all such indenture security holders copies of the form of proxy or other communication which is specified in such request, with reasonable promptness after a tender to such trustee of the material to be mailed and of payment, or provision for the payment, of the reasonable expenses of such mailing, unless within five days after such tender, such trustee shall mail to such applicants, and file with the Commission together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of such trustee, such mailing would be contrary to the best interests of the indenture security holders or would be in violation of applicable law. Such written statement shall specify the basis of such opinion. After opportunity for hearing upon the objections specified in the written statement so filed, the Commission may, and if demanded by such trustee or by such applicants shall, enter an order either sustaining one or more of such objections or refusing to sustain any of them. If the Commission shall enter an order refusing to sustain any of such objections, or if, after the entry of an order sustaining one or more of such objections, the Commission shall find, after notice and opportunity for hearing, that all objections so sustained have been met, and shall enter an order so declaring, such trustee shall mail copies of such material to all such indenture security holders with reasonable promptness after the entry of such order and the renewal of such tender.

"(c) The disclosure of any such information as to the names and addresses of the indenture security holders in accordance with the provisions of this section, regardless of the source from which such information was derived, shall not be deemed to be a violation of any existing law, or of any law hereafter enacted which does not specifically refer to this section, nor shall such trustee be held accountable by reason of mailing any material pursuant to a request made under subsection (b) of this section.

"REPORTS BY INDENTURE TRUSTEE

"SEC. 313. (a) The indenture to be qualified shall contain provisions requiring the indenture trustee to transmit to the indenture security holders as hereinafter provided, at stated intervals of not more than 12 months, a brief report with respect to—

"(1) its eligibility and its qualifications under section 310, or in lieu thereof, if to the best of its knowledge it has continued to be eligible and qualified under such section, a written statement to such effect;

"(2) the character and amount of any advances made by it, as indenture trustee, which remain unpaid on the date of such report, and for the reimbursement of which it claims or may claim a lien or charge, prior to that of the indenture securities, on the trust estate or on property or funds held or collected by it as such trustee, if such advances so remaining unpaid aggregate more than one-half of 1 per centum of the principal amount of the indenture securities outstanding on such date;

"(3) the amount, interest rate, and maturity date of all other indebtedness owing to it in its individual capacity, on the date of such report, by the obligor upon the indenture securities, with a brief description of any property held as collateral security therefor, except an indebtedness based upon a creditor relationship arising in any manner described in paragraphs (2), (3), (4), or (6) of subsection (b) of section 311;

"(4) the property and funds physically in its possession as indenture trustee on the date of such report;

"(5) any release, or release and substitution, of property subject to the lien of the indenture (and the consideration therefor, if any) which it has not previously reported;

"(6) any additional issue of indenture securities which it has not previously reported; and

"(7) any action taken by it in the performance of its duties under the indenture which it has not previously reported and which in its opinion materially affects the indenture securities or the trust estate, except action in respect of a default, notice of which has been or is to be withheld by it in accordance with an indenture provision authorized by subsection (b) of section 315.

"(b) The indenture to be qualified shall also contain provisions requiring the indenture trustee to transmit to the indenture security holders as hereinafter provided, within the times hereinafter specified, a brief report with respect to—

"(1) the release, or release and substitution, of property subject to the lien of the indenture (and the consideration therefor, if any) unless the fair value of such property, as set forth in the certificate or opinion required by paragraph (1) of subsection (d) of section 314, is less than 10 percentum of the principal amount of indenture securities outstanding at the time of such release, or such release and substitution, such report to be so transmitted within 90 days after such time; and

"(2) the character and amount of any advances made by it as such since the date of the last report transmitted pursuant to the provisions of subsection (a) (or if no such report has yet been so transmitted, since the date of execution of the indenture), for the reimbursement of which it claims or may claim a lien or charge, prior to that of the indenture securities, on the trust estate or on property or funds held or collected by it as such trustee, and which it has not previously reported pursuant to this paragraph, if such advances remaining unpaid at any time aggregate more than 10 per centum of the principal amount of indenture securities outstanding at such time, such report to be so transmitted within 90 days after such time.

"(c) The indenture to be qualified shall also provide that reports pursuant to this section shall be transmitted by mail—

"(1) to all registered holders of indenture securities, as the names and addresses of such holders appear upon the registration books of the obligor upon the indenture securities;

"(2) to such holders of indenture securities as have, within the two years preceding such transmission, filed their names and addresses with the indenture trustee for that purpose; and

"(3) except in the case of reports pursuant to subsection (b) of this section, to all holders of indenture securities whose names and addresses have been furnished to or received by the indenture trustee pursuant to section 312.

"(d) The indenture to be qualified shall also provide that a copy of each such report shall, at the time of such transmission to indenture security holders, be filed with each stock exchange upon which the indenture securities are listed, and also with the Commission.

"REPORTS BY OBLIGOR; EVIDENCE OF COMPLIANCE WITH INDENTURE PROVISIONS

"Periodic Reports

"SEC. 314. (a) The indenture to be qualified shall contain provisions requiring each person who, as set forth in the registration statement or application, is or is to be an obligor upon the indenture securities—

"(1) to file with the indenture trustee copies of the annual reports and of the information, documents, and other reports (or copies of such portions of any of the foregoing as the Commission may by rules and regulations prescribe) which such obligor is required to file with the Commission pursuant to section 13 or section 15 (d) of the Securities Exchange Act of 1934; or, if the obligor is not required to file information, documents, or reports pursuant to either of such sections, then to file with the indenture trustee and the Commission, in accordance with rules and regulations prescribed by the Commission, such of the supplementary and periodic information, documents, and reports which may be required pursuant to section 13 of the Securities Exchange Act of 1934, in respect of a security listed and registered on a national securities exchange as may be prescribed in such rules and regulations;

"(2) to file with the indenture trustee and the Commission, in accordance with rules and regulations prescribed by the Commission, such additional information, documents, and reports with respect to compliance by such obligor with the conditions and covenants provided for in the indenture, as may be required by such rules and regulations, including, in the case of annual reports, if required by such rules and regulations, certificates or opinions of independent public accountants, conforming to the requirements of subsection (e) of this section, as to compliance with conditions or covenants, compliance with which is subject to verification by accountants, but no such certificate or opinion shall be required as to any matter specified in clauses (A), (B), or (C) of paragraph (3) of subsection (c); and

"(3) to transmit to the holders of the indenture securities upon which such person is an obligor, in the manner and to the extent provided in subsection (c) of section 313, such summaries of any information, documents, and reports required to be filed by such obligor pursuant to the provisions of paragraph (1) or (2) of this subsection as may be required by rules and regulations prescribed by the Commission.

The rules and regulations prescribed under this subsection shall be such as are necessary or appropriate in the public interest or for the protection of investors, having due regard to the types of indentures, and the nature of the business of the class of obligors affected thereby, and the amount of indenture securities outstanding under such indentures, and in the case of any such rules and regulations prescribed after the indentures to which they apply have been qualified under this title, the additional expense, if any, of complying with such rules and regulations. Such rules and regulations may be prescribed either before or after qualification becomes effective as to any such indenture.

## "Evidence of Recording of Indenture

"(b) If the indenture to be qualified is or is to be secured by the mortgage or pledge of property, such indenture shall contain provisions requiring the obligor upon the indenture securities to furnish to the indenture trustee—

"(1) promptly after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel the indenture has been properly recorded and filed so as to make effective the lien intended to be created thereby, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to make such lien effective; and

"(2) at least annually after the execution and delivery of the indenture, an opinion of counsel (who may be of counsel for such obligor) either stating that in the opinion of such counsel such action has been taken with respect to the recording, filing, re-recording, and refiling of the indenture as is necessary to maintain the lien of such indenture, and reciting the details of such action, or stating that in the opinion of such counsel no such action is necessary to maintain such lien.

## "Evidence of Compliance With Conditions Precedent

"(c) The indenture to be qualified shall contain provisions requiring the obligor upon the indenture securities to furnish to the indenture trustee evidence of compliance with the conditions precedent, if any, provided for in the indenture (including any covenants compliance with which constitutes a condition precedent) which relate to the authentication and delivery of the indenture securities, to the release or the release and substitution of property subject to the lien of the indenture, to the satisfaction and discharge of the indenture, or to any other action to be taken by the indenture trustee at the request or upon the application of such obligor. Such evidence shall consist of the following:

"(1) certificates or opinions made by officers of such obligor who are specified in the indenture, stating that such conditions precedent have been complied with;

"(2) an opinion of counsel (who may be of counsel for such obligor) stating that in his opinion such conditions precedent have been complied with; and

"(3) in the case of conditions precedent compliance with which is subject to verification by accountants (such as conditions with respect to the preservation of specified ratios, the amount of net quick assets, negative-pledge clauses, and other similar specific conditions), a certificate or opinion of an accountant, who, in the case of any such conditions precedent to the authentication and delivery of indenture securities, and not otherwise, shall be an

independent public accountant selected or approved by the indenture trustee in the exercise of reasonable care, if the aggregate principal amount of such indenture securities and of other indenture securities authenticated and delivered since the commencement of the then current calendar year (other than those with respect to which a certificate or opinion of an accountant is not required, or with respect to which a certificate or opinion of an independent public accountant has previously been furnished) is 10 per centum or more of the aggregate amount of the indenture securities at the time outstanding; but no certificate or opinion need be made by any person other than an officer or employee of such obligor who is specified in the indenture, as to (A) dates or periods not covered by annual reports required to be filed by the obligor, in the case of conditions precedent which depend upon a state of facts as of a date or dates or for a period or periods different from that required to be covered by such annual reports, or (B) the amount and value of property additions, except as provided in paragraph (3) of subsection (d), or (C) the adequacy of depreciation, maintenance, or repairs.

### "Certificates of Fair Value

"(d) If the indenture to be qualified is or is to be secured by the mortgage or pledge of property or securities, such indenture shall contain provisions—

"(1) requiring the obligor upon the indenture securities to furnish to the indenture trustee a certificate or opinion of an engineer, appraiser, or other expert as to the fair value of any property or securities to be released from the lien of the indenture, which certificate or opinion shall state that in the opinion of the person making the same the proposed release will not impair the security under such indenture in contravention of the provisions thereof, and requiring further that such certificate or opinion shall be made by an independent engineer, appraiser, or other expert, if the fair value of such property or securities and of all other property or securities released since the commencement of the then current calendar year, as set forth in the certificates or opinions required by this paragraph, is 10 per centum or more of the aggregate principal amount of the indenture securities at the time outstanding; but such a certificate or opinion of an independent engineer, appraiser, or other expert shall not be required in the case of any release of property or securities, if the fair value thereof as set forth in the certificate or opinion required by this paragraph is less than $25,000 or less than 1 per centum of the aggregate principal amount of the indenture securities at the time outstanding;

"(2) requiring the obligor upon the indenture securities to furnish to the indenture trustee a certificate or opinion of an engineer, appraiser, or other expert as to the fair value to such obligor of any securities (other than indenture securities and securities secured by a lien prior to the lien of the indenture upon property subject to the lien of the indenture), the deposit of which with the trustee is to be made the basis for the authentication and delivery of indenture securities, the withdrawal of cash constituting a part of the trust estate or the release of property or securities subject to the lien of the indenture, and requiring further that if the fair value to such obligor of such securities and of all other such securities made the basis of any such authentication and delivery, withdrawal, or release since the commencement of the then current calendar year, as set forth in the certificates or opinions required by this paragraph, is 10 per centum or more of the aggregate principal amount of the indenture securities at the time outstanding, such certificate or opinion shall be made by an independent engineer, appraiser, or other expert and, in the case of the authentication and delivery of indenture securities, shall cover the fair value to such obligor of all other such securities so deposited since the commencement of the current calendar year as to which a certificate or opinion of an independent engineer, appraiser, or other expert has not previously been furnished; but such a certificate of an independent engineer, appraiser, or other expert shall not be required with respect to any securities so deposited, if the fair value thereof to such obligor as set forth in the certificate or opinion required by this paragraph is less than $25,000 or less than 1 per centum of the aggregate principal amount of the indenture securities at the time outstanding; and

"(3) requiring the obligor upon the indenture securities to furnish to the indenture trustee a certificate or opinion of an engineer, appraiser, or other expert as to the fair value to such obligor of any property the subjection of

**18**                    TRUST INDENTURE BILL OF 1939

which to the lien of the indenture is to be made the basis for the authentication and delivery of indenture securities, the withdrawal of cash constituting a part of the trust estate, or the release of property or securities subject to the lien of the indenture, and requiring further that if

  "(A) within six months prior to the date of acquisition thereof by such obligor, such property has been used or operated, by a person or persons other than such obligor, in a business similar to that in which it has been or is to be used or operated by such obligor, and

  "(B) the fair value to such obligor of such property as set forth in such certificate or opinion is not less than $25,000 and not less than 1 percentum of the aggregate principal amount of the indenture securities at the time outstanding,

such certificate or opinion shall be made by an independent engineer, appraiser, or other expert and, in the case of the authentication and delivery of indenture securities, shall cover the fair value to the obligor of any property so used or operated which has been so subjected to the lien of the indenture since the commencement of the then current calendar year, and as to which a certificate or opinion of an independent engineer, appraiser, or other expert has not previously been furnished.

If the indenture to be qualified so provides, any such certificate or opinion may be made by an officer or employee of the obligor upon the indenture securities who is specified in the indenture, except in cases in which this subsection requires that such certificate or opinion be made by an independent person.  In such cases, such certificate or opinion shall be made by an independent engineer, appraiser, or other expert selected or approved by the indenture trustee in the exercise of reasonable care.

"Recitals as to Basis of Certificate or Opinion

  "(e) Each certificate or opinion with respect to compliance with a condition or covenant provided for in the indenture shall include (1) a statement that the person making such certificate or opinion has read such covenant or condition; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of such person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and (4) a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

"Parties May Provide for Additional Evidence

  "(f) Nothing in this section shall be construed either as requiring the inclusion in the indenture to be qualified of provisions that the obligor upon the indenture securities shall furnish to the indenture trustee any other evidence of compliance with the conditions and covenants provided for in the indenture than the evidence specified in this section, or as preventing the inclusion of such provisions in such indenture, if the parties so agree.

"DUTIES AND RESPONSIBILITY OF THE TRUSTEE

"Duties Prior to Default

"SEC. 315. (a) The indenture to be qualified may provide that, prior to default (as such term is defined in such indenture)—

  "(1) the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture; and

  "(2) the indenture trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, in the absence of bad faith on the part of such trustee, upon certificates or opinions conforming to the requirements of the indenture;

but such indenture shall contain provisions requiring the indenture trustee to examine the evidence furnished to it pursuant to section 314 to determine whether or not such evidence conforms to the requirements of the indenture.

"Notice of Defaults

  "(b) The indenture to be qualified shall contain provisions requiring the indenture trustee to give to the indenture security holders, in the manner and to the extent provided in subsection (c) of section 313, notice of all defaults known to

the trustee, within ninety days after the occurrence thereof: *Provided*, That such indenture may provide that, except in the case of default in the payment of the principal of or interest on any indenture security, or in the payment of any sinking or purchase fund installment, the trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee or a trust committee of directors and/or responsible officers, of the trustee in good faith determine that the withholding of such notice is in the interests of the indenture security holders.

"**Duties of the Trustee in Case of Default**

"(c) The indenture to be qualified shall contain provisions requiring the indenture trustee to exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

"**Responsibility of the Trustee**

"(d) The indenture to be qualified shall not contain any provisions relieving the indenture trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that—

"(1) such indenture may contain the provisions authorized by paragraphs (1) and (2) of subsection (a) of this section;

"(2) such indenture may contain provisions protecting the indenture trustee from liability for any error of judgment made in good faith by a responsible officer or officers of such trustee, unless it shall be proved that such trustee was negligent in ascertaining the pertinent facts; and

"(3) such indenture may contain provisions protecting the indenture trustee with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the holders of not less than a majority in principal amount of the indenture securities at the time outstanding (determined as provided in subsection (a) of section 316) relating to the time, method, and place of conducting any proceeding for any remedy available to such trustee, or exercising any trust or power conferred upon such trustee, under such indenture.

"**Undertaking for Costs**

"(e) The indenture to be qualified may contain provisions to the effect that all parties thereto, including the indenture security holders, agree that the court may in its discretion require, in any suit for the enforcement of any right or remedy under such indenture, or in any suit against the trustee for any action taken or omitted by it as trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant: *Provided*, That the provisions of this subsection shall not apply to any suit instituted by such trustee, to any suit instituted by any indenture security holder, or group of indenture security holders, holding in the aggregate more than 10 per centum in principal amount of the indenture securities outstanding, or to any suit instituted by any indenture security holder for the enforcement of the payment of the principal of or interest on any indenture security, on or after the respective due dates expressed in such indenture security.

"DIRECTIONS AND WAIVERS BY BONDHOLDERS; PROHIBITION OF IMPAIRMENT OF HOLDER'S RIGHT TO PAYMENT

"SEC. 316. (a) The indenture to be qualified may contain provisions—

"(1) authorizing the holders of not less than a majority in principal amount of the indenture securities at the time outstanding (A) to direct the time, method, and place of conducting any proceeding for any remedy available to such trustee, or exercising any trust or power conferred upon such trustee, under such indenture, or (B) on behalf of the holders of all such indenture securities, to consent to the waiver of any past default and its consequences; or

"(2) authorizing the holders of not less than 75 per centum in principal amount of the indenture securities at the time outstanding to consent on

behalf of the holders of all such indenture securities to the postponement of any interest payment for a period not exceeding three years from its due date.

For the purposes of this subsection and paragraph (3) of subsection (d) of section 315, in determining whether the holders of the required principal amount of indenture securities have concurred in any such direction or consent, indenture securities owned by any obligor upon the indenture securities, or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with any such obligor, shall be disregarded, except that for the purposes of determining whether the indenture trustee shall be protected in relying on any such direction or consent, only indenture securities which such trustee knows are so owned shall be so disregarded.

"(b) The indenture to be qualified shall provide that, notwithstanding any other provision thereof, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except as to a postponement of an interest payment consented to as provided in paragraph (2) of subsection (a).

### "SPECIAL POWERS OF TRUSTEE; DUTIES OF PAYING AGENTS

"SEC. 317. (a) The indenture to be qualified shall contain provisions—

"(1) authorizing the indenture trustee, in the case of a default in payment of the principal of any indenture security, when and as the same shall become due and payable, or in the case of a default in payment of the interest on any such security, when and as the same shall become due and payable and the continuance of such default for such period as may be prescribed in such indenture, to recover judgment, in its own name and as trustee of an express trust, against the obligor upon the indenture securities for the whole amount of such principal and interest remaining unpaid; and

"(2) authorizing such trustee to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of such trustee and of the indenture security holders allowed in any judicial proceedings relative to the obligor upon the indenture securities, its creditors, or its property.

"(b) The indenture to be qualified shall provide that each paying agent shall hold in trust for the benefit of the indenture security holders or the indenture trustee all sums held by such paying agent for the payment of the principal of or interest on the indenture securities, and shall give to such trustee notice of any default by any obligor upon the indenture securities in the making of any such payment.

### "EFFECT OF PRESCRIBED INDENTURE PROVISIONS

"SEC. 318. The indenture to be qualified shall provide that if any provision thereof limits, qualifies, or conflicts with another provision which is required to be included in such indenture by any of sections 310 to 317, inclusive, such required provision shall control.

### "RULES, REGULATIONS, AND ORDERS

"SEC. 319. (a) The Commission shall have authority from time to time to make, issue, amend, and rescind such rules and regulations and such orders as it may deem necessary or appropriate in the public interest or for the protection of investors to carry out the provisions of this title, including rules and regulations defining accounting, technical, and trade terms used in this title. Among other things, the Commission shall have authority, (1) by rules and regulations, to prescribe for the purposes of section 310 (b) the method (to be fixed in indentures to be qualified under this title) of calculating percentages of voting securities and other securities; (2) by rules and regulations, to prescribe the definitions of the terms 'cash transaction' and 'self-liquidating paper' which shall be included in indentures to be qualified under this title, which definitions shall include such of the creditor relationships referred to in paragraphs (4) and (6) of subsection (b) of section 311 as to which the Commission determines that the application of subsection (a) of such section is not necessary in the public interest or for the protection of investors, having due regard for the purposes of such subsection; and (3) for the purposes of this title, to prescribe the form or forms in which

information required in any statement, application, report, or other document filed with the Commission shall be set forth. For the purpose of its rules or regulations the Commission may classify persons, securities, indentures, and other matters within its jurisdiction and prescribe different requirements for different classes of persons, securities, indentures, or matters.

"(b) Subject to the provisions of the Federal Register Act and regulations prescribed under the authority thereof, the rules and regulations of the Commission under this title shall be effective upon publication in the manner which the Commission shall prescribe, or upon such later date as may be provided in such rules and regulations.

"(c) No provision of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or order of the Commission, notwithstanding that such rule, regulation, or order may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

"HEARINGS BY COMMISSION

"SEC. 320. Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.

"SPECIAL POWERS OF THE COMMISSION

"SEC. 321. (a) For the purpose of any investigation or any other proceeding which, in the opinion of the Commission, is necessary and proper for the enforcement of this title, any member of the Commission, or any officer thereof designated by it, is empowered to administer oaths and affirmations, subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of any such books, papers, correspondence, memoranda, contracts, agreements, or other records may be required from any place in the United States or in any Territory at any designated place of investigation or hearing. In addition, the Commission shall have the powers with respect to investigations and hearings, and with respect to the enforcement of, and offenses and violations under, this title and rules and regulations and orders prescribed under the authority thereof, provided in sections 20, 22 (b), and 22 (c) of the Securities Act of 1933.

"(b) The Treasury Department, the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Reserve Banks, and the Federal Deposit Insurance Corporation are hereby authorized, under such conditions as they may prescribe, to make available to the Commission such reports, records, or other information as they may have available with respect to trustees or prospective trustees under indentures qualified or to be qualified under this title, and to make through their examiners or other employees for the use of the Commission, examinations of such trustees or prospective trustees. Every such trustee or prospective trustee shall, as a condition precedent to qualification of such indenture, consent that reports of examinations by Federal, State, Territorial, or District authorities may be furnished by such authorities to the Commission upon request therefor.

"Notwithstanding any provision of this title, no report, record, or other information made available to the Commission under this subsection, no report of an examination made under this subsection for the use of the Commission, no report of an examination made of any trustee or prospective trustee by any Federal, State, Territorial, or District authority having jurisdiction to examine or supervise such trustee, no report made by any such trustee or prospective trustee to any such authority, and no correspondence between any such authority and any such trustee or prospective trustee, shall be divulged or made known or available by the Commission or any member, officer, agent, or employee thereof, to any person other than a member, officer, agent, or employee of the Commission: *Provided*, That the Commission may make available to the Attorney General of the United States, in confidence, any information obtained from such records, reports of examination, other reports, or correspondence, and deemed necessary by the Commission, or requested by him, for the purpose of enabling him to perform his duties under this title.

**22**                         TRUST INDENTURE BILL OF 1939

"(c) Any investigation of a prospective trustee, or any proceeding or requirement for the purpose of obtaining information regarding a prospective trustee under any provision of this title, shall be limited—

"(1) to determining whether such prospective trustee is qualified to act as trustee under the provisions of subsection (b) of section 310;

"(2) to requiring the inclusion in the registration statement or application of information with respect to the eligibility of such prospective trustee under paragraph (1) of subsection (a) of such section 310; and

"(3) to requiring the inclusion in the registration statement or application of the most recent published report of condition of such prospective trustee, as described in paragraph (2) of such subsection (a), or, if the indenture does not contain the provision with respect to combined capital and surplus authorized by the last sentence of paragraph (2) of subsection (a) of such section 310, to determining whether such prospective trustee is eligible to act as such under such paragraph (2).

## "COURT REVIEW OF ORDERS; JURISDICTION OF OFFENSES AND SUITS

"SEC. 322. (a) Orders of the Commission under this title (including orders pursuant to the provisions of sections 305 (b) and 307 (c)) shall be subject to review in the same manner, upon the same conditions, and to the same extent, as provided in section 9 of the Securities Act of 1933, with respect to orders of the Commission under such Act.

"(b) Jurisdiction of offenses and violations under, and jurisdiction and venue of suits and actions brought to enforce any liability created by, this title, or any rules or regulations or orders prescribed under the authority thereof, shall be as provided in section 22 (a) of the Securities Act of 1933.

## "LIABILITY FOR MISLEADING STATEMENTS

"SEC. 323. (a) Any person who shall make or cause to be made any statement in any application, report, or document filed with the Commission pursuant to any provisions of this title, or any rule, regulation, or order thereunder, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, or who shall omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall be liable to any person (not knowing that such statement was false or misleading or of such omission) who, in reliance upon such statement or omission, shall have purchased or sold a security issued under the indenture to which such application, report, or document relates, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading or of such omission. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit and assess reasonable costs, including reasonable attorneys' fees, against either party litigant, having due regard to the merits and good faith of the suit or defense. No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued.

"(b) The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist under the Securities Act of 1933, or the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, or otherwise at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this title shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of.

## "UNLAWFUL REPRESENTATIONS

"SEC. 324. It shall be unlawful for any person in issuing or selling any security to represent or imply in any manner whatsoever that any action or failure to act by the Commission in the administration of this title means that the Commission has in any way passed upon the merits of, or given approval to, any trustee, indenture or security, or any transaction or transactions therein, or that any such action or failure to act with regard to any statement or report filed with or exam-

fined by the Commission pursuant to this title or any rule, regulation, or order thereunder, has the effect of a finding by the Commission that such statement or report is true and accurate on its face or that it is not false or misleading.

#### "PENALTIES

"SEC. 325. Any person who willfully violates any provision of this title or any rule, regulation, or order thereunder, or any person who willfully, in any application, report, or document field or required to be filed under the provisions of this title or any rule, regulation, or order thereunder, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both.

#### "EFFECT ON EXISTING LAW

"SEC. 326. Except as otherwise expressly provided, nothing in this title shall affect (1) the jurisdiction of the Commission under the Securities Act of 1933, or the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, over any person, security, or contract, or (2) the rights, obligations, duties, or liabilities of any person under such Acts; nor shall anything in this title affect the jurisdiction of any other commission, board, agency, or officer of the United States or of any State or political subdivision of any State, over any person or security, insofar as such jurisdiction does not conflict with any provision of this title or any rule, regulation, or order thereunder.

#### "CONTRARY STIPULATIONS VOID

"SEC. 327. Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or with any rule, regulation, or order thereunder shall be void.

#### "SEPARABILITY OF PROVISIONS

"SEC. 328. If any provision of this title or the application of such provision to any person or circumstance shall be held invalid, the remainder of the title and the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby."

## A. GENERAL STATEMENT

1. *Scope of the bill.*—The bill is concerned only with trust indentures covering bonds, notes, debentures, and similar securities which are publicly offered by use of the mails or of means and instrumentalities of transportation or communication in interstate commerce. (For convenience, the term "bond" alone will be used in this report.) In general, it applies only to trust indentures which must now be filed with the Securities and Exchange Commission as part of a registration statement under the Securities Act of 1933 covering the bonds to be issued thereunder. The subject matter of the bill was left uncovered by the Securities Act of 1933 and the Securities Exchange Act of 1934. In section 211 of the latter act, the Congress directed the Securities and Exchange Commission to make a study and investigation of the related problem of the work, activities, personnel, and functions of protective and reorganization committees. The present bill is in large part based upon the findings and recommendations contained in the Commission's reports of that study and investigation.[1]

The use of the trust-indenture device is a practical necessity where bonds are to be nationally distributed among hundreds or even

---

[1] Particular reference is made to the Report on the Study and Investigation of the Work, Activities, Personnel, and Functions of Protective and Reorganization Committees, pt. VI, Trustees Under Indentures, June 18, 1936).

thousands of small investors in a number of States. The indenture, which is from 50 to 200 pages long, vests in the indenture trustee powers with respect to the enforcement of the issuer's obligations and the bondholders' rights, for it is impracticable in such cases for the bondholders to attempt such enforcement by individual action. The bond itself is still only 1 page long, but it incorporates, by general reference to the indenture, many important and frequently complicated provisions which, although the bondholder rarely sees them, legally constitute part of his contract with the borrower.

Although the real parties in interest are the borrower and the investing public, the trust indenture is ordinarily prepared by the attorneys for the borrower or its investment bankers or both, before the securities are publicly offered. Statistics show that the indenture trustee has little voice in the process of drafting the indenture, and the investing public cannot participate in the determination of its terms, because the indenture must be executed before the bonds are issued, and before the identity of the ultimate purchasers can be ascertained.

2. *Necessity for legislation.*—The hearings before the subcommittee on trust indentures and the reports of the Securities and Exchange Commission made to the Congress pursuant to section 211 of the Securities Exchange Act of 1934 furnish ample evidence of the necessity for improvement in the types of trust indentures now in common use. The Commission's study, pursuant to such section, covered more than 400 trust indentures of issuers of all types, most of them made after 1920. In addition, the Commission's examination of approximately 600 trust indentures filed with it under the Securities Act has disclosed substantially the same deficiencies as are shown by the analyses of sample indentures filed under the Securities Act, set forth at pages 253 to 263, inclusive, of the printed hearings.

This fact makes clear that the disclosure requirements of the Securities Act do not provide an adequate corrective. The Securities Act does not require disclosure of the reason why the inclusion of certain provisions in the indenture, or the omission of other provisions therefrom, operates to the great disadvantage of the investor. Even the most elaborate explanation would not be sufficient to make the average investor realize why the deficiencies to which this bill is directed are prejudicial to his interests.

The nature of the deficiencies disclosed by the testimony at the hearings and by the Commission's reports fully appears from the discussion, at a later point in this report, of the principal differences between the committee substitute and the Senate bill. It is still too early to show losses resulting from similar deficiencies in the indentures filed under the Securities Act. The oldest of those indentures was executed less than 6 years ago, and default is not ordinarily to be anticipated during the first few years after an issue is sold. But the potentialities of loss to investors as a result of such deficiencies are shown by the case histories set forth at pages 247 to 252, inclusive, of the printed hearings, as well as by the Commission's reports of its study. If this bill had been law at the time those defaulted securities were offered to the public, the indentures under which they were issued would not have contained those defects.

3. *National importance of the problem.*—To the extent that the types of trust indenture now in common use are inadequate, it is clear that such inadequacy presents a national problem which cannot be dealt with effectively by the States, for it is conservatively estimated that more than 40 billions of securities which have been nationally distributed are now outstanding under trust indentures, and in the 2 years and 8 months ended December 31, 1938, over 4¼ billions of additional securities which would have been affected by this bill were registered under the Securities Act. Although the Commission's actual registration records show that New York and Chicago institutions were awarded trusteeships under 80.2 percent in dollar amount of all such issues of more than $1,000,000, and that the inclusion of institutions located in 7 other financial centers brings this percentage up to 95 percent.

## B. Objectives and Method of Operation of the Bill

1. *Purposes of the bill.*—The committee amendment has the same primary purposes as the Senate bill:

1. To provide full and fair disclosure, not only at the time of original issue of bonds, notes, debentures, and similar securities, but throughout the life of such securities.

2. To provide machinery whereby such continuing disclosure may be made to the security holders, and whereby they may get together for the protection of their own interests.

3. To assure that the security holders will have the services of a disinterested indenture trustee, and that such trustee will conform to the high standards of conduct now observed by the more conscientious trust institutions.

The committee has thoroughly canvassed the possibility of achieving these objectives by other means, and has concluded that the alternative methods proposed do not provide an adequate solution.

2. *Voluntary action by trust institutions.*—The adoption of a voluntary "code" by the trust institutions themselves would not be sufficient to accomplish the purposes of the bill. The printed hearings make clear that it would be impossible to obtain substantial unanimity among the trust institutions upon a "code" setting forth minimum requirements with respect to the indenture provisions which concern the protection and enforcement of the rights of the bondholders. In the absence of such unanimity, if a conscientious trust institution refused to accept an indenture which failed to conform to the code, the obligor would merely have to shop around until he found another trust institution which would accept it.

3. *Continuing supervision by existing agencies.*—A proposal to amend the Senate bill so as to vest in the Board of Governors of the Federal Reserve System continuing jurisdiction over actual performance by indenture trustees was unfavorably reported by the Board itself and by the Federal Deposit Insurance Corporation, and was rejected by the Senate Committee on Banking and Currency. That proposal was renewed at the hearings on H. R. 5220. The committee does not believe that it would accomplish the desired objectives. It would

cover only about 25 percent of the field—trust indentures under which the trustees are national banks. It would require detailed periodic examination of the trustee's actual performance of its obligations. It would come into operation only after the improper action had occurred and the resulting loss had been sustained by the bondholders, a loss which would frequently have been prevented or minimized if the indenture itself had been corrected.

4. *Correction of trust indenture.*—The bill proceeds upon the theory that the deficiencies in corporate trust practice are largely due to deficiencies in the trust indenture itself. This committee believes that the proper remedy is to correct these deficiencies in the trust indenture, and that the appropriate time to correct those deficiencies is before the bonds are publicly offered in interstate commerce or through the mails. If this is done, it is believed that the enforcement of the provisions of the indenture may appropriately be left to the bondholders themselves, without continuing supervision by a governmental agency.

The bill reported by the committee has the approval of the Securities and Exchange Commission. Every draft of the bill was scrutinized by the special committee on mortgage trusteeships, which was appointed by the American Bankers' Association and is composed of the trust officers of 14 trust institutions in various parts of the country. The committee is advised that a majority of that committee believes that the bill is workable, and does not oppose its adoption. That is also the official position of the American Bankers' Association. In addition, the reported bill has the approval of a special committee of the National Association of Mutual Savings Banks, which is interested from the investor standpoint.

5. *Method of operation of the bill.*—With the single exception of securities issued in connection with voluntary or judicial reorganizations, the bill will apply only to trust indentures which are now required to be filed with the Securities and Exchange Commission as part of a Securities Act registration statement. In its essentials, the bill provides that registration, under the Securities Act, of the securities to be issued under such a trust indenture shall not be permitted to become effective, unless the indenture conforms to the specific statutory requirements expressed in the bill. The indenture is automatically "qualified" under the bill when registration becomes effective as to the securities themselves. Comparable machinery is established for the qualification of indentures which cover securities issued in connection with voluntary or judicial reorganizations, which are exempt from registration under the Securities Act. That exemption has not been carried over into this bill, for the reasons stated on page 19 of this report, in the discussion of section 304 (a) (4).

The standards prescribed by the bill affect only those indenture provisions which relate to the protection and enforcement of the rights of the investors. They do not affect the strictly "business" features of indentures, such as the wisdom of the issue or the amount of security to be given therefor, or the offering price, maturity date, interest rate, or sinking-fund provisions.

The Commission's only function will be to see that the terms of each indenture conform to the prescribed standards.

The Commission's work will be completed when the form of indenture has been qualified under the bill, except for the rule-making power conferred upon it by section 314 (a) with respect to periodic reports and summaries thereof, which is discussed in paragraph 8, on page 13 of this report. The Commission will have no powers with respect to the enforcement of the provisions of the indenture. After the indenture has been executed it will be enforceable only by the parties, like any other contract.

The committee does not believe that the requirements of this bill will add materially to the cost of flotation of indenture securities, or encourage the alleged trend to so-called "private placements" of such securities.

The item of registration expense did not prevent the registration of a total of over 9 billions of securities of all types during the 2 years ended June 30, 1937. Any "drying up" of public financing must therefore be due to other causes, among which may well be lack of investor confidence, and it is believed that this bill will tend materially to restore such confidence. As shown by the summary set forth below, expense of registration represents a comparatively small proportion of the total expense of publicly distributing indenture securities. In fact, for issues of $1,000,000 or more, underwriters' commission and discount was from four to nine times as important a factor in total cost as was registration expense. The figures contained in this summary are based on the registrants' own estimates.

*Summary of expenses of flotation of indenture securities registered under Securities Act, Jan. 1, 1936, to June 30, 1938*

| Size of issue (thousands) | Under $1,000,000 | | | | $1,000,000 or more | | | | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Under $250 | $250 to $499 | $500 to $749 | $750 to $999 | $1,000 to $4,999 | $5,000 to $9,999 | $10,000 to $24,999 | $25,000 or more | |
| Number of issues | 16 | 11 | 8 | 8 | 55 | 14 | 39 | 41 | 192 |
| (1) Underwriters' commission and discount | *Percent* 6.2 | *Percent* 6.0 | *Percent* 5.5 | *Percent* 3.8 | *Percent* 3.3 | *Percent* 2.4 | *Percent* 2.2 | *Percent* 2.0 | *Percent* 2.1 |
| (2) Other expenses unrelated to registration [1] | 1.086 | .982 | 1.280 | .762 | .652 | .537 | .491 | .318 | .375 |
| (3) Expenses due to registration | 1.461 | 1.566 | 1.903 | 1.117 | .776 | .513 | .400 | .214 | .289 |
| Total | 8.747 | 8.548 | 8.683 | 5.679 | 4.728 | 3.450 | 3.091 | 2.532 | 2.764 |

[1] This summary assumes that ⅓ of the following expenses (detailed in the attached break-down) are not attributable to the necessity of registration: Printing and engraving, legal fees and expenses, accounting fees and expenses, engineering fees and expenses, other and miscellaneous expenses.

A detailed break-down of these figures follows:

*Expenses of flotation [1] indenture securities registered under Securities Act, Jan. 1, 1936, to June 30, 1938*

| Size of issue (thousands) | Under $1,000,000 | | | | $1,000,000 or more | | | | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Under $250 | $250 to $499 | $500 to $749 | $750 to $999 | $1,000 to $4,999 | $5,000 to $9,999 | $10,000 to $24,999 | $25,000 or more | |
| Number of issues | 16 | 11 | 8 | 8 | 55 | 14 | 39 | 41 | 192 |
| (1) Underwriters' commission and discount | *Percent* 6.2 | *Percent* 6.0 | *Percent* 5.5 | *Percent* 3.8 | *Percent* 3.3 | *Percent* 2.4 | *Percent* 2.2 | *Percent* 2.0 | *Percent* 2.1 |
| Other expenses unrelated to registration: | | | | | | | | | |
| Listing fees | .000 | ---- | ---- | ---- | .007 | .005 | .013 | .012 | .011 |
| Revenue stamps | .066 | .037 | .163 | .085 | .092 | .094 | .131 | .106 | .110 |
| State qualification fees | .047 | .026 | .026 | .015 | .061 | .065 | .047 | .011 | .022 |
| Trustee fees | .251 | .143 | .145 | .110 | .110 | .125 | .105 | .088 | .093 |
| (2) Total | .364 | .206 | .334 | .210 | .270 | .289 | .296 | .217 | .236 |
| Expenses partially [2] due to registration: | | | | | | | | | |
| Registration fees | .016 | .013 | .010 | .011 | .011 | .016 | .010 | .010 | .011 |
| Printing and engraving | .198 | .152 | .400 | .260 | .259 | .182 | .165 | .088 | .114 |
| Legal fees and expenses | 1.053 | 1.051 | 1.257 | .854 | .537 | .293 | .224 | .095 | .149 |
| Accounting fees and expenses | .381 | .282 | .370 | .350 | .193 | .126 | .075 | .048 | .063 |
| Engineering fees and expenses | .037 | .128 | .175 | ---- | .026 | .056 | .019 | .011 | .015 |
| Other and miscellaneous expenses | .498 | .716 | .637 | .194 | .132 | .088 | .102 | .063 | .076 |
| (3) Total | 2.183 | 2.342 | 2.849 | 1.669 | 1.158 | .761 | .595 | .315 | .428 |
| (4) Total, lines (1), (2), and (3) | 8.747 | 8.548 | 8.683 | 5.679 | 4.728 | 3.450 | 3.091 | 2.532 | 2.764 |

[1] Figures cover 192 issues for which comparable data were available, out of a total of 402 issues registered excluding 10 debenture issues registered by investment companies, percent figures represent percent of gross offering price.

[2] From ⅓ to ½ of these expenses are probably not attributable to the necessity of registration.

## C. Principal Differences Between the Committee Substitute and the Senate Bill (S. 2065)

The bill as passed by the Senate and the substitute herewith reported are similar in many respects. The section numbers correspond throughout, except for the prohibitory and procedural sections, i. e., sections 305 to 309, inclusive. The changes incorporated in the substitute bill have as their major purposes the simplification of the procedure for the qualification of indentures, and the elimination of so-called administrative discretion in the application of the statutory requirements. The committee believes that the changes made will minimize the fear that the bill would tend to increase the expense of public distribution of indenture securities, or further to concentrate indenture trusteeships in the larger financial centers.

It is not practicable to attempt to set forth all of the differences between the two bills, but the following statement will indicate the principal differences.

1. *Exemption for small issues.*—Section 304 (a) (9) of the substitute bill, like section 304 (a) (8) of the Senate bill, provides an exemption

for securities issued under indentures which are limited to $1,000,000 aggregate principal amount of securities outstanding thereunder. It exempts such issues up to $1,000,000 aggregate principal amount for any issuer within a period of 36 consecutive months. Section 304 (a) (8) of the Senate bill also applied to securities which were not issued under an indenture. The combined dollar limit upon the exemption for securities of both types was $1,000,000 aggregate principal amount for each issuer within any period of 12 consecutive months. Securities which are not issued under an indenture are given separate treatment, in section 304 (a) (8) of the committee substitute.

The new section 304 (a) (8), which applies only to securities not issued under an indenture, provides an exemption for such securities of any issuer up to $250,000 aggregate principal amount in any period of 12 consecutive months. The record of Securities Act registrations for the 2 years and 8 months ended December 31, 1938, shows that public offerings of securities not issued under an indenture have averaged less than $250,000 in size, with the exception of three issues of $1,000,000, $11,000,000, and $25,000,000, respectively. In the opinion of the committee, issues of that size should be made under indentures which conform to the requirements of the bill. The smaller issues would be exempted under this paragraph.

2. *The elimination of duplication of Securities Act procedure.*—Section 306 of the Senate bill required the filing of an "application for qualification" with respect to all indentures to which the bill applied. This requirement applied even to securities which are also required to be registered under the Securities Act.

Section 305 of the substitute makes special provision for securities which are subject to registration under the Securities Act. In such cases, it will no longer be necessary to file a separate application for qualification of the indenture, for under sections 306 and 307 of the substitute bill, the requirement of an application for qualification applies only to securities which are not subject to registration. With respect to securities which are subject to registration under the Securities Act, the machinery of the Securities Act will be utilized instead, in order to avoid delay and duplication of expense.

Subsection (a) of section 305 merely requires that the registration statement include information with respect to the eligibility and qualifications of the trustee, and an analysis of certain provisions of the indenture. Subsection (c) requires that such analysis be included in the prospectus. Subsection (d) confers an exemption from liability for misstatements or omissions in such analysis, and as a safeguard against abuse, subsection (c) authorizes the Commission to require, after notice and opportunity for hearing, the inclusion in the prospectus of a supplementary analysis of such indenture provisions and of the effect thereof, prepared by the Commission. Similar provisions were contained in section 318 of the Senate bill, but in the substitute the Commission has been deprived of the power to require that its analysis be substituted for that prepared by the registrant.

3. *Twenty-day time limit on refusal orders.*—Section 308 of the Senate bill authorized the Commission to issue refusal orders on various grounds. Although, under section 306 of the Senate bill, refusal order proceedings had to be instituted within 20 days after filing of the application, the order did not have to be issued until a reasonable time after opportunity for hearing.

Under section 305 (b) of the committee substitute, on the other hand, refusal orders may be issued under the bill only after a finding that the prospective trustee is ineligible or disqualified, or that the security is not to be issued under an indenture which conforms to the requirements of the bill. Proceedings must be instituted within the 10-day period prescribed by section 8 (b) of the Securities Act, and the order must be issued within the 20-day period prescribed by that act.

Even in the case of securities which are not subject to registration under the Securities Act, new section 307 (c) carries over the procedure applicable to registered securities, including the 20-day time limit on refusal orders. The refusal-order section of the Senate bill, section 308, has therefore been eliminated.

Section 309 (a) of the substitute in effect merely defines the term "qualified indenture" for the purpose of the bill. Under the new section 309 (b), once an indenture has been qualified, a "stop order" may be issued only on grounds specified in the Securities Act. The indenture itself may not be affected, as provided in new section 309 (c).

4. *Elimination of administrative "discretion."*—One of the major criticisms directed against the Senate bill and the companion House bill (H. R. 5220) was based upon the fact that three of the requirements of the bill with respect to the provisions of indentures took the form of general legislative standards to be administered by the Commission, rather than specific statutory requirements. The provisions of the former bill to which that objection was taken were section 315 (a), relating to the duties of the indenture trustee in the period before default; section 315 (b), relating to the type of default of which the trustee was to be required to give prompt notice to the bondholders; and section 315 (d) (2), relating to the kind of certificate or opinion upon which the trustee was to be entitled to rely.

The subcommittee found it possible to convert all three of these provisions into specific statutory requirements, eliminating entirely the element of so-called administrative "discretion." The bill was amended accordingly, and those amendments have been incorporated in the bill herewith reported, as outlined below.

(a) *Notice of default.*—Trust indentures rarely contain provisions requiring notice to the bondholders even of serious defaults, although prompt notice of such defaults is one of the essentials of a program of full and fair disclosure throughout the life of the bonds.

Under section 315 (b) of the Senate bill, the Commission was given jurisdiction to determine the types of default of which notice must be required by the indenture. In the corresponding section of the committee substitute, the Commission is deprived of that jurisdiction; notice must be required only with respect to defaults in principal or interest or sinking fund or purchase fund installments. In the case of other types of default, the trustee will be protected in withholding notice so long as it determines that course to be in the interests of the bondholders.

(b) *Duties before default; reliance on certificates.*—In many indentures, the obligor undertakes to perform a number of specific covenants, such as covenants with respect to the recording of the indenture, the preservation of specified ratios, or the maintenance of a specified amount of net quick assets. Many indentures establish

conditions which must be complied with before the obligor may call upon the trustee to authenticate and deliver additional bonds, to release collateral or property which is subject to the lien of the indenture, to pay over the proceeds of the sale of the bonds or of released collateral or property, or to take other action authorized by the indenture.

The precise terms of such covenants and conditions are frequently a strong "selling point" when the bonds are first distributed. Their actual performance throughout the life of the bonds has a very important bearing on their value.

Where the trust indenture provides adequate machinery for making an effective check upon such matters, one of the most important services which a competent trust institution can render to the bondholders in the period before default is to keep a watchful eye on the actual performance of the more important covenants and conditions established by the indenture.

Nevertheless, many indentures contain provisions which make certificates or opinions of officers of the issuing company itself conclusive evidence of the performance of such covenants or conditions, even where ordinary prudence would require a supporting certificate or opinion by some independent person, and many indentures contain provisions which permit the trustee to accept certificates or opinions based upon an inadequate examination or investigation. The disastrous potentialities are illustrated by the histories of the *McKesson and Robbins* case, the *National Electric Power* case (involving an Insull holding company) and the *Krueger and Toll* case, set forth at pages 250 to 252 of the printed hearings, as well as by the Commission's reports of its studies pursuant to section 211 of the Securities Exchange Act.

The Senate bill, in sections 315 (a) and 315 (d) (2), attacked this problem by giving the Commission jurisdiction over the specific duties to be imposed upon the trustee in the period before default, and over the kind of certificates and opinions upon which the trustee should be entitled to rely. The committee substitute eliminates those two sections, and in lieu thereof inserts provisions which confer no so-called discretion on the Commission.

Sections 314 (b) to 314 (e), inclusive, of the substitute bill, establish specific statutory minimum requirements as to the kind of certificates and opinions which the obligor must furnish with respect to its compliance with the covenants and conditions prescribed by the indenture, and section 315 (a) (2) authorizes the trustee to rely upon certificates or opinions conforming to the requirements of the indenture.

Section 315 (a), like section 315 (d) (1) of the Senate bill, provides that, prior to default, the indenture trustee shall be liable only for the performance of the duties specifically set out in the indenture. But the indenture must require the trustee to examine the certificates or opinions furnished to it to determine whether or not they conform to the requirements of the indenture. This requirement was inserted in order to avoid the possibility that some trust institutions which adhere to the traditional mechanical view of their functions might fail to discover that the required evidence had not been furnished, or that the evidence furnished indicated a violation of the indenture.

An analysis of sections 314 (b) to (e), inclusive, makes clear that the requirements of those sections will not make it necessary for the

trustee to "interfere with the management" of the issuer's business. Under section 314 (b), the obligor must furnish to the trustee promptly after the indenture is executed, and at least annually thereafter, opinions of its own counsel as to the necessity and sufficiency of the recording of the indenture. If the indenture establishes conditions which must be complied with before the obligor calls upon the trustee to authenticate and deliver additional bonds, or to release collateral, or to pay over cash held by it as trustee, section 314 (c) requires that it furnish to the trustee certificates or opinions of its own officers and counsel as to compliance with such conditions, and, where appropriate, certificates or opinions of accountants. Under section 314 (d), certificates of fair value must be furnished where any such action is to be taken on the basis of the deposit of collateral with the trustee, or the subjection of additional property to the lien of the indenture. Certificates of fair value must also be furnished in connection with releases, and must state that the proposed release will not impair the security under the indenture in contravention of its provisions.

All certificates or opinions must, under section 314 (e), recite the maker's opinion that he has made such examination or investigation as is necessary to enable him to express an informed opinion, and must contain a brief statement as to the nature and scope of his examination or investigation.

The requirements of the bill will make clear that the execution of a certificate or opinion is not to be considered a mere matter of routine, and will go far to discourage a casual disregard of the covenants and conditions prescribed in the indenture, even where the certificate or opinion is made by an officer or employee of the obligor itself. At the same time, the requirements of the bill will not impose an undue burden on the obligor, for certificates of fair value and accountants' certificates or opinions may be made by officers or employees of the obligor, unless the amount involved in any particular type of transaction effected in a single calendar year reaches a substantial percentage of the principal amount of bonds outstanding. A 10-percent test is established by the substitute bill, except in the case of so-called "going-concern additions," where the risk of overvaluation is particularly serious. When that percentage is reached, certificates or opinions of an independent person must be furnished in connection with further transactions of the type in question during that calendar year.

5. *Clarification of standard of conduct to be observed after default.*— Practically all indentures absolve the trustee from any duty to act, notwithstanding the occurrence of specified defaults, unless it receives a demand for action from the holders of 25 percent or more of the bonds, and indemnity against expense and liability, even though indentures generally give the trustee a prior lien for such expense or liability upon the mortgaged property or proceeds of suit. In addition, almost all indentures expressly exempt the trustee from liability even for its own negligence, and under some indentures the trustee is responsible only for willful misconduct.

If the indenture contains provisions of this sort, as practically all indentures do, a trustee which accepts the traditional view that it is merely a mechanical, clerical agency, can safely fail to exercise its powers even where prompt action is essential for the protection and enforcement of the bondholders' rights. The consequences are well illustrated by the histories of the *Detroit International Bridge* case, the

*Union Power* case, and the *National Electric Power* case set forth at pages 247, 250, and 251 of the printed hearings, as well as by the Commission's reports of its studies pursuant to section 211 of the Securities Exchange Act.

After a default occurs under the indenture, and particularly in the critical period which precedes the organization of the bondholders in their own interests, the proper protection and enforcement of the rights of the bondholders requires that the trustee conform to the standard of ordinary prudence now observed by the more conscientious trust institutions. That is the objective of sections 315 (c) and 315 (d) of the Senate bill and of the correspondingly numbered sections of the substitute herewith reported.

Under section 315 (c) of the Senate bill, however, the standard of conduct which the trustee was to be required to observe in case of default was the degree of care which a prudent man would exercise under the circumstances "if he were a fiduciary." Representatives of the trust institutions themselves objected that the quoted language introduced an element of uncertainty into the standard. After consideration of their suggestion, the subcommittee substituted the customary standard of the degree of care which a prudent man would exercise under the circumstances "in the conduct of his own affairs."

As in the Senate bill, section 315 (d) prohibits the inclusion in the indenture of clauses exempting the trustee from liability for its own negligence, but at the same time provides reasonable safeguards which protect the trustee where it makes an error of judgment after reasonable investigation of the facts, or where it acts at the direction of the holders of a majority of the bonds. In addition, section 315 (e), like the identical section of the Senate bill, discourages the bringing of groundless suits against the trustee by permitting the court to assess reasonable costs, including attorney's fees, against the plaintiff in such a suit, and to require the filing of an undertaking for the payment of such costs. A similar provision recently enacted in New York has effectively protected trustees against baseless actions for accountings. The committee believes that, in view of these safeguards, the requirement that the trustee conform to the standard of ordinary prudence in the period after default will not discourage any competent trust institution from acting as indenture trustee, or subject it or its depositors to any undue risk. This view is shared by the Federal Deposit Insurance Corporation, which insures practically all of these trust institutions, and by a majority of the special committee on mortgage trusteeships of the American Bankers Association.

6. *Modification of restrictions upon conflicting interests.*—The histories of the *Detroit International Bridge* case, the *R. Hoe & Co.* case and the *Frye Investment Co.* case set forth at pages 247–249, inclusive, of the printed hearings, illustrate the dangers inherent in the possession by an indenture trustee of interests which materially conflict with those of the bondholders. Yet few indentures contain any restrictions upon the possession or acquisition by the trustee of such interests, and some indentures specifically permit the trustee to acquire interests which in fact materially conflict with those of the bondholders. See analyses of sample indentures filed under the Securities Act, set forth at pages 253–263, inclusive, of the printed hearings.

Section 310 (b) of the Committee substitute, like the correspondingly numbered section of the Senate bill, requires that there be written into the indenture, in the language of the statute, a provision which places restrictions upon the acceptance of an indenture trusteeship for more than one issue of the same obligor, upon too close affiliations with the obligor or with the underwriters of its outstanding securities, and upon the ownership by the trustee of substantial amounts of other securities of the obligor. And, where the trustee is also a creditor of the obligor, section 311 of both bills prevents the trustee from improving its own creditor position at the expense of the bondholders, within 4 months prior to a principal or interest default under the indenture, or after such a default.

The material changes in these provisions of the Senate bill are noted below:

(a) *Interlocking directors.*—Section 310 (b) (4) deals with the problem of interlocking directors and officers between trustee and obligor, or between trustee and underwriter. Where the trustee's board of directors is more than nine, two directors in common between trustee and obligor are permitted. The limitation imposed by the Senate bill upon the second director's pecuniary interest in the obligor has been eliminated.

(b) *Ownership of voting securities of trustee.*—Section 310 (b) (5) imposes a limitation on the ownership, by the obligor and its officials, of voting securities of the trustee. The percentage limits have been increased from 5 percent on individual ownership, and 10 percent on collective ownership, to a flat 10 and 20 percent, respectively.

The percentage limit on ownership of such securities by the underwriter and its officials has also been increased from 5 to 10 percent.

(c) *Loans by trustee to obligor.*—The problem of loans by an indenture trustee to the obligor itself, and related problems, may now come before the Commission in the exercise of its jurisdiction under the Public Utility Holding Company Act of 1935, particularly section 7 (d) (6) of that act. A typical case would be where an indenture trustee for an outstanding bond issue of a registered holding company or a subsidiary company thereof proposed to make a loan to the obligor under the indenture or to its parent company, evidenced by a note or other security. Among other things, the new section 311 (c) would bar the Commission from taking adverse action with respect to such a loan merely because the lending institution was also indenture trustee. But, where the lending institution is indenture trustee for the debtor itself, or for a subsidiary of the debtor, the Commission may require the indenture trustee to agree to be bound by the provisions of the bill with respect to preferential collections and the standard of conduct to be observed by the trustee in the period after default under the indenture. The provisions in question are contained in sections 311, 315 (c), and 315 (d) (2) and (3).

7. *Institutions eligible to act as trustee.*—Section 310 (a) of the substitute bill, like the correspondingly numbered section of the Senate bill, requires that all indentures which are subject to the bill have as trustee thereunder a domestic corporation which is authorized to exercise corporate trust powers and is subject to supervision or examination by governmental authorities. In paragraph 2 of that section of the committee substitute, however, the minimum capital and surplus requirements for the trustee has been increased from the figure of

$100,000 to $150,000. The records of Securities Act registration during the 2 years and 8 months ended December 31, 1938, indicates that the higher requirement would not have disqualified any of the institutional trustees for the four and one-quarter billions of indenture securities registered during that period.

8. *Elimination of duplication of periodic reports by obligor.*—In a substantial portion of the indentures examined by the Commission, the issuer was under no obligation to file an annual report with the indenture trustee. None of the indentures studied by the Commission, including those filed under the Securities Act, required the transmission to the bondholders of periodic reports, such as stockholders customarily receive. None of them established machinery for the transmission of such reports to the bondholders, through provisions for the maintenance by the trustee of bondholders' lists. Such provisions are an essential part of a program of full and fair disclosure throughout the life of the bonds. In the absence of such provisions, the first danger signal received by the bondholders may well be the return of an interest coupon unpaid, or a circular announcing the formation of a committee for the protection of their interests.

Section 314 (a) of the Senate bill dealt with the problem of periodic reports by the obligor to the trustee and the bondholders, and section 312 (to be discussed below) required that the indenture include machinery for the transmission of such reports to the bondholders.

Section 314 (a) of the substitute herewith reported takes into consideration the fact that generally the issuer will already be required to file periodic reports with the Commission under section 13 or section 15 (d) of the Securities Exchange Act. In such cases the substitute bill merely requires that copies of such reports (or of such portions thereof as the Commission may by rules and regulations prescribe) be filed with the indenture trustee together with information with respect to the obligor's compliance with the requirements of the indenture. The substitute requires a separate form of report only where the issuer is not now required to file reports under the Securities Exchange Act. Like the Senate bill, the substitute requires that summaries of these periodic reports be transmitted to the bondholders. The issuer may, of course, avoid duplication of expense by furnishing the same type of summary report to its stockholders.

In prescribing new rules and regulations with respect to periodic reports which apply to indentures which have previously been qualified under the bill, the Commission must, under the committee substituted give due regard to the additional expense, if any, of complying with such rules and regulations, as well as to the type of indenture and amount of bonds outstanding thereunder, and the nature of the class of issuer affected thereby.

9. *Modification of requirement that trustee mail out communications for bondholders.*—Under most indentures, the trustee may conclusively assume that there is no default, even though it has actual knowledge of its existence, until it receives notice from the holders of 10 percent or more of the bonds. Further, as stated above (p. 10) practically all indentures absolve the trustee from any duty to act unless it receives a demand for action from the holders of 25 percent or more of the bonds. If, in order to assemble the required percentage,

a bondholder seeks to obtain a list of the names and addresses of his fellow bondholders (who may number hundreds or even thousands scattered throughout several States), he will generally find that the issuing company itself has the only available list, derived from the "ownership certificates" which the issuing company is now required to procure under the Federal income-tax regulations, in connection with payments of interest. The difficulties with which a bondholder is confronted in this effort are well illustrated by the history of the *R. Hoe & Co.* case, set forth at page 248 of the printed hearings. The bondholder must either resort to publication, or wait until the issuer yields its list of bondholders to some favored protective committee. It appears that nearly 80 percent of the 943 protective committees which reported to the Commission in the course of its study obtained their lists from the underwriters or from the company itself, and as a result many of such committees were largely composed of persons connected with the underwriters or the issuing company.

If control of their own destinies is to be restored to the bondholders, it is essential that machinery be provided whereby the bondholders can be kept currently advised of the condition of their investment, and whereby they may get together for the protection of their own interests. Section 312 of the substitute herewith reported, like the correspondingly numbered section of the Senate bill, meets this problem by providing that the indenture include a requirement that the issuing company furnish to the trustee, at stated intervals or at the request of the trustee, information in its possession or control as to the names and addresses of the bondholders. The Senate bill also contains provisions under which the trustee must either give the bondholders access to such lists, or, without disclosing the list itself, mail out, on the request and at the expense of any bondholder, communications supplied by him relating to the rights of the bondholders. Under the substitute bill, at least three bondholders must join in any such request.

The committee substitute meets the fear that some bondholders may attempt to abuse the privilege of calling upon the trustee to mail out communications to other bondholders. Under the substitute the trustee may in any case file with the Commission a written statement that in the opinion of the trustee the mailing of a particular communication would be contrary to the best interests of the bondholders, or would be in violation of applicable law. If the trustee files such a statement with the Commission, the trustee need not mail out such communications unless and until the Commission, after notice and opportunity for hearing, enters an order refusing to sustain the trustee's objections.

The substitute also meets the fear that the trustee might in some way be held accountable for the contents of communications mailed by it. It adds to section 312 (c) a new clause which expressly protects the trustee from accountability by reason of mailing any material pursuant to a request made under section 312 (b).

10. *Postponements of interest payments.*—The effect of the changes in section 316 (a) is to permit the holders of 75 percent in principal amount of the outstanding bonds to consent to interest postponements for not more than 3 years. The limit under the corresponding section of the Senate bill was 1 year.

# D. Analysis by Sections

## SECTION 301. SHORT TITLE

The bill adds a new title, title III, to the act approved May 27, 1933, of which the Securities Act of 1933 constitutes title I. The new title, divided into sections as follows, is given the short title of the Trust Indenture Act of 1939:

### TITLE III

Section 301. Short title.
Section 302. Necessity for regulation.
Section 303. Definitions.
Section 304. Exempted securities and transactions.
Section 305. Securities required to be registered under Securities Act.
Section 306. Securities not registered under Securities Act.
Section 307. Qualification of indentures covering securities not required to be registered.
Section 308. Integration of procedure with Securities Act and other acts.
Section 309. When qualification becomes effective; effect of qualification.
Section 310. Eligibility and disqualification of trustee.
    (a) Persons eligible for appointment as trustee.
    (b) Disqualification of trustee.
    (c) Applicability of section.
Section 311. Preferential collection of claims against obligor.
Section 312. Bondholders' lists.
Section 313. Reports by indenture trustee.
Section 314. Reports by obligor; evidence of compliance with indenture provisions.
    (a) Periodic reports.
    (b) Evidence of recording of indenture.
    (c) Evidence of compliance with conditions precedent.
    (d) Certificates of fair value.
    (e) Recitals as to basis of certificate or opinion.
    (f) Parties may provide for additional evidence.
Section 315. Duties and responsibility of the trustee.
    (a) Duties prior to default.
    (b) Notice of defaults.
    (c) Duties of the trustee in case of default.
    (d) Responsibility of the trustee.
    (e) Undertaking for costs.
Section 316. Directions and waivers by bondholders; prohibition of impairment of holder's right to payment.
Section 317. Special powers of trustee; duties of paying agents.
Section 318. Effect of prescribed indenture provisions.
Section 319. Rules, regulations, and orders.
Section 320. Hearings by Commission.
Section 321. Special powers of the Commission.
Section 322. Court review of orders; jurisdiction of offenses and suits.
Section 323. Liability for misleading statements.
Section 324. Unlawful representations.
Section 325. Penalties.
Section 326. Effect on existing law.
Section 327. Contrary stipulations void.
Section 328. Separability of provisions.

## SECTION 302. NECESSITY FOR REGULATION

Subsection (a) contains an enumeration of the conditions which necessitate Federal regulation, in the interests of investors and in the national public interest, of public offerings of notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participa-

37

tion, through the use of means and instruments of transportation and communication in interstate commerce and of the mails.

(1) This paragraph emphasizes the necessity of having a trustee to represent the interests of bondholders. Reference is made to the obvious impracticability of individual action by bondholders, and to the fact that concerted action is impeded by reason of the unavailability, to widely scattered bondholders, of bondholders' lists.

(2) This paragraph refers to the necessity that the trustee have adequate rights and powers and adequate duties and responsibilities with respect to the protection and enforcement of the rights of the bondholders. It also refers to the general and reasonable assumption by investors that the trustee is under an affirmative duty to take action for the protection and enforcement of their rights, an assumption which is incorrect under the forms of trust indenture in common use.

(3) This paragraph mentions the necessity that the trustee have resources commensurate with its responsibilities and that it not have any material conflicting relationship to, connection with, or interest in the obligor or any underwriter of its securities. In the Senate bill, this paragraph referred to "material conflicts, actual or potential." The last three words have been eliminated as surplusage.

(4) This paragraph has reference to the fact that trust indentures generally fail to require the obligor to furnish to the trustee and to the bondholders adequate current information with respect to its financial condition and the performance of its obligations under the indenture and fail to provide machinery for the transmission of such information to the bondholders.

(5) This paragraph refers to indenture provisions which are misleading or deceptive, and to the necessity of full and fair disclosure of the effect of important indenture provisions.

(6) This paragraph answers the natural question why bondholders have not taken steps to protect themselves by insisting upon the inclusion of adequate protective provisions in indentures. The explanation is that trust indentures are commonly prepared by the obligor or underwriter, and the fact that the securities are publicly offered (the very fact which brings them within the scope of this bill), would make bondholder participation in the drafting process impracticable, even if they understood the problem.

Subsection (b) states that practices of the foregoing character have existed to such an extent that, unless regulated, the public offering of such securities, in interstate commerce or through the mails, is injurious to the capital markets, to investors, and to the general public. This subsection also declares the general policy of the bill to be to meet these problems and eliminate these evils.

### SECTION 303. DEFINITIONS

As pointed out in the discussion of section 304 (a) (4), the bill will, in the main, apply only to securities which are subject to the registration requirements of the Securities Act. Accordingly, paragraph (1) of section 303 provides that any term defined in section 2 of the Securities Act, as heretofore amended, and not otherwise defined in this section, shall have the meaning assigned to such term in such section 2. Thus the Securities Act definitions of "security" and "issuer," among others, are carried over into the bill.

In addition, section 303 of the bill contains definitions of 17 terms used throughout the bill, such as sale, prospectus, underwriter, director, executive officer, indenture, and voting security.

"Sale" (2) is defined in the same terms as in section 2 (3) of the Securities Act, with the exception mentioned in the latter part of the paragraph. The reason for this exception can best be illustrated by an example. If, as is not an uncommon practice in the case of real-estate mortgages, the mortgagor executes an ordinary bond and mortgage to a trust company, receiving in exchange "certificates of participation" in such mortgage which he then sells to the public, this transaction is held, under the Securities Act, to involve a public offering not only of the certificates, but of the underlying bond. But for the exception made in this paragraph, it would be necessary that the underlying bond, as well as the certificate of participation, be issued under a qualified trust indenture. The exception does not apply if the eventual distribution of the underlying bond or bonds to the purchasers of the certificates is contemplated, as where the certificates are by their terms convertible into such bonds. In such cases the sale of a certificate of interest or participation is deemed an immediate sale of the underlying bond or bonds even though the conversion privilege is not exercisable until some future date.

"Prospectus" (3) is defined in the same terms as the Securities Act, section 2 (10) of which defines "prospectus" broadly as including any written or radio communication offering a security for sale. By virtue of this definition, communications of this character must conform to the requirements of section 305 (c) relating to analyses of indenture provisions with respect to the matters specified in section 305 (a) (2). In the case of unregistered securities, this paragraph provides two exceptions (comparable to those provided in section 2 (10) of the Securities Act), the effect of which is to exempt from such requirements (1) communications accompanying a written statement which contains such analyses, and communications sent subsequently to the sending of such a written statement, and (2) the ordinary type of broker and dealer advertising, provided that it states from whom such a written statement may be obtained.

"Underwriter" (4) is defined in exactly the same terms as in section 2 (11) of the Securities Act except that the last sentence of the Securities Act definition is omitted. Under that sentence, a person who undertakes the distribution of a block of outstanding securities for a person in a control relationship with the issuer, or who purchases from such a controlling or controlled person with a view to distribution, is held to be an underwriter just as though he were distributing for or had purchased from the issuer itself, and registration by the issuer is required. The considerations which justify requiring registration by the issuer in this situation do not, however, extend to requiring qualification of the indenture before such a distribution may be made. The elimination of the sentence in question will not give rise to any danger of evasion of the provisions of this bill, since the term "underwriter" as defined in this bill would clearly be broad enough to cover any person, whether or not in a control relation with the issuer, who as part of a scheme for public distribution purchased from the issuer securities issued under an indenture which was not qualified under this bill. For the purposes of the last clause of this paragraph, a "spread" of which a person is given the benefit is to be considered as

in the nature of a "commission" to such person, as under the Securities Act definition.

"Director" (5) is defined in substantially the same terms as in section 3 (a) (7) of the Securities Exchange Act of 1934.

"Indenture" (7) means any mortgage, deed of trust, trust, or any other indenture or similar instrument or agreement, whether or not secured, under which securities are outstanding or are to be issued. The term includes any supplement or amendment to any of the foregoing.

"Indenture to be qualified" (9) means (1) the indenture under which there has been or is to be issued a security in respect of which a particular registration statement has been filed, or (2) the indenture in respect of which a particular application has been filed, and the next four terms are defined with reference to that indenture. Through this device the language of sections 310 to 318, inclusive, has been considerably simplified.

"Indenture trustee" (10) means each trustee under the indenture to be qualified and each successor trustee.

"Indenture security" (11) means any security issued or issuable under the indenture to be qualified.

"Obligor" (12), when used with respect to any such indenture security, means every person who is liable upon a security issued or issuable under the indenture to be qualified. In the case of certificates of interest or participation, the term includes persons liable upon the security or securities in which such certificate evidences an interest or participation. This provision is of particular importance in connection with the prohibitions against conflicting interests, for in the case of such certificates it is the indenture trustee's interest in or connection with the obligor upon the underlying security which really matters. The last clause of the paragraph is intended to make clear that the trustee under equipment trust certificates or certificates of interest or participation is not itself to be regarded as an obligor, merely by reason of the fact that it agrees to pay over to the certificate holders moneys received from the lessee of the equipment or from the obligor on the underlying security or securities.

"Voting security" (16) is defined in substantially the same terms as in section 2 (a) (17) of the Public Utility Holding Company Act of 1935. The test is the right to vote in the direction or management of the affairs of the "person" in question. The definition makes clear that the expression "percentage of the voting securities" has reference to the voting power, and not to the number of shares.

"Securities Act of 1933" (17) is to be deemed to refer to such act, as amended, whether amended prior to or after the enactment of this title. Where, in various portions of the bill, the intention is to incorporate provisions of the Securities Act as they now stand, regardless of future amendments, specific reference is made to the Securities Act of 1933 "as heretofore amended." The purpose is to prevent the inadvertent dislocation of the provisions of this bill by reason of future amendments of the Securities Act. A similar provision is made with respect to the Securities Exchange Act of 1934 and the Public Utility Holding Company Act of 1935.

## SECTION 304. EXEMPTED SECURITIES AND TRANSACTIONS

Subsection (a) exempts certain securities from the provisions of the bill. The specific references, contained in the Senate bill, to the registration and qualification provisions and to the civil and criminal liability sections have been eliminated, in order to correct the erroneous impression that the other sections of the bill are applicable to exempt securities. This change will not have the effect of limiting the meaning of the term "security," the definition of which in section 2 (1) of the Securities Act has been incorporated by reference in this bill by section 303 (1).

(1) This is the provision which limits the applicability of the bill to notes, bonds, debentures, or evidences of indebtedness, or certificates of interest or participation in, temporary certificates for, or guarantees of any of the foregoing. The specific mention of these types of security, and the failure to mention other types specifically mentioned in the definition of the term "security" contained in section 2 (1) of the Securities Act and incorporated by reference in this bill (such as interim certificates and certificates of deposit), makes clear that such other types of security are exempted from the provisions of this bill. On principle, certificates of interest or participation of the character referred to in the discussion of section 303 (2) of the bill should be subject to the provisions of the bill. Practical considerations also demand their inclusion, for adoption of the certificate of interest device would provide too easy a method of avoiding the requirements of the bill.

(2) This paragraph in effect limits the type of "certificate of interest or participation" to which the bill applies to the general type of certificate referred to in the discussion of section 303 (2). It would exempt, for example, fixed trust certificates evidencing an interest in a group of assorted bonds.

(3) Under this paragraph, the requirements of the bill are to become effective 6 months after its enactment. A similar device was used in section 3 (a) (1) of the Securities Act.

(4) With the two exceptions noted below, the effect of this paragraph is to exempt from the provisions of this bill all securities exempted from registration under the Securities Act. The category thus exempted includes governments and municipals, securities of National or State banks, short-term commercial paper, securities of eleemosynary institutions and building and loan associations, rails, receivers' certificates, and insurance policies.

The two exceptions are securities issued in exchange for other securities of the same issuer, and securities issued under a plan approved by a court, which are exempted from the Securities Act by sections 3 (a) (9) and 3 (a) (10) thereof. It may be reasonable to suppose, for the purposes of exemption from the disclosure requirements of the Securities Act, that one who already holds securities of a company which are to be exchanged for new securities is reasonably familiar with its affairs, but there is no reason why the indenture under which the new securities are issued should not conform to the higher standards prescribed by this bill. With respect to the failure to carry over the section 3 (a) (10) exemption, it should be noted that while courts

may pass on the fairness of the reorganization plan under which securities are issued, they do not commonly examine the trust indenture.

The distinction thus taken indicates why, in this paragraph, reference is made to the Securities Act of 1933, as heretofore amended. It is quite possible that future amendments of the Securities Act will exempt from the operation of that act securities which, for similar reasons, are not entitled on principle to an exemption from this bill.

Although securities "issued by" National or State banks are exempted from this bill, it would not be possible for an issuer to evade compliance with this bill by making a bond and mortgage to such a bank, and then causing the bank to "issue" certificates of interest or participation in such bond and mortgage. Similar questions have arisen under the Securities Act, and under such circumstances the company itself, rather than the bank which performs purely ministerial functions, has been regarded by the Commission as the "issuer" of the certificates of participation. Such administrative interpretations of the Securities Act would, of course, be controlling in the interpretation of this paragraph.

(5) The first clause of this paragraph exempts securities issued under a mortgage indenture as to which a contract of insurance under the National Housing Act is in effect. Under that act, the Federal Housing Administration has control over the form of such mortgage indentures, and the application of this bill to such securities would result in an unnecessary duplication of regulatory machinery. The second clause of this paragraph gives such securities the same status, with respect to the Securities Act, as securities which are guaranteed by the United States. Under the 1938 amendments of the National Housing Act, the trustee under a mortgage indenture which is guaranteed by the Federal Housing Administration has, in the event of a monetary default, the option of assigning the mortgage to the Federal Housing Administrator in exchange for debentures, guaranteed by the United States, for 98 percent in principal amount of the bonds outstanding under the indenture, together with a certificate of claim entitling him, among other things, to receive the other 2 percent out of any surplus remaining upon the foreclosure of the indenture.

(6) This paragraph exempts obligations of foreign governments and subdivisions. Substantially different considerations apply to such issues.

(7) This paragraph exempts any guarantee of any security which is exempted by subsection (a). If it is not necessary to comply with the indenture requirements with respect to the security itself, there would be little point in making such requirements applicable to a guarantee of such security.

(8) This paragraph exempts any securities issued otherwise than under an indenture, but the maximum aggregate principal amount of securities of any one issuer to which this exemption may be applied in any period of 12 consecutive months is limited to $250,000.

(9) This paragraph exempts securities issued under an indenture which limits the aggregate principal amount of securities outstanding thereunder to $1,000,000 or less, but the maximum aggregate principal amount of securities of any one issuer to which this exemption may be applied in any period of 36 consecutive months is limited to $1,000,000.

The last sentence of the subsection makes clear that securities to which the requirements of sections 305 and 306 would not have applied, irrespective of the exemptions provided by paragraphs (8) and (9), are to be disregarded in computing the maximum aggregate principal amounts of securities to which those exemptions may be applied.

Subsection (b) in effect restricts the applicability of the bill to public offerings by issuers or underwriters, as under the Securities Act itself, transactions by dealers being covered only to the limited extent deemed reasonably necessary to prevent evasions. As has already been noted the term "underwriter" is more narrowly defined under this bill than under the Securities Act. The last sentence of this subsection is necessary in order to prevent persons who would be "underwriters" under the broader Securities Act definition from losing the exemption provided by this subsection. Here again the reference is to the Securities Act of 1933, as heretofore amended.

Subsection (c): This subsection permits the issuer to apply for the exemption of offerings of additional securities issued under trust indentures which were executed prior to the effective date of the requirements of the bill. On such application, the Commission is required to grant an exemption with respect to any provisions of the bill as to which the Commission finds, after hearing, that compliance with such provisions, through the execution of a supplemental indenture or otherwise, would require the consent of the holders of securities outstanding under the indenture, or would impose an undue burden on the issuer, having due regard to the public interest and the interests of investors. It will be noticed that compliance with many of the provisions of the bill could not conceivably be regarded as necessitating the consent of the holders of outstanding securities, and the necessary basis of Federal jurisdiction existing, there is no reason why the issuer should not be made to comply to that extent with the required standards, particularly in view of the safeguard provided by paragraph (2) of this subsection.

Subsection (d): Under this subsection the Commission is authorized on application by the issuer and after opportunity for hearing thereon, to exempt from any one or more of the provisions of the bill securities issued by a "person" organized and existing under the laws of a foreign government or political subdivision, to the extent that the Commission finds that compliance with such provisions is not necessary in the public interest or for the protection of investors.

## SECTION 305. SECURITIES REQUIRED TO BE REGISTERED UNDER SECURITIES ACT

Subject, of course, to the exemption provisions of section 304, this section applies to securities with respect to which a registration statement is filed under the Securities Act.

Subsection (a) requires that the registration statement relating to any such security include two additional items:

(1) Such information and documents as the Commission may by rules and regulations prescribe in order to enable it to determine whether the indenture trustee is eligible to act, under section 310 (a), or has a conflicting interest as defined in section 310 (b); and

(2) An analysis of certain of the more important provisions of the indenture, including those with respect to the definition of what shall

constitute a default, the authentication and delivery of indenture securities, and the release or release and substitution of property subject to the lien of the indenture.

The information and documents required by paragraph (1) are to be contained in a separate part of the registration statement, which part is to be signed by the indenture trustee.

Subsection (b) requires the Commission to refuse registration if it finds that the security in question is not to be issued under an indenture conforming to the requirements of sections 310 to 318 of the bill, or if it finds that the prospective trustee is ineligible or disqualified under section 310. Refusal order proceedings must be instituted within the 10-day period prescribed by section 8 (b) of the Securities Act, and no refusal order may be issued after the expiration of the 20-day period prescribed by that act. When the Commission deems that the objections on which a refusal order was based have been met, the order must be rescinded.

Under subsection (c), a prospectus relating to any such security must contain the analysis of certain indenture provisions which subsection (a) requires to be set forth in the registration statement. Thus it will no longer be necessary for prospective purchasers of indenture securities to rely solely on a literal transcription in the prospectus of the long and frequently very complicated indenture provisions. Where, in the opinion of the Commission, it is necessary or appropriate in the public interest or for the protection of investors, subsection (c) also authorizes the Commission to prepare a supplementary analysis of the indenture provisions in question, and of the effect thereof, and to order the inclusion of such supplementary analysis in the prospectus, after notice and opportunity for hearing.

In view of the safeguard provided by the Commission's power to prepare a supplementary analysis, subsection (d) confers an exemption, from the civil and criminal liability provisions of the Securities Act and of the bill itself, with respect to statements in or omissions from any analysis required by this section. This exemption extends also to any analysis required under sections 306 and 307, which deal with securities not registered under the Securities Act.

### SECTION 306. SECURITIES NOT REGISTERED UNDER SECURITIES ACT

This section applies only to securities which are not registered under the Securities Act. Its application is thus limited to securities issued in exchange for other securities of the same issuer, and securities issued under a plan approved by a court, which are exempted from the registration and prospectus requirements of the Securities Act by section 3 (a) (9) and 3 (a) (10) thereof. All other Securities Act exemptions are carried over by section 304 (a) (4) and 304 (b).

Subsection (a) in effect requires that all such securities, the public offering of which is subject to the bill, be issued under an indenture as to which "qualification" is effective. It prohibits, in language substantially similar to that of section 5 of the Securities Act, the use of means or instruments of transportation or communication in interstate commerce or of the mails to sell any such unregistered securities or to deliver the same after sale unless they have been or are to be issued under a qualified indenture.

Subsection (b), which is modeled on section 5 (b) of the Securities Act, makes it unlawful for any person to make use of the mails or

any means or instruments of interstate or foreign commerce to transmit any prospectus relating to the sale of any such unregistered security which is issued under a "qualified indenture" unless such prospectus includes or is accompanied by analyses that meet the requirements of subsection (c) of section 305. It also makes it unlawful for any person to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or delivery after sale, unless accompanied or preceded by such analyses.

### SECTION 307. QUALIFICATION OF INDENTURES COVERING SECURITIES NOT REQUIRED TO BE REGISTERED

This section applies only to securities which are not required to be registered under the Securities Act. It establishes machinery for the qualification of an indenture which is not unlike the registration machinery of sections 6, 7, and 8 of the Securities Act.

Subsection (a) requires that an application for qualification be filed by the issuer, as under section 6 (a) of the Securities Act. The application must include the information and documents required by section 305 (a), namely, (1) information and documents with respect to the eligibility and qualifications of the indenture trustee; and (2) an analysis of any indenture provisions with respect to the matters referred to in that section. As under section 305 (a), the information and documents required by paragraph (1) are to be contained in a separate part of the application, which part is to be signed by the indenture trustee. In addition, the application must contain such of the information and documents which would be required to be filed in order to register the security under the Securities Act as the Commission may by rules and regulations prescribe. The last sentence of the subsection provides that the information and documents so filed shall be available to the public under such regulations as the Commission may prescribe, subject to the restrictions upon disclosure contained in section 321. Except for the latter qualification this provision is substantially the same as that in section 6 (d) of the Securities Act. The subsection also specifically confers upon the applicant the right to withdraw its application at any time prior to the effective date thereof.

Subsection (b) requires that the application be accompanied by a filing fee of $100.

Subsection (c) makes the provisions of section 8 of the Securities Act and provisions of section 305 (b) applicable to every such application as though it were a registration statement filed under the Securities Act. This subsection carries over the procedure applicable to registered securities, including the 20-day time limit on refusal orders.

### SECTION 308. INTEGRATION OF PROCEDURE WITH SECURITES ACT AND OTHER ACTS

Under the provisions of this section, it will be possible to avoid duplication of effort and expense where the indenture security in question is also subject to the Securities Act or one of the other acts administered by the Commission.

Subsection (a) requires the Commission to provide for "incorporation by reference" of information and documents on file with the Commission under the Securities Act or one of the other acts administered by the Commission so that if required information or documents have already been filed under one of such acts, they need not be filed again.

Subsection (b) requires the Commission to provide for the consolidation of applications, reports, and proceedings under this title with registration statements, applications, reports, and proceedings under the Securities Act or other acts administered by the Commission.

### SECTION 309. WHEN QUALIFICATION BECOMES EFFECTIVE; EFFECT OF QUALIFICATION

Subsection (a) in effect defines the term "qualified indenture" for the purposes of the bill. It provides that an indenture is to be deemed to have been "qualified" when registration becomes effective as to the security issued thereunder, or when an application for qualification of the indenture itself becomes effective under section 307.

Subsection (b) limits the Commission's power to issue a stop-order under section 8 (d) of the Securities Act, suspending the effectiveness of the registration statement or of an application for qualification. After an indenture has been qualified, a stop-order may be issued only on one or more of the grounds specified in section 8 of the Securities Act.

Subsection (c) makes clear that an indenture as to which qualification has become effective is not affected by the subsequent adoption, amendment, or recission of rules, regulations or orders, except to the extent authorized in section 314 (a).

Subsection (d) contains a provision making clear that no trustee under an indenture which has been qualified, shall be subject to any liability because of any failure of such indenture to comply with any provision of the bill or any rule, regulation, or order thereunder.

Subsection (e) makes clear that the Commission has no powers with respect to the enforcement of the provisions of an indenture; its responsibility ceases when the form of indenture has been "qualified."

### SECTION 310. ELIGIBILITY AND DISQUALIFICATION OF TRUSTEE

#### (a) PERSONS ELIGIBLE FOR APPOINTMENT AS TRUSTEE

Paragraph (1) requires that at least one trustee under the indenture be a corporation with corporate trust powers, which is subject to governmental supervision or examination.

Under paragraph (2), the indenture must require that such institutional trustee have at all times a combined capital and surplus of a specified minimum amount, not less than $150,000. If the indenture so provides, however, the combined capital and surplus set forth in the most recent annual report of condition published pursuant to law or to the requirements of the supervising or examining authority will be conclusive evidence as to the amount thereof.

Paragraph (3) will permit the making of provision for individual co-trustees, as is necessary under some State laws.

Case 5:07-cv-04052-JF    Document 76-3    Filed 06/06/2008    Page 48 of 48

Paragraph (4) requires that in the case of certificates of interest or participation, the trustee have the legal power to exercise the rights of a holder of the underlying securities.

#### (b) DISQUALIFICATION OF TRUSTEE

This subsection requires that if any trustee has or acquires any conflicting interest as defined therein, it shall, within 90 days after ascertaining that it has such conflicting interest, either eliminate such conflicting interest or resign. If the trustee fails to comply with this requirement, it must notify the bondholders of that fact within 10 days after the expiration of the 90-day period. If the trustee fails to comply with this requirement after written request, removal proceedings may be instituted by any security holder who has been a bona fide holder of indenture securities for at least 6 months. The subsection then proceeds to state what shall be deemed to be a conflicting interest. If there are two or more trustees, each trustee is to be considered separately, for the purposes of this subsection.

(1) Trusteeship under more than one indenture made by the same obligor is to be deemed a conflicting interest with the exceptions mentioned in this paragraph. Cases in which one indenture is a collateral trust indenture secured exclusively by bonds issued under the other indenture are excepted. A similar exception is provided where the obligor is a real-estate company having no substantial unmortgaged assets and where both indentures are secured by wholly separate and distinct parcels of real estate. No real conflict of interest exists in such cases. Where the indenture to be qualified is wholly unsecured, provision is made for the exception of other unsecured indentures, in the absence of a finding by the Commission that a material conflict of interest is likely. In addition, the Commission is authorized to make further exceptions where the issuer establishes that trusteeship under both indentures is not likely to involve a material conflict of interest.

(2) A trustee is to be deemed a conflicting interest if it or any of its directors or executive officers is an obligor upon the indenture securities, or an underwriter for the obligor. The term "underwriter" is defined in the last paragraph of subsection (b).

(3) This paragraph deals with cases in which the trustee controls or is controlled by or is under common control with an obligor or underwriter. Under this paragraph, the test is actual direct or indirect control. The words "whether by agency, stock ownership or otherwise", which appeared in sections 310 (b) (3) and 310 (b) (7) of the Senate bill have been eliminated as unnecessary, in view of the opinion of the Supreme Court on April 17, 1939, in *Rochester Telephone Corporation* v. *U. S. and the Federal Communications Commission.*

(4) This paragraph prohibits the trustee itself or any of its directors or executive officers from being an officer, director, partner, employee, appointee, or representative of an obligor upon the indenture securities, or of an underwriter for the obligor who is currently engaged in the business of underwriting. This paragraph, however, permits, in common parlance, one director or executive officer "each way" between the trustee and the obligor, but no person may at the same time be an executive officer of both. The second common director is permitted only if the number of directors of the trustee is more than nine.