Case 5:07-cv-04052-JF    Document 76-4    Filed 06/06/2008    Page 1 of 44

Clause (C) permits the trustee to be designated to act as such, or in certain specified ministerial capacities, by an obligor or underwriter.

(5) This paragraph imposes restrictions on the beneficial ownership, by the obligor and its underwriters, and their respective officials, of voting securities of the trustee. Neither the obligor nor any of its officials may be the beneficial owner of more than 10 percent of such securities. A 20-percent limit is placed upon their collective ownership of such securities. A 10-percent limit is placed upon the ownership of such securities, individually or collectively, by each underwriter and its officials.

(6), (7), and (8): These paragraphs deal with the matter of the beneficial ownership by the trustee of securities of an obligor or underwriter, and securities of persons who own substantial percentages of the voting securities of an obligor, or who stand in a control relationship with an obligor. The restrictions also apply to securities held as collateral security for an obligation as to which an uncured default in principal has continued for more than 30 days. Paragraph (6) gives recognition to the fact that if a trustee is permitted by paragraph (1) of this subsection to act as trustee under more than one indenture, there is no reason why the ownership by the trustee of securities issued under any of such indentures should be deemed to constitute a conflicting interest.

(9) Ownership in a representative capacity—i. e., as executor, trustee, or in a similar capacity—is given separate and more liberal treatment in this paragraph, on the theory that such ownership does not involve as direct a conflict as beneficial ownership. If, on May 15 in any year, the trustee's holdings of such securities in a representative capacity exceed the prescribed 25-percent limit, the trustee is to be deemed to have a conflicting interest. But any such securities (in an amount not exceeding the 25-percent limit) which were acquired through becoming executor, administrator, or testamentary trustee of an estate which included them may be excluded from this calculation for a 2-year period. The trustee is required to make a check of its holdings of such securities in any of the specified representative capacities promptly after May 15 in each year. A similar check must be made when a principal or interest default under the indenture has continued for 30 days, and all such securities held by the trustee in any of the specified representative capacities, with sole or joint control over such securities, are thereafter to be considered as though beneficially owned by the trustee.

The specification of percentages in paragraphs (5) to (9) of the subsection are not to be construed as indicating that the ownership of such percentages of the securities of a person is or is not necessary or sufficient to constitute direct or indirect control for the purposes of paragraph (3) or (7).

The next to the last paragraph of the subsection excludes from the operation of paragraphs (6), (7), (8), and (9) securities other than "corporate securities," securities held as collateral under the indenture to be qualified, or for an obligation not in default as to principal for 30 days, and securities held in a ministerial capacity.

The final paragraph of subsection (b) defines the term "underwriter" as meaning, for the purposes of that subsection, any person who, within 3 years prior to the time of determination, was an underwriter of any securities of an obligor outstanding at such time.

### (c) APPLICABILITY OF SECTION

This subsection provides that the Public Utility Holding Company Act of 1935 shall not be held to establish or authorize the establishment of any standards regarding the eligibility and qualifications of the trustee or prospective trustee under an indenture to be qualified under the bill, or regarding the provisions of any such indenture with respect thereto, other than those established by this section. This subsection is intended to prevent the Commission from imposing more stringent requirements with respect to such matters, by virtue of the powers conferred on it by the Holding Company Act.

### SECTION 311. PREFERENTIAL COLLECTION OF CLAIMS AGAINST OBLIGOR

(a) This subsection is designed to eliminate competition between a trustee, who is also a creditor of the obligor, and the bondholders he represents, during and after the 4 months' period preceding a "default" as defined in the last paragraph of the subsection. The trustee is permitted to become a creditor of the obligor, but if it improves its position as such creditor, after the beginning of such 4 months' period, the proceeds of such preferential collection must be apportioned between the trustee and the bondholders in such manner that the trustee receives no greater percentage of its claim (after deducting nonpreferential collections) than the bondholders receive on the unsecured portion of their claim, after deducting receipts from other sources. In the case of bankruptcy, receivership or reorganization proceedings, administration of these provisions is vested in the court.

The following items, as to which the element of competition is not present, are excluded from the apportionment requirement: (i) Payments by persons, other than the obligor, who are liable upon the claim in question; (ii) the proceeds of the bona fide sale of the claim by the trustee to a third person; (iii) distributions received in bankruptcy or receivership, or in reorganization proceedings pursuant to the Bankruptcy Act or applicable State law; (iv) realizations upon property held as security for the trustee's claim prior to the beginning of the 4 months' period; (v) realizations upon property received as security for a claim created within the 4 months' period, i. e., a so-called "rescue" or "distress" loan, if the property was so received simultaneously with the creation of the claim, and if the trustee establishes that it had no reasonable cause to believe that the "rescue" would be unsuccessful, that is, no reasonable cause to believe that a default would occur within 4 months.

The next to the last paragraph of the subsection is intended to prevent a trustee from evading the apportionment requirements in the event of resignation or removal.

Under the definitions of the terms "default" and "indenture security holder" contained in the final paragraph of the subsection, if the trustee is acting as trustee under two or more qualified indentures, all of which are in default, the accounting requirements come into operation 4 months prior to the earliest default, and the holders of securities outstanding under all of such indentures are entitled to the benefits thereof.

(b) This subsection permits the exclusion, from the apportionment requirements of section 311 (a), of certain classes of credits, the owner-

ship or acquisition of which does not involve an acute conflict of interest. Included in this category are (i) credits evidenced by securities issued under an indenture, or by securities having a maturity of 1 year or more at the time of acquisition by the trustee; (ii) advances authorized by a receivership or bankruptcy court, or by the indenture, for the purpose of preserving the mortgaged property or of discharging tax liens or other prior liens or encumbrances on the trust estate, if appropriate notice of such advances is given to the security holders; (iii) certain disbursements of a minor nature; (iv) temporary credits arising from the sale of goods or securities sold in what is substantially a cash transaction, as for example, cases where payment is made by check which may take several days to clear; (v) creditor relationships arising from the ownership of securities of "Edge Act" corporations, which are comparatively few in number and are engaged almost exclusively in the financing of foreign trade; and (vi) credits arising from certain transactions in "self-liquidating paper," such as credits arising from the discount of drafts with bills of lading attached, which are ordinarily liquidated out of the proceeds of the goods, and credits arising out of similar transactions. By section 319 (a), the Commission is given the power to prescribe, by rules and regulations, the definitions of "cash transaction" and "self-liquidating paper" which are to be included in the indenture.

(c) Under this subsection, the Commission, in the exercise of its jurisdiction under the Public Utility Holding Company Act of 1935 regarding the issue or sale of a security, may not take adverse action with regard thereto by reason of the fact that such issue or sale will result in an indenture trustee for the issuer or seller, or for a subsidiary or associate company or affiliate thereof, becoming a creditor, directly or indirectly, of any of the foregoing. But, where the lending institution is indenture trustee for the debtor itself, or for a subsidiary of the debtor, the Commission may require the indenture trustee to agree to be bound by the provisions of the bill with respect to preferential collections and the standard of conduct to be observed by the trustee in the period after default under the indenture. Sections 311, 315 (c), and 315 (d) (2) and (3).

### SECTION 312. BONDHOLDERS' LISTS

Subsection (a) requires the obligor to file with the trustee, at intervals of not more than 6 months and at such other times as the trustee may request, all information in its possession or control, or in the possession or control of any of its paying agents, as to the names and addresses of the bondholders. For example, under the requirements of the income-tax title of the Revenue Act of 1936, "ownership certificates" setting forth the names and addresses of the bondholders are required to be filed with issuers or their paying agents in connection with interest payments. This subsection would require that information so obtained be turned over to the trustee. The trustee is under a specific duty to preserve, in as current a form as is reasonably practicable, all information as to names and addresses of bondholders furnished to it by the obligor or its paying agents, and any such information received by the trustee itself in the capacity of paying agent.

Under subsection (b), the trustee must, within 5 business days after application by any three or more bondholders who desire to

communicate with other bondholders with respect to their rights, either afford to them access to such information, or advise them as to the approximate number of bondholders and the approximate cost of mailing to them a specified form of proxy or other communication. In the latter event, the trustee must, on request of such applicants, mail to all bondholders whose names have been so furnished to it or received by it, copies of the form of proxy or other communication specified in the request with reasonable promptness after tender thereof and payment or provision for the payment of the reasonable expenses of such mailing, unless, within 5 days after such tender, the trustee files with the Commission a written statement that, in its opinion, such mailing would be contrary to the best interests of the bondholders or would be in violation of applicable law.  If the trustee files such a written statement, it need not mail the communications unless and until the Commission, after notice and opportunity for hearing, enters an order refusing to sustain the objections.

Subsection (c) is intended to exempt from the nondisclosure provisions of the Revenue Act the disclosure of information as to the names and addresses of the bondholders in accordance with the provisions of the indenture.  In addition, the subsection protects the trustee from accountability by reason of mailing any material pursuant to a request made under subsection (b).

### SECTION 313. REPORTS BY INDENTURE TRUSTEE

Under subsection (a), the indenture must require the trustee to transmit to the indenture security holders at least annually a brief report with respect to the following matters:

(1) Its eligibility and its qualifications under section 310;

(2) The character and amount of any unpaid advances made by it as indenture trustee and aggregating more than one-half of 1 percent of the principal amount of bonds outstanding, if the trustee claims or may claim a lien or charge for such advances prior to that of the indenture securities;

(3) With certain exceptions, the amount, interest rate, and maturity date of all indebtedness owing to it by the obligor, with a brief description of any collateral therefor;

(4) The property and funds physically in its possession as indenture trustee;

(5) Releases or releases and substitutions, not previously reported;

(6) Additional issues not previously reported;

(7) Any action, not previously reported, taken in the performance of its duties under the indenture, which in its opinion materially affects the indenture securities or the trust estate.

Under subsection (b), the indenture must require the trustee to transmit, within 90 days after the event, brief interim reports with respect to—

(1) Releases or releases and substitutions of property not certified to have a fair value of less than 10 percent of the principal amount of indenture securities outstanding; and

(2) The character and amount of any unpaid advances, described in paragraph (2) of subsection (a), which were made since the date of the last annual report, if and when the amount thereof, not previously reported, aggregates 10 percent of the principal amount of indenture securities outstanding.

Under subsection (c), all reports must be transmitted to all registered holders of indenture securities, to holders who within 2 years have filed their names and addresses with the trustee for that purpose, and, except in the case of interim reports, to holders whose names and addresses have been furnished to or received by the trustee pursuant to section 312.

Under subsection (d) copies of all reports must be filed with each stock exchange upon which the indenture securities are listed, and also with the Commission.

### SECTION 314. REPORTS BY OBLIGOR; EVIDENCE OF COMPLIANCE WITH INDENTURE PROVISIONS

Subsection (a) in effect requires the obligor to include in the indenture itself an undertaking comparable to that now required to be incorporated in most Securities Act registration statements, by virtue of section 15 (d) of the Securities Exchange Act of 1934. Under the latter section the obligor must undertake to keep the registration statement current by filing with the Commission supplementary and periodic information, documents, and reports similar to those required, pursuant to section 13 of the Exchange Act, in respect of securities listed and registered on a national securities exchange.

Paragraph (1) makes clear that where, as will generally be the case, the obligor must file periodic reports with the Commission pursuant to section 13 or section 15 (d) of the Securities Exchange Act, it need only file with the trustee copies of those reports or such portions thereof as the Commission may prescribe by rules and regulations.

Where the obligor is not required to file reports under such sections of the Securities Exchange Act, the Commission may require the obligor to file similar reports with the trustee and the Commission.

Paragraph (2) authorizes the Commission to require the inclusion in such reports of additional information, documents and reports with respect to compliance with the conditions and covenants provided for in the indenture, including, in the case of annual reports, certificates of independent public accountants as to such compliance, where such compliance is subject to verification by accountants.

Paragraph (3) relates to the transmission of summaries of such reports to the bondholders.

The Commission's rules and regulations under subsection (a) may be prescribed either before or after the indenture is qualified. They must take into account the type of indenture and the amount of securities outstanding thereunder, the nature of the obligor's business, and, in the case of rules prescribed after the qualification of the indentures to which they apply, the additional expense involved.

### SUBSECTION (b). EVIDENCE OF RECORDING OF INDENTURE

Where the indenture is to be secured by the mortgage or the pledge of property, the obligor must furnish to the trustee promptly after the indenture is executed, and at least annually thereafter, an opinion of company counsel as to the necessity and sufficiency of the recording of the indenture, if recording is required.

Where the indenture establishes conditions precedent to action to be taken by the indenture trustee at the request or upon the application of the obligor, this subsection requires that the obligor furnish to the indenture trustee certain evidence of compliance with such conditions precedent. The type of action to which such conditions precedent may relate may include issuance of additional securities, releases and substitutions, or satisfaction and discharge of the indenture.

The following evidence of compliance with such conditions precedent is required by this subsection:

(1) Certificates or opinions of specified officers of the obligor;

(2) An opinion of counsel, who may be of counsel for the obligor; and

(3) A certificate or opinion of an accountant, where compliance with the condition precedent is subject to verification by accountants. If, during any calendar year, additional issues of securities for which an accountant's certificate is required (and for which an independent certificate has not been furnished), reach a total of 10 percent of the indenture securities outstanding, the accountant's certificate with respect to further additional issues during that calendar year must be made by an independent public accountant selected or approved by the indenture trustee in the exercise of reasonable care.

Subsection (c) specifically provides that no certificate or opinion need be made by any person other than a specified officer or employee of the obligor as to (A) dates or periods not covered by annual reports required to be filed by the obligor; or (B) as to the amount or value of property additions, except as provided in section 314 (d) (3); or (C) the adequacy of depreciation, maintenance, or repairs.

This subsection specifies when a certificate or opinion as to fair value must be furnished, and when such certificate or opinion must be made by an idependent engineer, appraiser, or other expert.

Paragraph (1) requires such a certificate or opinion as to the fair value of any property or securities to be released from the lien of the indenture. The certificate or opinion must state that the proposed release will not impair the security under the indenture in contravention of the provisions of the indenture. When the fair value of property or securities released during any calendar year reaches a total of 10 percent of the principal amount of indenture securities outstanding, the certificate or opinion with respect to any further release during that calendar year must be made by an independent engineer, appraiser, or other expert. But an independent certificate or opinion need not be furnished as to any release which affects property or securities amounting to less than $25,000 or 1 percent of the principal amount of indenture securities outstanding.

Under paragraph (2), where the deposit of securities with the trustee is to be made the basis of the issuance of indenture securities, the withdrawal of cash, or the release of property or other securities, a certificate or opinion of an engineer, appraiser, or other expert must

be furnished as to the fair value to the obligor of the securities deposited. This requirement does not apply where the securities deposited are indenture securities or securities having a lien prior thereto. If, during any calendar year, the fair value to the obligor of securities so deposited reaches a total of 10 percent of the principal amount of the indenture securities outstanding, the certificate or opinion as to any further deposit of securities during such calendar year must be made by an independent engineer, appraiser, or other expert. But an independent certificate or opinion need not be furnished as to any deposit which amounts to less than $25,000 or 1 percent of such aggregate principal amount. When an independent certificate or opinion is required in connection with the issuance of indenture securities, such certificate or opinion must cover all deposits which have been made the basis of the issuance of indenture securities since the commencement of the then current calendar year.

Under paragraph (3) where indenture securities are to be issued, or cash withdrawn, or property or securities released, on the basis of the subjection of property to the lien of the indenture, the obligor must furnish to the trustee a certificate or opinion of an engineer, appraiser, or other expert as to the fair value of such property to the obligor. If the property in question has been used or operated by others, within 6 months prior to the date of acquisition thereof by the obligor, in a business similar to that in which it is to be used or operated by the obligor, the certificate or opinion must be made by an independent engineer, appraiser, or other expert, unless the fair value of such property to the obligor amounts to less than $25,000 or 1 percent of the aggregate principal amount of indenture securities outstanding. Where an independent certificate or opinion is required in connection with the issuance of indenture securities, it must cover the fair value to the obligor of any such property so used or operated, which has been so subjected to the lien of the indenture since the commencement of the current calendar year.

Where an independent certificate or opinion is required, it must be made by a person selected or approved by the indenture trustee in the exercise of reasonable care. In all other cases a certificate or opinion may be made by a specified officer or employee of the obligor.

### SUBSECTION (e). RECITALS AS TO BASIS OF CERTIFICATE OR OPINION

Under this subsection, every certificate or opinion, by whomsoever made, must contain a statement by the person making the same that he has read the covenant or condition in question, and that in his opinion he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with, together with a brief statement as to the nature and scope of the investigation, and a statement as to whether or not, in the opinion of such person, such condition or covenant has been complied with.

### SUBSECTION (f). PARTIES MAY PROVIDE FOR ADDITIONAL EVIDENCE

This subsection makes clear that section 314 does not require that the indenture provide that the obligor furnish to the indenture trustee any other evidence of compliance, but that the section does not prevent the inclusion of provisions for additional evidence if the parties so agree.

TRUST INDENTURE BILL OF 1939                    55

SECTION 315. DUTIES AND RESPONSIBILITY OF THE TRUSTEE

### (a) DUTIES PRIOR TO DEFAULT

Paragraph (1) makes clear that, prior to default, the trustee is to be liable for the performance of only such duties as are specifically set out in the indenture.

Paragraph (2) permits the inclusion of provisions authorizing the trustee to rely upon certificates or opinions conforming to the requirements of the indenture, but the trustee must examine them to determine whether they do conform.

### (b) NOTICE OF DEFAULTS

The indenture must contain provisions requiring the trustee to give to the bondholders notice of known defaults under the indenture, within 90 days after they occur. But the indenture may provide that, except in the case of defaults as to principal or interest or sinking or purchase fund installments, the trustee shall be protected in withholding notice so long as it determines that course to be in the interests of the bondholders. Such determination must be made in good faith, by the board of directors, or executive committee, or a trust committee composed of directors or responsible officers of the trustee.

### (c) DUTIES OF THE TRUSTEE IN CASE OF DEFAULT

In case of default, the indenture must impose upon the trustee the duty of acting as a prudent man would act under the circumstances in the conduct of his own affairs. The standard provided for is substantially the same as that which is applicable in the field of personal trusts. Under this provision a trustee will no longer be able to demand notice of default, demand for action, and indemnity from the bondholders as a condition precedent to performing its obligations under the indenture. But there is nothing in the bill to prevent the inclusion of the customary provision giving the trustee a prior lien, upon the mortgaged or pledged property or the proceeds of suit, for its compensation and expenses in connection with enforcement.

### (d) RESPONSIBILITY OF THE TRUSTEE

This subsection prohibits the inclusion in the indenture of provisions relieving the trustee from liability for its own negligent action or failure to act, or for its own willful misconduct. Included in this prohibition, of course, are provisions relieving the trustee from liability for the negligence of its employees, except to the extent that such provisions are permitted by paragraph (2) of the subsection. The prohibition of exculpatory clauses is subject, however, to three important qualifications:

Paragraph (1) permits the inclusion in the indenture of the provisions authorized by paragraphs (1) and (2) of subsection (a) of this section.

Paragraph (2) makes special provision with respect to losses arising from errors of judgment. If the trustee was not negligent in ascertaining the pertinent facts, it may be protected for losses arising from any error of judgment based upon such facts, if such judgment was made in good faith by responsible officers of the trustee.

Paragraph (3) permits the inclusion of provisions protecting the trustee in respect of any action taken or omitted to be taken by it in good faith in accordance with the direction of the holders of not less than a majority in principal amount of the outstanding bonds relating to the time, method, and place of conducting any proceeding for any remedy available to the trustee, or exercising any trust or power conferred upon the trustee under the indenture.

### (c) UNDERTAKING FOR COSTS

This subsection authorizes the inclusion in the indenture of provisions requiring the filing of an undertaking for costs, and the assessment of reasonable costs (including reasonable attorneys' fees), in the discretion of the court, in any suit for the enforcement of rights or remedies under the indenture or against the trustee, as such. Precedent for this provision is to be found in section 18 (a) of the Securities Exchange Act of 1934. In the assessment of such costs due regard is to be had to the merits and good faith of the suit or defense. The provisions of the subsection do not apply to suits by bondholders to collect principal or interest, or to suits instituted by bondholders holding in the aggregate more than 10 percent in principal amount of the outstanding bonds. Suits by the trustee are also excluded.

### SECTION 316. DIRECTIONS AND WAIVERS BY BONDHOLDERS; PROHIBITION OF IMPAIRMENT OF HOLDER'S RIGHT TO PAYMENT

Subsection (a) specifically permits the inclusion in the indenture of provisions authorizing the holders of a majority of the outstanding bonds (1) to direct the time, method, and place of exercising any trust or power conferred upon the trustee, or of conducting any proceeding for any remedy available to the trustee; or (2) to consent to the waiver of any past default, and its consequences. The indenture may also contain provisions authorizing the holders of 75 percent or more in principal amount of the outstanding bonds to consent to the postponement of any interest payment for not more than 3 years from its due date. Provision is made with respect to the exclusion of bonds owned by the obligor or persons standing in a control relation to it, in determining whether the required percentage of bonds has concurred in any such direction or consent.

Under subsection (b), the indenture must provide that, except as to an interest postponement consented to as provided in subsection (a), the right of any indenture security holder to receive his principal and interest when due and to bring suit therefor may not be impaired without his consent. Evasion of judicial scrutiny of the fairness of debt-readjustment plans is prevented by this prohibition. Until comparatively recently, a prohibition of this sort was perfectly standard in note and bond indentures. In many States it is necessary in order to preserve the negotiability of the notes or bonds; in others it is necessary if the notes or bonds are to be legal investments for insurance companies, savings banks, and the like. This prohibition does not prevent the majority from binding dissenters by other changes in the indenture or by a waiver of other defaults, and the majority may of course consent to alterations of its own rights.

SECTION 317. SPECIAL POWERS OF TRUSTEE; DUTIES OF PAYING AGENTS

Subsection (a) requires that the indenture confer upon the indenture trustee two powers which are essential where an issue of indenture securities is publicly held. The first of these is the power, as trustee, to recover judgment against the obligor for the whole amount due and unpaid, in the event of a principal default, or an interest default which has continued for such period as the indenture provides. The second is the power to file proofs of claim, in judicial proceedings, on behalf of all indenture security holders.

Under subsection (b), funds deposited with paying agents for the payment of principal and interest must be held in trust, and the paying agent must be required to give the indenture trustee notice of any default in the making of such payments.

SECTION 318. EFFECT OF PRESCRIBED INDENTURE PROVISIONS

This section requires that the indenture to be qualified shall provide that if any provision thereof limits, qualifies, or conflicts with a provision which is required to be included in such indenture by the bill, such required provision shall control.

SECTION 319. RULES, REGULATIONS, AND ORDERS

This section covers the rule-making power of the Commission. Subsection (c) includes the now standard provisions exempting any person from liability for action taken in good faith in conformity with rules, regulations, or orders of the Commission notwithstanding the subsequent amendment, rescission, or invalidation thereof.

SECTION 320. HEARINGS BY COMMISSION

Hearings may be public and may be held before the Commission or designated members or officers thereof.

SECTION 321. SPECIAL POWERS OF THE COMMISSION

Subsection (a) empowers the Commission to subpena witnesses and require the production of documents, in substantially the same language as section 19 (b) of the Securities Act. This subsection also incorporates by reference the provisions of sections 20, 22 (b), and 22 (c) of the Securities Act with respect to investigations and hearings, the enforcement of this title, and offenses and violations thereunder.

Subsection (b) is in large part merely confirmatory of existing law. It authorizes the Treasury Department, the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Reserve banks, and the Federal Deposit Insurance Corporation to make information available to the Commission, and to make examinations for the use of the Commission, under such conditions as they may prescribe. Reports made available by the supervisory authorities, communications between trustees or prospective trustees and the supervisory authorities, etc., may be disclosed by the Commission only to the Attorney General of the United States.

Subsection (c): The Commission's powers of investigation of a prospective trustee are limited to determining whether such trustee

58                    TRUST INDENTURE BILL OF 1939

is qualified to act as such under the provisions of subsection (b) of section 310, or is eligible to act as such under paragraphs (1) and (2) of subsection (a) of section 310.   If the indenture contains the provision authorized by the last sentence of such paragraph (2), the Commission's powers with respect to the determination of the combined capital and surplus of a prospective trustee are confined to requiring that there be furnished a copy of its most recent report of condition published pursuant to law or to the requirements of the appropriate supervisory authority.

### SECTION 322. COURT REVIEW OF ORDERS; JURISDICTION OF OFFENSES AND SUITS

This section incorporates by reference the provisions of section 9 and section 22 (a) of the Securities Act.

### SECTION 323. LIABILITY FOR MISLEADING STATEMENTS

Subsection (a) imposes the civil liability of the Securities Exchange Act of 1934 in connection with false or misleading statements in any application, report, or document filed under this title.   If, as authorized in this section, the court in its discretion requires an undertaking for costs or assesses costs, due regard is to be had to the merits or good faith of the suit or defense.

Subsection (b) is substantially similar to section 28 (a) of the Securities Exchange Act and provides that the rights and remedies provided by this title shall be cumulative.

### MISCELLANEOUS PROVISIONS

Sections 324 to 328, inclusive, substantially follow the Securities Act of 1933.   These sections deal with the following matters:

Section 324: Covers unlawful representations.

Section 325: Sets forth the criminal penalties for violation of this title.

Section 326: Covers the effect of this title on existing law.

Section 327: Makes invalid contracts to waive compliance with provisions of this title.

Section 328: Contains the separability provision of this title.

## CHANGES IN EXISTING LAW

In compliance with paragraph 2a of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill are shown as follows: New matter is printed in italics and existing law in which no change is proposed is shown in roman.

AN ACT To provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

TRUST INDENTURE BILL OF 1939

59

## TITLE I

### SHORT TITLE

SECTION 1. This title may be cited as the "Securities Act of 1933."

### DEFINITIONS

SEC. 2. When used in this title, unless the context otherwise requires—

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or partic pation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of interest in property, tangible or intangible, or, in general, any instrument commonly known as a security, or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing.

(2) The term "person" means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof. As used in this paragraph the term "trust" shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security.

(3) The term "sale," "sell," "offer to sell," or "offer for sale" shall include every contract of sale or disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value; except that such terms shall not include preliminary negotiations or agreements between an issuer and any underwriter. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be a sale of such other security; but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security.

(4) The term "issuer" means every person who issues or proposes to issue any security or who guarantees a security either as to principal or income; except that with respect to certificates of deposit, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors (or persons performing similar functions) or of the fixed, restricted management, or unit type, the term "issuer" means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; and except that with respect to equipment-trust certificates or like securities, the term "issuer" means the person by whom the equipment or property is or is to be used.

(5) The term "Commission" means the Federal Trade Commission.

(6) The term "Territory" means Alaska, Hawaii, Puerto Rico, the Philippine Islands, Canal Zone, the Virgin Islands, and the insular possessions of the United States.

(7) The term "interstate commerce" means trade or commerce in securities or any transportation or communication relating thereto among the several States or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia.

(8) The term "registration statement" means the statement provided for in section 6, and includes any amendment thereto and any report, document, or memorandum accompanying such statement or incorporated therein by reference.

(9) The term "write" or "written" shall include printed, lithographed, or any means of graphic communication.

(10) The term "prospectus" means any prospectus, notice, circular, advertisement, letter, or communication, written or by radio, which offers any security for sale; except that (a) a communication shall not be deemed a prospectus if it is proved that prior to such communication a written prospectus meeting the requirements of section 10 was received, by the person to whom the communication was made, from the person making such communication or his principal.

60                    TRUST INDENTURE BILL OF 1939

and (b) a notice, circular, advertisement, letter, or communication in respect of a security shall not be deemed to be a prospectus if it states from whom a written prospectus meeting the requirements of section 10 may be obtained and, in addition, does no more than identify the security, state the price thereof, and state by whom orders will be executed.

(11) The term "underwriter" means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

(12) The term "dealer" means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person.

EXEMPTED SECURITIES

SEC. 3. (a) Except as hereinafter expressly provided, the provisions of this title shall not apply to any of the following classes of securities:

(1) Any security which, prior to or within sixty days after the enactment of this title, has been sold or disposed of by the issuer or bona fide offerer to the public, but this exemption shall not apply to any new offering of any such security by an issuer or underwriter subsequent to such sixty days;

(2) Any security issued or guaranteed by the United States or any Territory thereof, or by the District of Columbia, or by any State of the United States, or by any political subdivision of a State or Territory, or by any public instrumentality of one or more States or Territories exercising an essential governmental function, or by any corporation created and controlled or supervised by and acting as an instrumentality of the Government of the United States pursuant to authority granted by the Congress of the United States, or by any national bank, or by any banking institution organized under the laws of any State or Territory, the business of which is substantially confined to banking and is supervised by the State or Territorial banking commission or similar official; or any security issued by or representing an interest in or a direct obligation of a Federal Reserve bank;

(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited;

(4) Any security issued by a corporation organized and operated exclusively for religious, educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, and no part of the net earnings of which inures to the benefit of any person, private stockholder, or individual;

(5) Any security issued by a building and loan association, homestead association, savings and loan association, or similar institution, substantially all the business of which is confined to the making of loans to members (but the foregoing exemption shall not apply with respect to any such security where the issuer takes from the total amount paid or deposited by the purchaser, by way of any fee, cash value or other device whatsoever, either upon termination of the investment at maturity or before maturity, an aggregate amount in excess of 3 per centum of the face value of such security), or any security issued by a farmers' cooperative association as defined in paragraphs (12), (13), and (14) of section 103 of the Revenue Act of 1932;

(6) Any security issued by a common carrier which is subject to the provisions of section 20a of the Interstate Commerce Act, as amended;

(7) Certificates issued by a receiver or by a trustee in bankruptcy, with the approval of the court;

(8) Any insurance or endowment policy or annuity contract or optional annuity contract, issued by a corporation subject to the supervision of the insurance commissioner, bank commissioner, or any agency or officer performing like functions, of any State or Territory of the United States or the District of Columbia.

(b) The Commission may from time to time by its rules and regulations, and subject to such terms and conditions as may be prescribed therein, add any class of securities to the securities exempted as provided in this section, if it finds that

the enforcement of this title with respect to such securities is not necessary in the public interest and for the protection of investors by reason of the small amount involved or the limited character of the public offering; but no issue of securities shall be exempted under this subsection where the aggregate amount at which such issue is offered to the public exceeds $100,000.

## EXEMPTED TRANSACTIONS

SEC. 4. The provisions of section 5 shall not apply to any of the following transactions:

(1) Transactions by any person other than an issuer, underwriter, or dealer; transactions by an issuer not with or through an underwriter and not involving any public offering; or transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction), except transactions within one year after the last date upon which the security was bona fide offered to the public by the issuer or by or through an underwriter (excluding in the computation of such year any time during which a stop order issued under section 8 is in effect as to the security), and except transactions as to securities constituting the whole or a part of an unsold allotment to or subscription by such dealer as a participant in the distribution of such securities by the issuer or by or through an underwriter.

(2) Brokers' transactions, executed upon customers' orders on any exchange or in the open or counter market, but not the solicitation of such orders.

(3) The issuance of a security of a person exchanged by it with its existing security holders exclusively, where no commission or other remuneration is paid or given directly or indirectly in connection with such exchange; or the issuance of securities to the existing security holders or other existing creditors of a corporation in the process of a bona fide reorganization of such corporation under the supervision of any court, either in exchange for the securities of such security holders or claims of such creditors or partly for cash and partly in exchange for the securities or claims of such security holders or creditors.

## PROHIBITIONS RELATING TO INTERSTATE COMMERCE AND THE MAILS

SEC. 5. (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell or offer to buy such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

(b) It shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security registered under this title, unless such prospectus meets the requirements of section 10; or

(2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of section 10.

(c) The provisions of this section relating to the use of the mails shall not apply to the sale of any security where the issue of which it is a part is sold only to persons resident within a single State or Territory, where the issuer of such securities is a person resident and doing business within, or, if a corporation, incorporated by and doing business within, such State or Territory.

## REGISTRATION OF SECURITIES AND SIGNING OF REGISTRATION STATEMENT

SEC. 6. (a) Any security may be registered with the Commission under the terms and conditions hereinafter provided, by filing a registration statement in triplicate, at least one of which shall be signed by each issuer, its principal executive officer or officers, its principal financial officer, its comptroller or principal accounting officer, and the majority of its board of directors or persons performing similar functions (or, if there is no board of directors or persons performing similar functions, by the majority of the persons or board having the power of management of the issuer), and in case the issuer is a foreign or Territorial person by its duly

authorized representative in the United States; except that when such registration statement relates to a security issued by a foreign government, or political subdivision thereof, it need be signed only by the underwriter of such security. Signatures of all such persons when written on the said registration statements shall be presumed to have been so written by authority of the person whose signature is so affixed and the burden of proof, in the event such authority shall be denied, shall be upon the party denying the same.    The affixing of any signature without the authority of the purported signer shall constitute a violation of this title.    A registration statement shall be deemed effective only as to the securities specified therein as proposed to be offered.

(b) At the time of filing a registration statement the applicant shall pay to the Commission a fee of one one-hundredth of 1 per centum of the maximum aggregate price at which such securities are proposed to be offered, but in no case shall such fee be less than $25.

(c) The filing with the Commission of a registration statement, or of an amendment to a registration statement, shall be deemed to have taken place upon the receipt thereof, but the filing of a registration statement shall not be deemed to have taken place unless it is accompanied by a United States postal money order or a certified bank check or cash for the amount of the fee required under subsection (b).

(d) The information contained in or filed with any registration statement shall be made available to the public under such regulations as the Commission may prescribe, and copies thereof, photostatic or otherwise, shall be furnished to every applicant at such reasonable charge as the Commission may prescribe.

(e) No registration statement may be filed within the first forty days following the enactment of this Act.

### INFORMATION REQUIRED IN REGISTRATION STATEMENT

SEC. 7. The registration statement, when relating to a security other than a security issued by a foreign government, or political subdivision thereof, shall contain the information, and be accompanied by the documents, specified in Schedule A, and when relating to a security issued by a foreign government, or political subdivision thereof, shall contain the information, and be accompanied by the documents, specified in Schedule B; except that the Commission may by rules or regulations provide that any such information or document need not be included in respect of any class of issuers or securities if it finds that the requirement of such information or document is inapplicable to such class and that disclosure fully adequate for the protection of investors is otherwise required to be included within the registration statement.    If any accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, is named as having prepared or certified any part of the registration statement, or is named as having prepared or certified a report or valuation for use in connection with the registration statement, the written consent of such person shall be filed with the registration statement.    If any such person is named as having prepared or certified a report or valuation (other than a public official document or statement) which is used in connection with the registration statement, but is not named as having prepared or certified such report or valuation for use in connection with the registration statement, the written consent of such person shall be filed with the registration statement unless the Commission dispenses with such filing as impracticable or as involving undue hardship on the person filing the registration statement.    Any such registration statement shall contain such other information, and be accompanied by such other documents, as the Commission may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of investors.

### TAKING EFFECT OF REGISTRATION STATEMENTS AND AMENDMENTS THERETO

SEC. 8. (a) The effective date of a registration statement shall be the twentieth day after the filing thereof, except as hereinafter provided, and except that in case of securities of any foreign public authority, which has continued the full service of its obligations in the United States, the proceeds of which are to be devoted to the refunding of obligations payable in the United States, the registration statement shall become effective seven days after the filing thereof. If any amendment to any such statement is filed prior to the effective date of such statement, the registration statement shall be deemed to have been filed when such amendment was filed; except that an amendment filed with the consent of the Commission, prior to the effective date of the registration statement,

or filed pursuant to an order of the Commission, shall be treated as a part of the registration statement.

(b) If it appears to the Commission that a registration statement is on its face incomplete or inaccurate in any material respect, the Commission may, after notice by personal service or the sending of confirmed telegraphic notice not later than ten days after the filing of the registration statement, and opportunity for hearing (at a time fixed by the Commission) within ten days after such notice by personal service or the sending of such telegraphic notice, issue an order prior to the effective date of registration refusing to permit such statement to become effective until it has been amended in accordance with such order. When such statement has been amended in accordance with such order the Commission shall so declare and the registration shall become effective at the time provided in subsection (a) or upon the date of such declaration, whichever date is the later.

(c) An amendment filed after the effective date of the registration statement, if such amendment, upon its face, appears to the Commission not to be incomplete or inaccurate in any material respect, shall become effective on such date as the Commission may determine, having due regard to the public interest and the protection of investors.

(d) If it appears to the Commission at any time that the registration statement includes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, the Commission may, after notice, by personal service or the sending of confirmed telegraphic notice, and after opportunity for hearing (at a time fixed by the Commission) within fifteen days after such notice by personal service or the sending of such telegraphic notice, issue a stop order suspending the effectiveness of the registration statement. When such statement has been amended in accordance with such stop order the Commission shall so declare and thereupon the stop order shall cease to be effective.

(e) The Commission is hereby empowered to make an examination in any case in order to determine whether a stop order should issue under subsection (d). In making such examination the Commission or any officer or officers designated by it shall have access to and may demand the production of any books and papers of, and may administer oaths and affirmations to and examine, the issuer, underwriter, or any other person, in respect of any matter relevant to the examination, and may, in its discretion, require the production of a balance sheet exhibiting the assets and liabilities of the issuer, or its income statement, or both, to be certified to by a public or certified accountant approved by the Commission. If the issuer or underwriter shall fail to cooperate, or shall obstruct or refuse to permit the making of an examination, such conduct shall be proper ground for the issuance of a stop order.

(f) Any notice required under this section shall be sent to or served on the issuer, or, in case of a foreign government or political subdivision thereof, to or on the underwriter, or, in the case of a foreign or Territorial person, to or on its duly authorized representative in the United States named in the registration statement, properly directed in each case of telegraphic notice to the address given in such statement.

COURT REVIEW OF ORDERS

SEC. 9. (a) Any person aggrieved by an order of the Commission may obtain a review of such order in the Circuit Court of Appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the Court of Appeals of the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or be set aside in whole or in part. A copy of such petition shall be forthwith served upon the Commission, and thereupon the Commission shall certify and file in the court a transcript of the record upon which the order complained of was entered. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission. The finding of the Commission as to the facts, if supported by evidence, shall be conclusive. If either party shall apply to the court for leave to adduce additional evidence, and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Commission, the court may order such additional evidence to be taken before the Commission and to be adduced upon the hearing in such manner and upon such terms and conditions as to the court may seem proper. The Commission

may modify its findings as to the facts, by reason of the additional evidence so taken, and it shall file such modified or new findings, which, if supported by evidence, shall be conclusive, and its recommendation, if any, for the modification or setting aside of the original order.   The jurisdiction of the court shall be exclusive and its judgment and decree, affirming, modifying, or setting aside, in whole or in part, any order of the Commission, shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U. S. C., title 28, secs. 346 and 347).

(b)  The commencement of proceedings under subsection (a) shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

### INFORMATION REQUIRED IN PROSPECTUS

SEC. 10.  (a)  A prospectus—

(1)  when relating to a security other than a security issued by a foreign government or political subdivision thereof, shall contain the same statements made in the registration statement, but it need not include the documents referred to in paragraphs (28) to (32), inclusive, of Schedule A;

(2)  when relating to a security issued by a foreign government or political subdivision thereof shall contain the same statements made in the registration statement, but it need not include the documents referred to in paragraphs (13) and (14) of Schedule B.

(b)  Notwithstanding the provisions of subsection (a)—

(1)  when a prospectus is used more than thirteen months after the effective date of the registration statement, the information in the statements contained therein shall be as of a date not more than twelve months prior to such use.

(2)  there may be omitted from any prospectus any of the statements required under such subsection (a) which the Commission may by rules or regulations designate as not being necessary or appropriate in the public interest or for the protection of investors.

(3)  any prospectus shall contain such other information as the Commission may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of investors.

(4)  in the exercise of its powers under paragraphs (2) and (3) of this subsection, the Commission shall have authority to classify prospectuses according to the nature and circumstances of their use, and, by rules and regulations and subject to such terms and conditions as it shall specify therein, to prescribe as to each class the form and contents which it may find appropriate to such use and consistent with the public interest and the protection of investors.

(c)  The statements or information required to be included in a prospectus by or under authority of subsection (a) or (b), when written, shall be placed in a conspicuous part of the prospectus in type as large as that used generally in the body of the prospectus.

(d)  In any case where a prospectus consists of a radio broadcast, copies thereof shall be filed with the Commission under such rules and regulations as it shall prescribe.  The Commission may by rules and regulations require the filing with it of forms of prospectuses used in connection with the sale of securities registered under this title.

### CIVIL LIABILITIES ON ACCOUNT OF FALSE REGISTRATION STATEMENT

SEC. 11.  (a)  In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—

(1)  every person who signed the registration statement;

(2)  every person who was a director of (or person performing similar functions) or partner in, the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3)  every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security.

(b) Notwithstanding the provisions of subsection (a) no person, other than the issuer, shall be liable as provided therein who shall sustain the burden of proof—

(1) that before the effective date of the part of the registration statement with respect to which his liability is asserted (A) he had resigned from or had taken such steps as are permitted by law to resign from, or ceased or refused to act in, every office, capacity, or relationship in which he was described in the registration statement as acting or agreeing to act, and (B) he had advised the Commission and the issuer in writing that he had taken such action and that he would not be responsible for such part of the registration statement; or

(2) that if such part of the registration statement became effective without his knowledge, upon becoming aware of such fact he forthwith acted and advised the Commission, in accordance with paragraph (1), and, in addition, gave reasonable public notice that such part of the registration statement had become effective without his knowledge; or

(3) that (A) as regards any part of the registration statement not purporting to be made on the authority of an expert, and not purporting to be a copy of or extract from a report or valuation of an expert, and not purporting to be made on the authority of a public official document or statement, he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading; and (B) as regards any part of the registration statement purporting to be made upon his authority as an expert or purporting to be a copy of or extract from a report or valuation of himself as an expert, (i) he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, or (ii) such part of the registration statement did not fairly represent his statement as an expert or was not a fair copy of or extract from his report or valuation as an expert; and (C) as regards any part of the registration statement purporting to be made on the authority of an expert (other than himself) or purporting to be a copy of or extract from a report or valuation of an expert (other than himself), he had reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, and that such part of the registration statement fairly represented the statement of the expert or was a fair copy of or extract from the report or valuation of the expert; and (D) as regards any part of the registration statement purporting to be a statement made by an official person or purporting to be a copy of or extract from a public official document, he had reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true, and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading, and that such part of the registration statement fairly represented the statement made by the official person or was a fair copy of or extract from the public official document.

(c) In determining, for the purpose of paragraph (3) of subsection (b) of this section, what constitutes reasonable investigation and reasonable ground for belief, the standard of reasonableness shall be that required of a person occupying a fiduciary relationship.

(d) If any person becomes an underwriter with respect to the security after the part of the registration statement with respect to which his liability is asserted has become effective, then for the purposes of paragraph (3) of subsection (b) of

**66**                    TRUST INDENTURE BILL OF 1939

this section such part of the registration statement shall be considered as having become effective with respect to such person as of the time when he became an underwriter.

(e) The suit authorized under subsection (a) may be either (1) to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or (2) for damages if the person suing no longer owns the security.

(f) All or any one or more of the persons specified in subsection (a) shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.

(g) In no case shall the amount recoverable under this section exceed the price at which the security was offered to the public.

### CIVIL LIABILITIES ARISING IN CONNECTION WITH PROSPECTUSES AND COMMUNICATIONS

SEC. 12. Any person who—

(1) sells a security in violation of section 5, or

(2) sells a security (whether or not exempted by the provisions of section 3, other than paragraph (2) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

### LIMITATION OF ACTIONS

SEC. 13. No action shall be maintained to enforce any liability created under section 11 or section 12 (2) unless brought within two years after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12 (1), unless brought within two years after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12 (1) more than ten years after the security was bona fide offered to the public.

### CONTRARY STIPULATIONS VOID

SEC. 14. Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this title or of the rules and regulations of the Commission shall be void.

### LIABILITY OF CONTROLLING PERSONS

SEC. 15. Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

### ADDITIONAL REMEDIES

SEC. 16. The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity.

### FRAUDULENT INTERSTATE TRANSACTIONS

SEC. 17. (a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

(b) It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

(c) The exemptions provided in section 3 shall not apply to the provisions of this section.

### STATE CONTROL OF SECURITIES

SEC. 18. Nothing in this title shall affect the jurisdiction of the securities commission (or any agency or office performing like functions) of any State or Territory of the United States, or the District of Columbia, over any security or any person.

### SPECIAL POWERS OF COMMISSION

SEC. 19. (a) The Commission shall have authority from time to time to make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of this title, including rules and regulations governing registration statements and prospectuses for various classes of securities and issuers, and defining accounting and trade terms used in this title. Among other things, the Commission shall have authority, for the purposes of this title, to prescribe the form or forms in which required information shall be set forth, the items or details to be shown in the balance sheet and earning statement, and the methods to be followed in the preparation of accounts, in the appraisal or valuation of assets and liabilities, in the determination of depreciation and depletion, in the differentiation of recurring and nonrecurring income, in the differentiation of investment and operating income, and in the preparation, where the Commission deems it necessary or desirable, of consolidated balance sheets or income accounts of any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer; but insofar as they relate to any common carrier subject to the provisions of section 20 of the Interstate Commerce Act, as amended, the rules and regulations of the Commission with respect to accounts shall not be inconsistent with the requirements imposed by the Interstate Commerce Commission under authority of such section 20. The rules and regulations of the Commission shall be effective upon publication in the manner which the Commission shall prescribe.

(b) For the purpose of all investigations which, in the opinion of the Commission, are necessary and proper for the enforcement of this title, any member of the Commission or any officer or officers designated by it are empowered to administer oaths and affirmations, subpena witnesses, take evidence, and require the production of any books, papers, or other documents which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of such documentary evidence may be required from any place in the United States or any Territory at any designated place of hearing.

### INJUNCTIONS AND PROSECUTION OF OFFENSES

SEC. 20. (a) Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this title, or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, in its discretion, either require or permit such person to file with it a statement in writing, under oath or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts.

(b) Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this title, or of any rule or regulation prescribed under authority thereof, it may, in its discretion, bring an action in any district court of the United States, United States court of any Territory, or the Supreme Court of the District of Columbia to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings under this title. Any such criminal proceeding may be brought either in the district wherein the transmittal of the prospectus or security complained of begins, or in the district wherein such prospectus or security is received.

(c) Upon application of the Commission the district courts of the United States, the United States courts of any Territory, and the Supreme Court of the District of Columbia shall also have jurisdiction to issue writs of mandamus commanding any person to comply with the provisions of this title or any order of the Commission made in pursuance thereof.

### HEARINGS BY COMMISSION

SEC. 21. All hearings shall be public and may be held before the Commission or an officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.

### JURISDICTION OF OFFENSES AND SUITS

SEC. 22. (a) The district courts of the United States, the United States courts of any Territory, and the Supreme Court of the District of Columbia shall have jurisdiction of offenses and violations under this title and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this title. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 128 and 240 of the Judicial Code, as amended (U. S. C., title 28, secs. 225 and 347). No case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under this title brought by or against it in the Supreme Court or such other courts.

(b) In case of contumacy or refusal to obey a subpena issued to any person, any of the said United States courts, within the jurisdiction of which said person guilty of contumacy or refusal to obey is found or resides, upon application by the Commission may issue to such person an order requiring such person to appear before the Commission, or one of its examiners designated by it, there to produce documentary evidence if so ordered, or there to give evidence touching the matter in question; and any failure to obey such order of the court may be punished by said court as a contempt thereof.

(c) No person shall be excused from attending and testifying or from producing books, papers, contracts, agreements, and other documents before the Commission, or in obedience to the subpena of the Commission or any member thereof or any officer designated by it, or in any cause or proceeding instituted by the Commission, on the ground that the testimony or evidence, documentary or otherwise, required of him, may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.

### UNLAWFUL REPRESENTATIONS

SEC. 23. Neither the fact that the registration statement for a security has been filed or is in effect nor the fact that a stop order is not in effect with respect thereto shall be deemed a finding by the Commission that the registration state-

ment is true and accurate on its face or that it does not contain an untrue statement of fact or omit to state a material fact, or be held to mean that the Commission has in any way passed upon the merits of, or given approval to, such security. It shall be unlawful to make, or cause to be made, to any prospective purchaser any representation contrary to the foregoing provisions of this section.

### PENALTIES

Sec. 24. Any person who willfully violates any of the provisions of this title, or the rules and regulations promulgated by the Commission under authority thereof, or any person who willfully, in a registration statement filed under this title, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both.

### JURISDICTION OF OTHER GOVERNMENT AGENCIES OVER SECURITIES

Sec. 25. Nothing in this title shall relieve any person from submitting to the respective supervisory units of the Government of the United States information, reports, or other documents that are now or may hereafter be required by any provision of law.

### SEPARABILITY OF PROVISIONS

Sec. 26. If any provision of this Act, or the application of such provision to any person or circumstance, shall be held invalid, the remainder of this Act, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

### SCHEDULE A

(1) The name under which the issuer is doing or intends to do business;

(2) the name of the State or other sovereign power under which the issuer is organized;

(3) the location of the issuer's principal business office, and if the issuer is a foreign or territorial person, the name and address of its agent in the United States authorized to receive notice;

(4) the names and addresses of the directors or persons performing similar functions, and the chief executive, financial and accounting officers, chosen or to be chosen if the issuer be a corporation, association, trust, or other entity; of all partners, if the issuer be a partnership; and of the issuer, if the issuer be an individual; and of the promoters in the case of a business to be formed, or formed within two years prior to the filing of the registration statement;

(5) the names and addresses of the underwriters;

(6) the names and addresses of all persons, if any, owning of record or beneficially, if known, more than 10 per centum of any class of stock of the issuer, or more than 10 per centum in the aggregate of the outstanding stock of the issuer as of a date within twenty days prior to the filing of the registration statement;

(7) the amount of securities of the issuer held by any person specified in paragraphs (4), (5), and (6) of this schedule, as of a date within twenty days prior to the filing of the registration statement, and, if possible, as of one year prior thereto, and the amount of the securities, for which the registration statement is filed, to which such persons have indicated their intention to subscribe;

(8) the general character of the business actually transacted or to be transacted by the issuer;

(9) a statement of the capitalization of the issuer, including the authorized and outstanding amounts of its capital stock and the proportion thereof paid up, the number and classes of shares in which such capital stock is divided, par value thereof, or if it has no-par value, the stated or assigned value thereof, a description of the respective voting rights, preferences, conversion and exchange rights, rights to dividends, profits, or capital of each class, with respect to each other class, including the retirement and liquidation rights or values thereof;

(10) a statement of the securities, if any, covered by options outstanding or to be created in connection with the security to be offered, together with the names and addresses of all persons, if any, to be allotted more than 10 per centum in the aggregate of such options;

(11) the amount of capital stock of each class issued or included in the shares of stock to be offered;

(12) the amount of the funded debt outstanding and to be created by the security to be offered, with a brief description of the date, maturity, and character

of such debt, rate of interest, character of amortization provisions, and the security, if any, therefor. If substitution of any security is permissible, a summarized statement of the conditions under which such substitution is permitted. If substitution is permissible without notice, a specific statement to that effect;

(13) the specific purposes in detail and the approximate amounts to be devoted to such purposes, so far as determinable, for which the security to be offered is to supply funds, and if the funds are to be raised in part from other sources, the amounts thereof and the sources thereof, shall be stated;

(14) the remuneration, paid or estimated to be paid, by the issuer or its predecessor, directly or indirectly, during the past year and ensuing year to (a) the directors or persons performing similar functions, and (b) its officers and other persons, naming them wherever such remuneration exceeded $25,000 during any such year;

(15) the estimated net proceeds to be derived from the security to be offered;

(16) the price at which it is proposed that the security shall be offered to the public or the method by which such price is computed and any variation therefrom at which any portion of such security is proposed to be offered to any persons or classes of persons, other than the underwriters, naming them or specifying the class. A variation in price may be proposed prior to the date of the public offering of the security, but the Commission shall immediately be notified of such variation;

(17) all commissions or discounts paid or to be paid, directly or indirectly, by the issuer to the underwriters in respect of the sale of the security to be offered. Commissions shall include all cash, securities, contracts, or anything else of value, paid, to be set aside, disposed of, or understandings with or for the benefit of any other persons in which any underwriter is interested, made, in connection with the sale of such security. A commission paid or to be paid in connection with the sale of such security by a person in which the issuer has an interest or which is controlled or directed by, or under common control with, the issuer shall be deemed to have been paid by the issuer. Where any such commission is paid the amount of such commission paid to each underwriter shall be stated;

(18) the amount or estimated amounts, itemized in reasonable detail, of expenses, other than commissions specified in paragraph (17) of this schedule, incurred or borne by or for the account of the issuer in connection with the sale of the security to be offered or properly chargeable thereto, including legal, engineering, certification, authentication, and other charges;

(19) the net proceeds derived from any security sold by the issuer during the two years preceding the filing of the registration statement, the price at which such security was offered to the public, and the names of the principal underwriters of such security;

(20) any amount paid within two years preceding the filing of the registration statement or intended to be paid to any promoter and the consideration for any such payment;

(21) the names and addresses of the vendors and the purchase price of any property, or good will, acquired or to be acquired, not in the ordinary course of business, which is to be defrayed in whole or in part from the proceeds of the security to be offered, the amount of any commission payable to any person in connection with such acquisition, and the name or names of such person or persons, together with any expense incurred or to be incurred in connection with such acquisition, including the cost of borrowing money to finance such acquisition;

(22) full particulars of the nature and extent of the interest, if any, of every director, principal executive officer, and of every stockholder holding more than 10 per centum of any class of stock or more than 10 per centum in the aggregate of the stock of the issuer, in any property acquired, not in the ordinary course of business of the issuer, within two years preceding the filing of the registration statement or proposed to be acquired at such date;

(23) the names and addresses of counsel who have passed on the legality of the issue;

(24) dates of and parties to, and the general effect concisely stated of every material contract made, not in the ordinary course of business, which contract is to be executed in whole or in part at or after the filing of the registration statement or which contract has been made not more than two years before such filing. Any management contract or contract providing for special bonuses or profit-sharing arrangements, and every material patent or contract for a material patent right, and every contract by or with a public utility company or an affiliate thereof, providing for the giving or receiving of technical or financial advice or service (if such contract may involve a charge to any party thereto at a rate in excess of $2,500 per year in cash or securities or anything else of value), shall be deemed a material contract;

(25) a balance sheet as of a date not more than ninety days prior to the date of the filing of the registration statement showing all of the assets of the issuer, the nature and cost thereof, whenever determinable, in such detail and in such form as the Commission shall prescribe (with intangible items segregated), including any loan in excess of $20,000 to any officer, director, stockholder or person directly or indirectly controlling or controlled by the issuer, or person under direct or indirect common control with the issuer. All the liabilities of the issuer in such detail and such form as the Commission shall prescribe, including surplus of the issuer showing how and from what sources such surplus was created, all as of a date not more than ninety days prior to the filing of the registration statement. If such statement be not certified by an independent public or certified accountant, in addition to the balance sheet required to be submitted under this schedule, a similar detailed balance sheet of the assets and liabilities of the issuer, certified by an independent public or certified accountant, of a date not more than one year prior to the filing of the registration statement, shall be submitted;

(26) a profit and loss statement of the issuer showing earnings and income, the nature and source thereof, and the expenses and fixed charges in such detail and such form as the Commission shall prescribe for the latest fiscal year for which such statement is available and for the two preceding fiscal years, year by year, or, if such issuer has been in actual business for less than three years, then for such time as the issuer has been in actual business, year by year. If the date of the filing of the registration statement is more than six months after the close of the last fiscal year, a statement from such closing date to the latest practicable date. Such statement shall show what the practice of the issuer has been during the three years or lesser period as to the character of the charges, dividends or other distributions made against its various surplus accounts, and as to depreciation, depletion, and maintenance charges, in such detail and form as the Commission shall prescribe, and if stock dividends or avails from the sale of rights have been credited to income, they shall be shown separately with a statement of the basis upon which the credit is computed. Such statement shall also differentiate between any recurring and nonrecurring income and between any investment and operating income. Such statement shall be certified by an independent public or certified accountant;

(27) if the proceeds, or any part of the proceeds, of the security to be issued is to be applied directly or indirectly to the purchase of any business, a profit and loss statement of such business certified by an independent public or certified accountant, meeting the requirements of paragraph (26) of this schedule, for the three preceding fiscal years, together with a balance sheet, similarly certified, of such business, meeting the requirements of paragraph (25) of this schedule of a date not more than ninety days prior to the filing of the registration statement or at the date such business was acquired by the issuer if the business was acquired by the issuer more than ninety days prior to the filing of the registration statement:

(28) a copy of any agreement or agreements (or, if identic agreements are used, the forms thereof) made with any underwriter, including all contracts and agreements referred to in paragraph (17) of this schedule;

(29) a copy of the opinion or opinions of counsel in respect to the legality of the issue, with a translation of such opinion, when necessary, into the English language;

(30) a copy of all material contracts referred to in paragraph (24) of this schedule, but no disclosure shall be required of any portion of any such contract if the Commission determines that disclosure of such portion would impair the value of the contract and would not be necessary for the protection of the investors;

(31) unless previously filed and registered under the provisions of this title, and brought up to date, (a) a copy of its articles of incorporation, with all amendments thereof and of its existing bylaws or instruments corresponding thereto, whatever the name, if the issuer be a corporation; (b) copy of all instruments by which the trust is created or declared, if the issuer is a trust; (c) a copy of its articles of partnership or association and all other papers pertaining to its organization, if the issuer is a partnership, unincorporated association, joint-stock company, or any other form of organization; and

(32) a copy of the underlying agreements or indentures affecting any stock, bonds, or debentures offered or to be offered.

In case of certificates of deposit, voting trust certificates, collateral trust certificates, certificates of interest or shares in unincorporated investment trusts, equipment trust certificates, interim or other receipts for certificates, and like securities, the Commission shall establish rules and regulations requiring the submission of information of a like character applicable to such cases, together with

such other information as it may deem appropriate and necessary regarding the character, financial or otherwise, of the actual issuer of the securities and/or the person performing the acts and assuming the duties of depositor or manager.

SCHEDULE B

(1) Name of borrowing government or subdivision thereof;

(2) specific purposes in detail and the approximate amounts to be devoted to such purposes, so far as determinable, for which the security to be offered is to supply funds, and if the funds are to be raised in part from other sources, the amounts thereof and the sources thereof, shall be stated;

(3) the amount of the funded debt and the estimated amount of the floating debt outstanding and to be created by the security to be offered, excluding intergovernmental debt, and a brief description of the date, maturity, character of such debt, rate of interest, character of amortization provisions, and the security, if any, therefor. If substitution of any security is permissible, a statement of the conditions under which such substitution is permitted. If substitution is permissible without notice, a specific statement to that effect;

(4) whether or not the issuer or its predecessor has, within a period of twenty years prior to the filing of the registration statement, defaulted on the principal or interest of any external security, excluding intergovernmental debt, and, if so, the date, amount, and circumstances of such default, and the terms of the succeeding arrangement, if any;

(5) the receipts, classified by source, and the expenditures, classified by purpose, in such detail and form as the Commission shall prescribe for the latest fiscal year for which such information is available and the two preceding fiscal years, year by year;

(6) the names and addresses of the underwriters;

(7) the name and address of its authorized agent, if any, in the United States;

(8) the estimated net proceeds to be deprived from the sale in the United States of the security to be offered;

(9) the price at which it is proposed that the security shall be offered in the United States to the public or the method by which such price is computed. A variation in price may be proposed prior to the date of the public offering of the security, but the Commission shall immediately be notified of such variation;

(10) all commissions paid or to be paid, directly or indirectly, by the issuer to the underwriters in respect of the sale of the security to be offered. Commissions shall include all cash, securities, contracts, or anything else of value, paid, to be set aside, disposed of, or understandings with or for the benefit of any other persons in which the underwriter is interested, made, in connection with the sale of such security. Where any such commission is paid, the amount of such commission paid to each underwriter shall be stated;

(11) the amount or estimated amounts, itemized in reasonable detail, of expenses, other than the commissions specified in paragraph (10) of this schedule, incurred or borne by or for the account of the issuer in connection with the sale of the security to be offered or properly chargeable thereto, including legal, engineering, certification, and other charges;

(12) the names and addresses of counsel who have passed upon the legality of the issue;

(13) a copy of any agreement or agreements made with any underwriter governing the sale of the security within the United States; and

(14) an agreement of the issuer to furnish a copy of the opinion or opinions of counsel in respect to the legality of the issue, with a translation, where necessary, into the English language. Such opinion shall set out in full all laws, decrees, ordinances, or other acts of Government under which the issue of such security has been authorized.

## TITLE II

SECTION 201. For the purpose of protecting, conserving, and advancing the interests of the holders of foreign securities in default, there is hereby created a body corporate with the name "Corporation of Foreign Security Holders" (herein called the "Corporation"). The principal office of the Corporation shall be located in the District of Columbia, but there may be established agencies or branch offices in any city or cities of the United States under rules and regulations prescribed by the board of directors.

SEC. 202. The control and management of the Corporation shall be vested in a board of six directors, who shall be appointed and hold office in the following manner: As soon as practicable after the date this Act takes effect the Federal Trade Commission (hereinafter in this title called "Commission") shall appoint six directors, and shall designate a chairman and a vice chairman from among their number. After the directors designated as chairman and vice chairman cease to be directors, their successors as chairman and vice chairman shall be elected by the board of directors itself. Of the directors first appointed, two shall continue in office for a term of two years, two for a term of four years, and two for a term of six years, from the date this Act takes effect, the term of each to be designated by the Commission at the time of appointment. Their successors shall be appointed by the Commission, each for a term of six years from the date of the expiration of the term for which his predecessor was appointed, except that any person appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed only for the unexpired term of such predecessor. No person shall be eligible to serve as a director who within the five years preceding has had any interest, direct or indirect, in any corporation, company, partnership, bank, or association which has sold, or offered for sale any foreign securities. The office of a director shall be vacated if the board of directors shall at a meeting specially convened for that purpose by resolution passed by a majority of at least two-thirds of the board of directors, remove such member from office, provided that the member whom it is proposed to remove shall have seven days' notice sent to him of such meeting and that he may be heard.

SEC. 203. The Corporation shall have power to adopt, alter, and use a corporate seal; to make contracts; to lease suc  real estate as may be necessary for the transaction of its business; to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal; to require from trustees, financial agents, or dealers in foreign securities information relative to the original or present holders of foreign securities and such other information as may be required and to issue subpenas therefor; to take over the functions of any fiscal and paying agents of any foreign securities in default; to borrow money for the purposes of this title, and to pledge as collateral for such loans any securities deposited with the Corporation pursuant to this title; by and with the consent and approval of the Commission to select, employ, and fix the compensation of officers, directors, members of committees, employees, attorneys, and agents of the Corporation, without regard to the provisions of other laws applicable to the employment and compensation of officers or employees of the United States; to define their authority and duties, require bonds of them and fix the penalties thereof, and to dismiss at pleasure such officers, employees, attorneys, and agents; and to prescribe, amend, and repeal, by its board of directors, bylaws, rules, and regulations governing the manner in which its general business may be conducted and the powers granted to it by law may be exercised and enjoyed, together with the provisions for such committees and the functions thereof as the board of directors may deem necessary for facilitating its business under this title. The board of directors of the Corporation shall determine and prescribe the manner in which its obligations shall be incurred and its expenses allowed and paid.

SEC. 204. The board of directors may—

(1) Convene meetings of holders of foreign securities.

(2) Invite the deposit and undertake the custody of foreign securities which have defaulted in the payment either of principal or interest, and issue receipts or certificates in the place of securities so deposited.

(3) Appoint committees from the directors of the Corporation and/or all other persons to represent holders of any class or classes of foreign securities which have defaulted in the payment either of principal or interest and determine and regulate the functions of such committees. The chairman and vice chairman of the board of directors shall be ex officio chairman and vice chairman of each committee.

(4) Negotiate and carry out, or assist in negotiating and carrying out, arrangements for the resumption of payments due or in arrears in respect of any foreign securities in default or for rearranging the terms on which such securities may in future be held or for converting and exchanging the same for new securities or for any other object in relation thereto; and under this paragraph any plan or agreement made with respect to such securities shall be binding upon depositors, providing that the consent of holders resident in the United States of 60 per centum of the securities deposited with the Corporation shall be obtained.

(5) Undertake, superintend, or take part in the collection and application of funds derived from foreign securities which come into the possession of or under the control or management of the Corporation.

(6) Collect, preserve, publish, circulate, and render available in readily accessible form, when deemed essential or necessary, documents, statistics, reports and information of all kinds in respect of foreign securities, including particularly records of foreign external securities in default and records of the progress made toward the payment of past-due obligations.

(7) Take such steps as it may deem expedient with the view of securing the adoption of clear and simple forms of foreign securities and just and sound principles in the conditions and terms thereof.

(8) Generally, act in the name and on behalf of the holders of foreign securities the care or representation of whose interests may be entrusted to the Corporation; conserve and protect the rights and interests of holders of foreign securities issued, sold, or owned in the United States; adopt measures for the protection, vindication, and preservation or reservation of the rights and interests of holders of foreign securities either on any default in or on breach or contemplated breach of the conditions on which such foreign securities may have been issued, or otherwise; obtain for such holders such legal and other assistance and advice as the board of directors may deem expedient; and do all such other things as are incident or conducive to the attainment of the above objects.

SEC. 205. The board of directors shall cause accounts to be kept of all matters relating to or connected with the transactions and business of the Corporation, and cause a general account and balance sheet of the Corporation to be made out in each year, and cause all accounts to be audited by one or more auditors who shall examine the same and report thereon to the board of directors.

SEC. 206. The Corporation shall make, print, and make public an annual report of its operations during each year, send a copy thereof, together with a copy of the account and balance sheet and auditor's report, to the Commission and to both Houses of Congress, and provide one copy of such report but not more than one on the application of any person and on receipt of a sum not exceeding $1: *Provided,* That the board of directors in its discretion may distribute copies gratuitously.

SEC. 207. The Corporation may in its discretion levy charges, assessed on a pro rata basis, on the holders of foreign securities deposited with it: *Provided,* That any charge levied at the time of depositing securities with the Corporation shall not exceed one fifth of 1 per centum of the face value of such securities: *Provided further,* That any additional charges shall bear a close relationship to the cost of operations and negotiations including those enumerated in sections 203 and 204 and shall not exceed 1 per centum of the face value of such securities.

SEC. 208. The Corporation may receive subscriptions from any person, foundation with a public purpose, or agency of the United States Government, and such subscriptions may, in the discretion of the board of directors, be treated as loans repayable when and as the board of directors shall determine.

SEC. 209. The Reconstruction Finance Corporation is hereby authorized to loan out of its funds not to exceed $75,000 for the use of the Corporation.

SEC. 210. Notwithstanding the foregoing provisions of this title, it shall be unlawful for, and nothing in this title shall be taken or construed as permitting or authorizing, the Corporation in this title created, or any committee of said Corporation, or any person or persons acting for or representing or purporting to represent it—

(a) to claim or assert or pretend to be acting for or to represent the Department of State or the United States Government;

(b) to make any statements or representations of any kind to any foreign government or its officials or the officials of any political subdivision of any foreign government that said Corporation or any committee thereof or any individual or individuals connected therewith were speaking or acting for the said Department of State or the United States Government; or

(c) to do any act directly or indirectly which would interfere with or obstruct or hinder or which might be calculated to obstruct, hinder or interfere with the policy or policies of the said Department of State or the Government of the United States or any pending or contemplated diplomatic negotiations, arrangements, business or exchanges between the Government of the United States or said Department of State and any foreign government or any political subdivision thereof.

SEC. 211. This title shall not take effect until the President finds that its taking effect is in the public interest and by proclamation so declares.

SEC. 212. This title may be cited as the "Corporation of Foreign Bondholders Act, 1933."

## TRUST INDENTURE BILL OF 1939

### TITLE III

Sec. 301. *This title may be cited as the "Trust Indenture Act of 1939."*

#### NECESSITY FOR REGULATION

Sec. 302. (a) *Upon the basis of facts disclosed by the reports of the Securities and Exchange Commission made to the Congress pursuant to section 211 of the Securities Exchange Act of 1934 and otherwise disclosed and ascertained, it is hereby declared that the national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public, are adversely affected—*

*(1) when the obligor fails to provide a trustee to protect and enforce the rights and to represent the interests of such investors, notwithstanding the fact that (A) individual action by such investors for the purpose of protecting and enforcing their rights is rendered impracticable by reason of the disproportionate expense of taking such action, and (B) concerted action by such investors in their common interest through representatives of their own selection is impeded by reason of the wide dispersion of such investors through many States, and by reason of the fact that information as to the names and addresses of such investors generally is not available to such investors;*

*(2) when the trustee does not have adequate rights and powers, or adequate duties and responsibilities, in connection with matters relating to the protection and enforcement of the rights of such investors; when, notwithstanding the obstacles to concerted action by such investors, and the general and reasonable assumption by such investors that the trustee is under an affirmative duty to take action for the protection and enforcement of their rights, trust indentures (A) generally provide that the trustee shall be under no duty to take any such action, even in the event of default, unless it receives notice of default, demand for action, and indemnity, from the holders of substantial percentages of the securities outstanding thereunder, and (B) generally relieve the trustee from liability even for its own negligent action or failure to act;*

*(3) when the trustee does not have resources commensurate with its responsibilities, or has any relationship to or connection with the obligor or any underwriter of any securities of the obligor, or holds, beneficially or otherwise, any interest in the obligor or any such underwriter, which relationship, connection, or interest involves a material conflict, actual or potential, with the interests of such investors;*

*(4) when the obligor is not obligated to furnish to the trustee under the indenture and to such investors adequate current information as to its financial condition, and as to the performance of its obligations with respect to the securities outstanding under such indenture; or when the communication of such information to such investors is impeded by the fact that information as to the names and addresses of such investors generally is not available to the trustee and to such investors;*

*(5) when the indenture contains provisions which are misleading or deceptive, or when full and fair disclosure is not made to prospective investors of the effect of the indenture provisions with respect to the definition of the term "default", the release, or release and substitution, of property subject to the lien of the indenture, and the issuance of additional securities under the indenture; or*

*(6) when, by reason of the fact that trust indentures are commonly prepared by the obligor or underwriter in advance of the public offering of the securities to be issued hereunder, such investors are unable to participate in the preparation thereof, and, by reason of their lack of understanding of the situation, such investors would in any event be unable to procure the correction of the defects enumerated in this subsection.*

*(b) Abuses of the character above enumerated have been so widespread that, unless regulated, the public offering of notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, by the use of means and instruments of transportation and communication in interstate commerce and of the mails, is injurious to the capital markets, to investors, and to the general public; and it is hereby declared to be the policy of this title, in accordance with which policy all the provisions of this title shall be interpreted, to meet the problems and eliminate the abuses, enumerated in this section, connected with such public offerings.*

## DEFINITIONS

*Sec. 303. When used in this title, unless the context otherwise requires—*

*(1) Any term defined in section 2 of the Securities Act of 1933, as heretofore amended, and not otherwise defined in this section, shall have the meaning assigned to such term in such section 2.*

*(2) The term "sale" or "sell" shall include all transactions included in such term as provided in paragraph (3) of section 2 of the Securities Act of 1933, as heretofore amended, except that a sale of a certificate of interest or participation shall be deemed a sale of the security or securities in which such certificate evidences an interest or participation if and only if such certificate gives the holder thereof the right to convert the same into such security or securities.*

*(3) The term "prospectus" shall have the meaning assigned to such term in paragraph (10) of section 2 of the Securities Act of 1933, as heretofore amended, except that in the case of securities which are not registered under the Securities Act of 1933, such term shall not include any communication (A) if it is proved that prior to or at the same time with such communication a written statement meeting the requirements of subsection (a) of section 318 was sent or given to the persons to whom the communication was made, by the person making such communication or his principal, or (B) if such communication states from whom such statement may be obtained and, in addition, does no more than identify the security, state the price thereof, and state by whom orders will be executed.*

*(4) The term "underwriter" means any person who has purchased from an issuer with a view to, or sells for an issuer in connection with, the distribution of any security or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission.*

*(5) The term "director" means any director of a corporation, or any individual performing similar functions with respect to any person whether incorporated or unincorporated.*

*(6) The term "executive officer" means the president, every vice president, every trust officer, the cashier, the secretary, and the treasurer of a corporation, and any individual customarily performing similar functions with respect to any person whether incorporated or unincorporated.*

*(7) The term "indenture" means any mortgage, deed of trust, trust or other indenture, or similar instrument or agreement (including any supplement or amendment to any of the foregoing), under which securities are outstanding or are to be issued, whether or not any property, real or personal, is, or is to be, pledged, mortgaged, assigned, or conveyed thereunder.*

*(8) The term "application" or "application for qualification" means the application provided for in section 306, and includes any amendment thereto and any report, document, or memorandum accompanying such application or incorporated therein by reference.*

*(9) The term "indenture to be qualified" means the indenture in respect of which a particular application is filed.*

*(10) The term "indenture trustee" means each trustee under the indenture to be qualified, and each successor trustee.*

*(11) The term "indenture security" means any security issued or issuable under the indenture to be qualified.*

*(12) The term "obligor" means every person who is liable upon any such indenture security, and, if such security is a certificate of interest or participation, such term means also every person who is liable upon the security or securities in which such certificate evidences an interest or participation; but such term shall not include the trustee under an indenture under which certificates of interest or participation, equipment trust certificates, or like securities are outstanding.*

*(13) The term "paying agent" when used with respect to any such indenture security, means any person authorized by an obligor thereon (A) to pay the principal of or interest on such security on behalf of such obligor, or (B) if such security is a certificate of interest or participation, equipment trust certificate, or like security, to make such payment on behalf of the trustee.*

*(14) The term "State" means any State of the United States.*

*(15) The term "Commission" means the Securities and Exchange Commission.*

*(16) The term "voting security" means any security presently entitling the owner or holder thereof to vote in the direction or management of the affairs of a person, or any security issued under or pursuant to any trust, agreement, or arrangement whereby a trustee or trustees or agent or agents for the owner or holder of such security are*

*presently entitled to vote in the direction or management of the affairs of a person; and a specified "per centum of the voting securities of a person" means such amount of the outstanding voting securities of such person as entitles the holder or holders thereof to cast such specified per centum of the aggregate votes which the holders of all the outstanding voting securities of such person are entitled to cast in the direction or management of the affairs of such person.*

*(17) The terms "Securities Act of 1933", "Securities Exchange Act of 1934", and "Public Utility Holding Company Act of 1935" shall be deemed to refer, respectively, to such Acts, as heretofore or hereafter amended.*

*(18) The term "Bankruptcy Act" means the Act entitled "An Act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, as heretofore or hereafter amended.*

## EXEMPTED SECURITIES AND TRANSACTIONS

*SEC. 304.  (a)  The provisions of sections 305, 306, 323, 324, and 325 of this title shall not apply to any of the following securities:*

*(1) any security other than (A) a note, bond, debenture, or evidence of indebtedness, whether or not secured, or (B) a certificate of interest or participation in any such note, bond, debenture, or evidence of indebtedness, or (C) a temporary certificate for, or guarantee of, any such note, bond, debenture, evidence of indebtedness or certificate;*

*(2) any certificate of interest or participation in two or more securities having substantially different rights and privileges, or a temporary certificate for any such certificate;*

*(3) any security, which prior to or within six months after the enactment of this title, has been sold or disposed of by the issuer or bona fide offered to the public, but this exemption shall not apply to any new offering of any such security by an issuer subsequent to such six months;*

*(4) any security exempted from the provisions of the Securities Act of 1933, as heretofore amended, by paragraph (2), (3), (4), (5), (6), (7), (8), or (11) of subsection 3 (a) thereof;*

*(5) any security issued under a mortgage indenture as to which a contract of insurance under the National Housing Act is in effect; and any such security shall be deemed to be exempt from the provisions of the Securities Act of 1933 to the same extent as though such security were specifically enumerated in section 3 (a) (2) of such Act;*

*(6) any note, bond, debenture, or evidence of indebtedness issued or guaranteed by a foreign government or by a subdivision, department, municipality, agency, or instrumentality thereof;*

*(7) any guaranty of any security exempted by this subsection; or*

*(8) any security to which the provisions of section 305 would otherwise have been applicable and which has been or is to be issued (A) otherwise than under an indenture or (B) under an indenture which limits the aggregate principal amount of securities at any time outstanding thereunder to $1,000,000 or less; but, in the case of any such securities of the same issuer, the maximum aggregate principal amount of such securities to which the exemption provided by this paragraph may be applied within any period of twelve consecutive months shall not exceed $1,000,000.*

*(b)  The provisions of section 305 shall not apply (A) to any of the transactions exempted by section 4 of the Securities Act of 1933, as heretofore amended, from the provisions of section 5 thereof, or (B) to any transaction which would be so exempted but for the last sentence of paragraph (11) of section 2 of such Act.*

*(c)  The Commission shall, on application by the issuer and after opportunity for hearing thereon, by order exempt from any one or more provisions of this title any security issued or proposed to be issued under an indenture under which, at the time such application is filed, securities referred to in paragraph (3) of subsection (a) of this section are outstanding, if and to the extent that the Commission finds that compliance with such provision or provisions, through the execution of a suppplemental indenture or otherwise—*

*(1) would require, by reason of the provisions of such indenture, or the provisions of any other indenture or agreement made prior to the enactment of this title, or the provisions of any applicable law, the consent of the holders of securities outstanding under any such indenture or agreement; or*

*(2) would impose an undue burden on the issuer, having due regard to the public interest and the interests of investors.*

(d) *The Commission may, on application by the issuer and after opportunity for hearing thereon, by order exempt from any one or more of the provisions of this title any security issued or proposed to be issued by a person organized and existing under the laws of a foreign government or a political subdivision thereof, if and to the extent that the Commission finds that compliance with such provision or provisions is not necessary in the public interest and for the protection of investors.*

### PROHIBITIONS RELATING TO INTERSTATE COMMERCE AND THE MAILS

Sec. 305. (a) *Subject to the provisions of section 304, unless a security has been or is to be issued under an indenture as to which an application for qualification is effective, it shall be unlawful for any person, directly or indirectly—*

(1) *to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or*

(2) *to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.*

(b) *In the case of any security which is not registered under the Securities Act of 1933, but which has been or is to be issued under an indenture as to which an application for qualification is effective, it shall be unlawful for any person, directly or indirectly—*

(1) *to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any such security, unless such prospectus includes or is accompanied by a written statement that meets the requirements of subsection (a) of section 318; or*

(2) *to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a written statement that meets the requirements of subsection (a) of section 318.*

### APPLICATIONS FOR QUALIFICATION AND THE TAKING EFFECT THEREOF

Sec. 306. (a) *An application for qualification of the indenture under which a security has been or is to be issued shall be filed with the Commission by the issuer of such security. Each such application shall be in such form, and shall be signed in such manner, as the Commission by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. Each such application shall include such of the information and documents as would be required to be filed in order to register such indenture security under the Securities Act of 1933, and such additional information, in such form and detail, and such documents, regarding the issuer of such security, the obligors thereon, the indenture trustees, the paying agents with respect to such security, the underwriters (as such term is defined in the last paragraph of subsection (b) of section 310), and the prospective obligors, indenture trustees, and underwriters, and the direct or indirect relationships between any of the foregoing, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors. Each such application shall also contain an analysis of the effect of any provisions of the indenture with respect to the matters specified in paragraph (1) of subsection (a) of section 318. Subject to the provisions of section 321, the information and documents contained in or filed with any application shall be made available to the public under such regulations as the Commission may prescribe, and copies thereof, photostatic or otherwise, shall be furnished to every applicant therefor at such reasonable charge as the Commission may prescribe.*

(b) *The filing with the Commission of an application, or of an amendment to an application, shall be deemed to have taken place upon the receipt thereof by the Commission, but unless a registration statement, under the Securities Act of 1933, covering securities issued or to be issued under the indenture to be qualified has been filed prior to or simultaneously with the application, the filing of such application shall not be deemed to have taken place unless it is accompanied or preceded by payment to the Commission of a filing fee in the amount of $100, such payment to be made in cash or by United States postal money order or certified or bank check, or in such other medium of payment as the Commission may authorize by rule and regulation. If a registration statement covering securities issued or to be issued under such indenture is subsequently filed, the amount of the fee so paid shall be credited against the fee required to be paid at the time of filing such registration statement, and any excess shall be refunded to the applicant. If an amendment to an application is filed prior to the effective*

*date of such application, the application shall be deemed to have been filed when such amendment was filed; except that an amendment filed with the consent of the Commission, prior to the effective date of the application, or filed pursuant to an order of the Commission, shall be treated as a part of the application. Amendments after the effective date of an application may be made upon such terms and conditions as the Commission may prescribe.*

*(c) The effective date of an application shall be the twentieth day after the filing thereof, unless the Commission prior to such time shall have issued an order to the issuer to show cause why such application should become effective. If any such tion shall become effective within such reasonable period of time after an opportunity for hearing upon such order as the Commission shall fix by rules and regulations, unless the Commission prior to the expiration of such period shall have issued an order pursuant to section 308 refusing to permit such application to become effective. Whenever the Commission shall issue on order to the issuer to show cause, it shall be served upon the issuer in such manner as the Commission may by rules and regulations prescribe, and the Commission shall accord an opportunity for hearing thereon at a time fixed by the Commission, but within ten days after such service. An application may be withdrawn by the applicant at any time prior to the effective date thereof.*

### INTEGRATION OF PROCEDURE WITH SECURITIES ACT AND OTHER ACTS

*Sec. 307. (a) The Commission, by such rules and regulations or orders as it deems necessary or appropriate in the public interest or for the protection of investors, may authorize the filing of any information or documents required to be filed with the Commission under this title, or under the Securities Act of 1933, the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, by incorporating by reference any information or documents on file with the Commission under this title or under any such Act.*

*(b) The Commission, by such rules and regulations or orders as it deems necessary or appropriate in the public interest or for the protection of investors, may provide for the consolidation of applications, reports, and proceedings under this title with registration statements, applications, reports, and proceedings under the Securities Act of 1933, Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935.*

*(c) Notwithstanding the provisions of the Securities Act of 1933, after the expiration of six months after the enactment of this title, no registration statement relating to a security which is subject to the provisions of subsection (a) of section 305 shall become effective unless such security has been or is to be issued under an indenture as to which an application for qualification is effective.*

### REFUSAL ORDERS

*Sec. 308. (a) The Commission shall issue an order refusing to permit an application filed pursuant to section 306 to become effective if it finds that—*

*(1) such application does not conform to the requirements of th title and the rules and regulations thereunder;*

*(2) the application includes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading;*

*(3) any person designated as trustee under the indenture to be qualified is not eligible to act as such under subsection (a) of section 310 or has any conflicting interest as defined in subsection (b) of section 310;*

*(4) such indenture does not conform to the requirements of sections 310 to 317, inclusive, and the rules, regulations, and orders thereunder; or*

*(5) such indenture or any security to be issued thereunder contains any provision which limits, qualifies, or conflicts with a provision required to be contained in such indenture by this title, or the rules, regulations, or orders thereunder; or contains any provision which is misleading or deceptive, or the elimination of which is necessary to prevent the circumvention or evasion of this title. If and when the Commission deems that the objections on which such order was based have been met, the Commission shall enter an order rescinding such refusal order, and the application shall become effective upon the date fixed pursuant to subsection (c) of section 306, or upon the date of such rescission, whichever shall be the later.*

*(b) The Commission is hereby empowered to make an investigation in any case in order to determine whether a refusal order should issue under subsection (a) of this section; but in the case of a prospective trustee any such investigation shall be limited as provided in subsection (c) of section 321.*

80                    TRUST INDENTURE BILL OF 1939

### EFFECT OF QUALIFICATION OF INDENTURE

SEC. 309. (a) Except as otherwise expressly provided in this title, the making, amendment, or rescission of a rule, regulation, or order under the provisions of this title shall not affect the qualification, form, or interpretation of any indenture as to which qualification became effective prior to the making, amendment, or rescission of such rule, regulation, or order.

(b) After an indenture has been qualified under this title, the trustee shall not be subject to any liability because of any failure of such indenture to comply with any of the provisions of this title, or any rule, regulation, or order thereunder.

(c) Nothing in this title shall be construed as empowering the Commission to conduct an investigation or other proceeding for the purpose of determining whether the provisions of an indenture as to which an application for qualification is effective are being complied with, or to enforce such provisions.

### ELIGIBILITY AND DISQUALIFICATION OF TRUSTEE

#### Persons Eligible for Appointment as Trustee

SEC. 310. (a) (1) The indenture to be qualified shall require that there shall at all times be one or more trustees thereunder, at least one of whom shall at all times be an institution incorporated and doing business under the laws of the United States or of any State or Territory or of the District of Columbia, which (A) is authorized under such laws to exercise corporate trust powers, and (B) is subject to supervision or examination by Federal, State, Territorial, or District authority.

(2) The indenture to be qualified shall require that such institutional trustee shall have at all times a combined capital and surplus of a specified minimum amount, which shall not be less than $100,000. If such institutional trustee publishes reports of condition at least annually, pursuant to law or to the requirements of such supervising or examining authority, the indenture may provide that, for the purposes of this paragraph, the combined capital and surplus of such trustee shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published.

(3) If the indenture to be qualified requires or permits the appointment of one or more cotrustees in addition to such institutional trustee, such indenture shall provide that the rights, powers, duties, and obligations conferred or imposed upon the trustees or any of them shall be conferred or imposed upon and exercised or performed by such institutional trustee, or such institutional trustee and such cotrustees jointly, except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed, such institutional trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties, and obligations shall be exercised and performed by such cotrustees.

(4) In the case of certificates of interest or participation, the indenture to be qualified shall require that the indenture trustee or trustees have the legal power to exercise all of the rights, powers, and privileges of a holder of the security or securities in which such certificates evidence an interest or participation.

#### Disqualification of Trustee

(b) The indenture to be qualified shall provide that if any indenture trustee has or shall acquire any conflicting interest as hereinafter defined, (i) such trustee shall, within ninety days after ascertainment of such conflicting interest, either eliminate such conflicting interest or resign, such resignation to become effective upon the appointment of a successor trustee and such successor's acceptance of such appointment, and the obligor shall take prompt steps to have a successor appointed in the manner provided in the indenture, (ii) in the event that such trustee shall fail to comply with the provisions of clause (i) of this subsection, such trustee shall, within ten days after the expiration of such ninety-day period, transmit notice of such failure to the indenture security holders in the manner and to the extent provided in subsection (c) of section 313; and (iii) subject to the provisions of subsection (e) of section 315, any security holder who has been a bona fide holder of indenture securities for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of such trustee, and the appointment of a successor, if such trustee fails, after written request therefor by such holder, to comply with the provisions of clause (i) of this subsection. For the purposes of this subsection, an indenture trustee shall be deemed to have a conflicting interest if—

(1) such trustee is trustee under another indenture under which any other securities, or certificates of interest or participation in any other securities, of an

*obligor are outstanding unless (A) the indenture securities are collateral trust notes under which the only collateral consists of securities issued under such other indenture, or (B) such other indenture is a collateral trust indenture under which the only collateral consists of indenture securities, or (C) such obligor has no substantial unmortgaged assets and is engaged primarily in the business of owning, or of owning and developing and/or operating, real estate, and the indenture to be qualified and such other indenture are secured by wholly separate and distinct parcels of real estate: Provided, That the indenture to be qualified may contain a provision excluding from the operation of this paragraph another indenture under which other securities, or certificates of interest or participation in other securities, of an obligor are outstanding, if (i) the indenture to be qualified and such other indenture are wholly unsecured, unless the Commission shall have found, after notice and opportunity for hearing, that differcenes exist between the provisions of the indenture to be qualified and the provisions of such other indenture which are so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify such trustee from acting as such under one of such indentures, or (ii) the issuer shall have sustained the burden of proving, on application to the Commission and after opportunity for hearing thereon, that trusteeship under the indenture to be qualified and such other indenture is not so likely to involve a material conflict of interest as to make it necessary in the public interest or for the protection of investors to disqualify such trustee from acting as such under one of such indentures;*

*(2) such trustee or any of its directors or executive officers is an obligor or underwriter;*

*(3) such trustee directly or indirectly controls or is directly or indirectly controlled by or is under direct or indirect common control with an obligor or underwriter, whether by agency, stock ownership or otherwise;*

*(4) such trustee or any of its directors or executive officers is a director, officer, partner, employee, appointee or representative of an obligor, or of an underwriter (other than the trustee itself) who is currently engaged in the business of underwriting, except that (A) one individual may be a director and/or an executive officer of the trustee and a director and/or an executive officer of an obligor, but may not be at the same time an executive officer of both the trustee and of such obligor, and (B) if and so long as the number of directors of the trustee in office is more than nine, one additional individual may be a director and/or an executive officer of the trustee and a director of such obligor, if his pecuniary interest in such obligor does not exceed 1 per centum of the voting securities of such obligor, or 1 per centum of all other securities, other than indenture securities, of such obligor, and (C) such trustee may be designated, by any obligor or underwriter, to act in the capacity of transfer agent, registrar, custodian, paying agent, fiscal agent, escrow agent or depositary, or in any other similar capacity, or, subject to the provisions of paragraph (1) of this subsection, to act as trustee under an indenture or otherwise;*

*(5) 5 per centum or more of the voting securities of such trustee is beneficially owned either by an obligor or by any director, partner, or executive officer thereof, or 10 per centum or more of such voting securities is beneficially owned, collectively, by two or more of such persons, not including any such voting securities owned by an individual described in clause (A) of paragraph (4) of this subsection in an amount not exceeding 2½ per centum of such voting securities, or owned by an individual described in clause (B) of such paragraph (4); or 5 per centum or more of the voting securities of such trustee is beneficially owned either by an underwriter or by any director, partner, or executive officer thereof, or is beneficially owned, collectively, by any two or more of such persons;*

*(6) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, (A) 5 per centum or more of the voting securities, or 10 per centum or more of any other class of security, of an obligor, not including indenture securities and securities issued under any other indenture under which such trustee is also trustee, or (B) 10 per centum or more of any class of security of an underwriter;*

*(7) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, 5 per centum or more of the voting securities of any person who, to the knowledge of the trustee, owns 10 per centum or more of the voting securities of, or controls directly or indirectly or is under direct or indirect common control with, an obligor, whether by agency, stock ownership, or otherwise;*

*(8) such trustee is the beneficial owner of, or holds as collateral security for an obligation which is in default as hereinafter defined, 10 per centum or more of*

any class of security of any person who, to the knowledge of the trustee, owns 50 per centum or more of the voting securities of an obligor; or

(9) such trustee owns, on May 15 in any calendar year, in the capacity of executor, administrator, testamentary or intervivos trustee, guardian, committee or conservator, or in any other similar capacity, in aggregate of 25 per centum or more of the voting securities, or of any class of security, of any person, the beneficial ownership of a specified percentage of which would have constituted a conflicting interest under paragraph (6), (7), or (8) of this subsection. The indenture to be qualified may provide, as to any such securities of which the indenture trustee acquired ownership through becoming executor, administrator, or testamentary trustee of an estate which included them, that the provisions of the preceding sentence shall not apply, for a period of not more than two years from the date of such acquisition, to the extent that such securities included in such estate do not exceed 25 per centum of such voting securities or 25 per centum of any such class of security.   The indenture to be qualified shall provide that, promptly after May 15 in each calendar year, the trustee shall make a check of its holdings of such securities in any of the above-mentioned capacities as of such May 15.   Such indenture shall also provide that if the obligor fails to make payment in full of principal or interest under such indenture when and as the same becomes due and payable, and such failure continues for thirty days thereafter, the trustee shall make a prompt check of its holdings of such securities in any of the above-mentioned capacities as of the date of the expiration of such thirty-day period, and after such date, notwithstanding the foregoing provisions of this paragraph, all such securities so held by the trustee, with sole or joint control over such securities vested in it, shall be considered as though beneficially owned by such trustee, for the purposes of paragraphs (6), (7), and (8) of this subsection.

For the purposes of paragraphs (6), (7), (8), and (9) of this subsection, (A) the terms "security" and "securities" shall include only such securities as are generally known as corporate securities; (B) an obligation shall be deemed to be in default when a default in payment of principal shall have continued for thirty days or more, and shall not have been cured; and (C) the indenture trustee shall not be deemed the owner or holder of (i) any security which it holds as collateral security (as trustee or otherwise) for an obligation which is not in default as above defined, or (ii) any security which it holds as collateral security under the indenture to be qualified, irrespective of any default thereunder, or (iii) any security which it holds as agent for collection, or as custodian, escrow agent, or depositary, or in any similar representative capacity.

For the purposes of this subsection, the term "underwriter" means every person who, within four years prior to the time as of which the determination is made, was an underwriter of any security of an obligor outstanding at such time.

### Applicability of Section

(c) The provisions of this section relating to the eligibility and qualifications of the trustee under an indenture with respect to which an application for qualification has been filed shall apply to such indenture and to any trustee or prospective trustee thereunder to the exclusion of the provisions of the Public Utility Holding Company Act of 1935.

#### PREFERENTIAL COLLECTOR OF CLAIMS AGAINST OBLIGOR

SEC. 311. (a) Subject to the provisions of subsection (b) of this section, the indenture to be qualified shall provide that if the indenture trustee shall be, or shall become, a creditor, directly or indirectly, secured or unsecured, of an obligor, within four months prior to a default as defined in the last paragraph of this subsection, or subsequent to such a default, then, unless and until such default shall be cured, such trustee shall set apart and hold in a special account for the benefit of the trustee individually and the indenture security holders—

(1) an amount equal to any and all reductions in the amount due and owing upon any claim as such creditor in respect of principal or interest, effected after the beginning of such four months' period and valid as against the obligor and its other creditors, except any such reduction resulting from the receipt or disposition of any property described in paragraph (2) of this subsection, or from the exercise of any right of set-off which the trustee could have exercised if a petition in bankruptcy had been filed by or against such obligor upon the date of such default; and

(2) all property received in respect of any claim as such creditor, either as security therefor, or in satisfaction or composition thereof, or otherwise, after the

*beginning of such four months' period, or an amount equal to the proceeds of any such property, if disposed of, subject, however, to the rights, if any, of the obligor or its other creditors in such property or such proceeds.*

*Nothing herein contained shall affect the right of the indenture trustee—*

*(A) to retain for its own account (i) payments made on account of any such claim by any person (other than the obligor) who is liable thereon, and (ii) the proceeds of the bona fide sale of any such claim by the trustee to a third person, and (iii) distributions made in cash, securities, or other property in respect of claims filed against the obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law;*

*(B) to realize, for its own account, upon any property held by it as security for any such claim, if such property was so held prior to the beginning of such four months' period;*

*(C) to realize, for its own account, but only to the extent of the claim hereinafter mentioned, upon any property held by it as security for any such claim, if such claim was created after the beginning of such four months' period and such property was received as security therefor simultaneously with the creation thereof, and if the trustee shall sustain the burden of proving that at the time such property was so received the trustee had no reasonable cause to believe that a default as defined in the last paragraph of this subsection would occur within four months; or*

*(D) to receive payment on any claim referred to in paragraph (B) or (C), against the release of any property held as security for such claim as provided in paragraph (B) or (C), as the case may be, to the extent of the fair value of such property.*

*For the purposes of paragraphs (B), (C), and (D), property substituted after the beginning of such four months' period for property held as security at the time of such substitution shall, to the extent of the fair value of the property released, have the same status as the property released, and, to the extent that any claim referred to in any of such paragraphs is created in renewal of or in substitution for or for the purpose of repaying or refunding any preexisting claim of the indenture trustee as such creditor, such claim shall have the same status as such preexisting claim.*

*The indenture to be qualified shall provide that, if the trustee shall be required to account, the funds and property held in such special account and the proceeds thereof shall be apportioned between the trustee and the indenture security holders in such manner that the trustee and the indenture security holders realize, as a result of payments from such special account and payments of dividends on claims filed against the obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, the same percentage of their respective claims, figured before crediting to the claim of the trustee anything on account of the receipt by it from the obligor of the funds and property in such special account and before crediting to the respective claims of the trustee and the indenture security holders dividends on claims filed against the obligor in bankruptcy or receivership or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, but after crediting thereon receipts on account of the indebtedness represented by their respective claims from all sources other than from such dividends and from the funds and property so held in such special account. As used in this paragraph, with respect to any claim, the term 'dividends' shall include any distribution with respect to such claim, in bankruptcy or receivesrhip or in proceedings for reorganization pursuant to the Bankruptcy Act or applicable State law, whether such distribution is made in cash, securities, or other property, but shall not include any such distribution with respect to the secured portion, if any, of such claim. The court in which such bankruptcy, receivership, or proceeding for reorganization is pending shall have jurisdiction, (i) to apportion between the indenture trustee and the indenture security holders, in accordance with the provisions of this paragraph, the funds and property held in such special account and the proceeds thereof, or (ii) in lieu of such apportionment, in whole or in part, to give to the provisions of this paragraph due consideration in determining the fairness of the distributions to be made to the indenture trustee and the indenture security holders with respect to their respective claims, in which event it shall not be necessary to liquidate or to appraise the value of any securities or other property held in such special account or as security for any such claim, or to make a specific allocation of such distributions as between the secured and unsecured portions of such claims, or otherwise to apply the provisions of this paragraph as a mathematical formula.*

*Any indenture trustee who has resigned or been removed after the beginning of such four months' period shall be subject to the provisions of this subsection as though such resignation or removal had not occurred. Any indenture trustee who has resigned or*

84                    TRUST INDENTURE BILL OF 1939

been removed prior to the beginning of such four months' period shall be subject to the provisions of this subsection if and only if the following conditions exist—

    (i) the receipt of property or reduction of claim which would have given rise to the obligation to account, if such indenture trustee had continued as trustee, occurred after the beginning of such four months' period; and

    (ii) such receipt of property or reduction of claim occurred within four months after such resignation or removal.

As used in this subsection, the term "default" means any failure to make payment in full of principal or interest, when and as the same becomes due and payable, under an indenture as to which an application for qualification is effective, and under which the indenture trustee is trustee and the person of whom the indenture trustee is directly or indirectly a creditor is an obligor; and the term "indenture security holder" means all holders of securities outstanding under any such indenture under which such default exists.

(b)  The indenture to be qualified may contain provisions excluding from the operation of subsection (a) of this section a creditor relationship arising from—

    (1) the ownership or acquisition of securities issued under any indenture, or any security or securities having a maturity of one year or more at the time of acquisition by the indenture trustee;

    (2) advances authorized by a receivership or bankruptcy court of competent jurisdiction, or by the indenture, for the purpose of preserving the property subject to the lien of the indenture, if notice of such advance and of the circumstances surrounding the making thereof is given to the indenture security holders at the time and in the manner provided in the indenture;

    (3) disbursements made in the ordinary course of business in the capacity of trustee under an indenture, transfer agent, registrar, custodian, paying agent, fiscal agent or depositary, or other similar capacity;

    (4) an indebtedness created as a result of services rendered or premises rented; or an indebtedness created as a result of goods or securities sold in a cash transaction as defined in the indenture;

    (5) the ownership of stock or of other securities of a corporation organized under the provisions of section 25 (a) of the Federal Reserve Act, as amended, which is directly or indirectly a creditor of an obligor; or

    (6) the acquisition, ownership, acceptance, or negotiation of any drafts, bills of exchange, acceptances, or obligations which fall within the classification of self-liquidating paper as defined in the indenture.

BONDHOLDERS' LISTS

SEC. 312. (a)  The indenture to be qualified shall contain provisions requiring each obligor to furnish or cause to be furnished to the institutional trustee thereunder at stated intervals of not more than six months, and at such other times as such trustee may request in writing, all information in the possession or control of such obligor or of any of its paying agents, as to the names and addresses of the indenture security holders, and requiring such trustee to preserve all such information so furnished to it or received by it in the capacity of paying agent.

(b)  The indenture to be qualified shall also contain provisions requiring that, within three business days after the receipt by the institutional trustee of a written application by any indenture security holder stating that the applicant desires to communicate with other indenture security holders with respect to their rights under such indenture or under the indenture securities, and accompanied by reasonable proof of such applicant's ownership of an indenture security, such institutional trustee shall, at its election, either—

    (1) afford to such applicant access to all information so furnished to or received by such trustee; or

    (2) inform such applicant as to the approximate number of indenture security holders according to the most recent information so furnished to or received by such trustee, and as to the approximate cost of mailing to such indenture security holders the form of proxy or other communication, if any, specified in such application.

Unless such trustee shall elect to afford to such applicant access to such information, such trustee shall, upon the written request of such applicant, mail to all such indenture security holders copies of such form of proxy or other communication as may be specified in such request, with reasonable promptness after a tender to such trustee of the material to be mailed, and the payment, or provision for the payment, of the reasonable expenses of such mailing.

*(c) The disclosure of any such information as to the names and addresses of the indenture security holders in accordance with the provisions of this section, regardless of the source from which such information was derived, shall not be deemed to be a violation of any existing law, or of any law hereafter enacted which does not specifically refer to this section.*

### REPORTS BY INDENTURE TRUSTEE

*Sec. 313. (a) The indenture to be qualified shall contain provisions requiri g the indenture trustee to transmit to the indenture security holders as hereinafter provided at stated intervals of not more than 12 months, a brief report with respect to—*

*(1) its eligibility and its qualifications under section 310, or in lieu thereof, where appropriate, a written statement that to the best of its knowledge it has continued to be eligible and qualified under such section;*

*(2) the character and amount of any advances made by the indenture trustee as such, which remain unpaid on the date of such report, and for the reimbursement of which it claims or may claim a lien or charge, prior to that of the indenture securities, on the trust estate or on property or funds held or collected by it as such trustee, if such advances so remaining unpaid aggregate more than one-half of 1 per centum of the principal amount of the indenture securities outstanding on such date;*

*(3) the character and amount of all other indebtedness owing by the obligor to the indenture trustee on the date of such report, with a brief description of any property held as collateral security therefor;*

*(4) the property and funds physically in the possession of the indenture trustee as such on the date of such report;*

*(5) any release, or release and substitution, of property subject to the lien of the indenture (and the consideration therefor, if any) which it has not previously reported;*

*(6) any additional issue of indenture securities which it has not previously reported; and*

*(7) the material steps taken in the performance of its duties under the indenture which it has not previously reported.*

*(b) The indenture to be qualified shall also contain provisions requiring the indenture trustee to transmit to the indenture security holders as hereinafter provided, within the times hereinafter specified, a brief report with respect to—*

*(1) the release, or release and substitution of property subject to the lien of the indenture (and the consideration therefor, if any) unless, in the application therefor, such property is certified to have a fair value of less than 10 per centum of the principal amount of indenture securities outstanding at the time of such release, or such release and substitution, such report to be so transmitted within ninety days after such time; and*

*(2) the character and amount of any advances made by the indenture trustee as such since the date of the last report transmitted pursuant to the provisions of subsection (a) (or if no such report has yet been so transmitted, since the date of execution of the indenture), for the reimbursement of which it claims or may claim a lien or charge, prior to that of the indenture securities, on the trust estate or on property or funds held or collected by it as such trustee, and which it has not previously reported pursuant to this paragraph, if such advances remaining unpaid at any time aggregate more than 10 per centum of the principal amount of indenture securities outstanding at such time, such report to be so transmitted within ninety days after such time.*

*(c) The indenture to be qualified shall also provide that reports pursuant to this section shall be transmitted by mail—*

*(1) to all registered holders of indenture securities, as the names and addresses of such holders appear upon the registration books of the obligor;*

*(2) to such holders of indenture securities as have, within the two years preceding such transmission, filed their names and addresses with the trustee for that purpose; and*

*(3) except in the case of reports pursuant to subsection (b) of this section, to all holders of indenture securities whose names and addresses have been furnished to or received by the indenture trustee pursuant to section 312.*

*(d) The indenture to be qualified shall also provide that a copy of each such report shall, at the time of such transmission to indenture security holders, be filed with each stock exchange upon which the indenture securities are listed, and also with the Commission.*

86                    TRUST INDENTURE BILL OF 1939

*REPORTS BY OBLIGOR*

SEC. 314. (a) *The indenture to be qualified shall contain provisions requiring each obligor—*

(1) *to file with the trustee and the Commission, in accordance with such rules and regulations as the Commission may from time to time prescribe as necessary or appropriate in the public interest or for the protection of investors, having due regard to the nature of such obligor's business, the type of indenture, and the amount of indenture securities outstanding thereunder, (A) such of the supplementary and periodic information, documents, and reports which may be required pursuant to section 13 of the Securities and Exchange Act of 1934 in respect of a security listed and registered on a national securities exchange, as may be prescribed in such rules and regulations, and (B) such additional information with respect to the performance by such obligor of its obligations under the indenture, as may be prescribed in such rules and regulations; and*

(2) *to transmit to the indenture security holders, in the manner and to the extent provided in subsection (c) of section 313, such summaries of any information, documents, and reports required pursuant to the provisions of paragraph (1) of this subsection as may be prescribed in such rules and regulations.*

(b) *Such rules and regulations may be adopted either before or after qualification becomes effective as to such indenture.*

*DUTIES AND RESPONSIBILITY OF THE TRUSTEE*

*Duties Prior to Default*

SEC. 315. (a) *The indenture to be qualified shall contain provisions imposing upon the indenture trustee such specific duties and obligations prior to default (as such term is defined in such indenture) as are consistent with the duties and obligations which a prudent man would assume and perform prior to such a default if he were trustee under such an indenture, including, without limitation, action in respect of the following matters—*

(1) *the recording, re-recording, filing, and refiling of the indenture;*

(2) *the application of the indenture securities and the proceeds thereof to the purposes specified in the indenture;*

(3) *the existence of or compliance with all conditions precedent to the authentication and delivery of the indenture securities, to the release or substitution of any property subject to the lien of the indenture, to the satisfaction and discharge of the indenture, and to any other action by the trustee under the indenture; and*

(4) *the performance by the obligor of such of its other obligations under the indenture as the Commission deems necessary or appropriate in the public interest or for the protection of investors.*

*The indenture to be qualified shall also contain provisions requiring the obligor to provide the indenture trustee with such information, such opinions and certificates of attorneys, accountants, and other experts, and such other documents, as the Commission may deem necessary or appropriate to enable the trustee to perform, or to facilitate its performance of, the duties and obligations imposed upon it pursuant to this subsection.*

*Notice of Defaults*

(b) *The indenture to be qualified shall contain provisions requiring the trustee to give to the indenture security holders, at such time and in such manner as the Commission may deem adequate, having due regard to the public interest and the protection of investors, notice of all defaults known to the trustee: Provided, That such indenture may provide, except in the case of defaults (to be specified in the indenture) of which the Commission deems it necessary or appropriate in the public interest or for the protection of investors that prompt notice be given that the trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors and/or responsible officers, of the trustee in good faith determine that the withholding of such notice is in the interests of the indenture security holders.*

*Duties of the Trustee in Case of Default*

(c) *The indenture to be qualified shall contain provisions requiring the indenture trustee to exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise under the circumstances if he were a fiduciary.*

*Responsibility of the Trustee*

(d) *The indenture to be qualified shall not contain any provisions relieving the indenture trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that—*

(1) *such indenture may provide that, prior to default (as such term is defined in such indenture), the indenture trustee shall not be liable except for the performance of such duties as are specifically set out in such indenture;*

(2) *the Commission shall permit the inclusion in such indenture of one or more provisions authorizing the indenture trustee conclusively to rely, as to the truth of the statements and the correctness of the opinions contained therein, in the absence of bad faith on the part of such trustee, upon opinions or certificates of attorneys, accountants, or other experts, and, when authorized by such indenture, upon opinions or certificates of specified officers of the obligor, subject, in the case of any such provision, to such requirements with respect to (A) independence and qualifications of such attorneys, accountants, and experts, (B) the exercise by such trustee of reasonable care in their selection or approval, and (C) the recitals, to be expressed in any such certificate or opinion, as to the nature and scope of the examination or investigation upon which the statements or opinions contained therein are based, as the Commission may deem necessary or appropriate in the public interest or for the protection of investors, having due regard to the nature of the matter with respect to which such opinion or certificate is to be received, the amount involved, and the amount of indenture securities issued and issuable under such indenture;*

(3) *the indenture to be qualified may contain provisions protecting the indenture trustee from liability for any error of judgment made in good faith by a responsible officer or officers of such trustee, unless it shall be proved that such trustee was negligent in ascertaining the pertinent facts; and*

(4) *the indenture to be qualified may contain provisions protecting the indenture trustee with respect to any action taken by it in good faith in accordance with the direction of the holders of not less than a majority in principal amount of the indenture securities at the time outstanding (determined as provided in subsection (a) of section 316) relating to the method and place of conducting proceedings at law or in equity for any remedy under such indenture.*

*Undertaking for Costs*

(e) *The indenture to be qualified may contain provisions to the effect that all parties thereto, including the indenture security holders, agree that the court may in its discretion require, in any suit for the enforcement of any right or remedy under such indenture, or in any suit against the trustee for any action taken or omitted by it as trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, and that such court may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant. Provided, That the provisions of this subsection shall not apply to any suit instituted by such trustee, to any suit instituted by any indenture security holder, or group of indenture security holders, holding in the aggregate more than 10 per centum in principal amount of the indenture securities outstanding, or to any suit instituted by any indenture security holder for the enforcement of the payment of the principal of or interest on any indenture security, on or after the respective due dates expressed in such indenture security.*

DIRECTIONS AND WAIVERS BY BONDHOLDERS; PROHIBITION OF IMPAIRMENT OF HOLDER'S RIGHT TO PAYMENT

Sec. 316. (a) *The indenture to be qualified may contain provisions authorizing the holders of not less than a majority in principal amount of the indenture securities at the time outstanding—*

(1) *to direct the method and place of conducting all proceedings at law or in equity for any remedy under such indenture: or*

(2) *on behalf of the holders of all such indenture securities, to consent to the postponement of any interest payments for a period not exceeding one year from its due date, or to the waiver of any past default and its consequences.*

For the purposes of this subsection, in determining whether the holders of the required principal amount of indenture securities have concurred in any such direction or consent, indenture securities owned by any obligor, or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with any

*obligor, shall be disregarded, except that for the purposes of determining whether the indenture trustee shall be protected in relying on any such direction or consent, only indenture securities which such trustee knows are so owned shall be so disregarded.*

*(b) The indenture to be qualified shall provide that, notwithstanding any other provision thereof, the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, on or after the respective due dates expressed in such indenture security, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such holder, except as to a postponement of an interest payment consented to as provided in subsection (a).*

#### SPECIAL POWERS OF TRUSTEES; DUTIES OF PAYING AGENTS

*SEC. 317. (a) The indenture to be qualified shall contain provisions—*

*(1) authorizing the indenture trustee, in the case of a default in payment of the principal of any indenture security, when and as the same shall become due and payable, or in the case of a default in payment of the interest on any such security, when and as the same shall become due and payable and the continuance of such default for such period as may be prescribed in such indenture, to recover judgment, in its own name and as trustee of an express trust, against the obligor for the whole amount of such principal and interest remaining unpaid; and*

*(2) authorizing such trustee to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of such trustee and of the indenture security holders allowed in any judicial proceedings relative to the obligor, its creditors, or its property.*

*(b) The indenture to be qualified shall provide that each paying agent shall hold in trust for the benefit of the indenture security holders or the indenture trustee all sums held by such paying agent for the payment of the principal of or interest on the indenture securities, and shall give to such trustee notice of any default by any obligor in the making of any such payment.*

#### DISCLOSURE OF EFFECT OF CERTAIN INDENTURE PROVISIONS

*SEC. 318. (a) The written statement required by subsection (b) of section 305 shall contain—*

*(1) the analysis, set forth in the application for qualification of the indenture, of the effect of any provisions of such indenture with respect to (A) the definition of what shall constitute a default under such indenture, (B) the release, or release and substitution, of any property subject to the lien of such indenture, and (C) the issuance of additional securities under such indenture, together with such supplementary analysis, prepared by the Commission, with respect to such provisions, as the Commission may by order prescribe, as necessary or appropriate in the public interest or for the protection of investors; or*

*(2) if the Commission so prescribes by order, as necessary or appropriate in the public interest or for the protection of investors, an analysis, prepared by the Commission, of the effect of such provisions of such indenture, in lieu of any analysis required under the provisions of paragraph (1) of this subsection.*

*(b) A prospectus relating to any such security which is registered under the Securities Act of 1933, and which has been or is to be issued under an indenture as to which an application for qualification is effective, shall include such written statement as though such inclusion were required by the provisions of section 10 of such Act.*

*(c) The provisions of sections 11, 12, 17, and 24 of the Securities Act of 1933, and the provisions of sections 323 and 325 of this title, shall not apply to statements in or omissions from any such written statement.*

#### RULES, REGULATIONS, AND ORDERS

*SEC. 319. (a) The Commission shall have authority from time to time to make, issue, amend, and rescind such rules and regulations and such orders as it may deem necessary or appropriate in the public interest or for the protection of investors to carry out the provisions of this title, including rules and regulations defining accounting, technical, and trade terms used in this title.   Among other things, the Commission shall have authority, (1) by rules and regulations, to prescribe for the purposes of section 310 (b) the method (to be fixed in indentures to be qualified under this title) of calculating percentages of voting securities and other securities; (2) by rules and regulations, to prescribe the definitions of the terms "cash transaction" and "self-liquidating paper" which shall be included in indentures to be qualified under this title, which definitions shall include such of the creditor relationships referred to in*

TRUST INDENTURE BILL OF 1939    **89**

*paragraphs (4) and (6) of subsection (b) of section 311 as to which the Commission determines that the application of subsection (a) of such section is not necessary in the public interest or for the protection of investors, having due regard for the purposes of such subsection: and (3) for the purposes of this title, to prescribe the form or forms in which information required in any statement, application, report, or other document filed with the Commission shall be set forth. For the purpose of its rules or regulations the Commission may classify persons, securities, and other matters within its jurisdiction and prescribe different requirements for different classes of persons, securities, or matters.*

*(b) Subject to the provisions of the Federal Register Act and regulations prescribed under the authority thereof, the rules and regulations of the Commission under this title shall be effective upon publication in the manner which the Commission shall prescribe, or upon such later date as may be provided in such rules and regulations.*

*(c) No provision of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or order of the Commission, notwithstanding that such rule, regulation, or order may, after such act or omission be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.*

### HEARINGS BY COMMISSION

*SEC. 320. Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.*

### SPECIAL POWERS OF THE COMMISION

*SEC. 321. (a) For the purpose of any investigation or any other proceeding which, in the opinion of the Commission, is necessary and proper for the enforcement of this title, any member of the Commission, or any officer thereof designated by it, is empowered to administer oaths and affirmations, subpena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, contracts, agreements, or other records which the Commission deems relevant or material to the inquiry. Such attendance of witnesses and the production of any such books, papers, correspondence, memoranda, contracts, agreements, or other records may be required from any place in the United States or in any Territory at any designated place of investigation or hearing. In addition, the Commission shall have the powers with respect to investigations and hearings, and with respect to the enforcement of, and offenses and violations under, this title and rules and regulations and orders prescribed under the authority thereof, provided in sections 20, 22 (b), and 22 (c), of the Securities Act of 1933.*

*(b) The Treasury Department, the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Reserve Banks, and the Federal Deposit Insurance Corporation are hereby authorized, under such conditions as they may prescribe, to make available to the Commission such reports, records, or other information as they may have available with respect to trustees or prospective trustees under indentures for which applications for qualification have been filed with the Commission, and to make through their examiners or other employees for the use of the Commission, examinations of such trustees or prospective trustees. Every such trustee or prospective trustee shall, as a condition precedent to qualification under such indenture, consent that reports of examinations by Federal, State, Territorial, or District authorities may be furnished by such authorities to the Commission upon request therefor.*

*Notwithstanding any provision of this title, no report, record, or other information made available to the Commission under this subsection, no report of an examination made under this subsection for the use of the Commission, no report of an examination made of any trustee or prospective trustee by any Federal, State, Territorial, or District authority having jurisdiction to examine or supervise such trustee, no report made by any such trustee or prospective trustee to any such authority, and no correspondence between any such trustee and any such authority and any such trustee or prospective trustee shall be divulged or made known or available by the Commission or any member, officer, agent, or employee thereof, to any person other than a member, officer, agent, or employee of the Commission: Provided, That the Commission may make available to the Attorney General of the United States, in confidence, any information obtained from such records, reports of examination, other reports, or correspondence, and deemed necessary by the Commission, or requested by him, for the purpose of enabling him to perform his duties under this title.*

*(c) Any investigation of a prospective trustee, or any proceeding or requirement for the purpose of obtaining information regarding a prospective trustee, under any provision of this title, shall be limited—*

> *(1) to determining whether such prospective trustee is qualified to act as trustee under the provisions of subsection (b) of section 310;*
>
> *(2) to requiring the inclusion in the application of information with respect to the eligibility of such prospective trustee under paragraph (1) of subsection (a) of such section 310; and*
>
> *(3) to requiring the inclusion in the application of the most recent published report of condition of such prospective trustee, as described in paragraph (2) of such subsection (a), or, if the indenture does not contain the provision with respect to combined capital and surplus authorized by the last sentence of paragraph (2) of subsection (a) of such section 310, to determining whether such prospective trustee is eligible to act as such under such paragraph (2).*

### COURT REVIEW OF ORDERS; JURISDICTION OF OFFENSES AND SUITS

*SEC. 322. (a) Orders of the Commission under this title (including orders pursuant to the provisions of section 308) shall be subject to review in the same manner, upon the same conditions, and to the same extent, as provided in section 9 of the Securities Act of 1933, with respect to orders of the Commission under such Act.*

*(b) Jurisdiction of offenses and violations under, and jurisdiction and venue of suits and actions brought to enforce any liability created by, this title, or any rules or regulations or orders prescribed under the authority thereof, shall be as provided in section 22 (a) of the Securities Act of 1933.*

### LIABILITY FOR MISLEADING STATEMENTS

*SEC. 323. (a) Any person who shall make or cause to be made any statement in any application, report, or document filed with the Commission pursuant to any provisions of this title, or any rule, regulation, or order thereunder, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, or who shall omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall be liable to any person (not knowing that such statement was false or misleading or of such omission) who, in reliance upon such statement or omission, shall have purchased or sold a security issued under the indenture to which such application, report or document relates, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading or of such omission. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit and assess reasonable costs, including reasonable attorneys' fees, against either party litigant, having due regard to the merits and good faith of the suit or defense. No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued.*

*(b) The rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist under the Securities Act of 1933, or the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, or otherwise at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this title shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of.*

### UNLAWFUL REPRESENTATIONS

*SEC. 324. It shall be unlawful for any person in issuing or selling any security to represent or imply in any manner whatsoever that any action or failure to act by the Commission in the administration of this title means that the Commission has in any way passed upon the merits of, or given approval to, any trustee, indenture or security, or any transaction or transactions therein, or that any such action or failure to act with regard to any statement or report filed with or examined by the Commission pursuant to this title or any rule, regulation, or order thereunder, has the effect of a finding by the Commission that such statement or report is true and accurate on its face or that it is not false or misleading.*

## TRUST INDENTURE BILL OF 1939

### PENALTIES

*Sec. 325. Any person who willfully violates any provision of this title or any rule, regulation, or order thereunder, or any person who willfully, in any application, report, or document filed or required to be filed under the provisions of this title or any rule, regulation, or order thereunder, makes any untrue statement of a material fact or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $5,000 or imprisoned not more than five years, or both.*

### EFFECT ON EXISTING LAW

*Sec. 326. Except as otherwise expressly provided, nothing in this title shall affect (1) the jurisdiction of the Commission under the Securities Act of 1933, or the Securities Exchange Act of 1934, or the Public Utility Holding Company Act of 1935, over any person, security, or contract, or (2) the rights, obligations, duties, or liabilities of any person under such Acts; nor shall anything in this title affect the jurisdiction of any other commission, board, agency, or officer of the United States or of any State or political subdivision of any State, over any person or security, insofar as such jurisdiction does not conflict with any provision of this title or any rule, regulation, or order thereunder.*

### CONTRARY STIPULATIONS VOID

*Sec. 327. Any condition, stipulation, or provision binding any person to waive compliance with any provision of this title or with any rule, regulation, or order thereunder shall be void.*

### SEPARABILITY OF PROVISIONS

*Sec. 328. If any provision of this title or the application of such provision to any person or circumstance shall be held invalid, the remainder of the title and the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby.*

O