# Exhibit C

# EXHIBIT 1

**LANDRY'S RESTAURANTS, INC.,**

*as Issuer,*

**The Subsidiary Guarantors,**

*as Guarantors,*

and

**Wachovia Bank, National Association**

*as Trustee.*

**Indenture**

**Dated as of December 28, 2004**

**7.50% Senior Notes due 2014**

NYDOCS01/1026382.13

ARTICLE FOUR

COVENANTS

Section 4.01.    *Payment of Notes.*

The Company shall pay the principal of, premium, if any, and interest on, the Notes on the dates and in the manner provided in the Notes and this Indenture. Principal, premium, if any, and interest shall be considered paid on the date due if the Trustee or Paying Agent holds (or segregates if the Company is the Paying Agent), as of 10:00 a.m. Eastern Time, on that date money deposited by the Company designated for and sufficient to pay all principal, premium, if any, and interest then due. Reference in this Indenture and the Notes to "interest" with respect to the Notes shall include any additional interest that accrues on the Notes as a result of the provisions of the Registration Rights Agreement, which additional interest on the Notes shall be due and payable as provided by the Registration Rights Agreement.

The Company shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal, and premium, if any, at the rate borne by the Notes to the extent lawful; and it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (without regard to any applicable grace period) at the same rate to the extent lawful. Interest shall be computed on the basis of a 360-day year of twelve 30-day months.

Section 4.02.    *Commission Reports.*

(a)    Whether or not required by the Commission, so long as any Notes are outstanding, the Company shall furnish to the Trustee, within the time periods specified in the Commission's rules and regulations:

(1)    all quarterly and annual financial information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K if the Company were required to file such Forms, including a "Management's Discussion and Analysis of Financial Condition and Results of Operations" and, with respect to the annual information only, a report on the annual financial statements by the Company's certified independent accountants; and

(2)    all current reports that would be required to be filed with the Commission on Form 8-K if the Company were required to file such reports.

In addition, whether or not required by the Commission, the Company shall file a copy of all of the information and reports referred to in clauses (1) and (2) above with the Commission for public availability within the time periods specified in the Commission's rules and regulations (unless the Commission will not accept such a filing) and make such information available to prospective investors upon request. In addition, for so long as any Notes remain outstanding, the Company and the Subsidiary Guarantors shall furnish to the Holders and to prospective investors, upon their request, the information required to be delivered pursuant to Rule 144A(d)(4) under the Securities Act.

(b)    If the Company has designated any of its Subsidiaries as Unrestricted Subsidiaries, then the quarterly and annual financial information required by the preceding paragraph shall include a reasonably detailed presentation, either on the face of the financial statements or in the footnotes thereto, and in "Management's Discussion and Analysis of Financial Condition and Results of Operations," of the financial condition and results of operations of the Company and its Restricted Subsidiaries separate from the financial condition and results of operations of the Unrestricted Subsidiaries of the Company with substantially the same format and level of detail as is required by Rule 3-10 of Regulation S-X, promulgated pursuant to the Securities Act (as such Regulation may be

NYDOCS01/1026382.13                31

amended), with respect to the Company and the Subsidiary Guarantors separate from the Company's Subsidiaries that are not Subsidiary Guarantors.

(c)     Delivery of such reports, information, and documents to the Trustee pursuant to the provisions of this Section 4.02 is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Company's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

Section 4.03.     *Compliance Certificates.*

(a)     The Company (and each Subsidiary Guarantor to the extent that such Subsidiary Guarantor is so required under the TIA) shall deliver to the Trustee, within 90 days after the end of each fiscal year, an Officers' Certificate stating that a review of the activities of the Company and its Subsidiaries (or such Subsidiary Guarantor and its Subsidiaries) during the preceding fiscal year has been made under the supervision of the signing Officers with a view to determining whether the Company (or such Subsidiary Guarantor) has kept, observed, performed and fulfilled its obligations under this Indenture, and further stating, as to each such Officer signing such certificate, that to the best of his or her knowledge, the Company (or such Subsidiary Guarantor) has kept, observed, performed and fulfilled its obligations under this Indenture and is not in default in the performance or observance of any of the terms, provisions and conditions of this Indenture (or, if a Default or Event of Default shall have occurred, describing all such Defaults or Events of Default of which he or she may have knowledge and what action the Company (or such Subsidiary Guarantor) is taking or proposes to take with respect thereto) and that to the best of his or her knowledge no event has occurred and remains in existence by reason of which payments on account of the principal of or interest, if any, on the Notes is prohibited or if such event has occurred, a description of the event and what action the Company (or such Subsidiary Guarantor) is taking or proposes to take with respect thereto.

So long as not contrary to the then current recommendations of the American Institute of Certified Public Accountants, the year-end financial statements delivered pursuant to Section 4.02 shall be accompanied by a written statement of the Company's independent public accountants (who shall be a firm of established national reputation) that in making the examination necessary for certification of such financial statements, nothing has come to their attention that would lead them to believe that the Company has violated any provisions of Article Four or Article Five hereof or, if any such violation has occurred, specifying the nature and period of existence thereof, it being understood that such accountants shall not be liable directly or indirectly to any Person for any failure to obtain knowledge of any such violation.

(b)     The Company shall, so long as any of the Notes are outstanding, deliver to the Trustee, forthwith upon any Officer becoming aware of any Default or Event of Default, an Officers' Certificate specifying such Default or Event of Default and what action the Company is taking or proposes to take with respect thereto.

Section 4.04.     *Maintenance of Office or Agency.*

The Company shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Notes may be surrendered for registration of transfer or exchange or for presentation for payment and where notices and demands to or upon the Company in respect of the Notes and this Indenture may be served. The Company initially designates the Trustee, at the Corporate Trust Office of the Trustee to be its agent for purposes of the preceding sentence. The Company shall give prompt written notice to the Trustee of any change in the location of such office or agency. If at any time the Company shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee.

The Company may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such designations; *provided* that no such designation or rescission shall in any manner relieve the Company of its obligation to maintain an office or agency in the Borough of Manhattan, The City of New York, for such purposes. The Company shall

give prompt written notice to the Trustee of any such designation or rescission and of any change in the location of any such other office or agency.

Section 4.05.    *Corporate Existence.*

Subject to the provisions of Article Five of this Indenture, the Company shall do, or cause to be done all things necessary to preserve and keep in full force and effect its corporate existence and the corporate, partnership or other existence of each Restricted Subsidiary and all rights (charter and statutory) and franchises of the Company and the Restricted Subsidiaries; *provided* that the Company shall not be required to preserve the existence of any Restricted Subsidiary, or any such right or franchise, if the Board of Directors of the Company shall determine that the preservation thereof is no longer desirable in the conduct of the business of the Company and its Restricted Subsidiaries taken as a whole and that the loss thereof would not reasonably be expected to have a material adverse effect on the ability of the Company to perform its obligations hereunder; and *provided further*, that the foregoing shall not prohibit a sale, transfer or conveyance of a Restricted Subsidiary or any of its assets in compliance with the terms of this Indenture.

Section 4.06.    *Waiver of Stay, Extension or Usury Laws.*

Each of the Company and each of the Subsidiary Guarantors covenants (to the extent that it may lawfully do so) that it shall not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay, extension or usury law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and each of the Company and each of the Subsidiary Guarantors (to the extent that it may lawfully do so), hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not, by resort to any such law, hinder, delay or impede the execution of any power herein granted to the Trustee, but shall suffer and permit the execution of every such power as though no such law has been enacted.

Section 4.07.    *Payment of Taxes and Other Claims.*

The Company shall pay, and shall cause each of its Subsidiaries to pay, prior to delinquency, any material taxes, assessments, and governmental levies except such as are contested in good faith and by appropriate proceedings or where the failure to effect such payment is not adverse in any material respect to the Holders.

Section 4.08.    *Business Activities.*

The Company shall not, and shall not permit any Restricted Subsidiary to, engage in any business other than Permitted Businesses, except to such extent as would not be material to the Company and its Restricted Subsidiaries taken as a whole.

Section 4.09.    *Limitation on Incurrence of Additional Indebtedness and Issuance of Preferred Stock.*

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, incur any Indebtedness (including Acquired Debt), and the Company shall not permit any of its Restricted Subsidiaries to issue any preferred stock; *provided, however*, that the Company and any Subsidiary Guarantor may incur Indebtedness (including Acquired Debt), if the Fixed Charge Coverage Ratio for the Company's most recently ended four full fiscal quarters for which internal financial statements are available immediately preceding the date on which such additional Indebtedness is incurred would have been at least 2.25 to 1, determined on a pro forma basis (including a pro forma application of the net proceeds therefrom), as if the additional Indebtedness had been incurred at the beginning of such four-quarter period.

The first paragraph of this Section 4.09 shall not prohibit the incurrence of any of the following items of Indebtedness (collectively, "*Permitted Debt*"):

(1)    the incurrence by the Company or any Subsidiary Guarantor of Indebtedness under the Credit Agreement in an aggregate principal amount at any one time outstanding (with letters of credit being deemed to have a principal amount equal to the maximum potential liability of the Company and its Restricted Subsidiaries thereunder) not to exceed $400.0 million, less the aggregate amount of all Net Proceeds of Asset Sales applied by the Company or any Restricted Subsidiary to permanently repay any Indebtedness incurred pursuant to this clause (1) (and, in the case of any revolving credit Indebtedness, to effect a corresponding commitment reduction thereunder) pursuant to Section 4.11 hereof;

(2)    Existing Indebtedness;

(3)    the incurrence by the Company and the Subsidiary Guarantors of Indebtedness represented by the Notes and the related Subsidiary Guarantees to be issued on the date hereof and the Exchange Notes and the related Subsidiary Guarantees to be issued pursuant to the Registration Rights Agreement;

(4)    the incurrence by the Company or any Subsidiary Guarantor of Indebtedness represented by Capital Lease Obligations, mortgage financings or purchase money obligations, in each case, incurred for the purpose of financing all or any part of the purchase price or cost of construction or improvement of property, plant or equipment used in the business of the Company or such Subsidiary Guarantor, in an aggregate principal amount, including all Permitted Refinancing Indebtedness incurred to refund, refinance or replace any Indebtedness incurred pursuant to this clause (4), not to exceed $25.0 million at any time outstanding;

(5)    the incurrence by the Company or any Restricted Subsidiary of the Company of Permitted Refinancing Indebtedness in exchange for, or the net proceeds of which are used to renew, refund, refinance, replace, defease or discharge Indebtedness (other than intercompany Indebtedness) that was permitted by this Indenture to be incurred under the first paragraph of this Section 4.09 or clauses (2), (3), (4), (5) or (8) of this paragraph;

(6)    the incurrence by the Company or any of its Restricted Subsidiaries of intercompany Indebtedness owing to and held by the Company or any of its Wholly Owned Restricted Subsidiaries; provided, however, that:

(a)    if the Company or any Subsidiary Guarantor is the obligor on such Indebtedness, such Indebtedness must be unsecured and expressly subordinated to the prior payment in full in cash of all Obligations with respect to the Notes, in the case of the Company, or the Subsidiary Guarantee, in the case of a Subsidiary Guarantor;

(b)    (i) any subsequent issuance or transfer of Equity Interests that results in any such Indebtedness being held by a Person other than the Company or a Wholly Owned Restricted Subsidiary thereof and (ii) any sale or other transfer of any such Indebtedness to a Person that is not either the Company or a Wholly Owned Restricted Subsidiary thereof, shall be deemed, in each case, to constitute an incurrence of such Indebtedness by the Company or such Restricted Subsidiary, as the case may be, that was not permitted by this clause (6); and

(c)    Indebtedness owed to the Company or any Subsidiary Guarantor must be evidenced by an unsubordinated promissory note, unless the obligor under such Indebtedness is the Company or a Subsidiary Guarantor;

(7)    the Guarantee by the Company or any Subsidiary Guarantor of Indebtedness of the Company or a Restricted Subsidiary of the Company that was permitted to be incurred by another provision of this covenant; provided that, if the Indebtedness being guaranteed is subordinated to or pari passu with the Notes, then the Guarantee shall be subordinated or pari passu to the same extent as the Indebtedness Guaranteed;

(8)    the incurrence by the Company or any Subsidiary Guarantor of additional Indebtedness in an aggregate principal amount (or accreted value, as applicable) at any time outstanding, including all Permitted Refinancing Indebtedness incurred to refund, refinance or replace any Indebtedness incurred pursuant to this clause (8), not to exceed $25.0 million;

(9)    (i) Indebtedness of the Company or any of its Restricted Subsidiaries under agreements providing for indemnification, adjustment of purchase price or similar obligations, or Guarantees or letters of credit, surety bonds or performance bonds securing any obligations of the Company or any of its Restricted Subsidiaries pursuant to such agreements, in any case incurred in connection with the acquisition or disposition of any business or assets, so long as the principal amount does not exceed the gross proceeds actually received by the Company or any Restricted Subsidiary in connection with such disposition, (ii) Indebtedness of the Company of any its Restricted Subsidiaries represented by letters of credit for the account of the Company or such Restricted Subsidiary, as the case may be, issued in the ordinary course of business of the Company or such Restricted Subsidiary to provide security for workers' compensation claims or payment obligations in connection with self-insurance or similar requirements in the ordinary course of business and other Indebtedness with respect to worker's compensation claims, self-insurance obligations, bankers', acceptances, performance, surety and similar bonds and completion guarantees provided by the Company or any of its Restricted Subsidiaries in the ordinary course of business, (iii) the incurrence by the Company or any of its Restricted Subsidiaries of Indebtedness arising from the honoring by a bank or other financial institution of a check, draft or similar instrument drawn against insufficient funds in the ordinary course of business, *provided, however,* that such Indebtedness is extinguished within five Business Days of its incurrence and (iv) the incurrence by the Company of Indebtedness to the extent that the net proceeds thereof are promptly deposited to defease or to satisfy and discharge the Notes;

(10)    Indebtedness of the Company, to the extent that the net proceeds thereof are promptly deposited to defease the Notes in accordance with the provisions of Article Eight herein; and

(11)    Indebtedness of a Restricted Subsidiary incurred and outstanding on or prior to the date on which such Restricted Subsidiary was acquired by the Company (other than Indebtedness or Capital Stock incurred in connection with, or to provide all or any portion of the funds or credit support utilized to consummate, the transaction or series of related transactions pursuant to which such Restricted Subsidiary became a Restricted Subsidiary or was acquired by the Company) and Permitted Refinancing Indebtedness incurred in respect thereof; *provided, however,* that after giving effect to the incurrence of such Indebtedness, the Company would be able to incur an additional $1.00 of Indebtedness pursuant to the first paragraph of this Section 4.09.

For purposes of determining compliance with this Section 4.09, if any proposed Indebtedness meets the criteria of more than one of the categories of Permitted Debt described in clauses (1) through (11) above, or is entitled to be incurred pursuant to the first paragraph of this Section 4.09, the Company shall be permitted to divide and classify an item of Indebtedness in more than one of the types of Indebtedness described above on the date of its incurrence, or later reclassify all or a portion of such item of Indebtedness in any manner that complies with this Section 4.09. Indebtedness under the Credit Agreement outstanding on the date on which Notes are first issued under this Indenture shall be deemed to have been incurred on such date in reliance on the exception provided by clause (1) of the definition of Permitted Debt.

Notwithstanding any other provision of this Section 4.09, the maximum amount of Indebtedness that may be incurred pursuant to this Section 4.09 shall not be deemed to be exceeded with respect to any outstanding Indebtedness due solely to the result of fluctuations in the exchange rates of currencies.

Section 4.10.    *Limitation on Restricted Payments.*

(a)    The Company shall not, and shall not permit any of its Restricted Subsidiaries (or, in the case of clause (3) below, any Subsidiary of the Company) to, directly or indirectly:

(1) declare or pay any dividend or make any other payment or distribution on account of the Company's or any of its Restricted Subsidiaries' Equity Interests (including, without limitation, any payment in connection with any merger or consolidation involving the Company or any of its Restricted Subsidiaries) or to the direct or indirect holders of the Company's or any of its Restricted Subsidiaries' Equity Interests in their capacity as such (other than dividends or distributions payable (i) in Equity Interests (other than Disqualified Stock) of the Company or (ii) to the Company or a Restricted Subsidiary of the Company);

(2) purchase, redeem or otherwise acquire or retire for value (including, without limitation, in connection with any merger or consolidation involving the Company) any Equity Interests of the Company or any Subsidiary of the Company (other than any such Equity Interests owned by the Company or any of its Restricted Subsidiaries);

(3) make any payment on or with respect to, or purchase, redeem, defease or otherwise acquire or retire for value any Indebtedness that is subordinated to the Notes or any Subsidiary Guarantee, except (i) a payment of interest or principal at the Stated Maturity thereof and (ii) to the extent made by an Unrestricted Subsidiary with proceeds from any Investments in such Unrestricted Subsidiary pursuant to clauses (12) or (13) of the definition of "Permitted Investments" herein; or

(4) make any Restricted Investment (all such payments and other actions set forth in clauses (1) through (4) of this Section 4.10(a) being collectively referred to as "*Restricted Payments*"),

unless, at the time of and after giving effect to such Restricted Payment:

(1) no Default or Event of Default shall have occurred and be continuing or would occur as a consequence thereof;

(2) the Company would, at the time of such Restricted Payment and after giving pro forma effect thereto as if such Restricted Payment had been made at the beginning of the applicable four-quarter period, have been permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test set forth in the first paragraph of Section 4.09; and

(3) such Restricted Payment, together with the aggregate amount of all other Restricted Payments made by the Company and its Restricted Subsidiaries after the date of this Indenture (excluding Restricted Payments permitted by clauses (2), (3), (4), (5), (11) and (12) of the next succeeding paragraph (b)), is less than the sum, without duplication, of:

(a) 50% of the cumulative Consolidated Net Income of the Company for the period (taken as one accounting period) from the beginning of the first fiscal quarter commencing after the date of this Indenture to the end of the Company's most recently ended fiscal quarter for which internal financial statements are available at the time of such Restricted Payment (or, if such Consolidated Net Income for such period is a deficit, less 100% of such deficit); *plus*

(b) 100% of (i) the aggregate net cash proceeds and (ii) the fair market value of property other than cash (*provided* that where the value of such property exceeds $10.0 million, the fair market value of such property shall be determined by the Board of Directors based upon an opinion or appraisal by an independent accounting, appraisal or investment banking firm of national standing), in each case, received by the Company since the date of this Indenture as a contribution to its common equity capital or from the issue or sale of Equity Interests of the Company (other than Disqualified Stock) or from the issue or sale of convertible or exchangeable Disqualified Stock or convertible or exchangeable debt securities of the Company that have been converted into or exchanged for such Equity Interests (other than Equity Interests (or Disqualified Stock or debt securities) sold to a Subsidiary of the Company); *plus*

(c)     to the extent that any Restricted Investment that was made after the date of this Indenture is sold for cash or otherwise liquidated or repaid for cash, the lesser of (i) the cash return of capital with respect to such Restricted Investment (less the cost of disposition, if any) and (ii) the initial amount of such Restricted Investment; *provided, however,* that no amount shall be included under this clause (c) to the extent it is already included in Consolidated Net Income; *plus*

(d)     the net reduction in Restricted Investments in any Person resulting from dividends, loan repayments or other transfers of property to the Company or any Restricted Subsidiary; *provided* that the value attributed to any such transferred property (other than cash) pursuant to this clause (d) shall, where such value exceeds $10.0 million, be determined by the Board of Directors based upon an opinion or appraisal by an independent accounting, appraisal or investment banking firm of national standing.

(b)     So long as no Default has occurred and is continuing or would be caused thereby, the preceding provisions shall not prohibit:

(1)     the payment of any dividend within 60 days after the date of declaration thereof, if at said date of declaration such payment would have complied with the provisions of this Indenture;

(2)     the redemption, repurchase, retirement, defeasance or other acquisition of any subordinated Indebtedness of the Company or any Subsidiary Guarantor or of any Equity Interests of the Company in exchange for, or out of the net cash proceeds of the substantially concurrent sale (other than to a Subsidiary of the Company) of, Equity Interests of the Company (other than Disqualified Stock); *provided* that the amount of any such net cash proceeds that are utilized for any such redemption, repurchase, retirement, defeasance or other acquisition shall be excluded from clause (3)(b) of the preceding paragraph (a);

(3)     the defeasance, redemption, repurchase or other acquisition of subordinated Indebtedness of the Company or any Subsidiary Guarantor with the net cash proceeds from an incurrence of Permitted Refinancing Indebtedness;

(4)     the payment of any dividend by a Restricted Subsidiary of the Company to the holders of its common Equity Interests on a pro rata basis;

(5)     Investments acquired as a capital contribution to, or in exchange for, or out of the net cash proceeds of a substantially concurrent offering of, Capital Stock (other than Disqualified Stock) of the Company; *provided* that the amount of any such net cash proceeds that are utilized for any such acquisition or exchange shall be excluded from clause (3)(b) of the preceding paragraph (a);

(6)     the repurchase of Capital Stock deemed to occur upon the exercise of options or warrants if such Capital Stock represents all or a portion of the exercise price thereof;

(7)     dividends paid on shares of Disqualified Stock of the Company issued in accordance with Section 4.09 hereof;

(8)     the payment of any dividends by the Company on outstanding shares of its Common Stock in an aggregate amount not to exceed $12.75 million in any twelve-month period;

(9)     the repurchase, redemption or other acquisition for value by the Company of shares of its Common Stock during the twelve months following the Issue Date; *provided* that the aggregate consideration paid for all such repurchased, redeemed or acquired shares of Common Stock of the Company shall not exceed $25.0 million; *provided further* that at the time of each such repurchase, redemption or other acquisition the Consolidated Cash Flow of the Company for the preceding four fiscal quarters for which internal quarterly financial statements are available is not less than $146.0 million;

(10)    the repurchase, redemption or other acquisition or retirement for value of any Equity Interests of the Company held by any current or former employee or director of the Company (or any of its Restricted Subsidiaries) pursuant to the terms of any employee equity subscription agreement, stock option agreement or similar agreement entered into in the ordinary course of business, the aggregate purchase price paid (excluding the cancellation of debt owing by such individual) for all such repurchased, redeemed, acquired or retired Equity Interests in any calendar year to be in an amount not to exceed $1.5 million; *provided* that the Company may carry over and make in subsequent calendar years, in addition to the $1.5 million permitted hereunder for such calendar year, the amount of such repurchases, redemptions, acquisitions or retirements for value permitted to be made, but not made, in any preceding calendar years; *provided further* that the Company may, with respect to any such repurchases, redemptions, acquisitions or retirements for value of Equity Interests held by Tilman J. Fertitta to be made in any one calendar year, aggregate the $1.5 million amount available to the Company with respect to each calendar year under this clause (10) from the Issue Date through the final maturity of the Notes and apply all or a portion of such aggregate amount (less the aggregate purchase price of all repurchases, redemptions, acquisitions or retirements for value made in any previous calendar year pursuant to this clause (10)) to repurchases, redemptions, acquisitions or retirements for value of Equity Interests held by the Company's Chief Executive Officer to be made in such calendar year; .

(11)    the repurchase, redemption or other acquisition or retirement for value of any outstanding Equity Interests of any of the Restricted Subsidiaries of the Company; *provided* that the aggregate purchase price paid for all such repurchased, redeemed, acquired or retired Equity Interests shall not exceed $10.0 million; *provided further* that to the extent the holder of any such Equity Interests is an Affiliate of the Company (other than a Restricted Subsidiary), such repurchase, redemption, acquisition or retirement for value complies with Section 4.14 hereof; or

(12)    other Restricted Payments not otherwise permitted pursuant to this Section 4.10 in an aggregate amount not to exceed $25.0 million.

The amount of all Restricted Payments (other than cash) shall be the fair market value on the date of the Restricted Payment of the asset(s) or securities proposed to be transferred or issued to or by the Company or such Subsidiary, as the case may be, pursuant to the Restricted Payment. The fair market value of any assets or securities that are required to be valued by this Section 4.10 shall be determined by the Board of Directors, as evidenced by a Board Resolution. The Board of Directors' determination must be based upon an opinion or appraisal issued by an independent accounting, appraisal or investment banking firm of national standing if the fair market value exceeds $10.0 million. Not later than the date of making any Restricted Payment, the Company shall deliver to the Trustee an Officers' Certificate stating that such Restricted Payment is permitted and setting forth the basis upon which the calculations required by this Section 4.10 were computed, together with a copy of any fairness opinion or appraisal required by this Indenture.

Section 4.11.    *Limitation on Sale of Assets.*

The Company shall not and shall not permit any of its Restricted Subsidiaries to, consummate an Asset Sale unless:

(1)    the Company (or the Restricted Subsidiary, as the case may be) receives consideration at the time of such Asset Sale at least equal to the fair market value of the assets or Equity Interests issued or sold or otherwise disposed of;

(2)    such fair market value shall be determined by (a) the Chief Executive Officer of the Company, where such value is less than $5.0 million and (b) the Company's Board of Directors, as evidenced by a Board Resolution, where such value is $5.0 million or greater and, in each case, such determination shall be set forth in an Officers' Certificate delivered to the Trustee; and

(3)     at least 75% of the consideration therefor received by the Company or such Restricted Subsidiary is in the form of cash, Cash Equivalents or Replacement Assets or a combination of these.  For purposes of this provision, each of the following shall be deemed to be cash:

(a)     any liabilities (as shown on the Company's or such Restricted Subsidiary's most recent balance sheet) of the Company or any Restricted Subsidiary (other than contingent liabilities and liabilities that are by their terms *pari passu* or subordinated to the Notes or any Subsidiary Guarantee and liabilities that are owed to the Company or any Affiliate of the Company) that are assumed by the transferee of any such assets pursuant to a customary written novation agreement that releases the Company or such Restricted Subsidiary from further liability; and

(b)     any securities, notes or other obligations received by the Company or any such Restricted Subsidiary from such transferee that are contemporaneously (subject to ordinary settlement periods) converted by the Company or such Restricted Subsidiary into cash (to the extent of the cash received in that conversion).

Within 360 days after the receipt of any Net Proceeds from an Asset Sale, the Company may apply such Net Proceeds at its option:

(1) .     to repay or purchase unsubordinated Secured Indebtedness and, if the Secured Indebtedness repaid is revolving credit Indebtedness, to correspondingly reduce commitments with respect thereto; or

(2)     to purchase Replacement Assets or enter into a binding agreement to do so; *provided* that such purchase is consummated or capital expenditure is completed no later than 60 days after the end of such 360-day period.

Pending the final application of any such Net Proceeds, the Company may temporarily reduce revolving credit borrowings or otherwise invest such Net Proceeds in any manner that is not prohibited by this Indenture.

Any Net Proceeds from Asset Sales that are not applied or invested as provided in the preceding paragraph shall constitute "*Excess Proceeds*."  *Within 30 days* after the aggregate amount of Excess Proceeds exceeds $10.0 million, the Company shall make an "*Asset Sale Offer*" to all Holders, and all holders of other Indebtedness that is *pari passu* with the Notes or any Subsidiary Guarantee containing provisions similar to those set forth in this Indenture with respect to offers to purchase with the proceeds of sales of assets, to purchase the maximum principal amount of Notes and such other *pari passu* Indebtedness that may be purchased out of the Excess Proceeds.  The offer price in any Asset Sale Offer shall be equal to 100% of the principal amount of the Notes purchased plus accrued and unpaid interest and additional interest, if any, to the date of purchase, and shall be payable in cash.  If any Excess Proceeds remain after consummation of an Asset Sale Offer, the Company may use such Excess Proceeds for any purpose not otherwise prohibited by this Indenture.  If the aggregate principal amount of Notes and such other *pari passu* Indebtedness tendered into such Asset Sale Offer exceeds the amount of Excess Proceeds, the Trustee shall select the Notes and such other *pari passu* Indebtedness to be purchased on a pro rata basis based on the principal amount of Notes and such other *pari passu* Indebtedness tendered. .  Upon completion of each Asset Sale Offer, the amount of Excess Proceeds shall be reset at zero.

The Asset Sale Offer shall *remain* open for a period of 20 Business Days or such longer period as may be required by applicable law. (the "*Offer Period*"). . On the Purchase Date (as defined below), the Company shall purchase the principal amount of Notes required to be purchased pursuant to the immediately preceding paragraph above (the "*Offer Amount*") or, if less than the Offer Amount has been tendered, all Notes tendered in response to the Asset Sale Offer.  Payment for any Notes so purchased shall be made in the same manner as interest payments are made.

If the Purchase Date is on or after an interest record date and on or before the related interest payment date, any accrued and unpaid interest and additional interest, if any, shall be paid to the Person in whose name a Note is

registered at the close of business on such record date, and no additional interest shall be payable to Holders who tender Notes pursuant to the Asset Sale Offer.

Within 30 days after the aggregate amount of Excess Proceeds exceeds $10.0 million, the Company shall send, by first class mail, a notice to the Trustee and each of the Holders. The notice shall contain all instructions and materials necessary to enable such Holders to tender Notes pursuant to the Asset Sale Offer. The Asset Sale Offer shall be made to all Holders. The notice, which shall govern the terms of the Asset Sale Offer, shall state:

    (1)    that the Asset Sale Offer is being made pursuant to this Section 4.11 and the length of time the Asset Sale Offer shall remain open;

    (2)    the Offer Amount, the purchase price and the purchase date (which shall be no earlier than 20 Business Days nor later than 30 Business Days from the date such notice is mailed, other than as may be required by law, the *"Purchase Date"*);

    (3)    that any Note not tendered or accepted for payment shall continue to accrue interest and additional interest, if any;

    (4)    that, unless the Company defaults in making such payment, any Note (or portion thereof) accepted for payment pursuant to the Asset Sale Offer shall cease to accrue interest and additional interest, if any, after the Purchase Date;

    (5)    that Holders electing to have a Note purchased pursuant to an Asset Sale Offer may elect to have Notes purchased in integral multiples of $1,000 only;

    (6)    that Holders electing to have a Note purchased pursuant to any Asset Sale Offer shall be required to surrender the Note, with the form entitled "Option of Holder to Elect Purchase" on the reverse of the Note completed, or transfer such Holder's interest in the Note by book-entry transfer, to the Paying Agent at the address specified in the notice at least three days before the Purchase Date;

    (7)    that Holders shall be entitled to withdraw their election if the Paying Agent receives, not later than the expiration of the Offer Period, a facsimile transmission or letter setting forth the name of the Holder, the principal amount of the Note the Holder delivered for purchase and a statement that such Holder is withdrawing his election to have such Note purchased;

    (8)    that, if the aggregate amount of Notes surrendered by Holders exceeds the Offer Amount, the Trustee shall, subject to the provisions of this Section 4.11, select the Notes to be purchased on a pro rata basis (with such adjustments as may be deemed appropriate by the Trustee so that only Notes in denominations of $1,000, or integral multiples thereof, shall be purchased); and

    (9)    that Holders whose Notes were purchased only in part shall be issued new Notes equal in principal amount to the unpurchased portion of the Notes surrendered (or transferred by book-entry transfer).

On the Purchase Date, the Company shall, to the extent lawful and subject to the provisions of this Section 4.11, accept for payment on a pro rata basis to the extent necessary, the Offer Amount of Notes (or portions thereof) tendered pursuant to the Asset Sale Offer, or if less than the Offer Amount has been tendered, all Notes tendered, and shall deliver to the Trustee an Officers' Certificate stating that such Notes (or portions thereof) were accepted for payment by the Company in accordance with the terms of this Section 4.11. The Paying Agent shall promptly (but in any case not later than three Business Days after the Purchase Date) mail or deliver to each tendering Holder an amount equal to the purchase price of Notes tendered by such Holder, as the case may be, and accepted by the Company for purchase, and the Company shall promptly issue a new Note. The Trustee, upon written request from the Company shall authenticate and mail or deliver such new Note to such Holder, in a principal amount at maturity equal to any unpurchased portion of the Note surrendered. Any Note not so accepted shall be promptly mailed or

delivered by the Company to the respective Holder thereof. The Company shall publicly announce the results of the Asset Sale Offer on the Purchase Date.

The Company shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws and regulations thereunder to the extent such laws and regulations are applicable in connection with each repurchase of Notes pursuant to an Asset Sale Offer. To the extent that the provisions of any securities laws or regulations conflict with the Asset Sales provisions of this Indenture, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under the Asset Sale provisions of this Indenture by virtue of such conflict.

Section 4.12.    *Limitation on Liens Securing Indebtedness.*

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, create, incur, assume or otherwise cause or suffer to exist or become effective any Lien of any kind (other than Permitted Liens) upon any of their property or assets, now owned or hereafter acquired, unless all payments due under this Indenture and the Notes are secured on an equal and ratable basis with (or, in the case of Indebtedness that is subordinated in right of payment to the Notes, prior to) the obligations so secured until such time as such obligations are no longer secured by a Lien.

Section 4.13.    *Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries.*

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create or permit to exist or become effective any consensual encumbrance or restriction on the ability of any Restricted Subsidiary of the Company to:

(1)    pay dividends or make any other distributions on its Capital Stock to the Company or any of its Restricted Subsidiaries, or with respect to any other interest or participation in, or measured by, its profits, or pay any indebtedness owed to the Company or any of its Restricted Subsidiaries;

(2)    make loans or advances to the Company or any of its Restricted Subsidiaries; or

(3)    sell, lease or otherwise transfer any of its properties or assets to the Company or any of its Restricted Subsidiaries.

However, the preceding restrictions shall not apply to encumbrances or restrictions existing under, by reason of or with respect to:

(1)    the Credit Agreement, Existing Indebtedness or any other agreements in effect on the date of this Indenture and any amendments, modifications, restatements, renewals, extensions, supplements, refundings, replacements or refinancings thereof, *provided* that the encumbrances and restrictions in any such amendments, modifications, restatements, renewals, extensions, supplements, refundings, replacements or refinancings are no more restrictive, taken as a whole, with respect to such dividend or other payment restrictions than those in effect on the date of this Indenture;

(2)    this Indenture, the Notes and the Subsidiary Guarantees;

(3)    applicable law;

(4)    any Person, or the property or assets of such Person, acquired by the Company or any of its Restricted Subsidiaries, existing at the time of such acquisition and not incurred in connection with or in contemplation of such acquisition, which encumbrance or restriction is not applicable to any Person or the properties or assets of any Person, other than the Person, or the property or assets of such Person, so acquired and any amendments, modifications, restatements, renewals, extensions, supplements, refundings, replacements or refinancings thereof, *provided* that the encumbrances and restrictions in any such

41

amendments, modifications, restatements, renewals, extensions, supplements, refundings, replacements or refinancings are no more restrictive, taken as a whole, with respect to such dividend or other payment restrictions than those in effect on the date of the acquisition;

      (5)    in the case of clause (3) of the first paragraph of this Section 4.13:

         (a)    restricting in a customary manner the subletting, assignment or transfer of any property or asset that is a lease, license, conveyance or contract or similar property or asset,

         (b)    existing by virtue of any transfer of, agreement to transfer, option or right with respect to, or Lien on, any property or assets of the Company or any Restricted Subsidiary not otherwise prohibited by this Indenture, or

         (c)    arising or agreed to in the ordinary course of business, not relating to any Indebtedness, and that do not, individually or in the aggregate, detract from the value of property or assets of the Company or any Restricted Subsidiary in any manner material to the Company or any Restricted Subsidiary;

      (6)    any agreement for the sale or other disposition of all or substantially all of the Capital Stock of, or property and assets of, a Restricted Subsidiary;

      (7)    Permitted Refinancing Indebtedness, *provided* that the restrictions contained in the agreements governing such Permitted Refinancing Indebtedness are no more restrictive, taken as a whole, than those contained in the agreements governing the Indebtedness being refinanced; or

      (8)    the terms of any Indebtedness or any agreement pursuant to which such Indebtedness was issued if:

         (a)    the encumbrance or restriction applies only in the event of a payment default or a default with respect to a financial covenant contained in such Indebtedness or agreement,

         (b)    the encumbrance or restriction is not materially more disadvantageous to the Holders than is customary in comparable financings (as determined by the Company in good faith), and

         (c)    the Company determines that any such encumbrance or restriction will not materially affect the Company's ability to make principal or interest payments on the Notes.

Section 4.14.    *Limitation on Transactions with Affiliates.*

    The Company shall not, and shall not permit any of its Restricted Subsidiaries to, make any payment to, or sell, lease, transfer or otherwise dispose of any of its properties or assets to, or purchase any property or assets from, or enter into, make, amend, renew or extend any transaction, contract, agreement, understanding, loan, advance or Guarantee with, or for the benefit of, any Affiliate (each, an "*Affiliate Transaction*"), unless:

      (1)    such Affiliate Transaction is on terms that are no less favorable to the Company or the relevant Restricted Subsidiary than those that would have been obtained in a comparable arm's-length transaction by the Company or such Restricted Subsidiary with a Person that is not an Affiliate of the Company; and

      (2)    the Company delivers to the Trustee:

         (a)    with respect to any Affiliate Transaction or series of related Affiliate Transactions involving aggregate consideration in excess of $5.0 million, a Board Resolution of

the Board of Directors of the Company and an Officers' Certificate certifying that such Affiliate Transaction or series of related Affiliate Transactions complies with this Section 4.14 and that such Affiliate Transaction or series of related Affiliate Transactions has been approved by a majority of the disinterested members of the Board of Directors of the Company; and

(b)    with respect to any Affiliate Transaction or series of related Affiliate Transactions involving aggregate consideration in excess of $15.0 million, an opinion as to the fairness to the Company or such Restricted Subsidiary of such Affiliate Transaction or series of related Affiliate Transactions from a financial point of view issued by an independent accounting, appraisal or investment banking firm of national standing or a comparable report, certification or recommendation by an executive compensation consulting firm of national standing, as applicable.

The following items shall not be deemed to be Affiliate Transactions and, therefore, shall not be subject to the provisions of the prior paragraph:

(1)    transactions between or among the Company and/or its Restricted Subsidiaries;

(2)    payment of reasonable and customary directors fees and reasonable and customary indemnification and similar arrangements;

(3)    Restricted Payments that are permitted by Section 4.10;

(4)    any sale of Capital Stock (other than Disqualified Stock) of the Company; and

(5)    transactions entered into under any agreement existing on the Issue Date (and disclosed in the Offering Memorandum or disclosed in or filed as an exhibit to the Company's filings with the Commission pursuant to the Exchange Act through and including the Issue Date) and any amendments or modifications thereto or replacements or renewals thereof, so long as the Board of Directors of the Company, in good faith, shall have approved the terms of such amendment, modification, replacement or renewal and deemed such amendment, modification, replacement or renewal, taken as a whole, not to be materially more adverse to the interests of the Holders than the terms of such agreement as in effect on the Issue Date.

Section 4.15.    *[intentionally omitted].*

Section 4.16.    *Change of Control.*

(a)    If a Change of Control occurs, each Holder of Notes shall have the right to require the Company to repurchase all or any part (equal to $1,000 or an integral multiple thereof) of such Holder's Notes pursuant to the offer described below (the *"Change of Control Offer"*) at an offer price in cash equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest thereon to the date of purchase (the *"Change of Control Payment"*). Within 30 days following any Change of Control, the Company shall mail a notice to each Holder describing the transaction or transactions that constitute the Change of Control and stating (1) that the Change of Control Offer is being made pursuant to this Section 4.16 and that all Notes tendered will be accepted for payment; (2) the purchase price and the purchase date, which shall be no earlier than 30 days nor later than 60 days from the date such notice is mailed (the *"Change of Control Payment Date"*); (3) that any Note not tendered shall continue to accrue interest; (4) that, unless the Company defaults in the payment of the Change of Control Payment, all Notes accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date; (5) that Holders electing to have any Notes purchased pursuant to a Change of Control Offer shall be required to surrender the Notes, with the form entitled "Option of Holder to Elect Purchase" on the reverse of the Notes completed, to the Paying Agent at the address specified in the notice prior to the close of business on the third Business Day preceding the Change of Control Payment Date; (6) that Holders shall be entitled to withdraw their election if the Paying Agent receives, not later than the close of business on the second Business Day preceding the Change of Control Payment Date, a facsimile transmission or letter setting forth the name of the Holder, the

principal amount of Notes delivered for purchase, and a statement that such Holder is withdrawing his election to have the Notes purchased; and (7) that Holders whose Notes are being purchased only in part shall be issued new Notes equal in principal amount to the unpurchased portion of the Notes surrendered, which unpurchased portion must be equal to $1,000 in principal amount or an integral multiple thereof. The Company shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws and regulations thereunder to the extent such laws and regulations are applicable in connection with the repurchase of the Notes as a result of a Change of Control. To the extent that the provisions of any securities laws or regulations conflict with the provisions of this Indenture relating to such Change of Control Offer, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 4.16 by virtue of such compliance.

(b)      By 12:00 p.m. (noon) Eastern Time on the Change of Control Payment Date, the Company shall, to the extent lawful, (1) accept for payment all Notes or portions thereof properly tendered pursuant to the Change of Control Offer, (2) deposit with the Paying Agent an amount equal to the Change of Control Payment in respect of all Notes or portions thereof so tendered, and (3) deliver or cause to be delivered to the Trustee the Notes so accepted together with an Officers' Certificate stating the aggregate principal amount of Notes or portions thereof being purchased by the Company. The Paying Agent shall promptly mail or wire transfer to each Holder of Notes so tendered the Change of Control Payment for such Notes, and the Trustee shall promptly authenticate and mail (or cause to be transferred by book entry) to each Holder a new Note equal in principal amount to any unpurchased portion of the Notes surrendered, if any; provided that each such new Note shall be in a principal amount of $1,000 or an integral multiple thereof. The Company shall publicly announce the results of the Change of Control Offer on or as soon as practicable after the Change of Control Payment Date.

(c)      If a Change of Control occurs, this Section 4.16 shall be applicable notwithstanding Article Three hereof.

(d)      Notwithstanding anything to the contrary in this Section 4.16, the Company shall not be required to make a Change of Control Offer upon a Change of Control if (i) a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements set forth in this Section 4.16 and all other provisions of this Indenture applicable to a Change of Control Offer made by the Company and purchases all Notes validly tendered and not withdrawn under such Change of Control Offer, or (ii) the Company effects Legal Defeasance or Covenant Defeasance of the Notes under Article Eight of this Indenture prior to the occurrence of such Change of Control or otherwise discharges this Indenture under Article Eight of this Indenture.

Section 4.17.      *Designation of Restricted and Unrestricted Subsidiaries.*

The Board of Directors of the Company may designate any Restricted Subsidiary of the Company to be an Unrestricted Subsidiary; *provided* that:

(1)      any Guarantee by the Company or any Restricted Subsidiary of the Company of any Indebtedness of the Subsidiary being so designated shall be deemed to be an incurrence of Indebtedness by the Company or such Restricted Subsidiary (or both, if applicable) at the time of such designation, and such incurrence of Indebtedness would be permitted under Section 4.09 hereof;

(2)      the aggregate fair market value of all outstanding Investments owned by the Company and its Restricted Subsidiaries in the Subsidiary being so designated (including any Guarantee by the Company or any Restricted Subsidiary of the Company of any Indebtedness of such Subsidiary) shall be deemed to be a Restricted Investment made as of the time of such designation and that such Investment would be permitted under Section 4.10 hereof;

(3)      such Subsidiary does not own any Equity Interests of, or hold any Liens on any property of, the Company or any Restricted Subsidiary thereof; and

(4)      the Subsidiary being so designated:

(a)    is not party to any agreement, contract, arrangement or understanding with the Company or any Restricted Subsidiary of the Company, unless the terms of any such agreement, contract, arrangement or understanding are no less favorable to the Company or such Restricted Subsidiary than those that might be obtained at the time from Persons who are not Affiliates of the Company;

(b)    is a Person with respect to which neither the Company nor any of its Restricted Subsidiaries has any direct or indirect obligation (i) to subscribe for additional Equity Interests or (ii) to maintain or preserve such Person's financial condition or to cause such Person to achieve any specified levels of operating results; and

(c)    has at least one director on its Board of Directors that is not a director or officer of the Company or any of its Restricted Subsidiaries or has at least one executive officer that is not a director or officer of the Company or any of its Restricted Subsidiaries; and

(5)    no Default or Event of Default would be in existence following such designation.

Any designation of a Restricted Subsidiary of the Company as an Unrestricted Subsidiary shall be evidenced to the Trustee by filing with the Trustee a certified copy of the Board Resolution giving effect to such designation and an Officers' Certificate certifying that such designation complied with the preceding conditions and was permitted by this Indenture. If, at any time, any Unrestricted Subsidiary would fail to meet any of the preceding requirements described in clause (4) above, it shall thereafter cease to be an Unrestricted Subsidiary for purposes of this Indenture and any Indebtedness, Investments, or Liens on the property, of such Subsidiary shall be deemed to be incurred by a Restricted Subsidiary of the Company as of such date and, if such Indebtedness, Investments or Liens are not permitted to be incurred as of such date under this Indenture, the Company shall be in default.

The Board of Directors of the Company may at any time designate any Unrestricted Subsidiary to be a Restricted Subsidiary of the Company; *provided* that:

(1)    such designation shall be deemed to be an incurrence of Indebtedness by a Restricted Subsidiary of the Company of any outstanding Indebtedness of such Unrestricted Subsidiary and such designation shall only be permitted if such Indebtedness is permitted under Section 4.09 hereof, calculated on a pro forma basis as if such designation had occurred at the beginning of the four-quarter reference period;

(2)    all outstanding Investments owned by such Unrestricted Subsidiary shall be deemed to be made as of the time of such designation and such Investments shall only be permitted if such Investments would be permitted under Section 4.10 hereof;

(3)    all Liens on any of the properties of such Unrestricted Subsidiary existing at the time of such designation would be permitted under Section 4.12 hereof; and

(4)    no Default or Event of Default would be in existence following such designation.

Section 4.18.    *Payments for Consent.*

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, pay or cause to be paid any consideration to or for the benefit of any Holder of Notes for or as an inducement to any consent, waiver or amendment of any of the terms or provisions of this Indenture or the Notes unless such consideration is offered to all Holders and is paid to all Holders that consent, waive or agree to amend in the time frame set forth in the solicitation documents relating to such consent, waiver or agreement.

Section 4.19.    *Limitations on Issuances of Guarantees by Restricted Subsidiaries; Release of Subsidiary Guarantees*.

(a)    If the Company acquires or creates a Domestic Subsidiary after the date of this Indenture, then that newly acquired or created Subsidiary shall be a Restricted Subsidiary, and shall become a Subsidiary Guarantor and execute a supplemental indenture and deliver to the Trustee an opinion of counsel to the effect that the supplemental indenture has been duly authorized, executed and delivered by such Domestic Subsidiary and constitutes a valid and binding obligation of such Domestic Subsidiary, enforceable against such Domestic Subsidiary in accordance with its terms (subject to customary exceptions); *provided, however*, that the foregoing shall not apply to Subsidiaries that have properly been designated as Unrestricted Subsidiaries in accordance with this Indenture for so long as they continue to constitute Unrestricted Subsidiaries.

(b)    The Company shall not permit any of its Restricted Subsidiaries, directly or indirectly, to Guarantee or pledge any assets to secure the payment of any other Indebtedness of the Company, unless such Restricted Subsidiary is a Subsidiary Guarantor or simultaneously executes and delivers a supplemental indenture providing for the Guarantee of the payment of the Notes by such Restricted Subsidiary, which Subsidiary Guarantee shall be senior to or *pari passu* with such Subsidiary's Guarantee of or pledge to secure such other Indebtedness. The form of the Subsidiary Guarantee is attached hereto as Exhibit E.

(c)    The Subsidiary Guarantee of a Subsidiary Guarantor shall be released:

(1)    in connection with any sale or other disposition of (a) all of the Capital Stock of a Subsidiary Guarantor (including by consolidation, merger, issuance, liquidation, dissolution or otherwise) or (b) all or substantially all of the assets of such Subsidiary Guarantor, in each case, by the Company or any of its Subsidiaries to a Person that is not (either before or after giving effect to such transaction) an Affiliate of the Company, if the sale or other disposition complies with Section 4.11 hereof;

(2)    solely in the case of a Guarantee created pursuant to Section 4.19(b) hereof, in connection with the release or discharge of the Guarantee which resulted in the creation of such Subsidiary Guarantee pursuant to this Section 4.19, except a discharge or release by, or as a result of, a payment under such Guarantee; or

(3)    if the Company properly designates any Restricted Subsidiary that is a Subsidiary Guarantor as an Unrestricted Subsidiary.

Upon the occurrence of any of the foregoing events described in this Section 4.19(c), the Subsidiary Guarantor shall be released from its Subsidiary Guarantee upon receipt by the Trustee of a request by the Company accompanied by an Officer's Certificate and an Opinion of Counsel certifying that all conditions specified in this Indenture for such release have been satisfied in accordance with the provisions of this Indenture. Upon receipt of the items specified in the preceding sentence, the Trustee shall deliver to the Company an appropriate instrument evidencing such release. Any Subsidiary Guarantee not so released remains liable for the full amount of principal of and interest on the Notes as provided in Article Eleven.

Section 4.20.    *Limitation on Sale and Leaseback Transactions*.

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, enter into any sale and leaseback transaction; *provided* that the Company or any Restricted Subsidiary may enter into a sale and leaseback transaction if:

(a)    the Company or that Restricted Subsidiary, as applicable, could have incurred Indebtedness in an amount equal to the Attributable Debt relating to such sale and leaseback transaction under Section 4.09 hereof;

(b)    the gross cash proceeds of that sale and leaseback transaction are at least equal to the fair market value, as determined in good faith by the Board of Directors, as evidenced by a Board Resolution and set forth in an

Officers' Certificate delivered to the Trustee, of the property that is the subject of that sale and leaseback transaction; and

       (c)    the transfer of assets in that sale and leaseback transaction is permitted by, and the Company applies the proceeds of such transaction in compliance with, Section 4.11 hereof.

Section 4.21.    *Limitation on Issuance and Sale of Equity Interests of Restricted Subsidiaries.*

      The Company shall not transfer, convey, sell, lease or otherwise dispose of, and shall not permit any of its Restricted Subsidiaries to, issue, transfer, convey, sell, lease or otherwise dispose of any Equity Interests in any Restricted Subsidiary of the Company to any Person (other than the Company or a Wholly Owned Restricted Subsidiary of the Company and, if necessary, shares of its Capital Stock constituting directors' qualifying shares or issuances of shares of Capital Stock of foreign Restricted Subsidiaries to foreign nationals, to the extent required by applicable law), except:

       (a)    if, immediately after giving effect to such issuance, transfer, conveyance, sale, lease or other disposition, such Restricted Subsidiary would no longer constitute a Restricted Subsidiary and any Investment in such Person remaining after giving effect to such issuance or sale would have been permitted under Section 4.10 hereof if made on the date of such issuance or sale; and

       (b)    the Company or such Restricted Subsidiary complies with Section 4.11 hereof.

Section 4.22.    *Limitation on Subordinated Indebtedness.*

      The Company shall not incur any Indebtedness that is subordinate or junior in right of payment to any other Indebtedness of the Company unless it is made expressly subordinate in right of payment to the Notes to the same extent and in the same manner as such Indebtedness is subordinated to such other Indebtedness. No Subsidiary Guarantor shall incur any Indebtedness that is subordinate or junior in right of payment to any other Indebtedness of such Subsidiary Guarantor unless it is made expressly subordinate in right of payment to its Subsidiary Guarantee to the same extent and in the same manner as such Indebtedness is subordinated to such other Indebtedness. For purposes of the foregoing, no Indebtedness shall be deemed to be subordinated in right of payment to any other Indebtedness of the Company or any Subsidiary Guarantor solely by reason of any Liens or Guarantees arising or created in respect of such other Indebtedness or by virtue of the fact that the holders of any Secured Indebtedness have entered into intercreditor agreements giving one or more of such holders priority over the other holders in the collateral held by them.

## ARTICLE FIVE

### SUCCESSOR CORPORATION

Section 5.01.    *Merger, Consolidation or Sale of Assets.*

      The Company shall not, directly or indirectly: (1) consolidate or merge with or into another Person (whether or not the Company is the surviving corporation); or (2) sell, assign, transfer, convey or otherwise dispose of all or substantially all of the properties and assets of the Company and its Subsidiaries taken as a whole, in one or more related transactions, to another Person or Persons; unless:

       (1)    either: (a) the Company is the surviving corporation; or (b) the Person formed by or surviving any such consolidation or merger (if other than the Company) or to which such sale, assignment, transfer, conveyance or other disposition shall have been made (i) is a corporation organized or existing under the laws of the United States, any state thereof or the District of Columbia, and (ii) assumes all the obligations of the Company under the Notes, this Indenture and the Registration Rights Agreement pursuant to agreements reasonably satisfactory to the Trustee;

(2)    immediately after giving effect to such transaction, no Default or Event of Default exists;

(3)    immediately after giving effect to such transaction on a pro forma basis, the Company or the Person formed by or surviving any such consolidation or merger (if other than the Company), or to which such sale, assignment, transfer, conveyance or other disposition shall have been made shall, on the date of such transaction after giving pro forma effect thereto and any related financing transactions as if the same had occurred at the beginning of the applicable four-quarter period, be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test set forth in the first paragraph of Section 4.09; and

(4)    each Subsidiary Guarantor, unless such Subsidiary Guarantor is the Person with which the Company has entered into a transaction under this Section 5.01, shall have by amendment to its Subsidiary Guarantee confirmed that its Subsidiary Guarantee shall apply to the obligations of the Company or the Surviving Person in accordance with the Notes and this Indenture.

A Subsidiary Guarantor may not sell or otherwise dispose of all or substantially all of its assets to, or consolidate with or merge with or into (whether or not such Subsidiary Guarantor is the surviving Person), another Person, other than the Company or another Subsidiary Guarantor, unless:

(1)    immediately after giving effect to that transaction, no Default or Event of Default exists; and

(2)    either:

(a)    the Person acquiring the property in any such sale or disposition or the Person formed by or surviving any such consolidation or merger is a corporation organized or existing under the laws of the United States, any state thereof or the District of Columbia and assumes all the obligations of that Subsidiary Guarantor under this Indenture, its Subsidiary Guarantee and the Registration Rights Agreement pursuant to a supplemental indenture satisfactory to the Trustee; or

(b)    such sale or other disposition complies with Section 4.11 hereof, including the application of the Net Proceeds therefrom.

In addition, neither the Company nor any Restricted Subsidiary may, directly or indirectly, lease all or substantially all of its properties or assets, in one or more related transactions, to any other Person. Clause (3) of the first paragraph of this Section 5.01 shall not apply to any merger, consolidation, sale, assignment, transfer, conveyance or other disposition of assets between or among the Company and any of its Restricted Subsidiaries.

Section 5.02.    *Successor Corporation Substituted.*

Upon any consolidation or merger, or any sale, assignment, transfer, conveyance or other disposition of all substantially all of the assets of the Company in accordance with Section 5.01 hereof, the successor corporation formed by such consolidation or into or with which the Company is merged or to which such sale, assignment, transfer, conveyance or other disposition is made shall succeed to, and be substituted for (so that from and after the date of such consolidation, merger, sale, assignment, transfer, conveyance or other disposition, the provisions of this Indenture referring to the "Company" shall refer instead to the successor corporation and not to the Company), and may exercise every right and power of, the Company under this Indenture with the same effect as if such successor Person had been named as the Company herein; and thereafter the predecessor Company shall be relieved of all further obligations and covenants under this Indenture and the Notes.

## ARTICLE SIX

## DEFAULTS AND REMEDIES

**Section 6.01:**   *Events of Default.*

Each of the following is an *"Event of Default"*:

(1)   default for 30 days in the payment when due of interest (including any additional interest) on the Notes;

(2)   default in payment when due (whether at maturity, upon acceleration, redemption or otherwise) of the principal of, or premium, if any, on the Notes;

(3)   failure by the Company or any of its Restricted Subsidiaries to comply with the provisions described under Sections 4.16 and 4.11 and Article Five;

(4)   failure by the Company or any of its Restricted Subsidiaries for 30 days after written notice by the Trustee or Holders representing 25% or more of the aggregate principal amount of Notes outstanding to comply with any of the other agreements in this Indenture;

(5)   default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Company or any of its Restricted Subsidiaries (or the payment of which is Guaranteed by the Company or any of its Restricted Subsidiaries) whether such Indebtedness or Guarantee now exists, or is created after the date of this Indenture, if that default:

(a)   is caused by a failure to pay principal of, or interest or premium, if any, on such Indebtedness at final maturity thereof or

(b)   results in the acceleration of such Indebtedness prior to its final maturity,

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a similar default aggregates $10.0 million or more;

(6)   failure by the Company or any of its Restricted Subsidiaries to pay final judgments aggregating in excess of $10.0 million, which judgments are not paid, discharged or stayed for a period of 60 days;

(7)   except as permitted by this Indenture, any Subsidiary Guarantee of a Significant Subsidiary shall be held in any judicial proceeding to be unenforceable or invalid, or shall cease for any reason to be in full force and effect, or any Subsidiary Guarantor that is a Significant Subsidiary, or any Person acting on behalf of any Subsidiary Guarantor, shall deny or disaffirm its obligations under its Subsidiary Guarantee;

(8)   the Company, any of its Significant Subsidiaries or any Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary, pursuant to or within the meaning of any Bankruptcy Law:

(a)   commences a voluntary case,

(b)   consents to the entry of an order for relief against it in an involuntary case,

(c)   makes a general assignment for the benefit of its creditors, or

        (d)     generally is not paying its debts as they become due; and

    (9)    a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

        (a)     is for relief against the Company, any of its Significant Subsidiaries or any Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary, in an involuntary case;

        (b)     appoints a Custodian for the Company, any of its Significant Subsidiaries or any Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary, or for all or substantially all of the properties of the Company, any of its Significant Subsidiaries or any Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary; or

        (c)     orders the liquidation of the Company, any of its Significant Subsidiaries or any Subsidiaries of the Company that, taken together, would constitute a Significant Subsidiary;

and the order or decree remains unstayed and in effect for 60 consecutive days.

    The term *"Bankruptcy Law"* means Title 11, U.S. Code or any similar federal or state law for the relief of debtors. . The term *"Custodian"* means any receiver, trustee, assignee, liquidator or similar official under any Bankruptcy Law.

Section 6.02.    *Acceleration.*

    If an Event of Default specified in clauses 8 or 9 of Section 6.01 occurs, all unpaid principal of, and accrued interest on, the Notes then outstanding shall become due and payable immediately, without any declaration or other act on the part of the Trustee or any Holder. If an Event of Default (other than an Event of Default specified in clauses 8 and 9) under Section 6.01 occurs and is continuing, then and in every such case the Trustee or the Holders of not less than 25% in aggregate principal amount of the outstanding Notes may declare the unpaid principal of, premium, if any, and accrued and unpaid interest on, all the Notes then outstanding to be due and payable immediately, by a notice in writing to the Company (and to the Trustee, if given by Holders) specifying the respective Event of Default and upon any such declaration such principal, premium, if any, and accrued and unpaid interest shall become immediately due and payable. .

    If any Event of Default occurs by reason of any willful action or inaction taken or not taken by or on behalf of the Company with the intention of avoiding payment of the premium that the Company would have had to pay if the Company then had elected to redeem the Notes pursuant to the optional redemption provisions of paragraph 7 of the Notes, then, upon acceleration of the Notes, an equivalent premium shall also become and be immediately due and payable, to the extent permitted by law, anything in this Indenture or in the Notes to the contrary notwithstanding. If an Event of Default occurs during any time that the Notes are outstanding, by reason of any willful action or inaction taken or not taken by or on behalf of the Company with the intention of avoiding the prohibition on redemption of the Notes, then, the premium specified in the second paragraph of paragraph 7 of the Notes shall also become immediately due and payable to the extent permitted by law upon the acceleration of the Notes.

    If (i) (A) the Company or any Subsidiary Guarantor has paid or deposited with the Trustee a sum sufficient to pay (1) all overdue installments of interest on all the Notes, (2) the principal of, and premium, if any, on any Notes that have become due otherwise than by such declaration of acceleration and interest thereon at the rate or rates prescribed therefor in the Notes, (3) to the extent that payment of such interest is lawful, interest on the defaulted interest at the rate or rates prescribed therefor in the Notes, and (4) all money paid or advanced by the Trustee thereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel; (B) all Events of Default, other than the nonpayment of the principal of any Notes that have become due solely by such declaration of acceleration, have been cured or waived as provided in this Indenture; *provided,*

*however*, that, in the event of the cure or waiver of an Event of Default of the type described in clauses 7 or 8 of Section 6.01, the Trustee shall have received an Officers' Certificate and an Opinion of Counsel that such Event of Default has been cured or waived; and (C) the rescission would not conflict with any judgment or decree of a court of competent jurisdiction and (ii) the Holders of a majority in aggregate principal amount of then outstanding Notes give written notice to the Company, the Subsidiary Guarantors and the Trustee of their desire to rescind and annul a declaration of acceleration and its consequences, then such declaration of acceleration shall be deemed rescinded and annulled. No such rescission shall affect any subsequent Event of Default or impair any right consequent thereon.

Section 6.03.     *Other Remedies.*

    If an Event of Default occurs and is continuing, the Trustee may pursue, in its own name and as trustee of an express trust, any available remedy by proceeding at law or in equity to collect the payment of principal or interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

    The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.

Section 6.04.     *Waiver of Past Defaults.*

    Subject to Sections 6.07 and 9.02, the Holders of at least a majority in aggregate principal amount of Notes then outstanding by notice to the Trustee may waive an existing Default or Event of Default and its consequences, except a continuing Default or Event of Default in payment of interest, additional interest or premium on, or the principal of, the Notes, including any optional redemption payments or Change of Control or Asset Sale Offer payments.

Section 6.05.     *Control by Majority.*

    The Holders of a majority in aggregate principal amount of the Notes then outstanding shall have the right, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the time, method and place of conducting any proceeding for exercising any remedy available to the Trustee under this Indenture or exercising any trust or power conferred on such Trustee; *provided* that the Trustee (i) may refuse to follow any direction that is in conflict with any rule of law or with this Indenture, that may involve the Trustee in personal liability, or that the Trustee determines in good faith may be prejudicial to the rights of Holders not joining in the giving of such direction and (ii) may take any other action it deems proper that is not inconsistent with any such direction received from Holders. If the Trustee takes any action or follows any direction pursuant to this Indenture, the Trustee shall be entitled to indemnification reasonably satisfactory to it against any loss, liability or expense caused by taking such action or following such direction.

Section 6.06.     *Limitation on Remedies.*

    No Holder of any of the Notes shall have any right to institute any proceeding, judicial or otherwise, or for the appointment of a receiver or trustee or pursue any remedy under this Indenture, unless:

       (1)     such Holder has previously given written notice to the Trustee of a continuing Event of Default;

       (2)     the Holders of not less than 25% in aggregate principal amount of the outstanding Notes have made written request to the Trustee to pursue such remedy, including, if applicable, to institute proceedings in respect of such Event of Default in its own name as Trustee under this Indenture;

(3)    such Holder or Holders have offered to the Trustee reasonable indemnity and security satisfactory to the Trustee against the costs, expenses and liabilities to be incurred in compliance with such request;

(4)    the Trustee for 60 days after its receipt of such notice, request and offer of indemnity has failed to institute such requested proceeding; and

(5)    no direction inconsistent with such written request has been given to the Trustee during such 60-day period by the Holders of a majority in aggregate principal amount of the outstanding Notes.

A Holder may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over other Holders.

Section 6.07.    *Rights of Holders to Receive Payment.*

Notwithstanding any other provision of this Indenture, the Holder of any Notes shall have the right, which is absolute and unconditional, to receive payment of the principal of, premium, if any, and interest on such Notes on the Stated Maturity therefor and to institute suit for the enforcement of any such payment, and such right may not be impaired without the consent of such Holder.

Section 6.08.    *Collection Suit by Trustee.*

If an Event of Default in payment of principal, premium, if any, or interest specified in Section 6.01(l) or (2) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company or any Subsidiary Guarantor for the whole amount of principal, premium, if any, and, interest remaining unpaid with respect to the Notes, and interest on overdue principal and premium, if any, and, to the extent lawful, interest on overdue interest, and such further amounts as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation and expenses of the Trustee, its agents and counsel.

Section 6.09.    *Trustee May File Proofs of Claim.*

(a)    The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee and the Holders allowed in any judicial proceedings relative to the Company, the Subsidiary Guarantors, their creditors or their property and may collect and receive any money or other property payable or deliverable on any such claims and to distribute the same.

(b)    Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

Section 6.10.    *Priorities.*

If the Trustee collects any money pursuant to this Article Six, it shall pay out the money in the following order:

First:    to the Trustee for amounts due under Sections 6.08 and 7.07;

Second:    to Holders for amounts due and unpaid on the Notes for principal, premium, if any, and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal, premium, if any, and interest, respectively; and

Third:    to the Company.

The Trustee may fix a record date and payment date for any payment to Holders pursuant to this Section 6.10.

Section 6.11.    *Undertaking for Costs.*

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorney's fees and expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. The foregoing shall not apply to a suit by the Trustee, a suit by a holder pursuant to Section 6.07 hereof, or a suit by Holders or more than 10% in aggregate principal amount of the then outstanding Notes.

## ARTICLE SEVEN

## TRUSTEE

Section 7.01.    *Duties of Trustee.*

The duties and responsibilities of the Trustee shall be as provided by the TIA. . No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability. is not reasonably assured to it. Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section 7.01. The Trustee shall not be liable for interest on any money or asset received by it except as the Trustee may agree in writing with the Company. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

Section 7.02.    *Rights of Trustee.*

Subject to Section 7.01:

(a)    The Trustee may rely and shall be fully protected in acting or refraining from acting upon any document believed by it to be genuine and to have been signed or presented by the proper person. The Trustee need not investigate any fact or matter stated in the document.

(b)    Before the Trustee acts or refrains from acting, it may require an Officers'. Certificate or an Opinion of Counsel. . In the absence of bad faith on the part of the Trustee, the Trustee shall not be liable for any action it takes or omits to take in reliance on such Officer's Certificate or Opinion of Counsel.

(c)    The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Trustee shall not be responsible for the misconduct or negligence of any agent or attorney appointed with due care.

(d)    The Trustee shall not be liable for any action it takes, suffers or omits to take in good faith which it believes to be authorized or within its rights, discretion or powers.

(e)    The Trustee may consult with counsel of its selection and the advice or opinion of such counsel as to matters of law shall be full and complete authorization and protection from liability in respect of any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

(f)     Any request or direction of the Company mentioned herein shall be sufficiently evidenced by an Officers' Certificate and any resolution of the Board of Directors may be sufficiently evidenced by a Board Resolution.

(g)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any of the Holders pursuant to this Indenture, unless such Holders shall have offered to the Trustee security or indemnity reasonably satisfactory to the Trustee against the costs, expenses and liabilities which might be incurred by it in compliance with such request, order or discretion.

(h)     The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, notice, request, direction, consent, order, bond, debenture or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit. If the Trustee shall determine to make such further inquiry or investigation, the Trustee shall be entitled, upon reasonable notice to the Company and in good faith, to examine the books, records and premises of the Company or any Subsidiary Guarantor, personally or by agent or attorney.

(i)     Except with respect to Section 4.01, the Trustee shall have no duty to inquire as to the performance of the Company with respect to the covenants contained in Article Four. In addition, the Trustee shall not be deemed to have notice of an Event of Default unless a Trust Officer of the Trustee has actual knowledge thereof or unless the Trustee shall have received written notice thereof at the corporate trust office of the Trustee in the City of Houston, and such notice references the Notes and this Indenture.

Section 7.03.     *Individual Rights of Trustee.*

The Trustee in its individual or any other capacity may become the owner or pledgee of Notes and Guarantees and may otherwise deal with the Company or its Affiliates with the same rights it would have if it were not Trustee. Any Agent may do the same with like rights. However, the Trustee must comply with Sections 7.10 and 7.11.

Section 7.04.     *Trustee's Disclaimer.*

The Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, it shall not be accountable for the Company's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Company in this Indenture or the Notes other than the Trustee's certificate of authentication. The recitals contained herein are statements of the Company.

Section 7.05.     *Notice of Defaults.*

If a Default or an Event of Default occurs and is continuing and if it is known to the Trustee, the Trustee shall mail to each Holder notice of the Default or Event of Default within 30 days after the occurrence thereof. Except in the case of a Default or an Event of Default in payment of principal of, premium, if any, or interest on, any Note or a Default or Event of Default in complying with Section 5.01, the Trustee may withhold the notice if and so long as a committee of its Trust Officers in good faith determines that withholding the notice is in the interest of Holders. This Section 7.05 shall be in lieu of the proviso to Section 315(b) of the TIA and such proviso to Section 315(b) of the TIA is hereby expressly excluded from this Indenture and the Notes, as permitted by the TIA. For purposes of this Section 7.05, the Trustee shall not be deemed to have knowledge of a Default or an Event of Default hereunder unless an officer of the Trustee with direct responsibility for the administration of this Indenture has actual knowledge thereof, or unless written notice of any event which is a Default or an Event of Default is received by the Trustee and such notice references the Notes or this Indenture.

Section 7.06.    *Reports by Trustee to Holders.*

Within 60 days after each May 15 of each year, the Trustee shall, to the extent that any of the events described in TIA Section 313(a) occurred within the previous twelve months, but not otherwise, mail to each Holder a brief report dated as of such date that complies with TIA Section 313(a). The Trustee also shall comply with TIA Sections 313(b), 313(c) and 313(d).

A copy of each report at the time of its mailing to Holders shall be mailed to the Company and filed with the SEC and each securities exchange, if any, on which the Notes are listed.

The Company shall promptly notify the Trustee if the Notes become listed on any securities exchange or of any delisting thereof.

Section 7.07.    *Compensation and Indemnity.*

The Company shall pay to the Trustee from time to time reasonable compensation for all services rendered by it hereunder. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket expenses incurred or made by it in addition to the compensation for its services except any such disbursements, expenses and advances as may be attributable to the Trustee's negligence or bad faith. Such expenses shall include the reasonable compensation, disbursements and expenses of the Trustee's agents, accountants, experts and counsel and any taxes or other expenses incurred by a trust created pursuant to Article Eight.

The Company shall indemnify the Trustee and its agents, employees, attorneys-in-fact, officers, directors and shareholders for, and hold it harmless against, any and all loss, damage, claims, liability or expense, including taxes (other than franchise taxes imposed on the Trustee and taxes based upon, measured by or determined by the income of the Trustee), arising out of or in connection with the acceptance or administration of the trust or trusts hereunder (including its services as Registrar or Paying Agent, if so appointed by the Company), including the reasonable costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder, except to the extent that such loss, damage, claim, liability or expense is due to its own negligence or bad faith. The Trustee shall notify the Company promptly of any claim asserted against the Trustee for which it may seek indemnity. Failure by the Trustee to so notify the Company shall not relieve the Company of its obligations hereunder. The Company shall defend the claim and the Trustee shall cooperate in the defense (and may employ its own counsel) at the Company's expense; *provided, however,* that the Company's reimbursement obligation with respect to counsel employed by the Trustee shall be limited to the reasonable fees and expenses of such counsel.

The Company need not pay for any settlement made without its written consent, which consent shall not be unreasonably withheld. The Company need not reimburse any expense or indemnify against any loss or liability incurred by the Trustee as a result of the violation of this Indenture by the Trustee, or arising out of the Trustee's negligence or willful misconduct.

To secure the Company's payment obligations in this Section 7.07, the Trustee shall have a Lien prior to the Notes against all money or property held or collected by the Trustee, in its capacity as Trustee, except money or property held in trust to pay principal of, premium, if any, or interest on particular Notes.

When the Trustee incurs expenses or renders services after an Event of Default specified in Section 6.01(8) or (9) occurs, such expenses and the compensation for the services are intended to constitute expenses of administration under any Bankruptcy Law. The Company's obligations under this Section 7.07 and any lien arising hereunder shall survive the resignation or removal of any Trustee, the discharge of the Company's obligations pursuant to Article Eight and any rejection or termination under any Bankruptcy Law.

Section 7.08.    *Replacement of Trustee.*

The Trustee may resign at any time by so notifying the Company in writing. The Holders of a majority in principal amount of the outstanding Notes may remove the Trustee by so notifying the Trustee and the Company in writing and may appoint a successor Trustee with the Company's consent, which consent shall not be unreasonably withheld. The Company may remove the Trustee if:

(a)    the Trustee fails to comply with Section 7.10;

(b)    the Trustee is adjudged a bankrupt or an insolvent under any Bankruptcy Law;

(c)    a receiver or other public officer takes charge of the Trustee or its property; or

(d)    the Trustee becomes incapable of acting.

If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason (the Trustee in such event being referred to herein as the retiring Trustee), the Company shall promptly appoint a successor Trustee. Within one year after the successor Trustee takes office, the Holders of a majority in principal amount of the Notes may appoint a successor Trustee to replace the successor Trustee appointed by the Company.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Company. As promptly as practicable after that, the retiring Trustee shall transfer, after payment of all sums then owing to the Trustee pursuant to Section 7.07, all property held by it as Trustee to the successor Trustee, subject to the Lien provided in Section 7.07, the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Indenture. A successor Trustee shall mail notice of its succession to each Holder.

If a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Company or the Holders of at least 10% in principal amount of the outstanding Notes may petition any court of competent jurisdiction for the appointment of a successor Trustee.

If the Trustee fails to comply with Section 7.10, any Holder may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

Notwithstanding replacement of the Trustee pursuant to this Section 7.08, the Company's obligations under Section 7.07 shall continue for the benefit of the retiring Trustee.

Section 7.09.    *Successor Trustee by Merger, Etc.*

If the Trustee consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business to, another corporation or banking corporation, the resulting, surviving or transferee corporation or banking corporation without any further act shall, if such resulting, surviving or transferee corporation or banking corporation is otherwise eligible hereunder, be the successor Trustee.

Section 7.10.    *Eligibility; Disqualification.*

This Indenture shall always have a Trustee which shall be eligible to act as Trustee under TIA Sections 310(a)(1) and 310(a)(2). The Trustee must have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. If the Trustee has or shall acquire any "conflicting interest" within the meaning of TIA Section 310(b), the Trustee and the Company shall comply with the provisions of TIA Section 310(b); provided, however, that there shall be excluded from the operation of TIA Section 310(b)(1) any indenture or indentures under which other securities or certificates of interest or participation in other securities of the Company are outstanding if the requirements for such exclusion set forth in TIA Section 310(b)(1) are met. If at

any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 7.10, the Trustee shall resign immediately in the manner and with the effect hereinbefore specified in this Article Seven.

Section 7.11.    *Preferential Collection of Claims Against the Company.*

The Trustee shall comply with TIA Section 311(a), excluding any creditor relationship listed in TIA Section 311(b). A Trustee who has resigned or been removed shall be subject to TIA Section 311(a) to the extent indicated therein.

ARTICLE EIGHT

SATISFACTION AND DISCHARGE OF INDENTURE; DEFEASANCE

Section 8.01.    *Satisfaction and Discharge.*

This Indenture, the Notes and the Subsidiary Guarantees shall be discharged and shall cease to be of further effect (except as to surviving rights of registration of transfer or exchange of the Notes, as expressly provided for in this Indenture) as to all outstanding Notes when:

    (1)    either:

        (a)    all the Notes theretofore authenticated and delivered (except lost, stolen or destroyed Notes which have been replaced or paid and Notes for whose payment money has theretofore been deposited with the Trustee or the Paying Agent in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust, as provided in Section 8.05) have been delivered to the Trustee for cancellation; or

        (b)    all Notes that have not been delivered to the Trustee for cancellation have become due and payable by reason of the making of a notice of redemption or otherwise or shall become due and payable within one year and the Company or any Subsidiary Guarantor has irrevocably deposited or caused to be deposited with the Trustee, as trust funds in trust solely for the benefit of the Holders, cash in U.S. dollars, non-callable Government Securities, or a combination thereof, in such amounts as shall be sufficient without consideration of any reinvestment of interest, to pay and discharge the entire indebtedness on the Notes not delivered to the Trustee for cancellation for principal, premium and additional interest, if any, and accrued interest to the date of maturity or redemption;

    (2)    no Default or Event of Default shall have occurred and be continuing on the date of such deposit or shall occur as a result of such deposit and such deposit shall not result in a breach or violation of, or constitute a default under, any other instrument to which the Company or any Subsidiary Guarantor is a party or by which the Company or any Subsidiary Guarantor is bound; .

    (3)    the Company has paid all other sums payable under this Indenture by the Company;

    (4)    the Company has delivered irrevocable instructions to the Trustee under this Indenture to apply the deposited money toward the payment of the Notes at maturity or the redemption date, as the case may be; and

    (5)    the Company has delivered an Officers' Certificate and an Opinion of Counsel to the Trustee stating that all conditions precedent to satisfaction and discharge have been satisfied.