Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (Admitted *Pro Hac Vice*; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

FINISAR CORPORATION, a Delaware corporation,

Plaintiff,

v.

U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity but solely in its capacity as indenture trustee in behalf of all holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,

Defendants.

AND RELATED COUNTERCLAIMS.

Case No. 5:07-CV-04052-JF (PVT)

**PLAINTIFF FINISAR CORPORATION'S OPPOSITION TO DEFENDANT U.S. BANK TRUST NATIONAL ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT**

**(Declaration of L. Rex Sears submitted herewith)**

Date: **Friday, July 11, 2008**
Time: **9:00 a.m.**
Courtroom: **3**

District Judge: Hon. Jeremy Fogel
Magistrate Judge: Hon. Patricia V. Trumbull

Initial Complaint Filed: June 22, 2007
Trial Date: Not Yet Set

## TABLE OF CONTENTS


**Page(s)**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........ 1

II. ARGUMENT ........ 3

A. U.S. Bank Was Required To Present Evidence Sufficient To Compel A Directed Verdict At Trial. ........ 3

B. U.S. Bank Fails Even To Address The Real Issue. ........ 4

C. U.S. Bank Failed To Support Its Motion With Evidence That Finisar's Interim Reports Were Inadequate. ........ 5

D. U.S. Bank Failed To Address Finisar's Claim For A Declaration That Acceleration Would Be Inequitable. ........ 7

E. U.S. Bank Offered No Evidence Of Any Injury Flowing From Any Supposed Breach. ........ 8

F. U.S. Bank Has Not Proven Its Fees Were Reasonably Incurred. ........ 8

G. At A Minimum, U.S. Bank's Motion Should Be Denied Pursuant To Rule 56(f). ........ 9

1. U.S. Bank Has Impeded Finisar's Discovery Of Parol Evidence That Should Be Considered If The Court Finds An Ambiguity. ........ 9

2. U.S. Bank Has Refused To Provide Discovery Relating To Damages. ........ 12

3. U.S. Bank Has Refused To Disclose Evidence Further Demonstrating That Its Fees Were Not Reasonably Incurred. ........ 13

III. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.,*
2008 WL 373162, Fed. Sec. L. Rep. P 94,577 (N.D. Tex. Feb. 12, 2008) ................................ 5

*Atwater & Co. v. Panama R.R. Co.,*
246 N.Y. 519, 159 N.E. 418 (1927) ........................................................................................ 12

*Bank of New York v. BearingPoint, Inc.,*
824 N.Y.S.2d 752, 2006 WL 2670143, (Sup. Ct. N.Y. Cty. Sept. 18, 2006) ............................ 6

*Cavallaro v. United States,*
153 F. Supp. 2d 52 (D. Mass. 2001) ........................................................................................ 13

*Celotex Corp. v. Catrett,*
477 U.S. 317, 206 S. Ct. 2548 (1986) ....................................................................................... 3, 7

*Cyberonics, Inc. v. Wells Fargo Bank National Association,*
2007 WL 1729977, (S.D. Tex. June 1, 2007) ............................................................................ 5

*Firemans's Fund Ins. Co. v. Videgreeze Corp.,*
540 F.2d 1171 (3d Cir. 1996) .................................................................................................... 4

*Geddes v. United Staffing Alliance Med. Plan,*
469 F.3d 919 (10th Cir. 2006) ................................................................................................... 7

*Greenfield v. Philles Records,*
98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) .................................................... 11

*In re Teleglobe Comms. Corp.,*
493 F.3d 345 .............................................................................................................................. 13

*International Shortstop, Inc. v. Rally's, Inc.,*
939 F.2d 1257 (5th Cir. 1991) ................................................................................................... 3

*Kass v. Kass,*
91 N.Y.2d 554, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998) .................................................... 12

*Orville v. Newski, Inc.,*
155 A.D.2d 799, 548 N.Y.S.2d 76 (N.Y. App. Div. 1989) ....................................................... 8

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
69 Cal.2d 33, 442 P.2d 641 (1968) ........................................................................................... 11

*Pacific Portland Cement v. Food Machine & Chemical*, 178 F.2d 541 (9th Cir. 1949) .......... 4

*United Pacific Insurance Co. v. Safety-Kleen Corp.*, 1993 WL 505393, (N.D. Cal. Nov. 10, 1993) .......... 4

*United States Inv. Co. v. GTE MobilNet, Inc.*, 281 F.3d 929 (9th Cir. 2002) .......... 11

*UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108 (D. Minn. 2008) .......... 4, 5, 6, 7

*W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) .......... 12

**Statutes/Rules**

Federal Rule of Civil Procedure 56 .......... 3, 9, 13

Finisar[1] respectfully submits the following points and authorities in opposition to U.S. Bank's Motion. Finisar's own Motion is set for hearing at the same date and time (9:00 a.m. on July 11, 2008) as U.S. Bank's. However, as Finisar noted in its Motion, U.S. Bank declined Finisar's proposal to consolidate the briefing for the cross-motions. Accordingly, Finisar hereby separately opposes U.S. Bank's Motion.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Between October 15, 2001 and October 12, 2006, Finisar issued a combined total of roughly $250 million in convertible Notes under the three Indentures at issue in this Action. (*See* Jacobs Declaration, ¶¶ 2-3.) The Indentures designate U.S. Bank as the trustee for the Holders of the Notes. (Jacobs Declaration, ¶ 2.)[2]

Ostensibly acting in its capacity as trustee, U.S. Bank accused Finisar of defaulting under Section 4.02 of the Indentures by not filing certain Reports with the SEC by certain dates. (U.S. Bank's Motion at 4:10-16.) Section 4.02 of the Indentures requires Finisar to "file with the Trustee, within 15 days after it files such … with the Commission, copies of its … reports,"[3] which U.S. Bank admits Finisar did. (Jacobs Declaration, ¶ 13.) Section 4.02 says nothing whatsoever about when Finisar was to file its Reports with the SEC. Nevertheless, U.S. Bank alleges that Finisar defaulted under the Indentures by not filing its Reports with the SEC by certain deadlines. (Jacobs Declaration, ¶¶ 9-11, Exs. 8-10.)

By its Motion, U.S. Bank ostensibly "moves for summary judgment with respect to all claims and counterclaims of the parties." (U.S. Bank's Motion at 1:9-10.) U.S. Bank's Motion should be denied for all of the reasons that Finisar's should be granted, which are set forth in

---

[1] Terms with initial capitals are defined in the Glossary of Terms appended to Plaintiff Finisar Corporation's Motion for Summary Judgment and are used herein with the same signification.

[2] U.S. Bank's duties as trustee are generally defined by Section 7.01 of the Indentures. Absent an "Event of Default," that provision only requires U.S. Bank to perform the essentially ministerial duties "specifically set forth in this Indenture." (Jacobs Declaration, Exs. 1-3, § 7.01.) Upon the occurrence of an Event of Default, U.S. Bank is charged with the heightened burden of "exercis[ing] … the rights and powers vested in it by this Indenture, … us[ing] the same degree of care …, as a prudent man … in the conduct of his own affairs." (*Id.*)

[3] The complete text of the Indenture provisions quoted herein is set forth in the Text of Governing Indenture Provisions appended to Finisar's Motion.

Finisar's Motion and incorporated herein by this reference. There are, however, additional grounds for denying U.S. Bank's Motion, separate and apart from those that should lead to the granting of Finisar's. These are addressed herein.

Generally, the separate failings that require U.S. Bank's Motion to be denied, while not impairing Finisar's entitlement to have summary judgment granted, are a function of the different burdens borne by the parties. At trial, U.S. Bank would bear the burden of proving that Finisar defaulted under the Indentures. Because U.S. Bank would bear that burden at trial, to prevail on summary judgment it must come forward with evidence sufficient to require a directed verdict, while Finisar, to prevail on *its* Motion, need only point to an absence of evidence supporting U.S. Bank's contentions. Finisar has discharged its burden in its own Motion. However, as shown below, U.S. Bank has failed to discharge its burden in the following particulars:

- U.S. Bank addresses the wrong issue. U.S. Bank's Motion is directed primarily to whether the Indentures required Finisar to file its Reports with the SEC, but the proper inquiry is *when* the Indentures required Finisar to provide copies of its Reports to U.S. Bank.
- Further confusing the issue, U.S. Bank tries to distinguish one of the three federal authorities addressing the pertinent issue by incorrectly suggesting that whether Finisar defaulted under the Indentures depends on whether Finisar made adequate financial disclosures before filing its Reports. Even if U.S. Bank had not thereby mischaracterized precedent, its argument in this regard would simply provide an additional ground for denying U.S. Bank's Motion because U.S. Bank failed to present any evidence regarding the adequacy of Finisar's disclosures.
- As an alternative to a judicial declaration that it did not default under the Indentures, Finisar seeks a declaration that acceleration would be inequitable.[4] U.S. Bank never even addresses Finisar's equitable claim.

[4] U.S. Bank is trying to keep alive an acceleration option it has never tried to exercise, despite the fact that under its theory it could have accelerated more than 16 months ago, on March 5, 2007. Apparently, U.S. Bank is not as interested in either accelerating or resolving the underlying legal questions as in keeping the *threat* of acceleration alive, to use as leverage for extracting a payoff. *Cf. UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108, 1115 ("Defendant's

- The first of two counterclaims U.S. Bank has tried to plead is for breach of contract. But U.S. Bank has presented no evidence that it or the Holders sustained any damage from the alleged breach.
- The second counterclaim U.S. Bank has attempted to plead is for reimbursement of attorney's fees. Again, however, U.S. Bank presented no evidence that the fees it seeks to recover were reasonably incurred.[5]

U.S. Bank's Motion should also be denied, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, because U.S. Bank has improperly frustrated Finisar's efforts to obtain discovery through dilatory production and unsustainable assertions of privilege.

## II. ARGUMENT

### A. U.S. Bank Was Required To Present Evidence Sufficient To Compel A Directed Verdict At Trial.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 206 S. Ct. 2548 (1986). How the moving party can meet that burden depends on what burdens it would bear at trial. Where summary judgment is sought "with respect to an issue on which the nonmoving party bears the burden of proof," the moving party can discharge its burden on summary judgment by "pointing out … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where, however, "the *moving party* bears the burden of proof at trial, it must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-1265 (5th Cir. 1991) (citation omitted).

Generally, U.S. Bank bears the burdens of production and persuasion not only on its counterclaims, but also with respect to Finisar's claims. Although Finisar is the titular plaintiff on

---

effort to accelerate the Notes was not caused by a lack of information, but by its desire to realize a windfall.")

[5] Both of U.S. Bank's purported counterclaims also are subject to dismissal on procedural grounds, as set forth in Finisar's companion Motion to Dismiss.

its declaratory judgment claims, "the question of who has the burden of proof is determined not so much by the position of the parties or by choosing *who the actor in the law suit is,* as by the *nature of the relief asked for and granted.*" *Pacific Portland Cement v. Food Mach. & Chem.*, 178 F.2d 541, 546 (9th Cir. 1949). "Where the substantive issue in a declaratory judgment action is one on which the defendant would bear the burden of affirmative proof were the action brought in traditional form, the underlying state law assignment of burdens is not altered." *United Pac. Ins. Co. v. Safety-Kleen Corp.*, 1993 WL 505393, *4 (N.D. Cal. Nov. 10, 1993), *aff'd* 79 F.3d 1154 (9th Cir. 1996) (table). Because U.S. Bank would bear the burdens of production and proof in a traditional breach of contract action, it also bears those burdens both at trial and on summary judgment in this declaratory judgment action. *See Firemans's Fund Ins. Co. v. Videgreeze Corp.*, 540 F.2d 1171, 1176 (3d Cir. 1996) ("Even though the insurer has initiated this declaratory judgment action," "seek[ing] a declaration of non-liability," "we adhere to the fundamental rule that the risk of non-persuasion 'rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue.'").

Accordingly, while it is enough for Finisar to support its Motion by pointing to a lack of evidence supporting U.S. Bank's position, U.S. Bank's burden was to present evidence sufficient to justify a directed verdict in its favor in order to prevail on *its* Motion.

**B. U.S. Bank Fails Even To Address The Real Issue.**

U.S. Bank failed to discharge its burdens of production and persuasion, and its Motion should be denied, because it does not even address the right question. U.S. Bank misattributes to Finisar the contention that "Section 4.02 requires only that [Finisar] file with U.S. Bank copies of the reports that Finisar actually files with the SEC" (U.S. Bank's Motion at 9:21-22), and U.S. Bank's Motion is directed to whether or not the Indentures required Finisar to file its Reports with the SEC. That, however, is not the issue. It is true that under the rulings of every federal court to have addressed the issue, the Indentures did *not* require Finisar to file its Reports. *See UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108, 1113 (D. Minn. 2008) ("it is the Exchange Act, not the Indenture, which compels UHG to produce a particular report"); *accord Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*, 2008 WL 373162, *4, *5, Fed.

Sec. L. Rep. P 94,577 (N.D. Tex. Feb. 12, 2008) ("§ 4.03(a) simply obligates ACS to file with the Trustee copies of the reports that ACS in fact files with the SEC"; "§ 314 does not require that ACS file anything with the SEC"). But the threshold issue in this Action is not whether the Indentures required Finisar to file its Reports, at all — which U.S. Bank admits Finisar did, in any event. (U.S. Bank's Motion at 6:11-12.) Instead, the issue is *when* the Indentures required Finisar to deliver copies of its Reports to U.S. Bank.

Section 4.02 of the Indentures plainly states that Finisar was not required to provide copies of its Reports to U.S. Bank until "15 days after it file[d] [them] … with the SEC." U.S. Bank has not come forward with any evidence, or even any argument, that Finisar failed to deliver copies of its Reports to U.S. Bank within 15 days of having filed them with the SEC, but has instead tried to change the subject by addressing a different issue (*viz.*, whether Finisar was required by the Indentures to file Reports). That is sufficient reason to deny U.S. Bank's Motion.[6]

### C. U.S. Bank Failed To Support Its Motion With Evidence That Finisar's Interim Reports Were Inadequate.

U.S. Bank claims "[t]here is a split in opinion among courts that have addressed the principal issue presented in this Action." (U.S. Bank's Motion at 1:11-12.)[7] U.S. Bank's efforts

[6] U.S. Bank has also failed to produce competent *evidence* to support its contention that Finisar failed timely to file its Reports with the SEC. U.S. Bank proffers certain assumptions and allegations regarding Finisar's filing status, fiscal calendar, filing dates, and receipt of notices of default. (U.S. Bank's Motion at 4:10-13, 21; 5:1-3, 7-8; 13:6-9.) But U.S. Bank has offered *no* evidence that Finisar is a large accelerated filer, that its fiscal quarters and years ended on the dates alleged, that Finisar did not file by certain dates, and that notices of default were received by other dates.

[7] As noted above, the principal issue in this Action is whether Finisar complied with the Indentures by providing copies of its Reports to U.S. Bank within 15 days of filing them with the SEC. On *that* issue, every federal decision (including the *only* published opinion) addressing the issue ruled in Finisar's favor. *See UnitedHealth,* 538 F. Supp. 2d at 1114 ("[P]laintiff filed with the SEC … on March 6, 2007, and sent the trustee a copy … well within the Indenture's 15-day requirement. The Indenture's term was thereby satisfied."); *Affiliated Computer,* 2008 WL 373162 at *4 ("§ 4.03(a) simply obligates ACS to file with the Trustee copies of the reports that ACS … files with the SEC … within 15 days of filing"); *Cyberonics, Inc. v. Wells Fargo Bank National Association,* 2007 WL 1729977, *5 (S.D. Tex. June 1, 2007) ("it met its express contractual obligation by providing a copy of the annual report within 15 days of having filed that report with the SEC"). Moreover, as pointed out by *Cyberonics,* 2007 WL 1729977 at *5, the unpublished state court decision U.S. Bank cites as contrary authority appears to have addressed a *different* issue, the one addressed by U.S. Bank's Motion, *viz.*, whether "there was [any] obligation to file reports with the SEC under the Indenture." *Bank of N.Y. v. BearingPoint, Inc.,*

to promote its authority and discredit the applicable federal authorities, which uniformly support Finisar's position, are generally answered in section IV.A.6 of Finisar's Motion.[8] Addressed herein is a further ground for denying U.S. Bank's Motion arising from U.S. Bank's attempt to distinguish one of the federal cases.

According to U.S. Bank, the *UnitedHealth* court "found persuasive the fact that [interim SEC filings by the issuer] included detailed financial information," which "did not differ materially" from "the financial information the issuer would alter provide" in its periodic report. (U.S. Bank's Motion at 11:19-22.) As Finisar noted in section IV.A.6.d of its Motion, the ruling in *UnitedHealth* was based not on the adequacy of financial disclosures in interim reports, but on the same considerations of contractual and statutory interpretation that should lead this Court to grant Finisar's Motion.[9] Yet even if, *arguendo,* U.S. Bank were right that *UnitedHealth* turned on the adequacy of interim financial disclosures, that would simply furnish an additional ground for denying U.S. Bank's Motion.

U.S. Bank admits that even before Finisar filed its Reports, Finisar filed several Forms 8-K (the "Interim Reports"), copies of which it provided to U.S. Bank, disclosing current financial information. (Jacobs Declaration, ¶ 16, Exs. 16-20.) U.S. Bank's misguided attempt to distinguish *UnitedHealth* incorrectly implies that Finisar defaulted under the Indentures because the disclosures in its Interim Reports were somehow inadequate. But U.S. Bank has presented no *evidence,* let alone evidence sufficient to compel a directed verdict, that the acknowledged disclosure in Finisar's Interim Reports was inadequate.

---

824 N.Y.S.2d 752 (table), 2006 WL 2670143, *8 (Sup. Ct. N.Y. Cty. Sept. 18, 2006). If *BearingPoint* is read as *Cyberonics* suggests, there is no split of authority on the *real* issue.

[8] U.S. Bank argues that *BearingPoint* should govern because it is a New York state case, and because the federal authorities supposedly misconceived the purpose of the reporting covenant. As Finisar observed in its Motion, U.S. Bank's newfound respect for state authorities is at odds with its successful argument that this is a federal question case, *BearingPoint* is not a controlling statement either of New York or of federal law, and the federal cases expressly recognized that the reporting covenant is for the benefit of the Holders. (*See* Finisar's Motion at 14:11-15:22.)

[9] Nothing in Section 4.02 of the Indentures even hints at a qualitative standard for the financial information that Finisar is to provide to U.S. Bank. Instead, Section 4.02 is purely a delivery provision, requiring Finisar to provide to U.S. Bank copies of the reports Finisar files with the SEC, within 15 days of filing them with the SEC.

U.S. Bank is on the horns of a dilemma. Either Finisar is right that *UnitedHealth* did not turn on the existence and content of interim financial disclosures, in which case U.S. Bank's effort to distinguish it fails; or *UnitedHealth* supports weighing the adequacy of interim disclosures, in which case U.S. Bank has failed to meet its burden. Either way, U.S. Bank's Motion should be denied.

**D. U.S. Bank Failed To Address Finisar's Claim For A Declaration That Acceleration Would Be Inequitable.**

By its Motion, U.S. Bank ostensibly "moves for summary judgment with respect to all claims and counterclaims of the parties." (U.S. Bank's Motion at 1:9-10.) However, according to its own summary, U.S. Bank's Motion addresses only three issues:

> (1) whether Finisar's [alleged] failure to timely file its financial reports with the SEC constituted a default under Section 4.02 of the subject indentures; (2) whether any default under Section 4.02, which has ripened into an event of default, can be cured by Finisar's subsequent filing of its financial reports with the SEC; and (3) whether Finisar is obligated to pay U.S. Bank's fees and expenses relating to this dispute.

(U.S. Bank's Motion at 2:13-17.) By its own characterization, U.S. Bank's Motion entirely fails to address Finisar's claim for a declaration that permitting acceleration of the Notes under the circumstances presented would be inequitable. (*See* Amended Complaint, ¶¶ 60, 62.) U.S. Bank's Motion should be denied as to that claim because U.S. Bank thus failed in its moving papers to discharge its "initial responsibility of informing the district court of the basis for its motion," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 206 S. Ct. 2548 (1986), and it may not now remedy the defect by presenting "new argument or materials" in an unanswered reply, *Geddes v. United Staffing Alliance Med. Plan,* 469 F.3d 919, 928 (10th Cir. 2006).

Because this claim is pleaded as an alternative to Finisar's claim that it did not default, Finisar needs only one or the other to prevail and the Court can (and should) grant Finisar summary judgment without reaching it. But summary judgment cannot be granted to U.S. Bank because U.S. Bank has not discharged its burden to defeat both alternatives.

**E. U.S. Bank Offered No Evidence Of Any Injury Flowing From Any Supposed Breach.**

U.S. Bank seeks summary judgment not only on Finisar's claims, but also on its own (defectively pleaded) counterclaims. (U.S. Bank's Motion at 1:9-10.) The first of U.S. Bank's purported counterclaims is for breach of the Indentures. However, as Finisar noted in its Motion, U.S. Bank offered no evidence of any injury flowing from Finisar's alleged breach.[10] At a minimum, U.S. Bank failed to produce evidence that would compel a directed verdict on the issue of damages. "Because damages are an essential element of a breach of contract cause of action," *Orville v. Newski, Inc.*, 155 A.D.2d 799, 800, 548 N.Y.S.2d 76 (N.Y. App. Div. 1989), U.S. Bank has failed to establish any entitlement to summary judgment on its breach of contract counterclaim.

**F. U.S. Bank Has Not Proven Its Fees Were Reasonably Incurred.**

U.S. Bank's second counterclaim seeks recovery of its attorney's fees pursuant to Section 7.06 of the Indentures, which requires Finisar to reimburse U.S. Bank for fees "incurred … in accordance with … the provisions of this Indenture" as well as "the costs and expenses of defending itself against or investigating any claim of liability in the premises." (U.S. Bank's Motion at 18:6-19.) As demonstrated by Finisar in sections IV.D.1-IV.D.3 of its Motion, under governing principles of interpretation, that provision does not entitle U.S. Bank to recover any fees. (Finisar's Motion at 20:9-23:5.) Even if, *arguendo,* U.S. Bank could recover fees pursuant to Section 7.06, still U.S. Bank's Motion would have to be denied on this issue because Section 7.06 expressly limits any recovery thereunder to expenses reasonably incurred; and U.S. Bank has presented *no* evidence, let alone evidence that would compel a directed verdict, that its fees were reasonably incurred.

The only gesture U.S. Bank made toward satisfying its burden on fees is the following sentence in paragraph 24 the Jacobs Declaration: "Through March 31, 2008, U.S. Bank's fees

---

[10] As Finisar observed in its Motion, any harm alleged by U.S. Bank flowed from previously unnoticed understatements in earlier reports, which U.S. Bank concedes were filed and delivered in accordance with Section 4.02 of the Indentures. (*See* Finisar's Motion at 19:20-20:2.) In a related vein, as noted hereinabove (in connection with U.S. Bank's misguided effort to distinguish *UnitedHealth*), Section 4.02 of the Indentures is purely a delivery provision. To the extent that U.S. Bank or the Holders perceive injury flowing from alleged deficiencies in the *content* of Finisar's reports, they must seek remedy therefor on other grounds.

and expenses totaled approximately $588,130.50." (Jacobs Declaration at 5:21-22.) Because the Jacobs Declaration purports to have been made "based upon … personal knowledge," and no foundation was laid for Ms. Jacobs personal knowledge of U.S. Bank's fees, that averment in her declaration does not even competently establish the amount of fees incurred.

Moreover, the Jacobs Declaration does not address the supposed reasonableness of U.S. Bank's fees. As summarized in section IV.D.4 of Finisar's Motion, there is plenty of reason to conclude that U.S. Bank's fees were *not* reasonably incurred, a conclusion reinforced by U.S. Bank's insistence that this Action was amenable to summary judgment without any discovery. U.S. Bank could have moved for summary judgment in this Action or its predecessor at any time. If, as U.S. Bank insists, the matter has been ripe for summary judgment all along, it was unreasonable for U.S. Bank to let this case and its companion drag on for over a year, at a cost approaching $600,000, before filing its Motion. (*See* U.S. Bank's Motion at 19:16-18.)[11]

In Finisar's view, the record permits the Court to determine, as a matter of law, that U.S. Bank's fees have not been reasonably incurred. But even if that were not so, still U.S. Bank's Motion should be denied with respect to fees because U.S. Bank has not even tried to discharge its affirmative burden to prove that its fees were reasonably incurred.

### G. At A Minimum, U.S. Bank's Motion Should Be Denied Pursuant To Rule 56(f).

Federal Rule of Civil Procedure 56(f) ("Rule 56(f)") provides: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment …" In Finisar's view, that U.S. Bank's Motion should be denied (and Finisar's granted) is conclusively demonstrated by Finisar's Motion and hereinabove. Should the Court be of a contrary view, still U.S. Bank's Motion should be denied because U.S. Bank has improperly frustrated Finisar's ability to obtain discovery on certain issues.

#### 1. U.S. Bank Has Impeded Finisar's Discovery Of Parol Evidence That Should Be Considered If The Court Finds An Ambiguity.

[11] The fact that U.S. Bank waited to move for summary judgment until the court ordered the parties to do so reinforces the impression that U.S. Bank sees more value in the *threat* of acceleration than in either its exercise or an adjudication of its availability.

Long ago, Finisar requested that U.S. Bank produce in discovery copies of other trust indentures to which it is party. (Declaration of L. Rex Sears in Support of Plaintiff Finisar Corporation's Opposition to U.S. Bank Trust National Association's Motion For Summary Judgment ["Sears Declaration"] submitted herewith, Ex. A at 7:12-17.) Finisar expected that, as in other federal cases that have decided the same issue as in this case, the other trust indenture agreements would contain a variety of different clauses regarding provision of SEC reports to the trustee. This variety would demonstrate one of the key points made by each of the three federal courts that have decided the issue; namely, that the indenture agreements are contracts whose actual, unique terms must govern, rather than what the trustee might in hindsight wish had been a selected contractual term. For months, however, U.S. Bank refused to produce any of the indentures sought. (*See* Sears Declaration, Ex. B at 11:8-15; Ex. C.) Finally, U.S. Bank agreed to produce copies of indentures whose administration was being overseen by Ms. Jacobs, the deponent U.S. Bank designated to testify for it in this Action, because U.S. Bank believed the issuers to be in default thereunder (whether for failure to provide copies of SEC reports or for other reasons). (Sears Declaration, Ex. D.) Even then, it was many weeks before the U.S. Bank actually produced those indentures. (*See* Sears Declaration, Ex. E.) Of the twelve indentures finally produced on June 9, 2008, six have a provision requiring the obligor to provide copies of its SEC reports to the trustee, while the other six have no such provision. (Sears Declaration, Exs. F-K.)

Section 4.02 of the Indentures here at issue permits Finisar to file copies of its SEC reports with U.S. Bank at any time "within 15 days after it files … with the Commission" and makes no provision respecting when Finisar should file the originals with the SEC. One of the six indentures with reporting provisions produced by U.S. Bank similarly provides: "The Company shall file with the Trustee, within fifteen days after it … files the same with the SEC, copies of the … reports … that the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the Exchange Act." (Sears Decl., Ex. F.) However, the other five are instructively different. Indeed, one of those other indentures says just what U.S. Bank says the differently-worded Indentures here at issue in this case should be interpreted to mean:

> [T]he Company *shall file with ... the SEC* such … reports as are specified in Sections 13 and 15(d) of the Exchange Act … *at the times specified for the filing of such ... reports under such Sections* (the "Required Filing Times") . . . . The Company shall also … *within 15 days of each Required Filing Time,* provide the Trustee … with copies of such reports.

(Sears Declaration, Ex. G.) Another provides:

> [T]he Company shall furnish to the Holders … all quarterly and annual financial information … required to be contained … on Forms 10-Q and 10-K … *within the time periods specified in the SEC's rules and regulations.*

(Sears Declaration, Ex. H.) Two others similarly provide:

> The Company shall file with the Trustee … reports required to be filed with the Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 … within 15 days after the same is *so required to be filed* with the Commission.

(Sears Declaration, Exs. I and J.) And still another provides:

> The Company shall: file with the Trustee, within 15 days after the Company *is required to file the same* with the Commission, … reports … which the Company may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act.

(Sears Declaration, Ex. K.)

Whether and how these other indentures should be considered may depend on whether the Court determines there is an ambiguity in the Indentures at issue in this case. Like California, New York law[12] permits "[e]xtrinsic evidence of the parties' intent [to] be considered only if the agreement is ambiguous," and classifies the determination of whether a contract is ambiguous as "an issue of law for the courts to decide." *Greenfield v. Philles Records,* 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002); *accord Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 40, 442 P.2d 641 (1968). However, New York law diverges from California's regarding how the Court is to discharge that duty. To make that threshold determination, "in addition to the language of the contract," "California courts preliminarily consider *all* credible evidence of the parties' intent," including parol. *Greenfield,* 98 N.Y.2d at 574 (emphasis added); *see also United States Inv. Co. v. GTE MobilNet, Inc.*, 281 F.3d 929, 939 (9th Cir. 2002) ("a court is required to engage in a preliminary consideration of credible [parol] evidence offered to prove the intention of the parties . . . . Then, if the court decides, after

[12] The Indentures at issue in this Action are governed by New York law.

considering this evidence, that the language of the contract is 'fairly susceptible to either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.'") (citing and quoting *Pacific Gas,* 69 Cal.2d at 40). "In contrast … New York has long applied" "the 'four corners' rule," *Greenfield,* 98 N.Y.2d at 574, according to which "[a]mbiguity is determined by looking within the four corners of the document, not to outside sources," *Kass v. Kass,* 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (1998); *see also W.W.W. Assocs. v. Giancontieri,* 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990) ("The question … whether extrinsic evidence should be considered in order to *create* an ambiguity in the agreement . . . . must be answered in the negative."). Under New York law, both to interpret a contract and "in deciding whether an agreement is ambiguous," *Kass,* 91 N.Y.2d 554 at 566, "the court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed," *Atwater & Co. v. Panama R.R. Co.,* 246 N.Y. 519, 524, 159 N.E. 418 (1927).

Nothing in the four corners of the Indentures, the relation of the parties, or the circumstances under which the Indentures were executed supports reading Section 4.02 to impose any deadline for Finisar to file with the SEC. To the contrary, as set forth in Finisar's Motion and hereinabove, the relation of the parties and the circumstances of the Indentures' execution simply confirm that the Indentures mean what they say. However, were parol to be considered, it would confirm Finisar's position.

The *present* point is that U.S. Bank's obstruction of Finisar's discovery has frustrated Finisar's ability properly to authenticate the belatedly-produced indentures quoted above. (*See* Sears Decl., ¶ 13.) To the extent that the Court finds an ambiguity in the Indentures here at issue, so as to permit that parol to be considered, the Court should deny U.S. Bank's Motion to give Finisar adequate time to perfect (and further develop) its evidentiary record.

**2. U.S. Bank Has Refused To Provide Discovery Relating To Damages.**

U.S. Bank has unfairly and improperly prevented Finisar from obtaining discovery regarding any damages that might be alleged to flow from Finisar's supposed breach of the Indentures. During deposition, Finisar asked U.S. Bank's designee to disclose information U.S.

Bank might have regarding injury suffered by the Holders. (*See* Plaintiff Finisar Corp.'s Motion to (1) Compel Production of Documents; (2) Compel Deposition Testimony; and (3) For Additional Time to Complete Deposition ["Motion to Compel"], 15.) The witness was instructed and refused to answer, based on U.S. Bank's contention that its communications with the Holders are protected by the common interest extension of the attorney-client privilege. (*Id.*) However, because the Holders were not represented by counsel, the common interest doctrine is inapplicable. *See In re Teleglobe Comms. Corp.*, 493 F.3d 345, 364 ("to be eligible … the communication must be shared with the *attorney* of the member of the community of interest"); *Cavallaro v. United States*, 153 F. Supp. 2d 52, 61 (D. Mass. 2001) ("Under the strict confines of the common-interest doctrine, the lack of representation for the remaining parties vitiates any claim to privilege.").

On June 17, 2008, Magistrate Judge Trumbull heard and then took under submission Finisar's Motion to Compel. Even if the Court were to determine that U.S. Bank had met its burden to produce evidence that would compel a directed verdict on the other elements of its breach of contract counterclaim, still U.S. Bank's Motion should be denied until Finisar's Motion to Compel is adjudicated and Finisar obtains the discovery on damages to which it is entitled. (*See* Sears Decl., ¶ 14.)

**3. U.S. Bank Has Refused To Disclose Evidence Further Demonstrating That Its Fees Were Not Reasonably Incurred.**

Finally, U.S. Bank has unfairly and improperly prevented Finisar from obtaining still further evidence that U.S. Bank's fees have not been reasonably incurred. By way of illustration, based on U.S. Bank's erroneous assertion of privilege, its designee refused to answer the question, "Have any of the holders asked U.S. Bank to continue with the litigation?" (*See* Motion to Compel at 17:1-9.) Clearly, this line of inquiry is reasonably calculated to discover evidence relevant to whether U.S. Bank has incurred fees reasonably. Accordingly, even if the Court were to determine that U.S. Bank could recover reasonably incurred fees under the Indentures, notwithstanding the contrary points and authorities set forth in sections IV.D.2 and IV.D.3 of Finisar's Motion, still U.S. Bank's Motion should be denied pursuant to Rule 56(f) because U.S.

Bank has improperly frustrated Finisar's discovery of evidence relevant to the reasonableness of U.S. Bank's fees. (*See* Sears Decl., ¶ 15.)

**III. CONCLUSION**

U.S. Bank's Motion should be denied, and Finisar's granted, for all of the reasons set forth in Finisar's Motion. However, even if Finisar's Motion were to be denied, still U.S. Bank's Motion should also be denied for the reasons given herein.

DATED: June 20, 2008

Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP

By /s/ Sterling A. Brennan
Sterling A. Brennan
Attorneys for Plaintiff FINISAR CORPORATION

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com; Eva K. Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; and Paul T. Friedman, pfriedman@mofo.com.

**WORKMAN NYDEGGER**

/s/ Sterling A. Brennan
STERLING A. BRENNAN
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah, 84111