D. ANTHONY RODRIGUEZ (CA SBN 162587)
EVI K. SCHUELLER (CA SBN 237886)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: DRodriguez@mofo.com
Email: ESchueller@mofo.com

MICHAEL B. FISCO (MN No. 175341)
EDWARD T. WAHL (MN No. 15409X)
ABBY E. WILKINSON (MN No. 0313981)
(*Pro hac applications granted*)
FAEGRE & BENSON LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota  55402-3901
Telephone: 612.766.7000
Facsimile: 612.766.1600
Email: mfisco@faegre.com
Email: awilkinson@faegre.com

Attorneys for Defendant U.S. Bank Trust National Association,
in its capacity as Indenture Trustee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity, but solely in its capacity as Indenture Trustee on behalf of all Holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.     C 07-4052 JF (PVT)<br><br>**DEFENDANT U.S. BANK TRUST NATIONAL ASSOCIATION'S OPPOSITION TO FINISAR CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        July 11, 2008<br>Time:       9:00 a.m.<br>Judge:      The Hon. Jeremy Fogel<br>Location:  Courtroom 3 |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ...................................................................................................................................... 2

I.  SECTION 4.02 OF THE INDENTURES REQUIRES FINISAR TO TIMELY FILE ITS REPORTS WITH THE INDENTURE TRUSTEE, ENSURING THAT NOTEHOLDERS RECEIVE CURRENT FINANCIAL INFORMATION ON WHICH THEY CAN MAKE INFORMED INVESTMENT DECISIONS. ................................................................. 3

   A.  This Court Has Already Concluded that Finisar's Duty to Provide Financial Reports to the Indenture Trustee Arises Under Federal Statutes and that Section 4.02 of the Indentures is a Mechanism to Enforce the Provisions of Those Statutes .................................................... 4

   B.  Even if Finisar Was Not Subject to the Exchange Act's Reporting Requirements, It would Still Be Obligated to Timely Provide Financial Reports to the Indenture Trustee Under Section 4.02 of the Indentures. ......................................................................................... 6

   C.  Finisar Failed to Satisfy Its Reporting Obligations Under Section 4.02 of the Indentures ........................................................................ 7

II. FINISAR FILED THESE ACTIONS TO DELAY THE INDENTURE TRUSTEE SO THAT FINISAR COULD RESTATE ITS FINANCIAL STATEMENTS WITHOUT CONSEQUENCE. ............................................................. 9

   A.  U.S. Bank Acted Prudently When It Determined Not to Accelerate the Notes Pending This Court's Ruling on Finisar's Demand for Declaratory Judgment. ................................................................................. 9

   B.  Finisar Has Not Cured the Existing Events of Default Under Section 6.01 of the Indentures, Entitling the Trustee to Exercise All Rights and Remedies Available to It, Including Acceleration of the Notes. ........................................................................................................ 10

III. FINISAR IS CONTRACTUALLY OBLIGATED TO PAY THE INDENTURE TRUSTEE'S FEES AND EXPENSES.  U.S. BANK'S ACTIONS, IN ITS CAPACITY AS INDENTURE TRUSTEE, HAVE BEEN REASONABLE, NECESSARY, AND APPROPRIATE. ................................. 11

   A.  Finisar is Obligated to Pay the Indenture Trustee's Fees and Expenses Under Section 7.06 of the Indentures Regardless of Whether a Default Exists Thereunder. ....................................................... 11

   B.  All, or Substantially All, of the Fees and Expenses Incurred by U.S. Bank in this Matter are in Response to and as a Result of Actions Taken by Finisar ......................................................................................... 13

   C.  U.S. Bank Has Acted Reasonably and Appropriately Throughout These Proceedings ..................................................................................... 14

CONCLUSION ................................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ABS P'ship v. AirTran Airways, Inc.*,
  765 N.Y.S.2d 616 (1st Dep't 2003) .................................................................................. 3, 6

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*,
  No. 3:06-CU-1770-D, 2008 WL 373162 (N.D. Tex. Feb. 12, 2008) .............................. 5, 6, 8

*Bank of New York v. BearingPoint, Inc.*,
  824 N.Y.S.2d 752, 2006 WL 2670143 (Sup. Ct. N.Y. Cty Sept. 18, 2006) ........... 3, 5, 6, 9, 13

*Cyberonics, Inc. v. Wells Fargo Bank Nat'l Ass'n*,
  No. H-07-121, 2007 WL 1729977 (S.D. Tex. June 13, 2007)....................................... 5, 6, 13

*Dolman v. U.S. Trust Co.*,
  2 N.Y.2d 110 (1956) .................................................................................................................. 7

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487 (Ct. App. 1989)............................................................................................... 12

*Mayo v. Royal Ins. Co. of Am.*,
  662 N.Y.S.2d 654 (4th Dept. 1997) .......................................................................................... 7

*Resolution Trust Corp. v. Diamond*,
  45 F.3d 665 (2d Cir. 1995).......................................................................................................... 7

*Soc'y for Advancement of Educ., Inc. v. Gannett Co., Inc.*,
  No. 98 Civ. 2135 LMM, 1999 WL 33023 (S.D.N.Y. Jan. 21, 1999) ..................................... 12

*U.S. Trust Co. of New York v. Executive Life Ins. Co.*,
  602 F. Supp. 930 (S.D.N.Y. 1984), *aff'd*, 791 F.2d 10 (2d Cir. 1986) .................................. 2

*UnitedHealth Group Inc. v. Wilmington Trust Co.*,
  538 F. Supp.2d 1108 (D. Minn. 2008) ..................................................................... 5, 6, 8, 10

*Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.*,
  626 N.Y.S.2d 61 (1st Dep't 1995) ............................................................................................ 3

**STATUTES**

15 U.S.C.
  § 77nnn(a) ................................................................................................................................. 4
  § 78m(a) .................................................................................................................................... 5

California Civil Code
  § 1717(a) ............................................................................................................................... 11

California Code of Civil Procedure
  § 1033.5(a)(10) ..................................................................................................................... 11

## INTRODUCTION

Finisar Corporation ("Finisar") commenced this Action against U.S. Bank Trust National Association, in its capacity as indenture trustee for holders of approximately $250,000,000 of debt securities ("U.S. Bank" or the "Trustee"), seeking declaratory relief that its failure to timely file annual and quarterly reports with the SEC did not constitute defaults under its indentures with U.S. Bank. U.S. Bank moved for summary judgment on April 24, 2008, with respect to all claims and counterclaims of the parties ("U.S. Bank Motion").[1] U.S. Bank files this opposition in response to Finisar's cross-motion for summary judgment dated June 6, 2008 ("Finisar Motion").

The parties do not dispute the facts relevant to the cross-motions for summary judgment. In its motion, Finisar questions the motives of the Trustee in defending the claims brought by Finisar. These allegations are not only baseless, but they are irrelevant to the issues before this Court. Finisar appointed U.S. Bank to act as indenture trustee for noteholders. In that capacity, U.S. Bank must act to represent the common interests of noteholders under the Indentures, and must enforce those interests when Finisar fails to perform thereunder. Notably, U.S. Bank does not have a pecuniary interest in this litigation.

As indenture trustee, U.S. Bank is obligated to send notices of default to Finisar. U.S. Bank delivered a notice of default to Finisar after it failed to timely file its reports with the SEC and Trustee. Finisar subsequently commenced this litigation to determine whether its failure to timely file constituted a default under the Indentures. Given that this issue has been the subject of litigation throughout the country, Finisar's request for relief, while precipitous, was not unreasonable. U.S. Bank therefore determined not to accelerate the Subordinated Notes pending a ruling on the disputed issue. Under the circumstances, U.S. Bank's approach was reasonable. If U.S. Bank or the noteholders had accelerated, Finisar undoubtedly would have sought injunctive relief.

---

[1] The exhibits cited in this response refer to the exhibits attached to the Declaration of Diana Jacobs dated April 24, 2008 ("Jacobs Decl."), filed in support of the U.S. Bank Motion. All capitalized terms used in this response and not otherwise defined shall have the meanings given to such terms in the U.S. Bank Motion.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT                                                                                                1
CASE NO. C07-4052 JF (PVT)

Finisar makes much of the fact that the decisions rendered since commencement of this Action have come down in its favor. The recent case law, however, has little or no relevance to this Action for several reasons. First, none of the decisions are binding on this Court. Second, the cases are factually distinguishable and/or contain covenant language that is dissimilar to the reporting covenant in this case. And most importantly, the decisions do not reflect the other cases on this issue to have been resolved short of litigation or a judicial ruling. For example, the *Landry's* case cited by Finisar illustrates only that other cases have been resolved, short of trial, in favor of U.S. Bank's interpretation of the reporting covenant at issue in this case.[2] Accordingly, this Court is free to address the Indentures' reporting requirements and the underlying policies relevant to those reporting requirements under the Exchange Act and TIA.

For the reasons set forth below, and in U.S. Bank Motion, U.S. Bank requests that this Court hold that Section 4.02 of the Indentures requires Finisar to timely file its financial reports with the SEC and the Trustee. Regardless of the ruling on the merits, U.S. Bank is entitled to its fees and expenses in defending the claims brought by Finisar. Finisar appointed U.S. Bank to represent the interests of noteholders in this litigation and U.S. Bank has done so in a reasonable and prudent manner.

**ARGUMENT**

There are no disputed issues of material fact in this Action. Instead, the parties dispute the meaning of Section 4.02 of the Indentures — the reporting covenant — and the Trustee's right to payment of its fees and expenses under Section 7.06. This Action is, therefore, particularly suited to summary judgment. *See U.S. Trust Co. of New York v. Executive Life Ins. Co.*, 602 F. Supp. 930, 936 (S.D.N.Y. 1984), *aff'd*, 791 F.2d 10 (2d Cir. 1986) (interpretation of indentures is "ordinarily well-suited for a motion for summary judgment").

---

[2] In a settlement context, resolution of covenant defaults will depend entirely on the facts and circumstances of each case. The statement made in the *Beazer Homes'* sur-reply regarding settlement in *Landry's* is not "bragging," as Finisar insinuates. The statement simply makes the point that the favorable settlement obviously recognizes the parties' belief that U.S. Bank would have prevailed if the matter continued to trial.

**I.   SECTION 4.02 OF THE INDENTURES REQUIRES FINISAR TO TIMELY FILE ITS REPORTS WITH THE INDENTURE TRUSTEE, ENSURING THAT NOTEHOLDERS RECEIVE CURRENT FINANCIAL INFORMATION ON WHICH THEY CAN MAKE INFORMED INVESTMENT DECISIONS.**

Under Section 4.02 of the Indentures, titled "[Commission/SEC] and Other Reports," Finisar agreed to file with the Trustee copies of those reports it is required to file under Section 13 or 15(d) of the Exchange Act. The rules and regulations accompanying the Exchange Act establish what information must be included in Finisar's quarterly and annual reports and the deadlines by which Finisar must file them. According to Finisar, Section 4.02 incorporates the Exchange Act's filing deadlines only when Finisar is no longer subject to its reporting requirements. (Finisar Motion at 7-8.)

The Indentures are governed by New York law. (Indentures § 13.09.) Under New York law, contracts must be construed to effectuate the parties' intent, with reference to the agreement as a whole. *ABS P'ship v. AirTran Airways, Inc.*, 765 N.Y.S.2d 616, 619-20 (1st Dep't 2003); *see also Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.*, 626 N.Y.S.2d 61, 64 (1st Dep't 1995) ("contracts should be construed to give force and effect to their provisions... and not in a manner so as to render them meaningless" (citations omitted)).

Section 4.02 is intended to ensure that the noteholders possess financial information regarding the issuer. Finisar agrees. (Finisar Motion at 15.) The court in *BearingPoint*, recognizing the stated purpose of a reporting covenant, remarked that the covenant expresses "that which is known to the investment community, i.e. that only by guarding against incomplete information, can investors make informed decisions about their investment and guard against the risks attendant to incomplete information." *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d 752, 2006 WL 2670143, *7 (Sup. Ct. N.Y. County Sept. 18, 2006).

Although Finisar acknowledges the purpose of Section 4.02, it argues that the reporting covenant entitles the noteholders to nothing more than that which the market receives, when it receives it. According to Finisar, "Congress enacted a scheme pursuant to which Finisar is answerable to the SEC, not U.S. Bank, for the timeliness of its filings." (Finisar Motion at 8.) Unlike equity security holders, however, the noteholders separately rely, by contract, on the

indenture trustee to enforce their right to receive timely financial information.[3]  The contract (in this case, the Indentures) assures noteholders, who have no economic upside in the success of Finisar's business, that they will receive adequate financial information to monitor their investments.

In this respect, it is important to recognize that debt securities, like the Subordinated Notes, are freely and regularly traded based on the issuer's financial performance.  For this reason, among others, the parties intended the reporting covenant to require the issuer to comply, at all times, with the Exchange Act's reporting deadlines.  Nothing in the model indentures or the related commentaries cited by Finisar contradict this interpretation of Section 4.02.

### A. This Court Has Already Concluded that Finisar's Duty to Provide Financial Reports to the Indenture Trustee Arises Under Federal Statutes and that Section 4.02 of the Indentures is a Mechanism to Enforce the Provisions of Those Statutes.

In determining that the Action presents a federal question, this Court concluded "that Finisar's duty to provide documents to the Trustee arises under federal statutes and that Section 4.02 of the Indentures is a mechanism to enforce the provisions of those statutes." (Ex. 34 at 4.)  In so holding, the Court noted that the Indentures incorporate both the Exchange Act and the TIA.  (*Id.*)

Section 4.02 expressly incorporates Section 314(a) of the TIA, which provides: "Each person who . . . is or is to be an obligor upon the indenture securities . . . shall: (1) file with the indenture trustee copies of the annual reports and of the information, documents, and other reports . . . *which such obligor is required to file with the Commission pursuant to [section 13 or 15(d)] of this title [the Securities Exchange Act of 1934]*."  15 U.S.C. § 77nnn(a) (emphasis added).

---

[3] Finisar's argument that the Trustee improperly seeks to bring a private right of action for violation of federal law is nothing more than a smokescreen.  The parties agreed, *by contract*, to incorporate the Exchange Act's reporting obligations.  It is these obligations that the Trustee seeks to enforce.

Section 13 of the Exchange Act, which is also incorporated by reference under Section 4.02, provides, in turn, that "[e]very issuer of a security registered pursuant to [section 12] of this title *shall file* with the Commission" quarterly and annual reports as the SEC may prescribe "for the proper protection of investors and to insure fair dealing in the security." 15 U.S.C. § 78m(a) (emphasis added). The deadlines by which an issuer is obligated to file the required reports are established under the Exchange Act.[4]

Finisar does not dispute that it is obligated to file reports with the SEC as and when the applicable regulations require. (Finisar Motion at n.7.) Nor does Finisar dispute that it failed to comply with those regulations. (Ex's 4-7.) Finisar asserts, nevertheless, that Section 4.02 requires only that it provide copies of its annual and quarterly reports to U.S. Bank within 15 days after having actually filed them with the SEC. (Finisar Motion at 1.)

In support of its position, Finisar cites to the decisions rendered in *Cyberonics*, *Affiliated*, and *UnitedHealth Group*.[5] These courts determined that the reporting covenants at issue, similar to Section 4.02 (with the notable exception described below), did not obligate the issuer to file its financial statements with the indenture trustee by the Exchange Act's reporting deadlines.

As U.S. Bank has previously stated, however, *BearingPoint* is the only court to have construed the reporting covenant, such that its stated purpose is given meaning. The court determined, as this Court already has, that the parties intended the reporting covenant to incorporate both the Exchange Act and TIA. *BearingPoint, Inc.*, 2006 WL 2670143, *7 (the reporting covenant expressly and unambiguously obligates the issuer to timely make the required SEC filings with the indenture trustee). The court found that the issuer's "tortured parsing of this provision to read the section as making SEC filings optional under the terms of the Indenture,

---

[4] *See* United States Securities and Exchange Commission, General Instructions for Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and General Instructions for Form 10-Q, *available at* http://www.sec.gov (last visited June 20, 2008).

[5] *See Cyberonics, Inc. v. Wells Fargo Bank Nat'l Ass'n*, No. H-07-121, 2007 WL 1729977 (S.D. Tex. June 13, 2007); *Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*, No. 3:06-CU-1770-D, 2008 WL 373162 (N.D. Tex. Feb. 12, 2008); and *UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp.2d 1108 (D. Minn. 2008).

1  vitiates the clear purpose of the Indenture to provide information to the investors so that they may
2  protect their investment." *Id.* The court further determined that "Section 314(a) of the TIA
3  specifically obligates an issuer of bonds or notes, such as BearingPoint, to provide the Indenture
4  Trustee with current SEC filings." *Id.*

5  Unlike the courts in *Cyberonics*, *Affiliated*, and *UnitedHealth Group*, the *BearingPoint*
6  court is the only one to have understood that the Exchange Act's filing deadlines are equally as
7  important to the noteholders as the filing requirements themselves.

8  **B.    Even if Finisar Was Not Subject to the Exchange Act's Reporting Requirements, It would Still Be Obligated to Timely Provide Financial Reports to the Indenture Trustee Under Section 4.02 of the Indentures.**

10  Section 4.02, read in its entirety, makes clear that Finisar is required to file its financial
11  statements by the Exchange Act's deadlines even if it is no longer a required filer thereunder.
12  And while U.S. Bank respectfully disagrees with the decisions rendered by the Minnesota and
13  Texas courts in *Cyberonics*, *Affiliated*, and *UnitedHealth Group*, it notes that the reporting
14  covenants construed in those cases did not expressly incorporate the following language, which
15  makes Finisar's continuing obligation to timely file under Section 4.02 clear:

> If at any time the Company is not subject to Section 13 or 15(d) of
> the Exchange Act, such reports shall be provided *at the times the*
> *Company would have been required to provide reports* had it
> continued to [be/have been] subject to such reporting requirements.

19  (Indentures § 4.02 (emphasis added).)

20  Finisar concedes that the language of Section 4.02 subjects it to the Exchange Act's
21  reporting deadlines. (Finisar Motion at 7.) It argues, nevertheless, that those reporting deadlines
22  come into play only when it is no longer subject to the Exchange Act's reporting requirements.
23  (*Id.*) Finisar's interpretation arbitrarily divides Section 4.02 into two separate reporting
24  obligations. Section 4.02 read in its entirety, however, makes clear that the parties intended
25  Finisar, regardless of its status as a required filer, to provide timely financial information to
26  noteholders. *ABS P'ship*, 1 A.D.3d at 28 (It is a basic principle of contract law that all provisions
27  of a contract must be interpreted so as to give them effect.)
28

1       At the outset, Section 4.02 assumes Finisar's compliance with the Exchange Act's
reporting requirements, including the deadlines established thereunder. *Mayo v. Royal Ins. Co. of Am.*, 662 N.Y.S.2d 654 (4th Dept. 1997) ("[I]t is basic that, unless a contract provides otherwise, the law in force at the time the agreement is entered into becomes as much a part of the agreement as though it were expressed or referred to therein . . . ." (*quoting Dolman v. U.S. Trust Co.*, 2 N.Y.2d 110, 116 (1956))); *see also Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 673 (2d Cir. 1995) ("When parties enter into a contract, they are presumed to accept all the rights and obligations imposed on their relationship by state (or federal) law.")  When Finisar is no longer subject to the Exchange Act, its compliance cannot be assumed. The parties therefore explicitly set out, in Section 4.02, Finisar's continuing obligation to comply with the Exchange Act's reporting obligations.

The facts of this case highlight the importance of Finisar's continuing obligation to provide timely financial information to the Trustee and noteholders. On December 4, 2007, Finisar filed its long-delayed reports with the SEC. In all, the restatement resulted in additional losses of approximately *$113.7 million*. (Ex. 13 at 37-44.)  Finisar informed investors in the restated reports that it may have "insufficient cash flow to meet [its] debt service obligations, including payments due on [the] subordinated convertible notes" issued under the Indentures. (*Id.* at 18.)  Finisar also informed investors that it may be unable to obtain sufficient capital to repay the principal on the Subordinated Notes. (*Id.* at 19.)

And although Finisar suggests that its previously unreported losses are not the subject of the conduct at issue in this Action, they very much are. (Finisar Motion at 19.)  Had Finisar timely provided financial information to the Trustee, as the Indentures require it to do, then the noteholders would have had the information they require to make informed investment decisions regarding their interest in the Subordinated Notes.

**C.    Finisar Failed to Satisfy Its Reporting Obligations Under Section 4.02 of the Indentures.**

Section 4.02 of the Indentures requires Finisar to file with the Trustee copies of those reports as the SEC "may by rules or regulations prescribe." (Indentures § 4.02.)  The general

rules and regulations accompanying the Exchange Act set out, in detail, what information must be included in an issuer's annual and quarterly reports, in addition to when those reports must be filed. Among other things, a Form 10 Q and Form 10 K must include: (1) financial statements; (2) management's discussion and analysis of financial condition and results of operation; (3) quantitative and qualitative disclosures about market risk; (4) controls and procedures; (5) legal proceedings; and (6) risk factors.[6]

Before filing its long-delayed reports on December 4, 2007, Finisar had not filed reports under the Exchange Act or provided equivalent financial information to the Trustee or noteholders since *September 8, 2006*. (Jacobs Decl. ¶ 13; Ex. 15.) During this more than one year period, Finisar intermittently filed Forms 8-K with the SEC and Trustee to report certain material events and corporate changes. (Ex. 15; Cmplt. ¶ 5.) These reports, which were only one or two pages in length, provided only vague and non-GAAP financial information to Finisar's investors. Moreover, the reports warned investors of the limited reliability of such information given the ongoing stock option grants review. (Ex's 16, 17, 18, 19 and 20.)

Finisar cannot dispute that its interim reports did not include the types of financial information required in a Form 10-Q or Form 10-K; namely, a balance sheet, a cash flow statement and other financial information critical to the company's investors (e.g., liabilities and profits/losses). Such was not the case in *UnitedHealth Group*, where the court found persuasive the fact that the issuer has provided interim financial information almost identical to that contained in a Form 10-Q. *UnitedHealth Group*, 538 F. Supp. 2d at 1110; *see also Affiliated*, 2008 WL 373162, *6, n.3 (during its four-month restatement period, issuer provided financial information to the public, including the estimated cost of its backdating practices).

Although Finisar offered to provide additional financial information to the Trustee and noteholders during the interim period, that offer was subject to an agreement of confidentiality among the parties. Even assuming Finisar had provided a reasonable form of confidentiality

---

[6] *See* United States Securities and Exchange Commission, Form 10-K Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and Form 10-Q, *available at* http://www.sec.gov (last visited June 20, 2008).

agreement to the parties, which it did not, the offer would not have served Section 4.02's purpose. Confidential financial information restricts a noteholders' ability to trade. It is useful to noteholders, therefore, only when the issuer is willing to discuss settlement and/or restructuring options. Despite acknowledging its financial problems, Finisar has been unwilling to do either with the Trustee or noteholders.

## II. FINISAR FILED THESE ACTIONS TO DELAY THE INDENTURE TRUSTEE SO THAT FINISAR COULD RESTATE ITS FINANCIAL STATEMENTS WITHOUT CONSEQUENCE.

U.S. Bank sent its first series of default notices to Finisar on January 4, 2007. Those defaults ripened into Events of Default under the Indentures on March 5, 2007. Finisar made no attempt to contact the Trustee or, on information and belief, the noteholders to discuss its financial situation or its failure to file the reports with the SEC. Instead, on March 2, 2007, three days prior to the date the defaults ripened into Events of Default, Finisar commenced the First Declaratory Judgment Action. Finisar's actions were clearly designed to buy itself more time to restate its financial statements.

At the time Finisar filed the First Declaratory Judgment Action, only one other court had rendered a decision on the default at issue in this Action — *BearingPoint*. Because Finisar made no attempt to communicate with the Trustee prior to filing the action, U.S. Bank had no choice but to defend the litigation and seek clarification as to the noteholders' rights under Section 4.02 of the Indentures.

### A. U.S. Bank Acted Prudently When It Determined Not to Accelerate the Notes Pending This Court's Ruling on Finisar's Demand for Declaratory Judgment.

When Finisar first commenced this Action, it asked the Court to determine that it had not defaulted under Section 4.02 of the Indentures; or, in the alternative, to determine that any acceleration of the Subordinated Notes under the facts presented would be inequitable. In light of Finisar's request for declaratory relief, U.S. Bank reasonably and prudently determined to wait for a ruling before exercising the remedies available to it under the Indentures.

Finisar commenced this Action on its own initiative to prevent any acceleration of the Subordinated Notes, not as a result of any "threat" by the Trustee. (Finisar Motion at n.4.) Had

the Trustee taken action to accelerate the notes, Finisar undoubtedly would have sought injunctive relief and damages against the Trustee. The facts of this case are precisely the situation contemplated by Section 6.03 of the Indentures (set out below), which provides that any delay by the Trustee in exercising a right or remedy under the Indentures does not act as a waiver of such right or remedy (whether the delay is caused by negotiation among the parties or litigation to establish the parties' rights and interests under the Indentures).

Acceleration is a right afforded to the Trustee and noteholders under the Indentures. (Indentures § 6.02.) It is not a threat. Nor can acceleration seriously be viewed as a means for obtaining a windfall in this case, as Finisar insinuates. (Finisar Motion at n.14, n.18.) Of the approximately $250,000,000 principal outstanding on the Subordinated Notes, $125,000,000 comes due in less than 4 months, on October 15, 2008. The remaining $125,000,000 comes due in approximately 2 years, on October 15, 2010. Such was not the case in *UnitedHealth Group*, which Finisar relies on at footnotes 14 and 18, where the notes come due on May 15, 2036. *UnitedHealth Group*, 538 F. Supp. 2d at 1109. Requiring Finisar to repay its debt obligations only months before those obligations actually come due hardly constitutes a windfall to noteholders.

**B.    Finisar Has Not Cured the Existing Events of Default Under Section 6.01 of the Indentures, Entitling the Trustee to Exercise All Rights and Remedies Available to It, Including Acceleration of the Notes.**

Finisar argues that it cured the existing Events of Default under the Indentures when it filed its delayed financial reports and, as a result, the Trustee is now barred from accelerating the Subordinated Notes. As more fully set forth in the Trustee's motion for summary judgment, Finisar can cure the existing Events of Default only by obtaining a waiver from the holders of the Subordinated Notes given Finisar's delay in filing its reports. Section 6.04 of the Indentures, titled "Waiver of Past Defaults," provides that the holders of a majority in aggregate principal amount of the Subordinated Notes outstanding, by notice to the Trustee, may waive an existing Default and its consequences. (Indentures § 6.04.) Section 6.04 further provides that when a Default is waived, it is deemed cured. (*Id.*) Finisar has not obtained or sought a waiver of the existing Events of Default from the noteholders.

But even if, *arguendo*, Finisar had cured the existing Events of Default by filing its reports in December 2007, U.S. Bank has not waived its right to accelerate the Subordinated Notes or to exercise any other remedy available to it. Section 6.03 of the Indentures provides:

> A delay or omission by the Trustee or any Noteholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of, or acquiescence in, the Event of Default.

(Indentures § 6.03.) Finisar has inequitably used this litigation as a shield to protect itself from acceleration of the notes, and also as a sword to use the delay caused thereby to restate its reports, claiming now that no acceleration may be declared. (*See* U.S. Bank Motion n.12.)

### III. FINISAR IS CONTRACTUALLY OBLIGATED TO PAY THE INDENTURE TRUSTEE'S FEES AND EXPENSES. U.S. BANK'S ACTIONS, IN ITS CAPACITY AS INDENTURE TRUSTEE, HAVE BEEN REASONABLE, NECESSARY, AND APPROPRIATE.

#### A. Finisar is Obligated to Pay the Indenture Trustee's Fees and Expenses Under Section 7.06 of the Indentures Regardless of Whether a Default Exists Thereunder.

Finisar appointed U.S. Bank to serve as indenture trustee for holders of the Subordinated Notes. As indenture trustee, U.S. Bank is entitled to payment of its fees and expenses under Section 7.06 of the Indentures, titled "Compensation and Indemnification of Trustee and Its Prior Claim." Despite its contractual obligations under Section 7.06, Finisar now argues that it should not have to pay U.S. Bank's fees or expenses.

In support of its argument, Finisar first argues that it is not obligated to pay U.S. Bank under what it describes as the "fees clause" because Finisar was never in default under the Indentures. (Finisar Motion at 21.) Under the "fees clause," however, Finisar covenanted and agreed to pay U.S. Bank upon its request for all reasonable expenses incurred by the indenture trustee, including the fees and expenses of its professionals, regardless of any default.[7] Finisar

---

[7] In a footnote, Finisar states that by operation of California Civil Code § 1717(a) and California Code of Civil Procedure § 1033.5(a)(10), the prevailing party in this Action will be entitled to recover its fees as costs of suit. (Finisar Motion n 22.) The Trustee is entitled to payment by Finisar under Section 7.06 regardless of the outcome of this Action. To the extent the provisions cited by Finisar are even applicable, an award of fees to it would be wholly inappropriate given the circumstances of this case.

1  also separately received and acknowledged written fee schedules from U.S. Bank on issuance of
2  the Subordinated Notes. (Ex. 29.) Those fee schedules detail the indenture trustee's fees and
3  expenses, including, without limitation, out-of-pocket expenses, administration fees, legal
4  expenses, and extraordinary service charges, and are also regardless of any default. (*Id.*)

5  Finisar next argues that it should not have to indemnify U.S. Bank under what it describes
6  as the "indemnity clause" because the indemnity clause excludes declaratory relief claims.
7  (Finisar Motion at 22-23.) Under the "indemnity clause," however, Finisar separately covenanted
8  and agreed to indemnify U.S. Bank for any loss, liability, or expense incurred without negligence
9  or bad faith on its part, arising out of or in connection with the indenture trustee's duties,
10 "*including* the costs and expenses of defending itself against or investigating any claim of liability
11 in the premises." (Indentures § 7.06 (emphasis added).)

12 Finisar asserts that its obligation to indemnify U.S. Bank is limited to the costs and
13 expenses incurred by U.S. Bank defending against or investigating any claim of liability in the
14 premises. Finisar's reliance on the principle *expressio unius est exclusio alterius* (the inclusion of
15 one thing implies the exclusion of the other) is, however, misplaced. *Soc'y for Advancement of*
16 *Educ., Inc. v. Gannett Co., Inc.*, No. 98 Civ. 2135 LMM, 1999 WL 33023, at * 7 (S.D.N.Y.
17 Jan. 21, 1999) (*expressio unius* "has no force in the face of directly contradictory language in the
18 contract, such as the clause 'including but not limited to….'"). Section 1.04 of the Indentures,
19 titled "Rules of Construction," explicitly states that the word "including" in the Indentures means
20 "including, without limitation." (Indentures § 1.04).

21 Although it argues that the indemnity clause does not authorize recovery of fees incurred
22 litigating with Finisar, the case cited by Finisar confirms just the opposite. *See*, *e.g.*, *Hooper*
23 *Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (Ct. App. 1989) (indemnity clause
24 enforced so long as the promise to indemnify can be clearly implied from the language and
25 purpose of the contract and the surrounding facts and circumstances). It is exactly this type of
26 action the indemnity clause contemplates. Without it, the Trustee could not perform its duties or
27 adequately protect the interests of the noteholders absent the ever present threat of litigation by
28 Finisar.

### B. All, or Substantially All, of the Fees and Expenses Incurred by U.S. Bank in this Matter are in Response to and as a Result of Actions Taken by Finisar.

Because U.S. Bank is clearly entitled to the payment of its fees and expenses under Section 7.06, Finisar argues, in the alternative, that U.S. Bank has acted negligently and in bad faith and, therefore, is not entitled to payment by Finisar. (Finisar Motion at 23-24.) All evidence is, however, to the contrary.

The Trustee delivered its first notices of default to Finisar on January 4, 2007, in accordance with the terms of the Indentures. At the time U.S. Bank delivered the notices of default to Finisar, only *BearingPoint* had been decided. In light of the *BearingPoint* ruling, U.S. Bank's decision to deliver the notices of default cannot be viewed as negligent or in bad faith. Finisar, on the other hand, commenced the First Declaratory Judgment Action against the Trustee even before the 60-day cure period had expired. Months later, Finisar commenced this second Action against the Trustee.

To resolve both actions quickly, the Trustee recommended that the parties file cross-motions for summary judgment or, alternatively, that Finisar meet with the Trustee and noteholders. Finisar would not agree to either of the Trustee's recommendations until it had filed its restated reports, and even then resisted. The Trustee determined, regardless, that it would not accelerate the notes pending a determination by this Court on Finisar's request for declaratory relief. The Trustee's actions were taken prudently.

After it filed its restatements on December 4, 2007, Finisar asked the Trustee to agree to dismiss the actions, with prejudice. The Trustee cannot, however, waive a default on behalf of the noteholders. And although Finisar believes that the weight of authority is in its favor, at the time it filed its restatements, *Cyberonics*, in addition to *BearingPoint*, was the only other court to have rendered a decision on the default at issue in this Action. Regardless, because Finisar commenced this Action, even now the Trustee could not agree to dismiss the Action without noteholder consent. Again, the Trustee's actions (or inaction, in this case) have been taken prudently.

After if filed the restatements, and despite this Action being ripe for summary judgment (as evidenced by all of the other decisions rendered on this issue), Finisar unnecessarily served discovery on the Trustee. The Trustee appropriately responded, but did not serve discovery on Finisar, and instead reserved its right to do so pending the outcome of the parties' motions for summary judgment. In this Action, Finisar has also filed motions to remand, to dismiss, to compel, and for sanctions. Finisar also amended its complaint, adding additional claims for relief, including a request that this Court determine that Finisar is not obligated to pay the Trustee's fees. The Trustee has appropriately responded to each of the filings made by Finisar. And except for its motion for summary judgment, the Trustee has not separately so moved.

U.S. Bank has generally acted to avoid escalating the issues raised by Finisar in this matter. In large part, the Trustee's fees and expenses have been incurred as a result of the often unnecessary and excessive steps take by Finisar in this Action.[8]

### C. U.S. Bank Has Acted Reasonably and Appropriately Throughout These Proceedings.

After Finisar notified the Trustee and noteholders that it was investigating its backdating practices, informed them that they should not rely on its previously filed financial statements, and then spent months out of compliance with its reporting obligations under the Exchange Act, the Trustee for those noteholders holding an interest in $250,000,000 of debt securities had every right to assert and pursue Events of Default under the Indentures. In fact, that is the job Finisar appointed the Trustee to do.

Finisar alleges that a "reasonable person" would not have started this fight. (Finisar Motion at 23.) It was Finisar, however, that commenced this Action. In fact, a reasonable issuer would have first approached the trustee and noteholders to discuss any notice of default between them before precipitously commencing litigation. U.S. Bank has acted reasonably and

---

[8] In a footnote, Finisar gratuitously states that the Trustee did not accept its proposal to consolidate briefing on their respective motions. (Finisar Motion at n.3) Finisar's proposal to consolidate the briefing schedule came at the eleventh hour, and would have given the Trustee only two weeks to prepare its consolidated response and reply, instead of the three weeks it is permitted by the local rules of civil procedure.

appropriately in this Action. Finisar is, therefore, obligated to pay the Trustee's fees and expenses under Section 7.06 of the Indentures.

## CONCLUSION

U.S. Bank respectfully requests that this Court deny Finisar's motion for summary judgment and enter its proposed form of Order granting.

Dated: June 20, 2008

Michael B. Fisco (MN No. 175341)
Edward T. Wahl (MN No. 15409X)
Abby E. Wilkinson (MN No. 0313981)
FAEGRE & BENSON LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota  55402-3901
Telephone:  612.766.7000
Facsimile:  612.766.1600

D. ANTHONY RODRIGUEZ
EVI K. SCHUELLER
MORRISON & FOERSTER LLP

By:   /s/ D. Anthony Rodriguez
         D. Anthony Rodriguez

Attorneys for Defendant