Sterling A. Brennan (CA State Bar No. 126019; E-mail: sbrennan@wnlaw.com)
L. Rex Sears (Admitted *Pro Hac Vice*; E-mail: rsears@wnlaw.com)
WORKMAN | NYDEGGER A PROFESSIONAL CORPORATION
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Caroline McIntyre (CA State Bar No. 159005; E-mail: cmcintyre@be-law.com)
BERGESON, LLP
303 Almaden Boulevard
Suite 500
San Jose, California 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Plaintiff FINISAR CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, not in its individual capacity but solely in its capacity as indenture trustee in behalf of all holders of Finisar Corporation's 5¼% Convertible Subordinated Notes due 2008, 2½% Convertible Senior Subordinated Notes due 2010, and 2½% Convertible Subordinated Notes due 2010; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:07-CV-04052-JF (PVT)<br><br>**PLAINTIFF FINISAR CORPORATION'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>(Supplemental Request for Judicial Notice and Supplemental Declaration of Stephen Workman submitted herewith)<br><br>Date: **Friday, July 11, 2008**<br>Time: **9:00 a.m.**<br>Courtroom: **3**<br><br>District Judge: Hon. Jeremy Fogel<br>Magistrate Judge: Hon. Patricia V. Trumbull |
| AND RELATED COUNTERCLAIMS. | Initial Complaint Filed: June 22, 2007<br>Trial Date: Not Yet Set |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF ARGUMENT ....................................................................................... 2

III. ARGUMENT .................................................................................................................... 3

    A. Finisar Did Not Default. ....................................................................................... 3

        1. No Unexpressed Intent To Impose Deadlines For Filing With The SEC Supports U.S. Bank's Position. ..................................................................4

        2. The Indentures' Prescription Of A Different Deadline If Finisar Were Not Subject To The Exchange Act Supports Finisar's Position, Not U.S. Bank's. ......6

        3. U.S. Bank's Argument That The Holders Were Harmed Is Misleading. ..............7

        4. U.S. Bank's Attempt To Discredit The Federal Authorities Is Unpersuasive. ......8

    B. There Is No Continuing Event Of Default................................................................ 9

    C. Finisar Has No Duty To Pay U.S. Bank's Fees. ..................................................... 10

        1. The Fees Clause Of Section 7.06 Does Not Entitle U.S. Bank To Recover Fees Without Prevailing On The Merits. .......................................................11

        2. The Indemnity Clause Of Section 7.06 Is Not A Fees Clause, At All. .................11

        3. U.S. Bank Has Not Litigated Prudently. ..........................................................14

IV. CONCLUSION ............................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*,
  2008 WL 373162, Fed. Sec. L. Rep. P 94,577 (N.D. Tex. Feb. 12, 2008) ............................ 5, 10

*Bank of New York v. BearingPoint, Inc.*,
  824 N.Y.S.2d 752, 2006 WL 2670143 (Sup. Ct. N.Y. County Sept. 18, 2006) ........................ 9

*Hooper Associates, Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989) .............................................. 12, 13

*In re Penn Cent. Sec. Litig.*,
  494 F.2d 528 (3d Cir. 1974) ..................................................................................................... 4

*In re Teleglobe Comms. Corp.*,
  493 F.3d 345 (3d Cir. 2007) ................................................................................................... 14

*Landry's Restaurants, Inc. v. Post Advisory Group, LLC*
  (S.D. Tex.) (No. G-07-406) ............................................................................................... 7, 14

*Mitchell v. Mitchell*,
  82 A.D.2d 849 (N.Y. App. Div. 1981) ............................................................................ 2, 4, 6

*Muzak Corp. v. Hotel Taft Corp.*,
  1 N.Y.2d 42, 150 N.Y.S.2d 171, 133 N.E.2d 688 (1956) ...................................................... 11

*U.S. Bank National Association v. APP International Finance.*,
  33 A.D.3d 430, 823 N.Y.S.2d 361 (N.Y. App. Div. 2006) .................................................... 13

*UnitedHealth Group, Inc. v. Wilmington Trust Co.*,
  538 F. Supp. 2d 1108 (D. Minn. 2008) ................................................................. 1, 2, 5, 6, 10

*Verizon Calif. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*,
  326 F. Supp. 2d 1060 (C.D. Cal. 2003) ................................................................................... 9

*Wells v. Shearson Lehman*,
  72 N.Y.2d 11, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988) ...................................................... 4, 6

**Statutes/Rules**

15 U.S.C. § 78u ................................................................................................................................ 2

**Other Authorities**

H.R. R<small>EP</small>. N<small>O</small>. 76-1016, at 35 (1939) ............................................................................................. 5

Finisar[1] respectfully replies to Defendant U.S. Bank Trust National Association's Opposition to Finisar Corporation's Motion for Summary Judgment ("Opposition") as follows.

## I.    INTRODUCTION

The central issue in this case is whether Finisar complied with Section 4.02 of the Indentures by providing copies of its Reports to U.S. Bank within 15 days of filing them with the SEC. Whether and what other questions are presented depends on how that threshold issue is resolved. According to the holdings and reasoning of each of the three other federal courts to have addressed this issue, Finisar did what the Indentures required.

Finisar's position is grounded in the actual words of the contracts at issue. Section 4.02 of the Indentures required Finisar to provide copies of its Reports to U.S. Bank "within 15 days after" it filed them with the SEC, which Finisar did (as U.S. Bank concedes). U.S. Bank, however, invites the Court to import terms not found in the Indentures. According to U.S. Bank, Finisar failed to meet some further obligation to file its Reports *with the SEC* by certain dates.[2]

Once Finisar's voluntary investigation into its stock options grants revealed that the company's historical financials might have to be restated, Finisar could not file periodic reports with the SEC until the investigation was concluded without risking violation of its fundamental duty not to file false reports. *See UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108, 1115 ("a company is prohibited by law from filing a Form … it knows to be

---

[1] Terms with initial capitals are defined in the Glossary of Terms appended to Plaintiff Finisar Corporation's Motion for Summary Judgment and are used herein with the same signification.

[2] Although Finisar is the titular plaintiff in this declaratory judgment Action, U.S. Bank forced it into that role by alleging defaults and threatening acceleration. U.S. Bank alleges "on information and belief" that Finisar filed suit without first engaging the Holders in discussion. (Opposition at 9:10.) The *evidence* is to the contrary, establishing that Finisar did engage in discussions with the Holders before commencing this Action. (Supplemental Decl. of Stephen K. Workman in Support of Pl. Finisar Corp.'s Motion for Summ. J., ¶ 2.) Finisar had to commence this Action because in those discussions the Holders threatened to accelerate unless Finisar agreed to some combination of cash payments and new terms for the Notes worth millions of dollars. (*Id.*, ¶¶ 3-4.) Indeed, U.S. Bank admits that "[c]onfidential financial information . . . . is useful to noteholders … only when the issuer is willing to discuss settlement and/or restructuring options." (Opposition at 9:2-4.) Some such combination of cash "settlement" and favorable "restructuring" is precisely the windfall U.S. Bank is trying to gain for the Holders by threatening acceleration. (*See* Opposition at 10:8-16.) *See UnitedHealth Group, Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108, 1115 (D. Minn. 2008) ("Defendant's effort to accelerate the Notes was not caused by a lack of information, but by its desire to realize a windfall.").

inaccurate"). Congress has authorized the SEC (not U.S. Bank) to bring enforcement proceedings and impose fines for noncompliance with Exchange Act reporting requirements. 15 U.S.C. § 78u. But the SEC never exercised those powers against Finisar (Workman Decl., ¶ 3) because Finisar did not "unreasonably delay dissemination of necessary market information" by waiting to file until it could ensure the accuracy of its Reports. See *UnitedHealth*, 538 F. Supp. 2d at 1115.

Had the Indentures required Finisar to file its Reports before completing its investigation, as argued by U.S. Bank, then Finisar would have been forced to "choose" between violating a contractual duty to U.S. Bank and a statutory duty to the SEC. In other words, the Indentures would expose Finisar to potentially ruinous acceleration for meeting its statutory duty. Fortunately, that is not how the Indentures were written, and Finisar was not put to the Hobson's choice imagined by U.S. Bank. Instead, the express requirement of the Indentures is that Finisar "file with the Trustee … copies of its reports" "within 15 days after it files such … reports with the Commission" (which Finisar did). The potential conflict between contractual and statutory obligations is avoided by leaving responsibility to monitor and enforce Finisar's filing obligations under the Exchange Act right where Congress placed it, with the SEC. Under the clear, unambiguous, express terms of the Indentures, Finisar did not default. And because Finisar did not default, U.S. Bank cannot recover the fees it has incurred litigating its allegations that it did.

## II.    SUMMARY OF ARGUMENT

According to U.S. Bank, the Indentures required Finisar to file its Reports with the SEC by dates certain. To that end, U.S. Bank argues that (1) the (unwritten) purpose of Section 4.02 of the Indentures would be frustrated unless that requirement were inserted by the Court; and (2) by requiring Finisar to comply with SEC filing deadlines if it is *not* subject to the Exchange Act, the Indentures also require Finisar to comply with those deadlines even when it *is* subject to the Exchange Act. U.S. Bank's first argument fails because "[w]hen the terms of a written contract are clear and unambiguous the intent of the parties must be found therein," and "[t]he courts will not imply a term which the parties themselves failed to insert." *Mitchell v. Mitchell*, 82 A.D.2d 849 (N.Y. App. Div. 1981). Its second argument also fails, because it runs counter to every accepted principle of contractual interpretation.

Were the Court to some how determine that Finisar had defaulted, it would then have to decide whether any Event of Default is continuing. As Finisar showed in its Motion, any Events of Default were cured when Finisar filed its Reports with the SEC and provided copies thereof to U.S. Bank (on December 4, 2007). U.S. Bank responds by insisting that "Finisar can cure … only by obtaining a waiver" (Opposition at 10:22), but that argument likewise ignores clear contractual language to the contrary.

Assuming this Court decides that Finisar did *not* default, it must then decide whether Finisar still is liable for U.S. Bank's attorney's fees, "[r]egardless of the ruling on the merits." (Opposition at 2:13.) According to U.S. Bank, Finisar is liable because U.S. Bank has "represent[ed] the interests of noteholders … in a reasonable and prudent manner." (Opposition at 2:15-16.) U.S. Bank has not acted reasonably or prudently, but even if it had, prudence and rationality would not be enough to support its claim for fees. The Indentures only permit U.S. Bank to recover fees incurred in *accordance* with the Indentures, and U.S. Bank's actions have been *contrary* to the Indentures. Therefore, U.S. Bank cannot recover its fees.[3]

### III.    ARGUMENT

#### A.    Finisar Did Not Default.

Section 4.02 of the Indentures provides:

> The Company shall file with the Trustee, within 15 days after it files such … reports with the Commission, copies of … reports … which the Company is required to file with the Commission pursuant to … the Exchange Act. If at any time the Company is not subject to … the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements.

By the unambiguous language of this provision, Finisar was required to file copies of its Reports with U.S. Bank "within 15 days after it file[d]" them with the SEC. But nothing in the Indentures imposed any deadline for Finisar to file its Reports with the SEC, as U.S. Bank maintains.

---

[3] Finisar's Motion also addressed U.S. Bank's apparent claim for damages allegedly arising from the supposed defaults alleged by U.S. Bank. That issue has been eliminated because U.S. Bank has since clarified that it is not pursuing damages, but instead seeks only a declaration that there has been a default. (*See* U.S. Bank's [sic] National Association's Response to Plaintiff Finisar Corporation's Motion to (1) Dismiss, (2) Strike, and (3) Adjudicate U.S. Bank Trust National Association's Counterclaims, 8:11-4, 13-15.)

FINISAR'S REPLY IN SUPPORT OF            3.
MOTION FOR SUMMARY JUDGMENT                                              CASE NO.: 5:07-CV-04052-JF-PVT

### 1. No Unexpressed Intent To Impose Deadlines For Filing With The SEC Supports U.S. Bank's Position.

Rather than pointing to any language in the Indentures imposing such a deadline, U.S. Bank instead argues that "the parties *intended* the reporting covenant to require the issuer to comply ... with the Exchange Act's reporting deadlines." (Opposition at 4:7-8 [emphasis added].)[4] That argument fails, first and foremost, because "[w]hen the terms of a written contract are clear and unambiguous the intent of the parties must be found therein. The courts will not imply a term which the parties themselves failed to insert." *Mitchell v. Mitchell*, 82 A.D.2d 849 (N.Y. App. Div. 1981); *see also Wells v. Shearson Lehman*, 72 N.Y.2d 11, 24, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988) ("Uncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none."). Absent language in the Indentures setting forth the further obligation now alleged by U.S. Bank, its argument must fail.

Moreover, U.S. Bank's analysis of the purported unexpressed intent is defective. In its December 7, 2007 "Order Denying Motion to Remand," this Court agreed with U.S. Bank's prior contention "that Section 4.02 of the Indentures is a vehicle for implementing the mandates of TIA Section 314(a) and thus cannot be understood without interpreting and applying that federal statute."[5] (*See id.* at 4:16-18.) The statute, in turn, addressed a clearly defined defect in indentures predating its 1939 enactment:

> In a substantial portion of the indentures examined ... the issuer was under no obligation to file an annual report with the indenture trustee. None of the indentures studied ... required the transmission to the bondholders of periodic

---

[4] The reasoning by which U.S. Bank supports its imputation of that intent to the parties seems to be confused. According to U.S. Bank, the parties must have so intended because the Notes "are freely and regularly traded based on the issuer's financial performance." (Opposition at 4:6.) Shares of Finisar's stock likewise "are freely and regularly traded based on [Finisar's] financial performance," but stockholders cannot sue to enforce Exchange Act filing requirements. *See In re Penn Cent. Sec. Litig.*, 494 F.2d 528, 539-541 (3d Cir. 1974) (finding no private right of action under Exchange Act's reporting provisions). Moreover, U.S. Bank's observation that the Notes are freely and regularly traded is directly at odds with its assertion just four lines earlier that the Holders "have no economic upside in the success of Finisar's business." (Opposition at 4:2-3.) The Holders' purported lack of "economic upside" is also belied by the fact that the Notes are convertible—*i.e.*, can be exchanged for Finisar stock in accordance with Article 10 of the Indentures upon maturity.

[5] Finisar's argument for remand was not to the contrary. Finisar's point was that because the Indentures were not "qualified" under the TIA, the inclusion of Section 4.02 in the Indentures and any resulting necessity to interpret the TIA stemmed from the parties' voluntary contractual election.

---

FINISAR'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

4.

CASE NO.: 5:07-CV-04052-JF-PVT

> reports, such as stockholders customarily receive. None of them established machinery for the transmission of such reports to the bondholders, through provisions for the maintenance by the trustee of bondholders' lists.

H.R. REP. NO. 76-1016, at 35 (1939) (Request for Judicial Notice, Ex. B.) Instead of some generic lack of information, the perceived problem was that bondholders were not privy to the information included in reports that issuers were providing to stockholders pursuant to the Exchange Act. To remedy *that* problem, the TIA as enacted "takes into consideration the fact that generally the issuer will already be required to file periodic reports with the Commission under … the Securities Exchange Act," and so "merely requires that copies of such reports … be filed with the indenture trustee" (which would in turn be required to transmit "summaries of these reports … to the bondholders"). *Id.*[6]

As U.S. Bank has urged, the purpose of Section 4.02 of the Indentures was to implement Section 314(a)(1) of the TIA; and the expressly stated purpose of the latter was to ensure that bondholders would have the same access as stockholders to information in issuers' periodic reports. H.R. REP. NO. 76-1016, at 35. That purpose is fully satisfied by the Indentures, as written, with no need to imply the further term proposed by U.S. Bank. *See Affiliated Computer*, 2008 WL 373162, at *6 ("The Indenture's requirement that ACS deliver to the Trustee a copy of all of ACS's required SEC filings within 15 days of filing them with the SEC meets this policy concern. It ensures that the note holders through the Trustee possess the same financial information concerning the issuing company that the rest of the investment public has.").[7]

---

[6] When the TIA was drafted, "there was no technology by which copies of SEC reports could be easily obtained, and companies did not routinely provide reports to holders of corporate debt." *UnitedHealth*, 538 F. Supp. 2d at 1114. Since that time, "all public SEC filings [have become] accessible to the public via the Internet on the EDGAR system." *Affiliated Computer Servs., Inc. v. Wilmington Trust Co.*, 2008 WL 373162, *6, Fed. Sec. L. Rep. P 94,577 (N.D. Tex. Feb. 12, 2008). "[T]he value of a pure delivery obligation in the post-EDGAR world is considerably less than before it. But when the TIA was enacted in 1939, a delivery requirement would have been important, because quick access to SEC filings was not possible through other means." *Id.* Recognizing that the world has changed, U.S. Bank (apparently with the Holders' blessing) has disowned its coordinate obligation to provide summaries of reports to the Holders. (*See* Jacobs Depo. at 183:24-184:7; 185:17-186:7; 186:11-14.) Finisar, on the other hand, has continued to discharge its duty to provide copies of its periodic and other reports to U.S. Bank within 15 days of filing them with the SEC.

[7] Even if a more generic intent to keep the bondholders informed could have been better served by imposing other or additional requirements, such as the unwritten, unexpressed SEC filing requirement that U.S. Bank now wants inserted into the Indentures, still it would be improper to replace the terms the parties actually chose to effect their purpose with language that, in

FINISAR'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                5.                CASE NO.: 5:07-CV-04052-JF-PVT

### 2. The Indentures' Prescription Of A Different Deadline If Finisar Were Not Subject To The Exchange Act Supports Finisar's Position, Not U.S. Bank's.

As noted above, Section 4.02 of the Indentures provides:

> The Company shall file with the Trustee, within 15 days after it files such … reports with the Commission, copies of … reports … which the Company is required to file with the Commission pursuant to … the Exchange Act. If at any time the Company is not subject to … the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements.

Paradoxically, U.S. Bank argues that by requiring Finisar to comply with SEC deadlines "[i]f at any time [it] is not subject to … the Exchange Act," Section 4.02 also requires Finisar to comply with those deadlines while it *is* subject to the Exchange Act. (*See* Opposition at 6:24-26.) This argument cannot be correct.

U.S. Bank accuses Finisar of "arbitrarily divid[ing] Section 4.02 into two separate reporting obligations." (Opposition at 6:23-24.) What U.S. Bank calls arbitrary is mandated by the language of the contracts. By its express terms, Section 4.02 imposes one deadline for Finisar to provide copies of its reports to U.S. Bank for so long as Finisar is subject to the Exchange Act,[8] and another while Finisar is not.[9] The parties cannot thereby have intended to impose a single deadline "regardless of [Finisar's] status as a required filer." (Opposition at 6:25.)

If the intent were to impose a *single* deadline, *regardless* of Finisar's status—rather than *two, depending* on Finisar's status—then the contract would have stated one deadline (rather than two), and would not have expressly conditioned its applicability on Finisar's status. If the intent

---

hindsight, appears better calculated to serve U.S. Bank's interests. *See Mitchell*, 82 A.D.2d at 849 ("When the terms of a written contract are clear and unambiguous . . . . [t]he courts will not imply a term which the parties themselves failed to insert."); *see also UnitedHealth*, 538 F. Supp. 2d at 1113-1114 ("The parties could have contractually specified that Forms 10-Q be filed on a particular timetable, lest the borrowed sums be placed in jeopardy. Had they wished to explicitly incorporate the Exchange Act's timing requirements, there was no bar to doing so. But this is not the agreement they made." [citation omitted]); *Cyberonics, Inc. v. Wells Fargo Nat'l Ass'n*, 2007 WL 1729977, * 4 (S.D. Tex. June 13, 2007) ("If … the objective … was to insure filings consistent with SEC requirements and guidelines, the parties could have simply declared so. Instead, the parties agreed that [the issuer] would deliver … copies of reports after it had filed them with the SEC. The agreement should be enforced as it is clearly and unambiguously written, and not read as [the trustee] now asserts that it should be." [citations omitted]).

[8] *Viz.*, "15 days after it files … with the Commission."

[9] *Viz.*, "the times the Company would have been required to provide reports had it continued to be subject to such reporting requirements."

---

FINISAR'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

6.

CASE NO.: 5:07-CV-04052-JF-PVT

1  were as posited by U.S. Bank then the Indentures at issue here, rather than being written as they
2  *are*, instead would have been written like the differently-worded indenture (under which U.S.
3  Bank also serves as trustee) in *Landry's Restaurants, Inc. v. Post Advisory Group, LLC* (S.D.
4  Tex.) (No. G-07-406) . *That* indenture, in unmistakable contrast to the Indentures at issue here,
5  provides:

> *Whether or not required by the Commission* ... the company shall furnish to the Trustee, *within the time period specified in the Commission's rules and regulations*: (1) all quarterly and annual financial information that would be required to be contained in a filing with the Commission on Forms 10-Q and 10-K if the Company were required to file such forms.

9  (Request for Judicial Notice, Ex. C, § 4.02(a) [emphasis added].)

### 3.   U.S. Bank's Argument That The Holders Were Harmed Is Misleading.

11  According to U.S. Bank, Finisar's Reports revealed, for the first time, that its ability to
12  make payment on the Notes had been impaired by what U.S. Bank characterizes as previously
13  unreported "additional losses." (*See* Opposition at 7:14-19.) U.S. Bank argues that the Holders
14  were harmed because their access to this "information" was delayed. (*Id.* at 7:21-24.) U.S.
15  Bank's argument misrepresents Finisar's Reports.[10]

16  U.S. Bank bases its argument on two statements from the Form 10-K Finisar filed with the
17  other Reports on December 4, 2007:

> Finisar informed investors in the restated reports that it may have "insufficient cash flow to meet [its] debt service obligations, including payments due on [the] subordinated convertible notes" issued under the Indentures. Finisar also informed investors that it may be unable to obtain sufficient capital to repay the principal on the Subordinated Notes.

21  (Opposition at 7:15-19.) Neither statement, however, is in any way tied to any "additional losses"
22  disclosed in the Reports.[11]

---

[10] The misrepresentations begin with U.S. Bank's choice of misleading terminology. What U.S. Bank calls "additional losses" are accounting adjustments to historical financial statements (for periods earlier than those covered by the Reports at issue here), which "had no impact on the Company's previously reported cash flows or revenues." (Jacobs Decl., Ex. 13 at 14-15.) Those adjustments reflect previously unrecognized non-cash expenses associated with stock-based compensation, and were made as a result of Finisar's voluntarily-undertaken review of its past stock option grants and practices. (*Id.*) Before filing this reply, Finisar invited U.S. Bank to correct its various misrepresentations of Finisar's Reports, but that invitation was declined.

[11] As Finisar observed in its Motion, the "additional losses" were for periods *prior* to those covered by the Reports at issue in this Action, and it is not disputed that Finisar timely filed its

FINISAR'S REPLY IN SUPPORT OF                    7.
MOTION FOR SUMMARY JUDGMENT                              CASE NO.: 5:07-CV-04052-JF-PVT

The first of the two statements cited by U.S. Bank—that Finisar "may have 'insufficient cash flow to meet [its] debt service obligations, including payments due on [the] subordinated convertible notes' issued under the Indentures" (Opposition at 7:16-17)—is a standard caution that does nothing more than identify a risk every borrower faces. Far from being new, this statement has been included in *every annual report Finisar has filed* since it first issued any of the Notes, beginning with its Form 10-K for the fiscal year ended April 30, 2002, filed on July 29, 2002.[12] This statement has nothing to do with any "additional losses" supposedly revealed in the Reports, and it is misleading for U.S. Bank to argue the contrary.

The second statement—that Finisar "may be unable to obtain sufficient capital to repay the principal on the Subordinated Notes" (Opposition at 7:18-19)—warns of a risk that could arise if Finisar loses this case. The warning is that Finisar *may* be unable *immediately* to repay the *entire* outstanding principal balance on *all* of the Notes, as U.S. Bank *might* demand *if* this Court were to rule that Finisar had defaulted and U.S. Bank could still accelerate. (*See* Jacobs Decl., Ex. 13 at 19.) It is misleading for U.S. Bank to imply that this statement acknowledges some new risk of nonpayment arising from hitherto undisclosed "additional losses."

U.S. Bank has introduced no evidence that the Holders' investments were imperiled, and the attorney argument it offers instead is premised on misrepresentations of Finisar's Reports.

    **4.**    **U.S. Bank's Attempt To Discredit The Federal Authorities Is Unpersuasive.**

As Finisar has noted, the central issue in this case has been addressed and decided in carefully-reasoned opinions issued by three other federal district courts. U.S. Bank, having previously argued that this is a federal question case, now insists that the squarely on-point federal authorities (which uniformly favor Finisar's position) have "little or no relevance to this

---

reports for *those* periods with the SEC and with U.S. Bank. (*See* Finisar's Motion at 19:20-20:2.) Any claims flowing from the "additional losses" arise not from the timing of Finisar's earlier reports but their content, an issue not addressed by the Indentures. Such claims are being pursued in separate litigation (and, necessarily, on different theories), as U.S. Bank reports elsewhere. (*See* U.S. Bank's Motion at 5:22-27; Jacobs Decl., Exs. 24, 25.)

[12] Excerpts from Finisar's earlier reports are reproduced as Exhibits A-G to Plaintiff Finisar Corporation's *Supplemental* Request for Judicial Notice in Support of its Motion for Summary Judgment.

Action." (Opposition at 2:2-3.) U.S. Bank's "most important[]" reason for discounting the federal authorities is that they do not reflect the success U.S. Bank claims to have had in negotiating a favorable settlement for noteholders in another case, "short of litigation or a judicial ruling." (Opposition at 2:5-6.)

Respect for the authority of *this* tribunal does not permit Finisar to concur with U.S. Bank's conclusion that carefully reasoned opinions from courts of coordinate jurisdiction have "no relevance" or are outweighed by U.S. Bank's private settlement of another case, in which the issues here presented were never adjudicated (or even litigated). *Any* order made by *any* United States District Court "address[ing] identical or similar issues" is "persuasive and highly relevant ... authority." *Verizon Calif. Inc. v. Ronald A. Katz Tech. Licensing, L.P.*, 326 F. Supp. 2d 1060, 1069 (C.D. Cal. 2003).

Finisar is not asking this Court to defer to the other federal authorities, but to follow them because they were rightly reasoned and decided. The chief difference between the parties' invocations of authority is that Finisar offers its authorities as materials for the Court to consult in connection with its own examination of the controlling language of the Indentures, while U.S. Bank invites the Court to disregard the contractual language and instead consider only the passages it quotes from *Bank of New York v. BearingPoint, Inc.*, 824 N.Y.S.2d 752 (table), 2006 WL 2670143 (Sup. Ct. N.Y. County Sept. 18, 2006).

### B.  There Is No Continuing Event Of Default.

As U.S. Bank testified in this litigation, through its own corporate designee, "[t]he only remedy under the indentures is acceleration." (Jacobs Depo. at 164:8.) Pursuant to Section 6.02 of the Indentures, that remedy is available only "[i]f an Event of Default ... occurs *and is continuing*." Here, even if Finisar had gone into default when certain deadlines for filing its Reports with the SEC were not met, there would be no *continuing* Event of Default, and acceleration would no longer be available, because Finisar *did* file its Reports with the SEC (and timely provided copies to U.S. Bank) thereafter. (*See* Jacobs Decl., ¶ 13.)

According to U.S. Bank, "Finsar can cure ... existing Events of Default only by obtaining a waiver from the holders," whereupon "it is deemed cured." (Opposition at 10:22, 27.)

FINISAR'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

9.

CASE NO.: 5:07-CV-04052-JF-PVT

1  However, as Finisar pointed out in its Motion, the plain language of the Indentures is to the

2  contrary. First, at least four separate provisions of the Indentures recognize that Events of Default

3  can be waived *or* cured. (*See* Finisar's Motion at 17:27-18:7.) That recognition is inconsistent

4  with U.S. Bank's theory that waiver and cure are the same. Second, the express contractual

5  definitions of "Default" and "Event of Default" reveal them to be different names applied to the

6  same event at different times. Accordingly, once there is no longer a continuing Default, likewise

7  there is no continuing Event of Default. (*See* Finisar's Motion at 18:8-14.) U.S. Bank has offered

8  no response to these demonstrations, presumably because it has none.

9  Instead, U.S. Bank insists (without supporting authority) that it should still be permitted to

10 accelerate because "Finisar has inequitably used this litigation as a shield to protect itself from

11 acceleration." (Opposition at 11:7-8.) But as Finisar observed in its Motion, "the mere pendency

12 of this Action did not prevent U.S. Bank from attempting to accelerate before Finisar filed its

13 Reports." (Finisar's Motion at 19:3-4.)[13] If the conditions for accelerating were met, it was

14 incumbent on U.S. Bank to serve a notice of acceleration before they ceased.

### C.   Finisar Has No Duty To Pay U.S. Bank's Fees.

U.S. Bank claims that it is entitled to recover its attorney's fees pursuant to Section 7.06 of the Indentures, which in part provides:

> The Company covenants and agrees to pay or reimburse the Trustee … for all reasonable expenses … incurred … in accordance with any of the provisions of this Indenture (including … the reasonable compensation … of its counsel …) . . . . The Company also covenants to indemnify the Trustee … against, any … expense … arising out of or in connection with the acceptance or administration of this Indenture … including the costs and expenses of defending itself against or investigating any claim of liability in the premises.

According to U.S. Bank this provision requires Finisar to pay U.S. Bank's fees "[r]egardless of the ruling on the merits"—*i.e.*, without regard to whether Finisar ever defaulted under the Indentures—so long as those fees were reasonably incurred. (Opposition at 2:13, 11:22-23.)

---

[13] Instructively, in both the *UnitedHealth* and *Affiliated Computer* cases, acceleration was not noticed until after the issuer sued for declaratory relief, *UnitedHealth*, 538 F. Supp. 2d at 1111; *Affiliated Computer*, 2008 WL 373162, at *2; but in neither case was the pendency of the declaratory relief action found or even argued to be a barrier to the notice of acceleration.

As Finisar observed in its Motion, and U.S. Bank does not dispute, the first sentence of Section 7.06 is a *fees clause* obligating Finisar "to pay or reimburse the Trustee ... for all reasonable expenses ... incurred ... in accordance with any of the provisions of this Indenture (including ... the reasonable compensation ... of its counsel ...)"; while the second is an *indemnity clause*, obligating Finisar "to indemnify the Trustee ... against, any ... expense ... arising out of or in connection with the acceptance or administration of this Indenture ... including the costs and expenses of defending itself against or investigating any claim of liability in the premises." As shown below, U.S. Bank is not entitled to recover its fees under either clause.

        **1.**      **The Fees Clause Of Section 7.06 Does Not Entitle U.S. Bank To Recover Fees Without Prevailing On The Merits.**

As Finisar pointed out in its Motion, U.S. Bank cannot recover under the fees clause unless there was a default because fees incurred asserting and litigating non-existent defaults are not "incurred ... in accordance with any of the provisions of this Indenture." U.S. Bank responds that the fees clause obligates Finisar "to pay U.S. Bank all reasonable expenses incurred by the indenture trustee, including the fees and expenses of its professional, regardless of any default." (Opposition at 11:22-23.) But U.S. Bank's characterization violates "[t]he rules of construction of contracts requir[ing] us to adopt an interpretation which gives meaning to every provision of a contract." *Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46, 150 N.Y.S.2d 171, 133 N.E.2d 688 (1956). U.S. Bank's "interpretation" reads out entirely the express limitation of Finisar's liability under the fees clause to expenses "incurred ... in accordance with any of the provisions of this Indenture." Finisar's obligation under the fees clause is to pay reasonable expenses incurred *in accordance with any of the provisions of the Indentures*, not reasonable expenses *regardless of default*; and U.S. Bank has not identified any provision of the Indentures that required it to assert and litigate non-existent defaults (because there is none).

        **2.**      **The Indemnity Clause Of Section 7.06 Is Not A Fees Clause, At All.**

The indemnity clause of Section 7.06, in turn, requires Finisar "to indemnify the Trustee ... against, any ... expense ... arising out of or in connection with the acceptance or

administration of this Indenture … including the costs and expenses of defending itself against or investigating any claim of liability in the premises." According to U.S. Bank, this clause requires Finisar to indemnify U.S. Bank against attorney's fees incurred litigating against Finisar; but the law is otherwise. According to the law, an indemnity clause such as this does not reach fees that the parties incur litigating against each other.

The governing principles are explained and applied in *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989).[14] In that case, Hooper and AGS had entered into a contract requiring AGS to "indemnify and hold [Hooper] harmless … from any and all … costs and expenses, including reasonable counsel fees arising out of: … (ii) The performance of any service to be performed hereunder." *Id.* at 490 n. 1. The sole issue on appeal was whether Hooper was entitled to recover the fees it incurred in its successful suit against AGS for breach. *Id.* at 490-491.

The court articulated the following principles of New York law regarding the interpretation of indemnity agreements:

> Although the words [in a contract] might "seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view." This is particularly true with indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances.

*Id.* at 491-492 (citations omitted). The court then explained how those principles applied when determining whether an indemnity clause would permit attorney's fees to be recovered in an action *between* the contracting parties:

> Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

*Id.* at 492. Turning to the particular agreement before it, the court then held as follows:

---

[14] Section 13.09 of the Indentures provides that the Indentures are to be "governed by, and construed in accordance with, the laws of the State of New York."

FINISAR'S REPLY IN SUPPORT OF  
MOTION FOR SUMMARY JUDGMENT

12.

CASE NO.: 5:07-CV-04052-JF-PVT

> The clause in this agreement . . . . is typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim. It obligates defendant to "indemnify and hold harmless [plaintiff] * * * from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees" arising out of ... the performance of any service to be performed ... and the like. All these subjects are susceptible to third-party claims . . . . None are exclusively or unequivocally referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract.

*Id.*

The same considerations that led the *Hooper* court to conclude that the indemnity clause before it did not cover attorney's fees incurred in an action between the contracting parties compel the same result here. Here, the indemnity clause requires Finisar "to indemnify the Trustee ... against, any ... expense ... arising out of or in connection with the acceptance or administration of this Indenture ... including the costs and expenses of defending itself against or investigating any claim of liability in the premises." That language is *not* "exclusively or unequivocally referable to claims between the parties themselves," but is instead "susceptible to third-party claims." By way of example, U.S. Bank could be (and has been) sued by holders of notes issued under other indentures. *See, e.g., U.S. Bank Nat'l Ass'n v. APP Int'l Fin.*, 33 A.D.3d 430, 823 N.Y.S.2d 361 (N.Y. App. Div. 2006) ("Plaintiff-in-intervention ... moved to intervene, alleging that U.S. Bank's filing of this action breached its fiduciary duties to ... the noteholders").[15]

U.S. Bank insists that the indemnity clause here at issue must be construed to reach fees incurred in litigation between Finisar and U.S. Bank because otherwise, "the Trustee could not perform its duties or adequately protect the interest of the noteholders absent the ever present threat of litigation by Finisar." (Opposition at 12:26-28.) As Finisar pointed out in its Motion, that argument overlooks the existence of Section 7.02(d) of the Indentures, which expressly authorizes U.S. Bank to require *the Holders* to pay for any attorney's fees (or other expenses)

---

[15] As Finisar pointed out in its Motion, even where the indemnity clause applies, the only attorney's fees it reaches are those incurred investigating or defending against claims of liability in the premises; declaratory relief claims are not covered. (Finisar's Motion at 22:17-23:5.) The more fundamental point, both in Finisar's Motion and in this reply, is that the indemnity clause does not reach fees incurred in litigation between the parties, at all. (*See* Finisar's Motion at 22:3-16.)

FINISAR'S REPLY IN SUPPORT OF  13.
MOTION FOR SUMMARY JUDGMENT         CASE NO.: 5:07-CV-04052-JF-PVT

U.S. Bank incurs to do their bidding. (*See* Finisar's Motion at 24:12-14.) U.S. Bank has exercised that right in other cases. (*See, e.g.,* U.S. Bank National Association's Opposition to Preliminary Injunction [Request for Judicial Notice, Ex. D] at 10, *Landry's Restaurants, Inc. v. Post Advisory Group, LLC* (S.D.Tex. Aug. 16, 2007) (No. 3:07-406).) Indeed, for all the Court or Finisar knows, U.S. Bank has already obtained a commitment from the Holders in *this* case to pay its fees, so that the real issue this Court is being asked to decide is whether the Holders (for whose profit U.S. Bank is litigating) or Finisar (which has fulfilled its obligations) will have to reimburse U.S. Bank.[16]

### 3. U.S. Bank Has Not Litigated Prudently.

Neither the fees nor the indemnity clause of Section 7.06 authorizes U.S. Bank to recover any of its fees. Moreover, even if either provision could be construed to permit U.S. Bank to recover fees without regard to whether Finisar ever defaulted, still U.S. Bank's claim for fees should be denied because U.S. Bank has not incurred fees reasonably.

It was not prudent for U.S. Bank to transmit and then litigate (rather than withdraw) notices of default alleging that Section 4.02 of the Indentures—which by its express terms did not require Finisar to provide copies of its Reports to U.S. Bank until 15 days after it filed them with the SEC—in fact required Finisar to do so earlier.

It was not prudent for U.S. Bank to continue litigating a professed right to accelerate even after the only defaults it ever alleged ceased to exist, despite the express provision of Section 6.02 that acceleration can only be declared while an Event of Default is continuing.

It was not prudent for U.S. Bank to continue litigating even after being presented with overwhelming federal authority uniformly supporting Finisar's position.

It was not prudent for U.S. Bank to continue litigating instead of obtaining and dismissing the Action based upon an opinion of counsel, as authorized by Section 7.02(c) of the Indentures.

---

[16] U.S. Bank has frustrated Finisar's discovery of such arrangements by asserting that its communications with the Holders are privileged. U.S. Bank's assertion of privilege, even in the face of contrary authority, *e.g., In re Teleglobe Comms. Corp.,* 493 F.3d 345, 364 (3d Cir. 2007), is targeted by Plaintiff Finisar Corp.'s Motion to (1) Compel Production of Documents; (2) Compel Deposition Testimony; and (3) For Additional Time to Complete Deposition, which was heard and taken under submission by Magistrate Judge Trumbull on June 17, 2008.

If this Action has been ripe for summary judgment all along, then it was not prudent for U.S. Bank to wait until the Court ordered the parties to file summary judgment motions before doing so.

It is not prudent for U.S. Bank to look to Finisar rather than the Holders it is trying to profit for its fees.

The reasonableness of U.S. Bank's fees need not be considered because Section 7.06 does not permit it to recover even reasonably incurred fees. But even if U.S. Bank had some such entitlement under Section 7.06, still its claim for fees should be denied (in whole or at least in substantial part[17]) because it has not incurred fees reasonably.

### IV.   CONCLUSION

For all of the reasons set forth above and in Finisar's other submissions (in connection with both Finisar's Motion and U.S. Bank's), the Court should enter summary judgment in favor of Finisar and against U.S. Bank.

DATED: June 27, 2008

Sterling A. Brennan
L. Rex Sears
WORKMAN NYDEGGER A PROFESSIONAL CORPORATION

Caroline McIntyre
BERGESON, LLP

By     /s/ Sterling A. Brennan
          Sterling A. Brennan
Attorneys for Plaintiff FINISAR CORPORATION

---

[17] Were the Court to determine that U.S. Bank had some right to recover fees under Section 7.06, *and* that U.S. Bank's conduct was not unreasonable as a matter of law, then the extent of U.S. Bank's permissible recovery—*i.e.*, the portion of its fees reasonably incurred—would be a triable issue of fact.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: D. Anthony Rodriguez, drodriguez@mofo.com; Abby E. Wilkinson, awilkinson@faegre.com; Eva K. Schueller, eschueller@mofo.com; Michael B. Fisco, mfisco@faegre.com; and Paul T. Friedman, pfriedman@mofo.com.

**WORKMAN NYDEGGER**

/s/ Sterling A. Brennan
STERLING A. BRENNAN
**WORKMAN NYDEGGER**
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah, 84111