UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FINISAR CORPORATION, <br><br>  Plaintiff, <br><br> v. <br><br> U.S. BANK TRUST NATIONAL ASSOCIATION, <br><br>  Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No.: C 07-04052 JF (PVT) <br><br> **ORDER GRANTING PLAINTIFF FINISAR CORPORATION'S MOTION TO COMPEL; AND ORDER DENYING PLAINTIFF FINISAR CORPORATION'S MOTION FOR SANCTIONS** |

## INTRODUCTION

Plaintiff Finisar Corporation ("Finisar") moves to compel communications between defendant U.S. Bank Trust National Association ("U.S. Bank") and/or its counsel and the holders of notes issued by Finisar under trust indentures dated October 15, 2001, October 15, 2003 and October 12, 2006. Additionally, plaintiff Finisar moves for sanctions on the grounds that defendant U.S. Bank's refusal to provide the discovery sought was not substantially justified. Defendant U.S. Bank opposes both motions. On June 17, 2008, the parties appeared for hearing. Having read the papers and considered the arguments of counsel, plaintiff Finisar's

motion to compel is granted and the motion for sanctions is denied.[1]

**BACKGROUND**

Finisar is a publicly-held technology company that provides optical subsystems and network performance test systems for high speed data communications. The company also provides components to connect local area networks, storage area networks and metropolitan area networks. On October 15, 2001, October 15, 2003 and October 12, 2006, Finisar and U.S. Bank became parties to a series of three trust indentures under which Finisar issued three corresponding series of convertible notes. ("Indentures"). In aggregate, the principal for the notes totaled approximately $250.25 million and are identifiable as follows: (1) 5 ¼ percent Convertible Subordinated Notes due 2008; (2) 2 ½ percent Convertible Subordinated Notes due 2010; and (3) 2 ½ percent Converted Senior Subordinated Notes due 2010. ("Notes").

U.S. Bank acts as an indenture trustee under the Indentures for the holders of the subordinated notes described above. ("Noteholders"). As an indenture trustee, U.S. Bank is obligated under the Indentures to represent the Noteholders' interests. Before an "Event of Default" under the Indentures, the indenture trustee's duties are set forth specifically by the Indentures. After an "Event of Default," the indenture trustee shall "use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." Under certain circumstances, the Noteholders may direct the indenture trustee's conduct and if legal claims arise under the Indentures, the Noteholders must work through the indenture trustee, except in specific and very limited circumstances apparently not present here. In other words, except in specific and very limited circumstances, the Noteholders are precluded from prosecuting their own claims under the Indentures. ("no-action clause.").

Pursuant to Section 4.02 of the Indentures, Finisar was required to provide to U.S. Bank annual and quarterly reports, information, documents and other reports it filed with the U.S. Securities & Exchange Commission ("SEC"). Section 4.02 requires that Finisar provide U.S.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

Bank with copies of reports that Finisar actually files with the SEC pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 within fifteen (15) days. In or around December 2006, Finisar undertook an internal review and investigation of stock options grants following the initial public offering of its stock shares and informed the SEC as well as U.S. Bank that its filing of annual and quarterly reports would be delayed because of the ongoing internal review and investigation. Finisar later filed all of the periodic reports required by the SEC. To date, the SEC has taken no disciplinary action against the company for delaying the filing of its reports or for the contents contained therein.

Notwithstanding the above, U.S. Bank has alleged that Finisar defaulted under Section 4.02 of the Indentures for failing to timely file the reports with the SEC and to provide copies thereof to U.S. Bank. Following the company's failure to file its second quarterly report, the indenture trustee sent Finisar three notices of default (one under each Indenture) on January 4, 2007. As a result of the dispute wherein U.S. Bank had alleged that Finisar had defaulted under the Indentures, Finisar filed an action in state court seeking declaratory relief against U.S. Bank not in its individual capacity but solely in its capacity as indenture trustee in behalf of holders of the above-specified notes. Following the filing of the declaratory relief action and the company's failure to file its third quarterly report, U.S. Bank sent Finisar three additional notices of default, each dated April 24, 2007. These notices allegedly gave rise to an "Event of Default" under each indenture on June 23, 2007 and Finisar later filed a second declaratory relief action in state court.

Defendant U.S. Bank removed the first action for declaratory relief on April 13, 2007 and plaintiff Finisar moved for remand on May 14, 2007. The court granted plaintiff Finisar's motion to remand the first declaratory action on the grounds that removal was untimely. As a result, the court did not determine whether a federal question had been presented there. On August 7, 2007, defendant U.S. Bank noticed removal of the second declaratory action and plaintiff Finisar again moved to remand the action. On December 7, 2007, the court denied plaintiff Finisar's motion to remand "determining the scope of Finisar's duty requires the Court to examine and interpret federal law." ("December 7, 2007 Remand Order").

By letter dated January 2, 2008, defendant U.S. Bank asserted that Finisar was in default and sought payment in the amount of $317,817.58 for reimbursement of fees and costs incurred during the course of the series of notices of defaults under section 7.06 of the Indentures. ("January 2, 2008 Fees Letter"). Payment was due within sixty (60) days of the date of the letter. Finisar made payment under protest and with a full reservation of rights subject to a final determination of its actual obligation and duties under the Indentures.

Pursuant to a Rule 30(b)(6) notice, Diana L. Jacobs, a vice president at U.S. Bank, appeared for deposition on the issue of, *inter alia,* the indenture trustee's various communications with Noteholders. Her deposition occurred on March 26, 2008 during which, Ms. Jacobs declined to reveal the substance of any communications held between U.S. Bank and the Noteholders on the grounds of privilege. She merely stated that the communications involved an update of litigation and strategy. Pressed further by counsel, Ms. Jacobs stated that U.S. Bank and the Noteholders did not have an oral or written agreement relating to a joint defense. Additionally, the subject of a joint defense agreement was never discussed by or among them.

Both parties have since filed their respective summary judgment motions which are scheduled to be heard on July 11, 2008.

## DISCUSSION

### I.  Plaintiff Finisar's Motion to Compel

#### A.  The Discovery Sought is Relevant

As an initial matter, Finisar argues that the discovery is relevant for two reasons. First, Finisar disputes that it was obligated to pay any of the attorneys' fees and costs incurred by U.S. Bank pursuant to the January 2, 2008 Fees Letter. Section 7.06 of the Indentures provides in pertinent part that plaintiff Finisar must pay or reimburse the indenture trustee for attorneys' fees and costs which were incurred in the course of "defending itself against or investigating any claim of liability." An exception for payment is made for fees incurred negligently or in bad faith. Conflicts between U.S. Bank and the Noteholders regarding the affect of three federal court decisions finding that certain contract provisions, similar to section 4.02 of the Indentures,

do not provide the indenture trustee with a right to enforce the filing obligations by the SEC on U.S. Bank's ultimate decision to pursue the instant action may show that it incurred the attorneys' fees and costs, negligently or in bad faith.  Second, U.S. Bank has alleged claims on behalf of the Noteholders and discovery is relevant to determine if there was any compensable injury to them.

Defendant U.S. Bank contends the discovery sought is not relevant to the main issue of whether Finisar's failure to timely file annual and quarterly reports with the SEC constitute Events of Default under the Indentures.  Moreover, U.S. Bank contends that Finisar has failed to explain how prying into its communications with the Noteholders is relevant to disproving the Noteholders' damages or the reasonableness of fees.

Rule 26 allows "[p]arties [to] obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Having considered the reasons set forth by the plaintiff and the broad scope of discovery allowed, the court finds that the discovery sought is relevant.

**B.    Attorney-Client Privilege, Generally**

Because the district court concluded that "Finisar's duty to provide documents to the Trustee arises under federal statutes and that Section 4.02 of the Indentures is a mechanism to enforce the provisions of those statutes," the issue of attorney-client privilege is governed by federal common law.  *See* December 7, 2007 Remand Order.

As originally conceived, the attorney-client privilege was fashioned as a narrowly drawn exception to promote "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Company, et al. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677 (1981).  "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Id. See also Clarke v. American Commerce Nat'l Bank,* 974 F.2d 127, 129 (9th Cir. 1992).  "[The exception] is narrowly construed because any expansion of the privilege hinders the Court in its search for truth." *Cavallaro v. U.S.,* 153 F.Supp.2d 52, 57 ((D. Mass. 2001).  To determine whether the

attorney-client privilege exists, the party invoking the privilege bears the burden of establishing the following elements: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection may be waived. *Id.*

### C.     Common Interest Doctrine

Distinguishing its relationship with the Noteholders from that of a joint-defense privileged relationship, defendant U.S. Bank asserts that the common interest privilege is applicable here.[2] "The common interest privilege is an[other] exception to the general rule, and it protects a communication made when a non-party sharing the client's interest is a party to a confidential communication between attorney and client. *Baden Sports, Inc. v. Kabushiki Kaisha Molten,* 2007 WL 1185680 (W.D. Wash.). It applies where: (1) the communication was made by separate parties in the course of a matter of common interest; (2) the communication was designed to further that effort; and (3) the privilege has not been waived. *Id.* (internal citations omitted). The party asserting the privilege has the burden of establishing that the privilege is applicable to the discovery in question. *Id.* "Under the strict confines of the common interest doctrine, the lack of representation for the remaining parties vitiates any claim to a privilege." *Cavallaro v. U.S.,* 153 F.Supp.2d at 61.

Here, the relationship between U.S. Bank and the Noteholders is undoubtedly unique. The caption in the second declaratory action makes clear that plaintiff brought the action against defendant U.S. Bank not in its individual capacity but in its capacity as indenture trustee to the Noteholders. Pursuant to Section 6.06 of the Indentures, Noteholders are barred from bringing their own action against plaintiff Finisar except in very limited circumstances, none of which

---

[2] Based on the opposition, it appears that the parties agree that the joint-defense privilege is inapplicable here. Generally, the joint defense privilege is an extension of the attorney-client privilege and is not, in and of itself, an independent basis for privilege. *See Securities Investor Protection Corp. v. Stratton Oakmont, Inc.,* 213 B.R. 433(S.D.N.Y. 1997) (oral joint defense agreement among the parties). "The joint client doctrine applies when clients share the same lawyer whereas the common interest or allied lawyer doctrine applies when parties with separate lawyers consult together under the guise of a common interest or defense." *Id.* at 435, fn. 1. Neither party argues that U.S. Bank and the Noteholders are both clients of counsel to U.S. Bank.

have been stated to exist here.  Therefore, defendant U.S. Bank argues that plaintiff Finisar's motion should be denied because it ignores the special nature of the indenture trustee's representative capacity and the contractual duties that it bears on behalf of the Noteholders.  Compromising the attorney-client privilege here would preclude full and frank communications that should remain confidential between the indenture trustee and the Noteholders.  Moreover, as a matter of public policy, the common interest privilege should recognize the relationship between the indenture trustee and the Noteholders as beneficiaries of the Indenture provisions.  Indeed, courts have recognized that case law relating to the common interest doctrine is far from settled, though "decisions do tend to mark out, although not with perfect consistency a small circle of 'others' with whom information may be shared without loss of the privilege (e.g., secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consults a lawyer)." *Cavallaro v. U.S.,* 152 F.Supp.2d at 59.  "The decisions often describe such situations as ones in which the client 'intended' the disclosure to remain confidential." *Id.*  Courts also consider fairness and scrutinize "whether a client permits to choose to disclose materials to one outsider while withholding them from another." *Id.*

Generally, plaintiff Finisar does not dispute that the indenture trustee has met at least two of the elements for finding a common interest privilege: (1) that communications between the indenture trustee and the Noteholders were made in the course of a matter of common interest; and (2) that the communications were designed to further that effort.  However, plaintiff Finisar does dispute whether the third element has been met or is applicable here.  Specifically, Finisar argues no privilege exists because the Noteholders lacked representation during their discussions with the indenture trustee and under the strict confines of the doctrine, any claim to privilege must fail.  Finisar also suggests that U.S. Bank sought to consult with the Noteholders regarding litigation updates and strategy to avoid any potential claims of malpractice.

Surprisingly the indenture trustee and/or counsel and the Noteholders undertook communications that they merely *assumed* would remain confidential and privileged.  During her individual and Rule 30(b)(6) deposition which was held in or around March 26, 2008, Diana L. Jacobs, a Vice President at U.S. Bank, admitted that the bank and/or its counsel and the

Noteholders never entered into an oral or written agreement memorializing a joint defense, let alone ever discussed the "concept of a joint defense agreement." U.S. Bank states that "the [indenture trustee] understood and believed that the only ones privy to the communications were those sharing a commonality of interests." No declaration, deposition testimony or other evidence has been submitted to confirm any such "understanding" by the indenture trustee. Additionally, counsel for U.S. Bank admitted that he was unaware of "any formal representation arrangements" between his firm, local counsel, U.S. Bank and/or the Noteholders. During colloquy between counsel, defendant U.S. Bank instructed the deponent not to answer whether there was ever a discussion among U.S. Bank and/or counsel and the Noteholders that their communications would be considered privileged.

In the citation to which defendant U.S. Bank chiefly refers in support of its position that communications between the Trustee and its counsel and certain noteholders were privileged, even "the noteholders [there] were required to agree that they would maintain confidentiality of those communications and were required to state that they did not have any connections to the defendants." *U.S. Bank National Association v. U.S. Timberlands Klamath Falls, L.L.C.,* Not Reported in A.2d, 2005 WL 2037353 (Del.Ch.). In another citation by defendant U.S. Bank, the defendant and its insurer *expressly* understood that their communications would be maintained in confidence. *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.,* 212 F.R.D. 567, 569 (E.D. Cal. 2002). California Civil Code Section 2860 addressed the duty of *Cumis* counsel and an insured by stating in pertinent part that "[a]ny information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party." *Id.* at 570. As such, the parties in that action properly relied on the assurance of privilege. *Id.*

On the other hand, defendant U.S. Bank has provided no evidence whatsoever to substantiate any understanding and belief held by either the indenture trustee or the Noteholders that their communications were to remain confidential or were privileged. Therefore, the court cannot determine whether the indenture trustee's understanding was reasonable. *See, e.g., Griffith v. Davis,* 161 F.R.D. 687, 694-695 (C.D. Cal.)(client's expectation of confidentiality must be reasonable). Absent more, the court may only speculate that the indenture trustee and/or its

counsel never sought to ensure at the outset (either orally or in writing) that their communications were to be deemed confidential or were being made in a privileged context. The court recognizes the special, and perhaps unique, relationship shared by the indenture trustee and noteholders that spans at least 69 years. Without any evidence that the indenture trustee and/or counsel and the Noteholders acknowledged that their communications were to remain confidential or privileged however, the court is left with no choice but to find that a privilege does not exist and that the third element of the common interest doctrine has not been met.[3] That the Noteholders are beneficiaries of the Indenture provisions and that U.S. Bank and the Noteholders share a special relationship, in and of itself, is not enough to find privilege.

In turning back to the elements of the attorney-client privilege, U.S. Bank has not shown that the Noteholders sought legal advice from counsel to U.S. Bank. Indeed, some of the communications involved only the indenture trustee and the Noteholders. Moreover, U.S. Bank has not established that the communications were made in confidence. U.S. Bank states that communications were had by U.S. Bank and/or counsel and the Noteholders alone. As discussed above, defendant U.S. Bank states that the indenture trustee had an "understanding" about the nature of its communications with the Noteholders. Nothing from the Noteholders substantiates a similar understanding on their part. Finally, defendant U.S. Bank has not shown that its fiduciary duty or for that matter, its contractual duties under the Indentures to the Noteholders, somehow confers a privileged relationship between them. Although cognizant, of the perhaps long and storied relationship, between an indenture trustee and noteholders as recounted by U.S. Bank, narrow construction of the attorney-client relationship and at least two of its exceptions finds origins even farther back in our legal jurisprudence. Therefore, the court finds that defendant U.S. Bank has not met its burden of establishing that communications between U.S. Bank and/or counsel and the Noteholders were privileged under either the common interest doctrine or the attorney-client privilege. Accordingly, plaintiff Finisar's motion to compel is granted. Defendant

---

[3] Regardless of whether the common interest privilege has been asserted to protect communications between U.S. Bank and/or counsel and the Noteholders or between U.S. Bank and the Noteholders alone, defendant has not met its burden of showing that a privilege exists, much less shown that the privilege has not been waived.

1  U.S. Bank shall produce document numbers 60, 123, 157 and 173 no later than July 7, 2008.
2  Additionally, defendant U.S. Bank shall produce Ms. Jacobs for further deposition for an
3  additional three hours.  The parties shall meet and confer to determine a mutually agreeable time
4  to schedule her deposition.

5  **II.     Plaintiff Finisar's Motion for Sanctions**

6        Pursuant to Rule 37(a)(5)(A), plaintiff Finisar moves for sanctions on the grounds that
7  defendant U.S. Bank withheld certain discovery without substantial justification.  Indeed,
8  defendant U.S. Bank's unreasonable conduct necessitated the motion to compel and required the
9  parties to incur additional and unnecessary attorneys' fees and costs.
10       In light of the novel issues discussed above and the scant authority related thereto,
11 defendant U.S. Bank's non-disclosure, response or objection was substantially justified.
12 Accordingly, plaintiff Finisar's motion for sanctions is denied.

13 <center>**CONCLUSION**</center>

14       For the foregoing reasons, plaintiff Finisar's motion to compel is granted and the motion
15 for sanctions is denied.
16       IT IS SO ORDERED.
17 Dated:  *June 30, 2008*

                                                 *Patricia V. Trumbull*
18                                           PATRICIA V. TRUMBULL
19                                           United States Magistrate Judge

20
21
22
23
24
25
26
27
28