\*\*E-Filed 8/25/08\*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FINISAR CORP., <br><br> Plaintiff, <br><br> v. <br><br> U.S. BANK TRUST NATIONAL ASSOCIATION, <br><br> Defendant. | Case Number C 07-4052 JF (PVT) <br><br> ORDER[1] GRANTING IN PART FINISAR'S MOTION FOR SUMMARY JUDGMENT; AND DENYING U.S. BANK'S MOTION FOR SUMMARY JUDGMENT <br><br> [re: docket nos. 49 and 73] |

Plaintiff Finisar Corporation ("Finisar") and Defendant U.S. Bank Trust National Association ("U.S. Bank") have filed cross-motions for summary judgment. For the reasons discussed below, Finisar's motion will be granted in part, and U.S. Bank's motion will be denied.

**I. BACKGROUND**

Finisar is a Delaware corporation that conducts performance tests on fiber optic subsystems and networks. U.S. Bank is a national banking association with its headquarters in Delaware. U.S. Bank is the designated trustee pursuant to a series of three trust indentures

---

[1] This disposition is not designated for publication in the official reporter.

("Indentures") under which Finisar issued three series of convertible notes ("Notes").

The disputed text of Sections 4.02, 6.02 and 6.03 of the Indentures[2] read as follows:

> SECTION 4.02 <u>Commission and Other Reports.</u>
> The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents, and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may be rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the [Securities] Exchange Act [of 1934]. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to have been subject to such reporting requirements. The Company also shall comply with the other provisions of [Trust Indenture Act of 1939 ("TIA")] Section 314(a).
>
> SECTION 6.02 <u>Acceleration.</u>
> If an Event of Default . . . occurs and is continuing, the Trustee by notice to the Company, or the Holders of at least 25% in aggregate principal amount of the Notes at the time outstanding by notice to the Company and the Trustee, may declare the Notes due and payable at their principal amount together with accrued interest. Upon a declaration of acceleration, such principal and accrued and unpaid interest to the date of payment shall be immediately due and payable. . . . The Holders of a majority in aggregate principal amount of the Notes at the time outstanding, by notice to the Trustee (and without notice to any other Noteholder) may rescind or annul an acceleration and its consequences if the rescission would not conflict with any judgment or decree and if all existing Events of Default have been cured or waived except nonpayment of the principal and any accrued cash interest that have become due solely as a result of acceleration and if all amounts due to the Trustee under Section 7.06 have been paid. No such rescission shall affect any subsequent Default or impair any right consequent thereto.
>
> SECTION 6.03 <u>Other Remedies.</u>
> If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of the principal and any accrued cash interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture. The Trustee may maintain a proceeding even if the Trustee does no process any of the Notes or produce any of the Notes in the proceeding. A delay or omission by the Trustee or any Noteholder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver or, or acquiescence in, the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.
>
> SECTION 7.06 <u>Compensation and Indemnification of Trustee and Its Prior Claim.</u>
> The Company covenants and agrees to pay the Trustee from time to time, and the Trustee shall be entitled to, such compensation (which shall not be limited by any provision of law in regard to the compensation of a trustee in an express trust) to be agreed to in writing by the Trustee and the Company, and the Company covenants and agrees to pay or reimburse the Trustee and each predecessor

---

[2] These excerpts are taken from the most recent Indenture. The minor differences between the Indentures are immaterial to this action.

> Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by or on behalf of it in accordance with any of the provisions of this Indenture (including (i) the reasonable compensation and the expenses and disbursements of its counsel and of all agents and other persons not regularly in its employ and (ii) interest at the prime rate on any disbursements and advances made by the Trustee and not paid by the Company within 5 days after receipt of an invoice for such disbursement or advance) except any such expense, disbursement or advance as may arise from its negligence or bad faith.  The Company also covenants to indemnify the Trustee and each predecessor Trustee for, and to hold it harmless against, any lost, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this Indenture or the trusts hereunder and its duties hereunder, including the costs and expenses of defending itself against or investigation any claim of liability in the premises.

In December 2006, Finisar filed the first of several documents entitled "Notification of Late Filing" with the SEC, informing both the SEC and U.S. Bank that Finisar would be unable to file or provide quarterly and annual reports until it completed an investigation of stock option grants made following Finisar's initial public offering on November 11, 1999.  Based on its initial findings, Finisar determined that it needed to restate its historical financial statements to record charges for compensation expenses relating to past stock option grants and the tax impact related to such adjustments.  U.S. Bank contends that Finisar's failure to file timely reports with the SEC and to provide copies of those reports to the Trustee within fifteen days of the SEC deadline constitutes a default under Section 4.02 of the Indentures.

On January 4, 2007, U.S. Bank sent three "Notices of Default" to Finisar, one under each Indenture, as a result of Finisar's failure to file timely its second quarterly report.  U.S. Bank contends that such notice gave rise to an "Event of Default" under each Indenture as of March 5, 2007.  Shortly after receiving the Notices of Default, Finisar sought declaratory relief in state court, asserting that its failure to file quarterly and annual reports with the SEC did not constitute a default under Section 4.02 of the Indentures, or, alternatively, that enforcement of remedies under the Indentures as a result of Finisar's failure to file reports with the SEC would be inequitable.

After Finisar filed its complaint for declaratory relief, U.S. Bank sent Finisar three additional Notices of Default, each dated April 24, 2007, as a result of Finisar's failure to file its third quarterly report.  These notices purportedly gave rise to an Event of Default under each

Indenture on June 23, 2007. Finisar thereafter commenced a second declaratory relief action in state court.

U.S. Bank removed the first declaratory relief action to this Court on April 13, 2007. On May 14, 2007, Finisar moved to remand that action to state court. Without reaching the issue of whether a federal question was presented, this Court granted the motion for remand because the removal was untimely. On August 7, 2007, U.S. Bank filed its notice of removal with respect to the second declaratory relief action, which was effectuated on August 8, 2007. On September 28, 2007, Finisar filed a motion to remand that action for lack of subject matter jurisdiction. Because the Court concluded that Finisar's duty to provide documents to the Trustee arises under federal statutes and that Section 4.02 of the Indentures is a mechanism to enforce the provisions of those statues, the second motion to remand was denied. On December 4, 2007, Finisar filed its delayed annual and quarterly reports with the SEC and provided the information contained in such reports to U.S. Bank within fifteen days thereafter.

U.S. Bank alleges that on two separate occasions in 2007, it sent invoices to Finisar for fees and expenses relating to the disputed events of default and subsequent litigation. After initially refusing to make these payments, Finisar paid U.S. Bank's claimed expenses of $317,817.58 on February 20, 2008. However, Finisar did so noting that the payment was made "in protest" and subject to recovery and reimbursement. U.S. Bank alleges that through March 31, 2008, it has incurred a total of $588,130.50 in fees and expenses as a result of this action.

On March 19, 2008, Finisar amended its complaint. U.S. Bank answered the Amended Complaint and then filed the instant motion for summary judgment on April 24, 2008. Finisar countered with the instant cross-motion for summary judgment on June 6, 2008. The Court heard oral argument on July 11, 2008.

**II. LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions

of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49.

### III. DISCUSSION

The parties agree that this case turns on an interpretation of the Indentures. They raise three issues in their cross-motions: (1) whether Finisar defaulted under the Indentures by providing U.S. Bank with copies of its Reports within fifteen days of the actual date of filing with the SEC rather than within fifteen days of the filing deadline; (2) whether any such default under the Indentures was cured by Finisar's subsequent filing of its Reports with the SEC; and (3) whether Finisar is obligated to reimburse U.S. Bank under the Indentures for fees and costs relating to this matter.

**A.    The Threshold Issue of Default Under the Indentures**

Finisar argues that Section 4.02 of the Indentures "require[s] only that Finisar provide copies of its Reports to U.S. Bank within 15 days *after it actually filed them* with the SEC, and imposed *no* requirement regarding the timing of Finisar's filing *with the SEC*." Finisar Brief at 1, Finisar Corp. v. U.S. Bank Trust Nat'l Ass'n, No. 07-4052 JF (9th Cir. 2005) (emphasis in original). U.S. Bank argues that "Finisar's failure to timely file reports with the SEC," and its subsequent failure to file copies of those reports with U.S. Bank within fifteen days of the SEC deadline, "constitutes a 'default' under Section 4.02 of the Indentures." U.S. Bank Brief at 4, Finisar Corp. v. U.S. Bank Trust Nat'l Ass'n, No. 07-4052 JF (9th Cir. 2005). The Indentures are governed by New York law. *See* Indentures § 13.09.

"Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."

1  *UnitedHealth Group Inc. v. Wilmington Trust Co.*, 538 F. Supp. 2d 1108, 1111 (D. Minn. 2008)
2  (citing *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)).  Where "clear and
3  unambiguous language is used, a contract should be enforced according to its own terms."
4  *Cyberonics, Inc. v. Wells Fargo Bank Nat'l Ass'n*, 2007 WL 1729977, *3 (S.D. Tex. 2007)
5  (citing *R/S Assocs. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29 (2002)).  Accordingly, "[p]arties to an
6  agreement are not obligated to perform duties beyond those mandated by the unambiguous terms
7  of the indenture."  *UnitedHealth*, 538 F. Supp. 2d at 1112; *see also Red Ball Interior Demolition*
8  *Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999).  "Ambiguity is determined by looking
9  within the four corners of the document, not to outside sources.  And in deciding whether an
10  agreement is ambiguous courts should examine the entire contract and consider the relation of
11  the parties and the circumstances under which it was executed."  *Affiliated Computer Servs., Inc.*
12  *v. Wilmington Trust Co.*, 2008 WL 373162, * 3 (N.D. Tex. 2008) (citing *Kass v. Kass*, 91 N.Y.2d
13  554, 566 (1998)).  Thus extrinsic evidence "cannot be used to create an ambiguity in a contract."
14  *Id*. (citing *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990)).

15       Three federal courts and a New York state trial court have interpreted language nearly
16  identical to that of Section 4.02 of the Indenture in the instant case.  Finisar notes that the federal
17  courts consistently have held that similar agreements present "no obligation to file SEC reports
18  on any particular timetable."  *UnitedHealth*, 538 F. Supp. 2d at 1112; *see also Affiliated*
19  *Computer*, 2008 WL 373162, at * 1; *Cyberonics*, 2007 WL 1729977, at * 3-4.  U.S. Bank points
20  out correctly that these previous decisions are not binding authority.  U.S. Bank urges this Court
21  to follow *Bank of New York v. BearingPoint, Inc.*, 2006 WL 2670143, in which a state court held
22  that the underlying purpose of the indenture was the issuer's "obligation to provide the Trustee
23  with timely annual and quarterly reports."  2006 WL 2670143, * 7 (N.Y. Sup. 2006).

24       However, in *BearingPoint*, "the company disavowed any obligation to file information
25  with the SEC whatsoever."  *Cyberonics*, 2007 WL 1729977, at * 5.  The three federal courts that
26  subsequently considered the *BearingPoint* decision were not persuaded to follow its holding.  *Id.*
27  Nor does this Court find *BearingPoint* persuasive.  In respectfully disagreeing with the holding in
28  *BearingPoint*, this Court notes that it "is free to disregard a lower state court's decision if 'it is

convinced . . . that the highest court of the state would decide otherwise.'" *UnitedHealth*, 538 F. Supp. 2d at 1112 (quoting *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1066 (8th Cir. 2003)).

As discussed previously, the disputed language of Section 4.02 of the Indentures in the instant case states:

> The Company shall file with the Trustee, within 15 days after it files such annual and quarterly reports, information, documents, and other reports with the SEC, copies of its annual report and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may be rules and regulations prescribe) which the Company is required to file with the SEC pursuant to Section 13 or 15(d) of the [Securities] Exchange Act [of 1934]. If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports had it continued to have been subject to such reporting requirements. The Company also shall comply with the other provisions of [Trust Indenture Act of 1939 ("TIA")] Section 314(a).

Indentures § 4.02. The language of the Indenture is grammatically clear and unequivocal. As the court observed in *UnitedHealth*:

> [T]he phrase 'which the Company is then required to file with the Commission pursuant to Section 13 or 15(d) of the Exchange Act' modifies the Indenture's contractual obligation to send copies by specifying those financial reports the Company is obligated to file. Section 13 and 15(d) of the Exchange Act are the impetus by which certain financial reports will be provided. The modifying phrase expressly incorporates sections 13 and 15(d) *only* to the extent that those statutes mandate *which* financial reports must be produced.

*UnitedHealth*, 538 F. Supp. 2d at 1113 (emphasis added).[3] The incorporation of Sections 13 and 15(d) of the Securities Exchange Act do not impose upon Finisar an obligation to file copies of such reports within fifteen days of the SEC deadline. Rather, the Indenture requires Finisar to provide U.S. Bank with copies of the annual reports and information within 15 days after it files them with the SEC. Accordingly, the Court concludes that Finisar did not default in filing copies

---

[3] At oral argument, U.S. Bank pointed out that the Indentures in the *UnitedHealth*, *Cyberonics*, and *Affiliated Computer* decisions did not contain the second sentence of the Indenture in the instant case. Here the second sentence states: "If at any time the Company is not subject to Section 13 or 15(d) of the Exchange Act, such reports shall be provided at the times the Company would have been required to provide reports . . . " Indentures § 4.02. However, on the face of its terms, the second sentence does not apply to this situation. U.S. Bank concedes this point in its motion, stating that Finisar is a publicly traded company and "is obligated to file quarterly and annual reports with the SEC" per Sections 13 and 15(d) of the Exchange Act. U.S. Bank Brief at 3.

of its reports with U.S. Bank within fifteen days of actually filing with the SEC.

In addition, the circumstances surrounding the execution of the Indentures support Finisar's position. The multi-million transaction at issue resulted from informed negotiations between sophisticated parties. Had U.S. Bank wished to require Finisar explicitly to submit information within fifteen days of the SEC deadlines instead of within fifteen days of the date of Finisar's actual filing with the SEC, U.S. Bank easily could have incorporated language to that effect into the Indenture.[4] The Court reasonably may infer from the absence of such language that the parties did not intend to include such terms in this Indenture. *See id.* at 1114 ("When the language of a contract is unambiguous, as it is here, the Court may not impose obligations on a party beyond those expressly stated.") (citing *Red Ball*, 173 F.3d at 484).

U.S. Bank seems particularly concerned that the interpretation of the Indentures the Court adopts with this Order will not effectuate the intent of Section 4.02, which U.S. Bank argues is "to keep the investors informed of company developments." U.S. Bank Brief at 10. However, U.S. Bank's effort to distinguish *UnitedHealth* from the instant case by pointing to the availability of detailed financial information filed with the issuer's notification of late filing ultimately is unpersuasive because the quality of Finisar's financial reporting is not contested here. Thre is no evidence that Finisar ever has denied or sought to avoid its obligations to investors, and in any event, it still is subject to the full weight of penalties imposed by the SEC should it attempt to do so.

**B.    Cure of Default Under the Indentures**

Given that Finisar did not breach its obligations pursuant to the Indenture and thus was not in default at any time, the Court need not address whether Finisar remains in default or whether an event of default may be cured through a late filing with the SEC. Accordingly, the Court need not interpret the acceleration clauses of Sections 6.02 and 6.03.

---

[4] In fact, U.S. Bank previously has negotiated Indentures that impose such requirements. *See, e.g., Landry's Restaurants, Inc. v. Post Advisory Group, LLC*, No. G-07-406, 2007 WL 3120312 (S.D. Tex. Aug. 1, 2007).

**C.     Counterclaim For Damages**

The parties have stipulated to an agreement resolving U.S. Bank's counterclaim for damages. Therefore, the Court need not address this issue.

**D.     Recovery of Fees**

As previously noted, Finisar paid U.S. Bank $317,817.58 on February 20, 2008 to cover expenses, but did so "in protest" and reserved the right to seek reimbursement of the payment. Even though the Court finds that Finisar did not default, it must decide whether Finisar is liable for U.S. Bank's attorney's fees under Section 7.06 of the Indentures and whether reimbursement is appropriate. Section 7.06 provides the following:

> **The Company covenants and agrees to pay the Trustee from time to time, and the Trustee shall be entitled to, such compensation** (which shall not be limited by any provision of law in regard to the compensation of a trustee in an express trust) to be agreed to in writing by the Trustee and the Company, and **the Company covenants and agrees to pay or reimburse the Trustee and each predecessor Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by or on behalf of it in accordance with any of the provisions of this Indenture** (including (i) the reasonable compensation and the expenses and disbursements of its counsel and of all agents and other persons not regularly in its employ and (ii) interest at the prime rate on any disbursements and advances made by the Trustee and not paid by the Company within 5 days after receipt of an invoice for such disbursement or advance) **except any such expense, disbursement or advance as may arise from its negligence or bad faith**. The Company also covenants to indemnify **the Trustee** and each predecessor Trustee for, and to hold it harmless against, any lost, liability or expense incurred without negligence or bad faith on its part, **arising out of or in connection with the acceptance or administration of this Indenture or the trusts hereunder and its duties hereunder, including the costs and expenses of defending itself against or investigation any claim of liability in the premises.**

Indenture § 7.06 (emphasis added).

Finisar argues that it is not liable for "fees incurred trying to exact unwarranted concessions." Finisar Brief at 21. Finisar contends that because it never was in default, U.S. Bank's effort to recover fees relating to the issuance and litigation of notices of default "was not in accordance with the Indentures." *Id*. Finisar also argues that because "Finisar and U.S. Bank have been litigating declaratory relief claims, not liability claims," the fees at issue "were not incurred defending against or investigating any claim of liability in the premises" and thus cannot be recovered under the indemnity clause of Section 7.06. *Id.* at 23. Finally, Finisar argues in the

9

alternative that U.S. Bank incurred the fees at issue negligently and in bad faith thus preventing recovery. *Id*. at 23-24. U.S. Bank contends that Finisar's arguments are without merit and that Finisar is contractually bound to its obligation to pay the indenture trustee. U.S. Bank Brief at 19. U.S. Bank further contends that Finisar, not U.S. Bank, has acted in bad faith. *Id*.

"[W]here fees are sought pursuant to a contractual right to payment, compensation is to be determined in accordance with the contractual provision." *U.S. Trust Co. of N.Y. v. Pardo (In re W.T. Grant Co.)*, 119 B.R. 898 (Bankr. S.D.N.Y. 1990), *aff'd*, 935 F.2d 1277 (2d Cir. 1991). Here the plain language of the first sentence of § 7.06, the payments clause, clearly provides that Finisar agrees to pay U.S. Bank for reasonable fees incurred in good faith **"in accordance with any of the provisions of this Indenture."** Indenture § 7.06. Because the Court does not find that either party acted in bad faith in the instant action, the question is whether U.S. Bank's expenses were incurred in accordance with the Indentures. Finisar does not deny that U.S. Bank's expenses were incurred in issuing and litigating the alleged events of default pursuant to the Indentures. That this Court now agrees with Finisar's interpretation does not mean that the litigation was not "in accordance" with the Indentures. Accordingly, the Court finds that Finisar is obligated to pay U.S. Bank's reasonable fees and costs under § 7.06.

The Court is unpersuaded by Finisar's arguments regarding the second sentence of § 7.06, the indemnity clause. The Court finds that because the purpose of this action was to interpret and clarify the meaning of the Indentures, it lies within the scope of litigation "arising out of or in connection with the acceptance or administration of this Indenture." Finisar's contention that these fees were not "incurred defending itself against or investigating any claim of liability in the premises" is misleading as this clause does not limit § 7.06 to third party litigation or liability claims.

In sum, the Court finds that Finisar's February 20, 2008 payment of $317,817.58 was proper under § 7.06 of the Indentures.[5] Accordingly, U.S. Bank is not obligated to reimburse

---

[5] The Court notes that U.S. Bank made a passing reference to incurring additional fees during this litigation since the February 20, 2008 payment. While the same contractual interpretation of this Order seemingly would apply to additional expenses, the Court does not

10

Finisar.

## IV. ORDER

Good cause therefor appearing, Finisar's motion for summary judgment is GRANTED IN PART and U.S. Bank's motion for summary judgment is DENIED.

DATED:    August 25, 2008

_____
JEREMY FOGEL
United States District Judge

---

address any additional fees here because the parties focused only on the February 20, 2008 payment in their briefing.  Furthermore, this Order does not adjudicate the "reasonableness" of any fees and expenses incurred, but only addresses Finisar's contractual obligation under the Indentures to cover U.S. Bank's reasonable fees.

11
Case No. C 07-4052 JF (PVT)
ORDER GRANTING IN PART FINISAR'S MOTION FOR SUMMARY JUDGMENT ETC.
(JFEX1)

1  This Order was served on the following persons:

2  Caroline McIntyre
   Email: cmcintyre@be-law.com
3
   L. Rex Sears
4  Email: rsears@wnlaw.com

5  Sterling Arthur Brennan
   Email: sbrennan@wnlaw.com
6
   Abby E. Wilkinson
7  Email: awilkinson@faegre.com

8  Dana Anthony Rodriguez
   Email: drodriguez@mofo.com
9
   Eva Krisztina Schueller
10 Email: eschueller@mofo.com

11 Michael B. Fisco
   Email: mfisco@faegre.com
12
   Edward Thomas Wahl
13 Email: ewahl@faegre.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28